LAW OFFICES OF
# PAUL SAVAD & ASSOCIATES

55 OLD TURNPIKE ROAD - SUITE 209
(Rt. 59 & THRUWAY EXIT 14)

NANUET, NEW YORK 10954

(845) 624-3820

FAX:   (845) 624-3821
e-mail:   paul@savadlaw.com

Catskills Office:
32 Diamond Road
Ellenville, New York 12428

September 4, 2007

Honorable Kenneth M. Karas
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Congregation Rabbinical College of Tartikov et al. v. Village of Pomona, et al.*,
      7:07 CV 6304 (KMK) (GAY)

Dear Judge Karas:

In accordance with Your Honor's Individual Chambers Practices, please find the response of the Plaintiffs to the Defendants' letter of August 29, 2007. The Defendants' anticipated motion to dismiss the Complaint appears to be based on three grounds: (1) ripeness, (2) standing, and (3) failure to state a claim.

At its heart, this case involves two general sets of claims by the Plaintiffs: First, the growing community of Hasidic Jews located in the Town of Ramapo (in which Pomona is located) is prevented—by virtue of the Village's Code—from operating or attending a rabbinical college anywhere within the Village, which infringes upon significant constitutional rights by substantially burdening their religious exercise and acting as a prior restraint on expressive activity. Second, the Village has engaged in a pattern of discrimination through various legislative and administrative measures over several years in its attempt to prevent Hasidic Jews from using real property within its jurisdiction[1] in violation of state and federal law.

**Ripeness**. The Defendants' fundamental misconception of these proceedings must be corrected. This case does not challenge the denial of a land use permit or an enforcement action against a property owner which, as Defendants correctly state, would require final agency action before it would become ripe for review. The Second Circuit in *Murphy v. New Milford* held that a challenge to a municipality's cease & desist order was not ripe because the "order did not inflict an immediate injury. . . . New Milford, then, plainly lacked the enforcement authority on which the claim of immediate hardship is premised." 402 F.3d 342, 351 (2005). *Murphy* stands for the unremarkable proposition that a case is not justiciable where no injury has yet occurred. Defendants will apparently argue that the Plaintiffs' facial and as-applied claims are not ripe because the Plaintiffs have not sought: (a) legislative remedies such as a "text amendment" or "rezoning"; (b) administrative applications for a "special use permit" or a "variance" (that are inapplicable here); or (c) an unidentified "land use permit" or "site plan." Herein lies the critical distinction from *Murphy*. The challenge in this case is not to any administrative action, but rather to the Village's Zoning Code and pattern of discrimination and hostility aimed squarely at the Plaintiffs.

---

[1] There is a long history of conflict against the Hasidic community by various Villages (including Pomona) within the Town of Ramapo. *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995); *Congregation Mischknois Lavier Yakov v. Village of Airmont*, Civ. No. 02-5642 (S.D.N.Y. 2007); *Village of Chestnut Ridge v. Town of Ramapo*, 2007 WL 2317416 (2d Dept.); *Yeshiva Chofetz Chaim Radin v. Village of New Hempstead*, 98 F. Supp. 2d 347 (S.D.N.Y. 2000); *U.S. v. Village of Suffern*, Civ. No. 06-7713 (complaint filed Sept. 26, 2006).

**Defendants' ripeness argument cannot extend to facial challenges.** On its face, Defendants' zoning code discriminates against the Congregation by forbidding its use throughout its entire jurisdiction. Plaintiffs' facial challenge, therefore, is ripe immediately. *See Ecogen, LLC v. Town of Italy*, 438 F. Supp. 2d 149, 155 (W.D.N.Y. 2006) ("[F]acial challenges to legislative acts 'are ripe by their very nature.'"). Moreover, "in the First Amendment context, the ripeness doctrine is somewhat relaxed." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).

**Unlike *Murphy*, the Village's enforcement authority here prevents the Congregation's use.** The *Murphy* decision relied on a finding that the Town of New Milford had no "enforcement authority" to prevent the Murphys' prayer group from meeting. Here, in contrast, the Congregation is presently prevented from using its property as a rabbinical college. *See* POMONA CODE §§ 130-9 ("All uses listed hereunder are permitted in the R-40 District; all others not listed are prohibited . . . ."); 130-13(A); 130-22(E)(1). The Village Code permits the Village to impose a fine of $10,000 per day on corporations or imprison any person for a "term not exceeding 15 days" for any violations of the Code, including unauthorized uses. *Id.* § 130-25(A).

**Legislative remedies need not be sought for Plaintiffs' "as-applied" challenges to become ripe.** Defendants suggest that a "text amendment" or "request to rezone" is necessary before any challenge to the Village Code is ripe. While theoretically such legislative action may permit this use—of course, any such efforts would be completely futile with such entrenched hostility as alleged in the First Amended Complaint ("FAC")—there is absolutely no requirement that <u>legislative</u> remedies be sought prior to a challenge to the Village's Code. *See Neddo v. Schrade*, 200 N.E. 657 (N.Y. 1936) ("[C]hanging the property . . . from one zone to another was purely legislative in character . . . ."); *Inland Western Coram Plaza, LLC v. Town of Brookhaven*, 836 N.Y.S.2d 493 (Sup. Ct. Suffolk Co. 2007) ("Zoning is a legislative function, therefore when a Town Board acts to consider a change of zone, it does so in its legislative capacity . . . ."). In fact, the denial of rezoning is not even subject to Article 78 review. *Southern Dutchess Country Club v. Town Bd. of Town of Fishkill*, 270 N.Y.S.2d 165 (A.D. 1966). Suggesting that Plaintiffs must attempt to change an unconstitutional law through the legislative process before it may be challenged in court is absurd and unsupported by law.

**No variance or special use permit remedy is available.** A zoning variance is an administrative remedy that is not appropriate here (unlike in *Murphy*) and unobtainable for the Congregation's use. As the Second Circuit held: "[A] property owner need not pursue such applications when a zoning agency lacks discretion to grant variances . . . ." *Murphy*, 402 F.3d at 349. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992) (stating that an application for a variance is not required when it would be "pointless"). Such an application would be "pointless" here for several reasons:

First, the Village's Zoning Board of Appeals lacks the authority to issue such a variance. A variance that alters a fundamental aspect of the zoning scheme, such as permitting a use completely at odds with the zoning code or altering the use for a large tract of land is an impermissible legislative act.

> A board of appeals <u>has no power to remake a zoning map under the guise of granting a variance</u> . . . , for such a change constitutes an exercise of legislative power . . . . A variance may be regarded as a zoning amendment if it alters in any fundamental and substantial respect the zoning scheme which is articulated in the ordinance . . . . In determining whether the zoning province of the legislative body has been invaded, size is a significant factor . . . , for the variance which most closely resembles an amendment is one which applies to a large or extensive tract of land . . . . <u>Applications for variances which change the density or use of such tracts have been characterized as "futile"</u> and will not receive judicial approval . . . .

*Cohalan v. Schermerhorn*, 77 Misc. 2d 23 (Sup. Ct. Suffolk Co., 1973) (citations omitted, emphasis added). The use variance required for the Rabbinical College for higher density on 100 acres would be tantamount to an impermissible legislative act by the zoning board of appeals.

Second, and perhaps more significantly, New York law permits zoning boards to grant use variances only where <u>all</u> of the following statutory criteria are met: 1) that the applicant cannot realize a reasonable financial return, 2) the hardship is unique to the applicant's property, 3) the variance will not alter the essential character of the neighborhood, and 4) the alleged hardship was not self-created. VILLAGE LAW § 7-

712-b(2)(b); POMONA CODE § 130-28(D)(1). The Congregation cannot meet any of the four criteria, especially since the property can be developed with single-family homes and the Congregation was aware that its use was prohibited under the local code when it purchased the property.

Similarly, a "special use permit" is not available for Plaintiffs' use. Although the Board of Trustees is authorized to issue a special use permit for "Educational Institutions," VILLAGE CODE § 130-10(F), such "Educational Institutions" must be "accredited by the New York State Education Department or similar recognized accrediting agency." *Id.* § 130-4. As alleged in the FAC, there is no "recognized accrediting agency" that can accredit the Plaintiffs' specialized religious program. Furthermore, the Village's recent discriminatory "dormitory" legislation prevents the Congregation's use. *Id.*

**"Land use permit" and "site plan" are not even contemplated under the Village Code.** There is no such thing as a "land use permit." The Code provides for permitted uses and special uses, but there is no additional inchoate category that would permit this use. A "site plan" approval permits "the arrangement layout and design of the proposed use," *id.* § 130-4, and not the proposed use itself.

**If administrative remedies were available, seeking such remedies would be discriminatory and futile, and would cause irreparable harm.** Even if there was any available administrative relief—which there is not—applying for such permits or variances would be discriminatory[2] and wholly futile, as the clear and sufficient allegations of the FAC set forth. *See generally* FAC ¶¶ 70-87, 153-161, 182. Defendants have made no bones about their entrenched position against the Congregation's use. In fact, they were elected primarily on a platform of preventing such use, and have stated that they will "fight this plan," "stand up to this threat," and delay any application for the rabbinical college for four years while the Village saved for a "legal defense fund" to defend against an eventual lawsuit. *Id.* The Second Circuit in *Murphy* held that "a property owner need not pursue such applications when a zoning agency . . . has dug in its heels and made clear that all such applications will be denied." By their own words and actions, the Village has clearly "dug in its heels," and therefore any application by the Plaintiffs would be futile and cause irreparable injury to the Congregation by enabling the Village to delay any "application" for four years before an inevitable denial.[3]

**Standing.** Defendants note that the Congregation has not provided notice to the New York State Attorney General of its claims under the New York Civil Rights Law. The Plaintiffs have now done so, and will move to amend their Complaint to reflect this action. Defendants also claim that Plaintiffs lack standing to bring claims under the Fair Housing Act, 42 U.S.C. §§ 3604 & 3617, because the Village is not a seller or lessor of housing. The FHA is not so restrictive. A complete reading of the statute makes it unlawful "[t]o refuse to sell or rent . . . , or otherwise make unavailable or deny, a dwelling to any person because of . . . religion . . . ." 42 U.S.C. § 3604(a) (emphasis added). Defendants choose to ignore this fact as well as opinions that hold "[t]he phrase, 'otherwise make unavailable' has been interpreted to reach a wide variety of discriminatory housing practices, including discriminatory zoning restrictions." *LeBlanc-Sternberg, and Huntington Branch NAACP v. Huntington, N.Y.*, 844 F.2d 926, 938 (2d Cir.), *aff'd*, 488 U.S. 15 (1988). Similarly, the FHA makes it unlawful "[t]o coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, . . . any right granted or protected by section 3604 of this title." 42 U.S.C. § 3617. Plaintiffs have properly alleged this claim as well. FAC ¶ 168.

**"Generally failed to state viable claims."** Defendants state that Plaintiffs fail to state a viable claim. Since the Defendants fail to set forth the basis for such a branch of their anticipated motion, they fail to comply with the Your Honor's individual practices. The Congregation will address such an argument when and if it properly comes before this Court.

---

[2] A Catholic seminary, which may be accredited by both State and private accreditation agencies, may locate in the Village as a special use, but the rabbinical college cannot as it cannot be accredited. FAC ¶¶ 81-82.

[3] Regarding Plaintiffs' FHA claims, a case is justiciable where a claimant believes that he "will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i) (discussed in *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir. 1995)). Where it can be established that a zoning ordinance will likely be applied in a discriminatory manner, it is unnecessary that a municipality actually so apply it before the ordinance may be properly challenged. *LeBlanc-Sternberg*, 67 F.3d at 425. *See id.* (citing favorably *Park View Heights Corp. v. City of Black Jack*, 467 F. 2d 1208, 1214-16 (8th Cir. 1972) (rejecting the city's argument that the plaintiff's claims were not yet justiciable because none of them had applied for a building permit that had been rejected)).

Respectfully Submitted,

*[signature: Paul Savad]*

PAUL SAVAD
RS,JS,PS\mc
CC: Roman Storzer, Esq.
    John Stepanovich, Esq.
    Congregation Rabbinical College of Tartikov, Inc.
    Robinson & Cole, Esqs.
    Doris Ulman, Esq.

