educational institution to allow for colleges, graduate and post-graduate schools that are "accredited by the New York State Department of Education or similar recognized accrediting agency." Pomona Zoning Code, Article I (Authority and Purpose), § 130-4 (Terms Defined).

157.  Also in late 2004, the Village amended its zoning code to permit dormitories as an accessory use to a school, but explicitly prohibited housing that would accommodate students with families:   "Single-family, two-family and/or multifamily dwelling units other than as described above shall not be considered to be dormitories or part of dormitories." Pomona Zoning Code, Article I (Authority and Purpose), § 130-4 (Terms Defined).

158.  Further amendments in 2004, passed subsequent to the Congregation's purchase of the Subject Property, required dormitories to be on the same lot as the primary educational use, and there could be no more than one dormitory building on the lot. Village of Pomona Code, Article IV (Use Regulations), § 130-10 (Special Permit Uses), paragraph F (Educational Institutions), subparagraph 12.

159.  Upon information and belief, these provisions were enacted to prevent Jewish rabbinical scholars, who generally are married with children, from obtaining housing in Pomona.

160.  There was no rational basis for this action.  Many other jurisdictions throughout the country permit student family housing, and such use is in fact commonly provided at educational institutions, especially for graduate and post-graduate students.

161.  In September 2004, the Village again targeted the Subject Property in amending its zoning code by implementing a number of restrictions concerning building

34

coverage, impervious surface coverage, calculation of net lot area and road access, which are not imposed on other institutional and nonresidential land uses.

162.  On January 22, 2007, the Village again amended its code provision for educational institutions, adding a provision limiting the size of a dormitory building to twenty percent of the total square footage of all buildings on the lot.  Pomona Zoning Code, Article IV (Use Regulations), § 130-10 (Special Permit Uses), paragraph F (Educational Institutions), subparagraph 12.

163.  This twenty percent restriction effectively eliminates all dormitories since, applying generally accepted architectural standards and guidelines for school building square footage per student and dormitory square footage per student, such a restriction results in permitted school dormitories which could house a maximum of only approximately three percent (3%) of any student body.

164.  Upon information and belief, this "Dormitory" legislation was also designed and enacted specifically to prevent the Hasidic Jewish community from residing and obtaining housing within the Village.

165.  Community opposition was displayed through public comment at the hearing on the dormitory legislation and was mostly targeted at Hasidic Jews in general and at the Rabbinical College in particular.

166.  At a public Village hearing (which occurred shortly after news of the proposed Rabbinical College was made public), Mayor Marshall of Defendant Village stated:

> Ladies and gentlemen, let me say something.  We sitting at this table
> have limitations that are placed on us as to what we can say, and what we

35

can't say, because our attorney tells us what we can say and what we
can't say. I can't say what I feel – I can't – if I agree with you, I don't
agree with you, I don't have that luxury of being able to say that here. All
that I can say is that every member of this board works very, very hard to
do what is best for this community. You have your issues. Don't assume
because no one has gotten up and said, wow, I agree with you, oh boy;
don't assume that because we didn't do that that we don't agree.

167. The Journal-News reported on January 23, 2007 that "The [Village of
Pomona] board voted unanimously after a long and heated public hearing to make
some changes to the law in order to be able to block a planned rabbinical college.
Amendments include allowing no more than one communal dining room in a dormitory
building, and specifying the size of said buildings and the space they can occupy."

### Targeting the Congregation through Environmental Regulation

168. In December of 2006, at the same time the Village proposed to amend the
dormitory law, the Village proposed a new Wetlands Protection law (Village Code
§ 126) to require a 100-foot buffer around wetlands of two thousand square feet or
more. This provision governs wetlands that are currently subject to the jurisdiction of
the United States Army Corps of Engineers and/or New York State's Department of
Environmental Control.

169. In particular, the proposed wetlands law by its very terms exempts nearly
every lot in the entire Village, except for the Congregation's property (and perhaps a
very few other uses, if any).

36

170.   On April 23, 2007, the Village adopted the Wetlands Protection law, which included the following provision:  "All single-family residences are exempted from the 100-foot buffer requirement."

171.   Upon information and belief, this proposed wetlands code section was intended to restrict development of the Congregation's property, which contains 37 acres of wetlands under the jurisdiction of both the US Army Corps of Engineers and the NYSDEC.  The Village's 100-foot buffer encumbers an additional 10 acres of the Congregation's property.

172.   Since the entire area of the Village falls within its "R-40 District" for residential homes, and since the Village is almost completely built with single-family homes, the wetlands code is targeted at the Congregation's property, and upon information and belief, applies to very few (if any) other wetlands in the Village.

173.   The Wetlands Protection code of the Village has no reasonable basis and is irrational, in that it is use-based, exempting most of property in the Village (single-family homes) by use, and not based on any environmental factors.

174.   Upon information and belief, this "Wetlands" legislation was designed and enacted specifically to prevent the Hasidic Jewish community from locating and obtaining housing within the Village.

### Targeting of the Rabbinical College:  Opposition to the Congregation's Use by Elected Officials and Village

175.   Upon information and belief, the news of the Congregation's hypothetical sketch plat to build a Rabbinical College was apparently leaked to the "Preserve

Ramapo" group by one of the agencies that received a preliminary sketch plat showing potential maximum use of the property in connection with the Congregation's completion of its draft Environmental Impact Statement.

176.  Preserve Ramapo is a local private organization that has made public statements such as an "examination of population growth in Ramapo's Hassidic communities" should be "the central focus of any land use plan in Ramapo."

177.  Upon information and belief, based solely on this copy of a leaked preliminary drawing, with no further information, elected officials in the Village determined that such a use is illegal, and would delay through the environmental review process any such development for a sufficient time to raise funds to defend any court challenge.

178.  This position was voiced by the newly elected team of new Mayor Nicholas Sanderson (formerly the deputy mayor) and new Trustees Brett Yagel and Rita Louie when, prior to their election, they published and circulated campaign literature that stated that the Village will "fight this plan", and the "team . . . is prepared to stand up to this threat . . . ."  This "team" also hired a well-known anti-RLUIPA legal expert, Professor Marci Hamilton.

179.  Mayor Sanderson appeared in a campaign video where he said that the Rabbinical College could not only "change the village", but could change "the makeup of the village."  Upon information and belief, this "makeup of the village" statement referred to controlling the influx of Hasidic Jews into the Village.

180.  Upon information and belief, in early 2007, Defendant Sanderson publicly stated that "The single most important issue facing the village at this time is the as yet

un-proposed, but leaked, Rabbinical College development on Rt 306 in the village," and stated that the Village should "maintain[] its cultural and religious diversity." Upon information and belief, this statement referred to Mayor Sanderson's interest in controlling the influx of Hasidic Jews into the Village.

181.  After his election, newly elected Mayor Sanderson said: "if they use RLUIPA to get us, we will fight," referring to the College's intended use of the Property.

182.  Upon information and belief, Defendant Sanderson was elected on a platform that consisted mainly of preventing the Congregation from locating in Pomona.

183.  Defendants Yagel and Louie expressly warned a civic association to be careful not to allow discriminatory statements to slip out.  Other public statements by community residents include "We need to strategize as a community in private rather than use the public forums such as this site and the Village Hall…. Thanks, I know it is very hard to hold back, but we have to and do it right…. We have to play the game and do it right. If we have to be tricky fine, that's the legal system."

184.  Defendant Sanderson said that it would cost $1,000,000 to fight a RLUIPA challenge, and that the funds could be raised over the "3-5 years" before a lawsuit would be filed.

185.  Upon information and belief, the Defendants' conduct described herein has been made in a total vacuum of any information about the plans for the Rabbinical College and without seeing any of the studies performed, despite the Congregation's repeated pre-election and post-election offers to meet with the Board or other Village representatives to present the concept and the studies to the Village to begin a dialog on meeting any legitimate health, safety and welfare concerns.

39

**Targeting of the Rabbinical College: Community Hostility to Hasidic Jews**

186.   Discriminatory animus exists in Pomona and elsewhere in the Town of Ramapo against Orthodox and/or Hasidic Jews.  Upon information and belief, this animus played a significant role in the discriminatory actions undertaken by the Defendants and led directly to targeting of various Jewish uses of the Subject Property (including the Plaintiffs' proposed use), the legislation targeting the Plaintiffs' use, and the election of Mayor Sanderson and other members of the current Village Board.

187.   Many letters to the Editor of the Journal-News describe the community's opposition to the Congregation's use, which has been described in the newspaper as a "tribal ghetto."

188.   In local publications, the Hasidic population has been referred to as a "cult," "fake people," "Dark Hatted Orthodox Men prancing around Pomona" and "Hasidic schemers" by community residents.

189.   Other communications to the Journal-News by local residents state: "Just what the (orthodox) doctor ordered: another rabbinical college in Rockland, in this tiny village of Pomona . . . and will the last non-Israelite leaving Rockland County besides Jerry Seinfeld please turn out the lights?", "Just what Rockland needs.  More rabbis," ""Lord, though i walk through the Ramapo Valley overrun by Hasidic tax-exemptions causing the death of non-Hasids throughout the Ramapo Valley," and "the Hasidim give all 'Jews' a bad name and start to see this cult for what it is. A bunch of blood sucking self centered leeches . . . ."

190.   Other public statements include "paul savad [undersigned counsel] should

40

be hung by his balls in new square" (New Square is a nearby Hasidic community), "this 'college' is essentially [sic] an indoctrination [sic] center for medieval superstitions," and the proposed Rabbinical College is "a huge cult compound similar to 'JonesTown' ... Unless of course that the Grand Rebbe in charge of this waste of land and community resources will be providing his followers with the free spiked kool aid ... kosher of course."

191.  Local residents have publicly opined "is it fair that Rockland County will become mostly hasidic/orthodox? . . . . Just look at Wesley Hills where 15 years ago was predominantly non-orthodox and today it is completely Orthodox. Is this fair??" and "If the Monsey/Ramapo Hasidics, like their libidinal breathren in New Square, Kiryas Joel and Williamsburgh, cannot contain the deep love of sex (and consequently, the children sired from their libidinal inclinations) or their propensity to religiously propagate like rabbits, perhaps they might learn about Condoms. they were invented for this reason. and some Condoms are Kosher in helping warring/disputing Hasidic tribes from invading neighboring non-Hasidic tribes' communities throughout Rockland, Orange and Sullivan Counties."

192.  The Village Attorney for the Village of Pomona, Doris Ulman, while at a May 1, 2007 public seminar on the subject of RLUIPA which was held at a local library, stated to those in attendance that residents should not "cave into them and sell our houses," referring, upon information and belief, to the Hasidic population.  Much anti-Hasidic sentiment was expressed at the seminar.  For example, another individual was observed pointing to an individual dressed in traditional Hasidic Jewish garb (who was simply borrowing a book from the library) and described him as the "devil."

41

193.  An influential member of the local community, Mr. Robert Rhodes, chairman of the Preserve Ramapo organization, and an active voice in limiting the population of Hasidic Jews in Rockland County, has engaged in a systematic effort to prevent an increase in the Hasidic Jewish population, making statements such as: "[A]n examination of population growth in Ramapo's Hassidic communities should be the central focus of any land use plan in Ramapo," "this is a very poor community," "How fast can the expansion of housing for a Hassidic sect take place?," "I estimate that the non-Hassidic population is [sic] Rockland is growing about ten per cent (10%) a decade, and the Hassidic population is growing about one hundred per cent (100%) a decade," and "Child poverty is now growing more rapidly in Rockland County than in any other county in New York State . . . due primarily to increasing size of the Hassidic community in Monsey."

194.  Mr. Robert Rhodes has written, in a "Community View" column published in the Journal-News:

A serious analyst would also look at rates of family formation, fertility and so forth for each separate ethnic and/or religious group in Ramapo.

This statement was made in a context of discussing the Hasidic community in Ramapo.

195.  Mr. Rhodes has attacked the Hasidic community's existence in Ramapo with unfounded condemnation and stereotypes and unsupported facts and incited the public and local politicians, including named Defendants, with his actions.  He stated:

"Members of the Hassidic community do not come to Rockland as the result of simply individual or family decisions.  They come as members of congregations that move as a group.  Thus, it is quite possible that a

42

major new supply of legal housing in Monsey will have a perverse effect.

It may encourage the movement of more Hassidic sects to Ramapo,

creating an even worse housing crisis in the near future."

196.  Upon information and belief, there is a direct connection between this

community hostility against the Hasidic Jewish population generally and the Village

Administration's hostility to the Congregation's proposed Rabbinical College.

197.  Regarding Defendant Sanderson's election (which was described by the

press as an "upset") as Mayor of Pomona, the Journal-News reported on March 22,

2007: "In Rockland, Pomona's deputy mayor, Nicholas Sanderson, challenged Mayor

Herbert Marshall and won; his two running mates took trustee posts. A plan for a

rabbinical college in Pomona that could easily double the village population put

residents on alert."

198.  The Journal-News also reported on March 21, 2007: "POMONA - Mayor

Herbert Marshall was defeated last night by his deputy, Nicholas Sanderson, in a

contest defined by land-use concerns sparked by plans for a rabbinical college."

199.  A Journal-News editorial published on March 19, 2007 stated: "But the

campaign to watch is in Pomona.  There, development is certainly at the heart of the

village contest. A rabbinical college that would serve up to 1,000 students and their

families could be placed on 100 acres in the village."

200.  The Preserve Ramapo organization "strongly endorse[d]" Defendants

Sanderson, Yagel and Louie.

201.  Defendant Brett Yagel is a member of Preserve Ramapo.

202.  The Journal News published a letter by Lynn Yagel (wife of Defendant

43

Yagel) on February 1, 2007 describing the Rabbinical College as a project "that will house thousands of homogenous individuals who can control village elections . . . ."

203.  As described below, significant animus towards Hasidic Jews exists elsewhere in the Town of Ramapo and its Villages.

204.  A mayor of another Village in the Town of Ramapo stated: "What do you want should happen here?  Do you want synagogues all over the place?"

205.  A flyer distributed in the nearby Village of Wesley Hills reads in part: "LET YOUR VOICE BE HEARD!!!  WEDNESDAY AT 8:15 P.M. AT VILLAGE HALL.  Come one, come all !!!  First Frankl passed legislation for prayer halls.  On Wednesday night he is going to approve another synagogue.  If we don't put a stop to Frankl, they'll soon be growing like mushrooms.  This legislation now makes it possible to HAVE A SYNAGOGUE ON EVERY STREET AND ON EVERY BLOCK.  THAT INCLUDES NEXT DOOR TO YOUR HOME!!!  PROTEST NOW!!!"

206.  In response to this community sentiment, Defendant Mayor Sanderson ran for election and said in a letter to the editor of the Journal-News, :

"I have a vision for the Village of Pomona.  The year is 2011, during the last village board meeting before the village election. . . .  Next is a report about the Tartikov development.  The State Environmental Quality Review Act process is almost finished.  The Village Board will soon receive the application to make a decision on granting a special permit for the huge development, or deny it.  The Board knows that if it is denied, a Religious Land Use and Institutionalized Persons Act lawsuit will follow.  Fortunately, the Board has had a strong legal team in place for the last four years and is well prepared to fight for the Village. .

44

. . A resident asks if taxes will be going up this year. She (the Village treasurer) replies that the legal defense fund created four years ago is almost $1 million ahead of target, so no tax increase is foreseen. There is a murmur from the appreciative audience."

207. On February 12, 2007, the Village of Pomona adopted a resolution to ask the United State Congress to hold hearings to amend RLUIPA, ostensibly because the provisions of the law were "costly to municipalities in legal fees and other court-related expenses."

### Targeting of the Rabbinical College:
### The Village's Refusal to Meet with Rabbinical College Representatives

208. Prior to the submission of any professional plans, at public hearings of the Village Board on March 26, 2007 and April 12, 2007, a representative of the College requested a meeting with the Village representatives to discuss the proposed College project. As the proposed use is not a permitted land use within the Village, the Rabbinical College sought to discuss how its religious exercise may be accommodated by the Village.

209. By letters dated March 26, 2007 and April 25, 2007, representatives of the College requested a meeting with Village representatives to discuss the proposed College project.

210. On May 9, 2007, the Rabbinical College's attorney, Paul Savad, telephoned the Village Attorney, Doris Ulman, to discuss the Plaintiffs' proposed use. Mr. Savad followed up on this conversation with two letters dated May 10, 2007, stating that the Rabbinical College requested a "Public Meeting, for an informal design and

technical review of a proposed project."

211.  Ms. Ulman responded to this telephone call and correspondence in a letter dated May 14, 2007, stating in part that "In my opinion, any meeting, public or private, would be premature."  Upon information and belief, this comment by the Village Attorney was in furtherance of the Village's orchestrated plan to keep any zoning application by the Rabbinical College "tied up" in the administrative process for many years at the cost of millions to the Plaintiff Congregation, as promised by the newly elected mayor.

212.  On June 22, 2007, the Rabbinical College contacted the Mayor, Village Board, and Village Attorney by letter, again attempting to meet representatives of the Village to discuss its proposed use.  That letter specifically stated that the Rabbinical College was willing to seek a development for only 250 students.

213.  In that June 22, 2007 letter, the Rabbinical College informed the Village of its authority under 42 U.S.C. § 2000cc-3(e) to "avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden."

214.  On July 3, 2007, Defendant Sanderson responded to the Rabbinical College's June 22, 2007 letter, stating that it "cannot grant your request to have the Board of Trustees exempt [the Rabbinical College] from the provisions of the Pomona Zoning Law."

215.  Defendant Sanderson stated in his July 3, 2007 letter that the only remedy available for the Rabbinical College were legislative ones.  Defendant Sanderson also adopted the previous statements of the Village Attorney by stating that "[t]he Village Attorney has informed me that she has discussed Village procedures with you on more than one occasion."

216.   Upon information and belief, it is customary that various municipality bodies or commissions informally meet with proponents of new projects; however, the Village failed to do so with the Plaintiffs.

217.  In the past, the Village officials and Planning Board have met with landowners informally to discuss proposed uses of land.

218.  The Village has refused to meet with the Rabbinical College concerning its proposed use of land, treating it differently and worse than similarly situated landowners.

219.  The history described above, including the targeted laws, actions and conduct, and the statements made by public officials including the newly elected Mayor Sanderson, demonstrate the entrenched hostility to the Plaintiffs' use of the Subject Property as a Rabbinical College.

220.  The Defendants have therefore "dug in their heels" and have made it clear to the Congregation that any application for its use of the Subject Property as a Rabbinical College, even if such administrative relief existed, would be denied.

221.  Further, under New York law and the Village's Zoning Code, the Village's Zoning Board of Appeals lacks any authority to issue a variance for the Congregation's use of the Subject Property as a Rabbinical College.

47

222.  Defendants lack any authority to grant a special use permit, because such a permit can only be issued to "accredited" institutions by the New York State Education Department or "similar accrediting agency".  There is no accrediting agency that can accredit the Congregation's use of the Subject Property.  There is also no special use permit provision for the necessary housing component of the Rabbinical College.

## Facial Discrimination of Zoning Ordinance

223.  The Village's Zoning Code expressly permits "Educational Institutions" in its R-40 Zoning District, if they are "accredited by the New York State Education Department or similar recognized accrediting agency."  Pomona Zoning Code, Article II (Definitions), § 130-4 (Terms Defined).

224.  The proposed Rabbinical College is not accredited by the State of New York, nor can it be.

225.  There is no "similar recognized accrediting agency" for the Rabbinical College's proposed use.

226.  As such, this religious institution is being treated on "less than equal terms" as a nonreligious institution, such as a secular college or an accredited religious college.

## EXCLUSIONARY ZONING WITHOUT REGARD TO REGIONAL NEEDS

227.  The Village of Pomona was incorporated in 1967.

228.  The Zoning Code of the Village of Pomona establishes only one residential district encompassing the entire Village, the R-40 District, with a minimum lot of 40,000

48

square feet (one acre).  Pomona Zoning Code, Article III, § 130-5.

229.  The Village Code permits only the following residential uses: "one-family residences with one dwelling per lot (no commercial; no trailers; no multiple dwellings)", houses of worship, public utilities rights-of-way, libraries, museums, public parks, playgrounds and agricultural pursuits.  Pomona Zoning Code, Article IV, § 130-9(A).

230.  Upon information and belief, the principal reason for the incorporation of the Village of Pomona was to preserve a one-family residence lot pattern of development.

231.  Multi-family dwellings are specifically excluded.

232.  The Village has been designated by the New York State Department of Environmental Conservation as an "urbanized area."

233.  The Congregation's property is bordered by State Highways 202 and 306.

234.  The property, by virtue of its location, is reasonably adaptable for multi-family dwellings.

235.  Since its incorporation, the Village has amended its Zoning Code multiple times, but has not included any classification for multi-family residential housing, despite the fact that Pomona and the surrounding region, which includes all of Rockland County, New York, all or part of Orange County, New York, and all or part of Bergen County, New Jersey ("the Region"), has a burgeoning need for multi-family housing due to all of the following reasons:

     A.     The cost of single-family houses has increased and has become unaffordable.

     B.     Moderate and middle income households whose housing needs

49

cannot be met by the existing supply of multi-family housing has grown.

C.    Young families, including large numbers of Orthodox Jews, are moving into the region to avail themselves of the existing infrastructure of synagogues, housing for large families, yeshivas for boys, yeshivas for girls, high schools for boys, ritual baths, Kosher food stores, and Kosher restaurants.

D.    The growing Orthodox Jewish community is in need of additional affordable housing in proximity to the aforesaid infrastructure.

E.    The need for adult student housing for the Orthodox Jewish community has grown.

F.    The economy of the region has grown exponentially since the original passage of the Village Zoning Code, with more jobs and businesses in the region, requiring more housing.

236.  Robert Rhodes, the founder of Preserve Ramapo, has himself admitted that "There really is a desperate shortage of housing in the Hassidic community . . . ."

237.  The Village Master Plan Update in 1997 identified the then-apparent lack of affordable housing in the region, but failed to provide for multi-family housing in any form, even ignoring the recommendation of the Village planning consultant to include provisions for accessory use apartments.

238.  The Zoning Code of the Village of Pomona is unconstitutional under the New York Constitution in that it does not consider and fails to address the housing needs of the Village and of the region, and has the exclusionary effect of preventing

50

moderate income families from moving into the Village, and of preventing all but the wealthy from living there, and effectively preventing proportionate numbers of Hasidic Jews from living in the Village.

239.  The restrictions in the Village code are expressly framed for the purpose of excluding multi-family dwellings in order to preserve the Village as a gentrified community of one-family houses on large lots and to discourage the influx of the Hasidic Jewish community.

240.  Pomona's Zoning Code is illegal and invalid in that, inter alia, it was not enacted in accordance with a well considered plan, but instead was enacted to preclude a variety of densities and housing types within the Village.

241.  The exclusion of multi-family dwellings is unreasonable, discriminatory, exclusionary, arbitrary and oppressive, and unnecessary for the health, safety, morals or general welfare of the Village, and is not authorized by Article 7 of the Village Law of the State of New York, pursuant to which Pomona's Zoning Code was enacted.

242.  No legal or factual basis exists for the exclusion of multi-family dwellings within the Village.

243.  The zoning code of the Town of Ramapo, in which Pomona is located, and multiple other villages provide for affordable housing as do other towns and villages in Rockland County.

244.  The restriction of the Zoning Code of the Village of Pomona banning the erection of multi-family dwellings is unreasonable, oppressive and arbitrary in that it deprives the residents of Pomona and the Region of affordable housing.

245.  The restriction of the Zoning Code of the Village of Pomona banning the

51

erection of multi-family dwellings is unreasonable, oppressive and arbitrary and confiscatory in that it deprives the Congregation of the reasonable use of its land.

246.   The actions and conduct of the Village of Pomona, particularly through the restrictions of its Zoning Code and other targeted legislation have resulted in and continue to result in a disparate impact and/or disparate treatment upon these Plaintiffs and their opportunity to obtain housing because of the Village's anti-Hasidic animus and motive toward them.

247.   Through these actions and their conduct, the Defendants have intentionally interfered with the Plaintiffs' exercise or enjoyment of their rights to obtain available housing as granted or protected by law.

**AS A FIRST CAUSE OF ACTION**
**Free Exercise Clause**
**United States Constitution,**
**First and Fourteenth Amendments**
**42 U.S.C. § 1983**

248.   Plaintiffs repeat and reallege paragraphs "1" through "247" as if fully set forth herein.

249.   Defendants' laws and actions deprived and continue to deprive all Plaintiffs of their right to free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, (1) by substantially burdening the Plaintiffs' religious exercise without a compelling governmental interest; (2) by discriminating against and targeting the Plaintiffs for disfavor; (3) by prohibiting the Plaintiffs' use completely from the Village's

52

jurisdiction; and (4) by treating religious assemblies and institutions on less than equal terms as nonreligious assemblies and institutions.

250.  The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of its constitutional rights.

251.  Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS A SECOND CAUSE OF ACTION
### Free Speech Clause
### United States Constitution,
### First and Fourteenth Amendments
### 42 U.S.C. § 1983

252.  Plaintiffs repeat and reallege paragraphs "1" through "251" as if fully set forth herein.

253.  Defendants' laws and actions deprived and continue to deprive all Plaintiffs of their right to free speech and freedom of association, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by (1) prohibiting the Plaintiffs' protected expressive activity completely from the Village's jurisdiction; (2) by treating religious expressive activity on less than equal terms as nonreligious expressive activity; (3) by regulating expression and expressive conduct on the basis of the character of the speaker; (4) by failing to be content-neutral; (5) by failing to leave open any alternative channels of communication;

and (6) by enforcing regulations against expressive activity that are not narrowly tailored to serve a legitimated governmental objective.

254.   The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of its constitutional rights.

255.   Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS A THIRD CAUSE OF ACTION
### Freedom of Association
### United States Constitution,
### First and Fourteenth Amendments
### 42 U.S.C. § 1983

256.   Plaintiffs repeat and reallege paragraphs "1" through "255" as if fully set forth herein.

257.   Defendants' laws and actions deprived and continue to deprive Plaintiffs Congregation Rabbinical College of Tartikov, Rabbi Mordechi Babad, Rabbi Wolf Brief, Rabbi Herman Kahana, Rabbi Meir Margulis, Rabbi Gergely Neuman, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz, Rabbi Chaim Rosenberg, Rabbi Aryeh Royde and Rabbi David A. Menczer of their right to freedom of intimate association and freedom of expressive association, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by intruding unduly upon the Plaintiffs' right to marriage, childbirth, the raising and

54

education of children, and cohabitation with one's relatives, and by intruding upon the Plaintiffs' right to associate for purposes of protected expressive activity.

258.  The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of its constitutional rights.

259.  Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

**AS A FOURTH CAUSE OF ACTION**
**Equal Protection Clause**
**United States Constitution,**
**Fourteenth Amendment**
**42 U.S.C. § 1983**

260.   Plaintiffs repeat and reallege paragraphs "1" through "259" as if fully set forth herein.

261.  Defendants' laws and actions deprived and continue to deprive all Plaintiffs of their right to equal protection of the laws, as secured by the Fourteenth Amendment, by (1) discriminating against and targeting the Plaintiffs for disfavor; (2) by treating religious institutions on less than equal terms as similarly situated nonreligious institutions; and (3) by enforcing land use regulations which constitute a grave interference with fundamental rights.

262.  The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of its constitutional rights.

263.  Defendants have caused the Plaintiffs to suffer, and to continue to suffer,

55

irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS A FIFTH CAUSE OF ACTION
### "Substantial Burdens"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc(2)(a)

264.   Plaintiffs repeat and reallege paragraphs "1" through "263" as if fully set forth herein.

265.   Defendants' laws and actions deprived and continue to deprive Plaintiffs Congregation Rabbinical College of Tartikov, Rabbi Mordechai Babad, Rabbi Wolf Brief, Rabbi Herman Kahana, Rabbi Meir Margulis, Rabbi Gergely Neuman, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz, Rabbi Chaim Rosenberg, Rabbi Aryeh Royde and Rabbi David A. Menczer of their right to the free exercise of religion, as secured by the Religious Land Use and Institutionalized Persons Act, by imposing and implementing a land use regulation in a manner that places a substantial burden on the Plaintiffs' religious exercise without any compelling interest, and without using the least restrictive means of furthering any compelling interest.

## AS A SIXTH CAUSE OF ACTION
### "Nondiscrimination"
**Religious Land Use and Institutionalized Persons Act of 2000**
**42 U.S.C. § 2000cc(2)(b)(2)**

266.    Plaintiffs repeat and reallege paragraphs "1" through "265" as if fully set forth herein.

267.    Defendants' laws and actions deprived and continue to deprive Plaintiffs Congregation Rabbinical College of Tartikov, Rabbi Mordechai Babad, Rabbi Wolf Brief, Rabbi Herman Kahana, Rabbi Meir Margulis, Rabbi Gergely Neuman, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz, Rabbi Chaim Rosenberg, Rabbi Aryeh Royde and Rabbi David A. Menczer of their right to the free exercise of religion, as secured by the Religious Land Use and Institutionalized Persons Act, by imposing and implementing a land use regulation that discriminates against the Plaintiffs on the basis of religion.

## AS A SEVENTH CAUSE OF ACTION
### "Equal Terms"
**Religious Land Use and Institutionalized Persons Act of 2000**
**42 U.S.C. § 2000cc(2)(b)(1)**

268.    Plaintiffs repeat and reallege paragraphs "1" through "267" as if fully set forth herein.

269.    Defendants' laws and actions deprived and continue to deprive Plaintiffs Congregation Rabbinical College of Tartikov, Rabbi Mordechai Babad, Rabbi Wolf

Brief, Rabbi Herman Kahana, Rabbi Meir Margulis, Rabbi Gergely Neuman, Rabbi

Meilech Menczer, Rabbi Jacob Hershkowitz, Rabbi Chaim Rosenberg, Rabbi Aryeh

Royde and Rabbi David A. Menczer of their right to the free exercise of religion, as

secured by the Religious Land Use and Institutionalized Persons Act, by imposing and

implementing a land use regulation that treats religious assemblies and institutions on

less than equal terms as nonreligious assemblies and institutions.


## AS AN EIGHTH CAUSE OF ACTION
### "Exclusions and Limits"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc(2)(b)(3)(A)

270.   Plaintiffs repeat and reallege paragraphs "1" through "269" as if fully set

forth herein.

271.   Defendants' laws and actions deprived and continue to deprive Plaintiffs

Congregation Rabbinical College of Tartikov, Rabbi Mordechai Babad, Rabbi Wolf

Brief, Rabbi Herman Kahana, Rabbi Meir Margulis, Rabbi Gergely Neuman, Rabbi

Meilech Menczer, Rabbi Jacob Hershkowitz, Rabbi Chaim Rosenberg, Rabbi Aryeh

Royde and Rabbi David A. Menczer of their right to the free exercise of religion, as

secured by the Religious Land Use and Institutionalized Persons Act, by imposing and

implementing land use regulations that totally excludes the Congregation's use from its

jurisdiction.

## AS A NINTH CAUSE OF ACTION
### "Exclusions and Limits"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc(2)(b)(3)(B)

272.    Plaintiffs repeat and reallege paragraphs "1" through "271" as if fully set forth herein.

273.    Defendants' laws and actions deprived and continue to deprive Plaintiffs Congregation Rabbinical College of Tartikov, Rabbi Mordechai Babad, Rabbi Wolf Brief, Rabbi Herman Kahana, Rabbi Meir Margulis, Rabbi Gergely Neuman, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz, Rabbi Chaim Rosenberg, Rabbi Aryeh Royde and Rabbi David A. Menczer of their right to the free exercise of religion, as secured by the Religious Land Use and Institutionalized Persons Act, by unreasonably limiting religious institutions within its jurisdiction.

## AS A TENTH CAUSE OF ACTION
### New York State Constitution - Article 1, §§ 3, 8, 9 and 11

274.    Plaintiffs repeat and reallege paragraphs "1" through "273" as if fully set forth herein.

275.    The Defendants, by their acts, have acted under color of law and have conspired and continue to conspire, in breach of the rights of all Plaintiffs to protect their interests under the law in violation of Article I, § 3 (freedom of worship; religious liberty), Article 1 § 8 (freedom of speech), Article I, § 9 (right to assemble) and Article 1 § 11 (equal protection of laws; discrimination in civil rights prohibited) of the New York State Constitution.

## AS AN ELEVENTH CAUSE OF ACTION
### New York Civil Rights Law § 40-c
### Discrimination

276.    Plaintiffs repeat and reallege paragraphs "1" through "275" as if fully set forth herein.

277.   The Defendants, by their acts, have conspired under color of law and continue to conspire to abridge the rights of all Plaintiffs to be free from discriminatory applications and enforcement of its zoning code under Section 40-c(1) and (2) of the New York Civil Rights Law.

278.   The Plaintiffs duly served notice of this claim on the Attorney General of the State of New York, pursuant to Civil Rights Law § 40-d.

## AS A TWELFTH CAUSE OF ACTION
### Fair Housing Act
### 42 U.S.C. § 3604

279.    Plaintiffs repeat and reallege paragraphs "1" through "278" as if fully set forth herein.

280.   The Defendants, by their continuing conduct, acts and legislative enactments that prevent the application for, and construction and utilization of the Subject Property as a Rabbinical College, have intentionally discriminated against the Plaintiffs by making student housing "unavailable" within the Village of Pomona because of religion in violation of 42 U.S.C. § 3604(a).

281.   Defendants' zoning code provisions that prevent the application for, and

construction and utilization of the Subject Property as a Rabbinical College, as enacted and as applied, have had the effect and continue to have the effect, whether intended or not, of excluding Plaintiffs from obtaining student housing anywhere in the Village of Pomona by discriminating against the Plaintiffs based on religion, in violation of 42 U.S.C. § 3604(a).

282.   Plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(i) and they have suffered harm, damage and injury as a result of Defendants' conduct.

283.   Plaintiffs have no adequate remedy at law for such harm, damage and injury caused by Defendants' conduct.

284.   Defendants have caused the Plaintiffs to suffer, and continue to suffer irreparable harm, damage and injury, and the Plaintiffs will continue to suffer such harm unless the Defendants' acts and conduct complained of are permanently enjoined.

## AS A THIRTEENTH CAUSE OF ACTION
### Fair Housing Act
### 42 U.S.C. § 3617

285.   Plaintiffs repeat and reallege paragraphs "1" through "284" as if fully set forth herein.

286.   The Defendants, by their continuing conduct, acts and legislative enactments that prevent the application for, and construction and utilization of the Subject Property as a Rabbinical College, have intentionally discriminated against the Plaintiffs by interfering with the Plaintiffs' on account of their having exercised rights, or

having aided or encouraged other persons in the exercise or enjoyment of rights that are granted or protected by 42 U.S.C. § 3604 (a) in violation of 42 U.S.C. § 3617.

287.   Plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(i) and they have suffered harm, damage and injury as a result of Defendants' conduct.

288.   Plaintiffs have no adequate remedy at law for such harm, damage and injury caused by Defendants' conduct.

289.   Defendants have caused the Plaintiffs to suffer, and continue to suffer irreparable harm, damage and injury, and the Plaintiffs will continue to suffer such harm unless the Defendants' acts and conduct complained of are permanently enjoined.


## AS A FOURTEENTH CAUSE OF ACTION
### *Berenson* Doctrine
### Exclusionary Zoning

290.   Plaintiffs repeat and reallege paragraphs "1" through "289" as if fully set forth herein.

291.   The exclusion of multi-family housing by the Village of Pomona is not a valid exercise of the zoning authority delegated to the Village by Village Law § 7-700, and does not promote the health, safety or general welfare of the residents of the Village of Pomona.

292.   The Zoning Code of the Village of Pomona violates the standards set out by the New York Court of Appeals in *Berenson v. the Town of New Castle*, 38 N.Y.2d 102 (1975) and *Continental Building Company v. Town of North Salem*, 211 A.D.2d 88

62

(3d Dep't. 1995), *app. dism'd., lv. den.*, 86 N.Y.2d 818 (1995), and other cases, in that it does not consider the present regional housing needs of the region in which the Village is located, and such regional housing needs are not otherwise adequately provided for.

293.  The Village Zoning Code ignores the regional housing needs which has had an unjustifiably exclusionary effect and does not by its implementations provide to the Plaintiffs their rights to have adequate housing, which action violates Plaintiffs' rights as secured by the Constitution of the State of New York (Article 1, § 11, equal protection) and decisional law in New York State.

294.  The Village Zoning Code does not consider the housing needs of those in need of adult student housing or those who can only afford low or moderate income housing in the Village and in the region in which the Village is located, including the individual plaintiffs.

295.  By passing a Zoning Code that completely omits any provision for the construction of multi-family dwellings as of right, the Village has either acted for an exclusionary purpose, or the Zoning Code has brought about an exclusionary effect under *Berenson*, and has thwarted the fulfillment of the regional need for multi-family, adult student housing and moderate income housing.

296.  Defendants have caused the Congregation Rabbinical College of Tartikov, Inc. to suffer, and continue to suffer, irreparable harm, damage and injury.

297.  The Congregation will continue to suffer such damages unless the Village Zoning Code is declared unconstitutional and this Court directs Defendant Village to provide a comprehensive zoning plan to meet the regional needs and the requirements of the Jewish community seeking religious education, and to provide for multi-family

housing that can provide affordable housing to Plaintiffs and others who seek religious educational opportunities within the Village.

298.  The Congregation has no adequate remedy at law for the harm and damage caused by Defendants' violation of its constitutional rights

## RELIEF SOUGHT

WHEREFORE, Plaintiffs demand Judgment as follows:

**On the First through Fourth, Tenth and Eleventh Causes of Action:**

A.    Declaratory judgment holding the laws and actions of the Defendants that prevent the application for, and construction and utilization of the Subject Property as a Rabbinical College to be unconstitutional and illegal under the United States and New York Constitutions, and the New York Civil Rights Law;

B.    Annulment of those provisions of the Village Zoning Code that violate the Rabbinical College's civil rights and permanent injunctive relief enjoining all Defendants from unconstitutionally and illegally applying the laws and codes of the Village that prevent the application for, and construction and utilization of the Subject Property as a Rabbinical College;

C.    Declaratory judgment declaring that the Plaintiffs' use of the Subject Property as a Rabbinical College is permitted, subject to limitations designed to meet the Defendants' compelling public health and safety interests, and directing the Defendants to use the means of achieving

64

those interests that are least restrictive on the Plaintiffs' religious exercise;

D.  Appointment of a federal monitor to ensure that the Village complies with all orders of this Court by overseeing the actions of the Village so as to entitle the Plaintiffs to the relief awarded by the Court and to report to the Court as needed;

E.  An award to Plaintiffs of full costs, disbursements and attorneys' fees, to the extent permitted by law, arising out of Defendants' actions and land use decisions and out of this litigation; and

F.  Granting such other, further and different relief as to this court seems just, proper and equitable.


**On the Fifth through Ninth Causes of Action:**

A.  Declaratory judgment declaring that the Defendants have violated Plaintiffs Congregation Rabbinical College of Tartikov, Rabbi Mordechai Babad, Rabbi Wolf Brief, Rabbi Herman, Kahana, Rabbi Meir Margulis, Rabbi Gergerly Neuman, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz, Rabbi Chaim Rosenberg, Rabbi Aryeh Royde and Rabbi David A. Menczer's rights under RLUIPA;

B.  Annulment of those provisions of the Village Zoning Code that violate the Rabbinical College's statutory rights under RLUIPA and permanent injunctive relief enjoining all Defendants from illegally applying the laws and codes of the Village that prevent the application for, and construction and utilization of, the Subject Property as a Rabbinical College;

C.    Declaratory judgment declaring that the Plaintiffs' use of the Subject
      Property as a Rabbinical College is permitted, subject to limitations
      designed to meet the Defendants' compelling public health and safety
      interests, and directing the Defendants to use the means of achieving
      those interests that are least restrictive on the Plaintiffs' religious exercise;

D.    Appointment of a federal monitor to ensure that the Village complies with
      all orders of this Court by overseeing the actions of the Village so as to
      entitle the Plaintiffs to the relief awarded by the Court and to report to the
      Court as needed;

E.    An award to Plaintiffs of full costs, disbursements and attorneys' fees, to
      the extent permitted by law, arising out of Defendants' actions and land
      use decisions and out of this litigation; and

G.    Such other, further and different relief as to this Court seems just, proper
      and equitable.


**On the Twelfth and Thirteenth Causes of Action:**

A.    Declaratory judgment holding the laws and actions of the Defendants that
      prevent the application for, and construction and utilization of the Subject
      Property as a Rabbinical College deprive Plaintiffs of their statutory rights
      under the Fair Housing Act, as amended, and declaring that such action
      constitutes an illegal official act under color of law;

B.    Declaratory judgment declaring the laws and actions of the Defendants
      that prevent the application for, and construction and utilization of the

Subject Property as a Rabbinical College are facially invalid because such laws were adopted with the intent to discriminate and/or have a discriminatory effect upon Plaintiffs based upon religion, all in violation of the Fair Housing Act, as amended;

C.    Declaratory judgment declaring the laws and actions of the Defendants that prevent the application for, and construction and utilization of the Subject Property as a Rabbinical College are invalid as applied because such laws were adopted with the intent to discriminate and/or have a discriminatory effect upon Plaintiffs based upon religion , all in violation of the Fair Housing Act, as amended;

D.    Declaratory judgment declaring that portion of the Subject Property of the Rabbinical College used for dwelling purposes is a permitted use under the Fair Housing Act, as amended;

E.    Enjoinder of the Defendants their officers, employees, agents, successors and all others acting in concert with them from applying their laws in a manner that violates the Fair Housing Act, as amended, or undertaking any and all action in furtherance of these discriminatory and disparate acts;

D.    Appointment of a federal monitor to ensure that the Village complies with all orders of this Court by overseeing the actions of the Village so as to entitle the Plaintiffs to the relief awarded by the Court and to report to the Court as needed;

E.    An award to Plaintiffs of full costs, disbursements and attorneys' fees, to

the extent permitted by law, arising out of Defendants' actions and land

use decisions and out of this litigation; and

F.     Granting such other, further and different relief as to this Court seems

just, proper and equitable.


**On the Fourteenth Cause of Action:**

A.     Declaratory judgment holding the Village Zoning Code to be

unconstitutional under the New York Constitution, insofar as it excludes

multi-family housing, affordable housing and adult student housing and

otherwise fails to provide for an array of housing to meet the needs of the

Village and the region;

B.     Annulment of those provisions of the Village Zoning Code that prevent the

construction of appropriate affordable housing to meet the regional needs

of the region and the specific needs of the Plaintiffs' for housing for a

Rabbinical College;

C.     Directing that the Defendant Village provide a comprehensive zoning

plan to meet regional needs for housing and the needs of the religious

educational community and further directing the Village to provide multi-

family residential development in the zoning code to allow affordable

housing to Plaintiffs on the property of the Rabbinical College;

D.     Declaratory judgment declaring that the Village Code permit, accept and

process an as-of-right application for Plaintiffs' phased site plan and

granting said site plan final approval for a Rabbinical College and directing

68

the Building Inspector to issue a building permit for up to 250 residential units;

E.     Appointment of a federal monitor to ensure that the Village complies with all orders of this Court by overseeing the actions of the Village so as to entitle the Plaintiffs to the relief awarded by the Court and to report to the Court as needed;

F.     An award to Plaintiffs of full costs, disbursements and attorneys' fees, to the extent permitted by law, arising out of Defendants' actions and land use decisions and out of this litigation; and

G.     Granting such other, further and different relief as to this Court seems just, equitable and proper.

The Plaintiffs demand a trial by jury of all issues for which the Plaintiffs are entitled such a jury trial.

Dated:     Nanuet, New York
           November 14, 2007

           PAUL SAVAD, ESQ.  (5358)
           SUSAN COOPER, ESQ. (5433)
           Paul Savad & Associates
           Attorneys for Plaintiffs
           55 Old Turnpike Road - Suite 209
           Nanuet, New York 10954
           (845) 624-3820

69

ROMAN P. STORZER, ESQ.
ROBERT L. GREENE, ESQ. (5430)
Storzer & Greene, P.L.L.C.
1025 Connecticut Avenue, N.W.
Suite One Thousand
Washington, DC 20036
(202) 857-9766

JOHN G. STEPANOVICH, ESQ.(8876)
Lenz Stepanovich & Bergethon, PLC
448 Viking Drive, Suite 370
Virginia Beach VA 23452
(757) 498-7035

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------x

 CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., RABBI MORDECHAI BABAD, RABBI
WOLF BRIEF, RABBI HERMEN KAHANA, RABBI MEIR
MARGULIS, RABBI GERGELY NEUMAN, RABBI AKIVA
POLLACK and KOLEL BELZ OF MONSEY,                    Index No. 07 CV 06304

                                    Plaintiffs,       **AFFIDAVIT OF SERVICE**

          - against -

VILLAGE OF POMONA, NY; BOARD OF TRUSTEES OF
THE VILLAGE OF POMONA, NY; NICHOLAS SANDERSON,
AS MAYOR; IAN BANKS, ALMA SANDERS ROMAN,
RITA LOUIE and BRETT YAGEL, AS TRUSTEES AND IN
THEIR OFFICIAL CAPACITIES,
                                    Defendants.
-----------------------------------------------------------------------------------x

STATE OF NEW YORK, COUNTY OF ROCKLAND:

Illyana Flores, being duly sworn says: I am over 18 years of age and reside at Hillcrest,
New York.

On November 14, 2007, I served a true copy of the annexed Second Amended
Complaint by:

(X )            by depositing the same with an overnight delivery service in a wrapper
Overnight       properly addressed.  Said delivery was made prior to the latest time
Delivery        designated by the overnight delivery service for overnight delivery.
Service         The address and delivery service are indicated below:

          By United Parcel Service

          Joseph L. Clausen, Esq.
          Robinson & Cole, LLP
          885 Third Avenue, Suite 2800
          New York, New York 10022-4834

                                              _Illyana Flores_
                                              ILLYANA FLORES

Sworn to before me this
14th day of November, 2007

_____
Notary Public

SUSAN COOPER
Notary Public, State of New York
No. 4989636
Qualified in Rockland County
Commission Expires 12/16/0 9