UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------X

CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., RABBI MORDECHAI BABAD, RABBI
WOLF BRIEF, RABBI HERMEN KAHANA, RABBI MEIR          07 Civ. 6304 (KMK)(GAY)
MARGULIS, RABBI GERGELY NEUMAN, RABBI
MEILECH MENCZER, RABBI JACOB HERSHKOWITZ,
RABBICHAIM ROSENBERG, RABBI DAVID A. MENCZER,
RABBI ARYEH ROYDE, and KOLEL BELZ OF MONSEY,

                              Plaintiffs,

            -against-

VILLAGE OF POMONA, NY; BOARD OF TRUSTEES OF
THE VILLAGE OF POMONA, NY; NICHOLAS SANDERSON,
AS MAYOR; IAN BANKS, ALMA SANDERS ROMAN,
RITA LOUIE and BRETT YAGEL, AS TRUSTEES
AND IN THEIR OFFICIAL CAPACITIES,

                              Defendants.

------------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

*Respectfully Submitted,*

Paul Savad (PS 5358)
Susan Cooper (SC 5433)
Laura M. Feigenbaum (LF 2998)
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954

Roman P. Storzer (admitted *pro hac vice*)
Robert L. Greene (RG 5430)
Storzer & Greene, P.L.L.C.
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20036

John G. Stepanovich (JS 8876)
Lentz, Stepanovich & Bergethon P.L.C.
448 Viking Avenue, Suite 370
Virginia Beach, Virginia 10019

*Attorneys for Plaintiffs*

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION…………………………………………………………...1

II.     COUNTERSTATEMENT OF FACTS……………………………………...1

III.    STANDARD OF REVIEW…………………………………………………8

IV.     PLAINTIFFS' CLAIMS ARE RIPE……………………………………...9

        A.      Plaintiffs' Facial Challenges to the Village's Zoning Code Are Ripe….....9

        B.      Plaintiffs' As-applied Challenges Are Ripe……………………………...12

        C.      Second Circuit Precedent Establishes the Plaintiff's FHA
                Claims Are Clearly Ripe…………………………………………………21

V.      PLAINTIFFS HAVE STANDING TO RAISE THEIR CLAIMS……………22

        A.      Plaintiffs Have Suffered Personal Injury or Threat of Injury……………22

        B.      The Injury is Traceable to the Defendants' Codes and Actions…………25

        C.      The Injury is Likely to be Redressed by the Request Relief……………25

        D.      Supreme Court and Second Circuit Precedent Clearly Establish
                Plaintiffs' Standing to Assert Their Claims Under the Fair
                Housing Act………………………………………………………………..26

VI.     DEFENDANTS' MOTION TO DISMISS CERTAIN COUNTS OF
        PLAINTIFFS' SECOND AMENDED COMPLAINT FOR FAILURE
        TO STATE A CLAIM MUST BE DENIED…………………………………28

        A.      Plaintiffs' Second Amended Complaint States a Claim Under
                The First Amendment and RLUIPA, 42 U.S.C. § 2000cc(a),
                That the Village's Laws and Actions Substantially Burden
                Their Religious Exercise…………………………………………………28

        B.      Plaintiffs' "Equal Terms" Claim Should Not Be Dismissed……………33

        C.      Plaintiffs' Discrimination Claims Should Not Be Dismissed…………...34

        D.      Plaintiffs' Claim that the Defendants' Code and Targeted
                Ordinances Violate 42 U.S.C. § 2000cc(b)(3) Should Not
                Be Dismissed……………………………………………………………36

E.    Plaintiffs' Free Speech Claims Should Not Be Dismissed.................38

F.    Plaintiffs' Freedom of Association Claims Should Not Be Dismissed....39

CONCLUSION...........................................................................40

# TABLE OF AUTHORITIES

## CASES

**Page**

*1000 Friends of Oregon v. Clackamas Cy.*,
    94 P.3d 160 (Or. App. 2004)....................................................................25

*Abbott Labs. v. Gardner*,
    387 U.S. 136, 149 (1967)........................................................................19

*Abramson v. Gonzalez*,
    949 F.2d 1567 (11th Cir. 1992)................................................................14

*ACORN v. County of Nassau*,
    2006 WL 2053732, slip op. at *9 (E.D.N.Y. July 21, 2006)...........................23, 24

*Agostini v. Felton*,
    521 U.S. 203 (1997)..............................................................................10

*Albanian Associated Fund v. Township of Wayne*,
    Civ. No. 2:06-3217 (filed July 19, 2007).................................................35

*Altman v. Bedford Cent. Sch. Dist.*,
    245 F.3d 49 (2d Cir.)........................................................................ 29, 32

*Alpine Christian Fellowship v. County Comm'rs of Pitkin Cy.*,
    870 F. Supp. 991 (D. Colo. 1994)...........................................................29

*American Library Ass'n v. Reno*,
    33 F.3d 78 (D.C. Cir. 1994)....................................................................14

*Arlington Heights v. Metro. Hous. Dev. Corp.*
    429 U.S. 252 (1977) .......................................................................11

*Anaheim Gardens v. U.S.*,
    444 F.3d 1309 (Fed. Cir. 2006)..............................................................17

*Beck v. Prupis*,
    29 U.S. 494 (2000)..............................................................................12

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)...........................................................................8

*Blasecki v. City of Durham*,
    456 F.2d 87 (4th Cir.1972).....................................................................40

*Bowen v. City of New York*,
    476 U.S. 467 (1986).............................................................................21

*Brown v. State*,
    89 N.Y. 2d 172 (1996)..........................................................................40

*Califano v. Sanders*,
    430 U.S. 99(1977).............................................................................19

i

*Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara*,
    344 F.3d 822 (9th Cir.2003)..................... ............................... 17

*CCA Associates v. U.S.*,
    75 Fed. Cl. 170 (Fed. Cl. 2007)....................................................18

*Cf. Deerfield Hutterian Ass'n v. Ipswich Bd. of Ed.*,
    468 F. Supp. 1219 (S.D. 1979)....................................................30

*Church of the Hills v. Twp. of Bedminster*,
    2006 WL 462674, slip op. (D.N.J. Feb. 24, 2006)...........................28

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993)............................................. 11, 28, 33

*Cienega Gardens v. U.S.*,
    265 F.3d 1237 (Fed. Cir. 2001)................................... ...17

*City of Chula Vista v. Pagard*,
    171 Cal. Rptr. 738 (Cal. Ct. App. 1981)........... .............................30

*City of Coeur D'Alene v. Simpson*,
    136 P.3d 310 (Idaho 2006) ....................... ..............................18

*Cleveland v. Caplaw Enterprises*,
    448 F.3d 518 (2d Cir. 2006)........... ........................................9

*Congregation Beth Yitzchok of Rockland*,
    593 F. Supp. 655 (S.D.N.Y. 1984)..............................................33

*Congregation Kol Ami v. Abington Township*,
    309 F.3d 120 (3d Cir. 2002)......................................................33

*Congregation Mischknois Lavier Yakov v. Village of Airmont*,
    Civ. No. 02-5642 (S.D.N.Y. 2007)........................ ......................35

*Cottonwood Christian Center v. Cypress Redevelopment Agency*,
    218 F. Supp. 2d 1203 (C.D. Cal. 2002).........................................33, 36

*Country View Estates@ Ridge, LLC v. Town of Brookhaven*,
    452 F.Supp 2d 142 (EDNY 2006).............. ...............................19

*Davidson v. Davis*,
    1995 WL 60732 at *5 (S.D.N.Y. 1995).........................................31

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
    920 F.2d 1496 (9th Cir. 1990).....................................................18

*Donovan v. Town Bd. of Town of Oyster Bay*,
    72 N.Y.2d 804 (N.Y. 1988)........................................................18

*Ecogen, LLC v. Town of Italy*,
    438 F. Supp. 2d 149 (W.D.N.Y. 2006)......................................16, 19

*Eidelson v. Archer*,
    645 P.2d 171.(Ala. 1982)..........................................................20

*Elrod v. Burns*,
    427 U.S. 347 (1976)................................................................13

*Employment Div. v. Smith,*
    494 U.S. 872 (1990)................................................................................33

*Fair Hous. in Huntington Comm. Inc. v. Town of Huntington,*
    316 F.3d 357 (2d Cir. 2003)..................................................................24

*Farrell v. Burke,*
    449 F.3d 470 (2d Cir. 2006).................  .................................................11

*Fernandez v. City of Poughkeepsie,*
    67 F. Supp. 2d 222 (S.D.N.Y. 1999)......................................................40

*Fighting Finest, Inc. v. Bratton,*
    95 F.3d 224 (2d Cir. 1996)....................................................................40

*Freedom Baptist Church of Delaware County. v. Twp. of Middletown,*
    204 F. Supp. 2d 857 (E.D. Pa. 2002)............................................ .37-38

*Fund for Animals v. Babbitt,*
    89 F.3d 128 (2d Cir. 1996)......... ..........................................................23

*Gant v. Wallingford Bd. of Educ.,*
    69 F.3d 669 (2d Cir. 1995).......................................................................8

*Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock,*
    93 F.3d 68 (2d Cir. 1996)...............................................................14, 21

*Gold Diggers, LLC v. Town of Berlin,*
    469 F. Supp. 2d 43 (D. Conn. 2007).....................................................11

*Goldfine v. Kelly,*
    80 F Supp 2d 153 (S.D.N.Y. 2000)........................... .........................19

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418(2006)................................................................................33

*Graham v. Comm'r of Internal Revenue Serv.,*
    822 F.2d 844 (9th Cir. 1987).......................... ....................................31

*Greater Bible Way Temple of Jackson v. City of Jackson,*
    733 N.W.2d 734 (Mich. 2007)........................................ ............30

*Guru Nanak Sikh Soc'y v. County of Sutter,*
    456 F.3d 978 (9th Cir. 2006)......................... ....................................32

*Hanzel v. Arter,*
    625 F. Supp. 1259 (S.D. Ohio 1985).....................................................11

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)........................... ...............................................27

*Havurah v. Zoning Bd. of Appeals,*
    418 A.2d 82 (Conn. 1979).....................................................................30

*HEB Ministries, Inc. v. Texas Higher Educ. Coordinating Bd.,*
    235 S.W.3d 627 (Tex. 2007)..................................................................17

*Hoehne v. County of San Benito,*
    870 F.2d 529 (9th Cir. 1989)........................... ....................................20

iii

*Honess 52 Corp. v Town of Fishkill,*
    1 F. Supp 2d 294, (S.D.N.Y. 1998)......................................................16

*House of Good Shepherd v. Dep't. of Revenue,*
    710 P.2d 778, (Ore. 1985)...........................................................30

*Huntington Branch, NAACP v. Town of Huntington,*
    689 F.2d at 391 (2d. Cir 1982)..............................................21, 26

*Innovative Health Systems, Inc. v. City of White Plains,*
    117 F.3d 37 (2d Cir. 1997)...........................................................24

*Islamic Center of Miss. v. City of Starkville,*
    840 F.2d 293 (5th Cir. 1988).................................................36, 37

*Jacobs v. The Florida Bar,*
    50 F.3d 901 (11th Cir. 1995)....................................................14

*Kasper v. Town of Brookhaven,*
    122 A.D.2d 200 (N.Y. App. Div. 1986).................................18

*Kittay v. Giuliani,*
    112 F Supp. 2d 342 (S.D.N.Y. 2000).....................................19

*Lamar Advertising of Penn, LLC v. Town of Orchard Park, New York,*
    356 F.3d 365, 375 (2d Cir. 2004).............................................26

*League of Residential Neighborhood Advocates v. City of Los Angeles,*
    498 F.3d 1052 (9th Cir. 2007)............................................25

*Leblanc-Sternberg v. Fletcher ,*
    67 F.3d 412 (2d Cir. 1995)...............................10, 11, 13, 21, 22, 26, 27, 30, 35, 36

*Leblanc-Sternberg v. Fletcher ,*
    781 F.Supp. 261 (S.D.N.Y. 1991).........................................21

*Lerman v. Bd. of Elections of New York,*
    232 F.3d 135, 144 (2d Cir. 2000), *cert. denied,* 533 U.S. 915(2001)...................12

*Lighthouse Institute for Evangelism v. City of Long Branch,*
    2007 WL 4166239, at *16 (3d Cir. Nov. 27, 2007).........................................29, 34

*Loyal Tire & Auto Center, Inc. v. Town of Woodbury,*
    445 F.3d 136 (2d Cir. 2006)...........................................................10

*Lucas v. South Carolina Coastal Council,*
    505 U.S. 1003 (1992)...........................................................17

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).........................................................22, 25

*Lunney v. United States,*
    319 F.3d 550 (2d Cir. 2003)............................................................8

*Marin v. Arizona,*
    246 F.3d 674 (9th Cir. 2000).....................................................24

*Marks v. City of Chesapeake,*
    883 F.2d 308 (4th Cir. 1989)....................................................35

*Martinez v. City of Schenectedy,*
    97 N.Y.2d 78..................................................................................................40
*Meyer v. Nebraska,*
    262 U.S. 390 (1923)...................................................................................38
*Midrash Sephardi, Inc. v. Town of Surfside,*
    366 F.3d at 1234 (11th Cir. 2004).............................................................35
*Mintz v. Roman Catholic Bishop of Springfield,*
    424 F. Supp. 2d 309 (D. Mass. 2006).......................................................29
*Muhammad v. New York City Trans. Auth.,*
    450 F. Supp.2d 198 ((E.D.N.Y. 2006).......................................................40
*Murphy v. New Milford Zoning Comm'n,*
    402 F.3d at 349 (2d Cir. 2005)...........................................16, 17, 20, 32
*NAACP v. Alabama,*
    357 U.S. 449 (1958).....................................................................................39
*N. Shore Unitarian Universalist Soc., Inc. v. Inc. Vill. of Upper Brookville,*
    110 A.D.2d 123 (N.Y. App. Div. 1985).................... ...............................38

*Napolitano v. Town Bd. of the Town of Oyster Bay,*
    128 A.D.2d 536, 512 N.Y.S.2d 466 (N.Y. App. Div. 1987)...................18

*Nasierowski Bros. Inv. Co. v. City of Sterling Heights,*
    949 F.2d 890 (6th Cir. 1991).......................................................................15
*New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey*
*State Bd. Of Higher Educ.,*
    654 F.2d 868 (3d Cir. 1981)........................................................ ...17, 38
*Norman v. Town Bd. of Town of Orangetown,*
    118 A.D.2d 839 (N.Y. App. Div.  1986)....................................................18
*NYC C.L.A.S.H., Inc. v. City of New York,*
    315 F. Supp. 2d 461 (S.D.N.Y. 2004).......................................................39
*Ohnmeiss v. C. I. R.,*
    T.C. Memo. 1991-594, 1991 WL 251528 (Tax Ct.  1991)....................30
*Open Homes Fellowship, Inc. v. Orange County.,*
    325 F. Supp. 2d 1349 (M.D. Fla. 2004).....................................................34
*Palazzolo v. Rhode Island,*
    533 U.S. 606 (2001)....................................................................................14
*Palmetto Properties v. County of DuPage,*
    160 F. Supp. 2d 876 (N.D. Ill. 2001)........................................................37
*Park View Heights Corp v. City of Black Jack,*
    467 F.2d 1208 (8th Cir. 1972).....................................................................22
*Paulsen v. County of Nassau,*
    925 F.2d 65 (2d Cir. 1991)..........................................................................13
*People v. Katz,*
    233 N.E.2d 845 (NY 1967).........................................................................37

*Personnel Adm'r of Mass. v. Feeney,*
    442 U.S. 256 (Mass. 1979)................................................................... 10,11

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County,*
    450 F.3d 1295 (11th Cir. 2006)...........................................................23, 25

*Reese v. Coughlin,*
    1996 WL 374166, *6 (S.D.N.Y. July 3, 1996)........................................31

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984)............................................................................39

*Roth v. Jennings,*
    489 F.3d 499 (2d Cir. 2007)...................................................................8

*San Jose Christian Coll. v. City of Morgan Hill*
    360 F.3d 1024 (9th Cir. 2004)............................................................12, 40

*Schad v. Borough of Mt. Ephraim,*
    452 U.S. 61 (1981)............................................................................36, 37

*Shepherd Montessori Ctr. Milan v. Ann Arbor Charter Twp.,*
    675 N.W.2d 271 (Mich. Ct. App. 2004)................................................29, 30

*Sherbert v. Verner,*
    374 U.S. 398 (1963)...........................................................................32

*Singh v. City of New York,*
    418 F. Supp. 2d 390 (S.D.N.Y. 2005).....................................................40

*Sisters of St. Francis Health Services, Inc. v. Morgan County,*
    397 F. Supp. 2d 1032 (S.D. Ind. 2005)...........................................13, 14, 21

*Southview Assoc., Ltd. v. Bongartz,*
    980 F.2d 84 (2d Cir. 1992)...................................................................19

*Sts. Constantine & Helen Greek Orthodox Church v. City of New Berlin,*
    396 F.3d 895 (7th Cir. 2005)............................................................31, 32

*Sugarman v. Vill. of Chester,*
    192 F. Supp. 2d 282 (S.D.N.Y. 2002).....................................................11

*Suitum v. Tahoe Reg'l Planning Agency,*
    520 U.S. 725 (1997)..........................................................................9, 14

*Tenafly Eruv Ass'n v. Borough of Tenafly,*
    309 F.3d 144 (3d Cir. 200 ................................................................35, 39

*The Presbyterian Church (U.S.A.) v. United States,*
    870 F.2d 518 (9th Cir. 1989)..............................................................36, 40

*Thomas v. Collins,*
    323 U.S. 516 (1945)...........................................................................40

*Thomas v. Review Bd. of the Indiana Employment Sec. Div.,*
    450 U.S. 707 (1981)...........................................................................30

*Trafficante v. Metro. Life Ins. Co.,*
    409 U.S. 205 (1972)........................................................................26-27

*Triple G Landfills v. Board of Comm'rs of Fountain County, Ind.*,
   977 F.2d 287 (7th Cir. 1992)...............................................................................14
*Tsombanidis v. West Haven Fire Dep'tment*,
   352 F.3d 565 (2d Cir. 2003)...............................................................................26
*Turner Broad. Sys., Inc. v FCC*,
   512 U.S. 622 (1994)...........................................................................................10
*United States v. Salerno*,
   481 U.S. 739 (1987)...........................................................................................11
*United States v. Vill. of Suffern*,
   Civ. No. 06-7713 (complaint filed Sept. 26, 2006)..........................................35
*United States v. Yonkers Bd. of Educ.*,
   837 F.2d 1181 (2d Cir. 1987).............................................................................10
*Vietnamese Buddhism Study Temple In Am. v. City of Garden Grove*,
   460 F. Supp.2d 1165, (C.D. Cal. 2006).............................................................30
*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977)...........................................................................................11
*Vill of Chestnut Ridge v. Town of Ramapo*,
   2007 WL 2317416 (N.Y. App. Div. 2007)..........................................................35
*Vision Church v. Village of Long Grove*,
   468 F.3d 975 (7th Cir. 2006)...............................................................................37
*W.J.F. Realty Corp. v. Town of Southampton*,
   351 F. Supp. 2d 18 (E.D.N.Y. 2004)..................................................................20
*White Mtn. Apache Tribe v. Hodel*,
   840 F.2d 675 (9th Cir. 1988).............................................................................16
*Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,
   473 U.S. at 172 (1985)...............................................................9, 15-16, 18
*Xikis v. New York*,
   1990 U.S. Dist. LEXIS 13715 (E.D.N.Y. 1990)...............................................19
*Yee v. City of Escondido*,
   503 U.S. 519 (1992)............................................................................................9
*Yeshiva Chofetz Chaim Radin v. Village of New Hempstead*,
   98 F. Supp. 2d 347 (S.D.N.Y. 2000)..................................................................35
*Yonkers Racing Corp. v. City of Yonkers*,
   858 F.2d 855 (2d Cir. 1988)...............................................................................30

## CONSTITUTIONS

U.S. CONSTITUTION, FIRST AMENDMENT, ARTICLE III.................................1, 19 ,22 ,24 ,26

U.S. CONSTITUTION, FIRST AMENDMENT.....................................11-13, 17, 19, 28, 29, 36-39

NY STATE CONSTITUTION, ARTICLE I, §§3, 8...................................................................40

## STATUTES

42 U.S.C. §1983.................................................................................13, 14, 25

42 U.S.C. § 2000cc(a)................................................................................32

42 U.S.C. § 2000cc(a)(1)......................................................................12, 28

42 U.S.C. § 2000cc(a)(2)(B)......................................................................28

42 U.S.C. § 2000cc(b)(1)............................................................................31

42 U.S.C. § 2000cc(b)(3)............................................................................12

42 U.S.C. § 2000cc(b)(3)(A).................................................................12, 37

42 U.S.C. § 2000cc(b)(3)(A)-(B)...............................................................36

42 U.S.C. § 2000cc(b)(3)(B)......................................................................37

42 U.S.C. § 2000cc 3(g)........................................................................29, 34

42 U.S.C. § 2000cc(4)(f)............................................................................35

42 U.S.C. §3613(a)(1)(A)...........................................................................26

FED. R. CIV. P. 12(b)(1)..........................................................................2, 18

FED. R. CIV. P. 12(b)(6).......................................................................8, 9, 28

FED. R. CIV. P. 12(d)....................................................................................9

N.Y. EDUC. L. § 224.....................................................................................5

6 NYCRR §§ 617.2, 617.3(g)(1).................................................................6

VILLAGE CODE Chapter 126....................................................................6, 15

VILLAGE CODE § 130-4.......................................................5, 6, 14, 15, 31

VILLAGE CODE § 130-5..............................................................................14

VILLAGE CODE § 130-9........................................................................14, 31

VILLAGE CODE § 130-10.................................................4, 5, 14, 16, 31

VILLAGE CODE § 130-28(D)(1)................................................................18

Village CODE §§ 130-35 – 130-45.............................................................6

viii

## I.    INTRODUCTION

Defendants' Motion to Dismiss ("MTD") the Plaintiffs' Second Amended Complaint ("SAC") is an effort designed to direct this Court's attention away from the material factual allegations presented in the Complaint. Defendants continue to vilify the Plaintiffs and anyone associated with them in order to recast the facts of this case. This ignores the true undercurrent of what is happening in Pomona, where a new administration was elected on a platform of keeping the Plaintiffs out of that "close knit community." Plaintiffs are compelled to respond to these aspersions in order to avoid even the slightest possibility that this Court accepts the Village's allegations.

This case is about the Plaintiffs' right to live in a community free from discriminatory, burdensome, and unreasonable regulations, and free to engage in their constitutionally protected religious speech, worship, and education. The essence of the Defendants' Motion is that, in order for the Plaintiffs' claims—even the facial challenges to the Village's Zoning Code and its concrete pre-enforcement as-applied challenges—to be ripe for adjudication, Plaintiffs must first attempt to apply for administrative relief that does not exist, or to petition for legislative changes in the very laws that burden and discriminate against their religious exercise.[1] Plaintiffs respectfully request that this honorable Court deny Defendants' Motion in its entirety and reject such a radical and unprecedented theory of standing—that a party may not challenge a law in an Article III court until it attempts to change the law through the political process.

## II.    COUNTERSTATEMENT OF FACTS

---

[1] Defendants' argument either ignores or fundamentally misunderstands Plaintiffs' challenge. Plaintiffs do not challenge any denial of a land use permit (as no such administrative process is available to them) or request that this Court grant them a "free pass" to build a Rabbinical College exempt from legitimate land use regulation. Rather, Plaintiffs challenge the provisions of the Village's Code—both facially and as-applied to the Congregation—which prevent them from worshiping, studying and living within the Village.

1

There are two distinct types of claims presented in Plaintiffs' Complaint: (1) the burdening of fundamental freedoms of religion, speech and association, which is constitutionally suspect even if motivated by "legitimate" concerns; and (2) the discriminatory nature of the Village's Code and the motivation behind recently passed ordinances. At its heart, this case is the most recent in a series of lawsuits arising from a cultural clash, now at a flashpoint in the Town of Ramapo, caused by the natural expansion of the Jewish Orthodox and Hasidic populations into areas where the existing homogeneous population seeks instead to preserve the status quo.

A. The Nature of the Parties.

1. **The Congregation**. The Congregation Rabbinical College of Tartikov, Inc. ("the Congregation") was formed in 2004 for the sole purpose of building and operating a religious school to offer a program to train rabbinical judges who, upon completion of their studies, would serve on religiously mandated *bais dins* (Rabbinical Courts), and counsel Orthodox Jews on matters that arise daily concerning the correct application of Jewish Law to literally every aspect of their lives.[2] SAC ¶ 46, 50-59; M. Babad Aff. ¶ 15; N. Babad Aff. ¶ 2.[3]

Plaintiff Rabbi Mordechai Babad, who will be Dean of the new College, is a full-time rabbinical judge and Dean at Mechon L'Hoyroa in Monsey, New York, the first traditional 15-year program established in the United States in 1976 by the father of one of the Congregation's trustees,

---

[2] There is a dire need in the Orthodox Jewish communities for rabbinical judges because very few of them survived World War II and no training programs existed in the United States until decades later; yet still there are not enough to train a new generation of judges to serve the Orthodox Jewish population in this country. SAC ¶¶ 24, 30-33, 29, 47-48; Tauber Aff. ¶¶ 3-4, 9; M. Babad Aff. ¶¶ 8, 17; N. Babad Aff. ¶¶ 1, 3-4; Fleishman Aff. ¶ 5. The Congregation seeks to recreate the centuries-old religious practice in small towns throughout Eastern Europe, where each town had its own *bais din*. SAC ¶ 29; N. Babad Aff. ¶ 2.

[3] The attached affidavits are submitted in opposition to Defendants' 12(b)(1) motion challenging this Court's jurisdiction for lack of standing and ripeness; they are not offered in opposition to Defendants' 12(b)(6) motion. They establish that Plaintiffs have standing to raise these claims, and that their claims are ripe. They also refute the unsupported and irrelevant attacks on the sincerity of the Plaintiffs' beliefs.

Michael Tauber.[4]  SAC ¶ 20; M. Babad Aff. ¶¶ 1-2, 8; Tauber Aff. ¶ 4.[5]  Two of Rabbi Mordechai Babad's brothers are also rabbinical judges, one being Rabbi Naftali Babad, who is the Dean of Yechiel Mechil of Tartikov, which also operates a 15-year program to train rabbinical judges in Brooklyn.[6]  M. Babad Aff. ¶¶ 6, 7.  It was founded by his father in 1980, and named after the Babad family's town in Poland.  N. Babad Aff. ¶ 1-2.  Another brother, Chaim Babad, is a real estate developer who donates funds for the operation of the Brooklyn school and plans to do the same for the Congregation.  M. Babad Aff. ¶ 7; N. Babad Aff. ¶ 3.

Michael Tauber, who is attacked in Defendants' papers as the man "behind the curtain," MTD at 2, 6, is a trustee of the Congregation, the son of a respected rabbinical scholar and the nephew of the Dean of Mechon L'Hoyroa and developer of its 15-year curriculum. Tauber Aff. ¶¶ 3-5.  To direct attention away from the material allegations of the Complaint, the Defendants maliciously attack Michael Tauber's character and integrity, falsely suggesting that his interest in the project is solely as an investor, which he is *not*.  MTD at 2, 6; Tauber Aff. ¶ 17.  Mr. Tauber was never found to have lied about the tax exempt status of an unrelated congregation, and never "partnered with Hanoch Babad" in this unrelated religious corporation, as Defendants falsely and irrelevantly allege. Tauber Aff. ¶¶ 15-16.

**2.  The Private Individuals.**  Plaintiffs Hershkowitz, Rosenberg, Royde and the two

---

[4] Rabbi Mordechai Babad is not now, nor has he ever been a "real estate developer."  MTD at 7; M. Babad Aff. ¶ 3.  This is but one of the many claims of Defendants in their Motion to Dismiss that has absolutely no basis in fact and is submitted in an attempt to discredit the Plaintiffs.

[5] Currently, there are twenty students studying in Mechon L'Hoyroa's 15-year program, which is at capacity.  M. Babad Aff. ¶ 8; Tauber Aff. ¶ 6.

[6] The Defendants cynically and irrelevantly question the need for 15 years of study, MTD at 8 n.14, and suggest that Yechiel Mechil of Tartikov, an affiliate of the Congregation, is actually in the real estate development business and is not actually operating any "allege[d]" rabbinical college.  MTD at 6.  To the extent that Defendants' arguments address the Plaintiffs' standing in this suit, Plaintiffs wish to inform the Court that the school is undeniably real.  N. Babad Aff. ¶ 2; Tauber Aff. ¶¶ 4-7 & Exh. A (photograph of study hall).

Menczers are all Rabbis and members of the Congregation.[7]  They are currently studying at Plaintiff Kolel Belz of Monsey[8] in precursor studies to enter the Rabbinical College, where they have already been accepted.  SAC ¶¶ 15-19; Hershkowitz Aff. ¶¶ 2, 4; Rosenberg Aff. ¶¶ 2, 4; Royde Aff. ¶¶ 2, 4; D. Menczer Aff.  ¶¶ 2, 4; M. Menczer Aff. ¶¶ 2, 11.  Without the Rabbinical College, there is no place for them to continue their religious training in order to become rabbinical judges.  Hershkowitz Aff. ¶ 4; Rosenberg Aff. ¶ 4; Royde Aff. ¶ 4; D. Menczer Aff. ¶ 4; M. Menczer Aff. ¶ 11.  Mechon L'Hoyroa and Yechiel Mechil of Tartikov, both offering a 15-year program for rabbinical judges, are full to capacity with 120 students combined.  N. Babad Aff. ¶ 1; M. Babad Aff. ¶ 8; Tauber Aff. ¶¶ 6, 9.  Plaintiffs Marguilis and Neumann are currently studying at Mechon L'Hoyroa in Monsey, as they also wait to enter the Rabbinical College, where they too have been accepted and will also live.  SAC ¶¶ 11-12; Margulis Aff. ¶ 9; Neumann Aff. ¶ 9.

Plaintiffs Brief and Kahana are Rabbinical Judges at Mechon L'Hoyroa, and desire to be lecturers for the rabbinical students, but due to the unavailablility of such programs are unable to do so.  SAC ¶¶ 13-14; Brief Aff. ¶ 5; Kahana Aff. ¶ 5.  They will also live at the College.  All Plaintiffs sincerely believe that qualified rabbinical judges must be fully trained in all four volumes of the *Shulchan Aruch* in order to carry out their duties necessary for Orthodox Jews to live according to their religious laws and beliefs.  M. Babad Aff. ¶ 9; M. Menczer Aff. ¶ 2-4; Hershkowitz Aff. ¶¶ 3, 7; Rosenberg Aff. ¶¶ 3, 7; Royde Aff. ¶¶ 3, 7; D. Menczer Aff. ¶¶ 3, 7. Margulis Aff. ¶¶ 3, 8; Neumann Aff. ¶¶ 3, 8; Brief Aff. ¶¶ 2, 5, 6; Kahana Aff. ¶¶ 2, 5, 6.

---

[7] It is not true that the individual Plaintiffs are "already studying to become rabbi judges in facilities located nearby."  MTD at 33.  Plaintiffs Menczer, Hershkowitz, Rosenberg, Menczer, Royde, Margulis and Neumann are currently engaged in a course of rabbinical study to become *dayanim*, not rabbinical judges.  None of the plaintiffs are currently engaged in studies to become rabbinical judges.  Hershkowitz Aff. ¶¶ 2, 8; Rosenberg Aff. ¶¶ 2, 8; D. Menczer Aff. ¶¶ 2, 8; Royde Aff. ¶¶ 2, 8; Margulis Aff. ¶¶ 2, 4, 9; Neumann Aff. ¶¶ 2, 4, 9; M. Menczer Aff. ¶¶ 5, 8-11.

[8] Kolel Belz of Monsey does not have a program for the training of rabbinical judges.  M. Menczer Aff. ¶¶ 7-10.

**3. Kolel Belz.** Kolel Belz of Monsey is a study program for Orthodox Jews, including five Plaintiffs and five other Congregation members. Fleishman Aff. ¶¶ 3-4; Hershkowitz Aff. ¶ 2; Rosenberg Aff. ¶ 2; Royde Aff. ¶ 2; D. Menczer Aff. ¶ 2. The Belz sect in Monsey has over 200 members, yet it has no *bais din*, and their disputes often do not get resolved according to their religious beliefs.[9] Fleishman Aff. ¶ 5. Now that some of the Belz students have the commitment of the Congregation to train them as rabbinical judges, they intend to return and serve on *bais dins* in the growing Belz community. Fleishman Aff. ¶ 7.

B. The Village's Zoning Laws.

**1. Prohibition on non-accredited schools.** Pomona's current zoning laws provide for colleges by special permit, but only if the school is accredited by the State or by a "similar recognized accrediting agency." VILLAGE CODE §§ 130-4, 130-10(F); SAC ¶ 93; Exh. 18 (Letters of Village Attorney Doris Ulman Mayor Sanderson). The Rabbinical College cannot be accredited by the State[10] nor by a "similar recognized accrediting agency" despite the Defendants' allegation to the contrary.[11] SAC ¶¶ 105-106; MTD at 3. The Defendants' list of accredited schools is simply that—a list without any explanation of why those schools were accredited by an outside accreditation agency, "AARTS." MTD at 23 n.31. These schools met the criteria for accreditation because they offer different programs than the Congregation's.[12] The Congregation is thus

---

[9] Due to the general backlog of disputes being heard by *bais dins* in other Jewish communities, matters brought in from outside Jewish sects are often handled after those of the respective *bais din* community, resulting in delays that make the process unavailable. Fleishman Aff. ¶ 5. Some individuals simply abandon their claims, or resort to civil courts, both of which violate their religious beliefs. *Id.* ¶ 7.

[10] The State certifies degree-granting institutions, which the rabbinical college does not qualify for. N.Y. EDUC. L. § 224(3); Defendants' Exh. G (State regulations). (The requirement for consent to use the name "college," N.Y. EDUC. L. § 224(1) is apparently pro forma. Exh. 15.)

[11] As such, it is not true that "every other land owner and citizen" must go through the same "usual zoning process." MTD at 1.

[12] The Executive Vice President of AARTS, Dr. Bernard Fryshman, has advised the Congregation that its program cannot be accredited by AARTS, because 1) it does not require that its students pass an admission exam; 2) the curriculum is focused exclusively on *Halacha* (Jewish Law), without being "centered

5

prohibited by the Village Code from using real property anywhere within the Village.

**2. Restrictions on certain student housing characteristics.** The Village amended its zoning code in 2004 to expressly exclude any type of family housing and to provide that only one dormitory could be built on a school's lot, regardless of the size of the lot—100 acres in this case. VILLAGE CODE §§ 130-4, 130-10(F)(12); SAC ¶¶ 157-158. In 2007, the Village again amended its code to limit the size of a dormitory building to only 20% of the total square footage of all buildings on the lot. VILLAGE CODE § 130-10(F)(12); SAC ¶¶ 162. This latest provision effectively and unreasonably eliminates dormitory housing, since a typical college could house only about 3% of its student body. SAC ¶ 163. The Code does not permit kitchens in the dormitories, except for one communal dining room. VILLAGE CODE § 130-4. These Code provisions effectively exclude religious study for married Hasidic men, which was the Village's intent. SAC ¶ 164.

**3. Targeted "environmental" law.** In 2007, the Village adopted a wetlands law with a 100-foot buffer around wetlands of a certain size, but exempted *all* single-family homes, effectively exempting virtually all property in this village of single-family homes, except the Congregation's property. VILLAGE CODE Chapter 126; SAC ¶¶ 168-173.

**4. Lack of any available administrative process.** Defendants repeatedly condemn the Plaintiffs for taking this action "without having ever so much as applied to the Village for approval of their planned use." MTD at 2. Yet the Defendants admit that the only way of permitting the use would be to legislatively amend their zoning laws. *See* MTD at 9-10 ("A property owner may also petition to amend the zoning law or apply for a zone change should its use not be encompassed by a special use permit or be suitable for a variance. Village CODE §§ 130-35 – 130-45." ); *id.* at 10

---

around a common core of Talmudic studies"; and 3) the College has not been in operation for a period of two years. *See* Tauber Aff. ¶ 19 & Exh. A (letter of Dr. Bernard Fryshman). Dr. Fryshman notes that "While a program of Halacha *only* is unquestionably of value, it does not fit the scope of our accreditation activities." *Id.* The Plaintiffs do not have an entrance examination or qualifications, and believe that all sincerely motivated students should be admitted. If the student fails to demonstrate his ability to succeed in the program, he will be asked to leave. M. Babad Aff. ¶ 11.

("[T]he first step it should take towards building the College is to apply for a zoning amendment.").

C. The Planned Rabbinical College.

The Congregation has spent over two years developing a Draft Environmental Impact Statement (DEIS) for the environmentally responsible development of the maximum (not planned) potential of the property as a Rabbinical College, with housing for married students enrolled in its 15-year program. Tauber Aff. ¶ 14. The Congregation has taken concrete steps to demonstrate that it intends to pursue its goal of a Rabbinical College with certain known requirements,[13] such as family housing and an unaccredited program. SAC ¶¶ 64-65, 105; Tauber Aff. ¶¶ 18-19.

The project will occupy only 30 acres of the 100-acre property. SAC ¶ 1. It will not, as Defendants claim, be "large-scale residential development" or "dense."[14] MTD at 1. It will not house "4,500" people. Id. at 7. The current concept is a Rabbinical College campus for 250 students, with the possibility of future growth as may be appropriate.[15] SAC ¶ 212; Tauber Aff. ¶ 18. There is no plan for 1,000 students with 1,000 parking spaces and "at least nine" housing buildings. MTD at 2. Finally, the property is the largest available parcel close to the necessary existing infrastructure of yeshivas, ritual baths, kosher food, etc. SAC ¶ 83; Tauber Aff. ¶ 11, which are required for the students and their families to live according to their religious beliefs. SAC ¶ 77. The Defendants concede that it is "by far, the largest piece of property in the Village."

---

[13] The design will include the school building and requisite housing with lecture rooms, worship rooms, study rooms, courts and libraries. The entire site will be a "Torah community," and no part of it will have a secular purpose. Tauber Aff. ¶ 18. The housing component is essential for the training of rabbinical judges, as prescribed in religious texts and in accordance with the Plaintiffs' religious beliefs. M. Menczer Aff. ¶¶ 12-14; N. Babad Aff. ¶¶ 5, 6.

[14] An early concept drawing that was leaked when it was filed as part of the DEIS process, MTD at 6 & Defendants' Exh. H, is simply that—an early concept. This exhibit misleadingly contains a photo of buildings constructed by someone else at an entirely different location.

[15] New York's SEQRA statutes do not permit "segmentation," which is the submission of a plan without inclusion of all potential long-range plans for future development. 6 NYCRR §§ 617.2, 617.3(g)(1). The Congregation is concretely committed only to building an unaccredited rabbinical college with the necessary education and worship facilities, and sufficient and adequate housing for its married students, but is not committed to any particular plan or number of students. Tauber Aff. ¶ 18.

MTD at 5. There is no other place to locate the Rabbinical College. SAC ¶ 84.

D. The Discriminatory Attitude of Village

Despite the Defendants' repeated declarations that their Code amendments have nothing to do with the "threat" of Hasidic land use, they admit that the Village's interest is in maintaining a "close-knit community vested in [its] rural roots." MTD at 4 (quoting Village of Pomona website). The evidence of hostility toward this particular faith community by the Village and its residents is overwhelming. SAC ¶¶ 156-222; *see generally infra* § IV(B)(2) (discussing futility principle), § IV(B)(2)(b) (discussing discrimination evidence and claims).

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires a district court to dismiss a complaint when it lacks "jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). In defending a motion to dismiss for lack of subject matter jurisdiction, this Court accepts all factual allegations as true. *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). Plaintiffs bear the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." *Id.* In considering such a motion, while the Court "must accept as true all material factual allegations in the complaint," it is "not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Central Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

In a Rule 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007). A pleading is sufficient if the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, __U.S. __, 127 S. Ct. 1955, 1974 (2007). "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (citations omitted).

## IV.    PLAINTIFFS' CLAIMS ARE RIPE.

Defendants' ripeness challenge either misapprehends the Congregation's claims or selectively ignores them.    The Village repeatedly argues that "administrative remedies" are available to the Plaintiffs, but fails to reveal any actual administrative procedure available to the Congregation.    While Plaintiffs do not have a specific fixed plan, they do have a concrete planned *land use* that is forbidden by the Village's zoning code—no Rabbinical College of any shape, size or form is currently permitted within the Village.    The issues presented are sufficiently concrete. Defendants' argument fails for multiple reasons as described below.

A.    Plaintiffs' Facial Challenges to the Village's Zoning Code Are Ripe.

1.    *Facial challenges are immediately ripe.*

Although it is unclear from the Defendants' papers, they appear to argue that the Congregation's facial challenge[16] is unripe.    MTD at 12-13.    However, these arguments are nothing more than a merits challenge disguised as a "ripeness" issue.    *Id.* at 18-24.    This is highly improper and in fact their attached materials indicate that they are being introduced for purposes of their 12(b)(6) motion, *see* MTD at 24, and not for their jurisdictional challenge.[17]

Plaintiffs' facial challenges to the Village Code are ripe.    "Facial challenges are exempt from the first prong of the *Williamson* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation."    *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).    In *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736 n.10 (1997), the

---

[16] The Plaintiffs challenge certain provisions of the zoning ordinance as unconstitutional and violative of RLUIPA, FHA and other statutory protections of constitutional rights by unreasonably discriminating against Plaintiffs' use, against married students, by prohibiting Plaintiffs' use altogether, and by being enacted with a discriminatory purpose, among other reasons.    *See* SAC ¶¶ 156-64, 168-174, 223-26.

[17] Because Defendants are improperly attempting to use this extraneous material for issues going to the merits and not on ripeness or standing, they should be excluded.    FED. R. CIV. P. 12(d).    The Court may "exclude" such materials by an "explicit refusal to consider" them.    *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006).

Supreme Court held "'facial' challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed, . . . ."

> 2.  *Laws enacted with improper legislative purpose are subject to facial challenge.*

Defendants ignore a fundamental constitutional principle underlying certain constitutional, RLUIPA and FHA "discrimination" claims of the Plaintiffs: that a facially neutral law may be held unconstitutional if enacted with a discriminatory *purpose*, especially if it implicates fundamental rights. *See Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979) (examining whether statute granting hiring preferences to veterans was aimed as discriminating against women); *Agostini v. Felton*, 521 U.S. 203, 222-23 (1997) (examining purpose of statute); *Turner Broadcasting System, Inc. v FCC*, 512 U.S. 622, 647 (1994) (same).

The Second Circuit has repeatedly examined legislative motivation of municipal lawmakers. In *Loyal Tire & Auto Center, Inc. v. Town of Woodbury*, 445 F.3d 136, 148 (2d Cir. 2006), the court struck down a facially neutral municipal law targeting a specific "tow company" because of animosity against the operator, finding relevant evidence of "discriminatory motivation." *See also Leblanc-Sternberg*, 67 F.3d at 425, 428 (examining discriminatory motivation against Orthodox Hasidic Jews); *United States v. Yonkers Board of Education*, 837 F.2d 1181, 1218-19 (2d Cir. 1987) (examining segregative motive). *See also County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 167 ("Here, the Township knew exactly how appellants intended to use their land and passed the Ordinance specifically tailored to prevent that use.").

The Supreme Court has repeatedly held that such evidence of discriminatory intent in legislative motivation is relevant:

> Proof of discriminatory intent must necessarily usually rely on objective factors, several of which were outlined in *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266, 97 S. Ct. 555, 564, 50 L. Ed. 2d 397. The inquiry is practical. What a legislature or any official entity is "up to" may be plain from the results its actions achieve, or the results they avoid. Often it is made clear from what has been called, in a different context, "the give and take of the situation."

*Personnel Adm'r of Mass.*, 442 U.S. at 279 n.24.[18]   The same evidence is relevant for First

Amendment Free Exercise claims: "In determining [in a Free Exercise claim] whether a law is

based on religious animus, <u>the same kinds of evidence noted above with respect to a disparate</u>

<u>treatment claim under the FHA are relevant</u>." *Id.* at 426 (emphasis added).[19]   Plaintiffs' well-pled

factual allegations clearly establish that various ordinances enacted by the Village purposely

targeted the orthodox/Hasidic Jewish population.  SAC ¶¶ 122-23, 129-33, 142, 156-64, 168-74.

> 3. *Plaintiffs' facial overbreadth challenge does not require that they must demonstrate*
> *that the challenged provisions are violative under any "set of circumstances."*

The Village argues that "[a] facial challenge to a legislative Act is . . . the most difficult to

mount successfully, since the challenger must establish that no set of circumstances exists under

which the Act would be valid."  MTD at 18.  However, this standard does not apply in the First

Amendment context.[20]   *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (distinguishing First

Amendment overbreadth challenges from other facial challenges); *Farrell v. Burke*, 449 F.3d 470,

495-96 (same).  The Second Circuit has specifically noted that *Salerno's* "no set of circumstances"

doctrine "does not apply to [cases] in which the plaintiffs assert the violation of rights protected by

---

[18] Particularly relevant here, the Second Circuit has held that the "totality of the circumstances" is relevant in determining "discriminatory intent," including whether "'the law bears more heavily on one [group] than another,' . . . . the 'historical background of the decision . . .'; '[t]he specific sequence of events leading up to the challenged decision,' . . .; 'contemporary statements by members of the decisionmaking body . . .'; . . . and '[s]ubstantive departures ..., particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached,' . . . racist statements by "leaders of the incorporation movement" and fact that "[r]acial criticism . . . was made and cheered at public meetings" could be considered evidence of improper purpose . . . ." *Leblanc-Sternberg*, 67 F.3d at 425-26.

[19] The Second Circuit cited with approval Justice Kennedy's concurrence in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540-42 (1993), which discussed legislative hostility to the faith group in question, in turn citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267-68 (1977).

[20] This doctrine has been applied to the zoning context where expressive activity is regulated, *Sugarman v. Village of Chester*, 192 F. Supp. 2d 282, 288-89 (S.D.N.Y. 2002); *Gold Diggers, LLC v. Town of Berlin, Conn.*, 469 F. Supp. 2d 43 (D. Conn. 2007), and to the Free Exercise context, where there is an inhibitory effect on religious expression. *See Hanzel v. Arter*, 625 F. Supp. 1259, 1263 n.2 (S.D. Ohio 1985).

11

the First Amendment." *Lerman v. Bd. of Elections of New York*, 232 F.3d 135, 144 (2d Cir. 2000), *cert. denied*, 533 U.S. 915 (2001). "The purpose of an overbreadth challenge is to prevent the chilling of constitutionally protected conduct, as prudent citizens will avoid behavior that may fall within the scope of a prohibition, even if they are not entirely sure whether it does." *Farrell v. Burke,* 449 F.3d 470, 499 (2d Cir. 2006).[21]

       4. *RLUIPA's text contemplates such facial challenges.*

      RLUIPA provides clear statutory direction permitting facial challenges to zoning ordinances that either substantially burden or discriminate against religious land use. The "Substantial Burdens" provision of RLUIPA prohibits governments from "impos[ing] or implement[ing] a land use regulation in a manner that imposes a substantial burden . . . ." 42 U.S.C. § 2000cc(a)(1) (emphasis added). The code provisions challenged here are certainly "imposed" (as distinguished from "implemented") upon the Congregation, *i.e.,* the Congregation is subject to the Village Code. *See also* 42 U.S.C. § 2000cc(b)(3) (same).[22]

    B. <u>Plaintiffs' As-applied Challenges Are Ripe.</u>

      1. *Plaintiffs' Complaint states a valid pre-enforcement challenge.*

      Defendants also misconstrue Plaintiffs' as-applied challenge. Plaintiffs argue that the Village's zoning laws as applied to the Congregation's proposed use are illegal and unconstitutional because they strictly prohibit it—a Rabbinical College—from presently being built, used or

---

[21] Prohibiting a religious college implicates Free Speech, as well as Free Exercise rights. *See infra,* § VI(A). *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1032-33 (9th Cir. 2004) (rejecting Free Speech claim because zoning ordinance did not prohibit religious college use, because "[t]he record reflects *no* indication that the City's action was motivated by the City's disdain of College's religious orientation," and because law did "not unreasonably limit alternative avenues of communication.").

[22] The Village, on the other hand, argues that an ordinance may only be challenged when it is "implemented" against a claimant. This violates "the longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous." *Beck v. Prupis*, 529 U.S. 494, 506 (2000). Likewise, if the Court imposed a requirement that a party must seek to change the law—the only mechanism to avoid the "total exclusion" of the Congregation's use here— this would render § 2000cc(b)(3)(A), *see infra,* completely meaningless.

operated.  *See Sisters of St. Francis Health Services, Inc. v. Morgan Cy., Ind.*, 397 F. Supp. 2d

1032, 1048 (S.D. Ind. 2005) ("*Sisters of St. Francis*") ("Under the procedures applicable in *Murphy*,

the Second Circuit found no immediate injury where an application for a variance from the cease

and desist order would have automatically stayed its enforcement.").

        The *Leblanc-Sternberg* decision (uniquely relevant here and wholly ignored by Defendants)

controls this issue, where the Second Circuit squarely decided the question of whether a pre-

enforcement challenge to a facially neutral zoning ordinance under the First Amendment and the

Fair Housing Act is ripe (and which involved the same local anti-Hasidic animus):

> Since the loss of First Amendment freedoms, even for minimal periods of time, constitutes
> irreparable injury, *see, e.g., Elrod v. Burns*, 427 U.S. 347, 373 . . . ; *Paulsen v. County of
> Nassau*, 925 F.2d 65, 68 (2d Cir. 1991) (freedom of expression), the victim of a conspiracy
> to violate First Amendment freedoms has standing to bring suit <u>before the conspiracy[23] has
> resulted in economic or tangible injury</u>.

67 F.3d 412, 426 (2d Cir. 1995) (emphasis added).  In *Leblanc-Sternberg*, the Second Circuit was

faced with an eerily similar factual situation where "the Village itself had done nothing but adopt its

own zoning code and had not yet been called upon to apply it," yet it adjudicated the FHA and First

Amendment claims before it.  67 F.3d at 422; *see id.* at 428 ("In finding that only the Village

violated the private plaintiffs' rights under the Fair Housing Act, the jury may have been persuaded

that the only violative act was the enactment of the Airmont zoning code.").[24]  Similarly, in *Sisters*

---

        [23] The holding of *Leblanc-Sternberg* is not limited to § 1983 Free Exercise claims involving a
conspiracy claim brought under 42 U.S.C. § 1985.  The First Amendment injury in fact exists with or without
a conspiracy.  *See id.* at 427 ("conspiracy is not a necessary element of a § 1983 claim").  Conspiracy claims
were not relevant in the cases cited in support of its pre-enforcement challenge holding.  *See Elrod; Paulsen;
American Booksellers Ass'n.*

        [24] Clearly, these are questions of fact.  "Taking the evidence in the light most favorable to the private
plaintiffs, there was ample support for the jury's implicit finding that Airmont's zoning code <u>would be
interpreted to restrict the use of home synagogues, that <u>the motivation behind the enactment was
discriminatory animus toward Orthodox and Hasidic Jews</u>, and that Airmont pursued this goal jointly with
ACA.  Accordingly, the private plaintiffs established the Village's liability on the claims asserted under the
FHA, the First Amendment, and §§ 1983 . . . ." *Id.* at 431.

*of St. Francis,* another federal court held that

> St. Francis has also met its burden in showing sufficient harm posed by the Ordinance to show a ripe case. In *Triple G Landfills*, the court emphasized that <u>the practical effect of the ordinance was to preclude any landfill construction anywhere</u> in Fountain County.

397 F. Supp. 2d at 1049 (emphasis added).[25]

The Village attempts to deflect this line of cases by stating "[i]t is impossible to determine which elements of the zoning law are likely to be involved in this case." MTD at 12; *see also id.* at 12-14. This is completely unsupported by the facts; it is undisputed that the Congregation's property is classified as R-40; that educational institutions must be accredited; that dormitories may not have separate cooking or dining facilities; that more than one dormitory building is prohibited; that dormitories are limited to 20% of the square footage of all buildings; and that Plaintiffs' use is not permitted anywhere within the Village. VILLAGE CODE §§ 130-4, 130-5, 130-9, 130-10.

The real purpose behind the final decision requirement is to remove uncertainty as to what conduct is permitted or prohibited. In the land use context, this requirement translates into a determination of whether the land's permitted uses are known to a sufficiently concrete degree:

> <u>Ripeness doctrine does not require a landowner to submit applications for their own sake</u>. Petitioner is required to explore development opportunities on his upland parcel only if there is uncertainty as to the land's permitted use.

*Palazzolo v. Rhode Island*, 533 U.S. 606, 622 (2001) (emphasis added). And in *Suitum, supra,* the

---

[25] *See also Abramson v. Gonzalez*, 949 F.2d 1567, 1573-74 (11th Cir. 1992) (holding that persons who had not applied for a psychologist's license nonetheless were entitled to raise an as-applied challenge to a Florida law mandating that only licensed psychologists may hold themselves out as psychologists); *American Library Ass'n v. Reno*, 33 F.3d 78 (D.C. Cir. 1994) (holding that, although the challenged statute had not been enforced against plaintiffs, plaintiffs sought to alleviate burdens which the statute placed on them, and therefore, challenge was as-applied); *Jacobs v. The Florida Bar*, 50 F.3d 901, 905 (11th Cir. 1995) (permitted as-applied challenge to State bar association rules restricting attorney advertising in the absence of any enforcement action where "Appellants face potential disciplinary action should they use the advertisements that they wish to use").

The Second Circuit has extended this doctrine to non-Free Speech challenges to municipal land use ordinances. *See Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock*, 93 F.3d 68 (2d Cir. 1996) (holding Commerce Clause challenge to anti-dump ordinance ripe).

Supreme Court held that a landowners' claim was ripe since there was no question that its land was ineligible for development. 520 U.S. 725 (1997). It noted that the law at issue did "not provide for the variances and exceptions of conventional land-use schemes." *Id.* at 730, 725-26.

   2. *Plaintiffs' Complaint states valid as-applied "discrimination" claims.*

   Plaintiffs' as-applied claims also include a challenge to the discriminatory requirements that they would be subjected to and would not be applied to a similarly situated entity. For instance, a Catholic seminary (or a college with unmarried students) would be permitted to apply for a special exception, while the Rabbinical College would require a zoning text amendment. *See* SAC ¶¶ 94, 97-98, 104-109, 215; Exh.18 (Letter from Doris Ulman, Esq., Village Attorney, dated May 14, 2007, agreeing that Congregation must apply for a zone change). Interpreting *Williamson*, several courts have recognized that "if the [claimed] injury is the infirmity of the process, neither a final judgment nor exhaustion [of administrative remedies] is required." *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991).

   Since the effect (and intent) of the Village's Code is to require more onerous procedures for land uses of certain religious faiths that tend not to have the same established accreditation bodies or student body makeup, the harm is immediate and concrete. *Cf. County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 167 (3d Cir. 2006) ("The essence of this claim is that the mere enactment of the Ordinance violates the Equal Protection Clause because it arbitrarily treats appellants differently than other similarly situated property owners.").[26]

   3. *Resort to unavailable administrative procedures would be futile in any event.*

   The text of the Village's Code is clear: Unaccredited educational institutions are not permitted. VILLAGE CODE § 130-4. Dormitories with kitchen facilities are not permitted. *Id.* More

---

[26] Additionally, nearly every other property in the Village (if not every single other property) is not subject to the Wetlands chapter of the Village Code. VILLAGE CODE § 126(3)(D); SAC ¶ 172.