**Exhibit "4"**

    (3)      Public utilities rights-of-way.

    (4)      (Reserved)[84]

    (5)      Libraries and museums.

    (6)      Public parks and playgrounds.

    (7)      Agricultural pursuits.

B.    (Reserved)[85]

C.    (Reserved)[86]

**§ 130-10. Special permit uses.** [Amended 1-28-1991 by L.L. No. 1-1991; 4-28-1997 by L.L. No. 4-1997; 5-18-1998 by L.L. No. 2-1998; 10-26-1998 by L.L. No. 4-1998; 1-22-2001 by L.L. No. 1-2001]

The following uses are permitted in the R-40 District by special permit only, to be reviewed, approved, or disapproved by the board set forth in each subsection:

A.    By the Zoning Board of Appeals: Recreational facilities; playgrounds, swimming clubs, tennis courts and recreational buildings not conducted as a business enterprise, provided that no building, pool, spectator or active play area erected under the provisions of this subsection shall be so erected nearer than 50 feet to any lot line, and provided that the following operations shall be prohibited:

    (1)      Outdoor entertainment, live or mechanical.

    (2)      The use of outdoor public-address systems for any purpose.

    (3)      Exterior lighting producing glare at the lot line other than that essential for the safety of the users of the premises.

B.    By the Board of Trustees: Reservoirs on lots of three acres or more, and water towers and water tanks owned and operated by a public utility, which water tank or water tower is located at or above ground, on lots of three acres or more.

C.    By the Zoning Board of Appeals: Telephone exchanges and public utility substations, communications centers for emergency and other purposes, and any and all other public utility facilities which are or support the primary function of the public utility company, provided that such facilities are housed in buildings that harmonize with the character of the neighborhood and have adequate fences and other safety devices and screening and landscaping as shall be required by the Zoning Board of Appeals. A public utility company shall be a corporation or company for which the Public Service Commission of the State of New York has issued a certificate

---

[84]. Editor's Note: Former Subsection A(4), regarding schools of general instruction, was repealed 1-22-2001 by L.L. No. 1-2001.

[85]. Editor's Note: Former Subsection B, School of general instructions, was repealed 1-22-2001 by L.L. No. 1-2001.

[86]. Editor's Note: Former Subsection C, House of worship, as amended, was repealed 1-22-2007 by L.L. No. 2-2007.

certifying that the company is a public utility.

D.    Camps, subject to special permit by the Village Board, provided that:

    (1)    They have a minimum lot area of 50 acres.

    (2)    Access to such facilities shall be limited to improved state, county, town or Village roads which are major collector roads. Subdivision (residential) roads shall not be used for access to such uses.

    (3)    Such facilities shall be adequate to preclude the necessity of pedestrian traffic outside the approved facility.

    (4)    The facility may include bungalows, cottages and tents for temporary use by visitors or patrons of such camps, provided that no heating or plumbing facilities are installed to permit year-round residential communities.

    (5)    One year-round residence for a caretaker may be provided for each 50 acres.

    (6)    Trailers and recreation vehicles shall not be permitted.

    (7)    No building, ballfield, swimming facility or other property use shall be permitted within 125 feet of a residential property line, except that the Planning Board may permit a reduction where, because of topography or the installation of additional buffer landscaping and/or fencing, the Planning Board determines that any potential adverse external effect of such use will be minimized.

    (8)    Site plan approval by the Village of Pomona Planning Board shall be obtained. Such site plan shall address the following:

    (a) Adequate parking for buses, staff and visitors shall be provided.

    (b) No camp shall be operated so as to create a nuisance to surrounding properties. The Planning Board shall attach such conditions to the permit and may require such other facilities as are required to protect neighbors from excessive light or as are required to protect neighbors from excessive light or noise. No outdoor public address systems shall be permitted.

    (c) Water facilities by either well or municipal water shall be provided subject to approval by the Rockland County Health Department.

    (d)    Sewer disposal by municipal sewer or septic tanks shall be provided subject to approval by the Rockland County Health Department.

    (e) The location, nature and height or buildings for summer residence, dining facilities, temporary structures, walls and fences shall be such that the use will not hinder or discourage the appropriate development and use of adjacent land and buildings.

    (f) Building coverage, including accessory buildings and structures, shall not

exceed 10% of the lot area, nor shall the sum total of the land covered with buildings and parking, including driveways, exceed 25% of lot area, within any residence district.

(g) In addition to the special standards described above, the use shall comply with any other special requirements deemed appropriate by the Planning Board.

E.   Wireless telecommunication services facility, subject to special permit approval by the Village Board of Trustees and the following requirements: [Added 5-18-1998 by L.L. No. 2-1998]

(1)     The following special permit standards and requirements shall apply to all wireless telecommunication services facilities.

(2)     Purpose. The purpose of these special regulations is to reasonably control the location, construction and maintenance of wireless telecommunication facilities in order to encourage the siting of wireless telecommunication services facilities in nonresidential areas and to protect, to the maximum extent practicable, aesthetic impacts, the open space character of the Village of Pomona, the property values of the community, the health and safety of citizens and a citizen's ability to receive communication signals without interference from other communication providers, while not unreasonably limiting competition among telecommunication providers.

(3)     Use. Except as provided hereinafter, no wireless telecommunication services facility shall be located, constructed or maintained on any lot, building, structure or land area in the Village of Pomona except in conformity with the requirements of this subsection and all other applicable regulations.

(4)     Location and access. A wireless telecommunication services facility shall be located on Village-owned lands or facilities. If, because of unreasonable technological, financial or structural limitations or unless otherwise waived, modified or required by the Village Board of Trustees for aesthetic, safety or other reasons, location on Village-owned lands or facilities is not practicable, such facility shall be located on lands with commercial or nonresidential uses before locating on any lands used exclusively for residential purposes. Wherever possible, such facility shall be attached to an existing building or structure. To the maximum extent practicable, existing roadways shall be used to provide access to the site of a wireless telecommunication services facility.

(5)     Collocation.

(a) The shared use of existing public utility and wireless telecommunication services facilities shall be strongly encouraged. The Village shall maintain an inventory of existing wireless telecommunication services facilities (the "Existing Facilities Inventory") including utilities that are obligated under the Federal Telecommunications Act of 1996 to provide wireless telecommunication service carriers with nondiscriminatory access to their

facilities. Collocation shall be required unless it has been demonstrated to the satisfaction of the Village Board of Trustees that:

[1]   Adequate and reliable wireless telecommunication service cannot be provided from any alternative sites identified on the Existing Facilities Inventory or other existing sites with communication antennas within the service area in a reasonable financially and technologically feasible manner consistent with the wireless telecommunications service provider's system requirements;

[2]   None of the alternative sites identified on the Existing Facilities Inventory or other existing sites with communication antennas within the service area can accommodate the proposed wireless telecommunication services facility with respect to structural or other engineering limitations, including frequency reuse incompatibilities; or

[3]   The owner of the alternative sites identified on the Existing Facilities Inventory or other existing sites with communication antennas within the service area lawfully refuse to permit the applicant use of the site.

(b) All new wireless telecommunication services facilities and premises shall be of proper size, location and design to accommodate collocation of other service providers' facilities, unless otherwise permitted by the Village Board of Trustees.

(6)     Setbacks. Wireless telecommunication services facilities, except those on Village-owned lands or those structurally mounted to an existing building or structure, shall be located not less than two times the otherwise applicable setback requirements for principal structures for the district in which the property is located, or the height of the facility plus the otherwise applicable setback requirements for principal structures for the district in which the property is located, whichever shall be greater. Wireless telecommunication services facilities structurally mounted to the roof of an existing building or structure shall be set back from the side of the building or structure so as to minimize its visibility, but in no case less than 10 feet.

(7)     Freestanding structures. No freestanding wireless telecommunication services facility shall be permitted except for a monopole.

(8)     Height limitations. Notwithstanding the following height limitations, in no case shall a wireless telecommunication services facility exceed the minimum height reasonably necessary to accomplish the purpose it is proposed to serve.

(a) The height of any antennas, or other associated equipment, structurally mounted as part of a wireless telecommunication services facility shall not exceed by more than 15 feet the highest point of the existing structure on

which such antennas or equipment are affixed.

    (b) The height of any monopole utilized in a wireless telecommunication services facility shall not exceed 150 feet in height measured from the highest point of such facility to the finished grade elevation of the ground immediately adjacent to the structure.

(9)    Visual mitigation. The applicant/provider shall prepare an impact assessment of the proposed wireless telecommunication services facility based upon appropriate modeling, photography and other pertinent analytical techniques as required by the Village Board of Trustees. Landscaping and/or other screening and mitigation, including but not limited to architectural treatment, use of neutral or compatible coloring and materials, or alternative construction and transmission technologies shall be required to minimize the visual impact of such facility from public thoroughfares, important viewsheds and vantage points and surrounding properties to the extent practicable, as determined by the Village Board of Trustees. No signs shall be erected on any wireless telecommunication services facility except as may be required by the Village Board of Trustees for security or safety purposes.

(10)    Lighting. The wireless telecommunication services facility shall not be artificially lighted unless otherwise required by the Federal Aviation Administration or other federal, state or local authority.

(11)    Operational characteristics. Unless otherwise superseded by the FCC, the design and use of the proposed wireless telecommunication services facility, including its cumulative impact with other existing and approved facilities, shall be certified to conform with the maximum NIER exposure standards promulgated by the FCC, as amended. Said certification shall include a report by a licensed professional electrical engineer with expertise in radio communication facilities and/or health physicist acceptable to the Village Board of Trustees. The applicant shall provide an annual certification of conformance with the applicable emissions standards and the requirements and conditions of special permit and site plan approval. The Village Board of Trustees may hire a qualified professional of its choosing to review and confirm such initial and annual certification report, the cost of which shall be reimbursed by the applicant in accordance with the escrow account procedures established for the reimbursement of professional review fees for subdivision, site plan and special permit applications. Any violation of the emissions standards shall require immediate discontinuation and correction of the use responsible for the violation. Any such violation of these requirements of the Zoning Law or the conditions of special permit or site plan approval shall be deemed to be an offense punishable by fine and/or imprisonment in accordance with § 130-25 of this Zoning Law.

(12)    Noise. Noise-producing equipment shall be sited and/or insulated to prevent any detectable increase in noise above ambient levels as measured at the property line.

(13)     Interference. Any interference, disruption of signal or reception of radio, television or other wireless telecommunication service resulting from the construction or operation of a wireless telecommunication services facility shall be remedied as soon as practicable by and at the expense of the responsible wireless telecommunication services provider to the satisfaction of the Village Board of Trustees.

(14)     Utility service. Electrical and land-based telephone lines extended to serve the wireless telecommunication services facility sites shall be installed underground.

(15)     Safety provisions. A wireless telecommunication services facility shall be designed and erected so that, in the event of structural failure, it will fall within the required setback area and, to the maximum extent possible, away from adjacent development.

(16)     Security provisions. A security program shall be formulated and implemented for the site of a wireless telecommunication services facility. Such program may include physical features such as fencing, anti-climbing devices or elevating ladders on monopoles and/or monitoring either by staff or electronic devices to prevent unauthorized access and vandalism.

(17)     Structural inspection and report. A monopole over 50 feet in height shall be inspected by a professional engineer licensed by the State of New York at the expense of the service provider(s) each time a change is made to the equipment mounted or wiring installed on the monopole, every three years on the anniversary of the initial installation of the monopole or at any other time upon a determination by the Building Inspector that the monopole may have sustained structural damage, and a copy of the inspection report shall be submitted to the Building Inspector. [Amended 10-26-1998 by L.L. No. 4-1998]

(18)     Lease agreement. In the case of an application for approval of a wireless telecommunication services facility to be located on the lands owned by a party other than the applicant or the Village, a copy of the lease agreement with the property owner absent the financial terms of such agreement, together with any subsequent modifications thereof, shall be provided to the Village Board of Trustees and a copy shall be filed with the Village Clerk.

(19)     Removal. A wireless telecommunication services facility shall be dismantled and removed from the property on which it is located within 60 days when it has been inoperative or abandoned for a period of one year or more from the date on which it ceased operation. The applicant shall provide to the Village written notification including identification of the date the use of the facility was discontinued or abandoned by one or more of the service providers, acknowledgment of the requirement to remove the facility and identification of the plans for the future of the facility.

(20)     Application procedure.

(a) An application or approval of a wireless telecommunications facility shall be submitted on the relevant forms for special use permit and site plan approval. Site development plan approval, in accordance with Chapter 119 of this Code, shall be required. [Amended 10-26-1998 by L.L. No. 4-1998]

(b) The operator of the wireless telecommunication service shall submit a certificate of public utility and shall demonstrate to the satisfaction of the Village Board of Trustees that there is a compelling public need for such facility at the location(s) proposed by the applicant. Such demonstration shall include the preparation of existing and master effective service area plans which:

　　[1]　Minimize the number of such facilities within the service area(s).

　　[2]　Maximize collocation and shared use of existing public utility and wireless telecommunication services facilities.

　　[3]　Identify all existing and proposed wireless telecommunication facilities which impact upon the service area covering the Village of Pomona, including but not limited to topographic maps of the Village with service coverage and service gap grids and all proposed and other functionally acceptable locations for such facility(ies).

　　[4]　Analyze feasible alternatives to reasonably minimize the visual impacts and exposure levels.

(c) Any application for a wireless telecommunication services facility shall include a statement and appropriate documentation demonstrating that the Village's Existing Facilities Inventory has been reviewed and, to the extent relevant to provide wireless telecommunication services in the area which is the subject of such application, that all reasonable efforts have been made to collocate such facility on all sites identified in such Existing Facilities Inventory and all other existing sites with communication antennas within the service area.

(d)　　As a condition of special permit approval, the applicant shall be required to provide a written agreement, in recordable form suitable for filing and prepared to the satisfaction of the Village Attorney, acknowledging that it shall be required to allow the collocation of other future wireless telecommunication service facilities unless otherwise unreasonably limited by technological, structural or other engineering considerations.

(e) Where collocation of a wireless telecommunication services facility is proposed for any such alternative site identified on the Existing Facilities Inventory or other existing site with communication antennas within the service area, the added wireless telecommunication services facility shall be permitted, as an amendment to the existing special use permit for such alternative site, by submission of an application for a building permit and

without the need for an application for an amended special permit or site plan approval, provided that such facility meets all of the otherwise applicable requirements of this subsection and no physical modification other than the attachment of the antennas and the installation of associated equipment to be located on the ground is required. An amended written narrative and certification report indicating conformance with all of the special permit standards and conditions of site development plan approval shall be provided in addition to all required information in support of the required building permit. An as-built drawing of the modified facilities shall be filed with the Building Department. The Building Inspector shall provide written notification to the Village Board of Trustees of such application for building permit.

(f) The applicant and all future owners of the premises and the wireless telecommunication services facility shall at all times keep on file in the office of the Village Clerk the name, address and telephone number of the owner and operator of such facility and of at least one individual who shall have authority to arrange for the maintenance of the premises and facility, and who shall be authorized to accept service of notices and legal process on behalf of the owner and operator(s) of the premises and facility and to bind the owner to any settlement, fine, judgment or other disposition (other than incarceration) which may result from any civil or criminal action or proceeding instituted by the Village against such owner and/or operator(s).

F.    Educational institutions, as defined in § 130-4 of this chapter, subject to special permit approval by the Village Board of Trustees and site plan approval by the Planning Board. In addition to all other requirements of this Code for special permit and site plan approval, the following standards and requirements shall apply: [Added 1-22-2001 by L.L. No. 1-2001; amended 9-27-2004 by L.L. No. 5-2004]

(1)    Minimum net lot area. [Amended 1-22-2007 by L.L. No. 1-2007]

(a) The minimum lot area for an educational institution shall be a net lot area of 10 acres.

(b) No portion of any land under water shall be counted toward the net lot area. Not more than 1/4 of any land which is defined as wetland by the U.S. Army Corps of Engineers, the New York State Department of Environmental Conservation and/or Chapter 126 of this Code or which is within a one-hundred-year-frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted toward the net lot area.

(c) No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward the net lot area.

(2)　　Maximum development intensity.

(a) The total building coverage shall not exceed 10% of the net lot area.

(b) The total floor area of the building(s) shall not exceed 20% of the net lot area.

(c) The total coverage of impervious surfaces (which includes all buildings and structures, parking areas, driveways, sidewalks and other areas covered in concrete, asphalt or packed stone) shall not exceed 25% of the net lot area.

(3)　　Required road frontage and access. An educational institution shall have a minimum of 250 feet of frontage on a public road and shall provide sufficient and safe access to such public road.

(4)　　Required setbacks and screening. All buildings, recreation areas, parking areas and other property uses and structures shall be set back a minimum of 125 feet from each property line. Such setback shall include a buffer area of a minimum of 35 feet in width consisting of trees, shrubs, plants, fencing and/or other materials as determined by the Planning Board to be sufficient to screen the educational use from adjoining uses and streets.

(5)　　Required parking.

(a) The following number of off-street parking spaces shall be provided: one space per employee plus one per each eight students in the 12th grade, or one per four seats of public assembly area, whichever is greater.

(b) The applicant shall be permitted to forego the initial improvement of required parking spaces if it is proven, to the satisfaction of the Planning Board, that such spaces are not needed based on the parking demands of the proposed use. In such case, the approved site plan shalt show the location(s) on the site where such unimproved spaces could be provided and will be reserved for improvement and use in the future. If determined necessary by the Planning Board, the reserved parking spaces shall be constructed in accordance with the approved site plan within six months after written notice is provided by the Building Inspector to the property owner stating that the improvement of all or a portion of the reserved parking spaces is necessary. All unimproved parking spaces shall be used and maintained as landscaped grounds until used for parking.

(6)　　Noise and exterior lighting.

(a) The sources of exterior lighting shall be so shielded that they are not visible beyond the boundaries of the lot on which they are located.

(b) No outdoor public address systems shall be permitted.

(7)　　Signage. One monument sign, limited to eight square feet in area and set back 10 feet from lot lines, may be placed at the main entrance to the school.

(8)      Public water and sewer. The site shall be served by public water and sewer.

(9)      The Board of Trustees may impose such restrictions and regulations which would avoid or minimize traffic hazards, impairment of the use, enjoyment or value of property in the surrounding area, or generally protect the health, safety and welfare of the neighborhood and to otherwise implement the purpose and intent of this chapter.

(10)     The location and size of the use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection therewith shall not be hazardous.

(11)     The location and height of buildings, the location, nature and height of walls and fences and the nature and extent of landscaping on the site shall be such that the use will not hinder or discourage the development and use of adjacent land and buildings.

(12)     A dormitory building is permitted as an accessory use to an educational use provided it is located on the same lot as the educational use and there shall be not more than one dormitory building on the lot. A dormitory building shall not occupy more than 20% of the total square footage of all buildings on the lot. [Amended 1-22-2007 by L.L. No. 1-2007]

(a) The minimum distance between a dormitory building and any other principal building or structure on the lot shall be 50 feet.

(b) The minimum distance between a dormitory building and any interior driveway or other accessory structure shall be 25 feet.

(c) The maximum height of a dormitory building shall be two stories or 25 feet, whichever is less.

(d)      No dormitory room or dwelling unit shall be permitted in any cellar.

(e) The dormitory building shall be equipped with sprinkler and fire alarm systems and comply with all requirements of the New York State Fire Prevention and Building Code.

G.    By the Board of Trustees: House of worship as defined in § 130-4 of this chapter, subject to special permit approval by the Village Board of Trustees and site plan approval by the Planning Board. In addition to all other requirements of this Code for special permit and site plan approval, the following standards and requirements shall apply: [Added 1-22-2007 by L.L. No. 2-2007]

(1)      The minimum lot area for a house of worship shall be a net lot area of three acres.

(a) No portion of any land under water shall be counted toward net lot area. Not more than 1/4 of any land which is defined as wetland by the U.S. Army Corps of Engineers, the New York State Department of Environmental Conservation and/or Chapter 126 of this Code or which is within a one-hundred-year-frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted toward net lot area.

(b) No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward net lot area.

(2)    The use shall have a minimum of 100 feet of frontage on and access to a public road.

(3)    The proposed structure meets all state requirements for a place of public assembly, including the Fire Prevention and Building Code.[87]

(4)    Adequate off-street parking on the same lot as the house of worship shall be provided. A minimum of one parking space for every 200 square feet of floor space shall be required. The Planning Board may waive not more than 25% of the required number of parking spaces if the Board determines that such spaces are not needed based on the parking demands of the proposed use. The burden shall be on the applicant to prove that such spaces are not needed.

(5)    All buildings, structures and other uses, including driveways and parking areas, shall be set back a minimum of 125 feet from all property lines. Such setback area shall include a buffer screening area of at least 35 feet which, in the judgment of the Planning Board, will be adequate to screen the use from adjoining properties. The buffer area may include trees, bushes, fences, walls, berms or any combination of the aforesaid, to be determined by the Planning Board.

(6)    The total building coverage shall not exceed 10% of the net lot area. The total coverage of impervious surfaces (which includes all buildings, structures, parking areas, driveways, sidewalks and other areas covered in concrete, asphalt or packed stone) shall not exceed 25% of the net lot area.

(7)    The sources of exterior lighting shall be so shielded that they are not visible beyond the boundaries of the lot on which they are located. No outdoor public address systems shall be permitted.

(8)    One monument sign, limited to eight square feet in area and set back a minimum of 10 feet from the lot line, may be permitted at the front entrance to the house of worship. Illumination, if provided, shall be indirect, and the source of such light shall not be visible from adjoining properties or roads.

---

[87].  Editor's Note: See Ch. 47, Building Construction.