**Affidavit of Michael Tauber**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., RABBI MORDECHAI BABAD, RABBI
WOLF BRIEF, RABBI HERMEN KAHANA, RABBI MEIR       07 Civ. 6304 (KMK)(GAY)
MARGULIS, RABBI GERGELY NEUMAN, RABBI
MEILECH MENCZER, RABBI JACOB HERSHKOWITZ,
RABBICHAIM ROSENBERG, RABBI DAVID A. MENCZER,    **AFFIDAVIT IN**
RABBI ARYEH ROYDE, and KOLEL BELZ OF MONSEY,     **OPPOSITION TO**
                                                  **DEFENDANTS'**
                                 Plaintiffs,      **MOTION TO DISMISS**

         -against-

VILLAGE OF POMONA, NY; BOARD OF TRUSTEES OF
THE VILLAGE OF POMONA, NY; NICHOLAS SANDERSON,
AS MAYOR; IAN BANKS, ALMA SANDERS ROMAN,
RITA LOUIE and BRETT YAGEL, AS TRUSTEES
AND IN THEIR OFFICIAL CAPACITIES,

                                 Defendants.
-----------------------------------------------------------------------X
STATE OF NEW YORK     )
                      )
COUNTY OF ROCKLAND    )

Michael Tauber affirms under penalty of perjury as follows:

1. I am a trustee of the Congregation Rabbinical College of Tartikov. I work as a developer, real estate broker and builder. I also devote a substantial amount of my time and money to the development of organizations and programs that benefit the religious life of the Hasidic Orthodox Jewish community in Monsey, New York, where I grew up and reside with my family.

2. I have reviewed the Village Defendants' motion to dismiss papers, which attack my motives, personal integrity and sincerity. Although the Congregation's attorneys advise me that this attack is irrelevant to the issues before this Court, I do not

want the Court to be misled by the falsehoods presented and I would like to set the record straight.

3. I grew up with a commitment to the development of training programs for Rabbinical Judges. It is part of my heritage and religion. I am the son of Rabbi Ezriel (Emil) Tauber, originally from Serdahel, Czechoslovakia, who immigrated to the United States in the mid-1950's. His vision, devotion, religious faith and financial support led to the creation and successful operation of the first program developed after World War II to train a new generation of Rabbinical Judges in the United States in 1976. My uncle, Rabbi Yechiel (Tibor) Tauber, also originally from Serdahel, Czechoslovakia, is a Rabbinical Judge and the Dean of this new institution, known as Mechon L'Hoyroa, located in Monsey. He was trained at Mechon L'Hoyroa, and served as its Dean while still a student, since there was no Rabbinical Judge available to sit full time. My father is a respected Rabbi, lecturer and author of authoritative books on Judaism and its philosophy.

4. Despite the doubts of many Rabbis that such a school could be successful in the United States, Mechon L'Hoyroa opened its doors in 1976, funded largely by my father. Rabbi Alexander Usher Babad and my father shared a concern that the few Rabbinical Judges who had survived the Holocaust and had immigrated to the United States were aging, while the Hasidic and Orthodox Jewish communities were growing. The children born after the war were coming of age, reaching their twenties, and ready to receive the education and Rabbinic ordination necessary to qualify them to study to become Rabbinical Judges.

5. My uncle designed the rigorous curriculum in strict adherence to the mandates of Jewish law and selected the brightest students to participate in the program, which would take approximately fifteen years to complete. The students came from the local Monsey community, as did the lecturers. In addition to learning the religious texts, these young scholars were given the opportunity to learn directly from the older, experienced Judges. The curriculum, as prescribed in religious texts, required intermittent "internships" and observance of *Bais Din* (Jewish Court) proceedings. The students were able to interact with the older, experienced Rabbinical Judges in the study halls and in the courtrooms.

6. In the 1990's, Rabbi Mordechai Babad, who will be the Dean of the Rabbinical College of Tartikov, graduated from the first class of Mechon L'Hoyroa after approximately 15 years of study there, and was certified by Rabbinical Judges in Israel. Following graduation, he has served as a full-time 24-hour-a-day Rabbinical Judge on a Bais Din and has been a mentor to many students at Mechon L'Hoyroa. The other 11 graduates began serving as Judges in *Bais Din*, lecturing, and utilizing their education in related capacities. Mechon L'Hoyroa currently has 100 students, approximately 20 of whom are enrolled in the 15-year program of study to be qualified as Rabbinical Judges with knowledge of all four books of the Shulchan Aruch.

7. Today, the Mechon L'Hoyroa program is supported by donations from the community (including myself). It is my life's work and religious belief to make sure that the Orthodox and Hasidic communities have *bais dins* with qualified judges of the highest caliber.

8. The attrition rate at Mechon L'Hoyroa has been high, however, due to the inability to create a "Torah community", where students and their families can live together totally immersed in the Torah study environment, receiving full support for the many years of commitment required. This is why the Rabbis in the 1970's did not believe that the training of Rabbinical Judges could take place in the United States, where the necessary Torah community was more difficult to recreate than it was in the European communities of my grandparents' generation.

9. In the 1980's, recognizing the growing needs of the flourishing Hasidic and Orthodox population for religious judges, Rabbi Alexander Usher Babad opened a second program to educate a new generation of Rabbinic Judges. He established Kollel Beth Yechiel Mechil of Tartikov in Brooklyn, New York, duplicating the Mechon L'Hoyroa program. The school drew students and instructors from the Hasidic community in Borough Park, Kings County, Brooklyn. It currently has 100 students and is filled to capacity. The program receives financial support from Chaim Babad, the brother of Rabbi Mordechai Babad.

10. Chaim Babad has also committed to supporting the Rabbinical College of Tartikov in Pomona, and is currently funding the studies of 10 students who are members of the Congregation Rabbinical College of Tartikov. These rabbis currently worship and study at the Kolel Belz of Monsey in a precursor program, readying themselves to study to become rabbinical judges at the new college when it opens.

11. Because I have been involved in supporting training for Rabbinical Judges all of my adult life, and am also a real estate developer, Chaim Babad requested that I assist the Congregation in finding property to build a Tartikov Rabbinical College near

the Hasidic Orthodox Jewish community in Monsey. I identified the Congregation's 100 acre property in Pomona, which is the only sufficiently-sized parcel available in reasonable proximity to the community. I did not receive any commission or other remuneration for the purchase of the property. I took it as a religious obligation to assist Mr. Babad.

12. It is necessary for the Rabbinical College to be located near the Hasidic community in Monsey, which provides the necessary religious schools for children from preschool through post high school, ritual baths, stores with kosher products, religious texts and ritual items, and access to Rabbis.

13. The majority of the students and lecturers of the Congregation Rabbinical College of Tartikov will be drawn from the Monsey area.

14. At Mr. Chaim Babad's request, I hired certain professionals needed to study the land and its potential for environmentally responsible development. I have spent over 2 years working with engineering, planning, and architectural professionals to complete a draft environmental impact statement required by the New York State Environmental Quality Review Act (SEQRA). The Congregation will build the Rabbinical College if the impediments created by the Village's zoning code are removed. I have no financial investment in the property.

15. The Village states that a New York State Supreme Court Justice found that I misrepresented a different congregation's federal tax status, which is false and misleading. The Court simply found that a form I signed in my role as honorary President of a local congregation, of which I am not a member, represented that the congregation had a federal tax exemption, although the exemption apparently was not

formally granted until some months later, which I did not know. The congregation's attorneys informed me, and I believed, that a religious corporation is automatically tax exempt under New York's Real Property Tax Law § 420-a(1)(a) and 26 U.S.C. § 501(c)(3), whether or not an application has been filed and granted. The case referenced is currently on appeal before the New York State Supreme Court, Appellate Division, Second Department.

16.   It is not true that I "partnered with a Hanoch Babad" in purchasing the property at issue in the *Congregation Or Yosef* case, as the Village states without any basis. I receive no payment for my limited services to that congregation as an honorary president, and have no financial connection to the congregation or its property. I merely helped a rabbi form a congregation where one was needed, and was made its honorary president.

17.   It is also not true that I am an "investor" in the Congregation Rabbinical College of Tartikov, Inc., which is a religious corporation.

18.   The Congregation is committed to building a college to train Rabbinical Judges in the required Torah community setting, separate from the secular world, where students and their families can live in a religious study environment. The Congregation is not committed to any particular plan or number of students. Our goal is to begin with 250 students, with the possibility of growth in the future, if appropriate. In addition to the main school building, we will need to provide worship areas, study areas, libraries, lecture rooms, and courtrooms.

19.   I received a letter (Exhibit "A") from Dr. Bernard Fryshman, Executive Vice President of AARTS, the organization that certifies many religious schools. He

confirmed that our unique program cannot be accredited by AARTS.

20. I affirm this affidavit pursuant to my religious beliefs.

_____
MICHAEL TAUBER

Affirmed before me this 14th
day of January, 2008

_____
Notary Public

Paul Savad
Notary Public, State of New York
No. 02SA6075754
Qualified in Rockland County
Commission Expires 06/10/06/10



**Association of Advanced Rabbinical and Talmudic Schools**

January 9, 2008

Michael Tauber
10 Jeffrey Place
Monsey, NY 10952

**By Fax:**

Dear Mr. Tauber:

I am writing you to express, formally, the conclusion I shared with you in our meeting of January 4, 2007.

The Congregation Rabbinical College of Tartikov Inc. would not be eligible for accreditation by the Accreditation Commission of the Association for a number of reasons. First and foremost, the fact that you admit students into your school without an admissions test or other examination, is not consistent with our General Criteria (page 8 of our Handbook) which require that the school establish that the student has the prerequisite knowledge and skills mentioned there.

In our conversation I learned that your program is focused exclusively on Halachah which does not satisfy the requirement that our schools offer "a broad variety of programs centered around a common core of Talmudic studies". Although there are accredited schools which offer a program concentrating on Halachah, these programs are always centered around a core of Talmudic studies. While a program of Halachah *only* is unquestionably of value, it does not fit the scope of our accreditation activities.

To the best of my understanding your organization is not currently in operation as a post secondary school, with physical plant, faculty, curriculum, student services, and record keeping facilities which meet the standards of our organization. As such, your school has not been "in continuous existence as an institution of higher education for a period of two years" and again fails to meet the General Criteria noted in our Handbook.

I regret to say that your institution would not, as currently structured and organized, merit AARTS accreditation.

Sincerely,

Dr. Bernard Fryshman