UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

Congregation Rabbinical College of Tartikov, :
Inc., Rabbi Mordechai Babad, Rabbi Wolf Brief, :
Rabbi Hermen Kahana, Rabbi Meir Margulis, :
Rabbi Gergely Neuman, Rabbi Akiva Pollack and :
Kolel Belz of Monsey,                          :     Civil Action No.:
                                               :     7:07-cv-06304(KMK)(GAY)
                    Plaintiffs,                :
                                               :
              -against-                        :
                                               :
                                               :
Village of Pomona, NY; Board of Trustees of The :
Village of Pomona, NY; Nicholas Sanderson, as  :
Mayor; Ian Banks, Alma Sanders Roman, Rita     :
Louie and Brett Yagel, as Trustees and in their :
Official Capacities,                           :
                                               :
                    Defendants.                :
------------------------------------------------------------- x

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

DEFENDANTS

*By Their Attorneys*

Joseph L. Clasen (JC 1759)
William J. Kelleher III (WK 2146)
Samantha L.H. Cassetta (SC 3579)
ROBINSON & COLE LLP
885 Third Avenue, Suite 2800
New York, NY 10022

Marci A. Hamilton (admission pending)
36 Timber Knoll Drive
Washington Crossing, PA 18977

STAM1-850443-4

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................................... iii

INTRODUCTION ....................................................................................................1

FACTUAL ...............................................................................................................3

    A.    The Village of Pomona And The Individual Defendants.............................3

    B.    Plaintiffs, Their Property And The Not-Yet Proposed Rabbinical College
        Development ................................................................................................5

    C.    The Village Zoning Laws............................................................................8

ARGUMENT .........................................................................................................10

I. THE APPLICABLE STANDARD OF REVIEW................................................10

II. PLAINTIFFS' CLAIMS ARE NOT RIPE FOR ADJUDICATION ...................12

    A.    Plaintiff's As-Applied Challenge to The Village's Zoning Regulations Is
        Not Ripe ....................................................................................................14

        1.    Plaintiffs Have Not Sought or Received A Final Decision From
            The Village. ....................................................................................14

        2.    Plaintiffs Cannot Invoke the Futility Exception to the Final
            Decision Requirement. ....................................................................15

    B.    Plaintiffs Have Not Adequately Alleged a Facial Challenge to The
        Village's Zoning Regulations....................................................................18

III. PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR LACK OF STANDING...............24

    A.    The High Constitutional Standard For Standing Is Not Met......................24

    B.    The Rabbinical College And Kolel Belz Lack Standing............................26

        1.    There Is No General, Direct Standing. ...........................................26

        2.    There Is No Associational Standing. ..............................................28

    C.    The Individual Plaintiffs Lack Standing ...................................................30

IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE UNITED STATES
AND NEW YORK STATE CONSTITUTIONS ...........................................31

    A.    Plaintiffs Cannot State a Claim Under the Free Exercise Clause...............32

    B.    Plaintiffs Cannot State a Claim for Violation of Their Right to Free
        Speech ......................................................................................................33

    C.    Plaintiffs Cannot State a Claim for Violation of Their Right to Freedom
        of Association............................................................................................34

    D.    Plaintiffs Fail to State a Claim for Violation of the Equal Protection
        Clause .......................................................................................................35

V. PLAINTIFFS FAIL TO STATE A CLAIM UNDER RLUIPA.............................35

A.     The Village's Zoning Laws Do Not Place a Substantial Burden on Plaintiffs' Religious Exercise ................................................................................36

    1.     The Building of a Proposed Rabbinical College is Not Religious Exercise. ...............................................................................................36

    2.     Plaintiffs Cannot Meet the "Substantial Burden" Threshold. .......................37

B.     The Village's Zoning Laws Do Not Discriminate Against Plaintiffs on the Basis of Religion Or Treat Religious Entities on Less Than Equal Terms ...............38

C.     The Village's Zoning Laws Do Not Exclude Religious Assemblies Or Unreasonably Limit Religious Institutions Within the Jurisdiction ..........................39

**CONCLUSION** .............................................................................................................**40**

## TABLE OF AUTHORITIES

### CASES

Page

*100 Friends of Oregon v. Clackamas County,*
194 Or. App. 212 (Ct. App. Or. 2004)............................................................26,27

*Abbott Labs. v. Gardner,*
387 U.S. 136 (1967)..........................................................................................14,15

*Allen v. Wright,*
468 U.S. 737 (1984)...............................................................................................24

*Asian Ams. for Equality v. Koch,*
72 N.Y.2d 121 (1988)............................................................................................20

*ATSI Comm'ns, Inc. v. The Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007) ...................................................................................11

*Babbitt v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1978).............................................................................................25

*Baylis v. Marriott Corp.,*
843 F.2d 658 (2d Cir. 1988) ................................................................................40

*Bell Atlantic v. Twombly*
127 S. Ct. 1955 (2007);.....................................................................................11,39

*Brass v. Am. Film Techs., Inc.,*
987 F.2d 142 (2d Cir. 1993) ................................................................................11

*Califano v. Sanders,*
430 U.S. 99 (1977)................................................................................................14

*Carnegie-Mellon Univ. v. Cohill,*
484 U.S. 343 (1988)..............................................................................................40

*Cathedral Church of the Intercessor v. Vill. of Malverne,*
2006 U.S. Dist. LEXIS 12842 (E.D.N.Y. Mar. 6, 2006)..........................................35

*Chambers v. Time Warner,*
282 F.3d 147 (2d Cir. 2002) ................................................................................11

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993).............................................................................................33

*City of Boerne v. Flores,*
    521 U.S. 507 (1997)..................................................................................39

*City of Renton v. Playtime Theatres, Inc.,*
    475 U.S. 41 (1986)...................................................................................20

*Civil Liberties for Urban Believers ("C.L.U.B.") v. City of Chicago,*
    342 F.3d 752 (7th Cir. 2003) ..........................................................14,22,37

*Congregation Kol Ami v. Abington Twp.,*
    309 F.3d 120 (3d Cir. 2002) ...........................................................14,36

*Congregation Or Yosef v. Town of Ramapo,*
    Nos. 5003/04 and 6545/05 (N.Y. Sup. Ct., Rockland County, Sept. 27, 2006)
    (Dickerson, J.), slip opinion..........................................................2

*Country View Estates @ Ridge, LLC v. Town of Brookhaven,*
    2006 U.S. Dist. LEXIS 91981 (E.D.N.Y. 2006) .................................16,18

*DiLaura v. Power Auth. of New York,*
    982 F.2d 73 (2d Cir. 1992) ...........................................................40

*Dougherty v. Town of N. Hempstead,*
    282 F.3d 83 (2d Cir. 2002) ...........................................................13,14

*Ecogen, LLC v. Town of Italy,*
    438 F. Supp. 2d 149 (W.D.N.Y. 2006).................................14,16,18,19,20

*Employment Div., Dep't of Human Res. Of Or. V. Smith,*
    494 U.S. 872 (1990)......................................................................20,21,33

*Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.,*
    508 U.S. 307 (1993 ......................................................................20

*Fifth Avenue Presbyterian Church v. City of New York*
    293 F.3d 570 (2d Cir. 2002) ...........................................................20

*Filetech S.A. v. France Telecom, S.A.,*
    157 F.3d 922 (2d Cir. 1998) ...........................................................11

*Friends of Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.,*
    528 U.S. 167 (2000). ...................................................................24,25

*Goldfine v. Kelly,*
    80 F. Supp. 2d 153 (S.D.N.Y. 2000) .................................................16,18

*Grace United Methodist Church v. City of Cheyenne,*
    451 F.3d 643 (10th Cir. 2006) .........................................................32

*Greater Bible Way Temple of Jackson v. City of Jackson,*
    478 Mich. 373 (2007) ............................................................20,37,38

*Guru Nanak Sikh Soc. of Yuba City v. County of Sutter,*
    326 F. Supp. 2d 1140 (E.D. Cal. 2003), *aff'd,* 456 F.3d 978 (9th Cir. 2006)............22

*Hack v. President. and Fellows of Yale Coll.,*
    16 F. Supp. 2d 183 (D. Conn. 1998), *aff'd,* 237 F.3d 81, 91 (2d Cir. 2000) .............40

*In re United States Catholic Conference,*
    885 F.2d 1020 (2d Cir. 1990) ..................................................................25

*Kirby v. Twp. of Bedminster,*
    775 A.2d 209 (N.J. App. Div. 2000) ........................................................24

*Kittay v. Giuliani,*
    112 F. Supp. 2d 342 (S.D.N.Y. 2000),
    *aff'd* 252 F.3d 645 (2d Cir. 2001)..........................................13, 16,18,40

*Konikov v. Orange County,*
    410 F.3d 1317 (11th Cir. 2005) ..............................................................22

*Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood,*
    699 F.2d 303 (6th Cir. 1983) ..................................................................32

*League of Residential Neighborhood Advocates v. City of Los Angeles,*
    498 F.3d 1052 (9th Cir. 2007) ................................................................27

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971)...............................................................................22

*Lighthouse Inst. for Evangelism v. City of Long Branch,*
    2007 U.S. App. LEXIS 27390 (3d Cir. Nov. 27, 2007) ("*Lighthouse II*")......19,32,39

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch,*
    100 Fed. Appx. at 70 (3d Cir. 2004) ("*Lighthouse I*") ...............................21

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).........................................................................24,25,30

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*
    173 F.3d 469 (2d Cir. 1999) ..............................................................10,21

*Marcus Assocs. v. Town of Huntington,*
    45 N.Y.2d 505 (1978)............................................................................20

*Marin v. State of Arizona,*
    2000 U.S. App. LEXIS 33934 (9th Cir. Dec. 22, 2000).............................30

*Marshall v. Grant,*
    2007 U.S. Dist. LEXIS 82335 (E.D.N.Y. Nov. 6, 2007)............................................ 11

*Midrash Sephardi Inc. v. Town of Sufside,*
    366 F.3d 1214 (11th Cir. 2004) ..................................................................... 37

*Muhammad v. New York City Trans. Auth.,*
    450 F. Supp. 2d 198 (E.D.N.Y. 2006) ......................................................... 31

*Murphy v. New Milford Zoning Comm'n,*
    402 F.3d 342 (2d Cir. 2005) ...................................................... 12,13,14,15,16

*N. Shore Unitarian Universalist Soc., Inc. v. Inc. Vill. of Upper Brookville,*
    100 A.D.2d 123 (2d Dept. 1985) .................................................................. 24

*Natale v. Town of Ridgefield,*
    170 F.3d 258 (2d Cir. 1999) ........................................................................ 14

*New York State Club Assoc., Inc. v. City of New York,*
    487 U.S. 1 (1988)......................................................................................... 21

*Okwedy v. Molinari,*
    69 Fed. Appx. 482 (2d Cir. 2003).................................................................. 20

*People v. Life Science Church*
    450 N.Y.S.2d 664 (N.Y. Sup. Ct. 1982)......................................................... 5

*Petra Presbyterian Church v. Vill. of Northbrook,*
    2004 WL 442630 (N.D. Ill. Mar. 8, 2004) ................................................... 19

*Pierce v. Soc. of Sisters,*
    268 U.S. 510 (1925)...................................................................................... 22

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,*
    2007 U.S. App. LEXIS 24728 (2d Cir. Oct. 23, 2007) ................................. 11

*Rhulen Agency, Inc. v. Alabama Ins. Guar. Assoc.,*
    896 F.2d 674 (2d Cir. 1990) ......................................................................... 11

*Rust v. Sullivan,*
    500 U.S. 173 (1991)...................................................................................... 19

*San Jose Christian Coll. v. City of Morgan Hill,*
    2002 U.S. Dist. LEXIS 4517 (N.D. Cal. Mar. 8, 2002). ("*San Jose I*");
    *aff'd San Jose II.* ..................................................................................... 19,36

*San Jose Christian Coll. v. City of Morgan Hill,*
    360 F.3d 1024 (9th Cir. 2004) ("*San Jose II*") ................................ 14,19,34,35

*Sanchez v. Turner,*
    2002 U.S. Dist. LEXIS 10911 (S.D.N.Y. June 19, 2002) ......................................... 31

*Schad v. Borough of Mount Ephraim,*
    452 U.S. 61 (1981)................................................................................................. 36

*Shipping Fin. Servs. Corp. v. Drakos,*
    140 F.3d 129 (2d Cir. 1998) ................................................................................. 11

*Simmons v. Philadelphia,*
    947 F.2d 1042 (3d Cir. 1991) ............................................................................... 18

*Singh v. City of New York,*
    418 F. Supp. 2d 390 (S.D.N.Y. 2005) .................................................................. 31

*Southview Assocs., Ltd. v. Bongartz,*
    980 F.2d 84 (2d Cir. 1992) ................................................................................... 16

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83, 107 (1998)........................................................................................ 28

*Suitum v. Tahoe Reg'l Planning Agency,*
    520 U.S. 725 (1997).......................................................................................... 18,19

*Taylor v. Vt. Dep't of Educ.,*
    313 F.3d 768 (2d Cir. 2002) ................................................................................. 11

*Tenafly Eruv Assoc., Inc. v. Borough of Tenafly,*
    309 F.3d 144 (3d Cir. 2002) ........................................................................ 33,34,39

*Texas v. United States,*
    523 U.S. 296 (1998)............................................................................................. 27

*Town of Islip v. Caviglia,*
    141 A.D.2d 148 (N.Y. App. Div. 1988) ............................................................... 31

*United Food & Com. Workers Union Local 751 v. Brown Group, Inc.,*
    517 U.S. 544 (1996)............................................................................................. 28

*United States v. Hays,*
    515 U.S. 737 (1995)............................................................................................. 25

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.,*
    454 U.S. 464 (1982)......................................................................................... 25,31

*Vill. of Euclid v. Ambler Realty Co.,*
    272 U.S. 365 (1926)............................................................................................. 20

*Vision Church v. Vill. of Long Grove,*
  397 F. Supp. 2d 917 (N.D. Ill. 2005) .......................................................... 36

*Vision Church, United Methodist v. Vill. of Long Grove,*
  468 F.3d 975 (7th Cir. 2006) ("*Vision Church II*") ................................... 22,36,39,40

*Warth v. Seldin,*
  422 U.S. 490 (1975) ............................................................................... 10,25,31

*Westchester Day School v. Vill. of Mamaroneck,*
  386 F.3d 183 (2d Cir. 2004) ("*Westchester Day School I*") ................................. 14,36

*Westchester Day School, Vill. of Mamaroneck,*
  2007 U.S. App. LEXIS 24267 (2d Cir. Oct. 17, 2007)
  ("*Westchester Day School II*") ........................................................................ 36,38

*Wiesner v. Nardelli,*
  2007 U.S. Dist. LEXIS 5801 (S.D.N.Y. Jan. 29, 2007) ........................................ 31

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank,*
  473 U.S. 172 (1985) ................................................................................ 12,13,14,15

*Xikis v. City of New York,*
  1990 WL 156155 (E.D.N.Y. Sept. 28, 1990) ...................................................... 16

## CONSTITUTIONS

UNITED STATES CONSTITUTION, FIRST AMENDMENT ........................................ 1,31

UNITED STATES CONSTITUTION, FOURTEENTH AMENDMENT ................................. 1

NEW YORK STATE CONSTITUTION, ART. 1 § 3 ................................................. 31

NEW YORK STATE CONSTITUTION, ART. 1 § 8 ................................................. 31

NEW YORK STATE CONSTITUTION, ART. 1 § 9 ................................................. 31

NEW YORK STATE CONSTITUTION, ART. 3 ...................................................... 31

## STATUTES

28 U.S.C. § 1367(a) ................................................................... 40

42 U.S.C. § 2000 *et seq.* ............................................................. 1

42 U.S.C. § 2000cc(a)1 .............................................................. 37

42 U.S.C. § 2000cc(2)(b)(1) ....................................................... 39

42 U.S.C. § 2000cc(2)(b)(2) ....................................................... 38

42 U.S.C. § 2000cc(2)(b)(3)(A) .................................................. 39

42 U.S.C. § 2000cc-3(e) ............................................................ 17

42 U.S.C. § 2000cc-5(7)(b) ........................................................ 36

42 U.S.C. § 3601 *et seq.* ............................................................. 1

FED. R. CIV. P. 12(b)(1) .......................................................... 10,11

FED. R. CIV. P. 12(b)(6) .......................................................... 10,11

N.Y. CIVIL RIGHTS L. § 40-C(1),(2) ............................................. 1

N.Y. EDUC. L. § 224(1)(a) ......................................................... 5

N.Y. EDUC. L. § 224(3) ............................................................ 23

N.Y. VILL. L. § 7-704 ............................................................... 20

N.Y. VILL. L. § 7-712-b(2) ......................................................... 17

POMONA VILL L., LOCAL L. #1 of 2001 ....................................... 23

POMONA VILL. L., LOCAL L. #5 of 2004 ...................................... 23

POMONA VILL. L. § 130-2(A) – (G) (2007) ...................................... 9

POMONA VILL. L. §130-4 ...................................................... 19,39

POMONA VILL. L. § 130-5 ......................................................... 8,9

POMONA VILL. L. § 130-5(A)(2) ................................................... 9

POMONA VILL. L. § 130-10(A) .......................................................................... 19

POMONA VILL. L. § 130-10(D) .......................................................................... 19

POMONA VILL. L. § 130-10(E) .......................................................................... 19,40

POMONA VILL. L. § 130-10(F) ..................................................................... 15,19,39,40

POMONA VILL. L. § 130-10(G) .................................................................... 9,22,39

POMONA VILL. L. § 130-28(D) .......................................................................... 9,17

POMONA VILL. L. § 130-28(E) ............................................................................ 9

POMONA VILL. L. § 130-35 through 130-45 ..................................................... 10,17

## LEGISLATIVE HISTORY

146 CONG. REC. S 7774 (July 27, 2000) .......................................................... 36,38

Plaintiffs bring their Second Amended Complaint ("SAC")[1] purportedly to address alleged violations of rights under the United States (First and Fourteenth Amendments), the New York Constitution (Article I, §§ 3, 8, 9 and 11), the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* (known as "RLUIPA"), the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the New York Civil Rights Law §§ 40-c(1), (2) and New York common law.

## INTRODUCTION

Plaintiffs' latest pleading, the Second Amended Complaint, is already their third pleading to date. This time, they have added some allegations and substituted a few individuals as plaintiffs. However, the case is still enormously premature and their claims are still deeply flawed even as amended.

Despite the Village of Pomona's ("Village") long-time zoning law of one-acre, single family residential, enacted 40 years ago to preserve its rural character (a fact of which Plaintiffs were undoubtedly aware when the land was purchased in 2004), the Plaintiffs claim that they cannot develop the property as they see fit. The Plaintiff college, a Brooklyn, New York-based group, makes its claim without even trying to avail itself of several avenues under the Village's zoning laws by which it could have applied for the use, or some modification thereof, that it seeks for the property. Plaintiffs instead rushed into court to file and publicize what they have promoted on the Internet as "perhaps the most prominent religious freedom case of its kind yet to be filed."[2]

Without having so much as applied to the Village for what is clearly a large-scale residential development, and gone through the usual zoning process that every other land owner and citizen must, Plaintiffs claim injury as a result of the Village's generally applicable zoning laws. The planned Rabbinical College, on what is now mostly wooded property, will be large and dense. It

---

[1] A copy of the Second Amended Complaint is filed herewith as Exhibit A. All cited exhibits are included in the concurrently-filed Appendix of Exhibits to Defendants' Motion to Dismiss.

[2] *See* http://www.tartikovcollege.org/ (under Home and News pages).

will include: (i) at least nine, six-story multi-family housing buildings for the Rabbinical College's planned 1,000 full-time rabbinical students in a fifteen year course of study and its lecturers (the "Individual Plaintiffs") and their families (estimated to be 4,500 residents); (ii) up to ten synagogues; (iii) four courtrooms; (iv) "multiple libraries;" (v) parking for 1,000 cars; and (vi) presumably, space for all of the attendant employees and personnel that would operate and staff such a large campus, all on a 30-acre section of its 100-acre property. *E.g.*, SAC ¶¶ 1, 64 & 68-70. The density of Plaintiffs' planned development was recently confirmed by Plaintiffs' wealthy developer, Michael Tauber, in an interview he gave for an article about the planned development that was published shortly after this lawsuit was filed.

All this in little Pomona, which at the last U.S. Census, had a population of 2,726. All without having ever so much as applied to the Village for approval of their planned use. In short, Plaintiffs want to double or triple the existing population of the Village, and they want to do so without having to go through the customary and standard land use and zoning process so that there is as little scrutiny as possible of their development plans.

Plaintiffs are not new to the shortcut gambit. The Plaintiff Rabbinical College is evidently calling itself a college in violation of New York law without having obtained the requisite authorization from the State of New York to call and hold itself out as such. Mr. Tauber, Plaintiffs' real estate developer, builder and investor, who also happens to be a Trustee of corporate Plaintiff (Congregation Rabbinical College Tartikov, Inc.), was recently found by a New York State Supreme Court to have misrepresented another local religious corporation's tax exempt status.[3]

---

[3] *See See Congregation Or Yosef v. Town of Ramapo*, Nos. 5003/04 and 6545/05 (N.Y. Sup. Ct., Rockland County, Sept. 27, 2006) (Dickerson, J.), slip op at 9, 22 n. 3 & 37, attached as Exhibit B. In the New York State Supreme Court decision, Mr. Tauber, as president of a local religious corporation, Congregation Or Yosef, was found to have misrepresented the congregation's tax exempt status in his filing with the Town of Ramapo. There, Mr. Tauber partnered with a Hanoch Babad, who purchased the property and subsequently deeded it to the Congregation. *See id.* at 6. The court found that the plaintiff, for which Mr. Tauber was the main witness at trial, was secretly engaging in double-dipping for a residential property used as a synagogue and Rabbi residence that was already receiving Section 8 government housing subsidies, and on which it was making a profit.

Finally, Plaintiffs' allegation that it cannot possibly be accredited like other colleges, while having nothing to do with Pomona's laws, appears to be wrong as other similar rabbinical colleges in the region have been accredited and suitable accrediting agencies exist.

RLUIPA, the federal statute at the center of Plaintiffs' claims, was never intended to be a blank check that religious land owners can use as a short cut around, and effectively an exemption from, a municipality's zoning laws and a state's environmental review process. Nor was it intended to short circuit the presumptively valid legal scrutiny that goes with local zoning laws. In fact, the statute's Congressional sponsors specifically stated that RLUIPA does not exempt religious entities from the local land use process. What Plaintiffs want, then, is preferential treatment not granted to any other land owner or religious organization. What they want is a free pass – from this Court.

But even after this third pleading, Plaintiffs will not be able to cite the Court to one single case that goes as far as the "let us do whatever we want" style lawsuit that they have filed. The reason is simple: their claims are not ripe, whether as facial or as-applied challenges, they do not have standing to sue, their Constitutional and RLUIPA claims fail as a matter of law and there is no supplemental jurisdiction over their handful of tag-along state law claims. Plaintiffs' tactic of "sue first, apply later" – but only if they must or the Court requires them to do so – should be rejected, and their premature and meritless claims should be dismissed.

## FACTUAL BACKGROUND

A.    **The Village of Pomona And The Individual Defendants**

The Village was incorporated on February 3, 1967. SAC ¶¶ 87 & 227. Approximately half of the Village is located in the Town of Ramapo and half in the neighboring Town of Haverstraw, in Rockland County, New York. *Id.* ¶ 86.[4] Pomona is, by any measure, a very small village and one of Rockland County's more rural and quiet areas. According to the most recent 2000 U.S. Census,

---

[4] The SAC incorrectly alleges that the entire Village is located in the Town of Ramapo. SAC ¶¶ 86 & 243.

the incorporated Village of Pomona has only 2,726 residents.  It has 925 homes and a land area of just 2.4 square miles.  *Id.*  The average household size, according to the 2000 Census, was 2.94 and the average family size was 3.04.  *Id.*

Pomona is a suburban bedroom community of New York City.  Geographically, the Village is located about 38 miles northwest of New York City, just off the Palisades Parkway.[5]  The Village is dedicated to preserving its rural character.  When Pomona was first formed 40 years ago, the founding residents wished to maintain a "close-knit community vested in [its] rural roots."[6]  The Village founders therefore chose the name Pomona after the Roman goddess of fruit trees, gardens and orchards.  *Id.*  In keeping with its rural and residential roots, Pomona is located a short distance from Harriman State Park and has three Village parks of its own.  *Id.*  Bear Mountain State Park is farther north of the Village and a short car ride away.

The Village is religiously diverse.  It has three houses of worship including a Methodist church (Ladentown United Methodist Church), a Zoroastrian temple (Darbe Mehr), and a Hindu temple (Sri Ranganatha Temple).[7]  Plaintiffs themselves acknowledge the "large Hindu temple" that was built in the Village on nearby property.  SAC ¶ 120.

The Village is a municipal corporation.  SAC ¶ 22.  The Board of Trustees of the Village is its governing body.  *Id.* ¶ 23.  The current Mayor, Nicholas Sanderson, was elected in March, 2007 with Trustees Rita Louie and Brett Yagel.  *Id.* at ¶¶ 197-198.  Defendants Ian Banks, Alma Sanders Roman, and Louie and Yagel are Trustees of the Village and, members of the Village Board.  *Id.* ¶ 23.  They and the Mayor are sued in their official capacities.  *See id.* [8]

---

[5] *See* http://www.mapquest.com/directions/main. (measuring distance from New York, New York to Village Hall at 100 Ladentown Road, Pomona, New York).

[6] *See* Village of Pomona Website: http://www.pomonavillage.com/ (Home page).

[7] *See* Elsa Brenner, A Country Village Caught Up in the Times, N.Y. TIMES, Nov. 25, 2007 (Exhibit C).

[8] The Mayor and Trustees are collectively referred to as the "Individual Defendants" and the Trustees as the "Individual Trustee Defendants."

4

**B.**    **Plaintiffs, Their Property And The Not-Yet Proposed Rabbinical College Development**

The discussion of Plaintiffs' purported plans herein is based on various claims made in their Second Amended Complaint and no more, because no land use application was ever filed with anyone in Village government. This case is thus based on possible claims built on hypotheticals.

Plaintiff Congregation Rabbinical College of Tartikov, Inc. ("the Rabbinical College" or "College") is allegedly a New York religious corporation which asserts that it plans on providing a specialized education for ordained rabbis to become rabbi judges. *See* SAC ¶¶ 1, 24-25; *see also* Exhibit D.[9] The College purchased its 100-acre property located in the Village's R-40 district (zoned one-acre, single family residential), on August 17, 2004 from Yeshiva Spring Valley for $13 million and recorded its deed with Rockland County on August 31, 2004. *See* SAC ¶¶ 50, 73; *see also* Exhibit E. The property is located near the intersection of Routes 202 and 306. *Id.* at ¶75. It is, by far, the largest piece of property in the Village. *See* Exhibit F (vicinity and Village maps).

While the Plaintiffs allege a general description of the type of training students will receive and texts they will study (*see* SAC ¶¶ 53, 56) they give no details on the curriculum the College will offer over the alleged fifteen-year course of study.[10] *See id.* ¶ 59. Plaintiffs' allegations, however, do focus on intended homebuilding on the site, which they describe in great detail. *Id.* ¶¶ 59-60, 63-68. The alleged plans for the College's design and structure call for 10% of the campus' buildings to be used for classrooms and other teaching purposes, and the remaining 90% for housing for up to

---

[9] *See* http://www.tartikovcollege.org/about.html (Exhibit D).

[10] The College currently is one in name only. Defendants' note that Plaintiff College's self-styling of "college," while it may generally describe the type of school it hopes to be, is not permitted under New York law. "No individual, association, partnership or corporation not holding university, college or other degree conferring powers by special charter from the legislature of this state or from the regents, shall confer any degree or use, advertise, or transact business under the name university or college." N.Y. EDUC. L. § 224(1)(a); *see also People v. Life Science Church*, 450 N.Y.S.2d 664, 674 (N.Y. Sup. Ct. 1982) (where so-called religious college never filed application with state Department of Education yet held itself out as a college, it was in violation of Section 224); and New York State Dep't of Education Protocol for Opening a College. *See* Exhibit G. While Plaintiffs have alleged that they have registered with the state as a religious corporation, *see* SAC ¶ 10, they are not currently listed as a registered institution on the Education Department's website. *See* http://www.nysed.gov/coms/rp090/IRPSL1.

4,500 people (1,000 students, their wives, and their 2.5 children).  *See* Exhibit H. [11]

This number of people is nearly twice the existing population of the Village and allegedly would be concentrated on just 30 acres of this 100-acre parcel.  Underscoring the hypothetical nature of Plaintiffs' plan, these figures in the Second Amended Complaint do not include the many staff and employees necessary to operate and maintain the alleged school, multiple libraries, four courts, ten synagogues, and multi-family housing facilities.  SAC ¶¶ 64, 68-70.  Based on the alleged plan, it would appear that the Plaintiffs want to build a large, high-density, multi-faceted complex with extensive multi-family housing on wooded property zoned for one-acre, single family homes.  *See id.*  In fact, in referring to Plaintiffs' alleged development project, its developer Mr. Tauber, a College Trustee and its chief real estate developer, confirmed as much in a September, 2007 article publicizing the development in which he was quoted as saying: "[i]t will be dense." *See* "Culture Clash", ROCKLAND MAGAZINE, Aug. 31, 2007.

Although not specifically mentioned in the Second Amended Complaint, it appears beyond question that the man behind the curtain for the Plaintiffs is indeed Mr. Tauber, among others.  Mr. Tauber is a real estate broker, investor and property manager in nearby Monsey, New York.  *See id.*; *see also* (Exhibit I).[12]  He is a significant real estate investor and developer in the Orthodox Hasidic community and is involved with other local religious corporations in addition to the College.

The proposed Rabbinical College itself is affiliated with Kollel Beth Yechiel Mechil of Tartikov, which Plaintiffs allege is a rabbinical college in Brooklyn, New York that provides the same type of academic program as the College claims it intends to provide.  *See* SAC ¶ 48.  Kollel Beth Yechiel Mechil of Tartikov attempted to develop a large-scale housing community for Hasidic

---

[11] *See* http://www.preserveramapo.org/Preserve%20Ramapo%202007/Pomona_ASH_college.htm.  (Exhibit H). Plaintiffs allege in their Second Amended Complaint that their "hypothetical sketch plat" was leaked to the Preserve Ramapo organization.  *See* SAC ¶ 175.

[12] http://www.rcbor.com/memberoffices.html (Listing of Rockland Count Board of Realtors Member Offices) (Exhibit I).

Orthodox Jews in Staten Island in the late 1990s. *See* Exhibits J and K. That plan involved the proposed construction of 2,000 to 3,000 new housing units in a former industrial zone, and was eventually abandoned after the surrounding community raised serious concerns about overdevelopment. *See* Exhibit K.

The College was formed by Congregation Kahal Minchas Chinuch ("Minchas Chinuch"), which is a residential real estate company based in Brooklyn, New York. *See* Exhibits K and L. Plaintiff Rabbi Mordechai Babad, the College's planned academic head (*see* SAC ¶ 46), operates his own real estate company, Babad Management Co., from the same address as Minchas Chinuch. See Exhibit K. Babad Management rents and manages residential and commercial properties in New York City and other parts of the area.[13]

Plaintiff Kolel Belz of Monsey is alleged to be a religious corporation whose purpose and role in the litigation is unclear. *See* SAC ¶¶ 21. Plaintiffs allege that Kolel Belz has congregants, is an educational facility, and "represents the interests of itself and the broader Orthodox community." *See id.* ¶¶ 21, 34-37.

The remaining Individual Plaintiffs, other than Rabbi Babad, allege that they are prospective students or lecturers at the College. *See* SAC ¶¶ 11-20, 27. They do not allege that they are already enrolled in, or employed by, the proposed College, or that they study or teach at its Brooklyn counterpart, Kollel Beth Yechiel Mechil of Tartikov. Plaintiffs allege that the Rabbinical College will cover the students' housing and tuition costs, and will subsidize the students' and their families' "other financial needs" to the tune of $1,200 to $2,400 per month, per family. *See* SAC ¶¶ 59, 62. In effect, Plaintiffs allege that 4,500 people will live at little or no cost to themselves and enormous cost of many tens and hundreds of millions of dollars to the College, for up to fifteen

---

[13] *See* http://directory.cooperator.com/listingresults.php?letter=b&category_id=6.

years.[14]  Plaintiffs Rabbi Wolf Brief and Rabbi Hermen Kahana allege that they currently study at a

similar institution, Mechon L'Hoyroa.  *See* SAC ¶ 40.  Mechon L'Hoyroa is also operated by

Plaintiff Rabbi Babad.[15]

## C.    The Village Zoning Laws

Ever since its formation 40 years ago, the Village has limited land use to single-family

residences on one-acre zoned property.  POMONA VILL. L. § 130-5.[16]  This is not a new

development, as Plaintiffs try to insinuate throughout their Second Amended Complaint.  *Id.*  The

zoning laws were adopted in the 1960s, shortly after the Village was created, to maintain and

enhance the rural character of the area; the zoning laws reflect that long-time concerted purpose and

its history as a low-density residential community:  *Id.*

> To preserve and enhance the rural residential character of the Village
> and to encourage the orderly and beneficial development of the entire
> Village.
>
> To prevent the overcrowding of land with persons and structures in
> relation to open spaces, circulation and neighboring land uses . . .
>
> To prevent the contamination of streams and ponds, to safeguard the
> water table and to encourage the wise use and sound management of
> the natural resources throughout the Village in order to preserve the
> integrity, stability and beauty of the community and the value of the
> land.
>
> To provide adequate light, air and privacy for residents, to secure
> safety from fire, flood and other danger and to discourage uses
> inimical to public health.

---

[14] Using these figures, it will cost Plaintiffs staggering sums to educate and subsidize these 1,000 students: between $14,400,000 to $28,800,000 per year and between $216,000,000 and $432,000,000 over the fifteen years.  Plaintiffs compare the alleged, fifteen-year course of study to the amount of time required for a Roman Catholic ecclesiastical judge to become certified: four years of high school, four years of college, four years of seminary, and three years for licensing in canon law.  *See* Exhibit M.  However, Plaintiffs allege that their students will already be ordained rabbis.  *See* SAC ¶ 59.  Given that the students will have already attained ordination, presumably based on a certain number of years of study, Defendants question the length of time Plaintiffs claim is actually needed to become a rabbi judge.

[15] *See* http://www.tartikovcollege.org/rabbibabad.html.  Exhibit N.

[16] *See* Village of Pomona Website: http://www.pomonavillage.com/about/html (on the "About" the Village page).  All relevant zoning laws are filed herewith in the Appendix of Exhibits.  Exhibit O.

> To encourage any construction which will tend to enhance the natural, rural beauty of the area.
>
> To discourage auxiliary construction which detracts from the rural aesthetic beauty of the community. . . .

POMONA VILL. L. § 130-2(A) – (G) (2007). This purpose is in keeping with the plans and ordinances of the Towns of Ramapo and Haverstraw in which the Village is located. *Id.* (Purpose and Intent: "the area embraced by the Village . . . conforms to the low-density concept of the outlying areas of the Towns of Haverstraw and Ramapo"). Also, when the Village updated its Master Plan in 1997, it called for "the policy to maintain the low-density residential character of the Village should remain unchanged. . . . Care should be taken that future development is designed so as to preserve open space and important natural features." *See* Exhibit P.

The Plaintiffs' alleged plans raise a welter of standard land use issues and bring into play a number of elements of the Village's zoning laws at once. Most important are the criteria for obtaining special use permits, use variances, or zoning amendments or zone changes.[17]

The entire Village is designated as residential with a minimum of 40,000 square feet per lot (R-40). *See* POMONA VILL. L. § 130-5. One-family residences, public utilities rights-of-way, libraries and museums, public parks and playgrounds, and agricultural pursuits are all permitted uses. *Id.*[18] The construction of educational institutions (with attendant dormitories) and houses of worship is governed by special use permit, granted by the Board of Trustees. *See* POMONA VILL. L. § 130-28(E). The Zoning Board of Appeals ("ZBA") has authority to grant use or area variances to a property owner. *See* POMONA VILL. L. § 130-28(D). A property owner may also petition to amend the zoning law or apply for a zone change should its use not be encompassed by a special

---

[17] Plaintiffs also take issue with the Village's wetlands law. Plaintiffs include allegations about the wetlands law, *see* SAC ¶¶ 168-174, but the application of the wetlands law does not appear to be central to their argument that the Village zoning law impermissibly excludes their school and associated housing.

[18] The current version of the code contains a drafting error and includes houses of worship as a permitted use. *See* POMONA VILL. L. § 130-5(A)(2). This provision was amended by Local Law 2-2007, and houses of worship are now special permit uses. *See* POMONA VILL. L. § 130-10(G).

use permit or be suitable for a variance. POMONA VILL. L. §§ 130-35 - 130-45.

The College's proposed use for its land in general – as a religious college, with houses of worship and dormitory housing – is thus encompassed by the Village's zoning laws. All of these uses are mentioned in the very first paragraph of Plaintiffs' pleading, but Plaintiffs are evidently most interested in the multi-family housing aspect of their proposed development. *See* SAC ¶ 1. Currently, however, Plaintiffs' plans do not meet the criteria for a special use permit because the Rabbinical College is allegedly not an accredited institution under New York law[19] and because the amount of housing it plans to build in the location it has chosen vastly exceeds the law regarding dormitories. Furthermore, Plaintiffs' counsel has admitted to the Village Attorney that the College would not meet the criteria for a use variance, which provides some insight into why the Plaintiffs have come to federal court before filing any plan with the Village. *See* Exhibit Q. As the Village Attorney advised Plaintiffs' attorney, the first step it should take towards building the College is to apply for a zoning amendment. *See* Exhibit R. They have not taken this simple step, but instead have chosen to roll head-long into federal litigation.

## ARGUMENT

## I. THE APPLICABLE STANDARD OF REVIEW

Defendants move to dismiss the Second Amended Complaint under Rules 12(b)(1) and (b)(6), Fed. R. Civ. P., in its entirety for two reasons. First, because Plaintiffs' claims are not ripe and they lack standing to bring them, this Court lacks subject matter jurisdiction. *See, e.g., Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 478 (2d Cir. 1999) ("ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts"); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (plaintiff's standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit"). Second, Plaintiffs fail to state a claim

---

[19] Plaintiffs' claim that the alleged College cannot be accredited is questionable. *See infra* at 23. In any event, accreditation for their proposed school is required by New York state law. *Id.*

upon which relief can be granted. Where a defendant moves to dismiss a complaint under Rules 12(b)(1) and 12(b)(6), the Court should consider the Rule 12(b)(1) challenge first. *Rhulen Agency, Inc. v. Alabama Ins. Guar. Assoc.*, 896 F.2d 674, 678 (2d Cir. 1990).

When a defendant moves to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1), "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). A plaintiff who asserts subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists." *Marshall v. Grant*, 2007 U.S. Dist. LEXIS 82335, at *4 (E.D.N.Y. Nov. 6, 2007). The court may also consider evidence outside the pleadings when resolving a challenge to its subject matter jurisdiction. *Id.* (citing *Filetech S.A. v. France Telecom, S.A.*, 157 F.3d 922, 932 (2d Cir. 1998)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must now allege more facts, which are "not merely inconsistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion," *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 2007 U.S. App. LEXIS 24728, at *7 (2d Cir. Oct. 23, 2007), and that are sufficient "to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965-1966 (2007); *see also ATSI Comm'ns, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Legal conclusions and outright wrong allegations couched as factual allegations are insufficient and shall be given no effect. *Twombly*, 127 S. Ct. at 1964-65; *Port Dock*, 2007 U.S. App. LEXIS 24728 at *7. In deciding a motion under Rule 12(b)(6), the court may consider documents referenced in the complaint, documents that the plaintiff referenced or relied upon in bringing the complaint, and matters of public record and availability and of which judicial notice may be taken. *See Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002); *Taylor v. Vt. Dep't*

*of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d

Cir. 1993).

## II. PLAINTIFFS' CLAIMS ARE NOT RIPE FOR ADJUDICATION

Plaintiffs have preemptively filed their alleged plan in federal court, without having

formally presented their actual plans for the proposed Rabbinical College to the Village or having

made any application for a special use permit, use variance, zoning amendment or zone change as

required by the Village zoning laws. Plaintiffs admit that they have not made any formal

application to the Village. *See* SAC ¶¶ 185, 208. Plaintiffs even state that the plans that were

leaked to Preserve Ramapo — which is not affiliated with the Village — were not final or close to

final, but rather were a "hypothetical sketch plat." *See* SAC ¶ 175 (Plaintiffs deleted the word

"plans" and substituted "hypothetical sketch plat" in amending the Complaint).

Because Plaintiffs have chosen to use the federal courts to avoid standard, available land use

procedures, and have not bothered to initiate the customary administrative proceedings required of

all landowners seeking special use permits, variances, or zoning amendments, their claims are far

from ripe, and this Court lacks jurisdiction to hear them. *Williamson County Reg'l Planning

Comm'sn v. Hamilton Bank*, 473 U.S. 172, 186 (1985). A final decision from the local land use

authority is required for a federal court to have jurisdiction over such a claim, under Second Circuit

law. *See also Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).

Plaintiffs in this case try to sidestep the *Williamson* test by characterizing their challenge as

a facial challenge to the Village zoning law. It is impossible, however, to determine which elements

of the zoning law are likely to be involved in this case, because no meaningful plan has been

presented, even through the vague allegations in the Second Amended Complaint. Plaintiffs are

asking this Court to decide on the basis of abstractions built on abstractions, in an arena where

concrete details make significant differences in material outcomes. Without any indication that a

particular land use regulation would apply to the Plaintiffs and/or would bar their alleged project, even a facial challenge fails to meet the jurisdictional requirements of ripeness and standing.

The Plaintiffs also then argue that they should not have to participate in the normal land use process because it would be futile to do so. *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 349 (S.D.N.Y. 2000), *aff'd* 252 F.3d 645 (2d Cir. 2001). The problem for Plaintiffs, however, is that they have to date asserted no more than a hypothetical plan in a federal lawsuit. There can be no futility where there is no known plan. Having failed to attempt even a modest genuine entry into the Village land use process, this as-applied futility challenge is extremely premature and not ripe. *See Murphy*, 402 F.3d at 348; *Dougherty v. Town of N. Hempstead*, 282 F.3d 83, 88-89 (2d Cir. 2002).

No matter how Plaintiffs cast and shift their claims, they are not ripe for decision and should be dismissed. This Court should not be required to consider this matter, if at all, before there is a meaningful record that is based on an actual application, appropriate hearings, due process for the applicant and community members, and proceedings before the Village. Otherwise, this Court is being asked to speculate and imagine how the Village zoning laws might possibly operate in some set of circumstances alleged by the Plaintiffs but not necessarily grounded in reality, and which may never come to pass depending on the outcome of Plaintiffs' application.[20] The ripeness doctrine exists to prevent federal courts from issuing such advisory opinions. *Williamson*, 473 U.S. at 186; *Murphy*, 402 F.3d at 348.

---

[20] Defendants note that Plaintiffs' description of their plans for the Rabbinical College has changed several times over the course of pleading and their representations both to Defendants and the Court. The Congregational Rabbinical College's website says that it plans on constructing 1,000 units of housing, *see* Exhibit D, as did the "hypothetical plans" leaked to Preserve Ramapo, and information about the project reported in the press. *See* SAC ¶ 199; see also Exhibit H. Plaintiff's counsel also mentioned 1,000 students would be the "maximum" number during the Court's pre-motion hearing on October 12, 2007. Elsewhere in their Second Amended Complaint and in other representations to Defendants, however, they say that they are planning on building housing for 250 students. *See* SAC ¶ 212; *see also* Letter from Paul Savad, Esq. to Mayor Nick Sanderson, June 22, 2007 (Exhibit S). If Plaintiffs themselves are unable to represent consistently or definitively what their plans are, this Court certainly cannot be expected to determine how the Village's zoning laws will hypothetically affect them.

13

A.    **Plaintiff's As-Applied Challenge to The Village's Zoning Regulations Is Not Ripe**

    1.    **Plaintiffs Have Not Sought or Received A Final Decision From The Village.**

"The ripeness doctrine's basic rationale is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977). To determine whether a case is ripe, a court must evaluate the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Id.* at 149; *see also Murphy*, 402 F.3d at 347. The Supreme Court applies this test to examine ripeness in land use disputes, and a final decision from the local land use authority is required for a court to have jurisdiction over a land use claim. *Williamson*, 473 U.S. at 186.[21]

While *Williamson* dealt with a takings question, its test has been widely applied to ripeness inquiries in other land use cases, including challenges to land use rules involving the First Amendment, equal protection and due process claims, as here. *See, e.g., Murphy*, 402 F.3d at 349-50; *Dougherty*, 282 F.3d at 88-89 (2d Cir. 2002). Furthermore, the *Williamson* final decision requirement applies to RLUIPA claims. *See Murphy*, 402 F.3d at 350; *Westchester Day School v. Vill. of Mamaroneck*, 386 F.3d 183, 191 (2d Cir. 2004) ("*Westchester Day School I*"); *Civil Liberties for Urban Believers ("C.L.U.B.") v. City of Chicago*, 342 F.3d 752, 769 (7th Cir. 2003); *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1031 (9th Cir. 2004) ("*San Jose II*").

---

[21] The final decision requirement (a) aids in the development of a full record that can be litigated later, if necessary; (b) clarifies for the court how a regulation will be applied to a particular parcel in a real, live situation; (c) gives the plaintiff a chance to obtain the relief it needs without involving the court in a constitutional dispute; and (d) is consistent with the longstanding principle that land use disputes are uniquely matters of local concern suited for local resolution, and that federal courts do not sit as zoning boards of review. *Williamson*, 473 U.S. at 187, 190; *Murphy*, 402 F.3d at 348 (and cases cited therein); *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *Ecogen, LLC v. Town of Italy*, 438 F. Supp. 2d 149, 156 (W.D.N.Y. 2006); *Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 135 (3d Cir. 2002) (land use is a "last bastion of local control, largely free of federal intervention").

Plaintiffs concede that they fail both prongs of the *Williamson/Abbott* test. SAC ¶¶ 175, 185. They have not experienced an immediate injury as a result of the Village's zoning laws because they have submitted nothing to the Village. Nor is there any record of the Village's zoning laws being applied to Plaintiffs in a discriminatory fashion, or to any other similarly situated entities. This case goes well beyond even the situation in *Murphy*, where the town had taken affirmative action by issuing a cease and desist order against the plaintiffs' use of their house for prayer meetings. *See Murphy*, 402 F.3d at 351. Here, the Village has had <u>no</u> opportunity to provide an initial response, let alone take the sort of final, definitive legal action that should be precedent to a federal lawsuit. Plaintiffs have not done anything to bring themselves under the Village's administrative or enforcement power, other than state broad generalizations in a federal complaint.[22]

Requiring the Plaintiffs to pursue administrative remedies would also further define their alleged injuries, if any. Since Section 130-10(F) was added to the Village Zoning Law in 2001 and amended in 2004 and 2007, the Village has not had the opportunity to apply it to <u>any</u> educational institution, religious or secular. Not only is there no context for defining Plaintiffs' claimed injury and determining whether it is the result of discrimination, there is no context for the law's application, period. As it stands now, Plaintiffs' injury, if any, is purely speculative.

**2.    Plaintiffs Cannot Invoke the Futility Exception to the Final Decision Requirement.**

Plaintiffs attempt to circumvent their ripeness problem by claiming that submitting an application for a special use permit, variance, zoning amendment or zone change to the Village would be futile. Plaintiffs again, however, are hamstrung by their failure to make any sort of meaningful application to the Village in the first place. To invoke the futility exception, courts in

---

[22] Plaintiffs have also presented their hypothetical plans to the press and the public in a privately-sponsored presentation held at a local hotel. *See* http://www.tartikovcollege.org/news.html. While these approaches may apprise the larger community of Plaintiffs' intentions, they are not a formal application as required by the zoning law and state statutes creating a public record of a specific project with input from the public and due deliberation by the approving agency, which is essential to the health, safety and welfare of the surrounding community.

this Circuit require the filing of at least one "meaningful application." *Goldfine v. Kelly*, 80 F.

Supp. 2d 153, 159 (S.D.N.Y. 2000) (granting motion to dismiss); *Kittay*, 112 F. Supp. 2d at 349

(same). "Mere uncertainty does not establish futility." *Ecogen*, 438 F. Supp. 2d at 161. Moreover,

the futility exception to the final decision requirement in "as-applied" challenges in land use cases is

interpreted narrowly. *Goldfine*, 80 F. Supp. 2d at 159; *Kittay*, 112 F. Supp. 2d at 349. Plaintiffs

cannot satisfy that rigid standard based on the allegations in the Second Amended Complaint.[23]

A meaningful application under the futility exception does not have to be complete, but

must give the municipality an opportunity to definitively accept or reject the proposal, *Goldfine*, 80

F. Supp. 2d at 159, or make a reasonable accommodation. *Country View Estates @ Ridge, LLC v.

Town of Brookhaven*, 2006 U.S. Dist. LEXIS 91981, at *23 (E.D.N.Y. 2006). Courts in the Second

Circuit have required more than one rejected application for plaintiff to invoke the futility

exception. *See Goldfine*, 80 F. Supp. 2d at 160, *Xikis v. City of New York*, 1990 WL 156155, at *4

(E.D.N.Y. Sept. 28, 1990), and *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 98 (2d Cir. 1992).

An applicant cannot cry futility after one perfunctory stab. Even if Plaintiffs had submitted one

meaningful application, the futility exception may still not apply because the government body in

question needs to be given an opportunity to show how it will act. *Goldfine*, 80 F. Supp. 2d at 160.

For this reason, "informal efforts to gain approval for land development are insufficient, by

themselves, to constitute final government action." *Goldfine*, 80 F. Supp. 2d at 159.

Plaintiffs' informal, pre-litigation efforts here are insufficient. Plaintiffs admit that the

meetings they sought with the Mayor, Trustees and Village Attorney were informal. SAC ¶¶ 208-

---

[23] While it is true that "the ripeness doctrine does not require [plaintiff] to jump through a series of hoops, the last of which it is certain to find obstructed by a brick wall, . . . the presence of that 'brick wall' must be all but certain for the futility exception to apply. There must be evidence that the relevant governmental body has no discretion to grant an exemption, or that is has 'dug in its heels and made clear that all such applications will be denied.'" *Ecogen*, 438 F. Supp. 2d at 160 (citing *Murphy*, 402 F.3d at 349). Plaintiffs mouth this "brick wall" language from *Murphy* but allege nothing to support it. SAC ¶ 220.

214.[24] But even these informal efforts yielded significant guidance for the Plaintiffs. During the course of their communications, the Village Attorney informed Plaintiffs' counsel — and Plaintiffs' counsel agreed — that, based on the Plaintiffs' claims that the College cannot be accredited and cannot meet the financial hardship requirement for a use variance, "the first step in the process would be an application for a zone change." *See* Exhibit R; *see also* POMONA VILL. L. §§ 130-28(D)(1); 130-35 -130-45; N.Y. VILL. L. § 7-712-b(2).[25] Plaintiffs were thus given an informal road map for their inchoate project.

Instead of submitting an application, however, Plaintiffs' attorney sent a letter to the Mayor, "formally [seeking] the ability to construct and operate a Rabbinical College and accessory housing for only 250 students and their families" and basing their request on RLUIPA's alleged grant of authority to the Village "to exempt the Congregation's use from its Zoning Ordinance." *See* Exhibit S (citing 42 U.S.C. § 2000cc-3(e)). Plaintiffs' request seriously misconstrues RLUIPA and contravenes basic federalism principals. The Village was well within its rights to deny this request, since the exemptions Plaintiffs sought — wholesale exemption from the accreditation requirement of New York law and the Village's rules on dormitories — are from neutral laws of general applicability serving legitimate ends, and are not permitted under RLUIPA. Plaintiffs then sought to force preferential treatment that would not be accorded other educational institutions or land use applicants.[26]

---

[24] *See* SAC ¶ 216; *see also* Letter from P. Savad, Esq. to D. Ulman, Esq., Mar. 26, 2007, Exhibit T. When the Village Attorney informed Plaintiffs' counsel that such a meeting was not allowed under the Village Zoning Law, Plaintiffs then claim that they requested a "Public Meeting, for an <u>informal</u> design and technical review of a proposed project." *See* R. Plaintiffs' counsel acknowledged in these letters that the Village Attorney advised him, once again, "that the Village does not have any procedure for such a pre-application meeting process" and "does not hold *ad hoc* public design meetings prior to taking formal applications." *Id.*

[25] In his discussions with the Village Attorney, Plaintiffs' attorney again emphasized their alleged inability to obtain accreditation as the main stumbling block to their project under the Village's Zoning Law. *See* Exhibit Q. As discussed *infra*, this claim — an apparent linchpin of Plaintiffs' discrimination claims — is dubious. Also in this discussion, the Village Attorney challenges Plaintiffs' counsel's claim that he sought a public meeting. *Id.*

[26] *See* Exhibit U.

Finally, Plaintiffs assert — based on hearsay, unattributed statements by blog users, and quotations in newspaper articles taken out of context — that Defendants' hostility to their project and various people's (not even residents of Pomona) alleged "anti-Hasidic animus" would render any application to the Village futile. *See* SAC ¶¶ 186-207, 219. Courts may consider a defendant's hostility, delay and obstruction in applying the futility exception; however, mere allegations of open hostility are not sufficient to invoke this exception. *See Goldfine*, 80 F. Supp. 2d at 160; *Ecogen*, 438 F. Supp. 2d at 160 (futility not met where town adopted moratorium on building wind energy plants specifically because of plaintiff's project and hostility in the town was alleged; record was unclear that town would never grant hardship exception or some other compromise or would deny plaintiff's application, and allegations of hostility were insufficient to invoke futility exception); *Country View Estates*, 2006 U.S. Dist. LEXIS 91981, at *30-31 (conclusory assertions of malicious intent and bad faith insufficient to establish that prospect of refusal was certain). Furthermore, the statements of random, private citizens – some of whom do not even live in Pomona (such as Robert Rhodes, the head of Preserve Ramapo) — cannot be attributed to the Village. *See Simmons v. Philadelphia*, 947 F.2d 1042, 1061 (3d Cir. 1991) ("[U]nconstitutional actions cannot be diffusely attributed to a municipality as an abstract entity."). Because Plaintiffs have made no formal or full application to the Village regarding their alleged plans for a Rabbinical College, their claims are not ripe and must therefore be dismissed.

**B.    Plaintiffs Have Not Adequately Alleged a Facial Challenge to The Village's Zoning Regulations**

"A facial challenge to a legislative Act is . . . the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 n.10 (1997); *Kittay* 252 F.3d at 647; *see also Ecogen*, 438 F. Supp. 2d at 155. "The fact that [the regulations] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render [them]

18

wholly invalid." *Rust v. Sullivan*, 500 U.S. 173, 183 (1991). "This holds true in the context of zoning and land use regulation as well." *Ecogen*, 438 F. Supp. at 157; *see also Suitum*, 520 U.S. at 736 n.10 (facial challenges to land use regulations "face an uphill battle, since it is difficult to demonstrate that mere enactment of a piece of legislation" deprived constitutional rights).

The Village's zoning laws, like zoning laws generally, are neutral laws of general applicability. *See Petra Presbyterian Church v. Vill. of Northbrook*, 2004 WL 442630, at *3 (N.D. Ill. Mar. 8, 2004) (citing *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1063 (2d Cir. 1989)); *see also Lighthouse Inst. for Evangelism v. City of Long Branch*, 2007 U.S. App. LEXIS 27390, at 59 (3d Cir. Nov. 27, 2007) ("*Lighthouse II*"); *San Jose II*, 360 F.3d at 1031. Defendants' "subjective motivation" in enacting the ordinance is irrelevant. *Ecogen*, 438 F. Supp. 2d at 157. The court instead must look to whether there is a conceivably rational basis for the ordinance, and the plaintiff "has the heavy burden to negative every conceivable basis which might support" the ordinance. *Id.*

The Village's laws regarding the construction of post-graduate schools and dormitories are applicable to all institutions, religious or secular, and are neutral on their face. *See* POMONA VILL. L. § 130-4 (definition of "educational institution" includes "any <u>private or religious</u> elementary, junior high or high school, college, graduate or post-graduate school") (emphasis added); § 130-10(E)(describing rules for square footage, lot coverage, setbacks, and other requirements for building a school). These requirements, along with the rules applicable to other special permit uses,[27] are in keeping with the stated purpose of Pomona's zoning laws, *supra*. *See also, San Jose Christian Coll. v. City of Morgan Hill*, 2002 U.S. Dist. LEXIS 4517, at *9 (N.D. Cal. Mar. 8, 2002). ("*San Jose I*"); *aff'd San Jose II*.

---

[27] The other uses subject to a special use permit are recreational facilities, reservoirs on lots of three acres or more, telephone exchanges and public utility substations, camps, and wireless telecommunication services facilities. POMONA VILL. L. §130-10(A); (D); (F); (E).

The Village has not just a substantial, but a compelling interest in enacting zoning laws, and in protecting the health and safety of their communities through enforcing such laws. *Greater Bible Way Temple of Jackson v. City of Jackson*, 478 Mich. 373, 403 (2007); *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50 (1986). Zoning regulations implement the planning and development goals of a community, and are at the heart of the de-centralized form of government crafted by the Constitution. *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926); *Marcus Assocs. v. Town of Huntington*, 45 N.Y.2d 505 (1978); *Asian Ams. for Equality v. Koch*, 72 N.Y.2d 121 (1988); *see also* N.Y. VILL. L. § 7-704. The Village's rules relating to preservation of its open space, the environment and managing density have been applied and enforced across the board.

While the Court may consider whether the zoning rules applying to the construction of schools, such as Plaintiffs' proposed Rabbinical College, are rationally related to their stated purpose, this is "ultimately not determinative, and in fact it is not necessary for defendants to enunciate *any* purpose" for the rules. *Ecogen*, 438 F. Supp. 2d 157; *see also Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) ("It is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."). Instead, the proper inquiry focuses on the *existence* of a conceivably rational basis for the rules. *Ecogen*, 438 F. Supp. 2d at 157-8. Plaintiffs have alleged nothing to show that there is *no* conceivably rational basis for the Village's zoning rules such that they are invalid on their face.

The same rational basis test also applies to Plaintiffs' claims that the Village's zoning laws, on their face, violate their rights under the First Amendment and equal protection and due process clauses, and renders them similarly unavailing. *Okwedy v. Molinari*, 69 Fed. Appx. 482, 484 (2d Cir. 2003) (citing *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 878-79 (1990); *Fifth Avenue Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002)). When a plaintiff alleges a facial violation based on the First Amendment, it must show "(1) that the

challenged law could never be applied in a valid manner or (2) even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it may inhibit the constitutionally protected speech of third parties." *Marchi*, 173 F.3d at 479-480; *New York State Club Assoc., Inc. v. City of New York*, 487 U.S. 1, 15 (1988). "A Free Exercise claim alone cannot bar application of a neutral law of general applicability." *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 100 Fed. Appx. at 70, 76 (3d Cir. 2004) ("*Lighthouse I*"); *Smith*, 494 U.S. at 878-79.

The Village's zoning requirements for educational and religious institutions are clearly neutral on their face and are rationally related to a permissible government purpose. While Plaintiffs have alleged many things, they have not alleged that the rules could <u>never</u> be applied in a valid manner, or that they reveal a value judgment that religious schools are subject to more onerous requirements than secular ones. Just because Plaintiffs' hypothetical plans do not currently comply with the zoning rules does not render the rules themselves biased.

Moreover, to the extent the zoning rules allegedly impose on Plaintiffs' free speech, freedom of assembly and freedom of association,[28] Plaintiffs cannot show that the rules are not content-neutral, or that there are no other avenues for their expression – in fact, Plaintiffs specifically allege that they already gather to study to become judges, and that many of their students are already married with young children. *See* SAC ¶ 38 (Plaintiffs David and Meilech Menczer, Hershkowitz, Rosenberg, and Royde are already engaged in rabbinical studies at Plaintiff Kolel Belz); ¶ 40 ("Plaintiffs Margulis and Neuman are currently engaged in certain rabbinical studies at Mechon L'Hoyroa, located in Monsey, New York" – Mechon L'Hoyroa trains judges[29]); ¶ 59 ("Students . . . will be married, some with young children.")

---

[28] Only plaintiff Kolel Belz of Monsey does not join in the freedom of association cause of action (Count Three).

[29] *See* http://www.tartikovcollege.org/rabbibabad.html.  Exhibit N.

Plaintiffs' claims that the zoning rules on their face violate RLUIPA are also without merit. In general, facial challenges to RLUIPA have been unsuccessful because courts are understandably reluctant to so dramatically affect local zoning laws. *See, e.g., Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 326 F. Supp. 2d 1140 (E.D. Cal. 2003), *aff'd*, 456 F.3d 978 (9th Cir. 2006) (rejecting plaintiff's facial challenge to county zoning ordinances because plaintiffs failed to show how the text of the regulations themselves, rather than how they were applied, subjected churches to discrimination or unfair delay and could not point to any similarly situated entities that received disparate treatment); *C.L.U.B.*, 342 F.3d at 767 (use of word "church" in zoning ordinance did not target churches specially), *Vision Church, United Methodist v. Vill. of Long Grove*, 468 F.3d 975, 986 (7th Cir. 2006) ("*Vision Church II*") (special use permit requirement neutral on its face and justified by legitimate, non-discriminatory municipal planning goals, including maintaining community's "semi-rural atmosphere"); *Konikov v. Orange County*, 410 F.3d 1317, 1324 (11th Cir. 2005) (zoning ordinance regarding home synagogues did not on its face impose less than equal terms on plaintiff compared with other non-religious places of assembly).

Plaintiffs also allege that the Village's zoning regulations regarding schools violate RLUIPA on their face because they require the applicant to be "accredited by the New York State Education Department or similar recognized accrediting agency" and therefore treat the College on "less than equal terms as a nonreligious institution, such as a secular college or an accredited religious college." SAC ¶¶ 223-226. To the contrary, the planned College is treated just as any other college would be. The rules regarding the construction of colleges require <u>all</u> schools to be accredited. POMONA VILL. L. § 130-10(G). State and local government regulation of schools has long been recognized as a legitimate government interest. *See, e.g., Pierce v. Soc. of Sisters*, 268 U.S. 510, 534 (1925) (recognizing power of state "reasonably to regulate all schools"); *Lemon v. Kurtzman*, 403 U.S. 602, 631 (1971) (one facet of government regulation of sectarian schools involves "making sure that minimum educational standards are met," including by accreditation). More

22

importantly, with regard to colleges, this accreditation requirement is mandated by New York State law. *See* N.Y. EDUC. L. § 224(3).[30]

In addition to being neutral on its face, the Village's accreditation requirement is fairly flexible, allowing for approval by a range of accrediting bodies that could approve a variety of schools, secular and religious. The zoning law's definition of "educational institution" was amended in 2004 to allow for accreditation by a "similar recognized accrediting agency" in addition to the New York State Education Department, which gives Plaintiffs a number of options in seeking a source of accreditation. *See* POMONA VILL. L., Local L. #1 of 2001 (showing old definition) (Exhibit V) and POMONA VILL. L., Local L. #5 of 2004 (showing amendment to definition) (Exhibit W). Other than their conclusory assertion that the zoning laws are discriminatory because the Rabbinical College claims not to be able to meet the accreditation requirement that would be applicable to any other secular or religious school, Plaintiffs give no other examples of how the regulation, on its face, treats secular schools separately from religious ones.[31] The disparate treatment, if any, is between accredited and unaccredited educational institutions, and that legitimate distinction has been upheld in previous cases.

Finally, Plaintiffs' claims that the designation of the Village as R-40 is unconstitutional on its face are unavailing. "A facially valid ordinance will not be invalidated simply because economic

---

[30] This New York law states "no person, firm, association or corporation shall offer or otherwise advertise a college degree in the state of New York without prior written approval of the department [of education], in accordance with the regulations of the commissioner of education, unless the institution offering or advertising such a degree is accredited by at least one accrediting commission recognized by the United States commissioner of education as a reliable authority for the purpose of accreditation at the post secondary level or unless the program leading to such a degree is registered with the department of education of the state of New York. A violation of this subdivision is a violation punishable by a fine not to exceed five hundred dollars." N.Y. EDUC. L. § 224(3) (emphasis added).

[31] The Rabbinical College's repeated assertion that it "cannot" be accredited, SAC ¶¶ 105, 222, 224, is itself questionable. The Rabbi Issac Elchanan Theological Seminary, located in New York, NY and affiliated with Yeshiva University, has a curriculum for rabbi judge training (*yadin yadin kollel*), and is accredited by the New York State Board of Regents and Commissioner of Education. *See* Exhibits X and Y. Furthermore, an academic accrediting body called the Association of Advanced Rabbinical and Talmudic Schools ("AARTS"), which is recognized by the Council on Higher Education Accreditation as a faith-based accreditation group and is located in New York, NY, has accredited numerous schools, many of which are in the tri-state area and Rockland County in particular. *See* Exhibits Z and AA. Finally, the rabbinical college in Lakewood, New Jersey, SAC ¶ 82, Beth Medrash Govoha, is accredited both by AARTS and the New Jersey Commission on Higher Education. *See* Exhibit BB.

23

forces prevent construction of multifamily housing." *N. Shore Unitarian Universalist Soc., Inc. v. Inc. Vill. of Upper Brookville*, 100 A.D.2d 123, 128 (2d Dept. 1985). Courts do not inquire into legislative motive when the reasonableness of a zoning law's enactment is apparent on its face. *Kirby v. Twp. of Bedminster*, 775 A.2d 209, 218 (N.J. App. Div. 2000).

Because Plaintiffs cannot show that the Village's zoning laws can <u>never</u> be applied in a valid manner or that they discriminate against religious uses or Plaintiffs in particular on their face, their facial challenges fail.

## III.  PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR LACK OF STANDING

Where Plaintiffs lack standing, as here, there is no subject matter jurisdiction and the action must be dismissed. Plaintiffs lack standing on all of their claims.

### A.    <u>The High Constitutional Standard For Standing Is Not Met</u>

Constitutional standing is a core threshold matter for justiciability. It is long and well established by the United States Supreme Court that, in accordance with Article III, the "irreducible constitutional minimum of standing contains three elements."

> <u>First</u>, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. <u>Second</u>, there must be a causal connection between the injury and the conduct complained of . . . . <u>Third</u>, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992); *Friends of Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.,* 528 U.S. 167, 180-181 (2000). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction ... [and includes] a core component derived directly from the Constitution." *Allen v. Wright*, 468 U.S. 737, 750-751 (1984).

The Supreme Court has explained that the term "particularized" means that the injury affects the plaintiff in a "personal and individual way." *See Lujan*, 504 U.S. at 560 n.1. Because standing requires a personal, individual injury, allegations of injury based on "generalized grievances" will not suffice, even if the plaintiff is harmed in the same general way as the public. *See Lujan*, 504 U.S. at 574-76. The Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing. *United States v. Hays*, 515 U.S. 737, 743 (1995). Instead, Plaintiffs must show "an injury in fact that is both concrete in nature and particularized to them." *In re United States Catholic Conference*, 885 F.2d 1020, 1023-24 (2d Cir. 1990). Significantly, a threat of injury will satisfy the requirement only if "the injury is certainly impending." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1978). A plaintiff must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of [a statute's] enforcement, and not merely that he suffers in some indefinite way in common with people generally...." *Lujan*, 504 U.S. at 574 (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).

In addition, even assuming a concrete and imminent injury, there must be a causal connection between the injury and the conduct complained of. *Lujan*, 504 U.S. at 560-561; *Friends of Earth*, 528 U.S. at 180-181. Finally, standing doctrine mandates that there is an "actual injury redressable by the court" *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). Moreover, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision from the Court. *Lujan*, 504 U.S. at 560-561. "Essentially, the standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 518. Throughout, therefore, it is always the Plaintiffs' burden to "allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Id* at 518.

25

**B.** **The Rabbinical College And Kolel Belz Lack Standing**

**1.** **There Is No General, Direct Standing.**

The corporate Plaintiffs, the Rabbinical College and Kolel Belz, do not have any general, direct standing to sue. While the College has alleged that it purchased the land in 2004 and owns it (SAC ¶¶ 10, 50 & 73), and Kolel Belz asserts an interest in the case through a claimed need for rabbinical judges for itself and on behalf of the "broader Orthodox community" (SAC ¶¶ 34 & 35), they both fail to allege a sufficient basis for standing to establish jurisdiction. Indeed, in the current posture, they cannot allege any other material factual matters to sustain standing.

For all of the reasons set forth in Section II, *supra*, there is no "injury in fact" that is concrete and particularized, much less an actual injury. They never filed a plan, or received a final determination, and continue to talk only in generalities. There is also no imminent or impending injury. Instead, because the College has not yet been proposed, approved or built, any claims by it and Kolel Belz are pure hypothesis. In *100 Friends of Oregon v. Clackamas County*, 194 Or. App. 212 (Ct. App. Or. 2004), a RLUIPA case, the court rejected the same type of premature claims. There, the plaintiff Christian church requested the defendant county and its planning department to provide an interpretation of a county ordinance that prohibited the construction of churches on land zoned for exclusive farm use and located within three miles of an urban growth boundary. *Id.* at 214. Like the Plaintiffs, the church in *100 Friends* "did not apply for a permit or request an exception." *Id.* at 215. It requested only an interpretation and "argued that federal law [RLUIPA] precluded application of the local [zoning] ordinances" against it. *Id.* The court rejected and dismissed the church's petition, finding that there was no justiciable controversy and that the church did not have standing to bring the claims even where it was likely that the church would actually request the required permit. *Id.* at 217. The appellate court also rejected the church's backup argument -- again, similar to the Plaintiffs' claims here – that it should not be compelled "to go through the motions of applying for a permit when doing so is futile." *Id.* at 218. Sensibly, the

court ruled that "the application will [not] necessarily be futile, given the possibility that an exception may be available." *Id.* (emphasis added).[32] The same holding should apply here.[33]

For the same reasons, there is no injury that is traceable to any official decision, enforcement or administrative ruling of the Village. At minimum, an administrative record would provide the Court with an application (presumably by the College), appropriate hearings or proceedings before the Village, *i.e.*, something concrete against which to measure Plaintiffs' allegations. Without an administrative record, this case is just about speculation and the Court is forced to consider in a vacuum how the Village zoning laws might theoretically operate. The case involves only a situation that may never occur. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Plaintiffs' end-run attempt around the zoning laws must fail.

Plaintiffs also lack the final element of standing, redressability, because no decision or redress from the Court can afford them relief. As set forth above, Plaintiffs' claims are not ripe for adjudication. The Village has not been given an opportunity to definitively accept or reject any

---

[32] A municipality's zoning ordinances cannot be declared invalid based on speculation and a mere claim of violation, under RLUIPA, by a religious organization. In *League of Residential Neighborhood Advocates v. City of Los Angeles*, 498 F.3d 1052, 1056 (9th Cir. 2007), for instance, an Orthodox Jewish congregation applied for a conditional use permit to operate a synagogue in an area zoned solely for residential use. Neighbors of the synagogue objected and the City of Los Angeles ultimately denied the application. The Congregation sued and, while the lawsuit was pending, RLUIPA was enacted. *Id.* Wrongly concerned about the impact of RLUIPA and its supposed pre-emption of local land use law in favor of a religious organization, the City settled the case and allowed the Congregation to operate the synagogue under certain conditions thereby bypassing all of the usual land use and zoning protocols. *Id.* The neighbors of the synagogue then sued to void the settlement because the City effectively granted the Congregation a conditional use permit without conducting the usual land use process including notice and a hearing. *Id.* However, the Ninth Circuit invalidated the settlement and, insofar as relevant here, held that the mere potential violation of federal law, under RLUIPA, does not permit a municipality to disregard its zoning regulations. *Id.* Accordingly, courts may not simply disregard or shortcut a local municipality's usual land use and zoning procedures simply because RLUIPA is uttered by someone seeking to use their land in a certain way. RLUIPA was not intended to be used as a sword in this way, especially in circumstances where there was no application of any sort. Unless there is a proven violation, those local procedures remain in place.

[33] Although its role or position in the case is hardly clear, Kolel Belz does not appear to have specifically joined in certain counts in the Second Amended Complaint including at least Count Three (freedom of association) and Counts Five through Nine (the RLUIPA counts). At most, the College has alleged an interest in the land as an owner. SAC ¶¶ 10, 50 & 73. Kolel Belz has alleged only a highly generalized need for rabbinical judges for itself and on behalf of the "broader Orthodox community." SAC ¶¶ 34 & 35. Kolel Belz is noticeably even more far removed from actually having any injury, and thus any standing, than the College.

specific proposal or application from the College even in the form of the one "meaningful application" required by law in this Circuit (*see* Section II, A. 2., *supra*). For its part, Kolel Belz has not even alleged that it would or could submit an application and from the allegations it does not appear to be in a position to do so. Thus, there is no relief that could be granted, nor a wrong or deprivation of a right for the Court to consider redressing, assuming for purposes of this Motion, that Plaintiffs could conceivably obtain a favorable decision. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

### 2.      There Is No Associational Standing.

Should the Rabbinical College and Kolel Belz alternatively assert associational or representational standing on behalf of any of the Individual Plaintiffs (the proposed students and lecturers at the College), that argument must fail as well. Under the doctrine of associational or representational standing, an association may "sue to redress its members' injuries, even without a showing of injury to the association itself." *United Food & Com. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552 (1996). The test for associational standing has three parts: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 553 (quoting *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).[34] At least two of these requirements, the first and the third, are not met here.

First, the individual "members," as such, do not otherwise have standing to sue in their own right. The Individual Plaintiffs are not alleged to be members of, or actual students or teachers at,

---

[34] The Supreme Court has explained that the first two factors of the *Hunt* test are required by the Constitution and the third prong is a "judicially self imposed limit[] on the exercise of federal jurisdiction . . . that Congress may remove by statute." *Brown Group*, 517 U.S. at 551, 558 (citations omitted).

the Rabbinical College. Rather, by their own allegations, they are only alleged to be "prospective students and teachers" as well as "residents of the housing component of the" College. SAC ¶ 27. They merely "wish to attend" or "seek to lecture" at the school, and "will be" admitted or "will be" the Dean of the College if and when it is ever opened at some unknown future time. *Id.* ¶¶ 11-20, 39. And, they do not allege that they have any property interest in the land, which is owned only by the College. *Id.* ¶ 10.

With respect to Kolel Belz, while some of the Individual Plaintiffs are alleged to be engaged in studies there (SAC ¶ 38), they too do not have any interest in the land.[35] But even assuming that the Individual Plaintiffs could be construed to be "members" of the College or Kolel Belz for purposes of standing, there is no associational standing because they do not and cannot allege how they, specifically, have been injured at all when they are only prospective students and teachers. The Individual Plaintiffs thus do not otherwise have standing themselves.

Second, there is no associational standing here because the claims asserted and relief requested require the participation of the Individual Plaintiffs in the lawsuit. The College and Kolel Belz assert claims and relief, as do the Individual Plaintiffs, but they are all tied to and focused on the construction of the College and the development of related multi-family housing and the surrounding campus for the Individual Plaintiffs to use as students and lecturers. Without the Individual Plaintiffs, the claims and purpose of this action are pointless. The College appears to exist only at this point for purposes of bringing this lawsuit for the students and lecturers.[36] Therefore, the claims require the Individual Plaintiffs in the action because without them, there is no basis to challenge the Village's land use and zoning laws.

---

[35] Kolel Belz alleges that it "represents the interest of itself and the broader Orthodox community," not the interests of the Individual Plaintiffs or the Congregation Rabbinical College. SAC ¶ 35.

[36] From its Internet website, the Congregation Rabbinical College appears to exist for no other purpose than filing, maintaining and publicizing this lawsuit. *See* http://www.tartikovcollege.org/index.html.

C.    **The Individual Plaintiffs Lack Standing**

As with the corporate Plaintiffs, the two groups of Individual Plaintiffs – the prospective students and teachers – also lack standing to sue under the same legal principles of constitutional standing, which are buttressed by the severe lack of ripeness. *See Lujan*, 504 U.S. at 560-561.

These Individual Plaintiffs who allegedly either wish to attend or seek to teach at the yet-to-be proposed Rabbinical College (and associated buildings that the Plaintiffs want to develop) lack standing because (i) they do not allege that they are members of the College but state only that they are prospective students or faculty; (ii) they do not allege that they have a property interest in the land; and (iii) they do not allege how they, specifically, have been injured by any action of the Defendants, and there is no causation traceable to the Defendants and no actual or impending injury redressable by the court.

The Individual Plaintiffs who wish to attend and study at the proposed College are yet-to-be admitted or enrolled students to a planned school that has not even applied to the Village, been approved or constructed – let alone opened its doors – on a piece of land that is not currently zoned for the use or purpose they seek to make of it.  SAC ¶¶ 11-12 & 15-19 (alleging that they "wish to attend").  To the contrary, Plaintiffs allege that the Rabbinical College "will, upon its opening, admit" them.  SAC ¶¶ 39 & 27.  Their admission is a hypothetical and contingent event – assuming the College is accredited and built and opened at some unknown time in the future – that affords them no basis to claim injury now.[37]  Further, these Individual Plaintiffs do not allege that they have any property interest in the specific land.  Indeed, based on the existing allegations – and again, these are Plaintiffs' third version of their claims – they do not have any such interest or rights in the land.  *See* SAC ¶ 10.

---

[37] Prospective students and teachers do not have standing generally to assert claims relative to possible admission to a school or college or professional organization. *See, e.g., Marin v. State of Arizona*, 2000 U.S. App. LEXIS 33934 (9th Cir. Dec. 22, 2000) (plaintiff who sought declaratory judgment and injunctive relief against state and state officials had no standing where he had not submitted an application for admission).  Claims of possible future injury absolutely do not suffice. *Id.* at *5-8 (dismissing on ripeness and standing grounds).

Similarly, the Individual Plaintiffs who wish to teach at the College are a yet-to-be hired Dean and lecturers to the same unproposed, unapproved, yet-to-be built school that is not yet open on land that is not zoned for the use or purpose they seek to make of it. SAC ¶¶ 13, 14, 20 & 27. As with the prospective students, there is no allegation that they have actually been hired or retained to lecture at the Rabbinical College. They also do not have an interest in the land. *See* SAC ¶ 10.

For the same reasons as set forth above with the corporate Plaintiffs, the Individual Plaintiffs do not allege how they, specifically, have been injured by any action of the Defendants. There is also no causation traceable to the Defendants and no actual injury redressable by the Court. "The party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way." *Valley Forge Christian Coll.*, 454 U.S. at 488-489. Here, the Individual Plaintiffs cannot do so.[38]

## IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE UNITED STATES AND NEW YORK STATE CONSTITUTIONS

In Counts One through Four and Ten, Plaintiffs assert several causes of action under the First Amendment and the New York State Constitution,[39] based on their claims that (1) the Village's zoning laws prohibit their use entirely from the Village and treat religious land use,

---

[38] Standing and ripeness involve both a constitution and a prudential element. The Individual Plaintiffs also lack standing on prudential grounds. Under that form of standing, the "question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 518. Prudence also greatly cautions against deciding the merits of this action without a much more well developed and concrete factual basis and dispute. For all of the reasons set forth herein, the Individual Plaintiffs do not have standing on prudential grounds either.

[39] Plaintiffs' allegations under Article I, Sections 8, 9, and 11 of the New York State Constitution are premised on the same facts and are subject to the same legal analysis as their claims under the U.S. Constitution. *See Sanchez v. Turner*, 2002 U.S. Dist. LEXIS 10911, at *41 (S.D.N.Y. June 19, 2002) (Article 1, § 11); *Town of Islip v. Caviglia*, 141 A.D.2d 148, 162-163 (N.Y. App. Div. 1988) (Art. I, § 8); *Wiesner v. Nardelli*, 2007 U.S. Dist. LEXIS 5801, at *11, n.11 (S.D.N.Y. Jan. 29, 2007) (Article 1, § 9). Because Plaintiffs have failed to state viable federal constitutional law claims, their corresponding state law claims must also be dismissed. Furthermore, no private right of action exists under Article I § 3 (freedom of worship, religious liberty) or Article I, § 8 (freedom of speech). *See Muhammad v. New York City Trans. Auth.*, 450 F. Supp. 2d 198, 212 (E.D.N.Y. 2006); *Singh v. City of New York*, 418 F. Supp. 2d 390, 406 (S.D.N.Y. 2005) (recognition of state constitutional tort unnecessary where plaintiff has alternative remedy recognized in federal or state statute). Plaintiffs' claims premised on these sections must be dismissed as a matter of law.

conduct and speech less favorably than secular ones, and (2) that the Defendants have discriminated against them. While Plaintiffs have included generalized accusations of discrimination, they have not asserted allegations that raise a right to relief above the speculative level.[40]

**A.**    <u>**Plaintiffs Cannot State a Claim Under the Free Exercise Clause**</u>

To state a claim for relief under the Free Exercise Clause, a plaintiff must show that his or her right to practice religion was burdened in a significant way. *See, e.g., Vision Church v. Vill. Of Long Grove,* 397 F. Supp. 2d 917, 927 (N.D. Ill. 2005) (*"Vision Church I"*). Plaintiffs seek protection for acts – land use – that are not considered religious exercise under the Free Exercise Clause. *Lighthouse II,* 2007 U.S. App. LEXIS 27390 at *54. When a religious plaintiff makes a Free Exercise challenge to a zoning regulation, it must explain how the inability to locate in the specific area affects its religious exercise. *Id.* at *55. "When the plaintiff does not show that locating its premises in a particular location is important in some way to its religion . . ., there is no constitutionally cognizable burden on free exercise." *Id. at 54; see also Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 654 (10th Cir. 2006). The location of a house of worship, let alone a religious school, does not possess religious significance. *See Lighthouse II,* 2007 U.S. App. LEXIS 27390 at *56-57; *Lakewood, Oh. Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood,* 699 F.2d 303, 306-7 (6th Cir. 1983).

Not allowing the College, under its current plans, to be located on this specific parcel in Pomona is not a substantial burden on Plaintiffs' religious exercise. While the Plaintiffs allege that they bought this parcel because of its proximity to a large community of Hasidic Jews, *see SAC ¶¶ 77, 83,* this is a matter of convenience and not religious belief. *See Lighthouse II,* at *57 (church's claimed mission to minister to poor in downtown district, without alleging sincere religious belief

---

[40] Plaintiffs' claims apparently do not apply to the Individual Trustee Defendants, since the Plaintiffs have neither sought nor been aggrieved by any action of the Village or the Village Board, and these Defendants have not had an opportunity to act on the Village's behalf.

that it must minister to them in that specific district or that they were not equally accessible elsewhere, was insufficient to support claim of burden on religious exercise). Furthermore, Plaintiffs' ability to study Jewish law, worship, and hear disputes under their legal system has no religious connection to this specific parcel of land. In fact, Plaintiffs specifically state that they are already studying to become rabbi judges in facilities located nearby, are teaching future rabbi judges, and hearing disputes under their legal system. *See* SAC ¶¶ 38, 40, 46, 48. While Plaintiffs allege that there may be relatively few available rabbinical courts, *see* SAC ¶ 49, they do not allege that legal disputes are not being heard.[41] There is no sufficient allegation of substantial burden.

Even if Plaintiffs were able to show that the zoning law burdens their free exercise of religion, the zoning laws are subject only to rational basis scrutiny. As was discussed *supra*, the Village's zoning laws are neutral laws of general applicability, which do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Smith*, 494 U.S. at 879.

**B.** **Plaintiffs Cannot State a Claim for Violation of Their Right to Free Speech**

Plaintiffs have also not adequately alleged that application of the Village's zoning laws violates their right to free speech. First, Plaintiffs have not alleged any "speech" other than the proposed construction of a College with high-density housing and attached houses of worship. *See* SAC ¶¶ 96-101. Because Plaintiffs do allege activity involving the use of words, the building of the College is protected by the Free Speech Clause only if "the nature of the activity, combined with the factual context and environment in which it was undertaken, shows that the activity was sufficiently imbued with elements of communication to fall within the First Amendment's scope." *Tenafly Eruv*

---

[41] Defendants also question the number of judges that Plaintiffs allege are necessary to serve the United States' population of 600,000 Hasidic Jews. *See* SAC ¶ 32. Assuming their plans do in fact call for 1000 students, Plaintiffs apparently aim to have one judge for every 600 people, which is an extraordinarily low ratio of judges to people. Rockland County, by contrast, has six New York State Supreme Court Justices for a population of 286,000 (per 2000 U.S. census), which equates to one judge per every 47,000 people in the secular population. *See* http://www.nycourts.gov/courts/9jd/rockland/index.shtml. Plaintiffs make no allegations regarding the number and frequency of disputes that are filed and heard under their legal system that would shed light on their numbers.

*Assoc., Inc. v. Borough of Tenafly*, 309 F.3d 144, 158 (3d Cir. 2002). Plaintiffs have not alleged that the construction of the College "communicates" anything, either to other Orthodox Jews or to the rest of the community. While one of the College's stated goals ultimately is to facilitate certain religious practices (the hearing of disputes before religious courts), in and of itself it is something functional and not expressive. *See id.* at 162-3 ("solely the act of erecting a wall separating the interior of a building from the secular world" does not constitute speech); *see also San Jose II*, 360 F.3d at 1032 (religious colleges desire to educate is not speech; zoning regulations governing where religious college can locate do not violate Free Speech Clause). Also, the act of building a house of worship, let alone a religious schools do not implicate the Free Speech Clause; instead, courts analyze the zoning regulations limiting such construction under the Free Exercise clause. *Id.*

C.    **Plaintiffs Cannot State a Claim for Violation of Their Right to Freedom of Association**

Third, Plaintiffs claim – incredibly – that the zoning laws regarding the location, lot requirements, and other facets of dormitory housing violate their "right to freedom of intimate association and freedom of expressive association . . . by intruding unduly upon the Plaintiffs' right to marriage, childbirth, the raising and education of children, and . . . right to associate for the purpose of protected expressive activity."[42] SAC ¶ 257. The minimal requirement of submitting a land use plan does not prevent Plaintiffs from associating, marrying, having children, or rearing their families. Plaintiffs have alleged that they and the majority of other future students are or will be married, have children, and presumably are actively raising their families. *See* SAC ¶ 59. They also have not alleged that they are unable to associate to worship or practice their religion in the absence of the proposed College. Plaintiffs have also failed to state how the zoning laws regarding dormitories or the standards under which an educational institution must be built prevent them from associating or participating in expressive activity. The Individual Plaintiffs already live and/or

---

[42] Plaintiff Kolel Belz of Monsey does not join in this count.

34

study in the area.[43]  *See San Jose II*, 360 F.3d at 1033 (fact that religious college's student could not assemble at a precise location did not violate assembly clause).  Finally, as discussed above, construction of buildings is not expressive activity.

**D.    Plaintiffs Fail to State a Claim for Violation of the Equal Protection Clause**

To state a claim under the Equal Protection Clause, a plaintiff must allege that, compared with similarly situated entities, "it has been selectively treated, and that the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure."  *Cathedral Church of the Intercessor v. Vill. of Malverne*, 2006 U.S. Dist. LEXIS 12842, at *11 (E.D.N.Y. Mar. 6, 2006).  Plaintiffs' attempted comparison with the other schools with dormitories is inapposite and does not support the allegation that the zoning laws treat religious institutions differently from secular ones.  *See* SAC ¶ 119.  Each of these schools is located outside of Pomona – one of them, Iona College, is not even in Rockland County but in Westchester – and therefore none are subject to the regulations Plaintiffs challenge.  Just because student dormitories exist elsewhere does not mean that Plaintiffs may build them on their lot in a way that does not conform to Pomona's zoning laws.

## V.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER RLUIPA

In this suit, Plaintiffs essentially seek a blanket exception from the Village's neutral, generally applicable zoning laws because aspects of their proposed use happen to be partially religious.  Contrary to Plaintiffs' claims (Counts Five through Nine), RLUIPA is not a blank check for religious land owners to demand whatever they want outside normal land use procedures.  "RLUIPA does not provide religious institutions with immunity from land use regulation, nor does

---

[43] While Plaintiffs did not include the addresses of the Individual Plaintiffs in their Complaint, as is usual practice, Defendants have found that they apparently live as follows: Plaintiffs Babad, Rosenberg, Neuman, David and Meilech Mercer, Kahana and Royde live in Monsey, NY; Plaintiff Wolf lives in Spring Valley, NY; and Plaintiff Herschkowitz lives in Monroe, NY.

it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations where available without discrimination and unfair delay." 146 Cong. Rec. S 7774, 7776 (Joint Statement of Senators Hatch and Kennedy) (July 27, 2000) (legislative history for RLUIPA); *see also Congregation Kol Ami*, 309 F.3d at 139; *San Jose I*, 2002 U.S. Dist. LEXIS 4517, AT *7; *Vision Church I*, 397 F. Supp. 2d at 929. "The federal courts have given states and local communities broad latitude to determine their zoning plans. Indeed, land use law is one of the bastions of local control, largely free of federal intervention." *Congregation Kol Ami*, 309 F.3d at 135; *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981). Moreover, "RLUIPA does not guarantee that a religious organization may build a complex as large as that organization desires. A municipality can control growth and expansion within its city limits." *Vision Church I*, 397 F. Supp. 2d at 929. In their zeal to rush into court, Plaintiffs fail to allege a right to relief under RLUIPA. Their claims must thus be dismissed.

A.    **The Village's Zoning Laws Do Not Place a Substantial Burden on Plaintiffs' Religious Exercise**

     1.    **The Building of a Proposed Rabbinical College is Not Religious Exercise.**

While RLUIPA states that using, building, or converting real property for religious exercise purposes is religious exercise under the statute, *see* 42 U.S.C. § 2000cc-5(7)(B), "not every activity carried out by a religious entity or individual constitutes 'religious exercise.' . . . In many cases, real property is used by religious institutions for purposes that are comparable to those carried out by other institutions . . . [T]his alone does not automatically bring those activities or facilities within the bill's definition of 'religious exercise.'" *Westchester Day School I*, 386 F.3d at 190 n. 4; *see also Westchester Day School v. Vill. of Mamaroneck*, 2007 U.S. App. LEXIS 24267, at *14-15 (2d Cir. Oct. 17, 2007) ("*Westchester Day School II*").

The Second Amended Complaint alleges that, to construct the College, Plaintiffs will build libraries, study halls, synagogues, and courtrooms. *See* SAC ¶¶ 61, 68-70. However, the

36

description of the College's physical plant overwhelmingly focuses on high-density housing, and their plans show intended construction of nine, six-story apartment buildings. *See* SAC ¶¶ 60, 63-67; *see also* Exhibit H. The housing of students — indeed, housing in general — is not a religious exercise under RLUIPA. *Greater Bible Way Temple,* 478 Mich. at 394 (building apartment building is not religious exercise even though church wants to "further the teachings of Jesus Christ" and provide housing and living assistance). While other areas of the College may be used for religious worship and study, student living areas are just that: living areas. The fact that they happen to allow the students to "spend their spare time together, discussing their religious studies amongst themselves," SAC ¶ 64, does not convert the space into a religious one, since they are overwhelmingly intended for the secular activities of eating, cooking, sleeping, and studying. Furthermore, one of the main reasons the Plaintiffs include student housing is so the students' wives and children, who will not be enrolled in the College, can remain near their husbands/ fathers. *See* SAC ¶ 66. This too is a secular use. The largest component of the College's plan, housing, is not a religious use under RLUIPA. Their claims regarding it must be dismissed.

2.    **Plaintiffs Cannot Meet the "Substantial Burden" Threshold.**

Plaintiffs also cannot show that the Village's zoning laws affecting the location and manner in which they must build the College impose a substantial burden on their religious exercise. *See* 42 U.S.C. § 2000cc(a)(1). "A land use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise effectively impractical." *C.L.U.B.,* 342 F.3d at 761. Substantial burden "requires something more than an incidental effect on religious exercise." *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1227 (11th Cir. 2004), *cert. denied,* 543 U.S. 1146 (2005). Inconvenience to the religious institution or adherent is insufficient. *Id.* at 1227; *see also Greater Bible Way Temple,* 478 Mich. at 400, 402 (city's refusal to rezone single-family property so plaintiff can build apartment complex not substantial burden on religious exercise because it "simply regulat[es] where

37

that apartment complex can be built. . . . [In] the realm of building apartments, plaintiff has to follow the law like everyone else.'"). Moreover, "when the denial of a religious institution's application to build is not absolute, such would not necessarily place substantial pressure on the institution to alter its behavior, since it could just as easily file a second application that remedies the problems in the first." *Westchester Day School II*, 2007 U.S. App. LEXIS 24267, at *8. Finally, "generally applicable burdens, neutrally imposed, are not 'substantial'." *Id.* at *20 (citing *Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 389-91 (1990)).

As discussed above, the proposed College's ultimate location is not itself religiously significant, and therefore any change to its location would not be a substantial burden. Plaintiffs have also made no application to the Village that requires it to alter its behavior; in fact the Village Attorney advised Plaintiffs' counsel that it could submit an application for a zoning amendment that would encompass Plaintiffs' proposed use for the property. *Supra* at 17. Even if that application were denied, the aspects of the project that Plaintiffs would likely have to remedy — accreditation and the nature and extent of dormitory housing — have no affect whatsoever on Plaintiffs' religious practice and beliefs. Like the plaintiffs in *Greater Bible Way*, Plaintiffs here are merely being asked to follow a neutral law of general applicability. RLUIPA does not allow them a free pass.

**B.      The Village's Zoning Laws Do Not Discriminate Against Plaintiffs on the Basis of Religion Or Treat Religious Entities on Less Than Equal Terms**

As discussed above, the Village's zoning laws do not discriminate against Plaintiffs on the basis of religion within the meaning of 42 U.S.C. § 2000cc(2)(b)(2). Religious groups cannot be exempted from ordinary land use decision-making process. *See* 146 Cong. Rec. S. at 7776. Furthermore, allowing Plaintiffs to build their College without complying with the zoning law would violate the Establishment Clause because it would grant a religious school affirmative, preferential treatment over a secular one, which could not petition for relief from the accreditation requirements or dormitory regulations under RLUIPA. *See City of Boerne v. Flores*, 521 U.S. 507

(1997); *Tenafly Eruv*, 309 F.3d at 175.

Plaintiffs further claim that the Village's zoning laws regarding the construction of educational institutions do not treat Plaintiffs, as a religious institution, on equal terms with non-religious institutions. 42 U.S.C. § 2000cc(2)(b)(1). Plaintiffs have not meaningfully alleged that they have received less than equal treatment. Instead, they point to other schools in Rockland and Westchester Counties that have on-campus housing for their students in a vague attempt to show that the Village is not treating them equally. *See* SAC ¶ 119. RLUIPA's Equal Terms provision, however, "requires a plaintiff to do something more than identify *any* nonreligious assembly or institution that enjoys better terms under the land use regulation. . . . [It] require[s] a secular comparator that is similarly situated as to the regulatory purpose of the regulation in question." *Lighthouse II*, at *25-26 (emphasis added). None of the cited schools is subject to the Village's challenged zoning laws, and therefore none could be similarly situated as to the laws' purpose.[44]

**C.    The Village's Zoning Laws Do Not Exclude Religious Assemblies Or Unreasonably Limit Religious Institutions Within the Jurisdiction**

Finally, Plaintiffs claim that the Village's zoning laws totally exclude the College's use from its jurisdiction and unreasonably limit religious institutions in general. *See* SAC ¶¶ 271, 273; 42 U.S.C. § 2000cc(2)(b)(3)(A). First, both houses of worship and religious schools are specifically allowed in all areas of the Village by special use permit, provided they meet the zoning requirements (from which Plaintiffs are impermissibly asking to be exempt). *See* POMONA VILL. L. §§ 130-4, 130-10(F) and (G); *see also Vision Church II*, 468 F.3d at 989 ("if the conditions set forth in the Village's zoning code are fulfilled, a church may be built on property zoned for residential use.") Dormitories (which Defendants argue are not a religious use) are allowed as part of a school,

---

[44] Similarly, in discussing their attempts to present their plans informally to the Village Board of Trustees, Plaintiffs offer no examples of other entities, religious or secular, that have been allowed to make such a presentation. At best, they rely on vague "information and belief" that "various municipality bodies or commissions informally meet with proponents of new projects" and the conclusory statement that "Village officials and Planning Board [*sic*] have met with landowners informally to discuss proposed uses of land," without specificity or elaboration. SAC ¶¶ 216-217. These allegations are clearly insufficient under the more rigorous *Twombly* pleading standard.

again subject to certain generally applicable requirements. *See* POMONA VILL. L. § 130-10(F)(12).

Moreover, requiring Plaintiffs to obtain a special use permit or to request an amendment to the

zoning law does not unreasonably limit religious assemblies or institutions within the Village. *See*

*Vision Church II*, 468 F.3d at 989. Finally, the Village Board's discretion to grant a permit is

constrained by the zoning laws, which set forth the factors it must consider when addressing an

application. *See* POMONA VILL. L. § 130-28(E); *see also Vision Church II*, 468 F.3d at 990-91

(zoning board's discretion in granting special use permit not unreasonable). Plaintiffs' RLUIPA

claims must also be dismissed for this reason.[45]

## CONCLUSION

For all of these reasons, the Court should dismiss the Second Amended Complaint in its

entirety, and grant such other relief as it deems just and proper.

Dated: New York, New York  
     December 14, 2007

ROBINSON & COLE LLP  
Attorneys for Defendants

By: _____  
    Joseph L. Clasen (JC 1759)  
    William J. Kelleher III (WK 2146)  
    Samantha L.H. Cassetta (SC 3579)  
    885 Third Avenue, Suite 2800  
    New York, NY 10022  
    Telephone: (212) 451-2900  
    Facsimile: (212) 451-2999

    Marci A. Hamilton (admission pending)  
    36 Timber Knoll Drive  
    Washington Cross, PA 18977

---

[45] Based on the allegations in the Second Amended Complaint, the Plaintiffs' state law claims (the Tenth, Eleventh and Fourteenth counts) are brought on grounds of supplemental jurisdiction. *See* SAC ¶¶ 8 (indicating supplemental jurisdiction); 274-275, 276-287 & 290-298. Should the Court dismiss all of the Plaintiffs' claims that arise under federal law for the reasons set forth above, the Court should also decline to exercise supplemental jurisdiction over their state law claims under 28 U.S.C. § 1367(a). This is especially true here because the Second Amended Complaint is already Plaintiffs' third pleading, retaining jurisdiction over a few state law claims would serve no purpose and Plaintiffs' federal claims constitute the bulk of and are the centerpiece of the claims. Accordingly, the state claims should be dismissed. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988), *DiLaura v. Power Auth. of New York*, 982 F.2d 73, 80 (2d Cir. 1992). Courts in this District and Circuit have dismissed pendent state law claims in similar cases. *Kittay*, 112 F. Supp. 2d at 354 (dismissing state law claims where court found plaintiff's federal constitutional as-applied claims were not ripe and the plaintiff's constitutional facial challenges failed to state a claim), *aff'd*, 252 F.3d 645 (2d Cir. 2001); *Hack v. President. and Fellows of Yale Coll.*, 16 F. Supp. 2d 183, 197 (D. Conn. 1998), *aff'd*, 237 F.3d 81, 91 (2d Cir. 2000) (affirming dismissal of Fair Housing Act and related claims by Orthodox Jewish students), *cert. denied*, 534 U.S. 888 (2001).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Congregation Rabbinical College of Tartikov,     x
Inc., Rabbi Mordechai Babad, Rabbi Wolf Brief,     :
Rabbi Hermen Kahana, Rabbi Meir Margulis,
Rabbi Gergely Neuman, Rabbi Akiva Pollack and     :
Kolel Belz of Monsey,

            :    Civil Action No.:
       Plaintiffs,        7:07-cv-06304(KMK)(GAY)

            :
      -against-
            :

Village of Pomona, NY; Board of Trustees of The     :
Village of Pomona, NY; Nicholas Sanderson, as     :    **CERTIFICATE OF SERVICE**
Mayor; Ian Banks, Alma Sanders Roman, Rita
Louie and Brett Yagel, as Trustees and in their     :
Official Capacities,

            :
       Defendants.      x

I, William J. Kelleher III, Esq., hereby certify that on this 14th day of December 2007, I

caused Defendants' Motion to Dismiss, Supporting Memorandum of Law and Appendix of Exhibits

to be served via first class mail, postage prepaid, upon the following:

     Paul Savad, Esq.
     Susan Corcoran, Esq.
     Paul Savad & Associates
     55 Old Turnpike Road, Suite 209
     Nanuet, New York 10954

     John George Stepanovich, Esq.
     Lentz, Stepanovich & Bergethon P.L.C.
     448 Viking Avenue
     Suite 370
     Virginia Beach, Virginia 10019

     Robert Leo Greene, Esq.
     Roman P. Storzer, Esq.
     Storzer & Greene PLLC
     1025 Connecticut Avenue, N.W.
     Suite 1000
     Washington, D.C. 20036

41

Robinson & Cole LLP

By: _____

William J. Kelleher III, Esq.
885 Third Avenue, Suite 2800
New York, New York 10022
Phone: (212) 451-2900

Subscribed and sworn to
before me this 14th day December 2007

_____

My Commission Expires: *March 31, 2011*

CHRISTINE CROSTON-LING
Notary Public-Connecticut
My Commission Expires
March 31, 2011

42