**EXHIBIT B**

```
                                          ┌─────────────────────┐
                                          │   FILED AND         │
                                          │   ENTERED           │
                                          │      ON             │
SUPREME COURT OF THE STATE OF NEW YORK    │                     │
COUNTY OF ROCKLAND                        │   ROCKLAND          │
-----------------------------------------X│ COUNTY CLERK        │
CONGREGATION OR YOSEF                      └─────────────────────┘
```

                            Plaintiff,


                                              **DECISION & ORDER**

                                           Index Nos. 5003/04
                                                      6545/05

              - against -



THE TOWN OF RAMAPO, THE ASSESSOR OF THE
TOWN OF RAMAPO, ROCKLAND COUNTY, NEW
YORK AND THE BOARD OF ASSESSMENT REVIEW
FOR THE TOWN OF RAMAPO,


                            Defendants.

-----------------------------------------------X

DICKERSON, J.


          **CONGREGATION OR YOSEF : R.P.T.L. § 420(a),(b) & 462**


     The Plaintiff, Congregation Or Yosef [ " the Congregation " ],
claims that it is entitled to a real property tax exemption pursuant to
Real Property Tax Law [ " R.P.T.L. " ] §§ 420(a),(b)[1] and 462[2] for the
years 2004 and 2005 for its property located at 32 College Road, Monsey,
New York within the Town of Ramapo. The trial of this matter took place

on February 15, 2006 during which witnesses testified on behalf of the Congregation[3] and the Defendants[4]. After a careful review the trial record and exhibits and the excellent post trial memoranda of law including findings of fact and conclusions of law submitted by the parties the Court is now prepared to render its Decision.

## The Congregation & Its Purpose

The Congregation was organized as a religious corporation, the Certificate of Incorporation[5] of which provides " SECOND: The purposes for which this corporation is formed are...To conduct and maintain a House of Worship in accordance with orthodox Jewish custom and traditions,...To promote the religious, intellectual, moral and social welfare among its members and their families,...To promote and increase interest in the study of the Torah, by maintaining classes for the teaching of the customs, traditions and mode of worship of the orthodox Jewish faith...FIFTH: The principal place of worship of the corporation shall be located...at 32 College Road, Monsey, New York ".

## The Congregation Has No Standing

Unlike other cases in which this Court has ruled upon the requests of religious and charitable corporations for real property tax exemptions pursuant to R.P.T.L. § 420(a)[6] [ See e.g., <u>Matter of Gemilas Chasdum Keren</u>

Eluzer, Inc. v. Assessor of the Town of Ramapo, 5 Misc. 3d 1026 ( Rockland Sup. 2004 )( Free Loan Society operated by orthodox synagogue seeks tax exemption for house in which its Rockland County Executive Director resides with his family and in-laws; exemption denied for failing to show that " subject property is used exclusively for exempt purposes " )] and § 462 [ See e.g., Congregation Knesset Israel v. Assessor of the Town of Ramapo, 8 Misc. 3d 1021 ( Rockland Sup. 2005 )( Congregation Knesset Israel operates a synagogue and owns a house wherein its Rabbi resides and for which a tax exemption is sought on the grounds that Rabbi is full time " officiating clergyman " notwithstanding his full time employment during the day " as a teacher at the Kesser Torah School...( and ) also teaches two periods a week at a high school for girls, Ateres Bais Yakov "; motion and cross motion for summary judgment denied )], the Congregation's request herein for a tax exemption under R.P.T.L. §§ 420(a),(b) and 462 must be denied for a lack of standing.

**Violations Of Zoning Codes**

First, the Congregation operates a synagogue, a mikvah, a shul and provides a residence for its Rabbi and his family in the subject property[7] and has never filed development site plans nor applied for or obtained building permits and a Certificate of Occupancy for anything other than " a single family dwelling with a finished basement "[8]. The Congregation was served with a Notice of Violation[9] dated June 29, 2004 [ " the

-3-

Violation " ] " for use other than as a single-family residence "[10] and has not responded to the Violation by applying for a " building permit for work relating to the construction or renovations for a synagogue " and " site plan approval for a synagogue "[11]. The use of the subject property in violation of zoning ordinances is a complete defense to the Congregation's application for a tax exemption [ Oxford Group-Moral Re-Armament, MRS, Inc. v. Hogarth Sweet, 309 N.Y. 744, 128 N.E. 2d 759 ( 1955 ); Collella v. Board of Assessors of the County of Nassau, 266 A.D. 2d 286, 287, 698 N.Y.S. 2d 291 ( 2d Dept. 1999 ), rev'd on other grounds 95 N.Y. 2d 401, 741 N.E. 2d 113, 718 N.Y.S. 2d 268 ( 2000 ); Legion of Christ Inc. v. Town of Mount Pleasant, 1 N.Y. 3d 406, 411, 806 N.E. 2d 973, 976, 774 N.Y.S. 2d 860, 863 ( 2004 )].

**Double Dipping & Making A Profit**

Second, the Congregation is " double dipping " in that it rents the upper level of the subject property to Rabbi Moscowitz for $1,780.00 a month, $1,617.00 of which is paid by the Section 8 Housing Voucher Program[12], the balance of which, $163.00, was supposed to have been paid by Rabbi Moscowitz to the Congregation but was only paid " Maybe around five, six times " in three years[13]. The Congregation can not seek two governmental subsidies for the same property by " requesting a tax exemption and then receiving Section 8 rent for the exempt property "[14]. In addition, the Congregation appears to be making a profit from this

- 4 -

arrangement of " $381.68/month or $4,580.16 a year "[15] [ <u>Matter of Stuyvesant Square Thrift Shop, Inc. v. Tax Commission</u>, 54 N.Y. 2d 735, 426 N.E. 2d 478, 442 N.Y.S. 2d 984 ( 1981 )].

**Failure To Assert A Claim Under R.P.T.L. § 462**

Third, in its Complaints[16] the Congregation relied exclusively upon R.P.T.L. §§ 420(a),(b) as the basis for its request for a tax exemption for the subject property. Nonetheless, at trial the Congregation made application " to conform the pleadings to the proof " by allowing it to seek tax exemption under R.P.T.L. § 462 ". That request is denied.

**Failure To File A 2005 Application Based On R.P.T.L. § 462**

Assuming, *arguendo*, that the Congregation's application had been granted it, nevertheless, failed to file an application in 2005 for a tax exemption pursuant to R.P.T.L. § 462 and would be barred from relying upon that provision herein [ <u>Kahal Bnei Emunium and Talmud Torah Bnei Simon Israel v. Town of Fallsberg</u>, 78 N.Y. 2d 194, 577 N.E. 2d 34, 573 N.Y.S. 2d 43 ( 1991 ); <u>Collella v. Board of Assessors of the County of Nassau</u>, 266 A.D. 2d 286, 698 N.Y.S. 2d 291 ( 2d Dept. 1999 ), <u>rev'd on other grounds</u> 95 N.Y. 2d 401, 741 N.E. 2d 113, 718 N.Y.S. 2d 268 ( 2000 )].

**Standing As A Threshold Issue**

Without standing to seek a real property tax exemption this Court need not address the merits of whether or not the Congregation meets, in whole or in part, the requirements of R.P.T.L. §§ 420(a),(b)[17] and 462[18]. Notwithstanding Defendants' request for an advisory opinion [ " We look to this Court for guidance in handling the various permutations arising from this ever-expanding area of tax exemptions "[19] ], the issue of standing [ which Defendants themselves properly raised ] is a threshold issue which must be addressed before considering the merits of the Congregation's request for a tax exemption.

## FACTUAL BACKGROUND

**The Purchase Of 32 College Road**

The subject property was purchased on January 29, 2001 by Hanoch Babad to establish a synagogue, " Orthodox Hasidim Shul "[20], a mikvah and provide a residence for Rabbi Moscowitz and his family. Mr. Babad put up $100,000.00, obtained a mortgage for the balance[21] and deeded the subject property to the Congregation on January 27, 2003[22]. Rabbi Moscowitz moved into the subject property in the summer of 2001[23] after renovations to the upper level of the premises had been completed[24]. The Rabbi conducts

services on the Sabbath and Holidays, as well as approximately 9-10 hours a week for regular weekday services[25].

## The Renovations

On April 13, 2001, Mrs. Moscowitz applied for a building permit to renovate the basement of the subject property for a mikvah and a playroom[26]. The building plans submitted with the building permit application indicated that the basement was to have a large playroom, mikvah, den, a half bathroom, a small utility area and miscellaneous doors and partitions[27]. The building plans do not indicate that there was to be a synagogue in the subject property. On November 6, 2002, the Building Department issued a Certificate of Occupancy listing the subject property as a " Single family dwelling with a finished basement "[28].

## Code Violations

On June 29, 2004 the subject property was placed in violation of The Town of Ramapo Zoning Code for use of the premises other than as a single-family dwelling[29]. On September 10, 2004 Brian Brophy, then the Director of Building, Planning and Zoning for the Town of Ramapo, sent a letter to the Congregation, requesting that someone contact him in order to resolve the matter of the violation[30]. There was no response to the letter[31]. Subsequent to the issuance of the Certificate of Occupancy in

-7-

2002 for a single-family dwelling with a finished basement, neither the Congregation nor anyone acting on its behalf has submitted either an application for a building permit or site plan approval for a synagogue in the subject property nor has a Certificate of Use for a synagogue at this location ever been granted[32].

**Revised Code § 376-144**

Revised Code of the Town of Ramapo § 376-144 states that " a building permit is required for the construction, reconstruction, moving, demolition, structural alteration or change in the use of a building or a structure ". The application for a building permit[33] filed by Mrs. Moscowitz makes no mention of changing the use of the subject property from a single family residence to a synagogue.

**Revised Code § 376-90**

Revised Code of the Town of Ramapo § 376-90 states that with the exception of one- or two- or three-family residential uses, " all other principal uses shall require a site development plan approval prior to the issuance of a building permit, certificate of occupancy or certificate of use ". No site development plan for a synagogue in the subject property was ever presented to the Building Department.

### Revised Code § 376-149(A)

Revised Code of the Town of Ramapo § 376-149(A) states that " no building shall be used or occupied in whole or in part unless or until a certificate of use or a certificate of occupancy, as appropriate, shall have been issued by the Building Inspector, and then only in conformity with said certificate(s) ". The Certificate of Occupancy[34] actually issued mentions only " a single family dwelling with finished basement ". No Certificate of Use for a synagogue has ever been issued.

### The Application For Tax Exemption

On February 16, 2004 the Congregation's President, Michael Tauber, applied to the Town of Ramapo Assessor's Office for a tax exemption[35]. The Board of Assessment Review on June 23, 2004 denied the Congregation's application " for failing to prove itself totally exempt under the law ".[36] There appears to have been a misrepresentation in the application regarding the Congregation's exemption from federal income taxes[37].

### Rent & Expenses

The Section 8 contract between Rabbi Moscowitz and the Congregation states that the amount owed to the Congregation for the residential portion of the subject property is $1,728.00 with Section 8 paying

- 9 -

$1,617.00 leaving Rabbi Moscowitz responsible for $163.00 per month[38]. During a three year period the Moscowitz family has paid their portion of the rent five or six times[39]. The Congregation pays the following expenses: (1) mortgage-$1,700/month[40], (2) insurance-$1,300/year or $108.33/month[41], (3) lawn care-approximately $1,000/year or $83.33/month[42], (4) snow removal-$500/year or $41.66/month[43], (5) cleaning-$100/week or $433.33/month[44] and (6) laundry/detergent/towels for the mikvah-$50/month[45]. The Moscowitz family pays for its own electrical usage, based on a separate meter, and their portion of the gas and water bills since there is only one gas and water bill for the subject property[46]. The costs, paid for by the Congregation, add up to $2,416.65 per month. Eliminating the $50/month for the mikvah equals total monthly operating expenses for the subject property of $2,366.65. Dividing this figure in two and apportioning half to the synagogue and half to the residence, each share is $1,183.32. The Congregation is to receive a monthly rent of $1,728.00 under the Section 8 contract which means that it receives $544.68 each month above and beyond the operating costs of the residence portion of the subject property. Even if the Congregation does not receive Rabbi Moscowitz's portion of $163, the Congregation is still receiving $381.68/month, or $4,580.16 a year in profit.

## The Rabbi's Duties To The Congregation

Rabbi Moscowitz does not receive any salary or compensation from the Congregation for services rendered[47]. The Rabbi's duties for the Congregation include leading prayers, giving lectures, counseling members of the Congregation, giving advice, giving bar mitzvah lessons and giving classes to boys[48]. The Rabbi gives classes to members of the Congregation for about 24 hours a week[49] and to two boys for about 6 hours a week[50]. The Rabbi spends additional hours counseling and answering questions[51]. The Rabbi may spend a total of sixty hours a week ministering to the needs of the Congregation[52]

## The Rabbi's Second Fulltime Job

The Rabbi has a second job at the Bnos Yisroel, a school located at One School Terrace, Monsey, New York, preparing lessons for teachers[53]. The Rabbi works at Bnos Yisroel 35 hours a week Monday through Thursday from 9:00AM to 4:00PM and Sunday and Fridays from 9:00AM to 12:30PM for which he is paid $1,070.00 per month[54].

### DISCUSSION

### Violations Of The Zoning Code

The Congregation's use of the subject property violates the Revised Code of the Town of Ramapo §§ 376-144, 376-90 and 376-149(A). Such violations serve as a complete defense to the Congregation's application for a tax exemption[55] [ Oxford Group-Moral Re-Armament, MRS, Inc. v. Hogarth Sweet, 309 N.Y. 744, 128 N.E. 2d 759 ( 1955 )( " That the use of the premises...was and is in violation of the zoning ordinance...and that said violation constitutes a complete defense to the petitioner's application for exemption " ); Collella v. Board of Assessors of the County of Nassau, 266 A.D. 2d 286, 698 N.Y.S. 2d 291 ( 2d Dept. 1999 )( " Under local zoning ordinances, the Temple was required to obtain a special use permit before the property could be used for any purpose other than a single-family residence. The Temple's 1997 application for special use permit was denied by the Zoning Board of Appeals...Therefore its use of the property as a religious and spiritual center was illegal and acted as a complete bar to the granting of its application for a tax exemption " ), rev'd on other grounds 95 N.Y. 2d 401, 741 N.E. 2d 113, 718 N.Y.S. 2d 268 ( 2000 )]. In addition, the recent decision of the Court of Appeals in Legion of Christ Inc. v. Town of Mount Pleasant, 1 N.Y. 3d 406, 806 N.E. 2d 973, 774 N.Y.S. 2d 860 ( 2004 ) held, among other things, that

- 12 -

Oxford, supra, is good law and that the use of developed land for exempt purposes in violation of zoning laws is still a complete bar to a request for a real property tax exemption [ See e.g. Legion, at 1 N.Y. 3d 412 ( " The Town's reliance on Matter of Oxford ( supra )...is misplaced. Oxford involved land that was already developed and actually being used for exempt purposes in violation of the municipal zoning law, not property that was vacant or otherwise unimproved, as is the case here " )].

### Double Dipping & Making A Profit

The Congregation is " double dipping " in that it rents the top floor of the subject property to Rabbi Moscowitz for $1,780.00 a month, $1,617.00 of which is paid by the Section 8 Housing Voucher Program[56], the balance of which, $163.00, was supposed to have been paid by Rabbi Moscowitz to the Congregation but was only paid " Maybe around five, six times " in three years[57]. The Congregation can not seek two governmental subsidies for the same property by " requesting a tax exemption and then receiving Section 8 rent for the exempt property "[58].

In addition, the credible evidence demonstrates that the Congregation is making a profit from this arrangement of " $381.68/month or $4,580.16 a year "[59]. As correctly noted by the Congregation " RPTL 420-a provides that property conducted exclusively for religious purposes is entitled to exemption provided that no member receives any pecuniary profit nor the organization makes a profit from the property "[60]. The Congregation has

failed to rebut[61] the Defendants' factual analysis[62] which demonstrates that a profit is being made by renting the upper level of the subject property to Rabbi Moscowitz [ See e.g., <u>Matter of Stuyvesant Square Thrift Shop, Inc. v. Tax Commission</u>, 54 N.Y. 2d 735, 426 N.E. 2d 478, 442 N.Y.S. 2d 984 ( 1981 ) ( " The fact that the net cash profits are ultimately distributed to various institutions organized for charitable purposes does not in and of itself directly involve the Thrift Shop in the charitable activities of the distributee organization or render its function exclusively charitable " ); <u>State Board of Equalization and Assessment</u>, 2 Op. Counsel SBEA No. 49, 1970 WL 11159 ( " It should be noted that in cases such as these it must be clearly demonstrated that it is necessary for the employee to reside on the premises and that such residence is not merely provided for the convenience of either the employee or the employer. It should also be noted that the fact that rent may be charged for occupying the property will not necessarily violate the ' exclusive use ' provision *if it can be shown that the amount of rent collected does not constitute revenue* " [ emphasis added ] )].


## <u>Failure To Assert A Claim Under R.P.T.L. § 462</u>


In its Complaints[63] the Congregation relied exclusively upon R.P.T.L. §§ 420 (a),(b) as the basis for its request for a 100% tax exemption for the subject property. Nonetheless, at trial the Congregation made application " to conform the pleadings to the proof " by allowing it to

seek tax exemption under R.P.T.L. § 462 ". That request is denied [ See e.g., <u>Matter of City of Lackawanna v. State of Equalization & Assessment</u>, 16 N.Y. 2d 222, 264 N.Y.S. 2d 528, 212 N.E. 2d 42 ( 1965 )( "' Tax exemptions...are   limitations   of   sovereignty   and   are   strictly construed...If ambiguity or uncertainty occurs, all doubt must be resolved against the   exemption'"); <u>Matter of New York Telephone Co. v. Common Council of City of Rye</u>, 43 Misc. 2d 668, 252 N.Y.S. 2d 126 ( West. Sup. 1964 )( " ' Laws exempting property from taxation are to strictly construed. Taxation is the rule; exemption in the exception " ); <u>Rose Mount Vernon Corp. v. Assessor of the City of Mount Vernon</u>, 1 Misc. 3d 906 ( West. Sup. 2003 )( policy of rigid enforcement of 22 N.Y.C.R.R. § 202.59(b), (d)(1) and R.P.T.L. § 718(2)(d) ), <u>aff'd</u> 15 A.D. 3d 585, 791 N.Y.S. 2d 572 ( 2d Dept. 2005 ); <u>Compare</u>: <u>McKinney's Consolidated Laws of New York</u>, Vol. 7B, Commentary to C.P.L.R. § 3025©, §§ 3025.15, 3025.16, pp. 363-366 ]].

## <u>Failure To File A 2005 Application Based On R.P.T.L. § 462</u>

Assuming, *arguendo*, that the Congregation's application had been granted it, nevertheless, failed to file an application in 2005 for a tax exemption pursuant to R.P.T.L. § 462 and would be barred from relying upon that provision herein[64] [ See e.g., <u>Collella v. Board of Assessors of the County of Nassau</u>, 266 A.D. 2d 286, 698 N.Y.S. 2d 291 ( 2d Dept. 1999 )( " In addition, the Temple could not avail itself of the parsonage

- 15 -

exception contained in ( R.P.T.L. ) § 462 as the Temple never submitted an application for such an exemption to the Board " ), <u>rev'd on other grounds</u> 95 N.Y. 2d 401, 741 N.E. 2d 113, 718 N.Y.S. 2d 268 ( 2000 ); See also: <u>Kahal Bnei Emunium and Talmud Torah Bnei Simon Israel v. Town of Fallsberg</u>, 78 N.Y. 2d 194, 577 N.E. 2d 34, 573 N.Y.S. 2d 43 ( 1991 ) ( distinguishing mandatory exemptions under R.P.T.L. § 420(a) with permissive exemptions under R.P.T.L. § 420(b) ( R.P.T.L. § 462 would be a permissive exemption ); under R.P.T.L. § 420(b) "' an exemption may be granted pursuant to [ that ] section only upon application made by the owner of the property on a form prescribed by the [ State Board of Equalization and Assessment ] "].

Based upon the foregoing the Congregation's Complaints for 2004 and 2005 are dismissed and its application for a tax exemption for the subject property pursuant to R.P.T.L. §§ 420(a),(b) & 462 is denied.

Dated: White Plains, N.Y. 10601
       September 27, 2006


_____
HON. THOMAS A. DICKERSON
SUPREME COURT JUSTICE


TO: Joel L. Scheinert, Esq.
    Schwartz, Kobb & Scheinert, PLLC
    Attorneys For Petitioner
    404 East Route 59
    POB 220
    Nanuet, N.Y. 10954-0220

    Michael L. Klein, Esq.
    Town Attorney
    Elana L. Yeger, Esq.
    Deputy Town Attorney
    Attorneys For Respondents
    237 Route 59
    Suffern, N.Y. 10901

**ENDNOTES**

1. The two Complaints filed in this matter [ Court Exs. 1 & 3 ] rely exclusively upon R.P.T.L. §§ 420(a),(b) as the basis for seeking a real property tax exemption. The Complaints assert " that the aforesaid property was totally exempt from real property taxation through the trial of this action pursuant to Section 420-a and 420-b of the ( RPTL ) ".

2. At trial the Congregation made application to " conform the pleadings to the proof " by allowing the Congregation to seek tax exemption under § 462 of the R.P.T.L. [ [ T. Rec. at p. 138 ( " The Court: Very good. We'll reserve on that as well " )].

3. Plaintiff's witnesses include Michael Tauber, President of Congregation Or Yosef [ T. Rec. at pp. 17-74 ) and Mrs. Baila Moscowitz, wife of Rabbi Moscowitz [ T. Rec. at pp. 75-102 ].

4. Defendants' only witness was Larry Picarello, Assistant Plan Examiner of Town of Ramapo Building Department [ T. Rec. at pp. 116-137 ].

5. P. Ex. 1.

6. See also: <u>Otrada, Inc. v. Assessor of the Town of Ramapo</u>, 9 Misc. 3d 1116 ( Rockland Sup. 2005 )( 100% tax exemption restored to American Russian Aid Association ), <u>reargument granted</u> 11 Misc. 3d 1058 ( Rockland Sup. 2006 ); <u>Matter of Salvation & Praise Deliverance v. The City of Poughkeepsie</u>, 6 Misc. 3d 1021 ( Duchess Sup. 2005 )( Bar claim action granted; Article 7 petition moot ); <u>Matter of Adult Home At Erie Station, Inc. v. Assessor of City of Middletown</u>, 8 Misc. 3d 1010(A) ( Orange Sup. 2005 )( not-for-profit adult home not tax exempt ); <u>Matter of Miriam Osborn Memorial Home Association v. The City of Rye</u>, 6 Misc. 3d 1035(A)( West. Sup. 2005 )( discussion of the burden of proof of " charitable " use and " hospital " use tax exemptions ).

7. Plaintiff's Post Trial Memorandum of Law dated June 2, 2006 [ " P. Memo. " ] at p. 1; T. Rec. at pp. 21-24.

8. D. Memo. at p. 16; D. Exs. D, E & F.

9. D. Memo. at p. 16.

10. D. Memo. at p. 16; D. Exs. G & H.

11. Defendants' Post-Trial Reply Memorandum Findings of Fact and Conclusions of Law dated July 3, 2007 [ " D. Reply Memo. " ] at p. 6.

12. D. Ex. C.

13. T. Rec. at pp. 87-88.

14. Defendants' Memorandum of Law dated May 31, 2006 [ " D. Memo. " ] at p. 15.

15. D. Reply Memo. at pp. 3-4.

16. Ct. Exs. 1 & 3.

17. Assuming the Congregation did have standing to seek a real property tax exemption under R.P.T.L. § 420(a), which it does not, it failed to carry its burden in showing that the top floor residence occupied by Rabbi Moscowitz and his family was primarily used for a tax exempt religious purpose [ Gemilas, supra, ( " R.P.T.L. ' § 420-a(1)(a) provides that ' Real property owned by a corporation...organized or conducted exclusively for religious, charitable...purposes...and used exclusively for carrying out thereon...such purposes...shall be exempt from taxation...". To be entitled to such a tax exemption the Petitioner has the burden [ see e.g., Matter of Marble Masonic Historical Society v. Tuckahoe, 262 A.D. 2d 487, 488, 691 N.Y.S. 2d 786 ( 2d Dept. 1999 )( " party seeking an exemption...bore the burden of establishing its entitlement to an exemption " ); ( Matter of Long Island Foundation For Education v. Michael, 97 A.D. 2d 843, 844, 469 N.Y.S. 2d 85 ( 2d Dept. 1983 )] of demonstrating that it is (1) organized exclusively for tax exempt purposes and (2) that the subject property is used exclusively for exempt purposes [ see e.g., American-Russian Aid Association v. City of Glen Cove, 41 Misc. 2d 622, 246 N.Y.S. 2d 123, 126 ( Nassau Sup. 1964 )( RPTL § 420-a(1)(a) " impose(s) two requirements-first that the property be owned by a non-profit exempt organization and secondly that the property be used exclusively for one or more of those exempt purposes recited in the Certificate of Incorporation...' When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity ' " ), aff'd 23 A.D. 2d 966, 260 N.Y.S. 2d 589 ( 2d Dept. 1965 )].

The Petitioner must come forward with convincing evidence, any ambiguity of which will be strictly construed against it [ Matter of City of Lackawanna v. State of Equalization & Assessment, 16 N.Y. 2d 222, 230, 264 N.Y.S. 2d 528, 212 N.E. 2d

- 19 -

42 ( 1965 )( "' Tax exemptions...are limitations of sovereignty and are strictly construed...If ambiguity or uncertainty occurs, all doubt must be resolved against the exemption'")] although the interpretation of exemption statutes " ' should not be so narrow and literal as to defeat [ their ] settled purpose...that of encouraging, fostering and protecting religious and educational institutions ' " [ <u>Matter of Yeshivath Shearith Hapletah v. Assessor of Town of Fallsburg</u>, 79 N.Y. 2d 244, 249, 582 N.Y.S. 2d 54, 590 N.E. 2d 1182 ( 1992 ) ]. The term " exclusive " as it appears in RPTL § 420-a(1)(a) has been " broadly defined to connote ' principal ' or ' primary ' such that purposes and uses merely ' auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption ' " [ <u>Matter of Yeshivath</u>, supra, at 79 N.Y. 2d 249 ]" )].

Assuming, *arguendo*, that the Congregation meets the first requirement of being organized exclusively for religious purposes it has failed to meet the second requirement because the upper portion of the subject property is not primarily used for a tax exempt religious purpose. In light of Mrs. Baila Moscowitz's testimony regarding the hours that the Rabbi is downstairs in the shul performing various services for the Congregation and its congregants [ T. Rec. at pp. 89-93, 96-97, 101-102 ], the Congregation can not argue that the residence is used for anything other than the family residence. The Congregation has submitted no credible evidence that religious activity takes place upstairs in the Rabbi's residence. It is clear that the primary use of the upper level of the subject property is as a residence [ <u>Gemilas</u>, supra; <u>Holy Trinity Orthodox Church of East Meadow v. O'Shea</u>, 186 Misc. 2d 880, 720 N.Y.S. 2d 904 ( Nassau Sup. 2001 )( " 379 Green Avenue is used for a variety of primarily religious purposes including choir rehearsals, bible study classes, retreats and religious meetings. The fact that it is used for residential purposes by the choir director, who provides liturgical music at all weekend services and sacramental ceremonies, and occasionally by visiting clergy, is plainly incidental to the religious purpose of the building " ); <u>Chung Te Buddhist Association of New York, Inc. v. Kusterbeck</u>, 2003 WL 22798826 ( N.Y. Sup. 2003 )( 14 rooms used as overnight residences for visiting priests; "...it is clear that providing a place for visiting religious scholars and priests to stay in close proximity to the site at which religious worship and instruction is taking place constitutes an incidental use that does not disqualify the premises from the benefit of the exemption " ); <u>St. Luke's Hospital v. Boyland</u>, 15 AD. 2d 776, 224 N.Y.S. 2d 695 ( 1st Dept. 1962 )( " Property used for residential purposes is entitled to exemption when the use is necessary to carry out the corporate purpose...or the residential use is actually part of the charitable and benevolent work of the exempt

corporation " ), *mod'd* 12 N.Y.S. 2d 135, 237 N.Y.S. 2d 308, 187
N.E. 2d 769 ( 1962 ); Matter of Yeshivath Shearith Hapletah v.
Assessor of Town of Fallsburg, 79 N.Y. 2d 244, 250, 582 N.Y.S. 2d
54, 590 N.E. 2d 1182 ( 1992 )( " subject housing facilities are
occupied exclusively by staff, teachers, Rabbis and families,
members of which are either students at the yeshivah or parents
of students...If the petitioner was unable to provide residential
housing accommodations to its faculty, staff, students and their
families, its primary purposes of providing rigorous religious
and educational instruction at the yeshivah would be seriously
undermined " ); International Fellowship, Inc. v. Comerford, 2001
WL 1750612 ( Chautauqua Sup. 2001 )( " The primary use of the
property at issue, however, is as a residence for petitioner's
officers...Petitioners have made no showing that the corporate
purposes are served by providing a residence to its officers.
Rather, it appears that the officers decided that it would be
more convenient for them if the corporation was operated from
their home, instead of from the separate office in Buffalo, where
it had functioned for a number of years..." )].

     In addition, R.P.T.L. § 420(a) may not be an appropriate
basis for seeking a " parsonage " exemption [ See 10 Op. Counsel
SBRPS No. 90, 1999 WL 1958303 ( 1999 )( " It is has long been our
opinion that the taxable status of rectories and personages is
established primarily by section 462, not section 420-a because
residential use is neither a religious use nor necessarily
incidental to a religious use...accord: St. Agnes Church v. Daby,
148 A.D. 2d 31, 543 N.Y.S. 2d 208 ( 3d Dept. 1989 )" )].


18. See e.g., Congregation Knesset Israel v. Assessor of the Town
of Ramapo, 8 Misc. 3d 1021 ( Rockland Sup. 2005 ).

19. R. Memo. at p. 20.

20. T. Rec. at pp. 17-20.

21. T. Rec. at pp. 17-21, 30.

22. T. Rec. at pp. 21-23; P. Ex. 2.

23. T. Rec. at p. 84.

24. T. Rec. at pp. 22, 31, 85.

25. T. Rec. at pp. 90-91.

26. R. Ex. D.

27. R. Ex. E; T. Rec. at pp. 126-127.

28. R. Ex. F.

29. R. Ex. G.

30. R. Ex. H.

31. T. Rec. at p. 129.

32. T. Rec. at. pp. 134-135.

33. R. Ex. E.

34. R. Ex. G.

35. R. Ex. A.

36. R. Reply Memo. at p. 3.

37. Evidently, Mr. Tauber filled in the box in the Application [ R. Ex. A ] indicating the Congregation was exempt from federal income taxes when, in fact, such tax exemption was not awarded until several months later on September 10, 2004 [ P. Ex. 3 ].

38. R. Ex. C.

39. T. Rec. at pp. 87-88.

40. T. Rec. at p. 76.

41. T. Rec. at p. 77.

42. T. Rec. at pp. 77, 82-83.

43. T. Rec. at p. 82.

44. T. Rec. at p. 78.

45. T. Rec. at p. 78.

46. T. Rec. at pp. 93-94.

47. T. Rec. at p. 93.

48. T. Rec. at p. 88.

49. T. Rec. at pp. 90, 92.

50. T. Rec. at p. 92.

51. T. Rec. at p. 101.

52. T. Rec. at p. 26.

53. T. Rec. at pp. 99-100.

54. T. Rec. at p. 100.

55. R. Memo. at p. 19 ( " Plaintiff would like this Court not to hear Respondents' arguments on this issue, claiming that they were ' sandbagged ' and that Respondents should be limited to the reasons given for denial of the exemption by the Town in the initial pleadings and interrogatories. This argument is without merit for two reasons. First of all, Plaintiff can hardly claim to have been sandbagged by the undeniable fact that the Congregation does not have a valid certificate of use/occupancy for the subject premises. There is no disputing that the purpose of purchasing and renovating the house was primarily for use as a synagogue and mikvah...[ T. Rec. at pp. 19-35 ]. It was Mrs. Moscowitz who applied for the building permit for renovations in the basement and made no mention of a synagogue...It can come as no great shock to the Congregation to discover that the operation of the synagogue without a proper certificate of use/occupancy is in violation of zoning law, particularly when a violation notice was placed on the premises declaring them to be in violation and the Congregation received a letter from the Building Department regarding the violation [ R. Exs. G & H ] " ).

56. D. Ex. C.

57. T. Rec. at pp. 87-88.

58. D. Memo. at p. 15.

59. D. Reply Memo. at pp. 3-4. R.P.T.L. § 420-a-2 states that " if any portion of such real property is not so used exclusively to carry out thereupon one or more of such purposes but is leased or otherwise used for other purposes, such portion shall be subject to taxation ".

60. P. Reply Memo. at p. 2.

61. P. Reply Memo. at p. 2.

62. R. Memo. at pp. 12-14; R. Reply Memo. at pp. 3-4.

- 23 -

63. Ct. Exs. 1 & 3.

64. The Congregation's cites <u>Otrada, Inc. v. Assessor of the Town of Ramapo</u>, 9 Misc. 3d 1116 ( Rockland Sup. 2005 )( 100% tax exemption restored to American Russian Aid Association ), <u>rearqument granted</u> 11 Misc. 3d 1058 ( Rockland Sup. 2006 ) for the proposition that " after having filed an application for exemption for the 2004 tax year, and having been denied, there was no necessity for the plaintiff to reapply for tax exemption in a year in which no new action was commenced since the complaint [ Ct. Ex. 1 ] requested exemption through the trial of the action " [ P. Reply Memo. at p. 1 ]. While this rule may apply to cases seeking tax exemption under R.P.T.L. § 420(a) it should not apply " if the statute for a permissive class of tax exemptions [ such as R.P.T.L. § 462 ] requires an application " [ P. Memo. at pp. 5-7 citing <u>Kahal Bnei Emunium and Talmud Torah Bnei Simon Israel v. Town of Fallsberq</u>, 78 N.Y. 2d 194, 577 N.E. 2d 34, 573 N.Y.S. 2d 43 ( 1991 )].