**EXHIBIT O (PART 1)**

Chapter 130

ZONING

[HISTORY Adopted by the Board of Trustees of the Village of Pomona 5-28-1968; amended in its entirety 2-8-1988 by L.L. No. 1-1988. Subsequent amendments noted where applicable.]

GENERAL REFERENCES

Historical Review Board — See Ch. 13.

Planning Board and Zoning Board of Appeals — See Ch. 25.

Building construction — See Ch. 47.

Flood damage prevention — See Ch. 79.

Subdivision of land — See Ch. 118.

ARTICLE I

Authority and Purpose

§ 130-1.  Statutory authority.

Under the authority granted by § 7-700 of the Village Law, as amended, the Board of Trustees of the Village of Pomona hereby adopts this chapter to promote the purposes set forth in § 7-704 of the Village Law.

§ 130-2.  Purpose and intent.

Whereas areas of commercial, industrial and high- and medium-density residential development are to be found elsewhere in Rockland County, and whereas the area embraced by the Village of Pomona conforms to the low-density concept of the outlying areas of the existing Town of Ramapo Master Plan and the Zoning Ordinances of the Towns of Haverstraw and Ramapo, therefore this chapter is intended to provide for the orderly and desirable development of the Village of Pomona and to regulate and restrict the use of land and the construction and use of buildings and accessory land improvements in the following manners:

A.    To preserve and enhance the rural residential character of the Village and to encourage the orderly and beneficial development of the entire Village.

B.    To prevent the overcrowding of land with persons and structures in relation to open spaces, circulation and neighboring land uses and to require adequate provision for off-street parking.

C.    To prevent the contamination of streams and ponds, to safeguard the water table and to encourage the wise use and sound management of the natural resources throughout the Village in order to preserve the integrity, stability and beauty of the

community and the value of land.

D.    To provide adequate light, air and privacy for residents, to secure safety from fire, flood and other danger and to discourage uses inimical to public health.

E.    To encourage any construction which will tend to enhance the natural, rural beauty of the area.

F.    To discourage auxiliary construction which detracts from the rural aesthetic beauty of the community.

G.    To facilitate such services as utilities, sewerage, parks and other public requirements.

ARTICLE II

Definitions

**§ 130-3. General construction of language; word usage.**

A.    General construction of language. The following rules of construction apply to the language of this chapter:

(1)    The specific shall control the general.

(2)    All words used in the present tense include the future tense.

(3)    All words in the singular number include the plural number, and vice versa, unless the natural construction of the wording indicates otherwise.

(4)    Words used in the masculine gender include the feminine and neuter, and vice versa, unless the natural construction of the wording indicates otherwise.

(5)    The word "shall" is mandatory; the word "may" is permissive.

(6)    The word "includes" shall not limit a term to the specified examples, but is intended to extend its meaning to all other instances or circumstances of like kind or character.

(7)    Unless the context clearly indicates the contrary, where a regulation involves two or more items, conditions, provisions or events connected by the conjunction "and," "or" or either... or," the conjunction shall be interpreted as follows:

(a) "And" indicates that all the connected items, conditions, provisions or events shall apply.

(b) "Or" indicates that the connected items, conditions, provisions or events may apply singly or in any combination.

(c) "Either ... or" indicates that the connected items, conditions, provisions or events shall apply singly but not in combination.

(8)     The words "building" and "structure" include any part thereof.

(9)     The words "lot," "plot" and "tract of land" shall one include the other.

(10)    The word "premises" shall include land and all structures thereon.

(11)    The word "herein" means "in this chapter"; the word "regulations" means the regulations of this chapter; and the words "this chapter" shall mean "this chapter and the maps included herein as enacted or subsequently amended."

(12)    The words "occupied" and "used" shall be considered to be followed by the words "or intended, arranged or designed to be occupied or used," unless the natural construction of the wording indicates otherwise.

(13)    References made to officials and official bodies shall mean officials and official bodies of the Village of Pomona, unless the natural construction of the wording indicates otherwise.

(14)    The "Village" is the Village of Pomona in the County of Rockland, State of New York; the "Village Board," "Board of Appeals," "Planning Board" and "Code Enforcement Officer" are, respectively, the Board of Trustees of the Village of Pomona, the Village of Pomona Zoning Board of Appeals, the Village of Pomona Planning Board and the Village of Pomona Code Enforcement Officer.

(15)    In case of any difference of meaning or implication between the text of this chapter and any caption or illustration, the text shall control.

B.    Terms not defined. Where terms are not defined, they shall have their ordinarily accepted meanings or such as the context may imply.

## § 130-4. Terms defined.

As used in this chapter, the following terms shall have the meanings indicated:

ACCESSORY BUILDING — A building subordinate to the main building on the lot and used for purposes customarily incidental to that of the main building. Where an "accessory building" is attached to the main building in a substantial manner, as by a wall or roof, such "accessory building" shall be considered part of the main building.

AGRICULTURAL USE — The growing of field crops or raising of livestock.

ALTERATION — A change or rearrangement in the supporting members of a building or structure, or an enlargement, whether by extending on a side or by increasing in height, or the moving from one location or position to another.

BASEMENT — A portion of a building partly underground, but having less than half its clear height below the average grade of the adjoining ground. See also "cellar."

BOARD OF APPEALS — The Board of Appeals of the Village of Pomona.

BOARD OF TRUSTEES — The Board of Trustees of the Village of Pomona.

BUILDING — Any structure having a roof, self-supporting or supported by columns or walls, which is permanently affixed to the ground and intended for the shelter, housing or enclosure of persons, animals or chattel.

BUILDING, AIR-PRESSURE — Any structure partially or totally supported by air pressure.

BUILDING AREA — The maximum horizontal cross section of a building, including porches, balconies and raised platforms, but excluding cornices, roof overhangs, gutters or chimneys projecting not more than three feet and steps and terraces not more than three feet above the average adjacent ground elevation.

BUILDING CODE — The New York State Uniform Fire Prevention and Building Code adopted by the Board of Trustees of the Village of Pomona.

BUILDING COVERAGE — That percentage of the land area covered by the combined building area of all buildings, excluding any buildings or structures located completely below ground.

BULK — The size and shape of buildings and nonbuilding uses; and the physical relationship of their exterior walls and accessory construction to plot lines; and all open spaces required in connection with a building or structure. "Bulk" regulations include regulations dealing with plot area, plot frontage, plot width, plot depth, height, required yards, the ratio of roofed or roofable area to the area of the plot.

BUSINESS OR PROFESSIONAL OFFICE — An establishment offering services to the general public or the business community.

CAMP — An establishment, including facilities for seasonal use, organized for recreational or athletic purposes.

CELLAR — A portion of a building partly or wholly underground, having half or more than half of its clear height below the average grade of the adjoining ground. See also "basement."

CEMETERY — A place containing graves or tombs for the interment of the dead.

CLEARING — The removal of trees with a circumference of 25 inches or more measured at a height four and one half feet above existing ground level at the base of the tree on the uphill side or the stripping of soil. [Added 6-23-1997 by L.L. No. 8-1997; amended 11-25-2003 by L.L. No. 9-2003; 3-28-2005 by L.L. No. 2-2005]

CORNER LOT — A lot located at the junction of and fronting on two or more streets intersecting at an angle of less than 135°.

DIMENSIONALLY NONCONFORMING — See "nonconforming, dimensionally."

DIMENSIONAL NONCONFORMITY -- See "nonconformity, dimensional."

DORMITORY — A building that is operated by an educational institution located on the same lot and accessory to a principal school use and which contains private or semiprivate

rooms which open to a common hallway, which rooms are sleeping quarters for administrative staff, faculty or students. Communal dining, cooking, laundry, lounge and recreation facilities may be provided. Dormitory rooms shall not contain separate cooking, dining or housekeeping facilities except that one dwelling unit with completed housekeeping facilities may be provided for use of a superintendent or supervisory staff for every 50 dormitory rooms. Not more than one communal dining room shall be provided in any building used for dormitory purposes. Single-family, two-family and/or multifamily dwelling units other than as described above shall not be considered to be dormitories or part of dormitories. [Added 9-27-2004 by L.L. No. 5-2004; amended 1-22-2007 by L.L. No. 1-2007]

DRIVEWAY — A passageway with an impervious surface for the use of motor vehicles.

DRIVEWAY GRADIENT — The average percent of grade increase or decrease of a driveway measured from the property line at which the private property meets the street to the end of pavement at the point at which the driveway meets the building. A level area, not to exceed 4%, shall be provided at the top of the driveway from the point at which the driveway meets the building. This area shall be a minimum of 30 feet by 30 feet and shall not be included in the driveway gradient calculation. [Added 3-22-2004 by L.L. No. 2-2004]

DWELLING, ONE-FAMILY DETACHED — A building containing a single principal dwelling unit occupied by only one family and located in its own separate building which does not abut any other dwelling unit.

DWELLING, TWO-FAMILY DETACHED — A building containing two principal dwelling units located in their own separate building which does not abut any other dwelling and which does not include a dwelling unit attached or connected to another dwelling by a party wall.

DWELLING UNIT — A building or portion thereof providing complete housekeeping facilities for one family, including independent cooking, sanitary and sleeping facilities, and physically separate from any other dwelling unit whether or not in the same building.

EDUCATIONAL INSTITUTION — Any private or religious elementary, junior high or high school, college, graduate or post-graduate school conducting a full-time curriculum of instruction a minimum of five days per week for seven months per year and accredited by the New York State Education Department or similar recognized accrediting agency. [Added 1-22-2001 by L.L. No. 1-2001; amended 9-27-2004 by L.L. No. 5-2004]

FAMILY — Any number of individuals related by blood, marriage or adoption, or not more than four persons who are not so related, living together as a single housekeeping unit, using rooms and housekeeping facilities in common and having such meals as they may eat at home generally prepared and eaten together.

FARM STAND — An establishment offering agricultural products grown or raised on the premises for retail sale.

FILLING — The placement of soil, rubble, spoils, rocks and/or any other appropriate fill on any property for the purpose of raising or elevating any portion of a property, except that the addition or movement of shall amounts of earth and fill for the purpose of gardening or leveling the grade by filling a hole or swale shall be excluded from regulation. "Appropriate filling" shall not include the burying of garbage, trash, combustibles or hazardous or toxic materials of any kind as the same are defined from time to time by state and federal laws, rules and regulations. Demolition or construction debris or waste shall not be deemed acceptable fill material. [Added 6-23-1997 by L.L. No. 8-1997; amended 12-22-1997 by L.L. No. 14-1997]

FINISHED GRADE — The elevation of the completed surfaces of lawns, landscaped areas, walks, driveways and parking areas or of the existing ground where it remains undisturbed.

FLOOR AREA — The horizontal area of a story of a building, measured from the exterior faces of exterior walls, or in the case of a common wall separating two buildings, from the center line of such common walls, and including covered and uncovered porches, balconies and raised platforms, but excluding cornices, roof overhangs, gutters or chimneys projecting not more than three feet and steps and terraces not more than three feet above the average adjacent ground elevation.

FLOOR AREA RATIO — Gross floor area divided by the area of a lot.

FRONTAGE — See "lot frontage."

FRONT LOT LINE -- See "lot line, front."

FRONT YARD — See "yard, front."

GARAGE — A part of a building, fully enclosed with four walls and a roof, used for the parking of motor vehicles.

GRADING — The changing or alteration of the surfaces of slopes of lawns or grounds on a site. [Added 6-23-1997 by L.L. No. 8-1997]

GROSS FLOOR AREA — The total floor area of all residential floors of a building, including all areas with headroom of 75 inches or more.

HALF STORY — An uppermost story in which the floor area, having a clear height of at least 7 1/3 feet, is 1/3 or less of the floor area of the story next beneath it.

HEIGHT, BUILDING — The vertical distance measured from the average elevation of the proposed finished grade at the front of the building to the highest point of the roof for flat roofs, to the deck line of mansard roofs and to the mean height between eaves and ridge for gable, hip and gambrel roofs.

HOME OCCUPATION — Any commercial use customarily conducted entirely within a dwelling and carried on by residents thereof who are personally present during substantially all of the operations of the home occupation, and no more than two nonresident employees, subject to the provisions of §§ 130-11E and F, which use is clearly

incidental and secondary to the use of the dwelling for dwelling purposes and does not change the character thereof. The conducting of a hospital, barbershop, beauty parlor, coffee house, tearoom, rooming house, tourist home, veterinary office, animal hospital, warehouse, cooperative, medical center, funeral home or any other similar use shall not be deemed to be a home occupation. [Amended 1-27-1997 by L.L. No. 2-1997; 6-23-1997 by L.L. No. 7-1997]

HOUSE OF WORSHIP — A building or structure commonly referred to as a church, synagogue or similar place of worship, intended primarily for the conduct of organized or regularly scheduled religious services. [Added 1-23-1995 by L.L. No. 2-1995; amended 1-22-2007 by L.L. No. 2-2007]

IMPERVIOUS SURFACE — Those surfaces which do not absorb stormwater. All buildings, parking areas, driveways, roads, sidewalks and any areas in concrete, asphalt or packed stone shall be considered "impervious surfaces" within this definition. In addition, other areas determined by the Village Engineer to be impervious within the meaning of this definition will also be classed as "impervious surfaces."

LOADING SPACE — An off-street space available for the loading or unloading of goods, not less than 15 feet wide, 40 feet long and with a minimum overhead clearance of 14 feet.

LOT — A parcel of land, not divided by streets, together with such yards as are required by the provisions of this chapter, and having its principal frontage on a street or on such other means of access as may be deemed in accordance with the provisions of law to be suitable as a condition of the issuance of a building permit on the lot.

LOT AREA — The total horizontal area included within the boundaries of the lot.

LOT COVERAGE — That percentage of the plot or lot area covered by buildings and structures that have foundations and are or can be roofed over. Open swimming pools shall not be considered a part of "lot coverage."

LOT FRONTAGE — The horizontal distance measured along the full length of a public street line abutting the lot. [Amended 2-28-2005 by L.L. No. 1-2005]

LOT LINE — A property line bounding a lot.

LOT LINE, FRONT — Any lot line separating the lot from the street.

LOT LINE, REAR — The lot line which is generally opposite and parallel to the front lot line. If the "rear lot line" is less than 10 feet in length, or if the lot comes to a point at the rear, the "rear lot line" shall be deemed to be a line parallel to the front lot line, not less than 10 feet long, lying wholly within the lot and farthest from the front lot line.

LOT LINE, SIDE — Any lot line other than a front lot line and the rear lot line.

LOT WIDTH — The distance measured along a line drawn parallel to the front lot line at a distance equal to the minimum front yard requirement.

MAIN BUILDING — A building in which is conducted the principal use of the lot on

which such building is situated.

MICROWAVE RECEIVING DISH — A device, also known as a "satellite dish" or "earth station," whose purpose is to receive communication or other signals from orbiting satellites and which is designed for use by not more than two dwelling units.[80]

MERCHANDISING — Any activity, whether or not engaged in for profit, involving the sale, collection, distribution or warehousing of goods to members of the general public or to specific persons forming a club or purchasing group. [Added 1-27-1997 by L.L. No. 2-1997][81]

MOBILE TRAILER — See "trailer."

MONOPOLE — A freestanding pole having a single point of location on the ground comprising a part of a wireless communication services facility. For purposes of this chapter, the term monopole shall include, in addition to the pole, all other components of the wireless telecommunication services facility. [Added 5-18-1998 by L.L. No. 2-1998]

MULTIPLE DWELLING — A building used or designed as a residence for two or more families living independently of each other and doing their own cooking therein.

NIER — Non-Ionizing electromagnetic radiation. [Added 5-18-1998 by L.L. No. 2-1998]

NONCONFORMING BULK — That part of a building, structure or nonbuilding use which does not conform to one or more of the applicable bulk regulations of this chapter.

NONCONFORMING USE — A use of a building or land, or both, which was lawfully established but which does not conform to the use regulations for the district in which it is located. It may or may not involve any principal building. Any use which is permitted in a district by special permit shall be considered a conforming use, subject to all conditions applicable thereto.

NONCONFORMITY, DIMENSIONAL — The status of a building or structure that is conforming in use but does not conform to the lot dimension, yard dimension, height, building coverage, floor area ratio, off-street parking, loading or similar dimensional requirements of this chapter and which conformed to such dimensional requirements of the zoning regulations in effect at the time such building or structure was established.

NOT-FOR-PROFIT CORPORATION — A corporation formed or existing under the Not-For-Profit Corporation Law of New York State.

NURSERY SCHOOL or DAY-CARE CENTER — An establishment providing care for three or more children and operated in accordance with the Social Services Law of the State of New York.

---

[80]. Editor's Note: The former definition of "major religious use," which was added 1-23-1995 by L.L. No. 2-1995 and which immediately followed this definition, was repealed 1-22-2007 by L.L. No. 2-2007.

[81]. Editor's Note: The former definition of "minor religious use," which was added 1-23-1995 by L.L. No. 2-1995 and which immediately followed this definition, was repealed 1-22-2007 by L.L. No. 2-2007.

ONE-FAMILY DWELLING — See "dwelling, one-family detached."

OWNERSHIP, SINGLE — Ownership by the same person, corporation, firm, entity, partnership or unincorporated association, or owned by different corporations, firms, partnerships, entities or unincorporated associations in which a stockholder, partner or associate or a member of his family owns an interest in each corporation, firm, partnership, entity or unincorporated association.

PARKING AREA — An off-street area with an impervious surface containing one or more parking spaces.

PARKING SPACE — An off-street space available for the parking of one motor vehicle on a transient basis. Such space shall not be located in a front yard.

PARKING SPACE, INDOOR — A parking space located in a fully enclosed structure.

PERSON — Any individual or group of individuals, corporation, partnership, association or any other entity, including state and local governments and agencies.

PLANNING BOARD — The Planning Board of the Village of Pomona.

PRIVATE MEMBERSHIP CLUB — A not-for-profit corporation organized to cater exclusively to its members and their guests, including land, buildings and facilities for recreational, athletic, social, professional and cultural purposes. The members of the organization shall have a financial interest in, and method of control of, the assets and management of the "private membership club."

PROTECTED TREE — Any tree of historical value as determined by resolution of the Board of Trustees or any tree having a circumference of 45 inches or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side. [Added 3-28-2005 by L.L. No. 2-2005]

PUBLIC SCHOOL — An educational institution operated by a public school district in accordance with the Education Law of the State of New York.

PUBLIC UTILITY — Any person duly authorized to furnish to the public, under public regulation, electricity, gas, water, sewage treatment, steam, cable television or telephone or telegraph service, including wireless communication services which are regulated separately under this chapter. [Amended 5-18-1998 by L.L. No. 2-1998]

REAR LOT LINE — See "lot line, rear."

REAR YARD — See "yard, rear."

RECREATIONAL VEHICLE — A vehicular device designed to be used primarily as a temporary abode for travel, recreation or vacation use, including camper trailers, motor homes, pickup coaches and travel trailers.

RECREATIONAL FACILITIES — Facilities designed and used for active and passive participatory athletic and general recreation activities, such as health clubs, gymnasiums, dance halls, skating rinks, swimming pools, tennis courts, ball fields, bowling alleys and

billiard rooms; excluded are facilities intended for spectator activities, such as stadiums and arenas, and any structure in which is maintained for the amusement, patronage or recreation of the public more than three electronic games. Also excluded are basketball facilities commonly found on residential premises at the edge of driveways or at the rear of homes and consisting of a pole, backboard and hoop for the playing of basketball. [Amended 7-28-1997 by L.L. No. 10-1997][82]

RESIDENCE — A building designed or used as the living quarters for one family.

ROOMER — An occupant of a rooming unit.

ROOMING UNIT — One or more rooms, with or without private bathroom facilities, but without cooking facilities, which are rented or available for rent and which are located within a dwelling unit.[83]

SCREENING — Either a strip at least four feet wide densely planted (or having equivalent natural growth) with shrubs or trees at least four feet high at the time of planting, of a type that will form a year-round dense screen at least six feet high within three years, or an opaque wall or barrier or uniformly painted fence at least six feet high.

SIDE LOT LINE — See "lot line, side."

SIDE YARD — See "yard, side."

SIGN — Any structure or part thereof, or any device attached thereto or painted thereon, or any material or thing, illuminated or otherwise, which displays or includes any numeral, letter, work, model, banner, emblem, light, device, trademark or other representation used as an announcement, designation, direction, display or advertisement of any person, firm, group, organization, commodity, service, profession or enterprise when placed in such a manner that it provides visual communication to the general public out of doors.

SIGN AREA — The area which results from the multiplication of the outside dimensions of a sign; the vertical, horizontal or diagonal supports which may affix the sign to the ground or to a structure shall not be included in determining these dimensions unless such supports are clearly a part of the message of the sign. Where a sign is on a plate or outlined or framed, all of the area of such plate or the area enclosed by such outline or frame shall be included. Where the sign consists of individual letters or symbols attached to or painted on a surface, the area shall be considered to be that of the smallest single rectangle which encompasses all of the letters or symbols. Where the sign consists of multiple plaques or parts, the "sign area" shall be the total area of all such parts. The area of all signs that can be seen from more than one side shall be considered to be the area of the largest side on which the message appears.

SITE PLAN — A rendering, drawing or sketch prepared to specifications, and containing

---

[82]. Editor's Note: The former definition of "religious or neighborhood gathering," which was added 1-23-1995 by L.L. No. 2-1995 and which immediately followed this definition, was repealed 1-22-2007 by L.L. No. 2-2007.

[83]. Editor's Note: The definition of "school," which immediately followed this definition, was repealed 9-27-2004 by L.L. No. 5-2004.

the necessary elements as set forth in § 118-32 of this Code, showing the arrangement layout and design of the proposed use of a single parcel of land as shown on said plan. [Amended 2-28-1994 by L.L. No. 1-1994]

SOLAR ENERGY COLLECTOR — A device or combination of devices which relies upon solar radiation as an energy source that is employed for the purposes of the heating or cooling of a building, the heating of water or the generation of electricity.

SPECIAL PERMIT USE — An authorization of a particular land use permitted by the Zoning Code of the Village of Pomona, subject to conditions imposed by such Code to assure that the proposed use is in harmony with said Code and will not adversely affect the neighborhood in which such use is to occur if such conditions are met. [Added 2-28-1994 by L.L. No. 1-1994]

STORY — That portion of a building included between the upper surface of any floor and the upper surface of the floor next above, except that the topmost "story" shall be that portion of a building included between the upper surface of the topmost floor and the ceiling or roof above. If the finished floor level directly above a basement or cellar is more than six feet above the finished grade, such basement or cellar shall be considered a "story."

STREET — An existing state, county, town or Village highway or road, or a way shown on a subdivision plat approved by the Planning Board of the Village of Pomona, Town of Ramapo or Town of Haverstraw or on a plat duly filed and recorded in the office of the County Clerk prior to the appointment of the Planning Board and the grant to such Board of the power to approve subdivision plats, including all of the land within the right-of-way.

STRUCTURE — Anything constructed or erected above or below ground. Included are swimming pools, parking garages, tennis courts, parking areas and driveways.

SUBDIVISION — Any division of land into two or more parcels.

SWIMMING CLUB — A pool operated for members and their guests.

SWIMMING POOL — A man-made body of water or receptacle for water having a depth of more than 20 inches and a water surface area of more than 80 square feet and constructed, installed or maintained in or above ground outside any building.

TERRACE or PORCH — An uncovered flat platform with a surface material. A "terrace" which has a roof and which is attached to a building shall be considered a "porch."

TRAILER — A vehicle which can be used for living or sleeping purposes, standing on or designed to stand on wheels or on rigid supports.

USE — The specific purpose for which land, water, a building or a structure is designed, arranged, intended or for which it is or may be occupied or maintained.

USE, ACCESSORY — A use which is customarily incidental and subordinate to the principal permitted use on the lot and located on the same lot therewith, except that where specifically provided, accessory off-street parking need not be located on the same lot. An

"accessory use" may not be accessory to another "accessory use."

USE, PRINCIPAL — The main use of a structure or lot.

USE, SPECIAL PERMIT — A use allowed in a district, subject to the issuance of a special permit in accordance with the provisions of § 130-10 of this chapter.

WIRELESS TELECOMMUNICATION SERVICES — The provision of wireless telecommunication services, including those more commonly referred to as "cellular phones," which services are regulated by the Federal Communications Commission (FCC) in accordance with and as the term "personal wireless service" is defined in the Communications Act of 1996, 47 U.S.C. Section 332(c)(7)(C), or as hereafter amended. [Added 5-18-1998 by L.L. No. 2-1998]

WIRELESS TELECOMMUNICATION SERVICES FACILITY — Any equipment used in connection with the commercial operation of wireless telecommunication services, as defined herein, and as the term "personal wireless services facility" is defined in the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. Section 332(c)(7)(C), or as hereafter amended, to transmit and/or receive frequencies, including but not limited to antennas, monopoles, equipment, appurtenances and structures. [Added 5-18-1998 by L.L. No. 2-1998]

YARD — Open space on the same lot as a building or structure, which open space lies between the building or structure and the nearest lot line. A "yard" shall be measured as the shortest distance between the building or structure and the lot line.

YARD, FRONT — A yard extending the entire length of the front lot line and lying between the front lot line and the nearest part of the building or structure.

YARD, REAR — A yard extending the entire length of the rear lot line and lying between the rear lot line and the nearest part of the building or structure.

YARD, REQUIRED — Open and unobstructed ground area of the plot extending inward from a plot line the distance specified in the regulations for the district in which the plot is located.

YARD, SIDE — A yard between a side lot line and the nearest part of the building and extending from the front yard to the rear yard, or, in the absence of either of such yards, to the front and rear lot line, as the case may be.

## ARTICLE III

### General Provisions

§ 130-5.  District classification.

The entire area of the Village of Pomona is hereby designated as a residential district with a minimum of 40,000 square feet per lot, hereinafter referred to as the "R-40 District."

§ 130-6.  Zoning Map.

The areas and boundaries of such district are hereby established as shown on a map

entitled, "Zoning Map of the Village of Pomona," dated and made a part of this chapter, and as same may hereafter be amended from time to time. A copy of this map, indicating the latest amendments, shall be on file in the Village Clerk's office.

**§ 130-7. Minimum standards.**

A.    The provisions of this chapter shall be considered as minimum standards. The Planning Board and the Zoning Board of Appeals are hereby empowered to set more stringent requirements than herein set forth in those cases where such are deemed necessary for the preservation of natural features they consider desirable, the elimination or control of natural features considered undesirable or, in general, to meet the stated purposes of this chapter.

B.    Lots whose effluent and wastes are not treated by a state, county or municipal sewage plant shall be required to have a lot size twice that designated for the district in which the lot is located.

**§ 130-8. Scope of controls.**

A.    All new construction, every reconstruction or alteration of a building or structure, every change in bulk, all new uses of buildings or land and every change, enlargement or relocation of use shall conform to the use and bulk regulations of this chapter, except as otherwise set forth herein.

B.    After the effective date of this chapter, no building permit shall be granted for construction in any subdivision in which the lots do not comply with all the provisions of this chapter. Any subdivision which may have been filed in the County Clerk's office and/or have had prior approval from any appropriate planning board prior to the effective date of this chapter must obtain approval from the Village of Pomona Planning Board regardless of such prior filing or approval, and such subdivision must comply with the provisions of this chapter. All construction which was commenced prior to the effective date and has progressed at least as far as a completed foundation may continue to be constructed in accordance with plans and specifications filed for such construction, except that a new building permit must be obtained from the Village of Pomona Code Enforcement Officer, a building permit fee and certificate of occupancy fee paid and, wherever possible, the provisions of this chapter shall be complied with.

ARTICLE IV

**Use Regulations**

**§ 130-9. Permitted uses.**

A.    All uses listed hereunder are permitted in the R-40 District; all others not listed are prohibited, except as provided in §§ 130-10 and 130-11.

(1)    One-family residences, with one dwelling unit per lot (no commercial; no trailers; no multiple dwellings).

(2)    Houses of worship, subject to the requirements of Subsection C below.

(3)    Public utilities rights-of-way.

(4)    (Reserved)[84]

(5)    Libraries and museums.

(6)    Public parks and playgrounds.

(7)    Agricultural pursuits.

B.    (Reserved)[85]

C.    (Reserved)[86]

§ 130-10.  Special permit uses. [Amended 1-28-1991 by L.L. No. 1-1991; 4-28-1997 by L.L. No. 4-1997; 5-18-1998 by L.L. No. 2-1998; 10-26-1998 by L.L. No. 4-1998; 1-22-2001 by L.L. No. 1-2001]

The following uses are permitted in the R-40 District by special permit only, to be reviewed, approved, or disapproved by the board set forth in each subsection:

A.    By the Zoning Board of Appeals: Recreational facilities; playgrounds, swimming clubs, tennis courts and recreational buildings not conducted as a business enterprise, provided that no building, pool, spectator or active play area erected under the provisions of this subsection shall be so erected nearer than 50 feet to any lot line, and provided that the following operations shall be prohibited:

(1)    Outdoor entertainment, live or mechanical.

(2)    The use of outdoor public-address systems for any purpose.

(3)    Exterior lighting producing glare at the lot line other than that essential for the safety of the users of the premises.

B.    By the Board of Trustees: Reservoirs on lots of three acres or more, and water towers and water tanks owned and operated by a public utility, which water tank or water tower is located at or above ground, on lots of three acres or more.

C.    By the Zoning Board of Appeals: Telephone exchanges and public utility substations, communications centers for emergency and other purposes, and any and all other public utility facilities which are or support the primary function of the public utility company, provided that such facilities are housed in buildings that harmonize with the character of the neighborhood and have adequate fences and other safety devices and screening and landscaping as shall be required by the Zoning Board of Appeals. A public utility company shall be a corporation or company for which the Public Service Commission of the State of New York has issued a certificate

---

[84].  Editor's Note: Former Subsection A(4), regarding schools of general instruction, was repealed 1-22-2001 by L.L. No. 1-2001.

[85].  Editor's Note: Former Subsection B, School of general instructions, was repealed 1-22-2001 by L.L. No. 1-2001.

[86].  Editor's Note: Former Subsection C, House of worship, as amended, was repealed 1-22-2007 by L.L. No. 2-2007.

certifying that the company is a public utility.

D.  Camps, subject to special permit by the Village Board, provided that:

(1)  They have a minimum lot area of 50 acres.

(2)  Access to such facilities shall be limited to improved state, county, town or Village roads which are major collector roads. Subdivision (residential) roads shall not be used for access to such uses.

(3)  Such facilities shall be adequate to preclude the necessity of pedestrian traffic outside the approved facility.

(4)  The facility may include bungalows, cottages and tents for temporary use by visitors or patrons of such camps, provided that no heating or plumbing facilities are installed to permit year-round residential communities.

(5)  One year-round residence for a caretaker may be provided for each 50 acres.

(6)  Trailers and recreation vehicles shall not be permitted.

(7)  No building, ballfield, swimming facility or other property use shall be permitted within 125 feet of a residential property line, except that the Planning Board may permit a reduction where, because of topography or the installation of additional buffer landscaping and/or fencing, the Planning Board determines that any potential adverse external effect of such use will be minimized.

(8)  Site plan approval by the Village of Pomona Planning Board shall be obtained. Such site plan shall address the following:

(a) Adequate parking for buses, staff and visitors shall be provided.

(b) No camp shall be operated so as to create a nuisance to surrounding properties. The Planning Board shall attach such conditions to the permit and may require such other facilities as are required to protect neighbors from excessive light or as are required to protect neighbors from excessive light or noise. No outdoor public address systems shall be permitted.

(c) Water facilities by either well or municipal water shall be provided subject to approval by the Rockland County Health Department.

(d)  Sewer disposal by municipal sewer or septic tanks shall be provided subject to approval by the Rockland County Health Department.

(e) The location, nature and height or buildings for summer residence, dining facilities, temporary structures, walls and fences shall be such that the use will not hinder or discourage the appropriate development and use of adjacent land and buildings.

(f) Building coverage, including accessory buildings and structures, shall not

exceed 10% of the lot area, nor shall the sum total of the land covered with buildings and parking, including driveways, exceed 25% of lot area, within any residence district.

(g) In addition to the special standards described above, the use shall comply with any other special requirements deemed appropriate by the Planning Board.

E.    Wireless telecommunication services facility, subject to special permit approval by the Village Board of Trustees and the following requirements: [Added 5-18-1998 by L.L. No. 2-1998]

(1)    The following special permit standards and requirements shall apply to all wireless telecommunication services facilities.

(2)    Purpose. The purpose of these special regulations is to reasonably control the location, construction and maintenance of wireless telecommunication facilities in order to encourage the siting of wireless telecommunication services facilities in nonresidential areas and to protect, to the maximum extent practicable, aesthetic impacts, the open space character of the Village of Pomona, the property values of the community, the health and safety of citizens and a citizen's ability to receive communication signals without interference from other communication providers, while not unreasonably limiting competition among telecommunication providers.

(3)    Use. Except as provided hereinafter, no wireless telecommunication services facility shall be located, constructed or maintained on any lot, building, structure or land area in the Village of Pomona except in conformity with the requirements of this subsection and all other applicable regulations.

(4)    Location and access. A wireless telecommunication services facility shall be located on Village-owned lands or facilities. If, because of unreasonable technological, financial or structural limitations or unless otherwise waived, modified or required by the Village Board of Trustees for aesthetic, safety or other reasons, location on Village-owned lands or facilities is not practicable, such facility shall be located on lands with commercial or nonresidential uses before locating on any lands used exclusively for residential purposes. Wherever possible, such facility shall be attached to an existing building or structure. To the maximum extent practicable, existing roadways shall be used to provide access to the site of a wireless telecommunication services facility.

(5)    Collocation.

(a) The shared use of existing public utility and wireless telecommunication services facilities shall be strongly encouraged. The Village shall maintain an inventory of existing wireless telecommunication services facilities (the "Existing Facilities Inventory") including utilities that are obligated under the Federal Telecommunications Act of 1996 to provide wireless telecommunication service carriers with nondiscriminatory access to their

facilities. Collocation shall be required unless it has been demonstrated to the satisfaction of the Village Board of Trustees that:

[1]    Adequate and reliable wireless telecommunication service cannot be provided from any alternative sites identified on the Existing Facilities Inventory or other existing sites with communication antennas within the service area in a reasonable financially and technologically feasible manner consistent with the wireless telecommunications service provider's system requirements;

[2]    None of the alternative sites identified on the Existing Facilities Inventory or other existing sites with communication antennas within the service area can accommodate the proposed wireless telecommunication services facility with respect to structural or other engineering limitations, including frequency reuse incompatibilities; or

[3]    The owner of the alternative sites identified on the Existing Facilities Inventory or other existing sites with communication antennas within the service area lawfully refuse to permit the applicant use of the site.

(b) All new wireless telecommunication services facilities and premises shall be of proper size, location and design to accommodate collocation of other service providers' facilities, unless otherwise permitted by the Village Board of Trustees.

(6)    Setbacks. Wireless telecommunication services facilities, except those on Village-owned lands or those structurally mounted to an existing building or structure, shall be located not less than two times the otherwise applicable setback requirements for principal structures for the district in which the property is located, or the height of the facility plus the otherwise applicable setback requirements for principal structures for the district in which the property is located, whichever shall be greater. Wireless telecommunication services facilities structurally mounted to the roof of an existing building or structure shall be set back from the side of the building or structure so as to minimize its visibility, but in no case less than 10 feet.

(7)    Freestanding structures. No freestanding wireless telecommunication services facility shall be permitted except for a monopole.

(8)    Height limitations. Notwithstanding the following height limitations, in no case shall a wireless telecommunication services facility exceed the minimum height reasonably necessary to accomplish the purpose it is proposed to serve.

(a) The height of any antennas, or other associated equipment, structurally mounted as part of a wireless telecommunication services facility shall not exceed by more than 15 feet the highest point of the existing structure on

which such antennas or equipment are affixed.

(b) The height of any monopole utilized in a wireless telecommunication services facility shall not exceed 150 feet in height measured from the highest point of such facility to the finished grade elevation of the ground immediately adjacent to the structure.

(9)     Visual mitigation. The applicant/provider shall prepare an impact assessment of the proposed wireless telecommunication services facility based upon appropriate modeling, photography and other pertinent analytical techniques as required by the Village Board of Trustees. Landscaping and/or other screening and mitigation, including but not limited to architectural treatment, use of neutral or compatible coloring and materials, or alternative construction and transmission technologies shall be required to minimize the visual impact of such facility from public thoroughfares, important viewsheds and vantage points and surrounding properties to the extent practicable, as determined by the Village Board of Trustees. No signs shall be erected on any wireless telecommunication services facility except as may be required by the Village Board of Trustees for security or safety purposes.

(10)     Lighting. The wireless telecommunication services facility shall not be artificially lighted unless otherwise required by the Federal Aviation Administration or other federal, state or local authority.

(11)     Operational characteristics. Unless otherwise superseded by the FCC, the design and use of the proposed wireless telecommunication services facility, including its cumulative impact with other existing and approved facilities, shall be certified to conform with the maximum NIER exposure standards promulgated by the FCC, as amended. Said certification shall include a report by a licensed professional electrical engineer with expertise in radio communication facilities and/or health physicist acceptable to the Village Board of Trustees. The applicant shall provide an annual certification of conformance with the applicable emissions standards and the requirements and conditions of special permit and site plan approval. The Village Board of Trustees may hire a qualified professional of its choosing to review and confirm such initial and annual certification report, the cost of which shall be reimbursed by the applicant in accordance with the escrow account procedures established for the reimbursement of professional review fees for subdivision, site plan and special permit applications. Any violation of the emissions standards shall require immediate discontinuation and correction of the use responsible for the violation. Any such violation of these requirements of the Zoning Law or the conditions of special permit or site plan approval shall be deemed to be an offense punishable by fine and/or imprisonment in accordance with § 130-25 of this Zoning Law.

(12)     Noise. Noise-producing equipment shall be sited and/or insulated to prevent any detectable increase in noise above ambient levels as measured at the property line.

(13)     Interference. Any interference, disruption of signal or reception of radio, television or other wireless telecommunication service resulting from the construction or operation of a wireless telecommunication services facility shall be remedied as soon as practicable by and at the expense of the responsible wireless telecommunication services provider to the satisfaction of the Village Board of Trustees.

(14)     Utility service. Electrical and land-based telephone lines extended to serve the wireless telecommunication services facility sites shall be installed underground.

(15)     Safety provisions. A wireless telecommunication services facility shall be designed and erected so that, in the event of structural failure, it will fall within the required setback area and, to the maximum extent possible, away from adjacent development.

(16)     Security provisions. A security program shall be formulated and implemented for the site of a wireless telecommunication services facility. Such program may include physical features such as fencing, anti-climbing devices or elevating ladders on monopoles and/or monitoring either by staff or electronic devices to prevent unauthorized access and vandalism.

(17)     Structural inspection and report. A monopole over 50 feet in height shall be inspected by a professional engineer licensed by the State of New York at the expense of the service provider(s) each time a change is made to the equipment mounted or wiring installed on the monopole, every three years on the anniversary of the initial installation of the monopole or at any other time upon a determination by the Building Inspector that the monopole may have sustained structural damage, and a copy of the inspection report shall be submitted to the Building Inspector. [Amended 10-26-1998 by L.L. No. 4-1998]

(18)     Lease agreement. In the case of an application for approval of a wireless telecommunication services facility to be located on the lands owned by a party other than the applicant or the Village, a copy of the lease agreement with the property owner absent the financial terms of such agreement, together with any subsequent modifications thereof, shall be provided to the Village Board of Trustees and a copy shall be filed with the Village Clerk.

(19)     Removal. A wireless telecommunication services facility shall be dismantled and removed from the property on which it is located within 60 days when it has been inoperative or abandoned for a period of one year or more from the date on which it ceased operation. The applicant shall provide to the Village written notification including identification of the date the use of the facility was discontinued or abandoned by one or more of the service providers, acknowledgment of the requirement to remove the facility and identification of the plans for the future of the facility.

(20)     Application procedure.

(a) An application or approval of a wireless telecommunications facility shall be submitted on the relevant forms for special use permit and site plan approval. Site development plan approval, in accordance with Chapter 119 of this Code, shall be required. [Amended 10-26-1998 by L.L. No. 4-1998]

(b) The operator of the wireless telecommunication service shall submit a certificate of public utility and shall demonstrate to the satisfaction of the Village Board of Trustees that there is a compelling public need for such facility at the location(s) proposed by the applicant. Such demonstration shall include the preparation of existing and master effective service area plans which:

   [1]   Minimize the number of such facilities within the service area(s).

   [2]   Maximize collocation and shared use of existing public utility and wireless telecommunication services facilities.

   [3]   Identify all existing and proposed wireless telecommunication facilities which impact upon the service area covering the Village of Pomona, including but not limited to topographic maps of the Village with service coverage and service gap grids and all proposed and other functionally acceptable locations for such facility(ies).

   [4]   Analyze feasible alternatives to reasonably minimize the visual impacts and exposure levels.

(c) Any application for a wireless telecommunication services facility shall include a statement and appropriate documentation demonstrating that the Village's Existing Facilities Inventory has been reviewed and, to the extent relevant to provide wireless telecommunication services in the area which is the subject of such application, that all reasonable efforts have been made to collocate such facility on all sites identified in such Existing Facilities Inventory and all other existing sites with communication antennas within the service area.

(d)       As a condition of special permit approval, the applicant shall be required to provide a written agreement, in recordable form suitable for filing and prepared to the satisfaction of the Village Attorney, acknowledging that it shall be required to allow the collocation of other future wireless telecommunication service facilities unless otherwise unreasonably limited by technological, structural or other engineering considerations.

(e) Where collocation of a wireless telecommunication services facility is proposed for any such alternative site identified on the Existing Facilities Inventory or other existing site with communication antennas within the service area, the added wireless telecommunication services facility shall be permitted, as an amendment to the existing special use permit for such alternative site, by submission of an application for a building permit and

without the need for an application for an amended special permit or site plan approval, provided that such facility meets all of the otherwise applicable requirements of this subsection and no physical modification other than the attachment of the antennas and the installation of associated equipment to be located on the ground is required. An amended written narrative and certification report indicating conformance with all of the special permit standards and conditions of site development plan approval shall be provided in addition to all required information in support of the required building permit. An as-built drawing of the modified facilities shall be filed with the Building Department. The Building Inspector shall provide written notification to the Village Board of Trustees of such application for building permit.

(f) The applicant and all future owners of the premises and the wireless telecommunication services facility shall at all times keep on file in the office of the Village Clerk the name, address and telephone number of the owner and operator of such facility and of at least one individual who shall have authority to arrange for the maintenance of the premises and facility, and who shall be authorized to accept service of notices and legal process on behalf of the owner and operator(s) of the premises and facility and to bind the owner to any settlement, fine, judgment or other disposition (other than incarceration) which may result from any civil or criminal action or proceeding instituted by the Village against such owner and/or operator(s).

F.  Educational institutions, as defined in § 130-4 of this chapter, subject to special permit approval by the Village Board of Trustees and site plan approval by the Planning Board. In addition to all other requirements of this Code for special permit and site plan approval, the following standards and requirements shall apply: [Added 1-22-2001 by L.L. No. 1-2001; amended 9-27-2004 by L.L. No. 5-2004]

(1)  Minimum net lot area. [Amended 1-22-2007 by L.L. No. 1-2007]

(a) The minimum lot area for an educational institution shall be a net lot area of 10 acres.

(b) No portion of any land under water shall be counted toward the net lot area. Not more than 1/4 of any land which is defined as wetland by the U.S. Army Corps of Engineers, the New York State Department of Environmental Conservation and/or Chapter 126 of this Code or which is within a one-hundred-year-frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted toward the net lot area.

(c) No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward the net lot area.

(2)     Maximum development intensity.

(a) The total building coverage shall not exceed 10% of the net lot area.

(b) The total floor area of the building(s) shall not exceed 20% of the net lot area.

(c) The total coverage of impervious surfaces (which includes all buildings and structures, parking areas, driveways, sidewalks and other areas covered in concrete, asphalt or packed stone) shall not exceed 25% of the net lot area.

(3)     Required road frontage and access. An educational institution shall have a minimum of 250 feet of frontage on a public road and shall provide sufficient and safe access to such public road.

(4)     Required setbacks and screening. All buildings, recreation areas, parking areas and other property uses and structures shall be set back a minimum of 125 feet from each property line. Such setback shall include a buffer area of a minimum of 35 feet in width consisting of trees, shrubs, plants, fencing and/or other materials as determined by the Planning Board to be sufficient to screen the educational use from adjoining uses and streets.

(5)     Required parking.

(a) The following number of off-street parking spaces shall be provided: one space per employee plus one per each eight students in the 12th grade, or one per four seats of public assembly area, whichever is greater.

(b) The applicant shall be permitted to forego the initial improvement of required parking spaces if it is proven, to the satisfaction of the Planning Board, that such spaces are not needed based on the parking demands of the proposed use. In such case, the approved site plan shall show the location(s) on the site where such unimproved spaces could be provided and will be reserved for improvement and use in the future. If determined necessary by the Planning Board, the reserved parking spaces shall be constructed in accordance with the approved site plan within six months after written notice is provided by the Building Inspector to the property owner stating that the improvement of all or a portion of the reserved parking spaces is necessary. All unimproved parking spaces shall be used and maintained as landscaped grounds until used for parking.

(6)     Noise and exterior lighting.

(a) The sources of exterior lighting shall be so shielded that they are not visible beyond the boundaries of the lot on which they are located.

(b) No outdoor public address systems shall be permitted.

(7)     Signage. One monument sign, limited to eight square feet in area and set back 10 feet from lot lines, may be placed at the main entrance to the school.

(8)        Public water and sewer. The site shall be served by public water and sewer.

(9)        The Board of Trustees may impose such restrictions and regulations which would avoid or minimize traffic hazards, impairment of the use, enjoyment or value of property in the surrounding area, or generally protect the health, safety and welfare of the neighborhood and to otherwise implement the purpose and intent of this chapter.

(10)        The location and size of the use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection therewith shall not be hazardous.

(11)        The location and height of buildings, the location, nature and height of walls and fences and the nature and extent of landscaping on the site shall be such that the use will not hinder or discourage the development and use of adjacent land and buildings.

(12)        A dormitory building is permitted as an accessory use to an educational use provided it is located on the same lot as the educational use and there shall be not more than one dormitory building on the lot. A dormitory building shall not occupy more than 20% of the total square footage of all buildings on the lot. [Amended 1-22-2007 by L.L. No. 1-2007]

    (a) The minimum distance between a dormitory building and any other principal building or structure on the lot shall be 50 feet.

    (b) The minimum distance between a dormitory building and any interior driveway or other accessory structure shall be 25 feet.

    (c) The maximum height of a dormitory building shall be two stories or 25 feet, whichever is less.

    (d)        No dormitory room or dwelling unit shall be permitted in any cellar.

    (e) The dormitory building shall be equipped with sprinkler and fire alarm systems and comply with all requirements of the New York State Fire Prevention and Building Code.

G.    By the Board of Trustees: House of worship as defined in § 130-4 of this chapter, subject to special permit approval by the Village Board of Trustees and site plan approval by the Planning Board. In addition to all other requirements of this Code for special permit and site plan approval, the following standards and requirements shall apply: [Added 1-22-2007 by L.L. No. 2-2007]

(1)        The minimum lot area for a house of worship shall be a net lot area of three acres.

(a) No portion of any land under water shall be counted toward net lot area. Not more than 1/4 of any land which is defined as wetland by the U.S. Army Corps of Engineers, the New York State Department of Environmental Conservation and/or Chapter 126 of this Code or which is within a one-hundred-year-frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted toward net lot area.

(b) No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward net lot area.

(2)    The use shall have a minimum of 100 feet of frontage on and access to a public road.

(3)    The proposed structure meets all state requirements for a place of public assembly, including the Fire Prevention and Building Code.[87]

(4)    Adequate off-street parking on the same lot as the house of worship shall be provided. A minimum of one parking space for every 200 square feet of floor space shall be required. The Planning Board may waive not more than 25% of the required number of parking spaces if the Board determines that such spaces are not needed based on the parking demands of the proposed use. The burden shall be on the applicant to prove that such spaces are not needed.

(5)    All buildings, structures and other uses, including driveways and parking areas, shall be set back a minimum of 125 feet from all property lines. Such setback area shall include a buffer screening area of at least 35 feet which, in the judgment of the Planning Board, will be adequate to screen the use from adjoining properties. The buffer area may include trees, bushes, fences, walls, berms or any combination of the aforesaid, to be determined by the Planning Board.

(6)    The total building coverage shall not exceed 10% of the net lot area. The total coverage of impervious surfaces (which includes all buildings, structures, parking areas, driveways, sidewalks and other areas covered in concrete, asphalt or packed stone) shall not exceed 25% of the net lot area.

(7)    The sources of exterior lighting shall be so shielded that they are not visible beyond the boundaries of the lot on which they are located. No outdoor public address systems shall be permitted.

(8)    One monument sign, limited to eight square feet in area and set back a minimum of 10 feet from the lot line, may be permitted at the front entrance to the house of worship. Illumination, if provided, shall be indirect, and the source of such light shall not be visible from adjoining properties or roads.

---

[87]. Editor's Note: See Ch. 47, Building Construction.

(9)    The maximum height of buildings and structures shall be 35 feet measured from ground level in front of the building or structure. The height limitation shall not apply to church spires, belfries, cupolas, domes, monuments and similar appurtenances that are not used for human occupancy and do not extend more than 15 feet above the roof of the building or structure.

(10)    Such other requirements as may be imposed by the Board of Trustees to mitigate traffic, safety hazards, drainage, aesthetics or other adverse impacts on adjacent properties or on the neighborhood.

### § 130-11.  Accessory uses.

The following are permitted accessory uses in the R-40 District:

A.    Greenhouses, toolsheds, garages, carports and other recreational facilities commonly associated with residential use.

B.    Swimming pools and tennis courts, subject to the following regulations:

(1)    Such pool or court shall be completely enclosed by a fence or wall not less than five feet in height and so constructed as to deter climbing. All gates or doors opening through such enclosure shall be equipped with a self-closing and self-latching device for keeping the gate or door securely locked at all times when the pool or court is not in actual use.

(2)    If located within 50 feet of any lot line, such pool or court shall be screened from the view of the adjacent properties. Such screen shall be at least five feet high.

C.    Temporary storage of mobile trailers and boats, provided that they are not visible from the street and are properly screened from adjacent property.

D.    The keeping of no more than five household pets, exclusive of pets under three months of age, but excluding the commercial breeding or boarding of the same.

E.    Customary home occupations, including professional offices or studios of dentists, physicians, lawyers, artists, musicians and teachers, but not including those uses and occupations excluded from the definition of home occupation in § 130-4 of this chapter, provided that: [Amended 12-19-1994 by L.L. No. 4-1994; 1-27-1997 by L.L. No. 2-1997; 6-23-1997 by L.L. No. 7-1997]

(1)    No display of goods or signs is visible from the street, except as set forth in the regulations for signs.

(2)    Such occupation is incidental to the residential use of the premises and is carried on in the main building by a resident therein with no more than two nonresident assistants.

(3)    The primary residential purpose of the lot shall be maintained; to this end, home occupation use of the property (inclusive of permitted storage of all materials) shall be limited to not more than 1,000 square feet or 25% of the gross

floor area of the principal residential structure, whichever is less.

(4)   A home occupation shall comply with all other applicable federal, state, county and local regulations.

(5)   A home occupation shall not involve merchandising, trade or the exchanging of commodities whether or not for profit by sale or distribution to persons who come to the premises.

(6)   Studios of music or dance which are not used for the instruction of groups in excess of four pupils at one time, nor for the giving of concerts or recitals.

(7)   There shall be no exterior effect such as noise, traffic, odor, dust, smoke, gas fumes, radiation or electromagnetic interference.

(8)   There shall be provision for adequate off-street parking to accommodate the vehicles of persons connected with or visiting the permitted use, and there shall be no parking of such vehicles in public streets. Notwithstanding the provisions of § 124-12 of this Code, vehicles making deliveries of goods and picking up goods in connection with a permitted home occupation, having a gross empty weight in excess of 12,000 pounds, must obtain the permission of the Town Police Department having jurisdiction prior to such delivery and pickup; such vehicles shall not be parked along the highways, streets, lanes, thoroughfares and public roads within the Village of Pomona during the course of such deliveries and pickups, but shall be parked wholly upon the premises to which the delivery is being made and from which pickups are being made. The adequacy of off-street parking shall be determined by the Code Enforcement Officer.

F.   Signs, limited as follows: [Amended 1-27-1997 by L.L. No. 2-1997]

(1)   One nameplate or professional sign with an area not over 1 x 1 1/2 feet.

(2)   One temporary nonilluminated sign advertising the sale or rental of the premises on which such sign is situated, with an area of not over four square feet, provided that such sign is not located within 25 feet of any side lot line.

(3)   Temporary signs for garage sales, provided that such signs contain the address of the seller and date of the sale, are displayed only one week prior to the sale and are removed within one week after the sale.

G.   The conduct of noncommercial regularly scheduled gatherings of persons which are incidental to and secondary to the use of the premises as a single-family residence, provided such use complies with the requirements of the New York State Fire Prevention and Building Code[88] relating to places of assembly and occupancy limitations, if applicable. The Building Inspector and/or Fire Inspector, as the case may be, shall have authority to inspect the premises for compliance with all safety

---

[88].   Editor's Note: See Ch. 47, Building Construction.

requirements of the State Fire Prevention and Building Code relating to the use. The use shall be conducted within the single-family residence and shall not be permitted in a separate or accessory building on the lot. [Added 1-22-2007 by L.L. No. 2-2007][89]

ARTICLE V

Area and Bulk Regulations

§ 130-12.  R-40 District.

The following bulk regulations shall apply in the R-40 District:

A.    Minimum lot area: 40,000 square feet.

B.    Minimum lot frontage: 100 feet except that during subdivision approval the Planning Board may reduce lot frontage to not less than 50 feet for residential lots fronting on cul-de-sacs or on streets with a center-line radius of 100 feet or less. [Added 2-28-2005 by L.L. No. 1-2005[90]]

C.    Minimum lot width: 150 feet measured along a line drawn parallel to the front lot line at a distance equal to the minimum front yard requirement, except that lots of two acres or more having public sewer availability may be subdivided to produce a so-called "flag" lot with access to a public street by way of a twenty-five-foot wide strip owned by the rear lot owner in fee. A maximum of one flag lot per parent parcel may be created with not more than one newly created parcel being accessed by such twenty-five-foot wide strip of property. [Amended 9-11-1989 by L.L. No. 3-1989; 2-28-1994 by L.L. No. 1-1994; 5-20-2002 by L.L. No. 2-2002; 2-28-2005 by L.L. No. 1-2005]

D.    Minimum lot depth: 140 feet.

E.    Minimum front yard: 50 feet, measured from the edge of the right-of-way. If located on a right-of-way of less than 50 feet, all buildings shall be set back a distance, measured from the center line of the existing roadway, of at least the required front yard plus 25 feet.

F.    Minimum rear yard: 30 feet.

G.    Minimum side yard: 25 feet. On a corner lot, each yard which abuts a street shall be deemed a front yard and shall meet front yard requirements. Thus, a corner lot shall have two front yards and two side yards.

H.    Maximum height of buildings and structures shall be 35 feet measured from ground level in front of the building or structure.

I.    Maximum lot coverage. In order to ensure the maximum coverage of a lot with

---

[89].  Editor's Note: Former Subsection G, Signs in public right-of-way prohibited, added 10-27-1997 by L.L. No. 13-1997, as amended, was repealed 11-22-2004 by L.L. No. 8-2004. See now Ch. 112, Signs on Public Property.

[90].  Editor's Note: This local law also redesignated former Subsections B through I as C through J, respectively.

vegetation, the prevention of over development of lots, to minimize adverse visual impacts and to minimize negative impacts of stormwater runoff, there is hereby established a maximum lot coverage of 15%. In calculating maximum lot coverage, there shall be included, in addition to the proposed building, the lot coverage of impervious surfaces and accessory structures such as swimming pools. [Amended 1-27-1997 by L.L. No. 3-1997]

J.　　Minimum number of off-street parking spaces: two.

ARTICLE VI

**General Regulations**

**§ 130-13. Application of regulations.**

A.　　Conformity required. No building shall be erected, constructed, moved, altered, rebuilt or enlarged, nor shall any land, water or building be used, designed or arranged to be used, for any purpose except in conformity with this chapter.

B.　　Minimum requirements. In interpreting and applying this chapter, the requirements contained herein are declared to be the minimum requirements necessary for the protection and promotion of the public health, safety, morals, comfort, convenience and general welfare.

**§ 130-14. Relationship to other regulations.**

A.　　Other applicable codes, standards and regulations. There are many other applicable codes, standards and regulations of the Village of Pomona in addition to this chapter. These include the Subdivision of Land Regulations and the Uniform Fire Prevention and Building Code.[91]

B.　　Conflicting standards. This chapter shall not be deemed to affect in any manner whatsoever any easements, covenants or other agreements between parties; provided, however, that where this chapter imposes a greater or lesser restriction upon the use of buildings or land or upon the erection, construction, establishment, movement, alteration or enlargement of buildings than is imposed by other local laws, rules, regulations, licenses, certificates or other authorizations or by easements, covenants or agreements, the more restrictive requirements shall prevail.

**§ 130-15. Nonconforming uses, buildings or structures.**

A.　　Continuing existing uses, buildings and structures.

　　(1)　　Except as otherwise provided herein, the lawfully permitted use of lands or buildings and the lawfully permitted existence of buildings or structures at the time of the adoption of this chapter may be continued although such use, building or structure does not conform to the standards specified in this chapter for the district in which such lands, buildings or structures are located. Similarly, whenever a zoning classification or the restrictions affecting property within a

---

[91]　. Editor's Note: See Ch. 118, Subdivision of Land; Ch. 47, Building Construction; and Ch. 74, Fire Prevention.

district shall be changed hereafter so as to render nonconforming a use, building or structure then presently or theretofore lawfully existing, such use, building or structure may nevertheless continue, subject to the conditions set forth below. Said uses shall be deemed nonconforming uses and said buildings and structures shall be deemed dimensionally nonconforming.

(2)  Any use in existence as of the effective date of this chapter which is by this chapter made a special permit use in the district in which it is located shall be presumed to have a special permit to the extent such use is legally conforming as of the date immediately prior to the effective date of this chapter.

B.  Nonconforming use of land, buildings or structures.

(1)  The nonconforming use of land may be continued; provided, however, that no such nonconforming use shall be physically enlarged or intensified, nor shall it be extended to occupy a greater area of land than that occupied by such use at the time of the adoption of this chapter, unless specifically allowed by other provisions in this chapter, nor shall any such nonconforming use be moved in whole or in part to any other portion of the lot or parcel of land occupied by such nonconforming use at the time of the adoption of this chapter.

(2)  A building or structure, the use of which does not conform to the use regulations for the district in which it is situated, shall not be enlarged, extended or altered structurally unless the use therein is changed to a conforming use or to conform to an order of the Code Enforcement Officer to either correct an unsafe condition or conform to the requirements of applicable laws or ordinances.

(3)  No nonconforming use of a building or structure shall be enlarged or extended, except that any such nonconforming use may be extended throughout any parts of the building or structure which were obviously or manifestly arranged or designed only for such use at the time of the adoption or amendment of this chapter.

(4)  No nonconforming use shall be changed to another nonconforming use, except as provided in Subsection E below.

(5)  If a nonconforming use ceases for any reason for a total of six months during any twelve-month period or is changed to a conforming use, any future use of the land, building or structure shall be in conformity with the provisions of this chapter. Substantial cessation of activities consistent with or required for the operation of such nonconforming use, or substantial vacancy of the building or structure in which the nonconforming use was conducted, together with substantial cessation of activities consistent with or required for the operation of such nonconforming use, shall be deemed to constitute a discontinuance thereof within the meaning of this chapter irrespective of whether an intention to abandon the nonconforming use may exist. On application, however, the Board of Appeals may extend the period upon a finding that it is not reasonable in its application to the particular premises, taking into consideration the

characteristics of the use, the investment which has been made in it, the circumstances of the discontinuance and the suitability of the structure for a permitted or special permit use.

(6)    If any building or structure in which any nonconforming use is conducted or maintained is hereafter removed, the subsequent use of the land on which such building or structure was located and the subsequent use of any building or structure thereon shall be in conformity with the standards specified by this chapter for the district in which such land is located.

C.    Dimensional nonconformity. A building or structure that is conforming in use but does not conform to the lot dimension, yard dimension, height, building coverage, off-street parking, loading or similar dimensional requirements of this chapter shall be deemed to be dimensionally nonconforming. No permit shall be issued that will result in the increase of any such dimensional nonconformity, but any building or structure or portion thereof may be altered to maintain or decrease its dimensional nonconformity.

D.    Reconstruction.

(1)    Should a building or structure, the use of which or the use of a portion of which is nonconforming or which is dimensionally nonconforming, be destroyed or damaged by any means to an extent of more than 75% of the replacement cost of the building or structure as determined by the Code Enforcement Officer at the time of the reconstruction, it shall not thereafter be reconstructed or used except in conformity with the provisions of this chapter.

(2)    Should a building or structure, the use of which or the use of a portion of which is nonconforming or which is dimensionally nonconforming, be destroyed or damaged by any means to an extent of 75% or less of the replacement cost of the building or structure as determined by the Code Enforcement Officer at the time of the reconstruction, it may be reconstructed and any accompanying nonconforming use continued, provided that the reconstruction is commenced within one year of the date of such damage and completed within two years of said date, and further provided that it shall be reconstructed in accordance with a plan approved by the Planning Board so as to result, where possible, in greater conformity with this chapter.

E.    Change to other nonconforming use. On application, any nonconforming use of land, buildings or structures may be changed to another nonconforming use upon approval by the Board of Appeals based upon a finding that the proposed use is more appropriate to the district than the existing nonconforming use. In permitting such change, the Board of Appeals may impose whatever conditions and safeguards it may deem necessary or appropriate to further the purposes of this chapter.

F.    Improvement of nonconforming uses. In order that nonconforming uses may gradually be brought into greater conformity with this chapter and the adverse external effects of such nonconforming uses may be reduced, the owner of the land, building or structure so used may be permitted to make limited changes to such

building, structure or use in conjunction with a site plan whereby, through landscaped screening and buffer areas, control of noise, smoke, odors, lighting, architectural changes, location and layout of parking areas and access drives or by any other appropriate means, these purposes may be achieved. Such plan shall be presented to the Board of Appeals, which may then grant approval or approval with modifications, provided that said agency finds that the purposes of this section shall be met.

§ 130-16.  General lot, yard and use regulations.

A.    Lot for every building. Every building hereafter erected shall be located on a lot and there shall be no more than one main building and its accessory buildings on one lot, except for nonresidential buildings in districts where such uses are permitted.

B.    Subdivision of a lot. Where a lot is formed hereafter from part of a lot already occupied by a building, such separation shall be effected in such manner as not to impair conformity with any of the requirements of this chapter with respect to the existing building and all yards and other required spaces in connection therewith, and no permit shall be issued for the erection of a building on the new lot thus created unless it complies with all the provisions of this chapter.

C.    Irregularly shaped lots. Where a question exists as to the proper application of any of the requirements of this chapter to a particular lot because of its peculiar or irregular shape, the Board of Appeals shall determine how the requirements of this chapter apply as provided in § 130-28E of this chapter.

D.    Obstructions to vision at intersections in residential districts. At the intersection of two or more streets in a residential district, no fence, wall, structure or shrubbery or other obstruction more than two feet in height above the center-line grade of the streets shall be erected or placed on any part of a yard herein established that is included within the triangular area formed by the nearest edges of the street line and a straight line between two points, each a minimum of 25 feet back from the intersection of the nearest edges of the street line prolonged.

E.    New buildings on lots smaller than minimum required area. A permit may be issued for the erection of a building for a permitted use on a lot for which a valid conveyance has been recorded prior to May 28, 1968, notwithstanding that the area or dimensions of such lot are less than that required for the district in which such lot is located, provided that such lot meets the requirements of § 7-708, Subdivision 2, of the Village Law.

F.    Yard for every building. No yard or other open space provided about any building for the purpose of complying with the provisions of this chapter shall be included as any part of the yard or open space for any other building. No yard or any other open space on one lot shall be considered as a yard or open space for a building on any other lot.

G.    Use of yards. No accessory building or structure shall be permitted within any minimum required yard except as regulated by Subsections J and O. No parking shall

be permitted within any yard except as provided in Article VII.

H.    No reduction of required yards. No lot shall be so reduced in area as to make any yard smaller than the minimum required under this chapter.

I.    Yards on corner lots. On a corner lot, each lot line which abuts a street shall be deemed to be a front lot line, and the required yard along both lot frontages shall be a required front yard. Where a corner lot has frontage on three streets, the remaining yard shall be a side yard.

J.    Structural projections permitted into required yards and courts.

(1)    Limited walls and fences may be allowed in required yards, subject to the requirements of Subsection L.

(2)    All required yards shall be unobstructed except as provided in this subsection. (Since required yards shall be open to the sky, an obstruction shall include the projection of a structure into such spaces at any level above ground.) However, an arbor, open trellis, flagpole, unroofed steps, unroofed terrace or deck at not to exceed one foot above ground level shall be permitted in any required yard up to within 10 feet of a property line.

(3)    An awning or movable canopy may project not more than 10 feet into any required yard.

(4)    Cornices or eaves may project not more than 18 inches into a required yard.

(5)    Windowsills or belt courses may project not more than six inches into a required yard.

(6)    Driveways shall be permitted in any yard, provided that they comply with the maximum impervious surface requirements of this chapter.

K.    Exceptions to height limitations. The height limitations of this chapter shall not apply to:

(1)    Church spires, belfries, cupolas, domes, monuments, observation towers, chimneys, smokestacks, derricks, flagpoles, radio towers, masts and aerials where not used for human occupancy and where such structures do not extend more than 15 feet above the roof.

(2)    Rooftop bulkheads, elevator penthouses, water towers, water tanks, monitors, fire towers, hose towers, cooling towers or solar energy collectors, provided that such features shall be erected only to the height necessary to accomplish the purpose they are intended to serve, the total area covered by such features shall not exceed 20% of the horizontal area of the roof on which they are located, such structures do not extend more than 15 feet above the roof and, where the lot on which they are located is in or adjacent to a residence district, such features shall be set back from the edge of the roof at least one foot

for each one foot by which such features exceed the maximum height otherwise specified for the district in which they are located.

L.   Fences and walls. Fences and walls, including retaining walls, are permitted within required yards, provided that: [Amended 11-22-2004 by L.L. No. 7-2004]

(1)   Except as provided in Subsection Q below, such fences or walls shall not exceed four feet in height if located in a front yard and six feet in height in any other yard, except that such fences or walls shall not exceed six feet in height if located in a front yard abutting a state road. The Code Enforcement Officer may, where necessary for safety, require the addition to a retaining wall of a motor vehicle bumper guard or fence.

(2)   The fence or wall meets the requirements of Subsection D of this section.

(3)   All fences and walls must be inside all lot lines.

M.   Cemeteries. Cemeteries are not permitted in any district.

N.   Solar energy collectors. [Amended 2-28-1994 by L.L. No. 1-1994]

(1)   Solar energy collectors are permitted as a part of and may be attached to any building.

(2)   Installation of solar energy collectors shall require the issuance of a building permit and the approval of the Planning Board.

O.   Accessory buildings and structures. Accessory buildings and structures shall be permitted in all districts, subject to the following:

(1)   Not more than three accessory buildings and structures shall be permitted on a lot in a residential district, except as approved in accordance with § 130-10D. [Amended 1-28-1991 by L.L. No. 1-1991]

(2)   The gross floor area of all principal and accessory buildings, regardless of size, located on a lot shall comply with the maximum lot coverage requirements of this chapter.

(3)   The following shall be considered accessory buildings and structures for the purposes of this subsection: tennis courts, paddle tennis courts, swimming pools, garages for passenger vehicles or one vehicle with commercial registration under 5,000 pounds gross vehicle weight, greenhouses, playhouses, garden houses, toolhouses, stables, barns, solar energy collectors.

(4)   Accessory buildings and structures not greater than 100 square feet in floor area and not more than 10 feet in height measured to the highest point of the building or structure may be located not closer to a side or rear yard than 1/3 of the side yard and rear yard dimensions specified in this chapter. Accessory buildings and structures shall comply with the front yard setbacks specified herein.