**EXHIBIT O (PART 2)**

    (5)      Individual accessory buildings and structures greater than 100 square feet in floor area or greater than 10 feet in height shall meet the following requirements: [Amended 4-24-2000 by L.L. No. 2-2000]

        (a) Accessory buildings and structures permitted under this subsection shall comply with the front, rear and side yard and building coverage requirements specified herein and shall be limited in height to a maximum of 20 feet measured to the highest point of the building or structure.

        (b) The construction of an accessory building or structure over 2,500 square feet in floor area or greater than 20 feet in height shall require the issuance of a special permit by the Zoning Board of Appeals.

P.    Garage sales. Garage sales may be conducted from a property in a residential district, provided that:

    (1)      Signs advertising the garage sale shall comply with the requirements of § 130-11G(3).

    (2)      The number of garage sales shall be limited to two per year, each to be limited to a maximum duration of three days.

Q.    Animals.[92]

    (1)      General regulations. The following regulations apply to the maintenance of animals in all districts:

        (a) The maintenance, breeding, raising, purchase and/or sale of all animals and their products, including but not limited to milk and eggs, is considered an accessory use and is permitted, subject to the requirements listed below.

        (b) No venomous snakes or wild animals shall be permitted in residential districts.

        (c) All animals living primarily within the residence and not regulated below are excluded from these regulations.

        (d)      All feed shall be housed in rodentproof containers.

        (e) All animals shall be suitably contained to prevent damage to persons and property.

        (f) Regulations for types of animals not regulated in Subsection Q(2) below and not excluded in Subsection Q(1)(c) above shall be determined by the Planning Board.

    (2)      Regulations for specific animals.

        (a) Fowl (such as chickens and ducks). The maintenance of four or fewer fowl

---

[92]. Editor's Note: See also Ch. 40, Animals.

is permitted as an accessory use in the R-40 District. No unneutered roosters shall be permitted. All fowl shall be kept in an enclosed area at least 75 feet from any lot line.

(b) Horses, cattle, goats and sheep. The maintenance of these animals is permitted as an accessory use, subject to the conditions listed below:

[1]   Two acres of lot area are required for the first animal. One acre of lot area shall be required for each animal above one. Abutting lots with common beneficial ownership shall be considered a single lot.

[2]   All animals, barns and manure storage areas shall be contained by a fence located at least 50 feet from each property line and 150 feet from any existing residence other than that on the lot. All fences shall be at least five feet in height and shall be of one of the following types, and fencing shall be determined by the Code Enforcement Officer to be strong enough to contain the fenced animals:

[a]   Chain link.

[b]   Post and rail, with a minimum of two horizontal bars.

[c]   Barbed wire, with a minimum of two horizontal strands.

[3]   Commercial livery stables are not permitted.

(c) Dogs and cats.

[1]   Dogs or cats less than one year old shall be exempt from these regulations.

[2]   The maintenance of five or less dogs or cats is permitted as an accessory use in any district.

R.   Storage of vehicles or boats. In all residential districts, the storage of not more than one unoccupied recreational vehicle or boat or one unregistered vehicle shall be permitted so long as such vehicle or boat is stored only within a side or rear yard. No stored vehicle or boat shall exceed 35 feet in length. [Amended 1-22-2001 by Ord. No. 2-2001]

S.   Air-pressure buildings. No air-pressure buildings are permitted in any district.

T.   Municipal uses. Notwithstanding any other provision to the contrary, structures owned or occupied by the Village of Pomona in the performance of its municipal functions shall be exempt from the provisions of this chapter.

U.   Swimming pools. All swimming pools, as defined in this chapter, shall be completely enclosed by a fence or wall with a minimum height of five feet. All such fences must contain a maximum vertical interspace of two inches and must have self-closing and self-latching gates, with latches placed at least four feet above the ground or otherwise made inaccessible to small children. The fencing shall be

determined by the Code Enforcement Officer to be strong enough to ensure pool security.

**§ 130-17. Performance standards.**

A.  Conformance required. No special permit use or nonresidential use shall hereafter be established, altered, moved or expanded unless it complies with the performance standards set forth in this section. Continued conformance with such standards shall be a requirement for the continuance of any certificate of occupancy. Central utility systems serving three or more dwelling units, including but not limited to systems providing heat, water, air conditioning, sewage treatment, garbage collection and electrical power, shall be deemed to be nonresidential uses for the purposes of this section.

B.  Purposes. Consistent with the general purposes of this chapter, performance standards shall set specific controls on potentially objectionable external aspects of nonresidential uses so as to:

   (1)  Reduce to a reasonable minimum the dissemination of smoke, gas, dust, odor or other atmospheric pollutant outside the building in which the use is conducted.

   (2)  Control noise perceptible beyond the boundaries of the site of the use.

   (3)  Prevent the discharge of untreated or insufficiently treated wastes into any watercourse.

   (4)  Prevent the dissemination of vibration, heat or interference beyond the immediate site on which the use is located.

   (5)  Prevent physical hazard by reason of fire, explosion, radiation or any similar cause.

   (6)  Regulate and control the generation and flow of vehicular traffic so as to prevent hazardous conditions, traffic congestion and excessive noise in the streets.

C.  Standards for noise. No land use shall be permitted which will produce a volume of noise which would violate the provisions of any law regulating noise in the Village of Pomona.[93]

D.  Standards for vibration.

   (1)  Method of measurement. For the purpose of measuring vibration, a two-component measuring system approved by the Planning Board shall be employed.

   (2)  Maximum permitted steady-state and impact vibration displacement. No

---

[93]. Editor's Note: See Ch. 96, Noise.

activity shall cause or create a steady-state or impact vibration on any lot line with a vibration displacement by frequency bands in excess of that indicated in the following table:

**Vibration Displacement**

**(inches)**

**Frequency**

**(cycles per second)**

**Steady-State**

**Impact**

Under 10

.0005

.0010

10 – 19

.0004

.0008

20 - 29

.0003

.0006

30 - 39

.0002

.0004

40 or more

.0001

.0002

E.      Standards for smoke, dust and other atmospheric pollutants.

(1)      General control. The emission of smoke and other particulate matter shall not be permitted, regardless of quantity, if it will be in any way detrimental to the public health, safety, welfare or comfort or a source of damage to property.

(2)      Method of measurement of smoke. For the purpose of grading the density of smoke, the Ringelmann Smoke Chart shall be used to determine the total smoke units emitted. A reading shall be taken every minute for an hour, or if less than an hour, until the total smoke units emitted exceed the number allowed by these regulations. Each reading shall be multiplied by the number of minutes during which it was observed and the products added.

(3)      Maximum permitted emission of smoke. There shall be no measurable emission of smoke, gas or other atmospheric pollutant. The emission of one smoke unit per hour and smoke with discernible density of No. 1 on the Ringelmann Smoke Chart shall be prohibited.

(4)      Maximum permitted emission of dust.

(a) The emission of dust related to combustion for indirect heating from any source shall not exceed 0.30 pound of dust per thousand pounds of flue gas adjusted to 50% excess air for combustion.

(b) There shall be no measurable emission of dust or other particulate matter not related to combustion for indirect heating.

(c) All properties shall be suitably improved and maintained with appropriate landscaping and paving or other type of improvement so that there will be no measurable windblown dust or other similar types of air pollution created.

F.    Standards for odorous matter. No land use shall be permitted which emits any discernible odor outside the building in which the use is conducted.

G.    Standards for toxic or noxious matter. No use shall be permitted which will cause any dissemination whatsoever of toxic or noxious matter outside the building in which the use is conducted.

H.    Standards for radiation and electromagnetic interference.

(1)      Radiation. The handling, storage or disposal of radioactive materials or waste by-products, whether or not licensed by the Atomic Energy Commission, shall be conducted only in accordance with the standards established in Title 10, Chapter 1, Part 20, Code of Federal Regulations, Standards for Protection Against Radiation, as amended, and in accordance with any other applicable laws or regulations.

(2)      Electromagnetic interference. No operation shall be permitted which produces any perceptible electromagnetic interference with normal radio or television reception in any area within or without the Village.

I.    Standards for fire, explosive hazard and heat.

(1)      Fire and explosive hazard. No storage or manufacture of explosives, or solid materials or solid products which burn actively or which have a low-ignition temperature, a high rate of burning or create great heat under ordinary temperature conditions shall be permitted.

(2)      Heat. There shall be no emission of heat which would cause a temperature increase in excess of 1° F. along any adjoining lot line, whether such change be in the air, in the ground or in any watercourse or water body.

J.      Standards for liquid or solid wastes. The discharge of any or all wastes shall be permitted only if in complete accordance with all standards, laws and regulations of the Rockland County Health Department, New York State Department of Environmental Conservation or any other regulatory agency having jurisdiction. Facilities for the storage of solid waste shall be so located and designed as to be screened from the street or from any adjoining property and as to discourage the breeding of rodents or insects.

K.      Standards for vehicular traffic. No home occupation or special permit use shall be permitted where it is determined by the Planning Board that the type and number of vehicle trips it is estimated to generate would be expected to produce unusual traffic hazards or congestion or cause or induce emissions which may be expected to interfere with the maintenance of air quality standards established by the United States Environmental Protection Administration, the New York State Department of Environmental Conservation or other regulatory agency having jurisdiction due to the design or capacity of the highway system, the relationship of such proposed use to surrounding or nearby uses or other factors affecting air pollution arising from mobile source activity.

L.      Procedure.

(1)      In the case of any application for the establishment of a use subject to the performance standards, the Planning Board may require the applicant, at his own expense, to provide such evidence as it deems necessary to determine whether the proposed use will conform to said standards.

(2)      If the Planning Board deems it necessary, expert advice may be obtained, with the cost of such advice paid for in advance by the applicant as a condition of further consideration of his application. The report of any expert consultants shall be promptly furnished to the applicant.

(3)      During the course of subdivision or special permit review, the Planning Board will determine if the applicant's proposal will conform to the performance standards.

§ 130-18.  Construction regulations.

A.      New construction is permitted only on a lot which fronts on a publicly maintained road or on a road shown on a map filed at the Rockland County Clerk's office.

B.      All buildings must conform to and be erected in compliance with the New York State Uniform Fire Prevention and Building Code.

C.      Any alteration or improvement of a site, including the grading of the land and the location of facilities, shall not adversely affect adjacent properties.

D.      No person, firm or corporation shall strip, excavate or otherwise remove topsoil for sale or for any use other than on the premises from which the same shall be taken, except in connection with the construction or alteration of a building on such premises or the grading incidental thereto, except by approval of the Zoning Board

of Appeals. At least six inches of topsoil must exist or be placed on land cleared for construction.

E.   No cut trees, timber, stumps, debris, rocks, stones, junk, rubbish or other waste materials of any kind shall be buried in any land or left deposited on any lot or street. If a building permit has been previously issued for premises, no certificate of occupancy shall be issued unless the conditions described above have been remedied nor shall any building permit or certificate of occupancy in the same subdivision be issued unless such conditions have been remedied on the lot or lots in question. [Amended 4-22-1996 by L.L. No. 2-1996]

F.   Rocks unearthed during construction shall be removed from the lot unless a specific request from the home buyer, in writing, is presented to the Code Enforcement Officer.

G.   No live tree with a circumference of 25 inches or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side shall be removed from any land except where necessary for construction thereon and with the approval of the Code Enforcement Officer. Trees to be preserved as hereinabove set forth shall be fenced outside their drip lines and shall have no grade change or earthwork performed within said drip lines without written approval of the Code Enforcement Officer. Removal of each tree shall be construed as a separate offense. This section shall not apply to a residential lot improved by a residential structure which lot may not, under the bulk provisions of this Zoning Law, be further subdivided. [Amended 10-24-1988 by L.L. No. 6-1988; 11-25-2003 by L.L. No. 9-2003; 3-28-2005 by L.L. No. 2-2005]

H.   No person shall conduct or cause to be conducted any land operations to clear, fill or grade any property without securing a building permit (hereinafter referred to in this section as "permit") from the Building Inspector. [Added 6-23-1997 by L.L. No. 8-1997; 11-13-2000 by L.L. No. 9-2000]

(1)   The following information or exhibits are required in order to secure a permit:

(a) Engineering drawings showing the tax lot upon which the activity will be conducted.

(b) The names and addresses and the section, block and lot numbers of all contiguous property owners, and the names and addresses and section, block and lot numbers of all property owners located within 500 feet of the proposed site.

(c) A plan showing all existing and proposed contour lines, amounts of fill to be placed or displaced, location of trees with a circumference of 25 inches or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side and road access to the site. [Amended 11-25-2003 by L.L. No. 9-2003]

(d)   An erosion control plan and a plan for stabilizing the fill.

(e) Preliminary copies of any contracts to perform such clearing, filling and grading, which contract shall state that it is subject to this chapter of the Code, which shall be attached to and become a part of such contract.

(f) Documentation regarding permit status with the New York State Department of Environmental Conservation prior to the issuance of a permit. Any New York State Department of Environmental Conservation permit required must be in effect prior to the Village issuing a permit.

(g) Proof of liability insurance adequate to cover the intended work pursuant to the terms of the permit. The Village shall be named as an additional insured on the applicant's policy. The applicant shall by a separate instrument agree to indemnify and hold harmless the Village from any claims arising out of the intended activity.

(h) Completion date and any other information which the Building Inspector deems reasonable in reviewing the application.

(2)     Operations shall be conducted only during daylight hours, but not earlier than 7:00 a.m.

(3)     The Building Inspector may refer such application to the Village Engineer and other Village agencies for their review and recommendation.

(4)     Clearing, filling and grading shall be done in such manner as not to result in an increase of surface water runoff onto any other properties and shall not result in any conditions which increase erosion or result in any unstable conditions upon the site or adjacent properties or wetlands.

(5)     The Building Inspector may contract appropriate surveillance of the site on a twenty-four-hour, seven-days-per-week basis until the activity is completed. The applicant shall be required, as a condition of the permit, to sign the permit authorizing the Village, its employees or agents to enter onto the applicant's property and to conduct the appropriate surveillance. Any and all costs for this service will be estimated by the Building Inspector prior to the issuance of a permit, and the applicant will then be required to post a certified check to cover such costs.

(6)     The Building Inspector may impose any other reasonable conditions on the permit, such as screening, access controls, dust controls, site security, etc., which the Building Inspector believes are necessary in order to adequately maintain the site.

(7)     A permit to clear, fill or grade property shall not be required for the planting of landscaping, grading low areas with a total of 15 or fewer cubic yards of fill material, correcting hazards representing an imminent threat to life or property, removal of dead trees, harvesting of firewood not to exceed four live trees per year 25 inches in circumference or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side, or for land

development pursuant to but not prior to the issuance of a building permit, an approved and filed subdivision plat or an approved site plan. A protected tree, as defined in this chapter, shall be preserved unless such tree endangers the health or safety of any person or interferes with the use or construction of any structure on the lot or is a dead tree as determined by a landscape architect or similar professional. An application for a building permit to remove a protected tree shall include a revegetation or replacement plan for replacement of the tree to be removed, Replacement may be proposed in another location on the same lot and is not required to be of the same species or size of the tree to be removed. [Amended 11-25-2003 by L.L. No. 9-2003; 3-28-2005 by L.L. No. 2-2005]

(8)    The applicant shall be required to post a letter of credit issued by a bank having a branch in Rockland County, New York, money or other security acceptable to the Village, in in amount to be determined by the Building Inspector and in a form satisfactory to the Village Attorney, to be posted with the Village Clerk to guarantee the satisfactory restoration of any state, county or Village roads or other public property which might be damaged as a result of the activities of the applicant in clearing, filling and grading pursuant to the terms of this section. In the event that the applicant fails or refuses to make the necessary repairs, the Village Board shall forfeit the letter of credit or money security deposit in order to underwrite the expense of making such repairs.

(9)    All expenses incurred by the Village in connection with making the necessary repair, including but not limited to any administrative and legal costs relating thereto, either not covered by the performance security or in excess of the performance security, shall be assessed against the land on which said clearing, filling and grading has occurred and shall be levied and collected in the same manner as provided in Article 5 of the Village Law for the levy and collection of real property taxes.

I.    No building permit shall be issued for construction of any residence until a plan for installation of street trees in size, species and number as required by Village specifications has been submitted and approved by the Building Inspector or Village Engineer. A cash bond or letter of credit in an amount to be determined by the cost of the number of trees to be installed shall be posted with the Village prior to issuance of the building permit. Said trees shall be installed within the right-of-way not less than six nor more than 10 feet back from the pavement prior to issuance of a certificate of occupancy for said construction. [Added 2-23-2004 by L.L. No. 1-2004; amended 8-14-2006 by L.L. No. 3-2006]

ARTICLE VII

Parking Requirements

§ 130-19.  Sufficient spaces required.

All structures and uses shall be provided with a sufficient number of off-street parking and loading spaces to meet the needs of employees, residents, visitors, clients, patrons and other persons at such structures or uses, but not less than the minimum requirements of this chapter. No certificate of occupancy shall be issued for any structure or use, whether

for a new structure or for a change of use of an existing structure, until such off-street parking and loading spaces have been established in accordance with the requirements of this chapter.

## § 130-20.  Location.

A.    Required off-street parking spaces shall be provided on the same lot with the structure or use they serve and may be located within a building or in a side or a rear yard, except that upon a determination made by the building inspector and the Village Engineer pursuant to § 118-25B of the Code that parking spaces are required in the front yard of such lot. [Amended 10-27-1997 by L.L. No. 12-1997]

B.    Not more than one vehicle having or eligible for commercial registration under 5,000 pounds gross vehicle weight may be parked on a lot. No vehicle having or eligible for commercial registration over 5,000 pounds gross vehicle weight may be parked overnight on any public street in the Village of Pomona or kept on a lot therein. Campers, motor homes and trailers may not be parked overnight on any street in the Village of Pomona.[94] [Amended 9-11-1989 by L.L. No. 4-1989]

## § 130-21.  Driveways.

For reasons of traffic and pedestrian safety, both on- and off-street, as well as to provide for possible future road widening or other improvements, all new driveways and sidewalk crossings entering onto any street shall comply with all requirements of these regulations and shall be subject to permit approval by the Planning Board, Rockland County Highway Department or New York State Department of Transportation for access onto Village, county or state roads, respectively. No more than two driveway accesses shall be allowed for any residence.

A.    Driveway width. Unobstructed access to and from a street shall be provided for all parking spaces. Such access shall consist of one or two twelve-foot-wide lanes.

B.    Driveway gradients. The maximum gradient for new access driveways to single-family dwellings is 12 1/2%, except that the Planning Board may approve a driveway gradient in excess of 12 1/2% but not more than 15%, provided that at least two parking spaces are provided on the lot immediately adjacent to the public right-of-way. At no time shall the 10 feet of driveway from the edge of pavement into the property exceed a gradient of 4%. This 10 feet of driveway from the edge of pavement into the property shall not be included in the driveway gradient calculation. [Amended 3-22-2004 by L.L. No. 2-2004]

## ARTICLE VIII

### Administration and Enforcement

## § 130-22.  Enforcing official; building permits and certificates of occupancy.

A.    General. No board, agency, officer or employee of the Village shall issue, grant or

---

[94]. Editor's Note: See also Ch. 124, Vehicles and Traffic.

approve any permit, license, certificate or other authorization for any construction or alteration of any building or structure or for any use of land, building or structure that would not be in full compliance with the provisions of this chapter, except as permitted under Article IX of this chapter, Any permit, license, certificate or other authorization issued, granted or approved in violation of the provisions of this chapter shall be null and void and of no effect without the necessity of any proceedings for revocation or nullification thereof.

B.    Code Enforcement Officer.

    (1)    This chapter shall be enforced by the Code Enforcement Officer and one or more Assistant Code Enforcement Officers as deemed necessary, referred to herein individually and collectively as the "Code Enforcement Officer," as appointed by the Board of Trustees, or it may be enforced by the direct action of the Board of Trustees.

    (2)    The duly appointed Building Inspector for the Village of Pomona is hereby designated as a Code Enforcement Officer. [Amended 9-25-2000 by L.L. No. 7-2000]

    (3)    It shall be the duty of the Code Enforcement Officer and he is hereby empowered to:

        (a) Inspect any building, structure or land to determine whether any violations of this chapter have been committed or exist, whether or not such building, structure or land is occupied and whether or not a certificate of occupancy has been issued.

        (b) Keep the Board of Trustees advised of all matters pertaining to the enforcement of this chapter and make and keep all records necessary and appropriate to the office, including records of written complaints of violation of this chapter and action taken on same.

    (4)    The Code Enforcement Officer shall issue and post notices of violations, stop orders and revocations of certificates of occupancy and shall order the remedying of any condition or omission that is found to be in violation of this chapter. The Code Enforcement Officer shall also have the power, right and authority to issue an appearance ticket, as the same is defined in Article 150 of the Criminal Procedure Law of the State of New York, for the violation of any provision of this chapter. In addition, by resolution, the Board of Trustees may direct the Code Enforcement Officer to revoke such certificates of occupancy, issue such stop orders, make such inspection and reports, initiate and take such court proceedings and perform all other actions as required by the Board of Trustees as may be necessary to enforce this chapter or to invoke penalties for its violation.

C.    Building permits and certificates of occupancy granted only in conformance with regulations.

    (1)    No building permit or certificate of occupancy shall be issued unless the

proposed construction or use is in conformance with all the provisions of this chapter and other applicable laws.

(2)    (Reserved)[95]

(3)    Where the determination of violation concerns a building or structure for which a certificate of occupancy has already been issued, the Code Enforcement Officer may revoke the certificate of occupancy in accordance with Subsection E(5) of this section. Upon revocation of the certificate of occupancy, the occupants then have a maximum period of 60 days in which to vacate the premises.

D.    Building permits.

(1)    In addition to the requirements set forth in other sections of this Code, a building permit is required for: [Amended 3-28-2005 by L.L. No. 2-2005]

(a) The construction, reconstruction, moving, demolition or structural alteration or change in the use of a building or a structure affixed to the ground, except that a building permit shall not be required for a fence other than a fence surrounding a swimming pool. [Amended 11-22-2004 by L.L. No. 7-2004]

(b) Any change in the bulk of a building, structure affixed to the ground or nonbuilding use, but not including ordinary repairs which are not structural in nature.

(2)    Application.

(a) Application for a building permit shall be made to the Code Enforcement Officer on forms provided by him and shall contain the following information:

[1]    A description, agreeing with the Tax Map of the Village of Pomona, of the land on which the proposed work is to be done.

[2]    A statement of the use or occupancy of all parts of the land and of the building or structure.

[3]    The valuation of the proposed work.

[4]    The full name and address of the owner and of the applicant, including the full name and address of each officer and director of any corporation or each member of a partnership.

[5]    A brief description of the nature of the proposed work.

(b) All applications shall be accompanied by two copies of the applicable site

---

[95]. Editor's Note: Former Subsection C(2), regarding stop orders and notice of violation, was repealed 9-25-2000 by L.L. No. 7-2000.

plan, subdivision maps, drainage, grading and elevation plans and all other documents, if required for the development of the plot, building or structure.

(c) Each application for a building permit shall be accompanied by plans and specifications, including plot plans as required, drawn to scale, showing the location and size of all proposed new construction and all existing structures on the site; the nature and character of the work to be performed and the materials to be incorporated; distance from plot lines; widths and grades of adjoining streets, walks and alleys; details of structural, mechanical and electrical work, including computations, stress diagrams and other essential technical data. Such plans and specifications shall include, on the plot plan or site plan, the proposed location of all underground facilities, including gas service, electric service, sewer lines, drainage lines (including routing of drainage from roof leaders and footing drains) to a positive outlet, waterlines, sprinkler lines, telephone lines, etc. The building plans shall include plans for mechanical services, including gas, electric, water, heating and air conditioning. Plans and specifications shall bear the signature of the person responsible for the design and drawings and the architect's or engineer's signature, seal and New York State license number.

(d)     Site development plan; phased site plan review; inspection reports. [Amended 3-2-1998 by L.L. No. 1-1998; 9-25-2000 by L.L. No. 7-2000]

[1]    Each application for a building permit shall be accompanied by a site development plan, the procedures and standards for which shall be governed by the provisions of Chapters 119 of this Code, where applicable. The Building Inspector shall recommend to the Planning Board as to whether the proposed project shall be divided into phases, the precise number of which shall be recommended by the Building Inspector. In the event that the Planning Board decides to adopt the recommendations of the Building Inspector for phased site plan review, the phases shall include, but not necessarily be limited to, tree clearing, structural measures for erosion control installation, drainage improvements, driveway installation and construction of the building. Each such phase shall require a separate written certificate of compliance, to be issued by the Building Inspector, upon his being satisfied that the required work for each such phase has been satisfactorily completed. Such certificate of compliance shall contain an authorization for the builder to proceed to the next succeeding phase, if any. There shall be mandatory inspection of each building site to which this chapter shall be applicable, after each rain event, as well as biweekly, whether or not there is a rain event.

[2]    Written inspection reports shall be prepared on a regular basis by the Building Inspector or the Village Engineer. In the event that an inspection report discloses violations of the approved erosion control

plan for the project, the builder shall be required to remedy the violation immediately. If the violation of the erosion control plan is not corrected completely within three days of the date of notice of the violation to the builder, the Building Inspector shall issue a stop-work order pursuant to Chapter 47 of this Code. [Amended 11-13-2000 by L.L. No. 8-2000]

(e) Applications shall be made by the owner or lessee, or agent of either, or by the architect, engineer or builder employed in connection with the proposed work. Where such application is made by a person other than the owner, it shall be accompanied by an affidavit of the owner or applicant that the proposed work is authorized by the owner and that the applicant is authorized to make such application.

(f) Any amendment to the application or to the plans and specifications accompanying same must be filed with and approved by the Code Enforcement Officer prior to the commencement of the amended work, and such amendments shall comply with the provisions of this chapter. The granting or refusal of such an amendment by the Code Enforcement Officer shall be in writing and may be reviewed by appeal to the Board of Appeals within 30 days after such determination is filed in the office of the Code Enforcement Officer.

(3)     Approval or disapproval.

(a) Issuance of building permit. The Code Enforcement Officer shall examine or cause to be examined all applications for permits and the plans, specifications and documents filed therewith. Within 20 days of receipt of same, he shall approve or disapprove the permit.

(b) Upon approval of the application and upon receipt of the fees therefor, he shall promptly issue a building permit to the applicant upon the form prescribed by him and shall affix his signature or cause his signature to be affixed thereto. Upon approval of the application, both sets of plans and specifications shall be endorsed with the word "approved."

(c) One set of such approved plans and specifications shall be retained in the files of the Code Enforcement Officer and the other set shall be returned to the applicant, together with the building permit, and shall be kept at the building site and open to inspection by the Code Enforcement Officer or his authorized representative at all reasonable times.

(d)     If the application, together with plans, specifications and other documents filed therewith, describes proposed work which does not conform to all of the requirements of the applicable building, planning or zoning regulations, the Code Enforcement Officer shall disapprove the same and shall return the plans and specifications to the applicant.

(4)     Expiration and extension. Every building permit shall expire by limitation at

the end of one year from the date issued. If a construction is not completed within said one-year period, the Code Enforcement Officer may, for due cause shown, extend the permit for a period not to exceed one year.

(5)    Liability insurance. In the event any application for a building permit provides for construction or other activity involving operation of equipment, personnel or placement of materials which may hazard a public street, way, easement or public property, prior to the issuance of such building permit the applicant shall present evidence of liability insurance saving the Village harmless in the amount of $100,000 per person and $300,000 per occurrence, in a form acceptable to the Village Attorney. Additionally, property damage insurance or other surety acceptable to the Village Attorney may be required where such construction or activity may damage public property, including sidewalks, paving, signs or landscaping. In reviewing any application hereunder, the Code Enforcement Officer shall determine whether such hazard may exist by virtue of the nature of activity described in such application. Where, after a building permit has been issued without such liability insurance, it shall appear that such hazards are present, the Code Enforcement Officer may, on due notice given, require such insurance, and, pursuant to Subsection B(4) of this section, may suspend such activity pending receipt of the required liability policy.

(6)    Fees. Every application for a building permit pursuant to this chapter and/or the Building Code shall be accompanied by a fee in accordance with the fee schedule of the Village of Pomona.[96]

E.    Certificates of occupancy.

(1)    When required.

(a) No building or structure or portion thereof for which a building permit has been issued shall be used or occupied in whole or in part until a certificate of occupancy shall have been issued by the Code Enforcement Officer. Continued use or occupancy of the building or structure shall be in conformance with the issued certificate of occupancy.

(b) No change shall be made in the use or type of occupancy of an existing building or structure, nor change in the use of land, except to any use which is primarily agricultural, unless a certificate of occupancy authorizing such change in use shall have been issued by the Code Enforcement Officer. A "change in use" shall include a change in the type or general class of goods or services sold or manufactured and any substantial change in manufacturing operation involving new equipment and machinery.

(2)    Application and affidavit. The owner or its agent shall make application for

---

[96]. Editor's Note: See Ch. 67, Fees, and Ch. 47, Building Construction.

a certificate of occupancy. Accompanying this application and before the issuance of a certificate of occupancy, there shall be filed with the Code Enforcement Officer:

(a) A complete set of as-built drawings showing the as-built locations of all the underground facilities and interior mechanical services. These plans shall be signed and certified by a New York State-licensed architect or engineer.

(b) An affidavit of the owner or the registered architect or licensed professional engineer who supervised the construction of the work, or of the superintendent of construction who supervised the work, and who, by reason of his experience, is qualified to superintend the work for which the certificate of occupancy is sought. This affidavit shall state that the deponent has examined the approved plans of the structure for which a certificate of occupancy is sought and that the structure has been erected in accordance with the approved plans and, as erected, complies with this chapter and the law governing building construction, including all subdivision regulations and the requirements of any approved subdivision plat or site plan, except insofar as variations therefrom have been legally authorized. Such variations shall be specified in the affidavit.

(3)     Issuance of certificate. Before issuing a certificate of occupancy, the Code Enforcement Officer shall examine or cause to be examined all buildings, structures and sites for which an application has been filed for a building permit to construct, enlarge, alter, repair, remove, demolish or change the use or occupancy; and he may conduct such inspections as he deems appropriate from time to time during and upon completion of the work for which a building permit has been issued. There shall be maintained by the Code Enforcement Officer a record of all such examinations and inspections, together with a record of findings of violations of the law. However, any certificate of occupancy for the establishment of any use of a building or land requiring a special permit as provided herein and any other particular use requiring the approval of the Planning Board shall be issued only with the authorization of the Planning Board. Every certificate of occupancy for a use for which a special permit or variance has been granted shall contain a detailed statement of such special permit or variance and of the conditions to which the same is subject.

(4)     Fees. Every application for a certificate of occupancy shall be accompanied by a fee as set forth in the fee schedule of the Village of Pomona.[97]

(5)     Revocation. A certificate of occupancy shall be deemed to authorize, and is required for, both initial and continued occupancy and use of the building or land to which it applies, and shall continue in effect so long as such building or land is used for the use authorized in the certificate of occupancy. If terms of such certificate of occupancy are violated by the holder thereof, the Code

---

[97]. Editor's Note: See Ch. 67, Fees.

Enforcement Officer may, by service of notice of violation, revoke such certificate of occupancy, which order of revocation is, however, subject to review by the Board of Appeals, by the holder thereof taking an appeal to the Board of Appeals within 30 days of service of said order of termination.

(6)     Copies. Copies of every certificate of occupancy issued hereafter shall be furnished, on request, to the Planning Board or Board of Appeals, and on the payment of the regular application fee therefor, to any other person. The Board of Trustees may fix the fees required from the general public for copies of public documents required under this chapter.[98]

§ 130-23.  (Reserved) [99]

§ 130-24.  Right of entry.

The Code Enforcement Officer of the Village of Pomona, upon the showing of proper credentials and in the discharge of his duties, may enter upon any building, structure or premises at any reasonable hour, and no person shall interfere with or prevent such entry. Where permission to enter is not granted, the Code Enforcement Officer is authorized to apply to the Supreme Court for an order to enter.

§ 130-25.  Penalties for offenses.

A.    Penalties.

(1)     Any person, as defined in this chapter, other than a corporation, who shall violate any provision of this chapter or any other regulation made under authority conferred thereby, or who shall build or alter any structure or use any land in violation of any statement or plan submitted and approved thereunder, or who shall knowingly assist therein, shall be liable to a fine of not more than $2,000 or imprisonment for a term not exceeding 15 days, or both such fine and imprisonment. Each day's continued violation shall constitute a separate and additional violation.

(2)     Any corporation which shall violate any provision of this chapter or any other regulation made under authority conferred thereby, or which shall build or alter any structure or use any land in violation of any statement or plan submitted and approved thereunder, or which shall knowingly assist therein, shall be liable to a special corporate fine of not more than $10,000. Each day's continued violation shall constitute a separate and additional violation.

(3)     In addition to the foregoing provisions, the Village shall have such other remedies, for any violation or threatened violation of this chapter as are now or may hereafter be provided by law or in equity.

B.    Prevention. In case any land is used or structure is erected, constructed, altered or

---

[98].  Editor's Note: See also Ch. 67, Fees.

[99].  Editor's Note: Former § 130-23, Stop-work orders, was repealed 9-25-2000 by L.L. No. 7-2000.

maintained in violation of this chapter, any regulation made pursuant thereto or any detailed statement or plan submitted and approved thereunder, in addition to other lawful remedies, any appropriate action or proceedings may be instituted to prevent such unlawful uses, erection, construction, alteration or maintenance, to restrain, correct or abate such violation, to prevent the occupancy of such structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Whenever the Code Enforcement Officer has reasonable grounds to believe that work on any structure is being prosecuted in violation of the provisions of this chapter or not in conformity with any regulation made pursuant thereto or not in compliance with any detailed statement or plan submitted and approved thereunder or in an unsafe and dangerous manner, he may issue a stop-work order pursuant to the provisions of § 130-23 above.

C.    In addition to the penalties provided hereinabove, no person, partnership, corporation, limited-liability company, limited-liability partnership or other entity which has been found by a court of competent jurisdiction, by order or judgment, to have violated or ignored two validly issued stop-work orders in the Village of Pomona shall be eligible to receive a building permit for a period of three years from the date of such finding. No partnership, corporation, limited-liability company, limited-liability partnership or other entity, the majority ownership of which is held by a person, partnership, corporation, limited-liability company, limited-liability partnership or other entity which has been found by a court of competent jurisdiction to have violated or ignored two validly issued stop-work orders in the Village of Pomona, shall be eligible to receive a building permit for a period of three years from the date of such finding. Each stop-work order issued shall contain a copy of this subsection, under the heading "PLEASE TAKE NOTICE." [Amended 6-26-2000 by L.L. No. 4-2000]

ARTICLE IX

Zoning Board of Appeals

§ 130-26.  Appointment.

The Board of Trustees shall appoint a Board of Appeals pursuant to § 7-712 of the Village Law of the State of New York,[100]

§ 130-27.  Meetings and records.

Meetings shall be held at the call of the Chairman and at such other times as the Board may determine. The Board shall adopt rules and regulations governing its procedures. The presence of three members of the Board shall be necessary for a quorum. The concurring vote of at least three members shall be necessary to effect any variation or variance in this chapter, to reverse any order, requirement, decision or determination appealed from or to decide in favor of the applicant any matter before the Board. The Board shall keep minutes of its proceedings, showing the vote of each member on every question, or if any member is absent or fails to vote, indicating that fact, and shall also keep records of its examinations

---

[100].  Editor's Note: See also Ch. 25, Planning Board and Zoning Board of Appeals.

and other official actions. Every rule, determination, regulation, amendment or appeal thereof and every order, requirement and decision of the Board shall promptly be filed in the office of the Board and in the office of the Village Clerk.

### § 130-28. Powers and duties.

A.    General. The Board of Appeals shall have all of the powers and duties prescribed by the Village Law and by this chapter, which powers and duties are summarized and more particularly specified in the following, provided that none of the following sections shall be deemed to limit any of the powers of the Board of Appeals that are conferred by the Village Law. In passing upon any matter before it, the Board shall take into specific consideration the goals of this chapter.

B.    Rules and regulations. The Board of Appeals may adopt such rules and regulations as are necessary or proper to the performance of its powers and duties hereunder and may amend or repeal the same.

C.    Nonconforming uses. The Board of Appeals is authorized to extend the permitted period for cessation of a nonconforming use in accordance with the requirements of § 130-15B(5) of this chapter; to review and approve, approve with modifications or disapprove a plan for reconstruction of a nonconforming building in accordance with the requirements of § 130-15D(2) of this chapter; to permit the change of a nonconforming use to another nonconforming use in accordance with § 130-15E of this chapter; and to review and approve, approve with modifications or disapprove a plan for the improvement of a nonconforming use in accordance with § 130-15F of this chapter.

D.    Variances. On appeal from an order, requirement, decision or determination made by an administrative official charged with the enforcement of this chapter or on referral of an applicant to the Board by an approving agency acting pursuant to this chapter, the Board of Appeals is authorized to vary or modify the strict letter of this chapter where its literal interpretation would cause practical difficulties or unnecessary hardships, as defined in this subsection, in such manner as to observe the spirit of the chapter, secure public safety and welfare and do substantial justice.

(1)    Use variances. Where, because of unnecessary hardship relating to the land, an applicant desires to utilize land for a use not allowed in the district in which the land is located, the Board may grant a variance in the application of the provisions of this chapter in the specific case, provided that as a condition to the grant of any such variance, the Board shall make each of the following findings:

(a) After considering all permitted uses, that the property in question cannot yield a reasonable return if used only for a purpose allowed in that district.

(b) That the plight of the owner is due to unique circumstances affecting the property which is the subject of the application and not to general conditions in the neighborhood.

(c) That the use to be authorized by the variance will not alter the essential character of the locality.

(d)     That the use to be authorized by the variance is in reasonable harmony with the intent of this chapter.

(e) That the unnecessary hardship claimed as a ground for the variance has not been created by the owner or by a predecessor in title. Mere purchase of the land subject to the restrictions sought to be varied shall not itself constitute a self-created hardship.

(f) That within the intent and purposes of this chapter the variance, if granted, is the minimum variance necessary to afford relief. To this end, the Board may permit a lesser variance than that applied for.

(2)     Area variances. Where, because of practical difficulty, an applicant requests a variance of the lot area or other dimensional requirements of this chapter, the Board may grant a variance in the application of the provisions of this chapter in the specific case, provided that as a condition to the grant of any such variance, the Board shall make a specific finding that the application of the requirements of this chapter to the land in question creates such practical difficulty. In making this determination, the Board shall make each and every one of the following findings:

(a) That the variation is not substantial in relation to the requirement.

(b) That the effect of any increased population density which may thus be produced upon available services and facilities is not significant.

(c) That a substantial change in the character of the neighborhood or a substantial detriment to adjoining properties will not be created.

(d)     That the difficulty cannot be alleviated by some method feasible for the applicant to pursue other than a variance.

(e) That, in view of the manner in which the difficulty arose and considering all of the above factors, the interests of justice will be served by allowing the variance.

(f) That the variation would not cause adverse aesthetic, environmental or ecological impacts on the property or on surrounding areas.

E.     Special use permits. [Added 2-28-1994 by L.L. No. 1-1994[101]]

(1)     General provisions. Special permit uses are listed in §§ 130-9C and 130-10D of the Pomona Village Code. Special permit uses for which conformance with additional standards is required by this chapter are deemed to be permitted uses

---

[101]. Editor's Note: This local law also provided for the relettering of former Subsections E and F as Subsections F and G, respectively.

in their respective districts, subject to the satisfaction of the requirements and standards set forth herein, in addition to all other requirements of this chapter. All such uses are declared to possess such unique and special characteristics of such unique and special forms that each specific permit shall be considered as an individual case.

(2)     Approving agency. The Zoning Board of Appeals shall be the approving agency for all special use permits, except those designated by §§ 130-9C and 130-10D and E to be approved by the Board of Trustees. [Amended 5-18-1998 by L.L. No. 2-1998]

(3)     Informal application. Applicants are encouraged to submit a preliminary, informal application and to discuss it with the appropriate permitting Board prior to formal submission of a complete and detailed special permit application. The informal application should include a schematic plan showing the general layout of the property and the proposed use. The schematic plan should be submitted to the appropriate Board not less than three weeks prior to the date of the Board meeting at which it is to be considered. At that meeting, the Board shall review the schematic plan and may schedule a field inspection of the site. The Board shall notify the applicant of any changes recommended prior to the preparation of a complete site plan.

(4)     Formal application.

(a) Submission. Formal application for a special permit shall be made in 12 copies to the Zoning Board or Board of Trustees, as the case may be. The formal application shall include the following items:

[1]     A completed special permit application form, including the name and address of the person, firm or corporation for whom the use is intended and the name and address of the property owner. If the applicant or owner is a firm or corporation, the full name and residence of the firm or principal officers of the corporation shall be shown;

[2]     A written statement describing the nature of the proposed use and how it will serve to implement the purposes of this chapter and the period of time for which the permit is requested;

[3]     Four copies of a site plan with the information required by § 118-32 of this chapter; and (41 Long environmental assessment form.

[4]     Long environmental assessment form.

(b) Referrals.

[1]     The permitting Board shall submit copies of the special permit application to the Code Enforcement Officer and Village Engineer and to other Village agencies or officials as it deems appropriate, all of whom shall inspect the premises and report their findings to the

Board, in writing, within 30 days of the date of forwarding. The Board may submit copies to the following agencies for information, review and comment regarding facilities under their jurisdiction and to any other county, state or federal agency with jurisdiction: the Rockland County Drainage Agency and the New York State Department of Transportation.

[2]    The permitting Board shall refer to the Rockland County Planning Board for its recommendation all matters within the provisions of Article 12-B, §§ 239-l and 239-m, of the General Municipal Law which includes real property lying within 500 feet of the boundary of any city, Village or town, or from the boundary of any existing or proposed county or state park or other recreation area, or from the right-of-way of any existing or proposed county or state parkway, thruway, expressway, road or highway or from the existing or proposed right-of-way of any stream or drainage channel owned by the county or for which the county has established channel lines, or from the existing or proposed boundary of any county- or state-owned land on which a public building or institution is situated, and any special permit affecting such use or property within a distance of 500 feet. If the Rockland County Planning Board fails to report within such period of 30 days or such longer period as has been agreed upon by it and the permitting Board, the permitting Board may act without such report. If the Rockland County Planning Board disapproves the proposal, or recommends modification thereof, the permitting Board shall not act contrary to such disapproval or recommendation except by a vote of a majority plus one of all members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action. Within seven days after final action by the Zoning Board or Board of Trustees, a report shall be filed of the final action it has taken with the County Planning Board which had made the recommendations, modifications or disapproval.

(c)  Board action.

[1]    The Zoning Board or Board of Trustees, as the case may be, shall hold a public hearing within 62 days after the receipt of a completed special permit application by the clerk of the appropriate permitting Board. Such hearing shall be advertised at least once in the official Village newspaper at least five days before such hearing; be noticed, by certified mail, return receipt requested, to each owner of the property within 500 feet of the perimeter of the subject property as indicated on the application for special permit approval and at least 10 days prior to the public hearing; and be advertised by the installation of four posters, furnished by the clerk to the appropriate permitting Board, on the four closest public roads in visible locations surrounding the proposed special permit at least 10 days prior to the public hearing.

The Zoning Board or Board of Trustees shall, thereafter, approve, with or without modification, or disapprove such special permit application within 62 days after the public hearing. The grounds for a modification or for disapproval shall be stated upon the record of the Board. Within five days of the decision of the Board, such decision shall be filed in the office of the Village Clerk, with a copy of the decision mailed to the applicant by regular mail. Notwithstanding the foregoing provisions, the time in which the Board must take action on the special permit application may be extended by mutual consent of the applicant and the permitting Board.

[2] In approving applications for special use permits, the Zoning Board of Appeals or Board of Trustees may impose such reasonable conditions and restrictions as are directly related to and incidental to the proposed special use permit. Upon granting of said special use permit, any such conditions must be met in connection with the issuance of any building permits by the Code Enforcement Officer.

[3] The Zoning Board of Appeals or Board of Trustees may, however, when reasonable and proper, waive any preestablished requirements of approval of a special use permit where such requirements are found not to be requisite in the interest of the public health, safety or general welfare or inappropriate to the particular special permit use.

[4] Where a proposed special use permit contains one or more features which do not comply with the Zoning Code, application may be made directly to the Zoning Board of Appeals for a variance without the necessity of a decision or determination of the Code Enforcement Officer. Said application may be taken up simultaneously with the special permit application.

(5) Site plan application. Site plan approval under § 118-32 of this chapter is required for all special permit uses. Insofar as practicable, special use permit and site plan approval procedures shall run concurrently.

(6) General standards. All special permit uses shall comply with the following standards, in addition to the site plan standards of this chapter. The permitting Board shall attach such additional conditions and safeguards to any special permit as are, in its opinion, necessary to ensure initial and continual conformance to all applicable standards and requirements.

(a) The location and size of the special permit use, nature and intensity of the operations involved in it or conducted in connection with it, the size of the site in relation to it and the location of the site with respect to streets giving access to it are such that it will be in harmony with the appropriate and orderly development of the area in which it is located.

(b) The location, nature and height of buildings, walls and fences and the nature

and extent of existing or proposed plantings on the site are such that the special permit use will not hinder or discourage the appropriate development and use of adjacent land and buildings.

(c) Operations in connection with any special permit use will not be more objectionable to nearby properties by reason of noise, traffic, fumes, vibration or other characteristics than would be the operations of permitted uses not requiring a special permit.

(d)     Parking and loading areas will be of adequate size for the particular special permit use, properly located and suitably screened from adjoining residential uses, and the entrance and exit drives shall be laid out so as to achieve maximum convenience and safety.

(e) The special permit use will not result in diminution of the value of property in the neighborhood or a change in the character of the neighborhood in which the use would be situated.

(7)     Expiration, temporary permits, inspection and change.

(a) A special permit shall be deemed to authorize only the particular use or uses specified in the permit and only for the original applicant and shall expire if said use shall cease for more than one year for any reason, or if substantial construction, in accordance with the special permit, has not been completed within one year from the date of issue or if all such required improvements are not maintained and all conditions and standards complied with throughout the duration of the special permit use.

(b) For a use intended to be temporary, the Zoning Board may issue a special permit for a specified period of time.

(c) In connection with issuance of a special permit, the Zoning Board or Board of Trustees may establish a schedule of inspections by the Code Enforcement Officer of a special permit use to determine continued compliance with this chapter.

(d)     Any change in use or reduction in lot size requires amendment to the special permit, following the application and review requirements of this section.

(8)     Existing violations. No permit shall be issued for a special use permit for a property where the Code Enforcement Officer has found a violation of this chapter and where such violation has not been corrected.

(9)     Fees. Application for a special use permit shall be accompanied by fee as listed in the fee schedule adopted by the Board of Trustees.[102]

---

[102]. Editor's Note: See Ch. 67, Fees.

F.  Other appeals. On appeal from an order, requirement, decision or determination made by an administrative official charged with the enforcement of this chapter or on request from any official, agency or board of the Village, the Board of Appeals is authorized to decide any question involving the interpretation of any provision of this chapter. Interpretations shall be made in accordance with the intent of the particular provision being interpreted.

G.  Conditions and safeguards. The Board of Appeals may prescribe such conditions or restrictions applying to the grant of a variance as it may deem necessary in each specific case, in order to minimize the adverse effects of such variance upon the character and property values of the neighborhood and to protect the public health, safety and welfare. Such conditions or restrictions shall be incorporated in the building permit and certificate of occupancy. Failure to comply with such conditions or restrictions shall constitute a violation of this chapter and may constitute the basis for denial or revocation of a building permit or certificate of occupancy and for all other applicable remedies.

## § 130-29. Procedures.

A.  Appeal or application. An appeal shall be taken within 60 days of the order, requirement, decision, interpretation or determination appealed from, by filing with the official or agency from whom the appeal is taken and with the Board of Appeals a notice of appeal, specifying the grounds thereof and the relief sought. The official or agency from whom the appeal is taken shall forthwith transmit to the Board all the papers constituting the record upon which the action appealed from was taken. A referral to the Board for a variance or a request for an interpretation may be made at any time. All such appeals and applications to the Board shall be made by the owner or agent duly authorized, in writing, and shall be on forms prescribed by the Board. Each appeal or application shall fully set forth the circumstances of the case, shall refer to the specific provision of the chapter involved and shall exactly set forth, as the case may be, the interpretation that is claimed or the details of the adjustment that is applied for and the grounds on which it is claimed that the same should be granted. [Amended 2-28-1994 by L.L. No. 1-1994]

B.  Review by other agencies.

  (1)  Upon receipt of a completed appeal or application, the Board of Appeals shall forward copies for review and report to the Code Enforcement Officer, Village Engineer and Planning Board and to other such officials and agencies of the Village as it deems appropriate. All such agencies shall have 30 days from the date of forwarding to submit a report. If approval of a site plan or issuance of a special permit is involved, the Board of Appeals shall forward sufficient copies for review and report to the applicable approving agency and shall not act on the matter until it has received the report of the approving agency or 30 days have passed since such forwarding.

  (2)  The Board of Appeals shall refer to the Rockland County Planning Board for its recommendation all matters within the provisions of Article 12-B, §§ 239-l and 239-m, of the General Municipal Law which include real property lying within

500 feet from the boundary of any city, Village or town or from the boundary of any existing or proposed county or state parkway, throughway, expressway, road, highway or from the existing or proposed right-of-way of any stream or drainage channel owned by the county or for which the county has established channel lines, or from the existing or proposed boundary of any county- or state-owned land on which a public building or institution is situated, and any special permit or variance affecting such use or property within a distance of 500 feet. The Rockland County Planning Board shall render its decision within 30 days of referral or within an extended period if agreed upon. If the Rockland County Planning Board fails to report within such period of 30 days or such longer period as has been agreed upon by it and the Board of Appeals, the Board of Appeals may act without such report. If the Rockland County Planning Board disapproves the proposal or recommends modifications thereof, the Board of Appeals shall not act contrary to such disapproval or recommendation except by a vote of a majority plus one of all members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action. Within seven days after final action by the Board of Appeals, a report shall be filed of the final action it has taken with the County Planning Board which had made the recommendations, modifications or disapproval.

C.     Public hearing. The Board of Appeals shall conduct a public hearing on any appeal, application or request made pursuant to this chapter. Such public hearing shall be held within 45 days of the date an appeal is taken or an application or request is made to the Board.

D.     Notice of hearing. Notice of the hearing shall be published in the official newspaper at least 10 days prior to the date of such hearing. Notice shall also be sent by the applicant 10 days prior to the date of such hearing to all property owners within 500 feet of the perimeter of the property, in the same manner as is required for amendments pursuant to § 130-41 of this chapter. The applicant shall cause signs to be posted on such property on each street frontage indicating the date and purpose of such hearing. The costs of all such notice shall be paid by the applicant.

E.     Action. Every decision of the Board of Appeals shall be by resolution, shall be recorded and shall fully set forth the facts of the case, the findings and the conclusions on which the decision was based. The Board shall immediately file its resolution in the office of the Board and with the Village Clerk and shall, within 10 days thereafter, mail a copy of such resolution to the applicant.

§ 130-30.  Expiration of variance.

A variance granted under this chapter shall automatically expire if substantial construction, in accordance with the plans for which such variance was granted, has not been completed within one year, or such other time limit as may be chosen by the Board of Appeals in connection with its decision, from the date of granting such variance by the Board, or, if judicial proceedings to review the Board's decision shall be instituted, from the date of entry of the final order in such proceedings, including all appeals.

§ 130-31.  Fees.

Every application or appeal to the Board shall be subject to a fee as set forth in the fee schedule of the Village of Pomona.[103]

### ARTICLE X

#### Density Zoning

#### § 130-32. Purpose.

It is the purpose of this Article to enable and encourage flexibility of design and development of land in such a manner as to preserve its natural and scenic qualities, protect areas of meaningful ecological value, reduce flood hazards, facilitate the adequate and economical provision of streets and utilities, minimize negative environmental impacts, improve the aesthetic quality of new residential developments, expand the variety of housing opportunities, encourage the conservation of energy, increase recreational opportunities and otherwise promote the planned and environmentally desirable use of land by permitting the Board of Trustees to authorize the Planning Board, simultaneously with the approval of subdivision plats, to modify otherwise applicable provisions of the Zoning Law in accordance with the standards, conditions and limitations as set forth herein and in § 7-738 of the Village Law.

#### § 130-33. Procedure.

A.    After the submission of the preliminary plat to the Planning Board of the Village of Pomona, if either the applicant requests the use of density zoning or the Planning Board on its own motion determines that density zoning is suitable for the plat, then the preliminary plat, together with a Planning Board study setting forth the basis for the recommendation regarding utilization of the procedures in § 7-738 of the Village Law, shall be submitted to the Board of Trustees.

B.    Upon submission of the preliminary plat and recommendations, the Board of Trustees shall expeditiously cause to be published in the official newspaper of the Village a notice stating that an application for the utilization of the provisions of § 7-738 of the Village Law has been submitted to the Board of Trustees, said notice generally describing the area covered in the application, and that such application will be placed on the agenda of the meeting of the Board of Trustees.

C.    In the event that the plat shows lands available for a sewer plant or school purposes, the Board of Trustees will conduct a public hearing on the matter in lieu of placing the matter on the agenda as set forth in Subsection B hereof. Such public hearing shall be held after due notice in the official newspaper of the Village, such notice to be published not less than 10 nor more than 20 days prior to such public hearing.

D.    If the Board of Trustees determines that the preliminary plat is suitable for the utilization of the procedures allowed under § 7-738 of the Village Law, the Board of Trustees shall adopt a resolution authorizing the utilization of the procedures contained in said § 7-738 of the Village Law.

---

[103]. Editor's Note: See Ch. 67, Fees.

§ 130-34.  Development standards and controls.

Except as modified by the Planning Board pursuant to the authority hereby conferred, all regulations normally applicable to residential uses in the zoning district in which the property is located shall continue to apply. In addition, the following requirements are hereby established specifically for average-density developments:

A.    Permitted uses. The permitted uses within an average-density development shall be the same as permitted in the zoning district in which the property is located.

B.    Density. The number of dwelling units permitted in an average-density development shall in no case exceed the number which could be subdivided into lots conforming to all normally applicable requirements of this chapter, the Land Subdivision Regulations and other related land use and development controls. The basis for this determination by the Planning Board shall be a sketch layout of a conventional subdivision prepared and submitted by the applicant, which layout shall include topographic information and such other data as may be required by the Planning Board to assist in making its determination.

C.    Common lands and facilities.

(1)    In general, common open space land areas shall be preserved in their natural state, and their use shall be limited to appropriate conservation and passive recreation purposes. A portion of such common open space, not to exceed 10% of the gross land area of the average-density development, may be reserved and designated for active recreation purposes, provided that the size, shape, access and location of such areas is approved by the Planning Board. Within a designated active recreation area, there may be located swimming pools, ball fields, facilities for court games, clubhouses, playground equipment and so forth, provided that the use of all such facilities shall be limited to the residents of the average-density development and their guests, and further provided that such facilities shall be subject to site plan approval by the Planning Board.

(2)    The permanent preservation of common open space lands and facilities for their intended purpose shall further be legally assured to the satisfaction of the Board of Trustees and the Village Attorney by the filing of appropriate covenants, deed restrictions, easements or other forms of agreements. The permitted uses within such areas shall be limited to those specifically approved by the Planning Board and shown on the subdivision plat, plus uses customarily incidental and accessory thereto. Subsequent to the approval of the subdivision plat, the uses permitted within privately owned common land areas may be modified only upon approval by the Planning Board and only upon application by the entity owning such common land area. In each such case, a public hearing shall be held with the same notice as required by law for final subdivision plats. Such modification may permit a use in the same general category of uses previously approved or may allow a change in the location of a particular use from one portion of the common land area to another.

(3)    Dedication of the common land areas, including any common facilities or

improvements thereon, to the common use of all property owners within an average-density development shall be recorded directly on the subdivision plat or by reference on the subdivision plat to a declaration of covenants, conditions and restrictions in a separate document recorded or to be recorded at or about the time of the filing of the approved subdivision plat. Such declaration of covenants, conditions and restrictions shall permanently grant to each property owner in common with all other property owners within such average-density development an easement in and to the common land areas and the common facilities thereon and of the use thereof.

(4)     As another alternative, all or a portion of the conserved land areas may be dedicated to the Village of Pomona, provided that the Board of Trustees has voted to accept such offer.

## ARTICLE XI

### Amendments

#### § 130-35. Power to amend.

The Board of Trustees may from time to time on its own motion, on petition or on recommendation of any board, agency or official of the Village, after public notice and hearing, amend, supplement, repeal or change the regulations and districts established under this chapter.

#### § 130-36. Amendments on petition.

A petition for any amendment of this chapter shall be made to the Village Clerk and shall describe the proposed changes. For proposed amendments to the Zoning Map, a copy shall be included of the applicable portion of the official copy of the Zoning Map, as kept by the Village Clerk, showing existing and proposed, zoning, as well as a map drawn to an appropriate scale showing all properties within 500 feet of the periphery of the subject property and any contiguous property of the petitioner in the same ownership. The petitioner shall be responsible for complying with the requirements as to notice in § 130-41 below.

#### § 130-37. Amendments on motion.

An amendment on motion or an amendment proposed to the Board of Trustees by any board, agency or official of the Village shall contain the information required in § 130-36 above. The Village Clerk shall be responsible for complying with the requirements as to notice in § 130-41 below.

#### § 130-38. Initial consideration.

On the making of a motion, on receipt of a petition or on receipt of a recommendation of any board, agency or official of the Village for a zoning amendment, the Board of Trustees may decide not to formally consider such amendment.

#### § 130-39. Referrals for review and report.

If any amendment is to be considered by the Board of Trustees, it shall be referred for

review and report to the Planning Board, the Village Attorney, the Village Engineer, Code Enforcement Officer and any other board, agency or official of the Village which the Board of Trustees deems appropriate. The Planning Board shall confer with any petitioner and assist such petitioner, where necessary, to place the amendment in the most appropriate form. Such conference and assistance shall not be deemed to constitute any commitment by the Planning Board as to its position on the advisability of the proposed amendment. After said conference, the petitioner shall be allowed to revise his petition and to provide copies of such revision to the Board of Trustees and to any board, agency or official to which the original proposed amendment was referred. The Village Attorney shall report to the Board of Trustees regarding the form of the proposed amendment. The Planning Board shall report to the Board of Trustees regarding the form and the advisability of the proposed amendment. Its report shall analyze the proposed amendment and shall state the Board's reasons for its recommendation, describing any conditions it believes make the amendment advisable or not, and specifically stating whether the amendment would or would not be in accordance with the Comprehensive Plan and in furtherance of the purposes of this chapter. All such boards, agencies and officials shall have 45 days from the date of forwarding or from the date of revision by the petitioner, whichever is later, to submit reports. Failure of the Planning Board or other board, agency or officials to report within 45 days shall be construed as approval of the proposed amendment. In no case shall this section restrict the right of an applicant to come before the Planning Board for an informal discussion and review prior to formal submission.

### § 130-40. Public hearing.

On receipt of the requested reports and any revised proposed amendment from an application or notification by the petitioner that no revision will be made, the Board of Trustees shall schedule and hold a public hearing on the proposed amendment.

### § 130-41. Notice of hearing.

Notice of the public hearing shall be published once in the official newspaper not less than 10 nor more than 30 days prior to the date of the hearing. A copy of the notice, with proof of mailing, together with proof of notice in the official newspaper, shall be filed in the Village Clerk's office on or before the date of the public hearing. The applicant shall cause notice by certified mail to owners of property within 500 feet of the perimeter of the property to which such change applies, to be mailed not less than 10 days prior to the required hearing. In the event that such amendment changes the district classification of land, there shall be posted not later than 10 days prior to the hearing a notice of the proposed change upon the property to which such change applies, said notice to be visible from each public street abutting such property. The cost of all notices shall be paid by the applicant except as provided in § 130-37.

### § 130-42. Procedure upon protest.

In accordance with the procedures of § 7-708, Subdivision 1, of the Village Law, in the event a protest against such change is signed by the owners of 20% or more of the area of the land included in such proposed change, or by the owners of 20% or more of the land immediately adjacent extending one hundred feet therefrom, or by the owners of 20% or more of the land directly opposite thereto extending one hundred feet from the street

frontage of such opposite land, such amendment shall not become effective except by the favorable vote of four members of the Board of Trustees.

§ 130-43. Records.

The Village Clerk shall keep record copies of all Zoning Maps and text sections superseded by any amendment of this chapter.

§ 130-44. Referral to adjacent municipalities and other agencies.

Not less than 10 days prior to the public hearing, the Village Clerk shall send copies of the proposed amendment and notice of hearing on any amendment affecting property within 500 feet of the boundaries of any state park, parkway, Village or town to the Regional State Park Commission having jurisdiction over such state park or parkway or to the Village or Town Clerk.

§ 130-45. Fees.

All petitions for amendment of this chapter, except those amendments recommended by the Board of Trustees, by the Planning Board or other municipal board or agency of the Village, shall be accompanied by a fee in accordance with the fee schedule of the Village of Pomona.[104]

ARTICLE XII

Miscellaneous Provisions

§ 130-46. Title.

This chapter shall be known and may be cited as the "Zoning Law of the Village of Pomona."

§ 130-47. Effect on current building permits.

Except as provided in this section, nothing herein shall require any change in the plans, construction or designated use of a building or structure for which a building permit has been lawfully issued prior to or, under the circumstances noted below, within 60 days after the effective date of this chapter, provided that the proposed use complies with the use requirements of this chapter and further provided that construction shall begin within six months of the date of such permit, the foundation or 15% of the construction valuation shall be completed within one year of the date of such permit and the entire building or structure shall be completed within two years of the date of such permit.

---

[104]. Editor's Note: See Ch. 67, Fees.