UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Congregational Rabbinical College of Tartikov, Inc., Rabbi Mordechai Babad, Rabbi Wolf Brief, Rabbi Hermen Kahana; Rabbi Meir Margulis, Rabbi Gergly Neuman, Rabbi Akiva Pollack and Kolel Belz of Monsey,

Plaintiffs,

-against-

Village of Pomona, NY; Board of Trustees of the Village of Pomona, NY; Nicholas Sanderson, as Mayor; Ian Banks, Alma Sanders Roman, Rita Louie and Brett Yagel, as Trustees and in their Official Capacities,

Defendants.

Civil Action No.: 7:07-CV-06304 (KMK) (GAY)

**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

DEFENDANTS

*By Their Attorneys*

Joseph L. Clasen (JC 1759)
William J. Kelleher III (WK 2146)
ROBINSON & COLE LLP
885 Third Avenue, Suite 2800
New York, NY 10022

Marci A. Hamilton (admission pending)
36 Timber Knoll Drive
Washington Crossing, PA 18977

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 2

FACTUAL BACKGROUND ........ 4

A. Plaintiffs' Conduct Prior to the Filing of the Present Lawsuit ........ 4

ARGUMENT ........ 5

**I.** DISMISSAL PURSUANT TO FED.R.CIV.P. 12(b)(1) IS REQUIRED. ........ 5

A. Administrative Options Exist For Seeking Approval Of The Development Of The Proposed Rabbinical College. ........ 6

B. Plaintiffs Are Improperly Seeking To Invalidate The Local Land Use Administrative Process Ab Initio. ........ 9

**II.** PLAINTIFFS' CLAIMS ALSO FAIL TO STATE A CLAIM UNDER FED.R.CIV.P. 12(b)(6). ........ 9

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

## CASES

**Page**

*League of Residential Neighborhood Advocates v. City of Los Angeles*, 498 F.3d 1052 (9th Cir. 2007) .......... 6

*Lowe's Home Center v. Venditto*, 836 N.Y.S.2d 500 (N.Y. Sup. Ct. 2007) .......... 2

*Natural Resources Defense Council v. Fox*, 93 F.Supp.2d 531 (S.D.N.Y. 2000) .......... 12

*Tesoriero v. Hyland Med. Bldg*, 831 N.Y.S.2d 356 (N.Y. Sup. Ct. Nov. 2, 2006) .......... 2

## STATUTES

42 U.S.C. § 2000cc-3(e) .......... 6

N.Y. Pub. Off. Law §§ 91-99 (2007) .......... 2

## RULES

Chapter 118 – Land Development Ordinance, Village of Pomona Code, .......... 8

Chapter 130 – Zoning, Village of Pomona Code .......... 6, 7, 8, 9

## OTHER

Zoning and Planning Deskbook § 2:9 (2d ed. 2007) .......... 9

**INTRODUCTION**

Plaintiffs' Opposition to Defendants' Motion of Dismiss fails to provide any substantial or persuasive law as to why the Second Amended Complaint ("SAC") should be allowed to proceed contrary to established law. Plaintiffs admit that opportunities to construct a religious facility to include a house or worship, accessory spaces for religious study, and residential buildings exist under the Village of Pomona's ("Village") zoning law and the subdivision of land. And Plaintiffs openly concede that they have failed or refused to apply for a single land use permit or for any available form of administrative relief. Instead they have asked this Court to supplant the authority of the local government and to apply remedial federal statutes in place of valid, locally enacted land use regulations pertaining to their development project proposal.[1] Plaintiffs have not produced a site plan showing the proposed physical layout of the project nor have they alleged that a definite site plan exists. Any way the Plaintiffs spin it, their claims are not ripe for adjudication by this Court and should be dismissed.

Furthermore, Plaintiffs lack standing to pursue their claims in federal court. They cannot satisfy the requirements for standing in accordance with Article III of the federal Constitution. Having failed to apply for a single land use permit, as required of all other landowners seeking to develop or change the use of their property, and there being no decision against them, Plaintiffs have not suffered any actual injury. There is no injury because there has been no action and no decision by the Defendants.

---

[1] Despite Plaintiffs preference for a land use process that involves informal meetings and does not involve having to file an actual application, New York law does not require pre-application meetings for prospective applicants with the local land use administrative agency (*see* Tesoriero v. Hyland Med. Bldg., 2005 N.Y. Misc. Lexis 3477, *11-12 (N.Y. Sup. Ct. Sept. 26, 2005) or the lead agency under SEQRA (*see* Lowe's Home Center v. Venditto, 836 N.Y.S.2d 500, **9 (N.Y. Sup. Ct. 2007)). Such meetings are disfavored by many agencies and applicants because they are non-binding, not open to the public, and may lead to confusion or mistaken reliance. *See* Tesoriero v. Hyland Med. Bldg, 831 N.Y.S.2d 356, ***5 (N.Y. Sup. Ct. Nov. 2, 2006); *see also* N.Y. Pub. Off. Law §§ 91-99 (2007) (open meeting law). Plaintiffs concede that pre-application meetings are at the discretion of the local government or its designated administrative agency. *See* Pls. Mot. in Opp. Ex. 16 at 14; Ex. 17 (Letters exchanged between Paul Savad, Esq. and Doris Ulman, Esq. , Mar.-June, 2007).

Plaintiffs have manufactured "futility" to avoid neutral, generally applicable land use procedures. Their mistaken and misleading interpretations of local land use regulations cannot negate the actual forms of administrative relief available under Village law. The only futility lies in Plaintiffs' obdurate refusal to use their expertise in land use matters and their ample resources to apply to obtain appropriate and expedient relief through the Village's administrative process

Finally, Plaintiffs' chances of success on the merits are speculative at best. Plaintiffs are testing the outer boundaries of the First Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Fair Housing Act ("FHA") and are attempting to persuade this Court to expand radically the scope of those remedial statutes far beyond their legislative purpose and without an underlying record of local government action. Thus, Plaintiffs do not have standing to pursue their claims before this Court.

For a valid claim under the Free Exercise Clause and RLUIPA, Plaintiffs must prove that the neutral, generally applicable land use ordinances and regulations of the Village impose a substantial burden on their religious exercise. Yet Plaintiffs have not alleged that they cannot practice their religion or that that they cannot teach, study or learn;2 rather they simply demand that they be permitted to build whatever they want to build without having to participate in any administrative process whatsoever. Plaintiffs make no allegations that support a claim of discrimination other than repeated attempts to smear the Village with the actions of other local governments.

---

[2] *See* Pls. Mot. in Opp. Ex. A[2], Aff. Rabbi M. Menczer at ¶¶ 9-10; Aff. Rabbi Wolf at ¶ 2; Aff. Rabbi Kahana at ¶ 2; Aff. Rabbi Neumann at ¶¶ 2-4; Aff. Rabbi Hershkowitz at ¶ 2; Aff. Rabbi D. Menczer at ¶ 2; Aff. Rabbi Royde at ¶ 2; Aff. Rabbi Rosenberg at ¶ 2; Aff. Rabbi Fleishman at ¶¶ 3-4; Aff. Rabbi Margulis at ¶ 2. [Please note that Plaintiffs' List of Exhibits for its Motion in Opposition contains two sets of exhibits labeled "A." Distinction is made for purposes of this reply by including a number one or two following the letter "A."]

Plaintiffs' claims under the FHA are equally meritless; Plaintiffs cannot provide any evidence that they are denied access to housing because they own, either directly or through their affiliates, various single-family dwelling and perhaps the largest parcel of undeveloped land in the Village of Pomona ("the Village") which is zoned for single family residential development.[3] This Court cannot grant where the Plaintiffs have not suffered any injury or harm; dismissal of Plaintiffs' SAC in its entirety is therefore appropriate.

## FACTUAL BACKGROUND

### A. <u>Plaintiffs' Conduct Prior to the Filing of the Present Lawsuit</u>

Plaintiffs are sophisticated and wealthy landowners with experience in real estate and land development.[4] They, and their team of attorneys, are quite familiar with New York land use and zoning law.

Plaintiffs have demonstrated on numerous occasions that they understand the Village's zoning law and the different types of land use permits and administrative relief available to them. Despite their persistent mischaracterization of Village law, they have characterized the governing law correctly at times, in ways that contravene their claims. Paul Savad, Plaintiffs' counsel, specifically stated in a letter to Doris Ulman, counsel for the Village of Pomona, dated May 10, 2007, "We agreed that the only application we can make is for a zone change, and not a use variance, since the College cannot demonstrate financial hardship."[5] This demonstrates in no uncertain terms that Plaintiffs are well-acquainted with the requirements for each of the different land use permits available under the zoning law and the extent to which such relief is constrained

[3] *See* SAC ¶¶ 73, 74 and 89.

[4] *See* Robert Zeliger, *Culture Clash*, ROCKLAND (N.Y.) MAGAZINE, September 2007, at 90-94; Def. Mot to Dismiss Ex. I.

[5] *See* Def. Mot. to Dismiss Ex. Q.

by New York law. It also reveals that, at some point prior to the commencement of this lawsuit, Plaintiffs reasonably considered applying for some form of administrative relief. Despite their knowledge of New York and local law, on June 22, 2007, Plaintiffs requested an exemption from all applicable land use regulations for Plaintiffs' proposal.[6] The request was not a formally filed application for any specific form of administrative relief and it did not include any detailed information regarding Plaintiffs' proposal; rather, it was a vague letter requesting that the Village exempt the entire project and it cited RLUIPA as supposedly controlling law for this bizarre and extreme proposition.[7] This lawsuit was filed shortly after Mayor Sanderson sent a reply letter dated July 3, 2007 advising Paul Savad that "educational institutions and houses of worship are permitted uses in the Pomona Zoning Law" and that there were various options for administrative relief available under that law.[8]

## ARGUMENT

### I. DISMISSAL PURSUANT TO FED.R.CIV.P. 12(b)(1) IS REQUIRED.

Plaintiffs' refusal to even initiate the administrative process available to them under the Village's land use regulations deprives this Court of subject matter jurisdiction. When Plaintiffs filed this lawsuit after having chosen not to file a single application for a land use permit or a text amendment application and necessarily without any decision by the Village or one of its designated administrative agencies, they made a deliberate and conscious decision to utilize the federal court system as a substitute forum for the Village of Pomona and the State of New York in matters concerning land and land use. This lawsuit demonstrates Plaintiffs' failure to initiate,

---

[6] *See* Def. Mot. to Dismiss Ex. S.

[7] *See* League of Residential Neighborhood Advocates v. City of Los Angeles, 498 F.3d 1052 (9th Cir. 2007) (holding that the issuance of a conditional use permit pursuant to a settlement under 42 U.S.C. § 2000cc-3(e) was invalid for failure to comply with state laws concerning legal notice, public hearing, and open meeting or sunshine laws).

[8] *See* Def. Mot. to Dismiss Ex. U.

let alone exhaust, administrative remedies and reveals their blatant disregard for state and local land use law that they need not abide by the secular law of the land.

**A. Administrative Options Exist For Seeking Approval Of The Development Of The Proposed Rabbinical College.**

Contrary to Plaintiffs' strident claims, various options exist under the Village's land use regulations for the development of a rabbinical college. Defendants, however, cannot stress enough that the following discussion is based on a plan that is little more than hypothetical. It is hardly fair for the Plaintiffs to argue that they cannot construct a college based on existing law when their plans are being kept so close to the vest. In the spirit of explaining the existing law for the benefit of this Court, the Defendants will now outline various avenues that might be taken if the Plaintiffs were ever inclined to commence the appropriate process.

*Accreditation.* If Plaintiffs were to obtain accreditation which is a matter of State law), under Village law they could file a site plan and special permit application to construct a college immediately.[9] Despite numerous opportunities to date, Plaintiffs have failed to specify why they cannot obtain accreditation from the state[10] or why they cannot be accredited by an accrediting agency in the United States, Eastern Europe or Israel.[11] The refusal to pursue avenues of accreditation is just another element in Plaintiffs' scheme to bypass the local land use process in pursuit of their alleged development. Tellingly, Plaintiffs include no assertions that other

---

[9] *See* § 130-10(F). Special permit uses: Educational institutions, Zoning Law, available at http://www.pomonavillage.com/code/Code%20v08-2007.pdf; (Def. Mot. to Dismiss Ex. O).

[10] *See* Pls. Mot. in Opp. at 5, n.10 (indicating that "[t]he State certifies degree-granting institutions"). Yet Plaintiffs also indicate that upon completion of a course of study as a rabbinical judge, students may receive a *smicha* or certification, by Rabbinic sages. *See* Pls. Mot. in Opp. Ex. A[1], Aff. Rabbi M. Babad at 4; Aff. N. Babad at ¶ 10. If, in fact, the hypothetical Catholic seminary (*see* Pls. Mot. in Opp. at 15) can be accredited by the State, then perhaps this lawsuit is misdirected.

[11] *See* Pls. Mot, in Opp. Ex. A[1] (letter from Association of Advanced Rabbinical and Talmudic Schools); *but see* Pls. Mot. in Opp. Ex. A[2], Aff. Rabbi Menczer (describing prevalence of rabbinical colleges and *bais din* in Israel).

similarly situated educational programs, such as Kollel Yechiel Mechil of Tartikov or Mechon L'Hoyroa, are not or cannot be accredited.

*Text Amendments*. Even in the absence of an accrediting agency, the Plaintiffs could submit an application for a change to the text of the Zoning Code to permit non-accredited educational institutions.[12] Plaintiffs improperly cast any opportunity for administrative relief involving an amendment to the text of the zoning law or a map change (collectively referred to as zone changes) as a "legislative remedy" and as "radical and unprecedented."[13] However, any time an administrative agency adopts new regulations or changes existing regulations, it is making policy decisions and is acting in its legislative capacity.

> "Most zoning decisions, as legislative acts, will be upheld so long as they are reasonably related to a legislative ordinance and will review it only to determine if it is arbitrary and capricious. In contrast, administrative zoning actions ... are subject to a somewhat more rigorous judicial determination of whether the outcome is supported by substantial evidence in light of predetermined standards."

DOUGLAS W. KMIEC, ZONING AND PLANNING DESKBOOK § 2:9 (2d ed. 2007).

The distinction as to whether a decision or action by an administrative agency is administrative, legislative and quasi-judicial is important because the standard of review to be applied by a court on appeal under New York law is determined by the extent of the agency's authority. But the application and review process for a text amendment or a map change is familiar – an application with required information is submitted and a public hearing is held.[14] Text amendments provide

---

[12] *See* §§ 130-36. Amendments on petition, Zoning Law (allowing amendments to any provision of Chapter 130 by petition), available at http://www.pomonavillage.com/code/Code%20v08-2007.pdf; (Def. Mot. to Dismiss Ex. O).

[13] *See* Pls. Mot. in Opp. at 16. Again, given the level of expertise and the content of the letters from Paul Savad to counsel for the Village, it is unlikely that Plaintiffs misunderstand the distinctions drawn between administrative, legislative and quasi-judicial actions or decisions by local land use administrative agencies.

[14] *See* Article XI, §§ 130-35 through 130-47. Amendments, Zoning Law, available at http://www.pomonavillage.com/code/Code%20v08-2007.pdf; (Def. Mot. to Dismiss Ex. O).

flexibility and allow residents and town officials to suggest changes; they are neither radical nor unprecedented.

*Land Use Permits*. Under Village law, Plaintiffs could also apply to construct a house on a residential lot or re-use an existing house as a house of worship as a permitted use in the applicable R-40 District.[15] Under Village law, a house of worship could include study halls and other educational facilities as accessory uses.[16] There is nothing to preclude Plaintiffs subdividing the remainder of their property for single family residential use which would be consistent with the Village's low-density pattern of development.[17]

Plaintiffs could subdivide their land to create a lot of ten or more acres for the construction of a college. One dormitory could be built on that ten acre parcel to provide housing in close proximity to the religious and educational facilities.[18] And as stated above, because Plaintiffs have the benefit of owning a large parcel of land, they could subdivide the remainder of their land for the construction of single family houses.

As stated above, under Village law, Plaintiffs could apply to subdivide any portion of their not occupied by houses of worship and their accessory buildings or by a college for residential development to provide single family houses for the students and their families.[19]

---

[15] *See* § 130-9(C)(1). Permitted uses: House of worship: minor religious use, Zoning Law, available at http://www.pomonavillage.com/code/Code%20v08-2007.pdf; (Def. Mot. to Dismiss Ex. O).

[16] *See* § 130-11. Accessory uses, Zoning Law, available at http://www.pomonavillage.com/code/Code%20v08-2007.pdf; (Def. Mot. to Dismiss Ex. O).

[17] In order to create multiple lots, the Subject Property would need to be subdivided consistent with the regulations for subdivisions contained in Chapter 118, Subdivision of Land, Village of Pomona Code, available at http://www.pomonavillage.com/code/Code%20v08-2007.pdf (attached as Exhibit A).

[18] § 130-10. Special permit uses: Educational institutions, Zoning Law, available at http://www.pomonavillage.com/code/Code%20v08-2007.pdf; (Def. Mot. to Dismiss Ex. O).

[19] For regulations concerning the subdivision of land, *see* Chapter 118 – Subdivision of Land, Village of Pomona Code, available at http://www.pomonavillage.com/code/Code%20v08-2007.pdf (relevant excerpts attached as Exhibit A).

Under the applicable R-40 zoning, which allows for one single-family dwelling unit per 40,000 sq. ft. (slightly less than one acre),[20] Plaintiffs could potentially subdivide the 100 acre property and construct numerous houses appropriate for families with children.

### B. Plaintiffs Are Improperly Seeking To Invalidate The Local Land Use Administrative Process Ab Initio.

All of these options existed prior to the filing of this lawsuit. Despite the knowledge and experience of some of the Plaintiffs as real estate investors and developers, and their local counsel's knowledge of New York land use law, Plaintiffs have chosen not to explore the numerous ways that their land could accommodate their proposed use. They chose not to submit applications and definite plans for a formal review and public hearing process. Plaintiffs have willingly and knowingly ignored the local land use regulations and procedures under the Village law and New York State law concerning land use. They have also flown in the face of the laws of the Second Circuit concerning the ripeness doctrine. Plaintiffs made a decision to file a lawsuit in federal court and publicize on the Internet and in news articles and interviews rather than submit an application for a thoughtful plan of development to the Village. Plaintiffs never had standing and cannot acquire it through wild accusations lacking any basis in law or fact. Plaintiffs' claims should be dismissed.

## II. PLAINTIFFS' CLAIMS ALSO FAIL TO STATE A CLAIM UNDER FED.R.CIV.P. 12(b)(6).

For the reasons set forth in our opening Memorandum, Plaintiffs have failed to state a claim for which relief can be granted by this Court. The rules of civil procedure overlap such

---

[20] *See* § 130-9(A)(1). Permitted uses; § 130-12. R-40 District, Zoning Code, available at http://www.pomonavillage.com/code/Code%20v08-2007.pdf; (Def. Mot. to Dismiss Ex. O).

that completely groundless claims, if not dismissed for lack of subject matter jurisdiction, will be swept out as failing to state a claim upon which relief can be granted.

There are no actual physical site plans for the project; Defendants' only knowledge of what the Plaintiffs allegedly cannot construct has come from the documents filed with this Court and what they been able to obtain online and from other sources. No administrative record exists; and there has been no process, no action and no decision. Public hearings, not litigation, are the appropriate forum for any negotiation and discussion between the Plaintiffs, as applicants, and the Village. The public process is the heart of local land use administration and it will be eviscerated if Plaintiffs' claims are allowed to proceed.[21]

The standard for review of an agency action is narrowly defined. "An agency action can be set aside if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Natural Resources Defense Council v. Fox, 93 F.Supp.2d 531, 537 (S.D.N.Y. 2000) (internal citations and quotation marks omitted). Every factor for consideration under the applicable standard of review pertains to the review and decision-making process by the administrative agency. There is nothing for this Court to consider and therefore no standard of review to be applied where the local administrative agency has not been given any opportunity to formally review the proposed project and has never issued a final decision from which an appeal could be taken. This Court cannot provide relief where the Plaintiffs cannot articulate a precise injury or even identify an appropriate form of relief. Dismissal of Plaintiffs' claims is appropriate.

[21] Plaintiffs' chosen course of action also undermines residents' due process rights in the land use process. By leap-frogging over public hearings, members of the community have been excluded from what was intended to be a public decision-making process.

**CONCLUSION**

For all of these reasons, the Court should dismiss the Second Amended Complaint in its entirety, and grant such other relief as it deems just and proper.

Dated: New York, New York
January 28, 2008

ROBINSON & COLE LLP
Attorneys for Defendants

By: [signature]

Joseph L. Clasen (JC 1759)
William J. Kelleher (WK 2146)
885 Third Avenue
Suite 2800
New York, New York 10022
Telephone: (212) 451-2900
Facsimile: (212) 451-2999

Marci A. Hamilton (admission pending)
36 Timber Knoll Drive
Washington Cross, PA 18977

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Congregation Rabbinical College of Tartikov, Inc., Rabbi Mordechai Babad, Rabbi Wolf Brief, Rabbi Hermen Kahana, Rabbi Meir Margulis, Rabbi Gergely Neuman, Rabbi Akiva Pollack and Kolel Belz of Monsey,<br><br>Plaintiffs,<br><br>-against-<br><br>Village of Pomona, NY; Board of Trustees of The Village of Pomona, NY; Nicholas Sanderson, as Mayor; Ian Banks, Alma Sanders Roman, Rita Louie and Brett Yagel, as Trustees and in their Official Capacities,<br><br>Defendants. | x<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | Civil Action No.:<br>7:07-cv-06304 (KMK)(GAY)<br><br>**CERTIFICATE OF SERVICE** |

I, William J. Kelleher III, Esq., hereby certify that on this 28th day of January 2008, I caused Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss to be served via first class mail, postage prepaid, upon the following:

Paul Savad, Esq.
Susan Corcoran, Esq.
Paul Savad & Associates
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954

John George Stepanovich, Esq.
Lentz, Stepanovich & Bergethon P.L.C.
448 Viking Avenue
Suite 370
Virginia Beach, Virginia 10019

Robert Leo Greene, Esq.
Roman P. Storzer, Esq.
Storzer & Greene PLLC
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20036

                    Robinson & Cole LLP

By: [signature]

William J. Kelleher III, Esq.
885 Third Avenue, Suite 2800
New York, New York 10022
Phone: (212) 451-2900

Subscribed and sworn to
before me this 28th day January 2008

[signature]
Notary Public

My Commission Expires: 4-30-2012