**EXHIBIT A**

# Chapter 118

## SUBDIVISION OF LAND

[HISTORY: Adopted by the Board of Trustees of the Village of Pomona 1-18-1969; amended in its entirety 2-8-1988 by L.L. No. 1-1988. Subsequent amendments noted where applicable.]

### GENERAL REFERENCES

Planning Board — See Ch. 25.

Building construction — See Ch. 47.

Electrical standards — See Ch. 61.

Fees — See Ch. 67.

Flood damage prevention — See Ch. 79.

Sewers — See Ch. 110.

Streets and sidewalks — See Ch. 115.

Zoning — See Ch. 130.

Street specifications — See Ch. A134.

## ARTICLE I

### General Provisions

**§ 118-1. Authority of Planning Board to approve plats.**

Pursuant to the provisions of § 7-728 of the Village Law, the Board of Trustees authorizes the Planning Board to review and approve or disapprove subdivision plats showing lots, blocks or sites, with or without roads, within the area of the Village.

**§ 118-2. Compliance required. [Amended 4-23-2007 by L.L. No. 5-2007]**

A.    Land within the Village of Pomona may be subdivided into lots, blocks or sites, with or without streets or highways, only if approved by the Planning Board in accordance with the procedures and requirements as set forth in this chapter and only if the approved plat is filed in the office of the County Clerk, County of Rockland. Construction, excavation, filling, regrading, clearing of vegetation or other similar activities related to a proposed subdivision shall not be commenced until a subdivision shall have been approved by the Planning Board and filed with the County Clerk.

B.    In addition to the requirements of this chapter, every application for subdivision approval shall be in compliance with all other requirements of the Village Code, including but not limited to the provisions of Chapter 126 of this Code.

**§ 118-3. Resubdivision.**

A resubdivision, as defined herein, is subject to the same procedure, rules and regulations as are applicable to a subdivision.

### § 118-4. Policy; general requirements. [Amended 2-28-1994 by L.L. No. 1-1994]

It is declared to be the policy of the Village to consider land subdivisions as part of a plan for the orderly, efficient and economical development of the Village. Land to be subdivided shall be of such character that it can be used safely for building or development purposes without danger to health or peril from fire, flood or other menace and without resulting in significant damage to the ecology of the area in which it is located. Proper provision shall be made for drainage, water, sewerage, electric, telephone, gas and other needed improvements. The proposed streets shall compose a convenient and safe system and shall be properly related to potential streets on adjoining properties. Streets shall be of such width, grade and location as to accommodate the prospective traffic, to afford adequate light and air and to facilitate fire and police protection. Where the Planning Board has made a finding that a proper case exists for requiring that a park or parks be suitably located for playgrounds or other recreational purposes within the Village, it can require that the same be shown by the developer on the subdivision plat. The Planning Board shall require access to undeveloped lands when possible.

### § 118-5. Building permits.

No permit shall be issued for the erection of any building within a proposed subdivision until said subdivision has been duly approved by the Planning Board and filed in the office of the County Clerk.

### § 118-6. Modification of regulations.

Where the Planning Board finds that, because of the special circumstances of a particular case, extraordinary hardship may result from strict compliance with these regulations, it may modify the regulations so that substantial justice may be done and the public interest secured; provided, however, that any such modification will be consistent with the spirit and intent of these regulations and all Village laws. In permitting any such modification, the Planning Board shall attach such conditions as are, in its judgment, necessary to secure substantially the objectives of the standard or requirement so modified.

### § 118-7. Amendments.

A.    These regulations may be amended by the Planning Board, after public hearing and subject to the approval of the Board of Trustees. Notice of the time, place and purpose of such hearing shall be given by publication in the official Village newspaper at least five days prior to the date on which it is to be held. A copy of the proposed amendment shall be placed on file in the office of the Village Clerk, where it shall be available for public inspection during normal working hours for at least five days before such hearing.

B.    Applicability. Amendments adopted by the Planning Board shall take effect on the date of approval by the Board of Trustees or at such time as provided in the local law approving and adopting such amendments.

### § 118-8. Adoption of regulations.

In order that land may be subdivided in accordance with the authority, jurisdiction and policy as set forth above, these regulations are hereby adopted.

ARTICLE II

Definitions

**§ 118-9. Terms defined.**

For the purpose of these regulations, certain words and terms used herein are defined as follows (except where specifically defined herein, all words and terms shall carry their customary meaning):

BOARD OF TRUSTEES — The Board of Trustees of the Village of Pomona, New York.

BOULEVARD [Added 2-22-1999 by L.L. No. 3-1999] — Two roads or streets so situated that they are separated only by an land area or median:

A.    Having a substantially constant width for the length of the two roads or streets which it separates; and

B.    Which is insufficient to satisfy the bulk requirements of this Code for a building lot.

BUILDING LOT — Any lot upon which a principal building can be constructed in conformance with the requirements of the Zoning Law.[51]

CALIPER — The diameter of a tree trunk, generally measured in inches, at a height of three feet above ground level.

CODE ENFORCEMENT OFFICER — The Code Enforcement Officer of the Village of Pomona or his duly authorized representative.

CONSTRUCTION PLANS — The maps and engineering drawings, described in §§ 118-29 and 118-31 of this chapter, accompanying a subdivision plat and showing the specific location and design of improvements to be installed in the subdivision in accordance with these regulations.

EASEMENT — Authorization by a property owner for the use by another, and for a specified purpose, of any designated part of his property.

ENGINEER or LICENSED PROFESSIONAL ENGINEER — A person licensed as a professional engineer by the State of New York.

LOT — A parcel of land not divided by streets.

MAJOR SUBDIVISION — Any subdivision not classified as a minor subdivision, including but not limited to subdivisions of four or more lots, or any size subdivision requiring any new street or extension of municipal facilities.

MASTER OR COMPREHENSIVE PLAN — A comprehensive plan, prepared by the Planning Board pursuant to § 7-722 of the Village Law, which indicates the general locations recommended for various functional classes of public works, places and

---

[51]. Editor's Note: See Ch. 130, Zoning.

structures and the general physical development of the Village, and includes any unit or part of such plan separately prepared and any amendment to such plan or parts therein.

MINOR SUBDIVISION — Any subdivision containing not more than three lots fronting on an existing street, not involving any new street or road or the extension of municipal facilities and not adversely affecting the development of the remainder of the parcel or adjoining property and not in conflict with any provision or portion of the Master Plan, Official Map, Zoning Law or these regulations.

OFFICIAL MAP — The map established by the Board of Trustees pursuant to § 7-724 of the Village Law, showing streets, highways, parks and drainage, both existing and proposed.

PLANNING BOARD OR BOARD — The Planning Board of the Village of Pomona.

PLAT — A drawing, in final form, as described in § 118-30 of this chapter, showing a proposed subdivision and containing all of the information required by these or other applicable regulations and certified by a licensed land surveyor or registered engineer.

PRELIMINARY PLAT — A drawing or drawings, clearly marked "preliminary plat," showing the salient features of a proposed subdivision, submitted to the Planning Board for purposes of consideration prior to submission of the plat in final form and of sufficient detail to apprise the Planning Board of the layout of the proposed subdivision.

PROTECTED TREE — Any tree of historical value as determined by resolution of the Board of Trustees or any tree having a circumference of 45 inches or more measured at a height of 4 1/2 feet above existing ground level at the base of the tree on the uphill side. [Added 9-7-2004 by L.L. No. 4-2004]

RESUBDIVISION — Any change of existing property lines or of property lines shown on a plat approved by the Planning Board and filed in the office of the County Clerk.[52]

STREET — An existing state, county, town or Village road or highway or a street shown upon a plat approved by the Planning Board of the Village of Pomona.

STREET, COLLECTOR — A street which serves or is designed to serve primarily the function of carrying traffic from minor streets to major streets.

STREET, DEAD-END or CUL-DE-SAC — A street or a portion of a street with only one vehicular traffic outlet.

STREET, LOCAL — A street which serves or is designed to serve primarily as an access to abutting residential properties.

STREET PAVEMENT — The wearing or exposed surface of the street right-of-way designed to be used by vehicular traffic.

STREET RIGHT-OF-WAY WIDTH — The distance between property lines measured at

---

[52]. Editor's Note: The definition of "sketch plan," which immediately followed this definition, was repealed 2-28-1994 by L.L. No. 1-1994.

right angles to the center line of the street.

SUBDIVIDER — Any person, firm, corporation, partnership or association who shall lay out any subdivision or part thereof, as defined herein, either for himself or others.

SUBDIVISION — The division of any parcel of land, regardless of use, into two or more lots, plots, blocks, sites or parcels, with or without the creation of new streets, for the purpose, whether immediate or future, of transfer of ownership or building development, and shall include resubdivision as defined herein.

SUBDIVISION PLAT or FINAL PLAT — A drawing, in final form, showing a proposed subdivision and containing all information or detail required by law and by these regulations, to be presented to the Planning Board for approval and which, if approved, may be duly filed or recorded by the applicant in the office of the County Clerk.

SURVEYOR — A person licensed as a land surveyor by the State of New York.

VILLAGE CONSTRUCTION STANDARDS AND SPECIFICATIONS — The standards and specifications adopted by the Board of Trustees for the construction of streets and related subdivision improvements, and all amendments thereto.[53]

VILLAGE ENGINEER — The duly designated Engineer of the Village of Pomona.

ZONING LAW — The Zoning Law of the Village of Pomona, New York, and all amendments thereto.[54]

ARTICLE III

Application Procedure

§ 118-10. Steps outlined; time periods. [Amended 2-28-1994 by L.L. No. 1-1994]

A.    Whenever any subdivision of land is proposed and before any contract for the sale is carried out or title to any part thereof is transferred, the subdividing owner or his duly authorized agent shall proceed to secure approval of the proposed subdivision in accordance with the following steps:

(1)    Preparation of preliminary plat.

(2)    Preparation of final plat.

B.    The time within which public hearings are required to be held by the Planning Board shall be calculated from the date of completion of procedures required, if any, by the New York State Environmental Quality Review Act (SEQRA).[55]

---

[53]. Editor's Note: See Ch. A134, Street Specifications.

[54]. Editor's Note: See Ch. 130, Zoning.

[55]. Editor's Note: See Article 8 of the Environmental Conservation Law.

§ 118-11. Preliminary plat. [56] [Amended 2-28-1994 by L.L. No. 1-1994]

A.  Application. Prior to requesting approval of a proposed final plat, the applicant shall file an application for approval of a preliminary plat on forms available from the Planning Board. Said application shall:

   (1)  Be accompanied by an application fee, payable to the Village of Pomona, in the amount shown in the fee schedule as adopted by the Board of Trustees. Every subsequent submission of a new preliminary plat will be considered a new application and shall be accompanied by a new fee.

   (2)  Include all land which the applicant proposes to subdivide and all land immediately adjacent extending 100 feet therefrom or of that directly opposite thereto extending 100 feet from the street frontage of such opposite land, with the names of owners as shown in the Village Clerk's office. Where the Planning Board determines the need, a larger portion of adjacent lands may be required to be shown.

   (3)  Be accompanied by a minimum of 12 copies of the preliminary plat as described in § 118-28 of this chapter.

   (4)  Be accompanied by a minimum of four copies of construction plans as described in § 118-29 of this chapter.

   (5)  Be accompanied by a complete environmental assessment form or draft environmental impact statement, as required by the Planning Board under the New York State Environmental Quality Review Act (SEQRA).[57]

   (6)  Be accompanied by complete drainage calculations in accordance with Rockland County Drainage Agency standards.

B.  Field trip. After receipt of the application by the Planning Board clerk, but before the public hearing on the application, the Planning Board may schedule a field trip to the site of the proposed subdivision, accompanied by the applicant or his representative. In order to facilitate field inspection and review of the site of the proposed subdivision, temporary staking along the center line of all proposed roads in the subdivision will be required in time for such field trip, or, if impracticable, the Planning Board shall permit a suitable alternative procedure.

C.  Planning Board action.

   (1)  The Planning Board shall hold a public hearing within 62 days after the receipt of a complete preliminary plat application by the clerk of the Planning Board. Such hearing shall:

      (a) Be advertised at least once in the official Village newspaper at least five days

---

[56]. Editor's Note: Former § 118-11, Sketch plat, was repealed 2-28-1994 by L.L. No. 1-1994. This local law also provided for the renumbering of former §§ 118-12 through 118-28 as §§ 118-11 through 118-27.

[57]. Editor's Note: See Article 8 of the Environmental Conservation Law.

before such hearing.

(b) Be noticed, by certified mail, return receipt requested, to each owner of the property within 500 feet of the perimeter of the subject property as indicated on the application for subdivision approval and at least 10 days prior to the public hearing.

(c) Be advertised by the installation of four posters, furnished by the Planning Board Secretary, on the four closest public roads in visible locations surrounding the proposed subdivision at least 10 days prior to the public hearing.

(2)     The Planning Board shall, thereafter, approve, with or without modification, or disapprove such preliminary plat within 62 days after the public hearing. The grounds for a modification or for disapproval shall be stated upon the record of the Planning Board. Within five days of the approval of the preliminary plat, it shall be certified by the clerk of the Planning Board as having been granted preliminary approval, a copy filed in the clerk's office and a certified copy mailed to the owner. Notwithstanding the foregoing provisions, the time in which the Planning Board must take action on the preliminary plat may be extended by mutual consent of the applicant and the Planning Board.

D.     Expiration of approval. Approval of a preliminary plat application expires if the owner has not submitted a proposed plat in final form within six months of the date of the approval of the preliminary plat.

### § 118-12. Final plat.

Application for final subdivision plat approval shall be filed with the Planning Board Secretary. Such application shall comply with the modifications, if any, required by the Planning Board at the time of preliminary plat approval and shall be submitted in duplicate on forms available from the Planning Board Secretary.

A.     Items to accompany application. Application for final plat approval shall be accompanied by the following:

(1)     Twelve copies each of a final subdivision plat and final construction plans conforming to all requirements of §§ 118-30 and 118-31 of this chapter as well as all conditions, if any, of preliminary plat approval.

(2)     A final subdivision application fee, payable to the Village of Pomona, in the amount specified in the fee schedule as adopted by the Board of Trustees. Every subsequent submission of a new final plat shall be considered a new application and shall be accompanied by a new fee.

(3)     An affidavit of ownership, which shall include all contiguous holdings of the owner and the dates the respective holdings of land were acquired, together with the liber and page of each conveyance to the present owner as recorded in the Rockland County Clerk's office. The affidavit shall indicate the legal owner of the property, the contract owner of the property, the date contract of sale was executed and, if any corporations are involved, a complete list of all directors,

officers and stockholders of each corporation owning more than 5% of any class of stock.

(4)     Where subdivision roads and/or other improvements are involved and where the applicant intends to post a performance bond or other acceptable security to cover the cost of improvements, a statement from the applicant's engineer giving the estimated cost of construction, together with the quantities and unit costs used in making the estimate. [Amended 2-28-1994 by L.L. No. 1-1994]

(5)     A list of any and all waivers of the provisions of these regulations which the applicant requests the Planning Board to grant in his specific case, with the reasons therefor.

B.     Action by the Planning Board. [Amended 2-28-1994 by L.L. No. 1-1994]

(1)     If the final plat application submitted to the Planning Board is in substantial agreement with the preliminary plat previously approved, the Planning Board shall, by resolution, conditionally approve, with or without modification, disapprove or grant final approval and authorize the signing of such plat within 62 days of its receipt by the secretary to the Planning Board.

(2)     If the final plat application submitted to the Planning Board is not in substantial agreement with the approved preliminary plat, the Planning Board may: require further review under SEQRA;[58] hold a public hearing on such final plat within 62 days of receipt of the application, said hearing to be advertised in the official Village newspaper at least five days in advance of such hearing; or by resolution conditionally approve, with or without modification, disapprove or grant final approval and authorize the signing of such plat, within 62 days after the date of the public hearing. The grounds for any modification or disapproval shall be stated upon the record.

(3)     The time within which the Planning Board must take action on such plat may be extended by the mutual consent of the owner and the Planning Board.

C.     Public hearing. In addition to the requirements of § 118-11C of the within code on public hearings, prior to such hearing the Planning Board Secretary shall: [Amended 2-28-1994 by L.L. No. 1-1994]

(1)     File a copy of the subdivision plat and construction plans at the Village Clerk's office for public review at least five days prior to the public hearing.

(2)     Submit a copy of the subdivision plat and final construction plans to the County Planning Board where a proposed road within the subdivision intersects with a state or county highway or where drainage lines connect directly into any channel lines established by the county, such plat and construction plans to be received at least 10 days prior to the date of the public hearing.

---

[58] .  Editor's Note: See Article 8 of the Environmental Conservation Law.

D.      Filing plat by sections. Prior to granting its approval, the Planning Board may permit or require the plat to be subdivided into two or more sections and may impose such conditions upon the delineation and filing of the sections as it may deem necessary to assure the orderly development of the plat. Approval of the sections, subject to any conditions imposed by the Board, shall be granted concurrently with approval of the plat. If the owner files only a section of an approved plat within 62 days of the date of approval, such section shall encompass at least 10% of the total number of lots contained in the approved plat. Within 30 days of the filing of a section of an approved plat with the County Clerk, the owner shall file the entire approved plat with the Village Clerk. The Planning Board may deny approval of any subsequent section if a prior approved section has not first been satisfactorily completed. [Amended 2-28-1994 by L.L. No. 1-1994]

E.      Action by applicant. Based upon the Planning Board resolution, the applicant shall have the final subdivision plat and construction plans revised, if necessary, in accordance with said resolution, and submit 12 copies of such revised maps to the Planning Board Secretary.

F.      Approval of construction plans. The construction plans, revised as necessary to meet the requirements of the Planning Board resolution, shall be endorsed by the Planning Board Chairman or other duly authorized member of the Planning Board as "approved" prior to the signing of the plat or the beginning of any construction work within the proposed subdivision.

G.      Additional documents and information required. Prior to the endorsement of the Planning Board Chairman on the final subdivision plat, the following additional documents and information shall be submitted by the applicant:

(1)     An engineering inspection fee, payable to the Village of Pomona, as specified in the fee schedule adopted by the Board of Trustees.[59]

(2)     Where streets or park areas are included within the proposed subdivision, a formal offer of cession to the Village of all such streets and park areas, in form approved by the Village Attorney, except where the proposed final subdivision plat has a notation to the effect that no offer of dedication of such streets and park areas, or any of them, is made to the public. The applicant shall deliver a deed to all such lands in proper form for recording, together with a title policy for the Village of Pomona in a sum not less than $10,000, which sum shall be determined by the Village Attorney before the signing of the final subdivision plat.

(3)     (Reserved)[60]

(4)     A written agreement, in form satisfactory to the Village Attorney, permitting entry by the Village onto any streets, easements and park areas for the purposes

---

[59]. Editor's Note: See Ch. 67, Fees.

[60]. Editor's Note: Former Subsection G(3), which provided for payment of a recreation fee, was repealed 2-28-1994 by L.L. No. 1-1994.

of inspecting and installing any required improvements in the event of the failure of the applicant to make such installations or to properly maintain such installations until such time as the Village assumes the responsibility for them.

H.  Final approval of subdivision plat. Upon resolution granting conditional approval of a final plat, the Planning Board shall empower the Chairman or other duly authorized member to sign the plat, subject to completion of any requirements as may be stated in the resolution. Within five days of such resolution, the plat shall be certified by the secretary of the Planning Board as conditionally approved and a copy filed in such secretary's office. A copy of the resolution shall be mailed to the owner, which copy shall include a statement of such requirements which, when completed, will authorize the signing of the conditionally approved final plat. Upon completion of such requirements, the plat shall be signed by the Chairman or other duly authorized member of the Planning Board. Conditional approval of a final plat shall expire 180 days after the date of the resolution granting conditional approval, unless such requirements have been certified as completed. The Planning Board may, however, extend the time in which a conditionally approved plat in final form must be submitted for signature, if, in its opinion, such extension is warranted by the particular circumstances thereof. Such extensions shall not exceed two additional 90 day periods. [Amended 2-28-1994 by L.L. No. 1-1994]

I.  Filing plat with the County Clerk. The approved plat shall be filed with the Rockland County Clerk within 62 days of the date of Planning Board signing. Simultaneously with the filing of the plat, the Secretary to the Planning Board shall record the agreement of dedication, together with such legal documents as shall be required to be recorded by the Village Attorney. [Amended 2-28-1994 by L.L. No. 1-1994]

## ARTICLE IV

### Required Improvements and Agreements

**§ 118-13. Completion of improvements.** [Amended 2-28-1994 by L.L. No. 1-1994]

A.  Endorsement of final plat. After adoption of a resolution approving a final subdivision plat and before the plat is endorsed by the Planning Board Chairman or other duly authorized member, the applicant shall be required to complete, at his expense and without reimbursement by the Village or any special district, all street and other improvements as shown on the approved construction plans or otherwise specified in the resolution, except the final street wearing course and sidewalks, or, as an alternative, file with the Board of Trustees acceptable security, in an amount fixed by the Planning Board in its resolution, to secure to the Village the satisfactory construction, installation and completion of such improvements. All such improvements must be completed within three years of the date of the Planning Board resolution. All improvements shall be completed to the satisfaction of the Planning Board, in accordance with the approved construction plans, the requirements of these regulations and the Village construction standards and specifications.

B.  "Acceptable security" shall mean and be limited to: a performance bond issued by

improvements, it is determined by the Planning Board that unforeseen conditions make it necessary to modify the location or design of any improvements, the Board may modify the terms and conditions of the approval so as to require such changes as may be necessary to comply with the spirit and intent of the Board's original approval and to conform to accepted engineering practices.

ARTICLE V

Design Requirements

§ 118-21. Minimum standards.

The Planning Board, in considering an application for the subdivision of land, shall be guided by the following considerations and standards, which standards shall be deemed to be the minimum requirements for the convenience, health, safety and welfare of the Village.

§ 118-22. General requirements.

A.    Character of land. Land to be subdivided shall be of such character that it can be used safely for building purposes without danger to health or peril from fire, flood or other menace. Land subject to such hazards shall not be subdivided nor developed for residential purposes nor for such other uses as may increase danger to health, life or property or aggravate a flood hazard, but such land may be set aside for such uses as shall not involve such danger nor produce unsatisfactory living conditions.

B.    Preservation of natural features.

   (1)    Land to be subdivided shall be designed in reasonable conformity to existing topography in order to minimize grading, cut and fill and to retain, insofar as possible, the natural contours, to limit stormwater runoff and to conserve the natural vegetative cover and soil. No tree, topsoil or excavated material shall be removed from its natural position except where necessary and incidental to the improvement of lots and the construction of streets and related facilities in accordance with the approved plan. Topsoil shall be restored to a depth of at least six inches and properly seeded and fertilized in those disturbed areas not occupied by buildings or structures.

   (2)    Existing natural features which are of ecological, aesthetic or scenic value to residential development or to the Village as a whole, such as wetlands, watercourses, water bodies, rock formations, stands of trees, historic spots and similar irreplaceable assets, shall be preserved, insofar as possible, through harmonious design of the subdivision, and, where appropriate, the Planning Board may require the inclusion of such features in permanent reservations.

   (3)    In furtherance of the provisions of this section, the provisions of Chapter 119 of this Code shall be followed where applicable. [Added 3-2-1998 by L.L. No. 1-1998]

C.    Frontage on improved streets. The area proposed to be subdivided shall have frontage on and direct access to an existing Village, town, county or state highway or a street shown on a plat approved by the Planning Board of the Village of Pomona.

If such street is private, it shall be improved to the satisfaction of the Planning Board or there shall be a bond held by the Village to guarantee such improvement.

### § 118-23. Streets.

A.  Location, width and improvement. Streets shall be suitably located, of sufficient width and adequately improved to accommodate the expected traffic and to afford satisfactory access to police, fire-fighting, snow removal and other utility and road maintenance equipment and shall be coordinated so as to compose a safe and convenient system.

B.  Relation to topography. Streets shall be appropriately related to the natural topography and shall be arranged so as to obtain as many as possible of the building sites at or above the grades of the streets. A combination of steep grades and curves shall be avoided.

C.  Intersections. Cross (four-cornered) street intersections shall be avoided insofar as possible, except at important traffic locations. A distance at least equal to the minimum required lot width, but not less than 150 feet, shall be maintained between center lines of offset intersecting streets. Within 60 feet of the center of an intersection, streets shall be at approximately right angles and grades shall be limited to 1.5%. When two streets intersect at an angle of less than 75°, special pavement, channelization, right-of-way and/or sight easement restrictions may be required by the Planning Board.

D.  Continuation of streets into adjacent properties.

    (1)  The arrangement of streets shall provide for their construction between adjacent properties where such continuation is determined necessary for proper traffic movement, effective fire protection, efficient provision of utilities, snow removal and other services. Alternatively, if a street continuation is not determined to be warranted by the circumstances or would result in unsafe traffic conditions or otherwise jeopardize the public safety and welfare, the Planning Board may require such street to be terminated short of the boundary lines of the subdivision.

    (2)  Where a continuation of a street beyond the boundaries of a subdivision is warranted, but the adjacent property is undeveloped and the street must dead-end temporarily, the Planning Board may require that the right-of-way and all improvements be extended to the property line. A temporary circular turnaround shall be provided on all temporary dead-end streets in excess of 100 feet in length, with a notation on the plat that land outside the normal street right-of-way shall revert to abutting property owners upon continuation of the street. The length of temporary dead-end streets shall normally be limited to not more than double the permitted length of permanent dead-end streets.

    (3)  Where a turnaround exists at the end of a street within an adjoining development to which a proposed street is to connect, the applicant may be required to remove the portions of the turnaround pavement outside of the normal width of the traveled way, perform any necessary reconstruction of the

reserve, clear, grade, pave and otherwise improve an area of such size and location as will provide a safe and suitable place for the use of children awaiting school buses. In general, the size of such area shall not be less than 100 square feet, and no dimensions shall be less than eight feet. Such area shall be included within the street right-of-way and shall be maintained by the holder of fee title to the street. The layout and design shall be subject to Planning Board approval.

### § 118-25. Lots.

A.    Lot arrangement. The lot arrangement shall be such that there will be no foreseeable difficulty, for reasons of topography or other conditions, in securing building permits to build on all lots in compliance with the Zoning Law, the County Health Department regulations and other applicable regulations. If a proposed subdivision includes land that is zoned for commercial or industrial purposes, the layout of the subdivision with respect to such land shall make such provision as the Planning Board may require for safe and convenient access to such automobile parking and loading and unloading spaces as may be required by the Zoning Law or otherwise for safe and convenient service access to such land.

B.    Driveways. Approximate driveway locations shall be shown on the construction plans. The maximum driveway gradient to the building site shall not exceed 15%, and the intersection of driveways with the road shall be so oriented and graded that vehicles may use the driveways safely. In the event that a proposed driveway has a gradient to the building site of more than 12 1/2 but not more than 15%, the building inspector, with the advise and cooperation of the Village Engineer shall require at least two parking spaces on the lot in question, located immediately adjacent to the public right-of-way. In the event that a proposed driveway has a gradient to the building site of more than 12 1/2% but not more than 15%, the building inspector shall refer the application to the Planning Board for site plan review. In no event shall the gradient of a driveway exceed 15% to the building site. The Planning Board may require that the applicant submit necessary topographic and design information to demonstrate that the lot layout will allow driveways that meet these criteria and provide proper drainage. [Amended 10-27-1997 by L.L. No. 12-1997]

C.    Lot dimensions.

(1)    Lot area and dimensions shall comply with at least the minimum standards of the Zoning Law for the district in which they are located.[65] Where lots are more than double the minimum required area, the Planning Board may require that they be arranged so as to allow for further subdivision and the opening of future streets where necessary to serve such potential lots, all in compliance with the Zoning Law and these regulations. Where, in the opinion of the Planning Board, lots of larger than minimum size are required for purposes of proper drainage, water supply, waste disposal or the preservation of important ecological features, the Board may require such oversized lots as a condition of plat approval.

---

[65]. Editor's Note: See Ch. 130, Zoning.

(2)     Side lot lines shall generally be at right angles to street lines (or radial to curving street lines) unless the Planning Board allows a variation from this rule to give a better street or lot arrangement. Dimensions of corner lots shall be large enough to allow for erection of buildings observing the minimum front yard setback from both streets.

(3)     Where a proposed subdivision includes an existing residence larger in size than can appropriately be placed on a lot of the minimum size permitted in the zoning district, the Planning Board may require that the lot be of such size and relationship to the proposed street system that the structure will be an appropriate and harmonious part of the subdivision.

(4)     No more than 25% of the minimum lot area required under the Zoning Law may be satisfied by land with unexcavated slopes over 25%, wetlands as defined in Chapter 126 of this Code, floodplain, utility or other easements or rights-of-way, or a combination of said encumbrances. [Added 1-22-1996 by L.L. No. 1-1996; amended 4-23-2007 by L.L. No. 5-2007]

D.    Access from collector streets. Lots shall not, in general, derive access from a collector street, but shall front on a minor interior street. Where driveway access from a collector street may be necessary for two or more adjoining lots, the Planning Board may require that such lots be served by a combined access drive in order to limit the possible traffic hazard on such street. Any such driveways, where permitted, shall be designed in such a way as to provide adequate and convenient area for the turnaround of vehicles so as to avoid requiring them to back into traffic on such streets.

E.    Double-frontage lots. Lots fronting on two streets, other than corner lots, shall be avoided except where deemed essential by the Planning Board in order to provide separation of residential development from major or collector streets or to overcome problems of topography or orientation. The Planning Board may require access limitations and/or buffer landscaping for such double-frontage lots where the Board determines that such measures would be appropriate.

F.    Water bodies. If a subdivision contains a water body or portion thereof, lot lines shall be drawn so as to distribute the entire ownership of the water body among the fees of the adjacent lots, unless the Planning Board approves an alternate plan whereby the ownership of and responsibility for the safety of the water body is so placed that it will not become a Village responsibility. No more than 25% of the minimum lot area required under the Zoning Law may be satisfied by land which is under water or is defined as a wetland by the New York State Freshwater Wetlands Act.[66]

G.    Access across a watercourse. Where a watercourse separates the buildable area of a lot from the street by which it has access, provision shall be made for the installation of a bridge, culvert or other drainage facility, of a design approved by the Planning Board based upon, among other considerations, a recommendation of the Village

---

[66].  Editor's Note: See Art. 24 of the Environmental Conservation Law, § 24-0101 et seq.

Engineer, to provide satisfactory access across such watercourse for fire, police and other emergency equipment.

**§ 118-26. Reservations and easements.**

All reservations and easements shall be clearly indicated on the final subdivision plat, along with appropriate notations indicating the rights which exist with respect to each such reservation and/or easement.

A.     Park reservations. [Amended 2-28-1994 by L.L. No. 1-1994]

    (1)     The Planning Board may require that land be reserved within subdivisions or on individual parcels subject to site plan approval for a park or other recreational purpose. Before the Planning Board may approve a site plan containing residential units, such site plan shall also show, when required by such Board, a park or parks suitably located for playground or other recreational purposes. Such land cannot be required until the Planning Board has made a finding that a proper case exists for requiring that a park or parks be suitably located for playgrounds or other recreational purposes within the Village. Such findings must include an evaluation of the present and anticipated future needs for park and recreational facilities in the Village based on projected population growth to which the particular site plan will contribute. In the event that the Planning Board makes such a finding, but a suitable park or parks of adequate size to meet the requirements cannot be properly located on such subdivision plat or site plan, the Planning Board may require a sum of money in lieu thereof be paid to the Village pursuant to the fee schedule adopted by the Board of Trustees. Any moneys required by the Planning Board in lieu of land for park, playground or other recreational purposes shall be deposited into a trust fund to be used by the Village exclusively for park, playground or other recreational purposes, including the acquisition of property. In making such determination of suitability, the Planning Board shall assess the size and suitability of lands shown on the subdivision plat or site plan which could be possible locations for park or recreational facilities, as well as practical factors including whether there is a need for additional facilities in the immediate neighborhood.

    (2)     Minimum size. Areas for parks shall be of reasonable size for neighborhood playgrounds or other recreational uses. In general, not less than 10% of the area of the subdivision or site plan providing for multifamily housing shall be set aside for these purposes, and sites so reserved for park purposes shall have an area of at least one acre. The Planning Board may require the location of such areas along the boundary of a subdivision or parcel so that additional land may be added at such time as the adjacent property is subdivided or developed.

    (3)     Ownership of park area. The ownership of reservations for park purposes shall be clearly indicated on the plat and established in a manner satisfactory to the Planning Board so as to assure their proper future continuation and maintenance.

B.     Widening or realignment of existing streets. Where a subdivision borders an existing street which is narrower than the recommended right-of-way width as

purposes and the construction of walkways thereon.[67]

§ 118-27. Self-imposed restrictions.

The subdivider may place restrictions on any of the land contained within the subdivision which are greater than those required by the Zoning Law. Such restrictions shall be indicated on the final subdivision plat.

ARTICLE VI

Plat Details

§ 118-28. Preliminary plat. [68]

The preliminary plat, prepared by a licensed land surveyor, shall be clearly marked "preliminary plat," shall be drawn to a convenient scale but not less than one inch equals 100 feet and shall show the following information:

A.     Proposed subdivision name or identifying title; name, address and endorsement of the property owner and subdivider (if other than owner); name and address of the surveyor and/or engineer preparing the plan; scale; approximate true North point; and date.

B.     The location and dimensions of all property lines; the total acreage of the proposed subdivision; the location of any zoning, special district or municipal boundary lines affecting the subdivision; and the names of owners of record of properties adjoining and directly across the street from the proposed subdivision.

C.     The location of all existing structures and pertinent features, including railroads, water bodies, watercourses, wetlands, rock outcroppings, wooded areas, trees having a circumference of 25 inches or more, and stone walls, that may influence the design of the subdivision, plus accurate topography at a vertical contour interval of not more than two feet. The topographic data shall be determined by field survey unless the Planning Board specifically waives this requirement and/or permits the substitution of topographic information obtained from other sources determined satisfactory by the Planning Board. The wetlands delineation shall be certified on the map and in the field by a licensed professional authorized by the New York State Department of Environmental Conservation to make such certifications. [Amended 4-23-2007 by L.L. No. 5-2007]

D.     The location and status of existing streets, easements and rights-of-way (if any); proposals for the layout of new streets (including widths and approximate curve radii) and any proposed easements, rights-of-way and/or reservations.

E.     The names of existing streets and proposed names for new streets.

---

[67]   Editor's Note: Former Subsection G, Street tree easements, as amended, which immediately followed this subsection, was repealed 8-14-2006 by L.L. No. 3-2006.

[68]   Editor's Note: Former § 118-29, Sketch plat, was repealed 2-28-1994 by L.L. No. 1-1994. This local law also provided for the renumbering of §§ 118-30 through 118-33 as §§ 118-28 through 118-31.

F.     The proposed arrangement of lots, including identifying section, lot and block numbers and approximate area and dimensions of each.

G.     Location, size and nature of any area proposed to be reserved for park purposes.

H.     A site location sketch, at a scale of one inch equals 300 feet, showing the general situation of the applicant's property with respect to surrounding properties and streets.

I.     No trees shall be removed from any subdivision nor any change of grade of the land effected until approval of the final plat has been granted. All trees on the plat required to be retained shall be preserved, and all trees, where required, shall be welled and protected against change of grade. A tree map showing the number and location of existing trees of 25 inches or more in circumference measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side shall be submitted with the preliminary plat, keyed to a table listing species, height and circumference. The map shall show the trees intended to be removed during construction for Planning Board approval. The Planning Board, in its discretion, may waive the requirement for individual tree identification where a large number of such trees are situated in an area that is to be preserved as shown with a clearing limit line. A protected tree, as defined in this chapter, shall be preserved unless such tree endangers the health or safety of any person or interferes with construction of a structure on the lot or is a dead tree as determined by a landscape architect or similar professional. The Planning Board may require relocation of a proposed structure on a lot in order to preserve such trees, provided that such relocation complies with the bulk and setback requirements of the Zoning Law. [Added 11-25-2003 by L.L. No. 9-2003[69]; amended 9-7-2004 by L.L. No. 4-2004]

J.     Where the preliminary plat includes only a portion of an applicant's contiguous holding, the applicant shall also indicate, on a sketch at a scale of not less than one inch equals 300 feet, the probable future street system, lot arrangement and location of park and other reservations for the remaining portion of the tract. Such sketch shall be for the purpose of guiding the Planning Board in reviewing the proposed preliminary plat and shall include topographic data, at a vertical contour interval of not more than 10 feet, plus any other information determined necessary by the Planning Board.

K.     Such additional information as may be required by these regulations, the Zoning Law or the Planning Board.

L.     Planning Board approval block as follows:

"Approved as preliminary plat by the Pomona Planning Board

_____ Chairman     _____ Date"

---

[69]. Editor's Note: This local law also renumbered former Subsections I, J and K as Subsections J, K and L, respectively.

### § 118-29. Preliminary construction plans.

The preliminary construction plans shall be drawn at the same scale as the preliminary plat and shall include the following information:

A.     Location and sizes of any existing water, sewer, storm drainage and other utility lines and structures within and nearby the proposed subdivision.

B.     The proposed system for the provision of water supply and fire protection facilities, sewage disposal, stormwater drainage and other utility services.

C.     Proposed street profiles and cross sections showing the approximate grade of proposed streets, the relationship of existing to proposed grades and the proposed vertical curvature along the center line of all new streets. Where steep slopes exist, the Planning Board may require additional cross sections along the proposed street.

D.     Location of all existing and proposed monuments and other subdivision improvements.

E.     Existing and proposed contours at maximum vertical intervals of two feet.

F.     A landscape plan prepared by a licensed landscape architect at an appropriate scale showing the location of trees to be planted to replace trees required to be removed because of the development of the subdivision and including a standard plant schedule showing common name, scientific name, size, quantity and nursery condition of all trees, shrubs and groundcovers proposed. [Added 9-7-2004 by L.L. No. 4-2004[70]]

G.     Such additional information as may be required by these regulations, the Zoning Law or the Planning Board.

### § 118-30. Final subdivision plat.

The final subdivision plat shall be drawn clearly and legibly on transparent tracing cloth with black waterproof ink, at a scale no smaller than one inch equals 100 feet. The sheet size shall not exceed 36 inches 48 by inches. If the size of the proposed subdivision requires a drawing larger than this, two or more sheets may be submitted, with match lines clearly indicated, and an index map shall be prepared on the same size sheet. The final plat shall contain the following information:

A.     Proposed subdivision name or identifying title; name and address of owner of record and of subdivider (if other than owner); identification and seal of the registered engineer or licensed land surveyor who prepared the plat; names of the owners of record of adjoining properties and of properties directly across the street; graphic scale; approximate true North point; and date.

B.     The location and dimensions of all boundary lines of the proposed subdivision and all existing and proposed streets, lot lines, easements and rights-of-way, with sufficient data to readily determine the location, bearing and length of all such lines

---

[70].  Editor's Note: This local law also redesignated former Subsection F as Subsection G.

and to reproduce such lines upon the ground.

C.     The names of all existing and proposed streets.

D.     The locations of all water bodies and watercourses.

E.     The location of all existing buildings, including identification of all buildings to be removed as a condition of plat approval.

F.     The total acreage included in the entire subdivision, and the identification number and acreage of all lots and land reservations within the proposed subdivision.

G.     Location of all existing and proposed monuments.

H.     A site location map, at a scale of one inch equals 300 feet, showing the location of the subject property with respect to neighboring properties and streets.

I.     Notations explaining any drainage, sight slope, road widening, park area or other reservations or easements, including any self-imposed restrictions or covenants.

J.     Lot numbers as directed by the Village Assessor.

K.     Endorsement of approval by the Rockland County Health Department or waiver of jurisdiction.

L.     The following note: "No building permits shall be issued until such time as all required public improvements, except final road wearing courses and sidewalks, if required, are completed to the satisfaction of the Planning Board. Thereafter, certificates of occupancy for such model homes and building permits and certificates of occupancy for additional lots other than the final lots may be issued upon the applicant's delivering to the Village of Pomona, for each lot, in form satisfactory to the Village Attorney, a performance bond or other security agreement in an amount equal to the total cost of the final road wearing course and sidewalks, if required, divided by the number of lots in the subdivision, or upon the applicant's depositing such amount of cash with the Village of Pomona. No building permits shall be issued for the final 10% of all lots until all required public improvements are fully completed to the satisfaction of the Village Engineer and dedicated to the Village of Pomona." [Amended 2-28-1994 by L.L. No. 1-1994]

M.     The following note: "No trucks in excess of 10,000 pounds gross weight shall be permitted to make deliveries to the site before 9:00 a.m. or after 6:00 p.m. Mondays through Fridays nor at any time during weekends and holidays." [Added 9-23-2003 by L.L. No. 7-2003]

N.     The following note: "Any tree that is removed in violation of the clearing limit line, tree map or landscape plan shall be replaced with one or more trees of similar size and species to be determined by the Planning Board. No work shall be performed on the site until the Planning Board has approved a plan for tree replacement and has determined when such planting shall take place." [Added 9-7-2004 by L.L. No. 4-2004[71]]

---

[71]. Editor's Note: This local law also redesignated former Subsections N through P as O through Q, respectively.

O.    Endorsement of owner as follows:

"Approved for filing:

_____ Owner          _____ Date"


P.    Form for endorsement by Planning Board Chairman as follows:

"Approved by resolution of the Pomona Village Planning Board Chairman

_____ Chairman          _____ Date"


Q.    Such additional information as may be required by these regulations, the Zoning Law or the Planning Board.

### § 118-31. Final construction plans.

Final construction plans and profiles shall be prepared for all proposed streets and other required improvements. Plans shall be drawn at the same scale as the final plat and on the same size sheets, but not on the same sheets. The following information shall be shown:

A.    Plans and profiles showing the location and a typical cross section of street pavements, including curbs and gutters, sidewalks, manholes and catch basins; the location of street trees, streetlighting and street signs; the location, size and invert elevations of existing and proposed sanitary sewers, stormwater drains and fire hydrants; the location and size of all water, gas or other underground utilities or structures; and the location and design of any other required improvements.

B.    Profiles showing existing and proposed elevations along the center line of all streets. Where a proposed street intersects an existing street or streets, the elevation along the center line of the existing street or streets within 100 feet of the intersection shall be shown.

C.    The Planning Board may require, where steep slopes exist, cross sections showing existing and proposed elevations of all new streets every 100 feet at five points on a line at right angles to the center line of the street, said elevation points to be at the center line of the street, each property line and points 25 feet inside each property line.

D.    Location, size, elevation and other appropriate description of any existing facilities which will be connected to proposed facilities and utilities within the subdivision.

E.    Where the design of the subdivision requires the regrading of land, the regraded contours shall be shown along with estimates of the quantity of material to be added or removed and the proposed measures to be implemented by the subdivider to rehabilitate the disturbed area or areas.

F.  Title of all sheets; name, address, signature and seal of licensed engineer preparing the construction plans; the date prepared, including revision dates if any; approximate true North point; scale; and consecutive numbering as "sheet ..... of ......"

G.  A notation as follows:

"All specifications, materials and methods of construction to be in accordance with the Village construction standards and specifications and with the requirements of the Planning Board resolution of approval dated ....................., 19 ........."

H.  A notation of approval on all sheets as follows:

"Approved by:

_____ Owner         _____ Date"

and

_____ Planning Board      _____ Date"

I.  Such additional information as may be required by these regulations, the Zoning Law or the Planning Board.

§ 118-32.  Site plan approval. [Added 2-28-1994 by L.L. No. 1-1994]

A.  Planning Board approval. The Planning Board shall have the authority to impose such reasonable conditions and restrictions as are directly related to and incidental to a proposed site plan. The Planning Board shall require, with respect to every site plan, that the applicant take all necessary steps to assure that, during construction, all construction debris, materials and fill are either removed from the construction site or neatly secured on the site so that construction debris, materials and fill are contained within the lot and are not spread to other lots or onto public streets. Such requirement shall not be subject to waiver by the Planning Board. Additionally, the Planning Board may waive any other requirements that are found not to be requisite in the interest of the public health, safety or general welfare or to be inappropriate to a particular site plan. Where a proposed site plan does not comply with zoning regulations, application may be made to the Zoning Board of Appeals for an area variance without the necessity of a decision or determination by the Building Inspector. [Amended 9-22-1997 by L.L. No. 11-1997; 6-26-2000 by L.L. No. 4-2000]

(1)  Approval of a site plan by the Planning Board is required for the development or redevelopment of any building, structure, lot or portion thereof for a new use, the expansion or relocation of any existing use or any change of use of a property or structure. Where site plan approval is required, applications for the issuance of a building permit or certificate of occupancy must be accompanied by a copy of the approved site plan. Approval of a site plan by the Planning Board shall not be required for development or redevelopment of a

single-family detached residence or any accessory building or structure on the same lot as a single-family detached residence except as provided in § 119-1 et seq. [Amended 9-27-2004 by L.L. No. 6-2004]

(2)     All site development and all use of the property shall be in conformance with the approved site plan and such additional standards and safeguards as the Planning Board may impose as a condition of approval. No certificate of occupancy shall be issued until all such requirements have been met. Continued performance with the approved final site plan shall be a requirement of the continuing validity of any such certificate of occupancy.

(3)     If, in the opinion of the Village Engineer, based upon the topography of a lot and the area in the vicinity of such lot, drainage and erosion control measures are required for the protection of neighboring lots and properties and the residents thereof, the Village Engineer shall review the drainage and erosion control measures proposed by a developer and shall make recommendations, as required, for modification of such measures. In addition, the Village Engineer shall recommend an amount to be deposited with the Village Treasurer to assure the proper completion of the approved drainage and erosion control measures, including any modifications required by the Village Engineer after the site plan for the lot is approved. Until the developer shall have deposited said amount with the Village Treasurer, no building permit shall be issued by the Building Inspector and no site work shall be undertaken by the developer. In the event that the Village Engineer, in consultation with the Building Inspector and the Deputy Village Attorney for Code Enforcement, determines at any stage of the development of the lot that the developer has failed to conform with the drainage and erosion controls required by the site plan or has failed to conform with field modifications to the site plan made after the site plan has been approved, the Village Engineer shall recommend to the Mayor that so much of the funds deposited with the Village Treasurer as are required to complete required drainage and erosion control work be withdrawn for that purpose by the Village, and the Mayor shall cause such funds to be withdrawn and such work to be accomplished on no less than 48 hours' written notice to the developer to be delivered personally, by the United States Postal Service, or, in the event that the giving of notice cannot be effected by such methods, by posting such notice conspicuously on the lot being developed. In the event that the required drainage and erosion control measures are complied with by the developer, the Village Engineer, upon being satisfied that such measures are reasonably adequate to protect neighboring properties and residents, shall so notify the Board of Trustees. At the next regular meeting of the Board of Trustees, the Board shall authorize the return to the developer of the funds so deposited. [Added 9-22-1997 by L.L. No. 11-1997]

(4)     In addition to the sanctions contained in the preceding subsections for failure to conform to the final approved site plan, where an applicant fails to take all necessary steps to assure that, during construction, all construction debris, materials and fill are either removed from the construction site or neatly secured on the site so that construction debris, materials and fill are contained within the lot and are not spread to other lots or onto public streets, the applicant shall be

guilty of a violation punishable by a fine not to exceed $250 for a first offense and $500 for each subsequent offense. Each day that the debris is not removed shall be deemed a separate and distinct offense.

B.    General standards. The Planning Board shall not approve a site plan unless it shall find that such plan conforms to the requirements of this chapter, as well as to other applicable laws and regulations, including but not limited to Chapter 126 of this Code. In reviewing the site plan, the Planning Board shall also take into consideration the public health, safety and general welfare and shall impose appropriate conditions and safeguards which are in harmony with the general purpose and intent of this chapter, particularly with respect to the following: [Amended 3-2-1998 by L.L. No. 1-1998; 4-23-2007 by L.L. No. 5-2007]

(1)    Traffic access. The number, location and design of all proposed driveways, in terms of their width, grade, alignment, visibility and relationship to the existing street system and neighboring properties and land uses shall be such that maximum safety will be achieved and function properly provided for.

(2)    On-site circulation and parking. Adequate and convenient off-street parking and loading spaces shall be provided to prevent parking in public streets of vehicles belonging to any persons connected with or visiting the proposed use, and the interior circulation system shall be adequate to provide safe access to all required off-street parking, including access for the handicapped.

(3)    Pedestrian circulation. An adequate and safe pedestrian circulation system shall be provided to permit safe access to uses on the site from the street and from all parking areas.

(4)    Landscaping and buffering. All parking, loading and service areas shall be screened in a reasonable manner at all seasons of the year from the view of adjacent residential lots and streets, the general landscaping of the site shall be designed in an attractive manner and, wherever possible, desirable natural features existing on the site shall be protected and retained.

(5)    Lighting. Outdoor lighting shall be provided on the site to assure the safe movement of vehicles and persons and for security, and such lighting shall not create an undesirable impact on neighboring properties and streets.

(6)    Drainage. The proposed stormwater drainage system shall be adequate to prevent any increase in the rate of surface runoff or otherwise contribute to downstream flooding during a storm of any magnitude up to and including a one-hundred-year-frequency storm.

(7)    Water and sewage. The proposed systems for water supply and sewage collection and disposal on the site shall be adequate, and facilities shall be sufficient to handle the increase in service.

(8)    Solid waste. Adequate provisions shall be made for the storage, collection and disposal of solid waste, and such facilities shall not be permitted to adversely affect neighboring properties or public facilities.

(9)      Building design. The height, location and size of the proposed buildings shall be in conformity with the requirements of this chapter, and all such buildings and other structures shall harmoniously relate to each other, the site and neighboring properties.

(10)     Signage. All proposed signs, including on-site directional signs and building signs, shall meet the requirements of this chapter, shall be adequate to provide reasonable information to the public and shall be in harmony with the design of the site and buildings and with neighboring properties.

(11)     Other public needs. Other public needs and requirements, including the provision of recreation facilities and the protection of the environment, shall also be properly and adequately provided for. In furtherance of this subsection, the provisions of Chapter 119 of this Code shall be followed where applicable.

C.    Procedure. The applicant shall submit to the Planning Board two copies of a completed site plan application form and 12 copies of a site plan. The site plan shall show the information listed below, drawn to a scale of one inch equals 30 feet or larger:

(1)      Title of development, date, revision dates, if any, North point, scale, name and address of record owner and of applicant, if other than owner, and of the engineer, architect, landscape architect or surveyor preparing the site plan.

(2)      Area and boundaries of the subject property, section and lot numbers of the subject property, adjacent zoning and special district boundaries, building or setback lines as required in this chapter, lines of existing streets and adjoining lots as shown on the tax maps and reservations, easements and other areas dedicated to public and special use.

(3)      The names and mailing addresses of all owners of record of all adjacent properties.

(4)      Location and dimensions of all existing buildings, retaining walls, fences, rock outcroppings, wooded areas, single trees with circumference of 25 inches or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side, watercourses, wetlands, water supply, sanitary sewerage, storm drainage, utilities, and any other significant and existing features on the site. Wetland delineations shall be mapped and staked in the field and certified by a licensed professional authorized by the New York State Department of Environmental Conservation to certify said wetlands. All significant existing features within 20 feet of all property lines shall also be shown. [Amended 11-25-2003 by L.L. No. 9-2003; 9-7-2004 by L.L. No. 4-2004; 4-23-2007 by L.L. No. 5-2007]

(5)      Existing and proposed contours at a maximum vertical interval of two feet.

(6)      Proposed use or uses of all land and buildings and, where only a portion of a property is to be occupied by the development, the boundaries and area of such portion (including required screening and setback areas).

(7)　　Outline and elevations of the pavement of abutting streets and of proposed means of vehicular and pedestrian access to and from the site.

(8)　　Location, layout and numbers of any proposed off-street parking and loading spaces.

(9)　　Location and layout of any proposed recreation areas.

(10)　　Proposed finished floor elevation of buildings, finished grade of walls, pavements and storm drains.

(11)　　Detailed construction plans of proposed retaining walls, steps, ramps, paving and drainage structures.

(12)　　Expected storm drainage loads.

(13)　　Estimate of all earthwork, including the quantity of any material to be imported to or removed from the site, or a statement that no material is to be removed or imported.

(14)　　Location and dimensions of all proposed water supply, sanitary sewerage, storm drainage and other utility lines and equipment, including connections to existing facilities.

(15)　　Detailed landscaping plan including type, size and location of all materials used and plans for buffer screening and fencing.

(16)　　Proposed location, type, design, size, color and illumination of all signs.

(17)　　Proposed type, design, mounting height, location, direction, power and timing of all outdoor lighting.

(18)　　Conditions specified by the Zoning Board of Appeals in the approval of any variance or special permit related to the subject property.

(19)　　The following note shall be shown on the site plan: "No trucks in excess of 10,000 pounds gross weight shall be permitted to make deliveries to the site before 9:00 a.m. or after 6:00 p.m. Mondays through Fridays nor at any time during weekends and holidays." [Added 9-23-2003 by L.L. No. 7-2003]

D.　　Environmental review. Where required by the New York State Environmental Quality Review Act (SEQRA),[72] additional information concerning the environmental impact of the proposed development may be required as a part of the site plan application.

E.　　Review by other agencies.

(1)　　Village agencies and officials. [Amended 9-25-2000 by L.L. No. 7-2000]

(a) The Planning Board shall submit copies of the site plan to the Village

---

[72]. Editor's Note: See Article 8 of the Environmental Conservation Law.

Engineer, Building Inspector and Architectural Review Board or other Village agencies and officials as it deems appropriate, all of which shall submit a written report within 30 days of the date of forwarding for review and report. In the case of the Building Inspector, the report shall include a recommendation as to whether the proposed project shall be divided into phases, the precise number of which shall be recommended by the Building Inspector. However, the Planning Board shall have the authority to require phased site plan review whether or not recommended, and regardless of the source of the information upon which the Planning Board bases its decision to require phased site plan review. In the event that the Planning Board decides to adopt the recommendations of the Building Inspector for phased site plan review, or in the event that the Planning Board decides to require phased site plan review based upon information or recommendations other than the recommendation of the Building Inspector, the phases shall include, but not necessarily be limited to, tree clearing, structural measures for erosion control installation, drainage improvements, driveway installation and construction of the building. Each such phase shall require a separate written certificate of compliance, to be issued by the Building Inspector, upon his being satisfied that the required work for each such phase has been satisfactorily completed. Such certificate of compliance shall contain an authorization for the builder to proceed to the next succeeding phase, if any. There shall be mandatory inspection of each building site to which this chapter shall be applicable, after each rain event, as well as biweekly, whether or not there is a rain event. [Amended 12-23-2002 by L.L. No. 7-2002]

(b) Written inspection reports shall be prepared on a regular basis by the Building Inspector or the Village Engineer. In the event that an inspection report discloses violations of the approved erosion control plan for the project, the builder shall be required to remedy the violation immediately. If the violation of the erosion control plan is not corrected completely within three days of the date of notice of the violation to the builder, the Building Inspector shall issue a stop-work order pursuant to Chapter 47 of this Code. The Planning Board may submit copies to the appropriate fire district, the Rockland County Drainage Agency or the New York State Department of Transportation for information, review and comment regarding facilities under their jurisdiction, and to any other county, state or federal agency with jurisdiction. [Amended 11-13-2000 by L.L. No. 8-2000]

(2)     The Planning Board shall refer to the Rockland County Planning Board for its recommendation all matters within the provisions of Article 12-B, §§ 239-l and 239-m, of the General Municipal Law which includes real property lying within 500 feet of the boundary of any city, Village or town, or from the boundary of any existing or proposed county or state parkway, thruway, expressway, road or highway, or from the existing or proposed right-of-way of any stream or drainage channel owned by the county or for which the county has established channel lines, or from the existing or proposed boundary of any state-owned land on which a public building or institution is situated, and any special permit

or variance affecting such use or property within a distance of 500 feet. The Rockland County Planning Board shall render its decision within 30 days of referral or within an extended period if agreed upon. If the Rockland County Planning Board fails to report within such thirty-day period or such longer period as has been agreed upon by it and the Planning Board, the Planning Board may act without such report. If the Rockland County Planning Board disapproves the proposal, or recommends modifications thereof, the Planning Board shall not act contrary to such disapproval or recommendation except by a vote of a majority plus one of all members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action. Within seven days after final action by the Planning Board, a report shall be filed of the final action it has taken with the County Planning Board which had made the recommendations, modifications or disapproval.

F.    Public hearing. The time within which public hearings are required to be held by the Planning Board shall be calculated from the date of the completion of procedures required, if any, by the New York State Environmental Quality Review Act (SEQRA).[73] The Planning Board shall hold a public hearing within 62 days after receipt of a complete site plan application by the clerk of the Planning Board. Such hearing shall:

(1)    Be advertised at least once in the official Village newspaper at least five days before such hearing.

(2)    Be noticed, by certified mail, return receipt requested, to each owner of the property within 500 feet of the perimeter of the subject property as indicated on the application for site plan approval and at least 10 days prior to the public hearing.

(3)    Be advertised by the installation of four posters, furnished by the Planning Board Secretary, on the four closest public roads in visible locations surrounding the proposed site at least 10 days prior to the public hearing.

G.    The Planning Board shall, thereafter, approve, with or without modification, or disapprove such site plan within 62 days after the public hearing. The grounds for a modification or for disapproval shall be stated upon the record of the Planning Board. Within five days of the approval of the site plan, it shall be certified by the clerk of the Planning Board as having been approved, a copy filed in the clerk's office and a certified copy mailed to the owner. Notwithstanding the foregoing provisions, the time in which the Planning Board must take action on the site plan may be extended by mutual consent of the applicant and the Planning Board.

H.    Special permit applications. Where special permit approval is required for the proposed use under this local law, insofar as practicable the special use permit and site plan approval procedures shall run concurrently.

I.    As-built plan.

---

[73]. Editor's Note: See Article 8 of the Environmental Conservation Law.