# SAVAD | CHURGIN

### ATTORNEYS AT LAW

Paul Savad
Joseph A. Churgin

Susan Cooper
Donna Sobel

55 OLD TURNPIKE ROAD – SUITE 209
(Rt. 59 & THRUWAY EXIT 14)
NANUET, NEW YORK 10954

(845) 624-3820
mail@savadchurgin.com

Website:
SavadChurgin.com

Fax: (845) 624-3821

June 27, 2014

Hon. Judith C. McCarthy, United States Magistrate Judge          *Via ECF*
United States District Court  Southern District of New York
300 Quarropas Street, Room 421
White Plains, New York 10601

Re:   *Congregation Rabbinical College of Tartikov et al. v. Village of Pomona, et al.*
      Case No. 07 CV 6304 (KMK)

Your Honor:

      We represent the Plaintiffs in the above-referenced case. We write pursuant to Your Order of June 9 and in opposition to Defendants' letter of June 20. Defendants are seeking production of documents between Plaintiffs, its attorneys and its public relations firm ("Rubenstein"). Defendants served a subpoena on Rubenstein and Judge Davison ordered Plaintiffs' counsel to review all such documents for privilege prior to Rubenstein serving the documents on Defendants.[1] Contrary to Defendants' assertion, it was Plaintiffs' attorney who sought Rubenstein's services, not Plaintiff. **Exhibit B**. It was Plaintiffs' attorney who suggested obtaining Rubenstein's services in order to explain Plaintiffs' constitutional rights to the public. **Exhibit C**.

      Plaintiffs' attorneys believed that it was necessary to hire Rubenstein (1) to communicate with the media to help sway public opinion in an attempt to get Defendants to agree to meet with Plaintiffs in order to avoid litigation and (2) to assist Plaintiffs' attorneys in anticipated and actual litigation should they not be successful in achieving the purpose of avoiding litigation. During this process, Plaintiffs' attorneys disclosed confidential information to Rubenstein on behalf of these efforts and based upon the scope of this work. These are the documents listed on the privilege log. Rubenstein has produced over 6000 pages of documents. Plaintiffs are only claiming a

---

[1] Defendants have made a misrepresentation to this Court by stating that Plaintiffs were in violation of this Court's order that by June 13 we (1) produce all of Rubenstein's documents that we received on June 6, and (2) send a privilege log listing the documents that we received on June 6 over which we are asserting a privilege. We complied with that Order and produced both on June 12. Both parties believed that the documents that we had received from non-party Rubenstein on June 6 were the last documents that Rubenstein intended to produce. The undersigned was out of the office on June 13, but returned on June 16 to find out that Rubenstein had delivered an additional 3000 pages of unproduced documents to Plaintiffs' counsel to review for privilege. We immediately informed Defendants' counsel and offered them an extension to write to the Court, offering to write our opposition in a truncated time-frame so not to delay the Court's schedule. Defendants refused such offer, choosing instead to complain that they had not yet received all documents and to attempt to malign Plaintiffs and their counsel by falsely stating that we had violated this Court's Order. **Exhibit A**. All responsive documents were sent to Defendants on June 20 and a completed privilege log was sent to Defendants on June 24.

privilege as to a fraction of those documents which were made for the purpose of facilitating the rendition of legal services to Plaintiffs.

Under federal common law, confidential communications made for the purpose of facilitating the rendition of legal services to a client are protected from disclosure by the attorney-client privilege if such communications occurred between the public relations firm and the client's counsel, or between the public relations firm and the client. *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. at 219.

Just as in *Copper Mkt.*, Rubenstein "was the functional equivalent of an in-house public relations department" whose duties included "drafting, in collaboration with [Plaintiffs'] counsel, public relations documents, press releases, talking points, and Questions and Answers ('Q and As') to be used as a framework for press inquiries" and documents prepared by Rubenstein "were vetted" by Plaintiffs' counsel. *In re Copper Mkt.*, 200 F.R.D. at 216. And, as in *Copper Mkt.*, Plaintiff's "internal resources were insufficient to cover the task," *id.* at 219, and as Hasidic Jews, Plaintiffs were not well versed in dealing with the media. *See id.* at 215. "The legal ramifications and potential adverse use of such communications were material factors in the development of the communications. In formulating communications on [Plaintiffs'] behalf, [Rubenstein] sought advice from [Plaintiffs'] counsel and was privy to advice concerning the . . . litigation." *Id.* at 219.

These documents are also protected from disclosure as attorney work product because they were drafted in anticipation of litigation. *Id.* at 221; *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 02 CIV.7955 DLC, 2003 WL 21998674 at *5 (S.D.N.Y. Aug. 25, 2003) (documents between public relations firm, client and client's counsel are work product because they were prepared by a party, her agent, attorney or consultant in anticipation of litigation).[2]

These documents should be protected from disclosure especially in light of the fact that they lack any relevance to the issues presented. Defendants claim to need these documents to prove their position that Rubenstein was hired by Plaintiffs to elicit public commentary favorable to Plaintiffs that Plaintiffs could then use in their complaint. However, Rubenstein was not hired until March 27, 2007 and nearly all statements cited in the Second Amended Complaint <u>predate</u> that date. Docket No. 28 ¶¶ 166-207. Moreover, most of the Village's ordinances challenged in this suit were enacted prior to Rubenstein's retention, with the final one being adopted only 27 days after, on April 23, 2007. Given that this is a facial challenge to the Village's enactment of targeted laws, most of which predate the hiring of Rubenstein, it is difficult to contemplate any relevance of such communications, and certainly none after April 23, 2007.

We therefore respectfully request that Defendants be ordered to rely upon the nearly 6000 documents that they have received in response to this subpoena without disclosure of any documents listed on the privilege log.

Respectfully submitted,

*Donna C. Sobel* /em
Donna C. Sobel

---

[2] These documents are not the only opportunity for Defendants to obtain this information. They can ask Plaintiffs' 30(b)(6) representative non-privileged questions regarding the purpose for retaining Rubenstein.

DS/em

cc: John Francis Xavier Peloso, Jr., Esq. (via ECF)
Andrea Donovan Napp, Esq. (via ECF)
Marci A. Hamilton, Esq. (via ECF)
John Stepanovich (via ECF)
Roman Storzer (via ECF)
Congregational Rabbinical College of Tartikov, Inc.