VILLAGE OF POMONA
BOARD OF TRUSTEES MEETING
DECEMBER 18, 2006

ADOPTED FEBRUARY 26, 2007

A Board of Trustees meeting of the Village of Pomona was held at the Pomona Village Hall, 100 Ladentown Road, Pomona, New York at 7:30 p.m. on December 18, 2006.

<u>Present</u>
Mayor:          Herbert Marshall
Deputy Mayor:   Nick Sanderson
Trustees:       Ian Banks
                Alan Lamer
                Alma Roman

                Jan Ulman, Deputy Village Attorney
                P. J. Corless, Village Engineer
                Leslie Sanderson, Village Clerk/Treasurer

## Summary of Motions

Deputy Mayor Sanderson moved to close the Public Hearing "A Local Law Amending the Zoning Law of the Village of Pomona in Relation to Dormitory Buildings". Seconded by Trustee Roman. Motion defeated 2-3. Marshall, Lamer and Roman voting No.

Trustee Lamer moved to continue the Public Hearing on "A Local Law Amending the Zoning Law of the Village of Pomona in Relation to Houses of Worship" to the January 22, 2007 meeting. Seconded by Deputy Mayor Sanderson. Motion carried 5-0.

Deputy Mayor Sanderson moved to close the Public Hearing "A Local Law Amending the Code of the Village of Pomona in Relation to Veterans Exemptions". Seconded by Trustee Lamer. Motion carried 5-0.

Deputy Mayor Sanderson moved to adopt "A Local Law Amending the Code of the Village of Pomona in Relation to Veterans Exemptions". Seconded by Trustee Lamer. Motion carried 5-0.

Deputy Mayor Sanderson moved to adopt the Minutes of September 25, 2006, as presented. Seconded by Trustee Banks. Motion carried 5-0.

PLAINTIFF'S EXHIBIT 129 8 4/30/14

Deputy Mayor Sanderson moved to approve an expenditure of $750.00 for the Winter 2007 Exhibit at the Cultural Center. Seconded by Trustee Roman. Motion carried 5-0.

Deputy Mayor Sanderson moved to approve the emergency removal of the downed tree on Brookside near Burgess Meredith Park and repair of the damaged property in the amount of $3000.00 to Chris Meredith. Seconded by Trustee Lamer. Motion carried 5-0.

Deputy Mayor Sanderson moved to approve an additional $2500.00 for electrical repairs at the Cultural Center and the Village Hall. Seconded by Trustee Roman. Motion carried 5-0.

Deputy Mayor Sanderson moved to obtain a second quote for the electrical work to be done at the Cultural Center and the Village Hall and in the event a second quote cannot be obtained to accept the Henel proposal. Seconded by Trustee Roman. Motion carried 5-0.

Deputy Mayor Sanderson moved the resolution that the payment of General Funds Claims totaling $29,649.20, set forth of pages 1 – 4 in the Monthly Abstract Listing dated November 27, 2006 through December 18, 2006, as submitted by the Village Clerk/Treasurer are hereby approved subject to individual audits by the Board of Trustees. Seconded by Trustee Banks. Motion carried 5-0.

Deputy Mayor Sanderson moved to set a Public Hearing for an amendment to the local law regarding Wetlands for January 22, 2007 at 7:30 p.m. Seconded by Trustee Lamer. Motion carried 5-0.

Deputy Mayor Sanderson moved the resolution that a public hearing be held by the Board of Trustees of the Village of Pomona on the 22nd day of January 2007 to abandon the road previously known as Old Quaker Road as referred to in the deed and survey attached hereto and made a part hereof. Seconded by Trustee Lamer. Motion carried 5-0.

Deputy Mayor Sanderson moved to allow a 20% tax exemption (for basement area) for Bias Eliyoho David, Lot # 32.16-2-77, 12 Sherwood Ridge, as advised by the Village Attorney. Seconded by Trustee Lamer. Motion carried 5-0.

Deputy Mayor Sanderson moved the resolution that the Highway Maintenance Contract for 2007 submitted by the Town of Ramapo is hereby approved with the deletion of Paragraph NINTH (B) of such contract, and be it further resolved that the Mayor is hereby authorized to delete said Paragraph NINTH (B) and to execute said contract and take all actions necessary to implement this resolution, and be it further resolved that the

Village Attorney is hereby directed to transmit an executed copy of said contract to the Town Attorney advising him of the aforesaid deletion and the reasons therefore. Seconded by Trustee Lamer. Motion carried 5-0.

Deputy Mayor Sanderson resolved that the Board of Trustees hereby authorizes a contract with the Town of Ramapo for sewer maintenance services of Village sewers within the Ramapo portion of the Village at a cost of $30.00 per unit, to be levied as a per unit fee by the Town of Ramapo on the tax bills issued by the Town annually, and be it further resolved that the Mayor is authorized to execute said contract, subject to approval as to form by the Village Attorney, and to take all actions necessary to implement this resolution. Seconded by Trustee Lamer. Motion carried 5-0.

Trustee Banks moved to approve the contract with Shadow Security for patrolling the Village Parks, Burgess Meredith and Van de Hende, at an hourly basis of $20.15 per guard and $30.23 per guard on holidays. Seconded by Deputy Mayor Sanderson. Motion carried 5-0.

1. Salute the Flag.

2. Open Period

Mayor Marshall read a brief statement regarding the conduct of the meeting and explained the meeting format.

David Herskowitz, 1 Litman Lane addressed the Board regarding street lights. He requested a street light, as a matter of safety, be installed at Sherwood Ridge Road and Pomona Road. Mayor Marshall responded the matter will be considered.

Deputy Mayor Sanderson moved to close the Open Period. Seconded by Trustee Lamer. Motion carried 5-0.

3. Public Hearings
A. Local Law Amendment: Dormitories

Mayor Marshall went over the amendment to the existing local law which is a clarification of a local law in place for several years. A copy of the proposed amendment is attached to the Minutes.

David Gulkowitz, 12 Beaver Dam Road requested to address the Board later in the Public Hearing.

POR-00/6260

Rabbi Richard, 12 Sherwood Ridge Road would address the Board on the Houses of Worship Public Hearing.

David Herskowitz, 1 Litman Lane inquired as to number of lots in the Village that would meet the 10 acre requirement.

The Mayor responded that there are several such lots within the Village.

Paul Savad, Esq., an attorney representing the owners of the 100 acres parcel located at the intersection of Route 306 and 202. He asked if the law was being passed because of the intended use of that acreage. Mayor Marshall responded no. Mr. Savad inquired what the passage of this amendment would accomplish for the Village. Mayor Marshall responded the legislative intent is to refine the existing law that is already on the Village's books. Mr. Savad also commented that the notice of the public hearing was available but he did not receive the text of the change to the local law until this meeting. Mr. Savad asked that the Board consider extending the Public Hearing to another night so that those in attendance would have the opportunity to read it. He asked if a SEQRA on the change was done and if an environmental assessment form was prepared and filed. If one was done, he would like a copy of it. Mayor Marshall responded there was no SEQRA done on the change. Also, did the Village have a GML from the County? Mayor Marshall responded the GML would be read into the record. Mr. Savad requested a copy of the GML response from the County.

David Lieber, 5 Litman Lane inquired why the change to the local law. He also asked that the Board meeting agenda be available on line before the meeting. Deputy Mayor Sanderson responded the agenda is posted as soon as he receives it. Mayor Marshall responded the amendment is simply a clarification to an existing law in the Village's Code.

Trustee Lamer commented that since the availability, in a timely manner, of the local law amendment is in question, he feels the Public hearing should be extended.

Deputy Mayor Sanderson commented that he was not aware of the fact that it was not made available at the correct time and felt the public hearing should be closed.

Trustee Banks agreed with Deputy Mayor Sanderson.

Trustee Roman commented that she would like to see the Public Hearing remain open.

POM00/6261

Deputy Mayor Sanderson moved to close the Public Hearing "A Local Law Amending the Zoning Law of the Village of Pomona in Relation to Dormitory Buildings". Seconded by Trustee Roman. Motion defeated 2-3. Marshall, Lamer and Roman voting No.

The Public Hearing will be extended to the next Village Board Meeting scheduled for January 22, 2007.

B. Local Law Amendment: Houses of Worship

Mayor Marshall went over the changes in the amendment to the existing local law. A copy of the proposed amendment is attached to the Minutes. Mayor Marshall advised that anyone wishing to take minutes during the meeting is permitted to do so as long as they do not interfere with the meeting process.

David Gulkowitz, 12 Beaver Dam Road inquired as to the number of people allowed in a house and what precipitated the change. Ms. Ulman explained the definition of accessory use and that this amendment eliminates certain restriction that were in the prior law. Mayor Marshall further explained that the amendment simply states that a homeowner must reside in the house, that the use of the house as a regular meeting place must be subordinate to its use as a single family residence, and that it is safe for the attendees.

Aaron Saperstein asked why there was a 3-acre requirement for a house of worship?

Mayor Marshall responded that since the Village has only single acre residential zoning, it was felt that the law was necessary to maintain the integrity of the community as it exists.

Rabbi Richard, 12 Sherwood Ridge Road commented that he has a stibel in Pomona and it has grown to more than 50 families and is growing. Would he be able to extend his home to enlarge his stibel? His plan is to grow and grow and would want to be able to add on. How does the amendment affect this as long as safety is met? Mayor Marshall invited Rabbi Richard to meet with him at a separate time to cover the matter in greater detail. Ms. Ulman clarified that the amendment relates to any accessory use and not just to houses of worship. That is different from having a full fledge house of worship as a principal use which has environmental impacts that have to be addressed. Rabbi Richard then brought up the RLUIPA law and stated that no Village could stand in the way of enlarging a congregation and questioned why the topic was even being addressed. Ms. Ulman stated that this public hearing was not the appropriate forum to discuss interpretations of RLUIPA.

David Herskowitz, 1 Litman Lane commented that some of the changes had not been addressed in the first paragraph of the local law. Mayor Marshall

responded the law is essentially the same as the existing law, except that the different levels of Houses of Worship have been eliminated. Mr. Herskowitz commented that he felt the local law was targeting houses of worship and that bothered him. Mayor Marshall responded it was not targeting houses of worship and would consider adding the wording "neighborhood gatherings". Mr. Herskowitz also commented that he felt that the "no overnight parking" law was passed because of religious gatherings. Mayor Marshall responded that it was not passed to address religious gatherings but was passed to address safety issues in the Village.

David Lieber, 5 Litman Lane asked for a definition of "stibel" and "house of worship" and what was the difference. He also questioned the use of "3 acres" for religious use, and the no overnight parking law, and requested an extension of the public hearing in order for residents to understand the amendment more fully.

Mayor Marshall responded the public hearing would be extended because the comments from the County have not been received yet. The difference between a house of worship and a private home for regular meetings, referred to as a stibel, was explained.

Jeff Gordon, 3 Tulip Lane, commented on the situation in Airmont and how his taxes there were raised. Is Pomona going to go through a similar legal fight which would increase taxes?

Ms. Ulman stated that the proposed local law is not the same as the Airmont law.

Mayor Marshall asked those in attendance not to twist the amendment into something it was not. There are rules that are necessary to maintain control over development within a community to protect its integrity. The local law amendment was not meant to restrict the free practice of religion by residents but to protect them.

Joshua Farkovits, 17 Beaver Dam Road suggested having a representative from their group participate in the discussions on the amendments to the local laws.

Jay Helfgott, 13 Beaver Dam Road suggested that Section G should include the title of Code Enforcement Officer along with the Building Inspector and Fire Inspector.

**Trustee Lamer moved to continue the Public Hearing on "A Local Law Amending the Zoning Law of the Village of Pomona in Relation to Houses of Worship" to the January 22, 2007 meeting. Seconded by Deputy Mayor Sanderson. Motion carried 5-0.**

POM00/6263

C    Local Law Amendment: Veterans Exemption

Mayor Marshall explained the amendment to the existing local law regarding an increase in the amount of veteran exemptions.

David Herskowitz, 1 Litman Lane spoke in favor of the amendment. He inquired as to how many residents in the Village are eligible for the exemptions.

Mayor Marshall responded that the number of exemptions are shown on the tax rolls.

Deputy Mayor Sanderson moved to close the Public Hearing "A Local Law Amending the Code of the Village of Pomona in Relation to Veterans Exemptions". Seconded by Trustee Lamer. Motion carried 5-0.

Deputy Mayor Sanderson moved to adopt "A Local Law Amending the Code of the Village of Pomona in Relation to Veterans Exemptions". Seconded by Trustee Lamer. Motion carried 5-0.

4.  Adoption of Minutes
A.  September 25, 2006

Deputy Mayor Sanderson moved to adopt the Minutes of September 25, 2006, as presented. Seconded by Trustee Banks. Motion carried 5-0.

B.  October 16, 2006
C.  October 30, 2006
D.  November 13, 2006
E.  November 27, 2006

The above Minutes are tabled to the January 22, 2007 meeting.

5.  Cultural Center

A copy of the Cultural Center's Director is attached to the Minutes. Mr. Gde requested an approval of $750.00 for the Winter 2007 Exhibit.

Deputy Mayor Sanderson moved to approve an expenditure of $750.00 for the Winter 2007 Exhibit at the Cultural Center. Seconded by Trustee Roman. Motion carried 5-0.

6.  Building Department
A.  Engineering and Building

Mr. Corless reported there were no requests for return of escrow money. Also, the consultant's report on the Roman sewer connection was due today but has

not been received. Mr. Corless will follow up with the consultant to have the report sent to Village Hall. Mr. Corless reported a sewer blockage on Tara Court. The Health Department contacted the Rockland County Sewer District who informed them the contract with the Village had expired and they could not respond. Mr. Corless contacted the Town of Haverstraw who sent out a crew to solve the immediate problem. Mayor Marshall reported that he has just completed negotiations with the Town of Ramapo to maintain the sewers in the Village.

7. Committee Reports
A. Recreation

Trustee Roman reported there is nothing new at this time.

B. Buildings and Parks

Trustee Banks reported the rock wall in front of Village Hall is completed. The emergency tree removal on Brookside near Burgess Meredith Park was quoted at $2500.00 from Chris Meredith. In addition, the dumping of the stumps will cost approximately $2-300.00. Pictures will be taken to document the downed tree and the damage done to neighboring property and then an insurance claim will be filed.

**Deputy Mayor Sanderson moved to approve the emergency removal of the downed tree on Brookside near Burgess Meredith Park and repair of the damaged property not to exceed $3000.00 to Chris Meredith. Seconded by Trustee Lamer. Motion carried 5-0.**

Trustee Banks reported on the electrical repair work to be done at Village Hall and the Cultural Center. An amount of $2500.00 has been previously approved for repairs and Trustee Banks is requesting an additional $2500.00 to make all the necessary repairs at both facilities. One quote has been received and it was decided to obtain a second quote for the work that needs to be done.

**Deputy Mayor Sanderson moved to approve an additional $2500.00 for electrical repairs at the Cultural Center and the Village Hall. Seconded by Trustee Roman. Motion carried 5-0.**

**Deputy Mayor Sanderson moved to obtain a second quote for the electrical work to be done at the Cultural Center and the Village Hall and in the event a second quote cannot be obtained to accept the Henel proposal. Seconded by Trustee Roman. Motion carried 5-0.**

8. **Finance**
A. **Treasurer's Report**

A copy of the Treasurer's Report is attached to the Minutes.

B. **Expenditure Abstract Resolution**

Deputy Mayor Sanderson moved the resolution that the payment of General Funds Claims totaling $29,649.20, set forth of pages 1 – 4 in the Monthly Abstract Listing dated November 27, 2006 through December 18, 2006, as submitted by the Village Clerk/Treasurer are hereby approved subject to individual audits by the Board of Trustees. Seconded by Trustee Banks. Motion carried 5-0.

C. **Grants and Awards**

Nothing at this time.

9. **Code Enforcement**

A copy of the Code Enforcement Officer's report is attached to the Minutes. Mr. Helfgott reported there was a false alarm at the Sri Ranganatha Temple. The fire alarm in the basement was activated. The Temple's alarm company will relocate the alarm to an area where it will not be activated by burning incense.

10. **Legal Period**

A copy of the proposed wetlands local law amendment is attached to the Minutes. A public hearing will be scheduled for the January 22, 2007 meeting.

Deputy Mayor Sanderson moved to set a Public Hearing for an amendment to the local law regarding Wetlands for January 22, 2007 at 7:30 p.m. Seconded by Trustee Lamer. Motion carried 5-0.

The Board discussed the comments made at the meeting during the Public Hearings on the Dormitory and Houses of Worship amendments. A GML response was received from the County Planning Board regarding Dormitories. The comments from the County Planning Board on the Houses of Worship amendment have not been received yet. The language of Code Enforcement Officer will be added to the Houses of Worship amendment where Building Inspector and Fire Inspector are noted. Also, the Board discussed making the accessory use provision more generic. The matter will be discussed further at the next workshop.

pom 0016266

## 11. Old Business

Mayor Marshall stated that Verizon wireless has requested that the Village adopt a resolution abandoning the old Quaker Road spur. Verizon would like a Resolution from the Village accepting the abandonment of the Spur. A public hearing needs to be set in order to abandon the road. A copy of the map of the property is attached to the Minutes.

**Deputy Mayor Sanderson moved the resolution that a public hearing be held by the Board of Trustees of the Village of Pomona on the 22nd day of January 2007 to abandon the road previously known as Old Quaker Road as referenced in the deed and survey attached hereto and made a part hereof. Seconded by Trustee Lamer. Motion carried 5-0.**

The unresolved Assessment challenges were discussed. Scott Shedler, the Village Assessor made the following recommendations:

Thelma & Janet Chernikoff – 25.06-11, 82 Overlook. A building permit was issued in 2002 but the improvements were never done. The property was assessed with the improvements and the owners are requesting a refund of the paid taxes related to the improvements. Mr. Shedler is recommending the return of $2,294.16 for the four year period. Discussion ensued as to how the refund amount was determined.

**Deputy Mayor Sanderson moved to approve a tax refund of $2,294.16 to Thelma and Joyce Chernikoff, Lot #25.06-11, 82 Overlook for improvements that were assessed but not made. Seconded by Trustee Lamer.**

Following discussion, it was decided to table the matter to the next meeting as to how far back a refund may be made, 3 or 4 years, and how the amount was determined.

Bias Eliyoho David – 32.16-2-77, 12 Sherwood Ridge. The homeowner had applied for a full exemption because of religious use. Mr. Shedler recommended a 20% exemption (basement area) as advised by the Village Attorney because the basement area is used for religious purposes.

**Deputy Mayor Sanderson moved to allow a 20% tax exemption (for basement area) for Bias Eliyoho David, Lot # 32.16-2-77, 12 Sherwood Ridge, as advised by the Village Attorney. Seconded by Trustee Lamer. Motion carried 5-0.**

Mayor Marshall reported that the traffic signs have been installed on North Ridge Road.

POM00/6267

## 12. New Business

Mayor Marshall advised the Board that T-Mobile has requested permission to install a cell tower on the Cultural Center property. They have proposed paying $1000.00 a month to have the tower installed. The matter was tabled to the next workshop.

Mayor Marshall brought up the matter of the Route 202 improvement request. The corner of Camp Hill and Route 202 has a shoulder that people use to make a right hand turn and it is dangerous. A letter will be sent to the State to have the corner improved.

The Ramapo Highway Contract has been received in the amount of $81,800. The Village Attorney recommends deleting the paragraph which states the Town is not responsible for damage to mail boxes or other structures that they cause.

**Deputy Mayor Sanderson moved the resolution that the Highway Maintenance Contract for 2007 submitted by the Town of Ramapo is hereby approved with the deletion of Paragraph NINTH (B) of such contract, and be it further resolved that the Mayor is hereby authorized to delete said Paragraph NINTH (B) and to execute said contract and take all actions necessary to implement this resolution, and be it further resolved that the Village Attorney is hereby directed to transmit an executed copy of said contract to the Town Attorney advising him of the aforesaid deletion and the reasons therefore. Seconded by Trustee Lamer. Motion carried 5-0.**

Mayor Marshall introduced a Ramapo Sewer Agreement which was arrived at verbally and will be produced in writing during the week.

**Deputy Mayor Sanderson resolved that the Board of Trustees hereby authorizes a contract with the Town of Ramapo for sewer maintenance services of Village sewers within the Ramapo portion of the Village at a cost of $30.00 per unit, to be levied as a per unit fee by the Town of Ramapo on the tax bills issued by the Town annually, and be it further resolved that the Mayor is authorized to execute said contract, subject to approval as to form by the Village Attorney, and to take all actions necessary to implement this resolution. Seconded by Trustee Lamer. Motion carried 5-0.**

Trustee Banks received the Shadow Security contract renewal and is the same as the previous years and runs from May 1st through December 31st, Friday, Saturdays and one rotating week night. The rate is on an hourly basis of $20.15 per guard and $30.23 on holidays.

Trustee Banks moved to approve the contract with Shadow Security for patrolling the Village Parks, Burgess Meredith and Van de Hende, at an hourly basis of $20.15 per guard and $30.23 per guard on holidays. Seconded by Deputy Mayor Sanderson. Motion carried 5-0.

13. Office Period

Nothing at this time.

14. Trustees Period

Trustee Roman raised the issue of a Planner for the Village. Mayor Marshall responded that he and Deputy Mayor Sanderson will proceed on the matter.

15. Second Open Period

A gentleman spoke from the floor and the microphone did not pick up his comments. He lives at 14 Tara.

16. Executive Session

Trustee Lamer moved to adjourn to Executive Session to discuss matters of litigation. Seconded by Trustee Roman. Motion carried 5-0.

Trustee Roman moved to close the Executive Session and reopen the Public Meeting. Seconded by Trustee Lamer. Motion carried 5-0.

Deputy Mayor Sanderson moved to adjourn the meeting. Seconded by Trustee Roman. Motion carried 5-0.

Meeting adjourned at 10:30 p.m.

Respectfully submitted,

Malverne J. Toll

# A LOCAL LAW AMENDING THE ZONING LAW OF THE VILLAGE OF POMONA IN RELATION TO DORMITORY BUILDINGS

BE IT ENACTED BY THE BOARD OF TRUSTEES OF THE VILLAGE OF POMONA as follows:

Section 1. The definition of DORMITORY in Section 130-4 of the Code of the Village of Pomona is hereby amended to read as follows:

DORMITORY - A building that is operated by an educational institution located on the same lot and accessory to a principal school use and which contains private or semi-private rooms which open to a common hallway, which rooms are sleeping quarters for administrative staff, faculty or students. Communal dining, cooking, laundry, lounge and recreation facilities may be provided. Dormitory rooms shall not contain separate cooking, dining or housekeeping facilities except that one dwelling unit with completed housekeeping facilities may be provided for use of a Superintendent or supervisory staff for every fifty dormitory rooms. Not more than one communal dining room shall be provided in any building used for dormitory purposes. Single family, two-family and/or multi-family dwelling units other than as described above shall not be considered to be dormitories or part of dormitories.

Section 2. Subparagraphs (a), (b) and (c) of paragraph (1) of subdivision F of Section 130-10 of such Code is hereby amended to read as follows:

(a) The minimum lot area for an educational institution shall be a net lot area of 10 acres.

(b) No portion of any land under water shall be counted toward the net lot area. Not more than one-fourth of any land which is defined as wetland by the U.S. Army Corps of Engineers, the New York State Department of Environmental Conservation and/or Chapter 126 of this Code or which is within a one hundred year frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted toward the net lot area.

(c) No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward the net lot area.

Section 3. Paragraph (12) of subdivision F of Section 130-10 if such Code is hereby amended to read as follows:

POM00016270

(12) A dormitory building is permitted as an accessory use to an educational use provided it is located on the same lot as the educational use and there shall be not more than one dormsitory building on the lot. A dormitory building shall not occupy more than twenty (20) percent of the total square footage of all buildings on the lot.

    (a) The minimum distance between a dormitory building and any other principal building or structure on the lot shall be 50 feet.

    (b) The minimum distance between a dormitory building and any interior driveway or other accessory structure shall be 25 feet.

    (c) The maximum height of a dormitory building shall be two stories or 25 feet, whichever is less.

    (d) No dormitory room or dwelling unit shall be permitted in any cellar.

    (e) The dormitory building shall be equipped with sprinkler and fire alarm systems and shall comply with all requirements of the New York State Fire Prevention and Building Code.

Section 4. This local law shall take effect ten days after posting, publishing and filing with the Secretary of State.



# COUNTY OF ROCKLAND
## DEPARTMENT OF PLANNING
Building T
50 Sanatorium Road
Pomona, New York 10970
(845) 364-3434
Fax. (845) 364-3435

C. SCOTT VANDERHOEF,
County Executive

SALVATORE CORALLO
Commissioner

ARLENE R. MILLER
Deputy Commissioner

December 18, 2006

Pomona Village Board
100 Ladentown Road
Pomona, NY 10970

Tax Data:

Re: GENERAL MUNICIPAL LAW REVIEW: Section 239 L and M

Map Date:

Date Review Received: 12/6/2006

Item: *VILLAGE OF POMONA - DORMITORY BUILDINGS (POM-49)*

Zoning code amendment to allow dormitory buildings as an accessory use to a principal school use in the R-40 zoning district.
Throughout the Village of Pomona

Reason for Referral:

State and County roads, state and county parks, Long Path, county streams, municipal boundaries
The County of Rockland Department of Planning has reviewed the above item. Acting under the terms of the above GML powers and those vested by the County of Rockland Charter, I, the Commissioner of Planning, hereby:

*Recommend the following modifications

1  Specific parking requirements must be provided for the proposed accessory use. Currently, there are no specific parking requirements for schools of general instruction. Parking standards need to be provided for both the school and the dormitory uses to ensure that adequate parking exists onsite and to prevent unsafe traffic situations from arising, especially along state and county roads, due to insufficient parking onsite.

2  The Village Zoning Ordinance currently requires a minimum lot area of five acres for schools of general instruction. Since the dormitory use could take up to 20% of the lot area onsite, the village may want to consider increasing the overall lot area to reflect this added use.

Page 1 of 2

POM0016272

## VILLAGE OF POMONA - DORMITORY BUILDINGS (POM-49)

Salvatore Corallo
Commissioner of Planning

cc: Mayor Herbert Marshall, Pomona
New York State Department of Transportation
Rockland County Department of Highways
Rockland County Department of Health
Rockland County Sewer District #1
Towns of Ramapo and Haverstraw
Villages of Wesley Hills & New Hempstead

*NYS General Municipal Law Section 239 requires a vote of a 'majority plus one' of your agency to act contrary to the above findings.

The review undertaken by the Rockland County Planning Department is pursuant to, and follows the mandates of Article 12-B of the New York General Municipal Law. Under Article 12-B the County of Rockland does not render opinions, nor does it make determinations, whether the item reviewed implicates the Religious Land Use and Institutionalized Persons Act. The Rockland County Planning Department defers to the municipality forwarding the item reviewed to render such opinions and make such determinations if appropriate under the circumstances.

In this respect, municipalities are advised that under the Religious Land Use and Institutionalized Persons Act, the preemptive force of any provision of the Act may be avoided (1) by changing a policy or practice that may result in a substantial burden on religious exercise, (2) by retaining a policy or practice and exempting the substantially burdened religious exercise, (3) by providing exemptions from a policy or practice for applications that substantially burden religious exercise, or (4) by any other means that eliminates the substantial burden.

Proponents of projects are advised to apply for variances, special permits or exceptions, hardship approval or other relief.

POM0016273

# A LOCAL LAW AMENDING THE ZONING LAW OF THE VILLAGE OF POMONA IN RELATION TO HOUSES OF WORSHIP

BE IT ENACTED BY THE BOARD OF TRUSTEES OF THE VILLAGE OF POMONA, as follows:

Section 1. Section 130-4 of the Code of the Village of Pomona is hereby amended by amending the definition of HOUSE OF WORSHIP therein, to read as follows:

HOUSE OF WORSHIP - A building or structure commonly referred to as a church, synagogue or similar place of worship, intended primarily for the conduct of organized or regularly scheduled religious services.

Section 2. Section 130-4 of such Code is hereby amended by deleting therefrom the definitions of MAJOR RELIGIOUS USE, MINOR RELIGIOUS USE and RELIGIOUS OR NEIGHBORHOOD GATHERING.

Section 3. Subdivision C of Section 130-9 of such Code is hereby deleted.

Section 4. Section 130-10 of such Code is hereby amended by adding thereto a new subdivision to be Subdivision G, to read as follows:

G. By the Board of Trustees: House of Worship as defined in Sec. 130-4 of this Chapter, subject to special permit approval by the Village Board of Trustees and site plan approval by the Planning Board In addition to all other requirements of this Code for special permit and site plan approval, the following standards and requirements shall apply:

(1) The minimum lot area for a house of worship shall be a net lot area of 3 acres.

 (a) No portion of any land under water shall be counted toward net lot area. Not more than one fourth of any land which is defined as wetland by the U.S. Army Corps of Engineers, the New York State Department of Environmental Conservation and/or Chapter 126 of this Code or which is within a one hundred year frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted toward net lot area.

 (b) No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward net lot area.

Pom001627

(2) The use shall have frontage on and practical access to a public road.

(3) The proposed structure meets all State requirements for a place of public assembly, including the Fire Prevention and Building Code.

(4) Adequate off-street parking on the same lot as the House of Worship shall be provided. A minimum of one parking space for every two hundred (200) square feet of floor space shall be required. The Planning Board may waive not more than 25% of the required number of parking spaces if the Board determines that such spaces are not needed based on the parking demands of the proposed use. The burden shall be on the applicant to prove that such spaces are not needed.

(5) All buildings, structures and other uses, including driveways and parking areas, shall be set back a minimum of 125 feet from all property lines. Such setback area shall include a buffer screening area of at least 35 feet which, in the judgment of the Planning Board, will be adequate to screen the use from adjoining properties.

(6) The total building coverage shall not exceed 10% of the net lot area. The total floor area of the buildings shall not exceed 20% of the net lot area. The total coverage of impervious surfaces (which includes all buildings, structures, parking areas, driveways, sidewalks and other areas covered in concrete, asphalt or packed stone) shall not exceed 25% of the net lot area.

(7) The sources of exterior lighting shall be so shielded that they are not visible beyond the boundaries of the lot on which they are located. No outdoor public address systems shall be permitted.

(8) One monument sign, limited to 8 square feet in area and set back a minimum of 10 feet from the lot line, may be permitted at the front entrance to the House of Worship.

(9) Such other requirements as may be imposed by the Board of Trustees to mitigate traffic, safety hazards, drainage, aesthetics or other adverse impacts on adjacent properties or on the neighborhood.

Section 5. Section 130-11 of such Code is hereby amended by adding thereto a new subdivision, to be Subdivision G, to read as follows:

G. The conduct of religious services which is incidental to and secondary to the use of the premises as a single family residence, provided such use complies with the requirements of the New York State Fire Prevention and Building Code relating to places

of assembly and occupancy limitations, if applicable. Notice of such use including but not limited to the numbers of persons attending such services and the amount of space to be used for the services shall be given to the Building Inspector and the Fire Inspector by the owner of the single family residence. The Building Inspector and/or the Fire Inspector, as the case may be, shall have authority to inspect the premises for compliance with all safety requirements of the State Fire Prevention and Building Code relating to the use. The religious services shall be conducted within the single family residence and shall not be permitted in a separate or accessory building on the lot.

Section 6. This local law shall take effect ten days after posting, publishing and filing with the Secretary of State.