UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONGREGATION RABBINICAL COLLEGE    :
OF TARTIKOV, INC., et. al.,    :
   :
   :    CIVIL NO. 07:CV 6304 (KMK)
     Plaintiffs,    :
   :
V.    :
   :
   :
VILLAGE OF POMONA, NY, et. al.,    :
   :    APRIL 2, 2015
   :
     Defendants.    :

## DEFENDANTS' RESPONSE PURSUANT TO LOCAL RULE 56.1(b) TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1(b), Defendants submit this response to Plaintiff's Statement

of Undisputed Material Facts Pursuant to Local Rule 56.1, together with "additional material

facts as to which . . . there exists a genuine issue to be tried." Local Rule 56.1(b).

PRELIMINARY FACTS

TARTIKOV

1.     The Rabbinical College of Tartikov, Inc. ("Tartikov" or the "Rabbinical
College") is a New York religious corporation incorporated on August 1, 2004. It was formed to
establish a rabbinical college with a Torah Community in Rockland County, New York.
Defendants' Responses to Plaintiffs' Requests for Admission No. 27, attached to the Declaration
of Paul Savad submitted herewith in support of Plaintiffs' Motion for Summary Judgment
("Savad Decl.") as Exhibit ("Ex.") as **Exhibit 310**; Transcript of 30(b)(6) Deposition of
Congregation Rabbinical College of Tartikov, Inc. ("Tartikov 30(b)(6) Tr.") attached to Savad
Decl. as **Exhibit 27** pages 9:11-16; 148:18-149:16; Transcript of Deposition of Michael Tauber
dated May 7, 2014 ("Tauber Tr.") attached to Savad Decl. as **Exhibit 28** pages 133:10-21;
Transcript of Deposition of Chaim Babad, dated May 19, 2014 ("C. Babad Tr.") attached to
Savad Decl. as **Exhibit 31** pages 152:16-23; Savad Decl. **Ex. 290**.

**RESPONSE:**

**Admitted in part; Disputed in part.** **Admitted that Tartikov appears to be incorporated as a New York religious corporation. Disputed that it was formed to establish a rabbinical college with a Torah Community in Rockland County, NY.** *See* **(Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc., August 1, 2004), attached to the Affidavit of Amanda E. Gordon submitted in support of Defendants' Motion for Summary Judgment ("Gordon Aff.") as Exhibit ("Ex.") Gordon Aff. ¶ 23, Ex. 18.**

## THE VILLAGE

2.      Land use in the Village of Pomona (the "Village") is governed by various provisions of the Village Code, including the Zoning, Wetlands, Subdivision, Site Plan, and Stormwater chapters.  Village of Pomona Code ("Code"), attached to the Declaration of Paul Savad submitted herewith in support of Plaintiffs' Motion for Summary Judgment ("Savad Decl.") as **Exhibit ("Ex.") 314** chapters, 114, 118, 119, 126, 130.

**RESPONSE:**

**Admitted that land use in the Village of Pomona is governed** *in part* **by the Village Code. Defendants note that land use in the Village is also governed by State and Federal Regulations.** *See* **Transcript of 30(b)(6) Deposition of Village of Pomona ("Village" or "Pomona") and Board of Trustees of the Village of Pomona ("Board"), Day 2, July 16, 2014 ("Defendants' 30(b)(6) Tr. Day 2"), attached to  the Declaration of Paul Savad submitted in support of Plaintiffs' Motion for Summary Judgment ("Savad Decl") as Exhibit ("Ex."). Savad Ex. 13 281:15-282:5.**

3.      The Village regulates its own land use, subject to New York State requirements. Transcript of 30(b)(6) Deposition of Village of Pomona ("Village" or "Pomona") and Board of Trustees of the Village of Pomona ("Board"), Day 2, July 16, 2014 ("Defendants' 30(b)(6) Tr. Day 2"), attached as to Savad Decl. as **Exhibit 13**; pages 282:15-282:18.

**RESPONSE:**

**Admitted.**

4.      The entire area of the Village is designated as a residential district, known as the "R-40 District," with a minimum of 40,000 square feet per lot.  Savad Decl. Ex. 314 Code Sec. 130-5.

**RESPONSE:**

**Admitted.**

5.      Permitted land uses within the R-40 District are one-family residences, houses of worship, public utilities rights-of-way, libraries and museums, public parks and playgrounds, and agricultural pursuits.  Savad Decl. **Ex. 314** Code Sec. 130-9.

**RESPONSE:**

**Admitted that Village Code § 130-9 identifies one-family residences, houses of worship, public utilities rights-of-way, libraries and museums, public parks and playgrounds, and agricultural pursuits as permitted uses, among others as provided in Village Code §§ 130-10 and 130-11.** *See* **Savad Decl. Ex. 314 Code Sec. 130-9, 130-10, 130-11.**

6.      Special permit uses within the R-40 District are recreational facilities; playgrounds, swimming clubs, tennis courts and recreational buildings; reservoirs, water towers and water tanks; telephone exchanges and public utility substations, communications centers for emergency and other purposes, and any and all other public utility facilities which are or support the primary function of the public utility company; camps; wireless telecommunication services facility; educational institutions; and houses of worship.  **Savad Decl. Ex. 314** Code Sec. 130-10.

**RESPONSE:**

**Admitted that Village Code § 130-10 identifies recreational facilities; playgrounds, swimming clubs, tennis courts and recreational buildings; reservoirs, water towers and water tanks; telephone exchanges and public utility substations, communications centers for emergency and other purposes, and any and all other public utility facilities which are or support the primary function of the public utility company; camps; wireless telecommunication services facility; educational institutions; and houses of worship as special permit uses subject to the qualifications contained in § 130-10 but not stated in Paragraph 6.** *See* **Savad Decl. Ex. 314, Code Sec. 130-10.**

7.      On January 22, 2001, the Village enacted Local Law No. 1 of 2001, which regulates school land uses within the Village ("LL1 of 2001").  Savad Decl. **Ex. 152.**

3

**RESPONSE:**

**Admitted in part; Disputed in part.** **Admitted that on January 22, 2011 the Village adopted Local Law No. 1 of 2001, which relates to the definition, permitting and requirements for Educational Institutions. Otherwise, disputed.** *See* **Savad Decl. Ex. 152;** *see also* **Local Law 1 of 2001,** *codified as* VILLAGE CODE § 130-4; **Village of Pomona, Board of Trustees Meeting Minutes, (January 22, 2001) ), attached to the Affidavit of Doris Ulman submitted in support of Defendants' Motion for Summary Judgment ("Ulman Aff.") as Exhibit ("Ex."). Ulman Aff. ¶¶ 7, 13 24, Ex. 1, 7, 18.**

8.      Local Law No. 1 of 2001 adopted a 10% maximum building coverage requirement for schools.  Savad Decl. **Ex. 152**; Savad Decl. **Ex. 314** Code Sec. 130-10(F)(2)(a).

**RESPONSE:**

**Disputed. Defendants note that Local Law No. 1 of 2001 amended Village Code § 130-10(F)(2)(a) to state, with regard to Educational Institutions, that "the total building coverage shall not exceed ten percent of net lot area."** *See* **Savad Decl. Ex. 152; Savad Decl. Ex. 314 Code Sec. 130-10(F)(2)(a).**

9.      Local Law No. 1 of 2001 adopted a 20% floor area ratio for schools.  Savad Decl. **Ex.152**; Savad Decl. **Ex. 314** Code Sec. 130-10(F)(2)(b).

**RESPONSE:**

**Admitted.**

10.      Local Law No. 1 of 2001 adopted a 25% maximum impervious surface limitation for schools.  Savad Decl. **Ex. 152; 314**  Code Sec. 130-10(F)(2)(c).

**RESPONSE:**

**Admitted.**

11.      On September 27, 2004, the Village enacted Local Law No. 5 of 2004, which regulates Educational Institution land uses within the Village ("LL5 of 2004").  Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 399:8-400:7.

4

**RESPONSE:**

**Admitted in part; Disputed in part**. **Admitted that on September 27, 2004, the Village adopted Local Law No. 5 of 2004, which amended the Village zoning laws in relation to educational institutions. Otherwise, disputed.** *See* **Local Law 5 of 2004,** *codified as* **VILLAGE CODE § 130-4(F); Village of Pomona, Board of Trustees Meeting Minutes (September 27, 2004) Ulman Aff. ¶¶ 8, 13, 27, Ex. 2, 7, 21.**

      12.     Local Law No. 5 of 2004 eliminated the definition of the word "School" and amended the definition of the words "Educational Institution" to include a requirement that any Educational Institution must be "accredited by the New York State Education Department or similar recognized accrediting agency." Savad Decl. **Ex. 314** Code Sec. 130-4.

**RESPONSE:**

**Admitted in part; Disputed in part**. **Admitted that Local Law No. 5 of 2004 eliminated the definition of the word "school." Otherwise, disputed. The amendment referenced by Plaintiffs is an incomplete statement taken out of context. The definition of Educational Institution was replaced in its entirety, not simply amended with the quoted language identified in Paragraph 12. Savad Decl. Ex. 314 Code Sec. 130-4;** *see also* **Local Law 5 of 2004,** *codified as* **VILLAGE CODE § 130-4(F). Ulman Aff. ¶¶ 8, 13, Ex. 2, 7.**

      13.     Local Law No. 5 of 2004 adopted a "Dormitory" provision that read: "DORMITORY - A building that is operated by a school located on the same lot and which contains private or semi-private rooms which open to a common hallway, which rooms are sleeping quarters for administrative staff, faculty or students. Communal dining, cooking, laundry, lounge and recreation facilities may be provided. Dormitory rooms shall not contain separate cooking, dining or housekeeping facilities except that one dwelling unit with complete housekeeping facilities may be provided for use of a Superintendent or supervisory staff for every fifty dormitory rooms. Not more than one communal dining room shall be provided in any building used for dormitory purposes. Single family, two-family and/or multi-family dwelling units other than as described above shall not be considered to be dormitories or part of dormitories." Savad Decl. **Ex. 314** Code Sec. 130-4.

**RESPONSE:**

**Admitted.**

14. Local Law No. 5 of 2004 added the following requirement for Educational Institutions: "The minimum lot area for an educational institution shall be 10 acres." Savad Decl. **Ex. 314** Code Sec. 130-10(F)(1)(a).

**RESPONSE:**

**Disputed. Defendants note that Local Law No. 5 of 2004 amended Village Code § 130-10(F)(1)(a) by** *replacing* **the sentence "the minimum lot area for an educational institution shall be 10 acres, plus an additional 0.05 acre for each pupil enrolled" with the new sentence "the minimum lot area for an educational institution shall be 10 acres," thereby eliminating the requirement for one half acre per student. Savad Decl. Ex. 314, Code Sec. 130-10(F)(1)(a); Local Law No. 1 of 2001 Savad Decl. Ex. 152;** *see also* **Local Law 1 of 2001,** *codified as* VILLAGE CODE **§ 130-4 Ulman Aff. ¶¶ 7, 13, Ex. 1, 7; Local Law 5 of 2004,** *codified as* VILLAGE CODE **§ 130-4(F). Ulman Aff. ¶¶ 8, 13, Exhibit 2, 7.**

15. Local Law No. 5 of 2004 added the following language to the "Educational Institution" special permit regulations: "A dormitory is permitted as an accessory use to an educational use and there shall be not more than one dormitory building on a lot." Savad Decl. **Ex. 314** Code Sec. 130-10(F)(12).

**RESPONSE:**

**Admitted in part; Disputed in part. Admitted that Local Law No. 5 of 2004 added the above quoted language to Village Code § 130-10(F)(12). Otherwise, disputed. Savad Decl. Ex. 314, Code Sec. 130-10(F)(12).**

16. Local Law No. 5 of 2004 added the following language to the "Educational Institution" special permit regulations: "The maximum height of a dormitory shall be two stories or 25 feet, whichever is less." Savad Decl. **Ex. 314** Code Sec. 130-10(F)(12)(c).

**RESPONSE:**

**Admitted in part; Disputed in part. Admitted that Local Law No. 5 of 2004 added the above quoted language to Village Code § 130-10(F)(12). Otherwise, disputed. Savad Decl. Ex. 314, Code Sec. 130-10(F)(12)(c).**

17. On January 22, 2007, the Village enacted Local Law No. 1 of 2007, which regulates Educational Institution land uses within the Village ("LL1 of 2007"). Savad Decl. **Ex. 315.**

**RESPONSE:**

**Admitted in part; Disputed in part.** **Admitted that on January 22, 2007, the Village enacted Local Law No. 1 of 2007, addressing errors, inconsistencies and vagueness issues in relation to previously enacted educational institution and dormitory laws. Otherwise, disputed. Savad Decl. Ex. 315;** *see also* **Local Law 1 of 2007,** *codified as* VILLAGE CODE § 130-4, 130-10; Village of Pomona, Board of Trustees Meeting Minutes (January 22, 2007) Ulman Aff. ¶¶ 9, 13, 16, 29, Ex. 3, 7, 10, 23].**

18.    Local Law No. 1 of 2007 added the following requirement for Educational Institutions: "(a) The minimum lot area for an educational institution shall be a net lot area of 10 acres. (b) No portion of any land under water shall be counted toward the net lot area. Not more than one-fourth of any land which is defined as wetland by the U.S. Army Corp of Engineers, the New York State Department of Environmental Conservation and/or Chapter 126 of this Code or which is within a one hundred year frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted toward the net lot area. (c) No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward the net lot area." Savad Decl. **Ex. 314** Code Sec. 130-10(F)(1)(a).

**RESPONSE:**

**Disputed.** **Defendants note that Local Law 1 of 2007 did not generally add the above language. The majority of the quoted language in Paragraph 18 was added to Village Code § 130-10(F)(1) by Local Law 1 of 2001. Local Law 1 of 2007 amended only the following:**

- **the addition of the words "a net lot area of" in subsection (a);**
- **the reference to Chapter 126 in subsection (b);**
- **the change from "minimum lot area" to "net lot area" in subsection (b); and**
- **the change from "minimum lot area to "net lot area" in subsection (c).**

*See* **Ulman Aff. Ex. 2, Local Law 5 of 2004; Savad Decl. Ex. 314, Local Law 1 of 2007;** *see also* **Local Law 1 of 2001,** *codified as* VILLAGE CODE § 130-4 [Ulman Aff. ¶¶ 7, 13, Exhibit 1, 7]; Local Law 5 of 2004,** *codified as* VILLAGE CODE § 130-4(F). Ulman Aff. ¶¶ 8, 13, Ex. 2, 7; Local Law 1 of 2007,** *codified as* VILLAGE CODE § 130-4, 130-10, Ulman Aff. ¶¶ 9, 13, 16, Ex. 3, 7, 10.**

19.    Local Law No. 1 of 2007 added the following language to the "Educational Institution" special permit regulations: "A dormitory building is permitted as an accessory use to an educational use provided it is located on the same lot as the educational use and there shall be

7

not more than one dormitory building on the lot.  A dormitory building shall not occupy more than twenty (20) percent of the total square footage of all buildings on the lot."  Savad Decl. **Ex. 314** Code Sec. 130-10(F)(12).

**RESPONSE:**

**Disputed.  Only the following portions of the quoted language were added to Village Code § 130-10(F)(12) by Local Law 1 of 2007:  In the first sentence, the word "building," and the phrase "provided it is located on the same lot as the educational use."  The second sentence was also added by Local Law 1 of 2007:  "A dormitory building shall not occupy more than twenty (20) percent of the total square footage of all buildings on the lot." Savad Decl. Ex. 314, Local Law 1 of 2007.**

20.     On April 23, 2007, the Village enacted Local Law No. 5 of 2007, which regulates wetlands within the Village ("LL5 of 2007").  Savad Decl. **Ex. 155.**

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted that on April 23, 2007, the Village enacted Local Law 5 of 2007, a wetlands protection law for the Village.  Disputed that Local Law No. 5 of 2007 regulates all wetlands within the Village, as Local Law No. 5 of 2007 only regulates certain wetlands within the Village.  *See* Savad Decl. Ex. 155; *see also* Local Law 5 of 2007, *codified as* VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10, 11, Ex. 4,5.**

21.     Local Law No. 5 of 2007, titled the Wetlands Protection Law, prohibited various forms of development activity from occurring within 100 feet of the boundary of any wetland, water body or watercourse, unless a permit is issued by the Board of Trustees or Planning Board, which can be granted only if the regulation results in a deprivation of "the reasonable use of a property so as to constitute a de facto taking of such property."  Savad Decl. **Ex. 314** Code Sec. 126-5.

**RESPONSE:**

**Disputed.  Local Law No. 5 of 2007 provided that certain activities were allowed by right upon a wetland, body or watercourse or within 100 feet of the boundary of a wetland, water body or watercourse.  Local Law No. 5 of 2007 further provided that it shall be:**

> **"[U]nlawful to conduct, directly or indirectly, any of the following activities upon any wetland, water body or watercourse or within 100 feet of the boundary of any wetland, water body or watercourse**

unless a permit is issued therefor by the Board of Trustees or the Planning Board, as the case may be;

A. Any form of draining,  dredging, excavation or removal of material, except removal of debris or refuse.

B. Any form of depositing, of any material such as but not limited to soil, rock, debris, concrete, garbage, chemicals. etc.

C. Erecting any building or structure of any kind, roads, driveways, the driving of pilings or placing of any other obstructions, whether or not they change the ebb and flow of water. The definitions of the words BUILDING and STRUCTURE shall be defined in the Zoning Law of the Village of Pomona.

D. Installing a septic tank, running a sewer outfall, discharging sewage treatment effluent or other liquid waste into or so as to drain into any wetland, water body or watercourse.

E. Any other activity which substantially impairs any of the several functions served by wetlands, water bodies and watercourses or the benefits derived therefrom, as set forth herein."

Local Law 5 of 2007 further provided "[i]n the event the regulation of wetlands pursuant to this Chapter results in a deprivation of [all] the reasonable use of a property so as to constitute a de facto taking of such property, the owner of said property may apply to the Board of Trustees for a permit to conduct a specific activity otherwise prohibited herein." *See* Local Law 5 of 2007, *codified as* VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10,11, Ex. 4,5.

22.     Local Law No. 5 of 2007 exempted "lots that are improved with single-family residences" from the application of its "one-hundred-foot-buffer" provision.  Savad Decl. **Ex. 314** Code Sec. 126-3(D).

**RESPONSE:**

**Admitted.**

23.     Pomona is a typical suburban community, with many single family houses with garages.  It is densely built out, with existing single family residential structures in the area are a mix of styles reflecting a suburban development pattern with limited aesthetic cohesion.

Declaration of Susannah Drake submitted herewith in support of Plaintiffs' Motion for Summary Judgment ("Drake Decl.") ¶¶ 25-26; Beall Dec. ¶ 213.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 23 over the objections, disputed.  *See* Savad Decl. Ex. 12 (Village 30(b)(6) Tr., 99:18-100:14, July 15, 2014); *see also* (Report of Charles J. Voorhis at pgs. 4-9, dated March 13, 2014. attached to the Affidavit of Amanda E. Gordon submitted in support of Defendants' Motion in Opposition to Plaintiffs' Partial Motion for Summary Judgment ("Gordon Aff. 2") as Exhibit ("Ex.") Gordon Aff. 2 ¶ 6, Ex. A.**

24.     Six percent of the Village is currently occupied with rental homes and the Village has low vacancy rates.  Transcript of the Deposition of Charles Voorhis, dated August 1, 2014 attached to Savad Decl. as Exhibit 18 ("Voorhis Tr."), pages 141:16-142:20.

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted that Charles Voorhis testified that six percent of the Village is currently occupied with rental homes.  Disputed that the Village has low vacancy rates.  Plaintiffs have not cited to any authority to support this statement. *See* Transcript of the Deposition of Charles Voorhis, dated August 1, 2014 attached to Savad Decl. as Ex. 18 ("Voorhis Tr."), pages 141:16-142:20.**

25.     The average rental rate for a house in the Village is $2000-$3000 per month.  Savad Decl. **Ex. 18** (Voorhis Tr.) pages 143:2-144:13; Savad Decl. **Ex. 248**. Tauber Decl. ¶ 49.  Defendants' expert witness was unaware as to the cost of rental units in the area.  Savad Decl. **Ex. 18** (Voorhis Dep. at 140:6-8).

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 18 (Voorhis Tr.) pages 143:2-144:13; Savad Decl. Ex. 248;  Tauber Decl. ¶ 49; Savad Decl. Ex. 18 (Voorhis Dep. at 140:6-8).**

26.     There is a need in the Village for affordable, multi-family housing as identified in its 1997 Master Plan. Transcript of 30(b)(6) Deposition of Village and Board, Day 1, July 15, 2014 ("Defendants' 30(b)(6) Tr. Day 1"), attached as to Savad Decl. as Exhibit 12 pages 180:17-181:6; Transcript of Deposition of Mark Healey, taken on September 11, 2014 ("Healey Tr."), attached to Savad Decl as Exhibit 24 pages 33:12-35:4; Savad **Decl. Ex. 151.**

**RESPONSE:**

**Objection:** **Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 26 over the objections, disputed. The cited testimony does not support the purported statement of fact.** *See* **Savad Decl. Ex. 12, Transcript of 30(b)(6) Deposition of Village and Board, Day 1, July 15, 2014 ("Defendants' 30(b)(6) Tr. Day 1"), pages  180:17-181:6; Savad Decl. Ex. 24, Transcript of Deposition of Mark Healey, taken on September 11, 2014 ("Healey Tr."), pages 33:12-35:4; Savad Decl. Ex. 151.**

OVERVIEW OF JEWISH LAW

27.     Plaintiffs believe that Jewish law (or "Halakhah") is a religiously based system, and the religious beliefs of its adherents require them to obey its tenets.  Declaration of Steven Resnicoff submitted herewith in support of Plaintiffs' Motion for Summary Judgment ("Resnicoff Decl.") ¶ 21; Declaration of Meleich Menczer submitted herewith in support of Plaintiffs' Motion for Summary Judgment ("Menczer Decl.") ¶ 6; Declaration of Jacob Hershkowitz submitted herewith in support of Plaintiffs' Motion for Summary Judgment ("Hershkowitz Decl.") ¶ 6; Declaration of Chaim Rosenberg submitted herewith in support of Plaintiffs' Motion for Summary Judgment ("Rosenberg Decl.") ¶ 7; Declaration of Steven H. Resnicoff submitted herewith in support of Plaintiffs' Motion for Summary Judgment ("Resnicoff Decl.") ¶ 21.

**RESPONSE:**

**Objection:** **Defendants assert that the fact or facts set forth in Paragraph 27 are not material to the claim set forth in the Plaintiffs' Motion for Summary Judgment, i.e. that the Local Laws at issue are unconstitutional on their face.  A material fact in the context of a Fed. R. Civ. P. 56 motion is identified by the substantive law applicable to the claim made and is defined as a fact that might affect the outcome of that claim. E.g. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes which are irrelevant or unnecessary will not be counted." Id. The essential elements necessary to determine whether the Local Laws are unconstitutional on their face are set forth in Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. Given those**

elements, this statement would have virtually no impact on the outcome of the claim that the Local Laws are unconstitutional on their face and is therefore not material.

Additionally, for the reasons stated above, the factual propositions stated in Paragraph 27 are irrelevant and therefore inadmissible pursuant to Fed. R. Evid. 401 and 402.[1]

To the extent the Court chooses to consider the statements contained in Paragraph 27 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.


28.     Plaintiffs believe that the principal body of Jewish law (known as Biblical law) was communicated in non-written form from G-d to the Jewish people through Moses.  This communication had two parts.  One part was intended to be, and was, committed to writing.  This part is known as the "Written Torah" or the "Five Books of Moses." Resnicoff Decl. ¶22; Menczer Decl. ¶ 7; Hershkowitz Decl. ¶ 7; Rosenberg Decl. ¶ 8.

RESPONSE:

Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 28 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.


29.     Plaintiffs believe that the second part of the communication from G-d was intended not to be written, but, instead, to be taught orally directly from teacher to student.  This portion is known as the "Oral Torah."  Together, the Written Torah and Oral Torah constitute the Torah. Resnicoff Decl. ¶23;  Menczer Decl. ¶ 8; Hershkowitz Decl. ¶ 8; Rosenberg Decl. ¶ 9.

RESPONSE:

Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 29 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.

---

[1] Hereinafter, for the court's ease, the aforementioned immateriality and irrelevancy paragraph objections will be simply stated as: "Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge."

30.     Plaintiffs believe that Orthodox Jews fundamentally agree that the Torah embodies the word and will of God and that it is authoritative.  Therefore, one is religiously and morally obligated to follow its rules.  Resnicoff Decl. ¶24;  Menczer Decl. ¶ 9; Hershkowitz Decl. ¶ 9; Rosenberg Decl. ¶ 10.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 30 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

31.     Plaintiffs believe that early Jewish law authorities feared that the Torah, or parts of it, might be forgotten.  Consequently, they decided that it was necessary - and permitted by Jewish law - to commit the Oral Torah to writing. Resnicoff Decl. ¶25;  Menczer Decl. ¶ 10; Hershkowitz Decl. ¶ 10; Rosenberg Decl. ¶ 8.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 31 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

32.     Plaintiffs believe that the first major publication that contained parts of both the Written Torah and the Oral Torah was the Mishnah, which was redacted around the year 180.  It is divided into 63 subject areas. Resnicoff Decl. ¶26;  Menczer Decl. ¶ 11; Hershkowitz Decl. ¶ 11; Rosenberg Decl. ¶ 12.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 32 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

33.     Plaintiffs believe that the Babylonian Talmud (the "Talmud") is the central literary source from which much of Jewish law/Halakhah is derived.  The Talmud addresses 37 of the 63 subject areas of the Mishnah.   As to each of these 37 subject areas, the Talmud consists of two parts. The first is the relevant Mishnah, and the second is known as the "Gemara." The Gemara is the legal analysis and elaboration of the teaching of the Mishnah, along with a discussion of additional legal issues that arise in connection with the Mishnah. Resnicoff Decl. ¶27;  Menczer Decl. ¶ 12; Hershkowitz Decl. ¶ 12; Rosenberg Decl. ¶ 13.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 33 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

34.     Plaintiffs believe that there are many post-Talmudic written Jewish law treatises that are regarded as especially authoritative.  One, known as the Mishneh Torah, was written by Maimonides.  This treatise comprehensively addressed all areas of Jewish law and was meticulously organized by topics. Resnicoff Decl. ¶28;  Menczer Decl. ¶ 13; Hershkowitz Decl. ¶ 13; Rosenberg Decl. ¶ 14.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 34 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

35.     Plaintiffs believe that the Jewish Law code known as the Arba' ah Turim ("Tur"), written by Yaakov ben Asher (Rabbi Jacob) (1270-1340), was the first to organize Jewish Law law into a four-part structure/division.  It is limited to those issues of Jewish Law that are applicable in the current era, i.e., in the period after the destruction of the holy Temple in Jerusalem.  The foremost commentary on the Arba'ah Turim is known as the "Beit Yosef," which was written in the sixteenth century by Rabbi Joseph Karo. Resnicoff Decl. ¶29;  Menczer Decl. ¶ 14; Hershkowitz Decl. ¶ 14; Rosenberg Decl. ¶ 15.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 35 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

36.     Plaintiffs believe that The Shulchan Aruch (literally meaning, "the Set Table", but known by most Jewish communities as the "Code of Jewish Law") was authored by Joseph Karo and is based on the four-part structure of the Arba' ah Turim. Rabbi Karo lived in the Middle East and wrote the Shulchan Aruch according to the perspectives of Middle Eastern (Sephardic) Jewish authorities. Soon after publication of the Shulchan Aruch, Rabbi Moses Isserles ("Rema"), who lived among Europe's Ashkenazic Jews, added his glosses to the Shulchan Aruch. These glosses are known as the "mappah" or tablecloth that enhances Rabbi Karo's Set Table. Resnicoff Decl. ¶30; Menczer Decl. ¶ 15; Hershkowitz Decl. ¶ 15; Rosenberg Decl. ¶ 16.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 36 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

37.     The Talmud is the source for the Shulchan Aruch. Affidavit of Meilech Menczer previously submitted in Opposition of Plaintiffs' Motion to Dismiss, dated January 10, 2008 ("Menczer MTD Dec."), attached to Savad Decl. as Exhibit 307 ¶ 9.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 37 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

## JEWISH LAW, CUSTOMS AND TRADITIONS

38.     Plaintiffs believe that Jewish men are religiously obligated to marry at a young age and have large families. Transcript from the deposition of Leonard Jackson August 13, 2014 ("Jackson Tr.") attached to Savad Decl. as Exhibit 38, page 36:11-19; Resnicoff Decl. ¶86-99; Menczer Decl. ¶ 16; Hershkowitz Decl. ¶ 16; Rosenberg Decl. ¶18; .Savad Decl. **Ex. 27** (Tartikov 30(b)(6) Tr.) 23:22-24:15; Declaration of Michael Tauber submitted herewith in support of Plaintiffs' Motion for Summary Judgment ("Tauber Decl.") ¶ 8,38.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 38 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

39.     Plaintiffs believe that the religious basis for having a large family is rooted in Genesis: G-d told Adam and Eve, representing all humankind to "be fruitful and multiply." Genesis 1:28; and again after the flood that consumed almost all of humankind, G-d repeated this command to Noah and his sons on the Ark, Genesis 9: 1, 7, and to Jacob when he entered the land of Israel, G-d said to him: " I am the Almighty G-d; be fruitful and multiply." Genesis 35:11. Resnicoff Decl. ¶87;  Menczer Decl. ¶ 17; Hershkowitz Decl. ¶ 17; Rosenberg Decl. ¶ 18; Tauber Decl.¶38.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 39 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

40.     Plaintiffs believe that the Talmud also emphasizes this command by citing that when a Jewish male dies and appears before the Heavenly Tribunal to be judged, one of the six questions he is asked is "Were you busy with being fruitful and multiplying." Resnicoff Decl. ¶90; Menczer Decl. ¶ 18; Hershkowitz Decl. ¶ 18; Rosenberg Decl. ¶ 18; Tauber Decl.¶38.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 40 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

41.     Plaintiffs believe that rabbinic law continues this biblical commandment: "Although a man has fulfilled the mitzvah to be fruitful and multiply--he is commanded by the rabbis not to desist from procreation while he yet has strength, for whoever adds even one Jewish soul is considered as having created an entire world." See Moses Maimonides (1135-1204), MISHNAH TORAH, *Hilkot Ishut* 15:16, as cited in Resnicoff Decl. ¶91;  Menczer Decl. ¶ 19; Hershkowitz Decl. ¶ 19; and Rosenberg Decl. ¶ 19; Tauber Decl.¶38.

**<u>RESPONSE</u>:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 41 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

42.     Plaintiffs believe that in order to meet this religious obligation, Jewish law imposes conjugal duties upon a husband and wife while forbidding them to engage in family planning and forbidding them from using birth control. Tartikov 30(b)(6) Tr. pages 24:22-25:8; Resnicoff Decl. ¶99;  Menczer Decl. ¶ 20; Hershkowitz Decl. ¶ 20; Rosenberg Decl. ¶ 20.

**<u>RESPONSE</u>:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 42 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

43.     Plaintiffs believe Jewish families meet this religious obligation in part because the Talmud teaches that "this will  hasten the arrival of the Messiah because there are a certain, but unknown number of souls stored in heaven, and the Messiah will only come after all of those souls have been born."  Resnicoff Decl. ¶93;  Menczer Decl. ¶ 21; Hershkowitz Decl. ¶ 21; Rosenberg Decl. ¶ 21;Tauber Decl.¶38.

**<u>RESPONSE</u>:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 43 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

44.    Judaism teaches that a person is significantly influenced by his environment and directs him to dwell among a community that is directed to the Torah. Resnicoff Decl. ¶107-122; Menczer Decl. ¶ 22; Hershkowitz Decl. ¶ 22; Rosenberg Decl. ¶ 22;Tauber Decl.¶38.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 44 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

45.    Every Jewish male is biblically commanded to engage in rabbinic study, study of Torah.  Resnicoff Decl. ¶44-70;  Menczer Decl. ¶ 23; Hershkowitz Decl. ¶ 23; Rosenberg Decl. ¶ 23.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 45 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

46.    Plaintiffs believe that the Torah commands Jewish males to learn the Torah day and night, or to "speak of them [the Torah's precepts] while you sit in your home, while you walk on the way, when you retire and when you arise." Deuteronomy 6:5-9.  Resnicoff Decl. ¶44;  Menczer Decl. ¶ 24; Hershkowitz Decl. ¶ 24; Rosenberg Decl. ¶ 24.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 46 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

47.     Plaintiffs believe that this biblical command has been reinforced by the rabbis by declaring that "the study of the Torah is Judaism's highest ideal..." and not only a "sacramental act" but the greatest of all *mizvots* [commandments]. Resnicoff Decl. ¶45; Menczer Decl. ¶ 25; Hershkowitz Decl. ¶ 25; Rosenberg Decl. ¶ 25.

**<u>RESPONSE</u>:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 47 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

48.     Plaintiffs believe that because the study of the Torah should be constant, any time one unjustifiably detracts from Torah study, he commits the sin of bitul Torah (waste of the Torah). Resnicoff Decl. ¶61; Menczer Decl. ¶ 26; Hershkowitz Decl. ¶ 26; Rosenberg Decl. ¶ 26.

**<u>RESPONSE</u>:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 48 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

## RELIGIOUS JUDGES/ DAYANIM

49.     Plaintiffs believe, as a matter of religious faith, that Orthodox/Hasidic[2] Jews are prohibited from resolving their disputes in secular courts, so there is a need for rabbinical judges. Resnicoff Decl. ¶31-43; Menczer Decl. ¶ 27; Rosenberg Decl. ¶ 27; Hershkowitz Decl. ¶ 27; Transcript of Deposition of Jacob Hershkowitz, dated May 13, 2014 ("Hershkowitz Tr.") attached to Savad Decl. as **Exhibit 30** pages 86:4-17; Savad Decl. **Ex. 27** (Tartikov 30(b)(6) Tr.) 81:6-14 ; Transcript of Deposition of Professor Preston Green, dated July 30, 2014 ("Green Tr.")

---

[2] Throughout their moving papers, Plaintiffs will refer to Orthodox/ Hasidic Jews without distinction. Although a distinction does exist, it is irrelevant for purposes of this motion.

attached to Savad Decl. as **Exhibit 16** pages 40:25-41:17. Resnicoff Decl. ¶33;  Menczer Decl. ¶ 27; Hershkowitz Decl. ¶ 27.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 49 over the objection, Defendants **do not dispute Plaintiffs' beliefs** as stated therein.


50.    A backlog of cases often forces Orthodox Jews involved in disputes to go to secular courts. Savad Decl. **Ex. 31** (C. Babad Tr.) 96:22-97:8.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants further object as the cited deposition testimony does not support the purported statement of fact.

To the extent the Court chooses to consider the statements contained in Paragraph 50 over the objection, **disputed.**

*See* **Savad Decl. Ex. 31 (C. Babad Tr.) 96:22-97:8.**


51.    Plaintiffs believe that there is a great need for rabbinical judges, so Orthodox Jews are not forced to go to secular courts, and the demand for rabbinical judges is growing. Savad Decl. **Ex. 31** (C. Babad Tr.) 96:21-97:8; Transcript of Deposition of Meilech Menczer dated April 2, 2014 ("Menczer Tr.") attached as **Exhibit 26** to Savad Decl. pages 85:22-86:2; Tauber Decl. ¶14; Rosenberg Decl.¶41; Hershkowitz ¶39.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 51 over the objection, Defendants **do not dispute Plaintiffs' beliefs** as stated therein.

52.     Plaintiffs believe that only qualified Jewish religious judges shall hear and decide disputes between and among Jews. Resnicoff Decl. ¶¶33-39;  Menczer Decl. ¶ 35; Hershkowitz Decl. ¶ 35; Rosenberg Decl. ¶ 37.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 52 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

53.     Plaintiffs believe that this is a very serious command and that by going to civil courts, the Orthodox/Hasidic Jew ignores the holy laws and legal system that God made just for the Jewish people and instead chose the laws and rules made by man. Resnicoff Decl. ¶38; Menczer Decl. ¶ 36; Hershkowitz Decl. ¶ 36; Rosenberg Decl. ¶ 38.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 53 over the objection, <u>Defendants do not dispute Plaintiffs' beliefs</u> as stated therein.**

54.     The religious courts are called bais din and the judges who sit on these religious courts are called *dayanim* (plural) and *dayan* (singular).  Resnicoff Decl. ¶18;  Menczer Decl. ¶ 37; Hershkowitz Decl. ¶ 37; Rosenberg Decl. ¶ 39.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 54 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

55.     Plaintiffs believe that Orthodox/Hasidic Jews also look for help on a daily basis from the *dayanim* on the many religious issues that come up because our religious laws direct every part of their lives.  Menczer Decl. ¶38; Hershkowitz Decl. ¶38; Rosenberg Decl. ¶40.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 55 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

56.     Plaintiffs believe that to serve as a *dayan*, and judge cases according to the true intent of our religious law, the judge "becomes a partner with G-d." By doing justice and settling disputes, the *dayan* helps keep the world according to G-d's Will.  Resnicoff Decl. ¶69; Menczer Decl. ¶28; Hershkowitz Decl. ¶ 28; Rosenberg Decl. ¶ 28.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 56 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

57.     The Code of Jewish Law that will be studied at the Congregation Rabbinical College of Tartikov will include all aspects of Jewish life, personal and business, because we are guided by our religious laws in these ways.  Menczer Decl. ¶ 44; Hershkowitz Decl. ¶ 51; Rosenberg Decl. ¶53; Tauber ¶15; Tauber Decl.¶15.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 57 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

58.     The Code of Jewish Law sets out the religious rules of how Orthodox/Hasidic Jews  are to live their lives and they are to strictly follow these religious laws in their daily lives, which these Plaintiffs do follow these beliefs.  Menczer Decl. ¶ 45; Hershkowitz Decl. ¶ 52; Rosenberg Decl. ¶ 54; Tauber ¶15.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statements contained in Paragraph 58 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

      59.     Even in the nearby Monsey community, there is a backlog of cases and not enough qualified religious judges to handle all of the cases. Savad **Ex. 26** (Menczer Tr.) 83:19-85:19; Hershkowitz Decl. ¶ 39; Rosenberg Decl. ¶ 41;Tauber Decl.¶14.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

**To the extent the Court chooses to consider the statements contained in Paragraph 59 over the objection, <u>admitted</u> that the testimony states as such.**

      60.     Because there is a shortage of sufficiently trained rabbinic judges, capable of handling all of the cases, currently, rabbis that are not really capable are handling cases now. Savad **Ex. 26** (Menczer Tr.),83:9-13.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

**To the extent the Court chooses to consider the statements contained in Paragraph 60 over the objection, <u>admitted</u> that Rabbi Menczer testified as such.**

      61.     The need for qualified rabbinical judges is so great that the demand will be double or triple in 15 years from now. Savad **Ex. 26** (Menczer Tr.) 85:20-86:4.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

**To the extent the Court chooses to consider the statements contained in Paragraph 61 over the objection, <u>admitted</u> that Rabbi Menczer testified as such.**

62.     Plaintiffs believe that Jewish religious sources explain that by serving as a judge and resolving disputes between people according to the true intent of the law, the rabbinical judge is credited with being a partner with G-d. Resnicoff Decl. ¶69;  Menczer Decl. ¶ 28; Hershkowitz Decl. ¶ 28; Rosenberg Decl. ¶ 28.

**<u>RESPONSE:</u>**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 62 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

63.     Plaintiffs believe that, by settling disputes between people, *dayanim* (religious judges) enable the world to continue to exist, because without courts and due process of law, anarchy would ensue. Resnicoff Decl. ¶69;  Menczer Decl. ¶ 29; Hershkowitz Decl. ¶ 29; Rosenberg Decl. ¶ 29.

**<u>RESPONSE:</u>**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 63 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

64.     Plaintiffs believe that, by sitting in judgment, the rabbinical judge  "basks in the presence of G-d" because the Holy One, blessed be He, leaves the highermost heavens and causes His Shekhinah [Divine Presence] to rest at the judge's side" thus, serving as a religious judge is a spiritually fulfilling act.  Resnicoff Decl. ¶69;  Menczer Decl. ¶ 30; Hershkowitz Decl. ¶ 30; Rosenberg Decl. ¶ 30.

**<u>RESPONSE:</u>**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 64 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

<u>THE SHULCHAN ARUCH</u>

65.     Tartikov's rabbinical college program will focus on Jewish Law or, *"Halacha"* which is based on the four books of Shulchan Aruch, which includes everything that pertains to all facets of daily Orthodox Jewish life.  Transcript of Deposition of Rabbi Mordechai Babad dated May 9, 2014 ("M. Babad Tr.") attached to Savad Decl. as **Exhibit 29** pages 57:18-58:2; Transcript of Deposition of Professor Steven Resnicoff dated August 3, 2014 ("Resnicoff Tr.") pages 43:17-47:12; Savad **Ex. 27** (Tartikov 30(b)(6) Tr.) 54:21-24; Savad **Ex. 16** (Green Tr.) 91:19-21; Savad **Ex. 26** (Menczer Tr.) 24:24-25:15; 56:11-16; Transcript of Deposition of Chaim Rosenberg dated May 2, 2014 ("Rosenberg Tr.") attached to Savad Decl. as **Exhibit 25** pages 24:14-15.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 65 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

66.     The Shulchan Aruch is not actually 4 books. There are four major divisions in Jewish law.  It is a massive amount of literature that the rabbinical students will have to master. Savad Decl. **Ex. 34** (Resnicoff Tr.) 43:17-47:12.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 66 over the objection, Defendants do not dispute Plaintiffs' beliefs as stated therein.**

67.     To master this study, there are thousands of religious commentaries that must be read and understood in order to be fully knowledgeable in the Code of Jewish Law and to become a qualified rabbinical judge.  This is a long and difficult process that will require a total commitment from the plaintiff students, for which they are prepared. M. Menczer Decl ¶47; Hershkowitz Decl. ¶ 54; Rosenberg Decl. ¶ 56.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statements contained in Paragraph 67 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

      68.     The four divisions of the Shulchan Aruch are:

      a.     Chosen Mishpat--are the laws of finance, interest and financial responsibility; law of personal and financial damages; legal procedure, including the rules of the Bes Din and rules of witnesses.

      b.     Yoreh De'ah --are laws related to kashrut (Jewish religious dietary laws, "kosher"); religious conversion laws; laws regarding mourning;  laws of family purity; and laws related to Israel.

      c.     Orach Chayim-- are laws related to prayers, synagogue, Sabbath and holidays)

      d.     Even Ha'ezer-- are laws related to marriage and divorce.

Savad Decl. **Ex. 24** (Resnicoff Tr.) 44: 7-48:21; Savad Decl. **Ex. 31** (C. Babad Tr.) 13:14-14:13; Tauber Decl. ¶16;  Resnicoff Decl. ¶30, 76;  Menczer Decl. ¶ 46; Hershkowitz Decl. ¶ 53; Rosenberg Decl. ¶55.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statements contained in Paragraph 68 over the objection, Defendants <u>do not dispute Plaintiffs' beliefs</u> as stated therein.**

<u>TARTIKOV'S MISSION AND PURPOSE</u>

69.     The Rabbinical College of Tartikov, Inc. is a New York religious corporation incorporated on August 1, 2004.  It was formed to establish a rabbinical college in Rockland County, New York.  Defendants' Responses to Plaintiffs' Requests for Admission No. 27, attached to Savad Decl as **Exhibit 310;** Savad Decl. **Ex. 27** (Tartikov 30(b)(6) Tr.) 9:11-16; 148:18-149:16; Savad Decl. **Exhibit 28** (Tauber Tr.) 133:10-21; Savad Decl. **Ex. 31** (Chaim Babad Tr.) 152:16-23; Savad Decl. **Ex. 290.**

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted that Tartikov is a New York religious corporation incorporated on August 1, 2004.  Disputed that it was formed to establish a rabbinical college in Rockland County, New York.  The cited deposition testimony and documents do not support the purported statement of fact.** *See* **(Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc., August 1, 2004), Gordon Aff. ¶ 23, Ex. 18.**

70.     Tartikov's religious purpose is to develop and operate a rabbinical college that will be a Torah Community to educate students to become rabbinic judges.  Savad Decl. **Ex. 27** (Tartikov 30(b)(6) Tr.) 11:17-12:8; Savad Decl. **Ex. 28** (Tauber Tr.) 104:25-105:4; Tauber Decl. ¶6.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 70 over the objection, disputed.  The cited deposition testimony and documents do not support the purported statement of fact.** *See* **(Savad Decl. Ex. 27 (Tartikov 30(b)(6) Tr.) 11:17-12:8; Savad Decl. Ex. 28 (Tauber Tr.) 104:25-105:4; Tauber Decl. ¶6;** *see also* **(Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc., August 1, 2004), Gordon Aff. ¶ 23, Ex. 18.**

71.     A Torah community is a living and learning religious campus which includes total dedication to religious obligations of mastering the Code of Jewish Law in order to become a full-time rabbinical judge while at the same time meeting the students' religious obligations to his family (including teaching them the Torah) and to worshipping God in the proper way. Tauber Decl. ¶ 21;  M. Menczer Dec. ¶ 52; Hershkowitz Decl. ¶ 59; Rosenberg Decl. ¶ 61;Resnicoff Decl.¶107-122.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 71 over the objection, <u>admitted in part; disputed in part.</u> Admitted that the cited declarations state as such, in whole or in part. Disputed to the extent that Tauber Decl. ¶ 21 does not support the purported statement of fact.

72.  The Torah Community involves intensive learning interaction, day and night among the students, teachers and lecturers. Tauber Decl. ¶ 21; M.Menczer Dec. ¶ 53; Hershkowitz Decl. ¶ 60; Rosenberg Decl. ¶ 62;Resnicoff Decl. ¶ 107-122.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 72 over the objection, <u>admitted</u> that the cited declarations state as such, in whole or in part.

73.  The Torah Community will allow the rabbinical college's students to have the opportunity to constantly gain knowledge from the teachers and students by interacting with the teachers and discussing the issues with their fellow students. Tauber Decl. ¶ 28; M.Menczer Dec. ¶ 54; Hershkowitz Decl. ¶ 61; Rosenberg Decl. ¶63;Resnicoff Decl.¶107-122.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 73 over the objection, <u>admitted</u> that these individuals testified as such, in whole or in part, in their respective declarations.

74.  As part of the Torah Community, the students will be able to have access to teachers and fellow students day and night, in the study halls, courtrooms, *shuls,* or in the living quarters, and this will allow for constant communication and learning opportunities. Tauber

Decl. ¶ 29; M.Menczer Dec. ¶ 55; Hershkowitz Decl. ¶ 62; Rosenberg Decl. ¶ 64;Resnicoff
Decl.¶ 107-122.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 74 over
the objection, <u>admitted</u> that these individuals testified as such, in whole or in part, in their
respective declarations.**

75.      There is a need for a Torah community.  Savad Decl. **Ex.  27** (Tartikov 30(b)(6)
Tr.) 9:23-12:8.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants also object as this statement offers opinion as facts.**

76.      The proposed schedule at Tartikov is a full-time course of study for
approximately 15 years.  Savad Decl. **Ex. 31** (Chaim Babad Tr.) 97:13-22; 99:22-100:2;
Resnicoff Decl **Ex. 2.**

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 76 over
the objection, <u>admitted in part, disputed in part.</u>  Admitted that Babad testified as such.
Defendants dispute the sincerity of Plaintiffs' assertion that Tartikov has developed a "full-
time course of study."**

77.      The religious study method that will be used at Tartikov is called *chevrusa*,
where students study with a partner. Savad Decl. **Ex. 25**  (Rosenberg Tr.) 23:13-15.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 77 over the objection, <u>disputed</u>. The cited deposition testimony and documents do not support the purported statement of fact.** *See* **Savad Decl. Ex. 25 (Rosenberg Tr.) 23:13-15.**

THE TARTIKOV VISION

78.     Michael Tauber and Chaim Babad are trustees of Congregation Rabbinical College of Tartikov, Inc. Savad Decl. **Ex. 28** (Tauber Tr.) 101:21-24; Savad Decl. **Ex. 27** (Tartikov 30(b)(6) Tr.) 13:17-23; Savad Decl. **Ex. 31** (C. Babad Tr.) 154:16-22; 155:18-21.

**<u>RESPONSE:</u>**

**<u>Admitted.</u>**

79.     Michael Tauber and Chaim Babad discussed their religious commitment and vision for the rabbinical school for years. Savad Decl. **Ex. 28** (Tauber Tr.) 134:3-135:3; Savad Decl. **Ex. 27** (Tartikov 30(b)(6) Tr.) 9:17-11:19.

**<u>RESPONSE:</u>**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 79 over the objection, <u>admitted</u> that Tauber and Chaim Babad testified as such.**

80.     The religious commitment of Michael Tauber and Chaim Babad to this rabbinical school is based on each of their family's long histories with rabbinical courts. Savad Decl. **Ex. 31** (C. Babad Tr.) 100:9-101:6; 155:22-157:20; 157:22-159:18; Savad Decl. **Ex. 272** (Tauber 30(b)(6) **Ex. 7** 10); Savad Decl. **Ex. 29** (M. Babad Tr.) 52:5-11.

**<u>RESPONSE:</u>**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 80 over the objection, <u>admitted</u> that Chaim Babad testified as such.**

81.     The Babad family name is rooted in the name *Bais din,* or son of Bais din, and the first Babad family judge goes back over 500 years in Krakow, Poland.  Before World War II, the Babad family had rabbis that served in 40 cities and towns, but the war wiped them out. Savad Decl. **Ex. 31** (C. Babad Tr.) 89:1-21-90:6.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 81 over the objection, admitted that Tauber and Chaim Babad testified as such.**

82.     Chaim Babad's father told him to support rabbinical colleges in order to replenish the rabbinical judges who had been killed during the Holocaust. Savad Decl. **Ex. 31** (C. Babad Tr.) 17:25-19:3; 188:16-189:3.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 82 over the objection, admitted that Chaim Babad testified as such.**

83.     It is customary for Orthodox Jews to donate 10% of their earnings to charitable causes. Savad Decl. **Ex. 31** (Chaim Babad Tr.) 95:3-96:11; 105:11-109:25.  Every business venture of Chaim Babad is designed to ensure that 10% of its earnings are contributed to Kahal Minchas Chinuch.  Savad Decl. **Ex. 31** (Chaim Babad Tr.) 51:11-52:21; 95:5-17.  Kahal Minchas Chinuch purchased the Property and transferred it to Tartikov. Savad Decl. **Ex. 28** (Tauber Tr.) 128:23-129:6.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object to the the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 83 over the objection:**

As to sentence one, <u>admitted</u> that Chaim Babad testified as such.

As to sentence two, <u>admitted in part; disputed in part</u>.  Disputed that *every business venture of Chaim Babad is designed to ensure that 10% of its earnings are contributed to Kahal Minchas Chinuch*.  Babad donates a percentage of *every property* he purchases.  Savad Decl. Ex. 31 (Chaim Babad Tr.) 51:4-10.

As to the third sentence, <u>admitted</u>.

84.  For many years, Michael Tauber and his family have donated an enormous amount of time and millions of dollars to Mechon L'Hoyroa.  Savad Decl. **Ex. 28** (Tauber Tr.) 95:16-97:17.  Chaim Babad has also donated a lot of charity to Mechon L'Hoyroa over the years.  Savad Decl. **Ex. 28** (Tauber Tr.) 97:18-98:3.

<u>RESPONSE:</u>

<u>Objection:</u>  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 84 over the objection, <u>admitted in part; disputed in part</u>.  Disputed that Tauber and his family have donated an enormous amount of *time* to Mechon L'Hoyroa.  Savad Decl. **Ex. 28** (Tauber Tr.) 95:16-97:17.

85.  When news of the intended college reached the community, Michael Tauber received many calls from many potential students.  Savad Decl. **Ex. 27** (Tauber 30(b)(6) Tr.) 159:2-20.

<u>RESPONSE:</u>

<u>Objection:</u>  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 85 over the objection, <u>admitted</u> that Tauber testified as such and noted that Tauber could not recall the names of any of the callers.  Savad Decl. **Ex. 27** (Tauber 30(b)(6) Tr.) 159:2-20.

86.  Tartikov will be self funding; it is not seeking any infrastructure from Pomona.  Savad Decl. **Ex. 31** (Chaim Babad Tr.) 103:3-12.

**RESPONSE:**

**Objection**: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 86 over the objection, admitted that Chaim Babad testified as such.**

87.     The Rabbinical College of Tartikov, Inc. pays money in the form of stipends to its students. Savad Decl. **Ex. 28** (Tauber Tr.) 105:6-106:3; 114:3-12; Savad Decl. **Ex. 31** (C. Babad Tr.) 164:17-165:17.

**RESPONSE:**

**Objection**: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 87 over the objection, admitted in part; disputed in part. Admitted that Tartikov pays money in the form of stipends to the individual plaintiffs. Disputed to the extent the individual plaintiffs are characterized as students of Tartikov. Mordechai Babad, putative dean, testified that no one has yet been admitted. See Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., 19:1-20:5, May 5, 2014); Savad Decl. Ex. 30 (Hershkowitz, Jacob, 67:13-67:16, May 13, 2014); Savad Decl. Ex. 25 (Rosenberg, Chaim, 9:3-9:17, May 2, 2014), Gordon Aff. ¶¶ 10, 13, 15, Exhibit 5, 8, 10; see also Savad Decl. Ex. 29 (Babad, Mordechai Dep., 133:8-133:11, May 9, 2014) .**

## THE INDIVIDUAL PLAINTIFFS

### Students

88.     Jacob Hershkowitz is 27 years old. Hershkowitz Tr. 11:3-4. He is married and has 5 children. Transcript of Deposition of Jacob Hershkowitz dated May 13, 2014 ("Hershkowitz Tr." attached as **Exhibit 30** to Savad Decl. pages 9:6-10. He speaks Yiddish and is a member of the Orthodox/Hasidic Community and according to his religious beliefs, he has strict dress codes which emphasizes modest dress. Hershkowitz Decl.¶3,4. He is known as a "Rabbi" in his community because of his full-time religious study. Hershkowitz Decl.¶40. He studies at Kollel Belz. Savad Decl. **Ex. 30** (Hershkowitz Tr.) 11:18-13:2; Savad Decl. **Ex. 306** Affirmation of Jacob Hershkowitz previously submitted in Opposition of Plaintiffs' Motion to Dismiss, dated January 10, 2008 (Hershkowitz MTD Aff) ¶ 2 . Based upon his religious belief,

he intends to become a rabbinical judge. Savad Decl. **Ex. 30** (Hershkowitz Tr.) 23:14-24:6. He
plans to get a *smicha* in all 4 books. *Id.* 19:9-20:19; Savad Decl. **Ex. 306** ¶ 3. He has been
admitted to Tartikov and will attend upon its opening. Hershkowitz Decl.¶49. His wife works as
a secretary at Pines Homes. Savad Decl. **Ex. 30** (Hershkowitz Tr.) 7:23-9:4.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge. Defendants object as this statement offers opinion as facts. Defendants object to
the extent this paragraph contains multiple factual contentions in violation of Local Rule
56(1)(a).

To the extent the Court chooses to consider the statements contained in Paragraph 88 over
the objections, <u>admitted in part; disputed in part.</u> Disputed that Jacob Hershkowitz has
been admitted to the proposed rabbinical college. Mordechai Babad, putative dean,
testified that no one has yet been admitted. Otherwise, admitted. *See* Savad Decl. Ex. 29
(Babad, Mordechai Dep., 133:8-133:11, May 9, 2014)].

89.    The Village has no knowledge that Jacob Hershkowitz does not intend to study
at a rabbinical college as described in the Second Amended Complaint. Savad Decl. **Ex. 312**;
Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 280:2-8.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 89 over
the objection, <u>admitted.</u>

90.    Meilech Menczer is 37 years old. He has 8 children ages 2-16. Savad Decl. **Ex.
26** (Menczer Tr.) 6:9-13. He speaks Yiddish and is a member of the Orthodox/Hasidic
Community and according to his religious beliefs, he has strict dress codes which emphasizes
modest dress. M.Menczer Decl. ¶3. He is known as a "Rabbi" in his community because of his
full-time religious study. M.Menczer Decl. ¶40. Based on his religious beliefs, he intends to
study all 4 books of the Shulchan Aruch. Savad Decl. **Ex. 26** (Menczer Tr.) 12:17-13:23. He
has been approved for admission into the rabbinical school campus proposed to be built by
Tartikov and intends and is committed to study all four volumes of the Shulchan Aruch at
Tartikov to become a rabbinical judge. Savad Decl. **Ex. 26** (Menczer Tr.) 13:24-14:7; 19:4-11;
Savad Decl. **Ex. 307** ¶ 17. It has been his aspiration since his youth to be a rabbinical judge.

Savad Decl. **Ex. 26** (Menczer Tr.) 13:12-23; Savad Decl. **Ex. 307** ¶ 2.  He is currently studying the *Chosen Mishpat* at Kollel Belz.  Savad Decl. **Ex. 26** (Menczer Tr.) 51:3-16.  He is currently employed as a tutor at the Yeshiva Shaar Ephriam in Monsey, NY, tutoring students 13-16 in the Talmud.  Menczer Decl. ¶32.  He has been admitted to Tartikov and will attend upon its opening. Menczer Decl. ¶42.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).

To the extent the Court chooses to consider the statements contained in Paragraph 90 over the objection, **admitted in part; disputed in part.**  Disputed that Meilech Menczer has been admitted to the proposed rabbinical college.  Mordechai Babad, putative dean, testified that no one has yet been admitted.  Otherwise, admitted.  *See* **Savad Decl. Ex. 29 (Babad, Mordechai Tr., 133:8-133:11, May 9, 2014).**

91.    The Village has no knowledge that Meilech Menczer does not intend to study at a rabbinical college as described in the Second Amended Complaint.  Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 280:2-8.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 91 over the objection, **admitted.**

92.    Chaim Rosenberg is 29.  He is married and has five children ages 3 months to 8 Savad Decl. **Ex. 25** (Rosenberg Tr.) 5:8-12.  His religious belief has been that he should become a rabbinical judge for as long as he can remember because he has the ability and believes that someone who has the ability must do so. Savad Decl. **Ex. 25** (Rosenberg Tr.) 11:12-12:5.  He is committed to Tartikov and is currently studying to be ready when Tartikov opens Savad Decl. **Ex. 25** (Rosenberg Tr.) 9:3-22. He has been admitted to Tartikov and will attend upon its opening. Rosenberg Decl.¶51.  His wife works as a math tutor at a girls school, Bnos Esther Pupa. Savad Decl. **Ex. 25** (Rosenberg Tr.) 5:21-6:14.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 92 over the objection, <u>admitted in part; disputed in part.</u>  Disputed that Chaim Rosenberg has been admitted to the proposed rabbinical college.  Mordechai Babad, putative dean, testified that no one has yet been admitted.  Otherwise, admitted.  *See* Savad Decl. Ex. 29 (Babad, Mordechai Tr., 133:8-133:11, May 9, 2014).**

93.     The Village has no knowledge that Chaim Rosenberg does not intend to study at a rabbinical college as described in the Second Amended Complaint.  Savad Decl. **Ex. 312**; Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 280:2-8.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 93 over the objection, <u>admitted.</u>**

Teachers

94.     Mordechai Babad, Tartikov's intended dean, is trained in and is qualified to rule on matters within all four books of the Shulchan Aruch.  Savad Decl. **Ex. 29** (M. Babad. Tr.) 30:15-32:24; 41:3-14.  He became a rabbinical judge in the 1980's.  *Id.* at 33:18-34:8  He is married and has 16 children.  *Id.* at 9:13-17.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 94 over the objection, <u>admitted.</u>**

95.     Mordechai Babad is one of the only people trained in all four books of the
Shulchan Aruch. Savad Decl. **Ex. 26** (M. Menczer Tr.) 86:5-13.  He is considered to be one of
the most respected scholars in Monsey, New York.  Savad Decl. **Ex. 25** (Rosenberg Tr.) 44:19-
45:10.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements in Paragraph 95 over the
objection, admitted that Mordechai Babad is one of the only people trained in all four
books of the Shulchan Aruch.**


96.     The Village has no knowledge that Mordechai Babad does not intend to teach at
a rabbinical college as described in the Second Amended Complaint.  Savad Decl. **Ex. 312**;
Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 281:4-14.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 96 over the
objection, admitted.**


97.     Wolf Brief, one of Tartikov's intended teachers, is trained in all 4 books of the
Shulchan Aruch. Affidavit of Wolf Brief previously submitted in Opposition of Plaintiffs'
Motion to Dismiss, dated January 10, 2008 Savad Decl. **Ex. 329** ¶ 2.  His religious beliefs
requires him to pass on this knowledge. *Id*. at ¶ 3.  He plans to reside at Tartikov so that he can
be available to students day and night. *Id*. at  ¶ 7.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 96 over the
objection, admitted that Wolf Brief testified as such.**

98.     The Village has no knowledge that the plaintiff teachers do not intend to teach at the rabbinical college as described in the Second Amended Complaint. Savad Decl. **Ex. 312**; Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 280:21-281:3.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 96 over the objection, <u>admitted.</u>**

THE PROPERTY

99.     The subject property is situated on an approximately 100-acre parcel located at the intersection of US Route 202 and NY Route 306 in the Village of Pomona, Rockland County. Declaration of William Fitzpatrick submitted herewith in support of Plaintiffs' Motion for Summary Judgment ("Fitzpatrick Decl.") ¶ 11.

**RESPONSE:**

**<u>Admitted in part; Disputed in part.</u> The property is not located at the intersection of Route 202 and 306. Savad Decl. Ex. 12 (Village 30(b)(6) Tr., 92:21-93:2, July 15, 2014). Otherwise, admitted.**

100.     Tartikov's property is located in the southeast quadrant of the Route 202 and Route 306 intersection. Fitzpatrick Decl. ¶ 41.

**RESPONSE:**

**<u>Admitted in part; Disputed in part.</u> The property is not located at the intersection of Route 202 and 306. Savad Decl. Ex. 12 (Village 30(b)(6) Tr., 92:21-93:2, July 15, 2014). Otherwise, admitted.**

101.     Tartikov purchased the Property on August 4, 2004. Savad Decl. **Ex. 28** (Tauber Tr.) 128:23-129:6; Savad Decl. **Ex. 291**.

**RESPONSE:**

**Disputed.** The cited testimony does not support the purported statement of fact. The cited documents indicates that the Property was purchased on August 17, 2004. *See* Savad Decl. Ex. 291.

102.     Tartikov purchased the Property for the express purpose of building and operating a religious educational institution, specifically a rabbinical college. Tauber Decl. ¶3.

**RESPONSE:**

**Disputed** that the Property was purchased to establish a rabbinical college. *See* **Gordon Aff. ¶ 23, Ex. 18 (Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc., August 1, 2004).**

103.     Prior to the purchase, Michael Tauber was looking for a location that would accommodate the rabbinical college for years. Savad Decl. **Ex. 28** (Tauber Tr.) 135:4-136:7.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements in Paragraph 103 over the objection, **disputed.** Paragraph 103 is an inaccurate reflection of the cited deposition testimony. Savad Decl. Ex. 28 (Tauber Tr.) 135:4-136:7.

104.     The Subject Property can accommodate the needs of Tartikov as a site for its rabbinical college. Tauber Declaration ¶3-5; It will accommodate the needs of the rabbinical students/teachers and their families to be near necessary Jewish services. Resnicoff Decl. ¶100-106.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statements contained in Paragraph 104 over the objections, **disputed.** The cited testimony does not support the purported statement of fact. *See* Tauber Declaration ¶3-5; Resnicoff Decl. ¶100-106.

105.     Chaim Babad provided the funds for the purchase of the subject property; and there is no mortgage on the property. Savad Decl. **Ex. 27** (Tartikov 30(b)(6) Tr.) 81:15-23.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 105 over the objections, <u>disputed.</u> Chaim Babad stated that cash funds for the purchase of the subject property were provided by Kahal Minchas Chinuch. *See* Savad Decl. Ex. 31 (C. Babad, Tr. May 19, 2013) 160:3-161:4. .

106.     The only parcel of property owned by The Rabbinical College of Tartikov, Inc. is the Subject Property. Savad Decl. **Ex. 31** (C. Babad Tr.) 76:20-78:4.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 106 over the objections, <u>disputed.</u> The cited testimony does not support the purported statement of fact. The cited deposition testimony states that The Rabbinical College of Tartikov, Inc. previously owned a ten-acre piece of property in New Hempstead. *See* Savad Decl. Ex. 31 (C. Babad Tr., May 19, 2014) 76:20-78:4.

## THE VILLAGE'S TARGETING OF ORTHODOX/ HASIDIC JEWS AND THEIR PROPERTY

### Village officials were Aware that Orthodox/ Hasidic Jews lived in the Neighboring Community Prior to Passage of the Challenged Laws

107.     Village officials and employees are aware that Orthodox/Hasidic families have large families. Transcript of Deposition of Nicholas Sanderson dated July 31, 2014, attached to Savad Declaration as **Exhibit 17** ("N. Sanderson Tr.") pages 151:20-25; Transcript of Deposition of Brett Yagel dated May 8, 2014, attached to Savad Declaration as **Exhibit 4** ("B. Yagel Tr.") pages 22:15-21; 201:11-21; Transcript of Deposition of Alma Sanders Roman dated May 16, 2014, attached to Savad Declaration as **Exhibit 7** ("Roman Tr.") pages 24:18-21; Transcript of

Deposition of Rita Louie dated June 16, 2014, attached to Savad Declaration as **Exhibit 9**
("Louie Tr.") 183:23-184:2; Transcript of Deposition of Melvin Cook dated April 8, 2014,
attached to Savad Declaration as **Exhibit 1** ("Cook Tr.") pages 160:8-14; Transcript of
Deposition of Robert Prol dated April 9, 2014, attached to Savad Declaration as **Exhibit 2** ("Prol
Tr.") pages 72:6-15; 73:11-74:17; Transcript of Deposition of Lynn Yagel dated May 22, 2014,
attached to Savad Declaration as **Exhibit 8** ("L. Yagel Tr.") 38:21-39:5; Transcript of Deposition
of Leslie Sanderson dated July 7, 2014, attached to Savad Declaration as **Exhibit 11** ("Leslie
Sanderson Tr. ") pages 237:4-13.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants object to the factual proposition contained in Paragraph 107 on the
basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook
was not a Village official at the time of the passage of the laws at issue in this action,
rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 107
over the objection, <u>admitted in part; disputed in part</u>.  Disputed that Lynn Yagel is either a
Village official or employee.  Otherwise, admitted**

108.    Village officials and employees can recognize Orthodox/ Hasidic Jews by the
manner in which they dress.   Savad Decl. Ex. 11 (L. Sanderson Tr.) 56:22-25; 57:7-10; Savad
Decl. Ex. 9 (Louie Tr.) 49:20-50:2; Savad Decl. Ex. 8 (L. Yagel Tr.) 38:2-20; 124:4-9; Savad
Decl. Ex. 4 (B. Yagel Tr. ) 96:11-22; 244:25-245:6;  Transcript of Deposition of Doris Ulman
dated August 15, 2014, attached to Savad Declaration as **Exhibit 23** ("Ulman Tr.") pages 22:23-
23:12; Savad Decl. Ex. 17 (N. Sanderson Tr.) 19:15-25; Transcript of Deposition of Robert
Rhodes, Day 1, dated August 11, 2014, attached to Savad Declaration as **Exhibit 19** ("Rhodes
Day 1 Tr.") pages 55:4-56:16; Transcript of Deposition of Alan Lamer dated May 12, 2014,
attached to Savad Declaration as **Exhibit 5** ("Lamer Tr.") pages 57:19-58:8; Transcript of
Deposition of Herbert Marshall dated April 30, 2014, attached to Savad Declaration as **Exhibit 3**
("Marshall Tr.") pages 26:3-13

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 108
over the objection, <u>admitted in part; disputed in part</u>.  Admitted that certain Village
officials, namely Doris Ulman, Rita Louie, Brett Yagel, Alan Lamer, and Herbert Marshall,**

testified that they could generally recognize Orthodox/Hasidic Jews by the manner in which they dress. Savad Decl. Ex. 9 (Louie Tr.) 49:20-50:2; Savad Decl. Ex. 4 (B. Yagel Tr. ) 96:11-22, 244:25-245:6;  Transcript of Deposition of Doris Ulman dated August 15, 2014, attached to Savad Declaration as Exhibit 23 ("Ulman Tr.") pages 22:23-23:12; Savad Decl. Ex. 17 (N. Sanderson Tr.) 19:15-25; Transcript of Deposition of Alan Lamer dated May 12, 2014, attached to Savad Declaration as Exhibit 5 ("Lamer Tr.") 57:19-58:8; Transcript of Deposition of Herbert Marshall dated April 30, 2014, attached to Savad Declaration as Exhibit 3 ("Marshall Tr.") 26:3-13.

Leslie Sanderson, a former Village employee testified that she "[thought she] could" but was not "100 percent sure." *See* Savad Decl. Ex. 11 (L. Sanderson Tr.) 57:7-10.

Disputed that Lynn Yagel and Robert Rhodes are either  Village officials or employees.


109.    Village officials and employees are aware that Hasidic/ Orthodox Jews strictly follow the Torah and have particular customs and laws.  Savad Decl. **Ex. 2**  (Prol Tr.) 96:16-25; Savad Decl. **Ex. 11** (L. Sanderson Tr.) 56:25-57:4;  209:8-20; Savad Decl. **Ex. 5** (Lamer Tr.) 57:2-12

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 109 over the objection, disputed.  Plaintiffs take the testimony of three individuals out of context. Robert Prol and Leslie Sanderson testified as to their limited knowledge of Orthodox/Hasidic customs, citing specific practices as examples.  Alan Lamer testified generally that he understood that Orthodox strictly adhere to the laws of the Torah but had a limited knowledge regarding the customs of Hasidic Jews. *See* Savad Decl. **Ex. 2** (Prol Tr.) 96:16-25; Savad Decl. **Ex. 11** (L. Sanderson Tr.) 56:25-57:4;  209:8-20; Savad Decl. **Ex. 5** (Lamer Tr.) 57:2-12.


110.    Village officials and employees have knowledge that the New Square area of Monsey, New York is predominantly occupied by Hasidic/ Orthodox residents.   Savad Decl. **Ex. 11** (L. Sanderson Tr.) 156:23-157:3 ; Savad Decl. Ex. 9 (Louie Tr.) 227:17-20; Savad Decl. **Ex. 7** (Roman Tr.) 33:16-22; 67:23-25; Savad Decl. Ex. 23 (Ulman Tr.) 23:13-24; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 16:9-17:3; Savad Decl. **Ex. 5** (Lamer Tr.) 58:16-59:5; 100:18-21; Savad Decl. **Ex. 8** (L. Yagel Tr.) 26:17-27:20 ; Savad Decl. **Ex. 11** (L. Sanderson Tr.) 156:23-157:6.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 110 over the objection, admitted in part; disputed in part. Admitted that certain Village officials and employees, namely Leslie Sanderson, Alma Roman and Alan Lamer, testified that they believed New Square to be predominantly occupied by Hasidic/Orthodox residents. Rita Louie testified that she believed a "significant" portion of New Square was occupied by Orthodox/Hasidic Jews. Doris Ulman testified that "high concentrations" of Hasidic/Orthodox Jews were in New Square. Otherwise, disputed. Nicholas Sanderson and Lynn Yagel did not express an opinion on the statements asserted in Paragraph 110. Further, disputed that Lynn Yagel is a Village official or employee. Further, disputed that New Square is in Monsey, New York. It borders the Town of Clarkstown, the Town of Ramapo, and the Village of New Hempstead. *See* Savad Decl. Ex. 11 (L. Sanderson Tr.) 156:23-157:6; Savad Decl. Ex. 7 (Roman Tr.) 33:16-22, 67:23-25; Savad Decl. Ex. 5 (Lamer Tr.) 58:16-59:5, 100:18-21; Savad Decl. Ex. 9 (Louie Tr.) 227:17-20; Savad Decl. Ex. 23 (Ulman Tr.) 23:13-24; Savad Decl. Ex. 17 (N. Sanderson Tr.) 16:9-17:3; Savad Decl. Ex. 8 (L. Yagel Tr.) 26:17-27:20.

111.    Former Planning Board Member Mel Cook called New Square a "tribal ghetto", totally ultra-orthodox Jewish people. Savad Decl. **Ex. 1** (Cook Tr.) 89:16-90:21.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object to the factual proposition contained in Paragraph 111 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.

To the extent the Court chooses to consider the statements contained in Paragraph 111 over the objection, admitted.

112.    Village officials have knowledge that Monsey is predominantly occupied by Hasidic/ Orthodox residents. Savad Decl. **Ex. 3** (Marshall Tr.) 145:21-146:2; Savad Decl. **Ex. 9** (Louie Tr.) 227:5-16; Savad Decl. **Ex. 23** (Ulman Tr.) 23:13-24; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 16:9-17:3; Lamer Tr. 58:16-59:5. Former Mayor Marshall accused former

Deputy Mayor Appel that "Monsey grew up under your watch" when he was chairman of the Ramapo zoning board.  Savad Decl. **Ex. 3** (Marshall Tr.) 145:5-145:20; Savad Decl. **Ex. 71.**

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 112 over the objection, <u>admitted in part; disputed in part.</u> Admitted that Herbert Marshall testified that Monsey is predominantly occupied by Hasidic/Orthodox residents.  Disputed that Rita Louie, Doris Ulman, Nicholas Sanderson or Alan Lamer have knowledge that Monsey is predominantly occupied by Hasidic/ Orthodox residents.  Admitted that Herbert Marshall made the statement quoted in Paragraph 112.  Disputed to the extent that it was an "accusation" and further disputed in that it is taken out of context.  Savad Decl. Ex. 3 (Marshall Tr.) 145:21-146:2; Savad Decl. Ex. 9  (Louie Tr.) 227:5-16; Savad Decl. Ex. 23 (Ulman Tr.) 23:13-24; Savad Decl. Ex. 17 (N. Sanderson Tr.) 16:9-17:3; Savad Ex. 5 (Lamer Tr.) 58:16-59:5.  Former Mayor Marshall accused former Deputy Mayor Appel that "Monsey grew up under your watch" when he was chairman of the Ramapo zoning board.  Savad Decl. Ex. 3 (Marshall Tr.) 145:5-145:20; Savad Decl. Ex. 71.**

113.    Village officials and employees have knowledge that the term "voting bloc" is sometimes used as another way to say Orthodox/ Hasidic Jews. Savad Decl. **Ex. 3** (Marshall Tr.) 22:2-21; 152:4-10; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 17:13-16; Savad Decl. **Ex. 4** (B. Yagel Tr.) 167:19-21; Savad Decl. Ex. 9  (Louie Tr.) 48:11-14; Savad Decl. **Ex. 11**  (L. Sanderson Tr.) 123:17-125:3; 156:19-22; Savad Decl. **Ex. 8**  (L. Yagel Tr.) 26:17-27:20; Savad Decl. **Ex. 2** (Prol Tr.) 23:18-24:14; 59:15-61:4; 63:14-64:8; 163:14-164:23; Savad Decl. **Ex. 1** (Cook Tr.) 81:22-83:10; Savad Decl. **Ex. 19** (Rhodes Tr.) 132:20-133:14; Transcript of Deposition of Michael Castelluccio dated August 12, 2014, attached to Savad Declaration as **Exhibit 21**  ("Castelluccio Tr.") 26:2-6.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the factual proposition contained in Paragraph 111 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 113 over the objection, <u>disputed.</u>  The cited testimony does not support the purported statement of fact.  Further disputed that Michael Castellucio, Robert Rhodes, or Lynn Yagel are**

**Village officials or employees.** *See* **Savad Decl. Ex. 3 (Marshall Tr.) 22:2-21, 152:4-10; Savad Decl. Ex. 17 (N. Sanderson Tr.) 17:13-16; Savad Decl. Ex. 4 (B. Yagel Tr.) 167:19-21; Savad Decl. Ex. 9 (Louie Tr.) 48:11-14; Savad Decl. Ex. 11 (L. Sanderson Tr.) 123:17-125:3, 156:19-22; Savad Decl. Ex. 8 (L. Yagel Tr.) 26:17-27:20; Savad Decl. Ex. 2 (Prol Tr.) 23:18-24:14, 59:15-61:4, 63:14-64:8, 163:14-164:23; Savad Decl. Ex. 19 (Rhodes Tr.) 132:20-133:14; Transcript of Deposition of Michael Castelluccio dated August 12, 2014, attached to Savad Declaration as Exhibit 21 ("Castelluccio Tr.") 26:2-6.**

114.    When speaking about adult student housing, Brett Yagel has stated "how convenient for the voting bloc". Savad Decl. **Ex. 4** (B. Yagel Tr.) 158:12-159:22; Savad Decl. **Ex. 101.**

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 114 over the objection, admitted in part; disputed in part. Admitted that the quoted language is attributable to Brett Yagel. Disputed that the language quoted in Paragraph 114 was spoken. Defendants note that the quoted language was written by Brett Yagel in a letter that was never submitted or published. Additionally, the quoted language is taken out of context. It was prepared in response to an article related to the formation of the Village of Ladentown, not adult student housing. Savad Decl. Ex. 4 (B. Yagel Tr.) 158:4-161:23; Savad Decl. Ex. 101.**

115.    Village officials and employees have knowledge that Rockland's Hasidic Jewish population has "exploded" or increased. Savad Decl. **Ex. 11** (L. Sanderson Tr.) 57:57:17-20; 163:24-164:23; Savad Decl. **Ex. 165**; Savad Decl. **Ex. 9** (Louie Tr.) 42:24-43:23; 50:3-7; Savad Decl. **Ex. 7** (Roman Tr.) 33:12-16; Savad Decl. **Ex. 23** (Ulman Tr.) 23:13-24; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 16:9-17:3; Savad Decl. **Ex. 5** (Lamer Tr.) 58:9-12; Transcript of Deposition of Ian Banks dated May 15, 2014, attached to Savad Declaration as **Exhibit 6** ("Banks Tr.") pages 36:13-17; Savad Decl. **Ex. 1** (Cook Tr.) 78:21-79:13.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object to the factual proposition contained in Paragraph 111 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

To the extent the Court chooses to consider the statements contained in Paragraph 115 over the objection, <u>admitted in part; disputed in part</u>. Admitted that Doris Ulman and Alan Lamer testified that the Hasidic Jewish population in Rockland County has increased. The remainder of the depositions transcripts and exhibits cited do not support the purported statement of fact. *See* Savad Decl. Ex. 11 (L. Sanderson Tr.) 57:57:17-20, 163:24-164:23; Savad Decl. Ex. 165; Savad Decl. Ex. 9 (Louie Tr.) 42:24-43:23. 50:3-7; Savad Decl. Ex. 7 (Roman Tr.) 33:12-16; Savad Decl. Ex. 23 (Ulman Tr.) 23:13-24; Savad Decl. Ex. 17 (N. Sanderson Tr.) 16:9-17:3; Savad Decl. Ex. 5 (Lamer Tr.) 58:9-12; Savad Decl. Ex. 6 (Banks Tr.) 36:13-17; Savad Decl. Ex. 1 (Cook Tr.) 78:21-79:13.

116.    Brett Yagel has stated that he agrees with Preserve Ramapo leader Robert Rhodes' statement that "examination of the population growth in Ramapo's Hasidic communities should be the central focus of any land use plan in Ramapo." Savad **Decl. Ex. 4** (B Yagel Tr.) 202:19-203:8

<u>RESPONSE</u>:

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 116 over the objection, <u>admitted in part; disputed in part</u>. Admitted that Brett Yagel stated, at one point during his deposition, that he agreed with the statement quoted in Paragraph 116. Disputed to the extent the statement is an assertion of Brett Yagel's beliefs. Defendants note that Mr. Yagel immediately corrected himself, stated that he did not agree with the statement quoted in Paragraph 116 and explained the reasons for his disagreement. Savad Decl. Ex. 4 (B Yagel Tr.) 203:16-204:3

117.    The Village has knowledge of the Orthodox Jewish population in and around the Town of Ramapo and its villages. Defendants Answer, attached to Savad Declaration as **Exhibit 309** ¶ 78.

<u>RESPONSE</u>:

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 117 over the objection, <u>admitted</u> that there is an Orthodox Jewish population in and around the Town of Ramapo and its villages.

<u>Village Officials, Employees and Residents Voiced their Opposition to the Orthodox/
Hasidic Community in General and the Specific Orthodox/ Hasidic Owners of the Property prior
to the Passage of the Challenged Laws</u>

<u>Local Law No. 1 of 2001 Was Passed in Response to Yeshiva Spring Valley</u>

118.    In January, 2001, the Village enacted Local Law No. 1 of 2001, which regulates
school land uses within the Village. The law adopted a 10% maximum building coverage
requirement for schools, a 20% floor area ratio for schools and a 25% maximum impervious
surface limitation for schools.  Savad Decl. **Ex. 314** Code Sec. 130-10(F)(2)(a); 130-10(F)(2)(b)
and 130-10(F)(2)(c).

**RESPONSE:**

**<u>Admitted</u> that the Village enacted Local Law No. 1 of 2001 in January 2001 and that Local
Law No. 1 of 2001 related to schools within the Village.  Also admitted that Local Law No.
1 of 2001 included a  20% floor area ratio for schools and a 25% maximum impervious
surface limitation for schools.  Defendants agree that  Local Law No. 1 of 2001 amended
Village Code § 130-10(F)(2)(a) to state, with regard to Educational Institutions, that "the
total building coverage shall not exceed ten percent of net lot area." See Savad Decl. Ex.
152, 314.**

119.    The law was considered from December 1999 through its passage in January of
2001. Savad Decl. **Ex. 24** (Healey Tr.) 74:7-75:18; Savad Decl. **Ex. 153.**

**RESPONSE:**

**<u>Disputed.</u>  The cited testimony does not support the purported statement of fact.  See Savad
Decl. Ex. 24 (Healey Tr.) 74:7-75:18; Savad Decl. Ex. 153.**

120.    In 1997, Mayor Marshall and Trustee Banks stated that they had concerns with
the Orthodox as it related to the school district. Savad Decl. **Ex. 6** (Banks Tr.) 30:22-32:19;
Savad Decl. **Ex. 119.**

**RESPONSE:**

**<u>Disputed.</u>  The cited testimony does not support the purported statement of fact.  See Savad
Decl. Ex. 6 (Banks Tr.) 30:22-32:19; Savad Decl. Ex. 119.**

121.    The law was created in response to a proposal by Yeshiva Spring Valley to build a yeshiva on the Property.  Following a December, 1999 informal appearance before the Planning Board at which Yeshiva Spring Valley laid out its plans, the Village planner commented that the zoning for schools "really stinks" and warned that based on the fact that the property is 100 acres, Yeshiva Spring Valley could build over 800,000 square feet of school development as of right.  The Village planner recommended that a law be drafted in response to that fact.  Savad Decl. **Ex. 24** (Healey Tr.) 74:7-75:18; Savad Decl. **Ex. 153** at pages 41 and 42; Savad Decl. **Ex. 12** (Defendants' 30(b)(6) Day 1 Tr.) 121:23-122:4; Transcript of Deposition of Rabbi Fromowitz, dated June 25, 2014 attached to the Savad Declaration as **Exhibit 33** ("Fromowitz Tr.") 45:2-19.

**RESPONSE:**

**Objection:** **Defendants object as this statement offers opinion as facts. Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 121 over the objection, admitted in part; disputed in part. Admitted that Mark Healy made the statement that the zoning for schools in the Village "really stink[s]."  Further admitted that Mark A. Healey, AICP indicated that, under the then existing rules, Yeshiva Spring Valley could build a school over 800,000 square feet. Disputed that Mr. Healey recommended that a law be drafted in response to Yeshiva Spring Valley's proposal.  *See* Savad Decl. Ex. 24 (Healey Tr.) 74:7-75:18; Savad Decl. Ex. 153 at pages 41 and 42; Savad Decl. Ex. 12 (Defendants' 30(b)(6) Day 1 Tr.) 121:23-122:4; Transcript of Deposition of Rabbi Fromowitz, dated June 25, 2014 attached to the Savad Declaration as Exhibit 33 ("Fromowitz Tr.") 45:2-19.**

122.    At the December, 1999 informal appearance, by Yeshiva Spring Valley before the Village there was an undercurrent that the Village did not want Yeshiva Spring Valley to come into the Village.  Savad Decl. **Ex. 33** (Fromowitz Tr.) 45:20-47:10.

**RESPONSE:**

**Objection:** **Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 122 over the objection, admitted in part; disputed in part. Admitted that Rabbi Fromowitz testified that he felt "the undercurrent of unease of not being allowed to do what we thought when we bought the property." Disputed as to the characterization that there was an undercurrent that the Village did not want Yeshiva Spring Valley to come into the Village. Savad Decl. Ex. 33 (Fromowitz Tr.) 45:20-47:10.**

123.     In January, 2000, the Village Planner provided memos to the Village Board and Planning Board entitled "Proposed Primary School and Pre-School (YSV Pomona) and the Village Zoning Regulations Regarding Schools." The memos indicated that Village regulations on schools are "scant" and recommended that the Village amend the zoning laws for schools. Savad Decl. **Ex. 17** ("N. Sanderson Tr.) 47:21-49:4; Savad Decl. **Ex. 196**; Savad Decl. **Ex. 5** (Lamer Tr.) 40:22-41:16; Savad Decl. **Ex. 115**; Savad Decl. **Ex. 24** (Healey Tr.) 41:10-24; 43:9-44:23; 48:9-49:2; Savad Decl. **Ex. 152**.

**RESPONSE:**

**Admitted.**


124.     The Village Planner in conjunction with Village Attorney then drafted a new law regarding schools which eventually became Local Law No. 1 of 2001 and included many of the recommendations from the January, 2000 memos by the Village Planner. Savad Decl. **Ex. 1** (Cook Tr.) 349:18-350:10; Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 349:18-350:2; Savad Decl. **Ex. 115**; Savad Decl. **Ex. 152**.

**RESPONSE:**

**Admitted**.


125.     During the time-frame between the December, 1999 informal appearance and the passage of Local Law No. 1 of 2001 in January, 2001, the Village delayed and obstructed Yeshiva Spring Valley's application's until the new law could be passed. Savad Decl. **Ex. 33** (Fromowitz Tr.) 49:23-50:18; 56:8-21; 112:2-115:10.

**RESPONSE:**

**Objection:  Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 125 over the objections, <u>admitted in part; disputed in part</u>. Admitted that Rabbi Fromowitz testified that he felt that Yeshiva Spring Valley's project was "put on hold." Disputed as to the characterization that the Village "delayed and obstructed" Yeshiva Spring Valley. *See* Savad Decl. Ex. 33 (Fromowitz Tr.) 49:23-50:18, 56:8-21, 112:2-115:10.**

126.    When discussing proposed Local Law No. 1 of 2001, Mayor Marshall said "This thing's going to come in.  They're going to come in and we're going to be caught with our pants down if we don't move.  That's why I want to make sure that we're moving ahead.  If you miss a meeting, no problem, you're going to be involved in the discussion anyway." Savad Decl. **Ex. 3** (Marshall Tr.) 96:17-98:9; Savad Decl. **Ex. 64.**

**RESPONSE:**

**Admitted.**


127.    The Village has produced no evidence showing that it conducted a SEQRA review in conjunction with Local Law No. 1 of 2001.  Transcript of 30(b)(6) Deposition of Village and Board, Day 4, July 18, 2014 ("Defendants' 30(b)(6) Tr. Day 4") attached as **Exhibit 15** to the Savad Decl pages 877:16-878:3

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 127 over the objections, admitted that the Village has not produced a formal SEQRA declaration.  Defendants note, however, that tafffic and environmental issues were addressed in two Memorandum of Frederick P. Clark Associates, Inc. issued to the Village's then mayor and Board of Trustees.  Memorandum, Frederick P. Clark Associates, Inc. (January 14, 2000); Memorandum, Frederick P. Clark Associates, Inc. (January 24, 2000) Ulman Aff. ¶¶ 33-34, Ex. 27-28**


128.    Local Law No. 1 of 2001 was passed in January, 2001 and it prevented Yeshiva Spring Valley from being able to build its yeshiva as envisioned.  Savad Decl. **Ex. 33** (Fromowitz Tr.) 59:21-60:16; 61:22-62:8; 62:9-25; Savad Decl. **Ex. 152.**

**RESPONSE:**

**Objection:  Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph X over the objections, admitted in part; disputed in part.  Admitted that Local Law No. 1 of 2001 was passed in January 2001.  Otherwise, disputed.  Defendants note that Yeshiva Spring Valley never filed an application to build a Yeshiva, only an application for a subdivision,**

which is later withdrew. *See* **Savad Decl. Ex. 33** (Fromowitz Tr.) **61:22-62:14, 80:10-14, 87:3-8.**

129.     There were no schools in the Village at the time of the passage of Local Law No. 1 of 2001. Savad Decl. **Ex. 310** (Request to Admit Response) Nos. 94 and 98.

**RESPONSE:**

**Admitted.**

130.     Following the passage of Local Law No. 1 of 2001, and the sale of the property by Yeshiva Spring Valley in 2004 (to Tartikov) and its move to another location, Nicholas Sanderson commented that due to Local Law No. 1 of 2001 that perhaps Yeshiva Spring Valley was advised to go to a "friendlier place such as Ramapo". Savad Decl. **Ex. 17** (N. Sanderson Tr.) 63:24-64:9; Savad Decl. **Ex. 198.**

**RESPONSE:**

**Admitted in part; Disputed in part. Admitted that Nicholas Sanderson made the statement attributed to him in Paragraph 30 in an email correspondence. Disputed to the extent it is suggested that Mr. Sanderson was aware that the property had been sold by Yeshiva Spring Valley at the time of that statement. Further disputed that Mr. Sanderson's statements correspond to the passage of Local Law No. 1 of 2001.** *See* **Savad Decl. Ex. 198.**

Local Law No. 5 of 2004 Was Passed in Direct Response to Residents' Objections to the Possibility that Orthodox/ Hasidic Owners of the Property Would Build Dormitories for Adult Students and their Families

131.     On September 27, 2004, the Village enacted Local Law No. 5 of 2004, which regulates Educational Institution land uses within the Village. The law eliminated the definition of the word "School" and amended the definition of the words "Educational Institution" to include a requirement that any Educational Institution must be "accredited by the New York State Education Department or similar recognized accrediting agency." Savad Decl. **Ex. 314** Code Sec. 130-4.

**RESPONSE:**

**Admitted in part; Disputed in part. Admitted that on September 27, 2004, the Village adopted Local Law No. 5 of 2004, which amended the Village zoning laws in relation to educational institutions. Further admitted that Local Law No. 5 of 2004 eliminated the**

definition of the word "school." Otherwise, disputed. **Further disputed that the definition of Educational Institution was replaced in its entirety, not simply amended with the language identified in Paragraph 131. The amendment referenced by Plaintiffs is an incomplete statement taken out of context.** *See* **Savad Decl. Ex. 314  Code Sec. 130-4;** *see also* **Local Law 1 of 2001, codified as VILLAGE CODE § 130-4; Ulman Aff. ¶¶ 7, 13, Ex. 1, 7; Local Law 5 of 2004, codified as VILLAGE CODE § 130-4(F). Ulman Aff. ¶¶ 8, 13, Ex. 2, 7.**

132.    Local Law No. 5 of 2004 also adopted a "Dormitory" provision that read: "DORMITORY - A building that is operated by a school located on the same lot and which contains private or semi-private rooms which open to a common hallway, which rooms are sleeping quarters for administrative staff, faculty or students. Communal dining, cooking, laundry, lounge and recreation facilities may be provided. Dormitory rooms shall not contain separate cooking, dining or housekeeping facilities except that one dwelling unit with complete housekeeping facilities may be provided for use of a Superintendent or supervisory staff for every fifty dormitory rooms. Not more than one communal dining room shall be provided in any building used for dormitory purposes. Single family, two-family and/or multi-family dwelling units other than as described above shall not be considered to be dormitories or part of dormitories." Savad Decl. **Ex. 314** Code Sec. 130-4. Although the Village Code did not explicitly state that dormitories were permitted prior to the passage of Local Law No. 5 of 2004, the Village Attorney has admitted that New York caselaw required the Village to allow dormitories. Savad Decl. **Ex. 314** Code Sec. 130-4.

### RESPONSE:

**Admitted in part; Disputed in part. Admitted that Local Law No. 5 of 2004 included the definition of Dormitory quoted in Paragraph 132. Further admitted that Village Counsel testified that New York case law required the Village to allow dormitories. Disputed to the extent it is suggested that dormitories were permitted in the Village prior to the adoption of Local Law No. 5 of 2004. Ms. Ulman testified that she suggested the law on dormitories because she believed the existing Village law was contrary to case law. Savad Decl. Ex. 13 (Village 30(b)(6) Dep., 303:13-304:6, July 16, 2014).**

133.    Local Law No. 5 of 2004 also added the following requirement for Educational Institutions: "The minimum lot area for an educational institution shall be 10 acres." and stated that "A dormitory is permitted as an accessory use to an educational use and there shall be not more than one dormitory building on a lot." and that "The maximum height of a dormitory shall be two stories or 25 feet, whichever is less." Savad Decl. **Ex. 314** Code Sec. 130-10(F)(1)(a); Code Sec. 130-10(F)(12); Code Sec. 130-10(F)(12)(c); Savad Decl. **Ex. 175.**

**RESPONSE:**

**Admitted in part; Disputed in part.** **Defendants note that Local Law No. 5 of 2004 amended Village Code § 130-10(F)(1)(a) by** *replacing* **the sentence "the minimum lot area for an educational institution shall be 10 acres, plus an additional 0.05 acre for each pupil enrolled" with the new sentence "the minimum lot area for an educational institution shall be 10 acres," thereby eliminating the requirement for one half acre per student. Admitted that Local Law No. 5 of 2004 added the remaining quoted language to Village Code § 130-10(F)(12).** *See* **Savad Decl. Ex. 314, Code Sec. 130-10(F)(12);** *see also* **Local Law 1 of 2001,** *codified as* VILLAGE CODE **§ 130-4; Ulman Aff. ¶¶ 7, 13, Ex. 1, 7; Local Law 5 of 2004,** *codified as* VILLAGE CODE **§ 130-4(F). Ulman Aff. ¶¶ 8, 13, Ex. 2, 7.**

134.    Local Law No. 5 of 2004 was passed on September 27, 2004. Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 399:8-14

**RESPONSE:**

**Admitted.**

135.    The Village knew that dormitory housing for Hasidic/ Orthodox adult students and their families was a concern in the surrounding area because as early as 1999, during the Yeshiva Spring Valley informal appearance, Village Planning Board members asked its representatives multiple times if the yeshiva would include dormitories. Savad Decl. **Ex. 33** (Fromowitz Tr.) 45:20-47:10; Savad Decl. **Ex.153.**

**RESPONSE:**

**Objection: Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 135 over the objections,** <u>admitted in part; disputed in part</u>**. Admitted that Planning Board members asked whether the school and summer camp planned by Yeshiva Spring Valley would include dormitories. Otherwise, disputed. The cited testimony does not support the purported statement of fact. Further disputed that Yeshiva Spring Valley was for adult students.** *See* **Savad Decl. Ex. 33 (Fromowitz Tr.) 45:20-47:10; Savad Decl. Ex. 153.**

136.    From December 2002, through 2004, the Village, as well as Village officials and employees opposed Ramapo's proposed master plan which allowed dormitories for adult students and their families; and at the same time, the Village, as well as Village officials and employees supported efforts to form a proposed village called "Ladentown" which was designed

to prohibit the building of adult student at neighboring Patrick Farm.  Savad Decl. **Ex. 11** (L. Sanderson Tr.) 114:20-116:3,  118:19-23, 125:17-126:20, 131:21-132:2, 132:3-6; Savad Decl. **Ex. 156;** Savad Decl. **Ex. 157;** Savad Decl. **Ex. 158**; Savad Decl. **Ex. 3** (Marshall Tr.) 130:3-131:2, 154:4-11, 155:21-156:16; Savad Decl. **Ex. 70** ; Savad Decl. **Ex. 4** (B. Yagel Tr.) 163:22-166:17; Savad Decl. **Ex. 101.**

## RESPONSE:

**Objection:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**As to clause one, <u>admitted in part; disputed in part</u>.  Admitted that that Leslie Sanderson and Brett Yagel testified that they personally opposed the downzoning of environmentally sensitive property in the Town of Ramapo.  Otherwise, disputed.  The cited documents and testimony do not support the purported statement of fact.  *See* Savad Decl. Ex. 11 (L. Sanderson Tr.) 114:20-116:3,  118:19-23, 125:17-126:20, 131:21-132:2, 132:3-6; Savad Decl. Ex. 3 (Marshall Tr.) 130:3-131:2, 154:4-11, 155:21-156:16; Savad Decl. Ex. 70 ; Savad Decl. Ex. 4 (B. Yagel Tr.) 163:22-166:17; Savad Decl. Ex. 101. Savad Decl. Ex. 156; Savad Decl. Ex. 157; Savad Decl. Ex. 158 are unrelated to Paragraph 136.**

**As to clause two, <u>admitted in part; disputed in part</u>.  Admitted that Leslie Sanderson and Brett Yagel testified that they personally were in favor of incorporating Ladentown.  Also admitted that Herbert Marshall testified he was in favor of Ladentown incorporation.  Otherwise, disputed.  Mr. Marshall did testify that the Board supported the formation of Ladentown, but also that he did not know whether the Village took an "official" position.  Savad Decl. Ex. 3 (Marshall Tr.) 154:4-11.  Further disputed that Ladentown "was designed to prohibit the building of adult student at neighboring Patrick Farm."  This assertion is not supported by the cited testimony and documents.  *See* Savad Decl. Ex. 11 (L. Sanderson Tr.) 114:20-116:3,  118:19-23, 125:17-126:20, 131:21-132:2, 132:3-6; Savad Decl. Ex. 3 (Marshall Tr.) 130:3-131:2, 154:4-11, 155:21-156:16; Savad Decl. Ex. 70 ; Savad Decl. Ex. 4 (B. Yagel Tr.) 163:22-166:17; Savad Decl. Ex. 101. Savad Decl. Ex. 156; Savad Decl. Ex. 157; Savad Decl. Ex. 158 are unrelated to Paragraph 136.**

137.    In March, 2004 the Village promoted its "Good Neighbor" policy in its newsletter, the Village Green.  The policy was aimed at issues that are "oppositional to the character and nature of the Village." Savad Decl. Savad Dec;. **Ex. 297.**

## RESPONSE:

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 137 over the objection, <u>admitted in part; disputed in part.</u>  Admitted that in the March 2004**

Village Green newsletter the then mayor, Herbert Marshall, discussed the Village's "Good Neighbor Policy." Otherwise, disputed. Disputed that the Village "promoted" this policy. The cited testimony does not support the purported statement of fact. Further disputed that the "policy was aimed at issues that are "oppositional to the character and nature of the Village." Although Defendants admit that these words were used in the Village Green, they are taken out of context in Paragraph 137. The entire paragraph reads: "As a general rule, if the effect of any action or project has potentially adverse implications for any member of the community or is oppositional to the character and nature of the village, it will be severely restricted or fully prohibited." Savad Decl. Ex. 297.

138.     In 2004, the Village filed a lawsuit in New York State Court to challenge Ramapo's Adult Student Housing laws passed in 2004 which permitted family dormitories in the neighboring Town of Ramapo. Savad Decl. **Ex. 310** (Request to Admit) Response No. 86.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 154 over the objection, admitted in part; disputed in part. Disputed that citation provided supports Plaintiffs' characterization that Ramapo's Adult Student Housing laws passed in 2004 *permitted family dormitories in the neighboring Town of Ramapo. See* Savad Decl. Ex. 310 (Request to Admit) Response No. 86.

139.     In 2004, Yeshiva Spring Valley was still in talks with the Village to try to get permission to build its yeshiva as envisioned.  In one of its submissions to the Village, Yeshiva Spring Valley's engineer accidently mislabeled a building which was an educational center as a dormitory.  It clarified the mistake almost immediately.  Savad Decl. **Ex. 33** ("Fromowitz Tr.) 73:4-14.

**RESPONSE:**

**Admitted in part, Disputed in part:** Admitted that Fromowitz testified that an adult education center was mislabeled as a dormitory. Otherwise, disputed, because the cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 33 ("Fromowitz Tr.) 73:4-14.

140.    The Village rushed Local Law No. 5 through the legislative process and failed to comply with many required formalities.  The resolution passing Local Law No. 5 of 2004 did not contain a SEQRA resolution.  Savad Decl. 12 (Defendants' 30(b)(6) Day 1 Tr.) 61:16; Savad Decl. **Ex. 278**.  There were no studies for Local Law No. 5 of 2004.  Savad Decl. **Ex. 310** (Request to Admit) Response Nos. 54; 58.  The Village does not have any records to suggest that there was a New York General Municipal Law review of Local Law No. 5 of 2004.  Savad Decl. 12 (Defendants' 30(b)(6) Day 1 Tr.) 135:23; Savad Decl. 278.

**RESPONSE:**

**Objection**:  **Defendants object as this statement offers opinion as facts.  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 140 over the objections:**

**As to sentence one, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  Savad Decl. 12 (Defendants' 30(b)(6) Day 1 Tr.) 61:16; Savad Decl. Ex. 278.**

**As to sentence two, <u>disputed</u>.  The resolution does not contain a *negative declaration*.  Savad Decl. Ex. 278.**

**As to sentence three, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  Savad Decl. 12 (Defendants' 30(b)(6) Day 1 Tr.) 61:16; Savad Decl. Ex. 278.  There were no studies for Local Law No. 5 of 2004.  Savad Decl. Ex. 310 (Request to Admit) Response Nos. 54; 58.  The Village does not have any records to suggest that there was a New York General Municipal Law review of Local Law No. 5 of 2004. Savad Decl. 12 (Defendants' 30(b)(6) Day 1 Tr.) 135:23; Savad Decl. 278.**

**As to sentence four, <u>disputed</u>.  The cited testimony does not support the purported statement of fact that there were no studies, generally, for Local Law No. 5 of 2004.   The Village possessed no studies establishing a need for controlling traffic or environmental impacts.  Savad Decl. Ex. 310 (Request to Admit) Response Nos. 54; 58.**


141.    The Village limited dormitories to one building in response to Ramapo's Adult Student Housing laws which "in its wisdom determined that a dormitory use could be 90% of use" Savad Decl. 13 (Defendants' 30(b)(6) Day 2 Tr.) 456:8-457:14.

**RESPONSE:**

**Admitted in part; Disputed in part.** Admitted that the language quoted above appears in the deposition transcript. Disputed that the Village limited dormitories to one building *in response to* Ramapo's Adult Student Housing laws. This limitation was based on the Village's concern of limiting the size of dormitory use. Savad Decl. 13 (Defendants' 30(b)(6) Day 2 Tr.) 456:18-457:6.

142. The Village's zoning restrictions only apply to educational institutions, and to no other land uses. Savad Decl. **Ex. 310** (Request to Admit) Response No. 93.

**RESPONSE:**

**Objection:** Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements contained in Paragraph 142 over the objections, <u>admitted in in part; disputed in part</u>. To the extent Plaintiffs are referring to Local Law No. 5 of 2004, Defendants agree that it addresses only Educational Institutions. Defendants object to Plaintiffs' characterization of Local Law No. 5 of 2004's provisions as "restrictions" and, to the extent it is suggested, dispute that all of the Village's zoning laws apply only to educational institutions. *See* Savad Decl. Ex. 314, Village Code §§ 130-9, 130-10, et. seq.

143. There were no educational institutions in the Village at the time of the passage of Local Law No. 5 of 2004 (and still are none). Savad Decl. 310 (Request to Admit) Response Nos. 94 and 95.

**RESPONSE:**

**Admitted.**

144. The Village admitted that Village Attorney Doris Ulman stated at the meeting where law was passed, that the purpose of the law was to **strengthen** the Village's control over schools. (emphasis added). Savad Decl. **Ex. 118.**

**RESPONSE:**

**Admitted in part; Disputed in part.** Admitted that the meeting minutes attached at Savad Decl. Ex. 118 indicated that "Ms. Ulman explained that the proposed amendment strengthens the Village's control over the development of schools and explained some of the

changes being made." **Defendants object to the characterization of this statement as an admission.** *See* **Savad Decl. Ex. 118.**

<u>Local Law No.1 of 2007 Was Passed in Response to Tartikov</u>

145.    On January 22, 2007, the Village enacted Local Law No. 1 of 2007, which regulates Educational Institution land uses within the Village.  The law added the following requirement for Educational Institutions: "(a) The minimum lot area for an educational institution shall be a net lot area of 10 acres. (b) No portion of any land under water shall be counted toward the net lot area.  Not more than one-fourth of any land which is defined as wetland by the U.S. Army Corp of Engineers, the New York State Department of Environmental Conservation and/or Chapter 126 of this Code or which is within a one hundred year frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted toward the net lot area. (c) No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward the net lot area."  Savad Decl. 314 Code Sec. 130-10(F)(1)(a).

**RESPONSE:**

**Disputed.  Defendants note that Local Law 1 of 2007 did not generally add the above language.  The majority of the quoted language in Paragraph 18 was added to Village Code § 130-10(F)(1) by Local Law 1 of 2001.  Local Law 1 of 2007 amended only the following:**

- **the addition of the words "a net lot area of" in subsection (a);**
- **the reference to Chapter 126 in subsection (b);**
- **the change from "minimum lot area" to "net lot area" in subsection (b); and**
- **the change from "minimum lot area to "net lot area" in subsection (c).**

**See Ulman Aff. Ex. 2, Local Law 5 of 2004; Savad Decl. Ex. 314, Local Law 1 of 2007; see also Local Law 1 of 2001, codified as VILLAGE CODE § 130-4 Ulman Aff. ¶¶ 7, 13, Ex. 1, 7; Local Law 5 of 2004, codified as VILLAGE CODE § 130-4(F). Ulman Aff. ¶¶ 8, 13, Ex. 2, 7; Local Law 1 of 2007, codified as VILLAGE CODE § 130-4, 130-10 Ulman Aff. ¶¶ 9, 13, 16, Ex. 3, 7, 10.**

146.    Local Law No. 1 of 2007 also added the following language to the "Educational Institution" special permit regulations: "A dormitory building is permitted as an accessory use to an educational use provided it is located on the same lot as the educational use and there shall be not more than one dormitory building on the lot.  A dormitory building shall not occupy more

than twenty (20) percent of the total square footage of all buildings on the lot." Savad Decl. **Ex. 314** Code Sec. 130-10(F)(12); Savad Decl. **Ex. 315**; Savad Decl. **Ex. 309** (Answer) ¶162.

**RESPONSE:**

**Disputed. Only the following portions of the quoted language were added to Village Code § 130-10(F)(12) by Local Law 1 of 2007: In the first sentence, the word "building," and the phrase "provided it is located on the same lot as the educational use." The second sentence was also added by Local Law 1 of 2007: "A dormitory building shall not occupy more than twenty (20) percent of the total square footage of all buildings on the lot."**

147. Local Law No. 1 of 2007 was proposed in November, 2006 and was passed on January 22, 2007. Savad Decl. **Ex. 316.**

**RESPONSE:**

**Admitted.**

148. The Village has admitted that it was made aware of Tartikov's purchase of the Property at least as early as November, 2004. Savad Decl. **Ex. 309** (Answer) ¶¶ 51, 143; Savad Decl. 12 (Defendants' 30(b)(6) Day 1 Tr.) 89:21-90:19; Savad Decl. **Ex. 311** (Interrogatory) Response No. 20.

**RESPONSE:**

**Admitted.**

149. Village Attorney Doris Ulman knew that the Property was going to be used as a rabbinical college from the time she learned of the purchase because of the name, The Congregational Rabbinical College of Tartikov, Inc. Savad Decl. 23 (Ulman Tr.) 17:8-18:2.

**RESPONSE:**

**Admitted. Admitted that Ms. Ulman testified that she "probably" learned of the intended use of the property by Tartikov "when I learned of the purchase because that's in the name. It would be quite obvious that they wanted to use it for that purpose as a Rabbinical College." Savad Decl. Ex. 23 (Ulman Tr.) 17:18-24.**

150.    In February, 2005, the Village trustees and employees knew that the "Rabbinical College" owned the Property. Savad Decl. 17 (N. Sanderson Tr.) 70:4-72:12; 73:24-74:3; Savad Decl. **Ex. 317**, Savad Decl. **Ex. 200**; Savad Decl. 15 (Defendants' 30(b)(6) Day 4 Tr.) 964:22-965:20; Savad Decl. 177; Savad Decl. 15 (Defendants' 30(b)(6) Day 4 Tr.) 966:3-967:20; Savad Decl. **Ex. 178**; Savad Decl. 3 (Marshall Tr.) 109:21-110:9; Savad Decl. **Ex. 66**; Savad Decl. 6 (Banks Tr.) 65:2-12; Savad Decl. **Ex. 120;** Savad Decl. **Ex. 39**; Savad Decl. **Ex. 65;** Savad Decl. 66; Savad Decl. 177; Savad Decl. **Ex. 178;** Savad Decl. 200.

**RESPONSE:**

**<u>Admitted</u> that in February 2005, certain Village trustees and employees had notice that Tartikov owned the Property.**

151.    In June of 2005 at a joint meeting of the Village Board and the Village Planning Board, Mayor Marshall comments that "nothing has come into the Village yet regarding the use of the Property (referring to Tartikov). Savad Decl. **Ex. 299.**

**RESPONSE:**

**<u>Admitted</u> that the minutes of the June 2005 meeting attached as Savad Decl. Ex. 299 reflect that "Mayor Marshall mentioned Camp Dora and stated that nothing has come into the Village yet regarding the use of the property."**

152.    In late 2005, the Village became aware of rumors regarding Tartikov's intended use of the Property. Savad Decl. **Ex. 309** (Answer) ¶ 51; Savad Decl. 12 (Defendants' 30(b)(6) Day 1 Tr.) 92:4-15; Savad Decl. **Ex. 311** (Interrogatory) Response No. 20.

**RESPONSE:**

**<u>Admitted</u> that the Village became aware of rumors regarding Tartikov's intended use of the Property but it is not clear from the materials cited that this occurred in the late 2005 time frame.**

153.    Tartikov's attorney, Paul Savad, told Village Attorney Doris Ulman about Tartikov's intended use of the Property in 2005 or 2006. Savad Decl. **Ex. 311** (Interrogatory) No. 20

**RESPONSE:**

**<u>Admitted</u>.**

154.     In May, 2006, Village Clerk Leslie Sanderson sent an email to Mayor Marshall and her husband, Trustee Nick Sanderson entitled "Here we go."  The email informed them that a resident came in to Village Hall to report that surveyors were on the Camp Dora property.[3] Savad Decl. 11 (L. Sanderson Tr.) 210:15-213:17; Savad Decl. **Ex. 168**; Savad Decl. 17 (N. Sanderson Tr.) 74:8-75:18; Savad Decl. **Ex. 318**; Savad Decl. 3 (Marshall Tr.) 110:12-112:24; Savad Decl. **Ex. 67**.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 154 over the objection, <u>admitted in part; disputed in part.</u> The cited testimony does not support the purported statement of fact. Admitted that Leslie Sanderson sent an email to Nicholas Sanderson and Herbert Marshall entitled "Here we go." Otherwise, disputed. The e-mail was sent on August 16, 2006. The text of the e-mail was as follows: "I just had a visit from a gentleman on Sherwood Ridge Road. There are surveyors (Atzl, Scatassa, Zigler) in the woods behind him. That happens to be Camp Dora Golding Property." Savad Decl. Ex. 67.**

155.     In November, 2006, when anti-downzoning signs were placed near Tartikov's Property, Trustee Sanderson commented that the Property was "at last . . . being used for something really useful." Savad Decl. 17 (N. Sanderson Tr.) 97:18-98:17; Savad Decl. **Ex. 208**.

**RESPONSE:**

**<u>Admitted in part; Disputed in part.</u> Admitted that Nicholas Sanderson wrote in an email "At last our little triangle [of property] is being used for something really useful." Disputed to the extent this statement is taken out of context and based on testimony by Mr. Sanderson after he testified that he did not recall writing the e-mail. Further disputed that Mr. Sanderson was referring to the Subject Property. The testimony and document cited do not support this notion. *See* Savad Decl. 17 (N. Sanderson Tr.) 97:18-98:17 ("it was placed *near* the subject property")(emphasis added).**

---

[3] Camp Dora ( an Orthodox Summer Day Camp) was the name of the camp  prior to Yeshiva Spring Valley and that name was how many residents refer to the Property to this day, even when it was owned by Yeshiva Spring Valley and Tartikov.  Savad Decl. Ex. 3 (Marshall Tr.) 29:10-15.

156.     On November 27, 2006  Doris Ulman distributed proposed local laws amending the zoning code regarding dormitory buildings, which would become Local Law No. 1 of 2007 and a houses of worship to Village trustees.  Savad Decl. **Ex. 316;** Savad Decl. **Ex. 332.**

**RESPONSE:**

**Admitted.  Defendants note that the houses of worship law became Local Law No. 2 of 2007.**

157.     On December 18, 2006, the  Village held a Public Hearing at its Board meeting regarding "Amending the Zoning Law of the Village of Pomona in relation to Dormitory Buildings" and Houses of Worship Law.  Tartikov's attorney, Paul Savad spoke at the meeting and asked if this dormitory law was being passed "because of the intended use of the Tartikov property."  Mayor Marshall stated "these are rules that are necessary to maintain **control** over development within a community to protect its integrity." (emphasis added)  Savad Decl. **Ex. 296**; Savad Decl. **Ex. 304;** Savad Decl. **Ex. 331.**

**RESPONSE:**

**Objection:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 157 over the objection, admitted in part; disputed in part.  The cited testimony does not support the purported statement of fact.  Admitted that on December 18, 2006, the Village held a Public Hearing at its Board meeting regarding "Amending the Zoning Law of the Village of Pomona in relation to Dormitory Buildings," that later became Local Law No. 1 of 2007.  On that same date, the Village also held a second public hearing related to a Houses of Worship Law, that later became Local Law 2 of 2007.  Disputed to the extent it is suggested that this was a single hearing.**

**Further admitted that Tartikov's attorney, Paul Savad spoke at the public hearing related to the local law concerning dormitory buildings and asked if this dormitory law was being passed "because of the intended use of the Tartikov property."   Admitted that the minutes of that public hearing reflect that Mr. Savad "asked if the law was being passed because of the intended use of [the subject property]."  Defendants note that the minutes further indicate, immediately thereafter, that "Mayor Marshall responded no."**

**Disputed as the statement attributed to Mr. Marshall is inaccurate and out of context.  This statement was made during the second public hearing related to House of Worship and, accurately quoted in context is as follows:  "Mr. Marshall asked those in attendance not to twist the amendment into something it was not.  *There* are rules that are necessary to**

maintain control over development within a community to protect its integrity. The local law amendment was not meant to restrict the free practice of religion by residents but to protect them." (emphasis added to show error in quotation). *See* **Savad Decl. Ex. 304, POM0011936-POM0011938.**

158.    In early January, 2007, Preserve Ramapo emailed a site layout that it had received regarding Tartikov's proposed rabbinical college. The email was received by Village board members and trustees. Following that email blast, there was much local press regarding Tartikov's plans. Savad Decl. 11 (L. Sanderson Tr.) 90:25-93:3; Savad Decl. 154; Savad Decl. 4 (B. Yagel Tr.) 29:17-30:11; 122:20-123:11; Savad Decl. **Ex. 320.**

**RESPONSE:**

**Objection:** **Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 158 over the objection, <u>admitted in part; disputed in part.</u> Admitted that Brett Yagel, who was not on the Board of Trustees in January 2007, testified that he received the email from Preserve Ramapo. Otherwise, disputed. The cited testimony does not support the purported statement of fact. Leslie Sanderson testified that she has seen a document in the "form" of Exhibit 320, but does not recall receiving an email. Further disputed to the extent that it is suggested that all Village Board Members and Trustees received this e-mail. *See* Savad Decl. 11 (L. Sanderson Tr.) 90:25-93:3; Savad Decl. 154; Savad Decl. 4 (B. Yagel Tr.) 29:17-30:11, 122:20-123:11; Savad Decl. Ex. 320.**

159.    On January 22, 2007, the Village held a public hearing on the dormitory law where people spoke out against Tartikov. The Village Attorney reported that the meeting was the most packed that she had ever seen the meeting room, well more than the 49 person room capacity. Savad Decl. 23 (Ulman Tr.) 48:6-50:25; 48:6-49:5; Savad Decl. 13 (Defendants' 30(b)(6) Day 2 Tr.) 453:7-454:9; Savad Decl. **Ex. 310** (Request to Admit) Response No. 102; Savad Decl. 3 (Marshall Tr.) 186:7-15. Mayor Marshall stated that there were "a lot of people there- too many" *Id.* at 177:17-178:4;  Brett Yagel reported that it was a "packed house" with a lot of public speakers. Savad Decl. 4 (B. Yagel Tr.) 181:23-182:13. Trustee Sanderson reported that there were 150 residents packed into a room with a legal occupancy of 49. Savad Decl. 17 (N. Sanderson Tr.) 194:17-196:10; Savad Decl. **Ex. 245.** Trustee Lamer stated that there were a large number of residents at the meeting. Savad Decl. **Ex. 5** (Lamer Tr.) 90:18-91:8; Savad Decl. **Ex. 116.**

**RESPONSE:**

<u>Objection</u>:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).

To the extent the Court chooses to consider the statements contained in Paragraph 159 over the objection:

As to sentence one, <u>admitted in part; disputed in part.</u>  Admitted that the hearing on January 22, 2007 related to Local Law No. 1 of 2007, which dealt, in part, with dormitories. Admitted that at least one private citizen who spoke at the hearing addressed Tartikov in their comments. Disputed to the extent it is suggested that it was more than this. *See generally* <u>Transcript on Public Hearings on Local Law Amendment: Dormitories (Continued), Local Law Amendment: Wetlands,</u> (January 22, 2007) Gordon Aff. ¶ 22, Ex. 17.

As to sentence two, <u>admitted in part; disputed in part.</u>  Admitted that Ms. Ulman testified that the room was beyond capacity.  Otherwise, disputed.  The cited portions of Ms. Ulman's deposition do not support the purported statement of fact.  Savad Decl. Ex. 23 (Ulman Tr.) 48:6-50:25,; 48:6-49:5; Savad Decl. 13 (Defendants' 30(b)(6) Day 2 Tr.) 453:7-454:9.

As to sentence three, <u>disputed.</u>  The cited deposition testimony is an inaccurate reflection of the then mayor, Herbert Marshall's testimony.  Mr. Marshall stated "There were too many people at that meeting." Savad Decl. Ex. 3 (Marshall Tr.) 178:3-4.

As to sentence four, <u>admitted</u> that Brett Yagel responded "yes" when asked "Was it a packed house?" and indicated that "There were a lot of public speakers." Savad Decl. Ex. 4 (B. Yagel Tr.) 182:6-182:10.

As to sentence five, <u>admitted</u> that Nicholas Sanderson testified  "We had about 150 residents crowded into a room with a legal occupancy of 49." Disputed to the extent Plaintiffs have characterized this statement differently. Savad Decl. Ex. 17 (N. Sanderson Tr.) 194:17-196:10.

As to sentence six, <u>admitted.</u>

160.    Village Attorney Doris Ulman was not surprised by the turnout because people came to speak out against Tartikov due to article two weeks before. Savad Decl. **Ex. 23** (Ulman Tr.) 49:6-50:25

<u>**RESPONSE:**</u>

<u>Admitted in part; Disputed in part.</u>  Admitted that Ms. Ulman testified that she was not surprised by the turnout.  Disputed that Ms. Ulman's lack of surprise was "because people

came to speak out against Tartikov," as claimed in Paragraph 160. Ms. Ulman testified as follows: "And so I wasn't surprised at the big turnout because I knew that type of article would generate a lot of public comment." Savad Decl. Ex. 23 (Ulman Tr.) 49:24-50:3.

161.     Mayor Marshall reported that at the January 22, 2007 meeting "[t]here was a hostility engendered from the article in the Journal News regarding the Tartikov project"; "there was a general degree of ill will". Savad Decl. **Ex.3** (Marshall Tr.) 176:16-176:17

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 161 over the objection, <u>admitted in part; disputed in part.</u> Admitted that Herbert Marshall testified to the above. Disputed as to the accuracy and context of the statements. First, Defendants note that the statements were not made one right after the other, as they appear here, but are fractions of quotes, several sentences apart. Second, the entire sentence related to "ill will" is as follows: "There was a general degree of ill will that I really didn't appreciate in one of my meetings and it interfered with us getting effective input for the most part on the two laws that we were having a public hearing on." Savad Decl. Ex. 3 (Marshall Tr.) 176:16-177:16.**

162.     The Village was considering changing the height limitation for dormitories from 25 feet to 35 feet to be the same as other uses in the Village in light of Village Attorney Doris Ulman's admission that dormitories were treated differently than other Village uses; therefore she proposed a change to 35 feet to be consistent with other height requirements in the Village's laws. Savad Decl. **Ex. 123** at RC 1093, lines 15-23; *Id.* at RC 1108, line 22- 1109, line 7; *Id.* at RC 1137, line 16- RC 1138, line 5. However, after receiving feedback from the public at the January 22, 2007 meeting expressing opinions that the height should be the lowest amount possible in order to keep Tartikov out of the Village, the Village Board decided to keep the height limitation at 25 feet. Savad Decl. **Ex. 123** at RC 1141, line 22- RC 1144, line 19.

**RESPONSE:**

**Objection: Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 162 over the objection:**

**As to sentence one, <u>admitted in part; disputed in part</u>. Admitted that the Village was considering changing the height limitation for dormitories from 25 feet to 35 feet and that Ms. Ulman proposed the change to make dormitories consistent with all other uses in the Village's zoning law. Defendants dispute Plaintiffs' argumentative characterization of Ms. Ulman's statement as an admission. *See* Savad Decl. Ex. 123 at RC 1093, lines 15-23; Id. at RC 1108, line 22 – RC 1109, line 7; Id. at RC 1137, line 16 - RC 1138, line 5.**

**As to sentence two, <u>disputed</u>. Defendants object as this statement offers unsupported opinion as facts. *See* Savad Decl. Ex. 123 at RC 1141, line 22 - RC 1144, line 19.**

163.     When Mayor Marshall explained that the Village was considering changing the height limitation from 25 feet to 35 feet, members of the public shouted in opposition. Savad Decl. **Ex. 123** at RC 1092, line 19- RC 1093, line 14. One public speaker stated "Just say the old law, and new law proposed, so we know the difference. I didn't know it used to be 25. It got right past me. So if you could just say, you know, it used to be 25 and now it's going to be 35. We would like it to go to 15 really. Get it in our favor. Let's change the law in our favor as opposed to accommodating, going up to 25 or 35. I think we can go 25 to 15 and everybody here will be real happy." Savad Decl. 6 (Banks Tr.) 101:11-20; Savad Decl. **Ex. 123** at RC 1093, lines 5-13

**RESPONSE:**

**<u>Admitted in part; Disputed in part.</u> Admitted that Savad Decl. Ex. 123, which is a transcript of the January 22, 2007 public hearings, reflects that at least one unidentified person opposed changing the height limitation and that the quoted statement was made by the same unidentified speaker. Otherwise, disputed. The cited testimony does not support the purported statement of fact. The transcripts cited in Paragraph 163 do not support the characterization that "the public shouted in opposition." *See* Savad Decl. Ex. 123 at RC 1092, line 19 - RC 1093, line 14.**

164.     After hearing the public's input at the January 22, 2007 meeting regarding the height limitation, Trustees Sanderson, Lamer and Banks all stated that they wanted to maintain the 25 foot limitation, rather than increase it to 35 feet. Savad Decl. **Ex. 123** at RC 1140, line 12- RC 1141, line 19. Trustee Sanderson specifically stated that the Village should keep the 25 foot limit because "based on the input from the public this evening, I think it's very clear that there is a great deal of concern." *Id.* at RC 1141, lines 8-19

**RESPONSE:**

**<u>Admitted.</u>**

165.     The law was passed without making the change increasing the height limitation from 25 feet to 35 feet.  Savad Decl. **Ex. 123** at RC 1141, line 22- RC 1144, line 19.

**RESPONSE:**

**Admitted.**

166.     The Village also considered changing the law to increase the number of dining halls to two dining halls per building from only one dining hall per building based on a suggestion from Rockland County.   Savad Decl. **Ex. 123** at RC 1092, lines 15-19; *Id.* at RC 1109, lines 11-16;   When Mayor Marshall explained that the Village was considering this increase from one dining hall to two, members of the public shouted in opposition *Id.* at RC 1104, line 20- 1106, line 21.  The law was passed without increasing the number from one dining hall to two, thus, the Village overrode Rockland County's recommendation.  *Id.* at RC 1141, line 22- RC 1144, line 19; Savad Decl. **Ex. 278** at 13.

**RESPONSE:**

**Objection:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 166 over the objection, admitted in part; disputed in part.  Admitted that the Village considered changing the law to increase the number of dining halls to two dining halls per building from only one dining hall per building based on a suggestion from Rockland County.  Defendants dispute Plaintiffs' argumentative characterization that members of the public "shouted in opposition."  Nothing in the cited transcript supports this characterization.  Savad Decl. Ex. 123 (Hearing Tr., January 22, 2007) 40:20-42:2 Admitted that the law was passed without increasing the number from one dining hall to two, thus, the Village overrode Rockland County's recommendation.**

167.     When a public speaker asked what could be done to protect the Village from the Tartikov proposal, Mayor Marshall stated that requiring that a dormitory be an accessory use accomplishes that.  Savad Decl. **Ex. 123** at RC 1134, line 20- RC 1135, line 11.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 123 at RC 1134, line 20 - RC 1135, line 11.**

168.    Speakers at the January, 22, 2007 meeting said the following:

a.    "We are going to be another Kiryas Joel (a Hasidic community). That's why we are emotional. You can get into the environmental impact and all of that. That's all I have to say." Savad Decl. 3 (Marshall Tr.) 179:17-180:5; 180:19-181:7; Savad Decl. **Ex. 78** at RC 1120. Mayor Marshall responded to this comment by stating "[l]adies and gentlemen, there isn't anyone sitting up here who doesn't know how you feel." Savad Decl. 3 (Marshall Tr.) 180:6-13; Savad Decl. **Ex. 78** at RC 1120.

**RESPONSE:**

**Objection**: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 168(a) over the objection, <u>admitted in part; disputed in part.</u> Admitted that the quoted language appears in the transcript attached at Savad Decl. Ex. 78. Disputed to the extent it is taken out of context. Immediately prior to making the statement quoted in Paragraph 168(a), the same public speaker made the following statement, which prompted Mayor Marshall's response: "It would be nice, this board is so passive, it would be nice to hear all of you saying, hey, I know how you all feel. You all look dead up here. And, Mr. Mayor, I'd like to hear you say, you know, you're listening to us, and you are really stretching your protocol, your decorum of your meeting, and I appreciate it, but I'd like to hear you say, I know how you feel." Savad Decl. Ex. 78 at RC 1120.**

b.    "The frustration that we have is that you knew of the press that had come out, whether it be true or not. You knew that it was out there, and you know we were very, very upset. I think what would have helped us is if at the beginning of this meeting you had said, this is what is going on, we know that you've read this, we are here to protect your interests and the amendments to this law, this project, this alleged project, with the alleged attorney who is allegedly sitting here, produces it, that these amendments will defend us. If you had said that in the beginning, I don't think as many people would be as upset as they are, because we don't know where you stand." Savad Decl. **Ex. 3** (Marshall Tr.) 181:8-182:6; Savad Decl. **Ex. 78** at RC 1122.

**RESPONSE:**

**Objection**: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 168(b) over the objection, <u>admitted</u> that Paragraph 168(b) accurately reflects the transcript of the January 22, 2007 public hearing.**

       c.      Mayor Marshall responded to this comment by stating "[l]adies and gentlemen, let me say something. We sitting at this table have limitations that are placed on us as to what we can say and what we can't say, because our attorney tells us what we can say and what we can't say. I can't say what I feel, I can't. If I agree with you, I don't agree with you, I don't have that luxury of being able to say that here. All that I can say is that every member of this board works very, very hard to do what is best for this community. You have your issues. Don't assume because no one has gotten up and said, wow, I agree with you, oh boy; don't assume that because we didn't do that that we don't agree. We may or may not, but please give us the benefit of the doubt. We have all been doing this. We work very hard at what we do. We try and do what is best for the community but it's our home. There are limitations under the law that restrict what we can say and when we can say it." Savad Decl. 3 (Marshall Tr.) 182:7-183:16; Savad Decl. **Ex. 78** at RC 1122.

**<u>RESPONSE:</u>**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 168(c) over the objection, <u>admitted</u> that Paragraph 168(c) accurately reflects the transcript of the January 22, 2007 public hearing.**

       d.      Tartikov "would entirely change the character of the village. It would entirely change the politics of the village. And I think there has to be a solution through the zoning laws and through the amendments to the zoning laws that prohibits such a large number of people being within one property, and one institution. Thank you very much." Savad Decl. 6 (Banks Tr.) 99:24-100:8; Savad Decl. **Ex.123** at RC 1073

**<u>RESPONSE:</u>**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 168(d) over the objection, <u>admitted in part; disputed in part.</u> Admitted that Paragraph 168(d)**

accurately reflects the transcript of the January 22, 2007 public hearing. **Disputed to the extent it is taken out of context. Mayor Marshall responded to the statement in 168(d) as follows: "Thank you. Before I ask the next person to come up; this public hearing has to do with the amendment to our local law. Please try and restrict what you say to that topic at this time, okay?" Savad Decl. Ex. 123 at RC 1073-1074.**

169.    Alma Roman took public opinion into her decision to vote in favor of the law. Savad Decl. 7 (Roman Tr.) 74:22-75:19. Brett Yagel supported the law as private citizen and candidate. Savad Decl. 4 (B Yagel Tr.) 176:21-179:7.

**RESPONSE:**

**Objection: Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 169 over the objection:**

**As to sentence one, <u>disputed</u>. The cited testimony does not support the purported statement of fact. Specifically, Alma Roman testified that she "listened" to "what residents had to say." Savad Decl. 7 (Roman Tr.) 74:22-75:19.**

**As to sentence two, <u>admitted in part; disputed in part</u>. Admitted that Brett Yagel supported the law as a private citizen. Disputed that the cited deposition transcript supports the proposition that Brett Yagel supported Local Law No. 1 of 2007 as a candidate. *See* Savad Decl. Ex. 4 (B Yagel Tr.) 176:21-179:7.**

170.    The Village overrode the recommendations from Rockland County regarding the law. Transcript of the Redirect 30(b)(6) Deposition of the Village and Board dated August 15, 2014, attached as Exhibit 22 to the Savad Declaration ("30(b)(6) Redirect Tr.") pages 1093:18-1095:10; Savad Decl. **Ex. 278** at page 13.

**RESPONSE:**

**<u>Admitted</u>. Defendants note that there were two recommendations from Rockland County Department of Planning. Recommendation one, regarding specific parking requirements, was overridden because there is a parking standard in the educational use special permit portion of the law. Recommendation two, suggesting that the Village consider increasing the minimum lot area to reflect the added use of the dormitory, was overridden because the Village Board felt that requiring a larger minimum lot size would be "onerous to an**

**applicant." Savad Decl. Ex. 22 (Defendants' 30(b)(6) Redirect Tr.) 1093:18-1095:10; Savad Decl. Ex. 278 at page 13.**

171.    The Village had no studies to support that there was a need for the law.  Savad Decl. **Ex. 310**  (Request to Admit) Response Nos. 55, 59, 63 and 64.

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted that the Village's responses to Plaintiffs' Request to Admit indicate that the Village possessed no formal studies or reports, but note that those same responses indicate that Defendants dispute any suggestion that such studies were necessary.  Savad Decl. Ex. 310  (Request to Admit) Response Nos. 55, 59, 63 and 64.**

172.    There were no educational institutions in the Village at the time of the passage of Local Law No. 1 of 2007 (and still are none). Savad Decl. **Ex. 310** (Request to Admit) Response Nos. 94 and 97.

**RESPONSE:**

**Admitted.**

Local Law No. 5 of 2007 was in Response to Tartikov

173.    On April 23, 2007, the Village enacted Local Law No. 5 of 2007, which regulates wetlands within the Village. Savad Decl. **Ex. 155.**

**RESPONSE:**

**Admitted in part; Disputed in part.  The cited testimony does not support the purported statement of fact.  Notwithstanding, admitted that on April 23, 2007 the Village enacted Local Law No. 5 of 2007.  Disputed that Local Law No. 5 of 2007 regulates all wetlands within the Village.  It only regulates certain wetlands.  *See* Local Law 5 of 2007, *codified as* VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10-11, Ex. 4-5.**

174.    Local Law No. 5 of 2007, titled the Wetlands Protection Law, prohibited various forms of development activity from occurring within 100 feet of the boundary of any wetland, water body or watercourse, unless a permit is issued by the Board of Trustees or Planning Board, which can be granted only if the regulation results in a deprivation of "the reasonable use of a

property so as to constitute a de facto taking of such property." Savad Decl. **Ex. 314**  Code Sec. 126-5.

**RESPONSE:**

**Objection**:  Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements contained in Paragraph 174 over the objection, <u>disputed</u>.  Local Law No. 5 of 2007 provided that certain activities were allowed by right upon a wetland, body or watercourse or within 100 feet of the boundary of a wetland, water body or watercourse.  Local Law No. 5 of 2007 further provided that it shall be:

> "[U]nlawful to conduct, directly or indirectly, any of the following activities upon any wetland, water body or watercourse or within 100 feet of the boundary of any wetland, water body or watercourse unless a permit is issued therefor by the Board of Trustees or the Planning Board, as the case may be;
>
> A. Any form of draining,  dredging, excavation or removal of material, except removal of debris or refuse.
>
> B. Any form of depositing, of any material such as but not limited to soil, rock, debris, concrete, garbage, chemicals. etc.
>
> C. Erecting any building or structure of any kind, roads, driveways, the driving of pilings or placing of any other obstructions, whether or not they change the ebb and flow of water. The definitions of the words BUILDING and STRUCTURE shall be defined in the Zoning Law of the Village of Pomona.
>
> D. Installing a septic tank, running a sewer outfall, discharging sewage treatment effluent or other liquid waste into or so as to drain into any wetland, water body or watercourse.
>
> E. Any other activity which substantially impairs any of the several functions served by wetlands, water bodies and watercourses or the benefits derived therefrom, as set forth herein."

Local Law 5 of 2007 further provided "[i]n the event the regulation of wetlands pursuant to this Chapter results in a deprivation of [all] the reasonable use of a property so as to constitute a de facto taking of such property, the owner of said property may apply to the

**Board of Trustees for a permit to conduct a specific activity otherwise prohibited herein.**
*See* **Local Law 5 of 2007,** *codified as* VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10-11, Ex. 4-5.

175.      Local Law No. 5 of 2007 exempted "lots that are improved with single-family residences" from the application of its "one-hundred-foot-buffer" provision.  Savad Decl. **Ex. 314** Code Sec. 126-3(D)

**RESPONSE:**

**Admitted.**

176.      Local Law No. 5 of 2007 was passed in April, 2007.  Savad Decl. 155.

**RESPONSE:**

**Admitted.**

177.      In  the 1990's, the Village  considered a Model Wetlands law, but decided it was not necessary.  Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Day 3 Tr.) 562:19-563:20.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.**

*See* **Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 562:19-563:20.**

178.      Village Attorney Doris Ulman did not discuss drafting the Wetlands law with the Board when she became Village attorney in 2003.  Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 464:25-465:4

**RESPONSE:**

**Disputed.  Ms. Ulman testified as follows: "Q.  Was the wetlands law something that you discussed with the Board when you first became the Village attorney in 2003.  A.  I don't believe so."  Ms. Ulman's testimony does not relate to "drafting" a wetlands law and is limited to when she "first" became the Village attorney.  Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 464:25-465:4.**

179.     Village Attorney Doris Ulman drafted and worked on less stringent, more general Wetlands laws in her jobs in Chestnut Ridge, New Hempstead and South Nyack. Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr. ) 473:3-10

**RESPONSE:**

**Objection:  Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph X over the objections, <u>admitted in part; disputed in part.</u>  The cited testimony does not support the purported statement of fact.  Admitted that Ms. Ulman testified that the  wetlands laws of Chestnut Ridge, New Hempstead and South Nyack were "more general."  Disputed in so far as  Ms. Ulman expressly disagreed that the laws of the other Villages were "less stringent," stating that they were for a "different purpose."  Also, Ms. Ulman did not testify that she "drafted" the laws of Chestnut Ridge, New Hempstead and South Nyack. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 471:21-472:10.**

180.     Before the Village passed the Wetlands law, it had prior knowledge that the Property had wetlands.  Mayor Marshall knew from the days that Camp Dora owned the Property that there were Wetlands on the Property. Savad Decl. **Ex. 3** (Marshall Tr.) 79:22-80:7.

**RESPONSE:**

**Objection:  Objected to the extent this statement is not admissible because the question to which Mayor Marshall responded is subject to an objection to form concerning the use of the term "wetlands," which is a term defined differently by various statutes and regulations and it is not apparent what definition is being used here.**

**To the extent the Court chooses to consider the statements contained in Paragraph 180 over the objections, <u>admitted in part; disputed in part.</u>  Admitted that Mayor Marshall testified generally that he was aware of the presence of wetlands on the subject property. Disputed that this knowledge can be imputed to the Village as this requires a legal conclusion. Savad Decl. Ex. 3 (Marshall Tr.) 79:22-80:7.**

181.     Mel Cook knew that there were Wetlands on the Property. Savad Decl. **Ex. 1** (Cook Tr.) 35:23-25; Savad Decl. **Ex. 108.**

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the factual proposition contained in Paragraph 181 on the**

**basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 181 over the objection, <u>admitted</u> that Mr. Cook responded affirmatively to the question "Do you know whether or not any wetlands exist on the property." Savad Decl. Ex. 1 (Cook Tr.) 35:23-25.**

182.    On September 25, 2006 Doris Ulman stated at the Village Board meeting that she  was working on the local law revision for wetlands and would try to have it for the next workshop meeting.  At the same meeting a Village resident asked for the Village Green newsletter to include updates on issues such as Camp Dora and Patrick Farm.  Savad Decl. **Ex. 321.**

**<u>RESPONSE:</u>**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 182 over the objection, <u>admitted in part; disputed in part.</u>  Admitted that the minutes of the September 25, 2006 Board of Trustees meeting reflect that Ms. Ulman indicated as described in Paragraph 182.  Further admitted that the minutes further reflect that the content of the Village newsletter "should be more information about the news items in the Village, i.e., Patrick Farm, Camp Dora, and less of events going on in the Village." Disputed that the two notations are related.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 321.**

183.    On December 11, 2006 Village Attorney Doris Ulman distributed a memo to Mayor Marshall regarding proposed Wetlands law, enclosing a draft of the law.  She stated that "the purpose of the proposed law is to prohibit as much disturbance of wetlands as possible while at the same time protecting property rights and not effecting a taking."  Savad Decl. **Ex. 298;** Savad Decl. **Ex. 302;** Savad Decl. **Ex. 300.**

**<u>RESPONSE:</u>**

**<u>Admitted.</u>**

184.    At the January 22, 2007 meeting, (in addition to consideration of the dormitory law), the Village also accepted public comment about the Wetlands law.  In response, at least one public speaker at the hearing addressed Tartikov and at least one speaker directed their comments to Hasidic Jews.  Savad Decl. **Ex. 310** (Request to Admit) Response Nos. 101 and 103.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 310 (Request to Admit) Response Nos. 101 and 103.**

185.    At the April 4, 2007 Pomona Civic Association Meeting,  just prior to passing the Wetlands Law, Trustee Sanderson stated that there are things that the Village has to do to prepare for the Tartikov "looming crisis."  Savad Decl. **Ex. 239** ¶5; Savad Decl. **Ex. 17**  (N. Sanderson Tr.) 173:16-174:3; 174:12-16.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 185 over the objection, disputed.  Nicholas Sanderson testified that he did not remember making that statement.  Savad Decl. Ex. 17  (N. Sanderson Tr.) 173:16-174:3.**

186.    The Subject Property is subject to and not exempt from Local Law No. 5 of 2007 and its 100' buffer requirement.  Savad Decl. **Ex. 310**  (Request for Admissions) Response No. 14.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 186 over the objection, admitted that the subject property would be subject to and not exempt from Local Law No. 5 of 2007 if there were any wetlands, as that term is defined in the Local Law, on the property.**

187.     Even Defendants' proffered land use expert does not know of any other municipalities where the Wetlands law exempts single family residences.  Savad Decl. **Ex. 18** (Voorhis Tr.) 157:11-16.

**RESPONSE:**

**Disputed.  The Village's wetlands law does not generally exempt single family residences. It exempts "lots *improved with* single family residences" from the 100 foot buffer (emphasis added).  Local Law 5 of 2007, *codified as* VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10-11, Exhibit 4-5.**

188.     Defendants' proffered land use expert admits that wetlands do in fact exist on lots improved with single family residences within the Village and are not less important than other wetlands.  Savad Decl. **Ex. 18** (Voorhis Tr.) 159:14-160:5.

**RESPONSE:**

**Objection:  Defendants object as this statement offers opinion as facts.  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 188 over the objection, disputed.  Defendants object as the cited testimony does not support the purported statement of fact, specifically the proposition that wetlands do exist on lots improved with single family residences.  Additionally, Defendants note that Mr. Voorhis testified that wetlands that exist on improved lots with single family houses are "not necessarily" less important than other wetlands.  Savad Decl. Ex. 18 (Voorhis Tr.) 159:13-160:5.**

189.     The Village states that "every single wetland is vital to the health and safety of every single person," yet most property in the Village is exempt from the Wetlands law.  Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2) Tr 485:14-486:2

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 189 over the objections, admitted that the Village's corporate representative, Ms. Ulman, agreed at her deposition that "every single wetland is vital to the health and safety of every single person."**

190.    The Village did not conduct any studies before passing Local Law 5 of 2007. Savad Decl. **Ex. 310**  (Request for Admissions) Response Nos. 56, 60 and 64.

**RESPONSE:**

**Admitted** **that cited document state that the Village possessed no formal studies or reports establishing a need for controlling traffic, environmental impacts, and/or establishing a lack of Village infrastructure when it adopted Local Law 5 of 2007.  Defendants note that the same document states that such reports or studies were necessary.  Further noted that the Westchester County possessed such reports which the Village consulted.  Savad Decl. Ex. 311 (Interrogatory) Response Nos. 15; Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 562:19-563:3.**

191.    The Village has not had any applications under Local Law 5 since it was passed in 2007.  Savad Decl. **Ex. 13**  (Defendants' 30(b)(6) Day 2 Tr.) 481:13-19.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 191 over the objection, admitted.**

Tartikov's Proposal Prompted the Village to Seek Amendments to RLUIPA

192.    Mayor Marshall was concerned about RLUIPA beginning in 2004, when he solicited and received an RLUIPA packet of information from an attorney on June 11, 2004, Savad Decl. **Ex. 75.**

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 192 over the objection, admitted in part; disputed in part.  Admitted that then-mayor Marshall received information from an attorney regarding RLUIPA in June 2004.  Disputed that**

then-mayor Marshall was concerned about RLUIPA or that he solicited the materials. The cited testimony does not support the purported statement of fact. *See* **Savad Decl. Ex. 75.**

193.     Alan Lamer spoke to a representative of Congressman Engel's office regarding his RLUIPA concerns in 2004. Savad Decl. **Ex. 5** (Lamer Tr.) 92:2-98:3; Savad Decl. **Ex. 117.**

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 193 over the objection, <u>admitted in part; disputed in part.</u> Admitted that Alan Lamer testified that he spoke to a representative of Congressman Engel's office in 2004. The cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 5 (Lamer Tr.) 92:2-98:3; Savad Decl. Ex. 117.**

194.     Lynn Yagel e-mailed Village Clerk Leslie Sanderson about RLUIPA counsel in 2005. Savad Decl. Ex. 8 (L. Yagel Tr.) 107:3-111:23; Savad Decl. **Ex. 322;** Savad Decl. **Ex. 11** (L. Sanderson Tr.) 135:5-139:10; Savad Decl. **Ex. 160.**

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 194 over the objection, <u>admitted in part; disputed in part.</u> Admitted, but disputed to the extent that Savad Decl. Ex. 160 does not support the purported statement of fact.**

195.     Village Clerk Leslie Sanderson e-mailed Trustees Sanderson and Lamer reminding trustees about a "RLUIPA Sword or Shield" seminar being held by the Village of Montebello on November 6, 2006 . Savad Decl. **Ex. 17** (N. Sanderson Tr.) 164:23-166:18; Savad Decl. **Ex. 234.**

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 195 over the objection, <u>admitted.</u>**

196.     Leslie Sanderson admitted that there were no RLUIPA issues in the Village in 2006.  Savad Decl. **Ex. 11** (L. Sanderson Tr.) 143:14-145:8; Savad Decl. **Ex. 162.**

<u>RESPONSE:</u>

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 196 over the objection, <u>admitted in part; disputed in part.</u>  Admitted that Leslie Sanderson testified that she did not think there were any issues that the Village was dealing with that involved RLUIPA in November 2006.  Defendants dispute Plaintiffs' argumentative characterization that it was an admission.  Further disputed to the extent that Ex. 162 does not support the purported statement of fact.**

197.     On September 26, 2006,  Village Clerk Leslie Sanderson, at the direction of her husband, Trustee Sanderson e-mailed Village Attorney Doris Ulman about an RLUIPA lawsuit by the federal government against the Village of Suffern.  Savad **Decl. Ex. 11** (L. Sanderson Tr.) 141:2-143:9; Savad **Decl. Ex. 161**; Savad Decl. **Ex. 23** (Ulman Tr.) 35:15-38:16; Savad Decl. **Ex. 281.**

<u>RESPONSE:</u>

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 197 over the objection, <u>admitted in part; disputed in part.</u>  Admitted that Leslie Sanderson informed Ms. Ulman of the lawsuit.  Admitted that Nicholas Sanderson asked Ms. Sanderson to do so.  Disputed that Ms. Sanderson e-mailed Ms. Ulman.  Further disputed to the extent that Savad Decl. Ex. 161 does not support the purported statement of fact.**

198.     Despite knowledge of the federal statute, RLUIPA, since at least 2004, the Village passed a resolution in February, 2007 seeking "amendments to the act and to obtain testimony from towns and villages that are burdened with the improper use of the act."  This action was proposed by the Village Board one month after Tartikov was first mentioned

RLUIPA at January, 2007 meeting.  Savad Decl. **Ex. 17** (N. Sanderson Tr.) 152:21-153:23;
Savad Decl. **Ex. 5** (Lamer Tr.)  83:23-87:20; Savad Decl. **Ex. 228**; Savad Decl. **Ex. 3** (Marshall
Tr.) 171:12-174:19; Savad Decl. **Ex.77;** Savad Decl. **Ex. 7** (Roman Tr.) 63:13-65:5; Savad Decl.
**Ex. 334**; Savad Decl. **Ex. 309** (Answer ¶ 207); Savad Decl. **Ex. 310**  (Request for Admissions)
Response ¶ 122.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 198
over the objection, <u>admitted in part; disputed in part</u>.  Admitted that the Village passed a
resolution urging Congress "to hold hearings on amendments to [RLUIPA] and to obtain
testimony from towns and villages that are burdened with the improper use of the Act. . . ."
Disputed to the extent Plaintiffs have characterized the resolution as "seeking
amendments" to RLUIPA.  *See* Savad Decl. Ex. 77, Resolution.  Otherwise, disputed.  The
cited testimony does not support the purported statement of fact.  Defendants dispute that
it had knowledge of RLUIPA since at least 2004.  Further disputed to the extent Paragraph
198 characterizes "Tartikov was first mentioned RLUIPA at January, 2007 meeting. [sic]"
as connected to proposal of the resolution by the Village Board.  The testimony cited does
not support this notion.  *See* Savad Decl. Ex. 17 (N. Sanderson Tr.) 152:21-153:23; Savad
Decl. Ex. 5 (Lamer Tr.)  83:23-87:20; Savad Decl. Ex. 228; Savad Decl. Ex. 3 (Marshall Tr.)
171:12-174:19; Savad Decl. Ex. ; Savad Decl. Ex. 7 (Roman Tr.) 63:13-65:5; Savad Decl.
Ex. 334; Savad Decl. Ex. 309 (Answer ¶ 207); Savad Decl. Ex. 310  (Request for
Admissions) Response ¶ 122.**

     199.     The Village never sought to have RLUIPA reviewed prior to January 22, 2007.
Savad Decl. **Ex. 17** (N. Sanderson Tr.) 155:15-157:13.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 199
over the objection, <u>admitted</u> that the Village never passed a resolution asking Congress to
hold hearings regarding RLUIPA prior to the resolution dated February 12, 2007.**

200.     In 2007, there were no active RLUIPA applications in the Village, only in areas surrounding Village. Savad Decl. Ex. 5 (Lamer Tr.) 68:16-23; Savad Decl. **Ex. 3** (Marshall Tr.) 173:5-11.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 200 over the objection, <u>disputed</u>. Defendants object as the cited testimony does not support the purported statement of fact, specifically the meaning of the phrase "active RLUIPA application" as no witness associated with the Village testified to this fact.** *See* **Savad Decl. Ex. 5 (Lamer Tr.) 68:16-23; Savad Decl. Ex. 3 (Marshall Tr.) 173:5-11.**

201.     Trustee Rita Louie knew that a "rabbinical college" was associated with Jews and that Tartikov was going to train rabbis to be judges in rabbinical courts. Savad Decl. **Ex. 9** (Louie Tr.) 56:19-57:15; 112:2-15; 241:24-242:4.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 201 over the objection, <u>admitted in part; disputed in part</u>. Admitted that Trustee Rita Louie knew that a "rabbinical college" was associated with Jews. Disputed that Ms. Louie knew that Tartikov was going to train rabbis to be judges in rabbinical courts. Ms. Louie knew that Tartikov had a *general plan* for a rabbinical college. Savad Decl. Ex. 9 (Louie Tr.) 241:24-242:4**

202.     Village Attorney Doris Ulman knew that the Property was intended to be used as a rabbinical college based on the name rabbinical college. Savad Decl. **Ex. 23** (Ulman Tr.) 17:8-18:2.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

To the extent the Court chooses to consider the statements contained in Paragraph 202 over the objection, <u>admitted in part; disputed in part.</u> Admitted that Ms. Ulman knew that Tartikov *wanted* to use the Property as a rabbinical college. Disputed to the extent that Ms. Ulman knew that the Property was intended to be used as a rabbinical college. Savad Decl. Ex. 23 (Ulman Tr.) 17:23-24.

203. Village Clerk Leslie Sanderson knew from the time that she was working at Village that Tartikov was going to train rabbinical students to be judges. Savad Decl. **Ex. 11** (L. Sanderson Tr.) 63:18-65:4.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 203 over the objection, <u>admitted in part; disputed in part</u>. Admitted that Leslie Sanderson heard that Tartikov wanted to build a rabbinical college. Disputed to the extent that Ms. Sanderson knew that Tartikov was going to train rabbinical students to be judges or that it was "from the time that she was working at Village [sic]". The cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 11 (L. Sanderson Tr.) 63:24-25, 64:24-65:4.

204. In January, 2007 Village Clerk Leslie Sanderson also knew that the residents would be Orthodox/ Hasidic Jews. Savad Decl. **Ex. 11** (L. Sanderson Tr. 95:8-13).

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 204 over the objection, <u>admitted in part; disputed in part.</u> Admitted that Leslie Sanderson testified that she *thinks* she must have known that the residents *probably were going to be* Orthodox or Hasidic Jews. Disputed to the extent that Ms. Sanderson *knew* that the residents would be Orthodox/Hasidic Jews. The cited testimony does not support the purported statement of fact. Savad Decl. Ex. 11 (L. Sanderson Tr.) 95:8-13.

205.     Trustee Nicholas Sanderson knew that Tartikov was going to be a rabbinical college which would teach rabbis.  Savad Decl. **Ex. 17** (N. Sanderson Tr.) 22:17-23:19

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 205 over the objection, admitted in part; disputed in part.  Admitted that Mr. Sanderson knew that Tartikov *wanted* to build a rabbinical college.  Disputed to the extent that Mr. Sanderson knew that Tartikov *was going to be* a rabbinical college.  The cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 17 (N. Sanderson Tr.) 22:24-25.**

206.     Trustee Alan Lamer knew that Tartikov was going to prepare rabbis to sit on rabbinical courts and that it would involve adult student housing.  Savad Decl. **Ex. 5** (Lamer Tr.) 51:19-52:12; and he knew this in March, 2007. *Id.* 69:4-17.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 206 over the objection, admitted in part; disputed in part.  Admitted that Mr. Lamer knew in March 2007 that Tartikov *proposed* building a rabbinical college at the Property preparing rabbis to sit on rabbinical courts and that it would involve adult student housing.  Disputed to the extent that in March 2007 Mr. Lamer knew that Tartikov *was going to* prepare rabbis to sit on rabbinical courts and that it would involve adult student housing. The cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 5 (Lamer Tr.) 51:12-13,  52:5-6.**

207.     Trustee Brett Yagel knew that Tartikov was owned by Jews and would potentially be used for a religious purpose.  Savad Decl. **Ex. 4** (B Yagel Tr.) 243:24-244:20.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 207 over the objection, admitted.**

84

208.    The Village had knowledge that the rabbinical college is going to train rabbis to become rabbinical judges.    Savad Decl. **Ex. 12** (Defendants' 30(b)(6) Day 1 Tr.) 244:3-8.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 208 over the objection, admitted in part; disputed in part. Admitted that the Village had knowledge that a rabbinical college *is supposed to be* an institution where rabbis are trained. Disputed to the extent that the Village had knowledge that the rabbinical college *is going to* train rabbis to become rabbinical judges. The cited testimony does not support the purported statement of fact. Savad Decl. Ex. 12 (Defendants' 30(b)(6) Day 1 Tr.) 244:6-8.**

209.    Doris Ulman was told by Tartikov's attorney that Tartikov would be a rabbinical college to train judges for rabbinical courts.    Savad Decl. **Ex. 12** (Defendants' 30(b)(6) Day 1 Tr.) 75:23-76:9.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 209 over the objection, admitted.**

Village Residents, Trustees and Employees Voiced Their Opposition to Tartikov

210.    Trustee Nicholas Sanderson publicly stated that the Village should "maintain[] its cultural and religious diversity" Savad Decl. **Ex. 310** (Request for Admission) Response No. 106.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 210 over the objection, <u>admitted.</u>**

211.     Village Planning Board Chairperson Cook was opposed to Tartikov.  He stated "[s]ome of us see the Rabbinical College as the beginnings of another restricted religious community similar to New Square." Savad Decl. **Ex. 1** (Cook Tr.) 102:18-104:2; Savad Decl. **Ex. 42.**

<u>RESPONSE:</u>

<u>Objection:</u>  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the factual proposition contained in Paragraph 211 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.  Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 211 over the objection, <u>admitted in part; disputed in part.</u>  Admitted that Mr. Cook wrote a letter in which he stated in part that, "[s]ome of us see the Rabbinical College as the beginnings of another restricted religious community similar to New Square."  Disputed that Mr. Cook was "opposed to Tartikov."  Mr. Cook testified that he wanted to dispute the things Tartikov was saying that were not true. Savad Decl. Ex. 1 (Cook Tr.) 101:15-25, 104:4-7; Savad Decl. Ex. 42.**

212.     Also regarding Tartikov, Village Planning Board Chairperson Cook stated that secular Jews and non-Jews hope that the end result will be to the benefit of Village residents. Savad Decl. **Ex. 1** (Cook Tr.) 104:4-11; Savad Decl. **Ex. 42.**

<u>RESPONSE:</u>

<u>Objection:</u>  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the factual proposition contained in Paragraph 212 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 212 over the objection, <u>admitted in part; disputed in part.</u>  Admitted that Mr. Cook wrote a letter and stated in part, "But we hope the end result will be to the long-term benefit of the residents of the village, town and county."  Otherwise, disputed.  Defendants note that Paragraph 212 is an incomplete statement taken out of context.  The term "we" in the**

quoted portion of the preceding sentence referred to secular Jews, non-Jews, *and people who are paying their taxes in full.*  Savad Decl. Ex. 1 (Cook Tr.) 104:4-11; Savad Decl. Ex. 42.

213.      Village Clerk Leslie Sanderson stated that The Village would not be diverse if the ratio of people coming in is much greater than the people already there. Savad Decl. **Ex. 11** (L. Sanderson Tr.) 200:9-25.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 213 over the objection, <u>admitted in part; disputed in part</u>.  Admitted that Leslie Sanderson stated: "[i]f people coming in – if the ratio is *so much greater* than the people already living there it wouldn't be diverse anymore. (emphasis added)"  Defendants note that Ms. Sanderson also stated that she is "all for diversity," and that she only knew *rumors* about how many people would plan to live at the Property.  Defendants also note that Ms. Sanderson did not know how many Orthodox Jews or Hasidic Jews lived in Pomona. Savad Decl. Ex. 11 (L. Sanderson Tr.) 200:13-24, 201:5 –202:14.**

214.      Village Clerk Leslie Sanderson also stated that Tartikov would "usurp the Village, perhaps the Village Board." Savad Decl. **Ex. 11** (L Sanderson Tr.) 200:15-16.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 214 over the objection, <u>admitted in part; disputed in part</u>.  Admitted that Leslie Sanderson made the statement quoted in Paragraph 214.  Disputed to the extent that the quoted language is an incomplete statement taken out of context.  Defendants note that "the rumors were rampant as to how many people it would be.  I felt that if that were true it would usurp the Village, perhaps the Village Board and the amount of people that live there.  And I'm all for diversity as well." Savad Decl. Ex. 11 (L Sanderson Tr.) 200:13-18.**

215.      In a February, 2000 letter to the editor signed by Lynn Yagel, but authored by Trustees (then candidates for the Board of Trustees) Leslie Sanderson and Brett Yagel, the writers refer to "homogenous individuals."  This is a reference to Orthodox/Hasidic Jews.  The

term was used in the context that the potential influx of Orthodox/Hasidic Jews into Pomona would not be natural progression for the Village.  Savad Decl. **Ex. 9** (Louie Tr.) 258:22-259:13; Savad Decl. **Ex. 149**, Savad Decl. **Ex. 150**; Savad Decl. Ex. 8 (L. Yagel Tr.) 146:24-147:12; 147:19-148:4; Savad Decl. **Ex. 174**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object  to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 215 over the objection:**

**As to sentence one, <u>admitted in part; disputed in part</u>.  Admitted that the writer refers to "homogenous individuals."  Disputed that Leslie Sanderson authored this letter.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 9 (Louie Tr.) 258:22-259:13; Savad Decl. Ex. 149, Savad Decl. Ex. 150; Savad Decl. Ex. 8 (L. Yagel Tr.) 146:24-147:12, 147:19-148:4; Savad Decl. Ex. 174.**

**As to sentence two, <u>disputed.</u> Defendants dispute the mischaracterization that the term "homogenous individuals" refers *exclusively* to Orthodox/Hasidic Jews.  The letter states: "To say that a virtual mini-city within the village – that will house thousands of homogenous individuals who can control village elections – is 'natural' in any way is simply not true."  Savad Decl. Ex. 150.**

**As to sentence three, <u>disputed.</u>  Defendants dispute the mischaracterization that the term "homogenous individuals" refers *exclusively* to Orthodox/Hasidic Jews.  The letter states: "To say that a virtual mini-city within the village – that will house thousands of homogenous individuals who can control village elections – is 'natural' in any way is simply not true."  Savad Decl. Ex. 150.  Further disputed to the extent that Savad Decl. Ex. 174 does not support the purported statement of fact.**

216.     Trustee Rita Louie admits that she made judgments against the rabbinical college even though she did not know any specifics of the proposal Savad Decl. Ex. 9 (Louie Tr.) 119:24-121:9; 121:17-25; Savad Decl. Ex. 133.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 216 over the objection, <u>disputed.</u>  Rita Louie did not make *judgments against the rabbinical college.*  She believed that based on rumors of  the plan for the rabbinical college leaked to**

the public, there was the potential for environmental and safety problems.  The cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 9 (Louie Tr.) 120:11-14, 121:7-25; Savad Decl. Ex. 133.

217.     The Village residents were interested in finding out about Tartikov from Village officials; and they came to Village Hall to express their opinions on the topic of Tartikov.  Savad Decl. Ex. 11 (L. Sanderson Tr.) 66:4-67:9; 213:22-214:24; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 188:15-189:7; Savad Decl. **Ex. 241**; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 191:20-192:16; Savad Decl. **Ex. 243**; Savad Decl. Ex. 3 (Marshall Tr.) 66:10-14; 66:23-67:7.

**RESPONSE:**

**Objection**:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 217 over the objection, <u>admitted in part; disputed in part</u>.  Disputed that residents were interested in finding out about Tartikov from Village officials.  Village residents did not come to Village Hall to express their opinions on the topic of Tartikov.  Admitted that some Village residents *asked questions* about Tartikov of Village officials or *discussed* Tartikov.  Further admitted that other Village residents, in general, *were concerned* about the development of the Camp Dora property.  Defendants object as the cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 11 (L. Sanderson Tr.) 66:4-67:9, 213:22-214:24; Savad Decl. Ex. 241; Savad Decl. Ex. 3 (Marshall Tr.) 66:10-14, 66:23-67:7.**

218.     The Village received many calls regarding Tartikov, and their reaction to Tartikov was all negative; the Village received no positive reaction regarding Tartikov.  Savad Decl. **Ex. 17** (N. Sanderson Tr.) 85:20-86:13.

**RESPONSE:**

**Objection**:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 218 over the objection, <u>disputed</u>.  Nicholas Sanderson, as mayor, probably received a lot of calls.  The residents on the calls were *concerned about large development*.  Mr. Sanderson, as mayor, received no calls from the public that supported Tartikov.  Defendants object as the cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 17 (N. Sanderson Tr.) 85:20-86:13.**

219.     Village residents were concerned about maintaining the status quo and having the Village carry on more or less the way it exists.  Savad Decl. Ex. 6 (Banks Tr.) 76:12-77:6.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 219 over the objection, <u>disputed</u>.  Disputed to the extent that the quoted language is an incomplete statement taken out of context.  Ian Banks testimony in Paragraph 219 addresses maintaining the rural residential quality of Village within the parameters of zoning allowance.  The full statement of Mr. Banks is as follows:  "[M]ost residents don't really know what the zoning laws say.  They know what the nature and character of the village as it exists is.  And what the people are concerned about as residents there are the status quo and having the village carry on more or less the way it exists, you know, *with changes that are allowed*.  But they are talking about maintaining the rural residential quality of the area without specific knowledge of laws . . ." (emphasis added).  Savad Decl. Ex. 6 (Banks Tr.) 76:12-77:10.**

220.     The Defendants are aware that private citizens within the Village have expressed opposition to the development of a Rabbinical College.  Savad Decl. Ex.310 (Request for Admissions) Response No. 117.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 220 over the objection, <u>admitted.</u>**

221.     Defendants are aware that private citizens have expressed opposition through on-line comments to the development plans of the Plaintiffs within the Village.  Savad Decl. Ex. 310 (Request for Admissions) Response No. 118.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 221 over the objection, <u>admitted in part; disputed in part</u>.  Disputed to the extent that there was**

opposition to the development *plans* of the Plaintiffs.  Plaintiffs have not filed an application or provided a detailed site plan.  Otherwise, admitted.

222.     Defendants are aware that private citizens have expressed opposition through print media comments to the development plans of the Plaintiffs within the Village.  Savad Decl. Ex.310 (Request for Admissions) Response No. 119.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 222 over the objection, admitted in part; disputed in part.  Disputed to the extent that there was opposition to the development *plans* of the Plaintiffs.  Plaintiffs have not filed an application or provided a detailed site plan.  Otherwise, admitted.**

223.     Defendants are aware that private citizens have expressed opposition to development in the Village by the Plaintiffs.  Savad Decl. Ex. 310  (Request for Admissions) Response Nos. 120 and 121.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 223 over the objection, admitted.  Defendants note that private citizens have not expressed opposition to development in the Village by Hasidic or Orthodox Jews generally.  Savad Decl. Ex. 310 (Request for Admissions) Response No. 120.**

Village Officials Responded to the Opposition of Pomona Residents to Tartikov

224.     Preserve Ramapo was opposed to Tartikov as it understood its plans in January, 2007.  Transcript of the Deposition of Robert Rhodes dated August 12, 2014 ("Rhodes Tr. Day 2") attached as Exhibit 20 to the Savad Declaration pages 207:14-208:9.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.**

To the extent the Court chooses to consider the statements contained in Paragraph 224 over the objection, <u>admitted in part; disputed in part</u>. Preserve Ramapo was opposed to Tartikov's *project* as it understood it in January 2007, not to *Tartikov itself*. Savad Decl. Ex. 20 (Rhodes Tr. Day 2) 207:16-22.

225.    At the time of Preserve Ramapo's opposition to Tartikov in January, 2007,  its leader (at the time) Robert Rhodes, knew that Tartikov was planning an Orthodox rabbinical college along with family housing. Savad Decl. **Ex. 20** (Rhodes Tr. Day 2) 213:10-18

<u>RESPONSE</u>:

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 225 over the objection, <u>disputed.</u> The cited testimony does not support the purported statement of fact. Savad Decl. Ex. 20 (Rhodes Tr. Day 2) 213:10-18.

226.    Brett Yagel, village resident and candidate for trustee corresponded with Preserve Ramapo's Michael Castelluccio following Preserve Ramapo's January, 2007 e-mail regarding Tartikov's plans. Yagel stated that Preserve Ramapo's posting of the Tartikov information was "nice work" and that "a lot" of individuals have been speaking up about this. He also spoke about the owners of the Property attempting to garner support for the project from the "religious" community. Savad Decl. Ex. 4 (B. Yagel Tr.) 223:10-224:25; Savad Decl. Ex. 108.

<u>RESPONSE</u>:

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 226 over the objection, <u>admitted in part; disputed in part</u>. Disputed to the extent that Brett Yagel's commentary is an incomplete statement taken out of context. Specifically, Mr. Yagel did not state that a lot of individuals have been *speaking up* about this. Mr. Yagel states, "A lot of individuals are *speaking about* this and the discussions have been fruitful." Otherwise, admitted. Savad Decl. Ex. 108.

227.    The Preserve Ramapo website "detonated" with stories following the release of the information regarding Tartikov. Web site visits "spiked" from a couple of hundred per day to more than 1000 per day. Savad Decl. **Ex. 21** (Castelluccio Tr.) 82:2-25; Savad Decl. **Ex. 258**.

<u>RESPONSE</u>:

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 227 over the objection, <u>admitted in part; disputed in part</u>.  Disputed that any increase in stories or web site visits was due to "information regarding Tartikov," generally, but in response to the posting of the site map and plans for the Tartikov project.  Savad Decl. Ex. 21 (Castelluccio Tr.) 82:2-25.

228.     Village Clerk Leslie Sanderson found the Tartikov plans to be "concerning." She knew that the new residents would be Orthodox/ Hasidic Jews.  Savad Decl. Ex. 11 (L. Sanderson Tr.) 94:6-95:13; Savad Decl. Ex. 11 (L. Sanderson Ex. 326); and she discussed these concerns with Village Trustees.  Savad Decl. Ex. 11 (L. Sanderson Tr.) 99:15-23.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 228 over the objection, <u>admitted in part; disputed in part.</u>  Admitted that Leslie Sanderson found the Tartikov plans "concerning."  Further admitted that Ms. Sanderson agreed that she "must have known that" the residents were probably going to be Orthodox/Hasidic Jews.  Disputed that the two notations are related.  Further disputed to the extent that the quoted language is an incomplete statement taken out of context.  Ms. Sanderson testified that the Tartikov plans were "concerning" because "[the buildings] sounded big" and "it would take a lot of that treed area."  She further explained that "it definitely concerned" her "[b]ecause it would have more than doubled the size of the Village of Pomona the way it was at that time."

Admitted that Ms. Sanderson agreed, at one point during her deposition, that it was fair to say she discussed the Tartikov project with one or more officials.  Defendants note that Ms. Sanderson previously testified that she did not have a recollection of a conversation with any Village officials regarding the project.  Savad Decl. Ex. 11 (L. Sanderson Tr.) 94:10-95:7, 99:9-23.

229.     People told Village Clerk Leslie Sanderson that they wanted to be kept  informed about Tartikov as well as the proposed religious adult student housing at neighboring Patrick Farm.  Savad Decl. Ex. 11 (L Sanderson Tr.) 171:18-172:15.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statements contained in Paragraph 229 over the objection, <u>admitted in part; disputed in part</u>. Leslie Sanderson knew that people wanted to be kept informed about Tartikov's *project*, not Tartikov *itself*. Savad Decl. Ex. 11 (L. Sanderson Tr.) 171:18-172:15.**

230.    Village residents would come in to Village Hall and ask Village Clerk Leslie Sanderson about the Property. Savad Decl. Ex. 11 (L. Sanderson Tr.) 213:23-214:24; 215:12-216:10.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statements contained in Paragraph 230 over the objection, <u>admitted.</u>**

231.    Village resident Lynn Yagel stated that there is no hope for Rockland County due to RLUIPA development. Savad Decl. Ex. 11 (L Yagel Tr.) 125:8-127:15; Savad Decl. **Ex. 128**.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statements contained in Paragraph 231 over the objection, <u>disputed</u>. Defendants object as the cited testimony does not support the purported statement of fact, specifically the meaning of the phrase "RLUIPA development" as no witness associated with the Village testified to this fact. Lynn Yagel's statements regarding "no hope" in Paragraph 231 are attributable to what she deemed a "frivolous lawsuit." Savad Decl. Ex. 8 (L Yagel Tr.) 125:8-127:15; Savad Decl. Ex. 128.**

232.    Planning Board Chairman Cook wanted his views opposing Tartikov heard. Savad Decl. Ex. 1 (Cook Tr.) 109:24-110:18. He wrote to the Rockland County Journal News multiple times. Savad Decl. Ex. 42; Savad Decl. Ex. 43); Savad Decl. Ex.44. He wrote Mayor N. Sanderson in June, 2007 regarding the Tartikov website. Savad Decl. Ex. 1 (Cook Tr.) 121:25- 123:7; Savad Decl. Ex. 46; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 188:3-10; Savad Decl. Ex. 324. He also wrote to Mayor Sanderson regarding accreditation issues for Tartikov. Savad Decl. Ex. 1 (Cook Tr.) 125:6-126:5; Savad Decl. Ex.47. He also wrote to the Village

Assessor stating that "some of us have serious doubts about how forthright the rabbinical college is being in these legal proceedings." Savad Decl. Ex. 1 (Cook Tr.) 155:21-156:13. "Tartikov is and was a big deal to him." *Id*. Cook Tr. 124:5-10

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a). Defendants object to the factual proposition contained in Paragraph 232 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 232 over the objection:**

**As to sentence one, disputed. Defendants dispute Plaintiffs' argumentative characterization that Mr. Cook *opposed* Tartikov. Mr. Cook wanted to make information about the rabbinical college available to the public. Savad Decl. Ex. 42; Savad Decl. Ex. 43; Savad Decl. Ex. 44; Savad Decl. Ex. 1 (Cook Tr.) 109:24-110:18.**

**As to sentence two, admitted that Mr. Cook wrote three newspaper editorials. Savad Decl. Ex. 1 (Cook Tr.) 121:25- 123:7; Savad Decl. Ex. 46; Savad Decl. Ex. 17 (N. Sanderson Tr.) 188:3-10; Savad Decl. Ex. 324.**

**As to sentence three, admitted that Mr. Cook wrote an email to Nicholas Sanderson in June 2007 to ask if he knew about the Tartikov College website. Savad Decl. Ex. 1 (Cook Tr.) 121:25- 123:7; Savad Decl. Ex. 46.**

**As to sentence four, admitted that Mr. Cook wrote an email to Mr. Sanderson that there is an organization that could accredit a rabbinical college. Savad Decl. Ex. 1 (Cook Tr.) 125:6-126:5; Savad Decl. Ex. 47.**

**As to sentence five, admitted that Mr. Cook wrote to the Village Assessor stating that, "some of us have serious doubts about how forthright the rabbinical college is being in these legal proceedings and hope your decision will support Judge LaCava's denial of the tax exemption." Savad Decl. Ex. 1 (Cook Tr.) 155:21-156:13.**

233.    Village resident Robert Prol wanted his opinions to be heard by Village officials. Savad Decl. Ex. 2 (Prol Tr.) 78:5-79:2. In February, 2007 he sent a letter to Mayor Marshall and Trustee Sanderson stating that as a Village resident he supported the Board opposing Tartikov. *Id*. at 31:11-32:5; 80:21-81:7; Savad Decl. Ex. 51.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 233 over the objection, <u>disputed</u>.  Robert Prol wanted his opinion heard by the *community*. Savad Decl. Ex. 2 (Prol Tr.) 78:5-79:2.  Mr. Prol wrote that he supported the mayor fighting a "100 acre tract of housing."  Id. at. Ex. 2  31:11-32:5.**

234.     Robert Prol sent another letter in July, 2007 to Mayor Sanderson and Trustees Brett Yagel, Ian Banks and Rita Louie  stating "There is only one outcome acceptable to the community, and that is to maintain our fair zoning laws and the way of life we have all invested in." Savad Decl. Ex. 2 (Prol Tr.) 123:2-124:12; 127:5-19; Savad Decl. Ex. 57; Savad Decl. **Ex. 17** (N Sanderson Tr.) 191:6-15; Savad Decl. **Ex. 242**.  He was referring to comments that he had heard from other Village residents.  Savad Decl. Ex. 2 (Prol Tr.) 127:5-128:5.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 234 over the objection, <u>admitted in part; disputed in part.</u>  Disputed to the extent that the "other Village residents" with whom Robert Prol had spoken totaled "[m]aybe four, five. Maybe less than that."  Otherwise, admitted.  Savad Decl. Ex. 2 (Prol Tr.) 128:3-4.**

235.     Less than a year after Robert Prol sent this letter, Mayor Sanderson appointed Prol to the Village Planning Board.  Savad Decl. Ex. 2 (Prol Tr.) 13:2-18;27:15-22.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 235 over the objection, <u>admitted.</u>**

236.     Trustee Louie responded to Robert Prol's July, 2007 letter by stating that "[i]t's a little unsettling what's going on, but we are sure we can maintain our zoning laws in Pomona and keep our neighborhood rural and diverse." Savad Decl. Ex. 9 (Louie Tr.) 221:4-226:12; Savad Decl. **Ex. 145**.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 236 over the objection, <u>admitted.</u>

237.     Village Clerk Leslie Sanderson stated that "[p]retty much everybody" was "talking about it" and the Village residents' reactions to the project were all negative. She did not speak to anyone who had a positive reaction to Tartikov's plans. Savad Decl. Ex. 11 (L. Sanderson Tr.) 95:18-96:4; 99:4-8; 99:24-100:17.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 237 over the objection, <u>admitted in part; disputed in part</u>. Disputed to the extent that the quoted language in Paragraph 237 is an incomplete statement taken out of context. Leslie Sanderson testified that "everyone was talking about" the "size" of the Tartikov project. Further disputed that "the Village residents' reactions to the project were all negative." The people with whom Ms. Sanderson personally spoke did not have a positive reaction. Savad Decl. Ex. 11 (L. Sanderson Tr.) 96:1-97:4, 100:6-17.

238.     Leslie Sanderson told another Village resident that "[e]veryone I talk to is concerned about the Rabbinical College." Savad Decl. Ex. 11 (L. Sanderson Tr.) 224:11-19; Savad Decl. **Ex. 170**.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 238 over the objection, <u>admitted</u>. Admitted that Leslie Sanderson wrote the quoted language in Paragraph 238 in an email. Savad Decl. **Ex. 170**.

239.     Village residents told Leslie Sanderson that they wanted to know what was going on with Tartikov. Savad Decl. Ex. 11 (L Sanderson Tr.) 171:18-172:15.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 239 over the objection, <u>admitted in part; disputed in part</u>. Disputed that Village residents told Leslie Sanderson that they wanted to know what was going on with Tartikov; rather they were interested in Tartikov's *project*. Savad Decl. Ex. 11 (L Sanderson Tr.) 171:18-172:15.

 

240.      Trustee Rita Louie said about Tartikov "follow the money and the truth will be revealed." Savad Decl. Ex. 9 (Louie Tr.) 241:11-18; Savad Decl. **Ex. 146**.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 240 over the objection, <u>admitted in part; disputed in part</u>. Admitted that Rita Louie wrote the quoted language in Paragraph 240 in an email. Disputed to the extent that the quoted language in Paragraph 240 is an incomplete statement taken out of context. Ms. Louie wrote: **"Where did the money come from to buy this property?  I can't imagine ANY legitimate investor dishing out 4x the value for a piece of property what will generate no income.  I say, follow the money and the truth will be revealed."** Savad Decl. Ex. 146.

 

241.      Village resident Lynn Yagel does not believe that Tartikov is a pious endeavor. She believes that it is about money; she doesn't have any facts to support that conclusion. She publicized this opinion.  Savad Decl. Ex. 8 (L. Yagel Tr.) 149:15-153:14; 157:5-9.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object  to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).

To the extent the Court chooses to consider the statements contained in Paragraph 241 over the objection, <u>admitted in part; disputed in part</u>. Lynn Yagel did not state that she believes *Tartikov*, in general, is not a pious endeavor.  She stated that "becoming a rabbi is a very pious thing." She stated Tartikov's *project* is not pious. Savad Decl. Ex. 8 (L. Yagel Tr.) 150:23-152:6.

 

242.      Private citizens made statements in opposition to the Rabbinical College.  Savad Decl. Ex. 310 (Request for Admissions) Response No. 116.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 242 over the objection, <u>disputed.</u> Disputed to the extent that Paragraph 242 is an incomplete statement taken out of context. Private citizens made statements in opposition to high density housing.** *See generally* <u>Transcript on Public Hearings on Local Law Amendment: Dormitories (Continued), Local Law Amendment: Wetlands,</u> **(January 22, 2007) Gordon Aff. ¶ 22, Ex. 17. Plaintiffs neglect to mention that private citizens also made statements in favor of the Rabbinical College at Village meetings. Savad Decl. Ex. 310 (Request for Admissions) Response No. 116.**

243.   Private citizens posted on-line comments in opposition to the Rabbinical College. Savad Decl. Ex. 310 (Request for Admissions Response) No. 114.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 243 over the objection, <u>admitted.</u>**

244.   Robert Prol believed Tartikov would be a "slum" and posted on LoHud.com that all of the Village residents he knows want Village officials to oppose the project . Savad Decl. Ex. 2 (Prol Tr.) 86:4-18; 89:16-91:9; 92:11-24; 107:16-108:11; 123:2-124:12; 167:25-170:17; Savad Decl. Ex. 53; Savad Decl. Ex. 54; Savad Decl. Ex. 55; Savad Decl. Ex. 56; Savad Decl. Ex. 57; Savad Decl. Ex. 61; Savad Decl. Ex. 62.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 244 over the objection, <u>admitted in part; disputed in part.</u> Robert Prol has not** *met* **anyone in Pomona who supports Tartikov's project. Mr. Prol stated: "Harvard would have bought property zoned for their use, not like your clients who bought property not zoned for their use and are trying to force their slum on everyone else." Savad Decl. Ex. 2 (Prol Tr.) 92:3-8. By "slum," Mr. Prol meant that "[t]he density level of that many people in that small of a property would end up with lots of garbage and packages and everything else all over the**

place." **Disputed to the extent that the quoted language in Paragraph 244 is an incomplete statement taken out of context. Savad Decl. Ex. 2 (Prol Tr.) 86:4-9, 92:3-8, 92:15-21.**

245.        Village residents also sent correspondence to the Village and made statements in the press regarding Tartikov, which was all negative. Savad Decl. **Ex. 23** (Ulman Tr.) 34:13-35:8; Savad Decl. Ex. 311 (Interrogatory) Response Nos. 23 and 24; Savad Decl. Ex. 310 (Request for Admissions) Response No. 115.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 245 over the objection, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.** *See* **Savad Decl. Ex. 23 (Ulman Tr.) 34:13-35:8; Savad Decl. Ex. 311 (Interrogatory) Response Nos. 23 and 24; Savad Decl. Ex. 310  (Request for Admissions) Response No. 115.**

246.        In January, 2007, Brett Yagel, then a resident and Trustee candidate was quoted in a New York Times article regarding Tartikov that it is "disgusting" that "[t]hey're trying to create this mini city in our village." Savad Decl. Ex. 4 (B. Yagel Tr.) 245:17-246:18; Savad Decl. Ex. 112.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 246 over the objection, <u>admitted in part; disputed in part.</u>  Disputed to the extent that the quoted language in Paragraph 246 is an incomplete statement taken out of context.  Brett Yagel was quoted as using the word "disgusting," but it comes immediately after the sentence in which he is quoted as stating, "The attorney who represents developer and owner of the property appears ready to file a lawsuit without knowing what the codes in the Village of Pomona are."  Savad Decl. Ex. 4 (B. Yagel Tr.) 245:7-18; Savad Decl. Ex. 112.**

247.        The trustees corresponded among themselves regarding Tartikov.  Savad Decl. Ex. 9 (Louie Tr.) 184:8-185:18; Savad Decl. **Ex. 141**; Savad Decl. Ex. 4 (B. Yagel Tr.) 229:8-230:18; Savad Decl.  Ex.110.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 247 over the objection, <u>admitted.</u>

248.      Trustee (then later, Mayor) Nicholas Sanderson took village residents' concerns into account when voting on laws. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 12:20-25.

**RESPONSE:**

<u>Admitted</u> **that Nicholas Sanderson stated "We would always have a public hearing and local residents would be invited to come and share their local concerns and feelings about it, and, obviously, one would take that into account." Savad Decl. Ex. 17 (N. Sanderson Tr.) 12:22-25.**

249.      While running for office while still a trustee, Sanderson met with hundreds of Village residents who stated their concerns and opposition to Tartikov. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 124:11-20.

**RESPONSE:**

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 249 over the objection, <u>admitted</u> that Nicholas Sanderson stated that "At the beginning of the campaign, we talked to a large – hundreds of village residents and a constant theme was their concern about what they perceived to be a huge multi-family building development in the village." Savad Decl. Ex. 17 (N. Sanderson Tr.) 124:14-18.**

250.      The opinions of Village residents informed Sanderson's decision that he believed that there were problems with the Tartikov project. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 132:7-21.

**RESPONSE:**

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 250 over the objection, <u>disputed.</u> The cited testimony does not support the purported statement of fact. Nicholas Sanderson stated there were "environment and safety problems;" not**

"problems," generally. Further, the cited material does not support the statement that Mr. Sanderson ever made a "decision." Savad Decl. Ex. 17 (N. Sanderson Tr.) 132:7-21.

251. Trustee Rita Louie stated that she receives feedback on issues from the public at hearings and around the Village; and that she weighs these opinions when deciding on a law. Savad Decl. Ex. 9 (Louie Tr.) 34:15-18; 36:7-12; 37:9-20.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 251 over the objection, admitted in part; disputed in part. Disputed to the extent that Rita Louie has not received feedback from Village residents regarding an upcoming law outside the context of a public hearing. The "feedback on issues from the public at hearings" is not the only factor that Ms. Louie "weighs" when deciding on a law. Savad Decl. Ex. 9 (Louie Tr.) 33:10-12, 35:12-19.**

252. Trustee Brett Yagel receives opinions from Village residents through e-mails, website comments, phone calls, newspapers, blogs and takes the positions of Village residents into account when deciding about legislation. Savad Decl. Ex. 4 (B. Yagel Tr.) 30:12-31:15.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 252 over the objection, admitted. Defendants note that Brett Yagel also stated: "I might not agree with what the position is that the constituency is requesting and I might vote contrary to it." Savad Decl. Ex. 4 (B. Yagel Tr.) 30:22-24.**

253. Trustee Brett Yagel stated that the articles and on-line postings regarding Tartikov were more negative than positive. Savad Decl. Ex. 4 (B. Yagel Tr.) 32:10-16.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 253 over the objection, disputed. The cited testimony does not support the purported statement**

of fact.  **Brett Yagel agreed that the articles and online postings regarding *Tartikov's proposed use of the property*, not Tartikov generally, were more negative than positive. Savad Decl. Ex. 4 (B. Yagel Tr.) 32:10-16.**

254.     Trustee Alma Roman talks to constituents about issues and takes those opinions into account when voting on laws.  Savad Decl. Ex. 7 (Roman Tr.) 19:7-20:5.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 254 over the objection, admitted.**

255.     Trustee Alma Roman specifically listened to residents regarding Local Law No. 1 of 2007 and took those comments into consideration when voting in support of Local Law No. 1 of 2007.  Savad Decl. Ex. 7 (Roman Tr.) 74:22-75:19.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  Alma Roman did not state that she "took those comments into consideration when voting in support of Local Law No. 1 of 2007."  When asked, "Did you listen to what residents had to say?", Ms. Roman responded, "Well, yes, I listened, and, you know, yes."  Savad Decl. Ex. 7 (Roman Tr.) 75:16-19.**

256.     Trustee Banks takes constituents' opinions into account when voting on laws. Savad Decl. Ex. 6 (Banks Tr.) 25:19-23.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 256 over the objection, admitted.**

257.     Mayor Marshall stated that people who spoke to him were concerned with maintaining their quality of life.  Savad Decl. Ex. 3 (Marshall Tr.) 16:10-20.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 257 over the objection, <u>disputed.</u>  Disputed to the extent that Paragraph 257 is an incomplete statement taken out of context.  Herbert Marshall's statements as cited in Paragraph 257 involve a proposed Kmart/shopping center on Route 202 when he first ran for office over 20 years ago.  Savad Decl. Ex. 3 (Marshall Tr.) 15:16-16:20.

258.     Trustee Lamer listened to opinions from the public that were stated in Village meetings. Savad Decl. Ex. 9 (Lamer Tr.) 91:19-92:19.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 247 over the objection, <u>admitted.</u>  The cited testimony does not support the purported statement of fact.  Notwithstanding, admitted that Alan Lamer testified that he considered comments made during meetings open to the public.  Savad Decl. Ex. 5 (Lamer Tr.) 92:8-19.

259.     Village Clerk Leslie Sanderson was required to address the concerns of residents regarding Tartikov as soon as possible. Savad Decl. Ex. 11 (L Sanderson Tr.) 18:19-21.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 259 over the objection, <u>disputed.</u>  The cited testimony does not support the purported statement of fact.  Leslie Sanderson stated that part of her job was to address concerns of the resident [sic] as soon as possible, but does not specifically reference Tartikov.  Savad Decl. Ex. 11 (L Sanderson Tr.) 18:19-21.

260.     After the election in 2007, Trustee Louie told Village resident Judy Fleischer, who had expressed Tartikov concerns during the election, to give her feedback because it was important to hear from her constituents regarding what was going on in the Village.  Savad Decl. Ex. 9 (Louie Tr.) 153:19-155:13; Savad Decl. Ex. 135.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 260 over the objection, <u>admitted in part; disputed in part.</u> The cited testimony does not support the purported statement of fact. The cited material does not support that Ms. Fleischer expressed Tartikov concerns during the election. *See* Savad Decl. Ex. 9 (Louie Tr.) 153:19-155:13; Savad Decl. Ex. 135.


261.  Village Trustees and employees read The Rockland County Journal News and its on-line version, LoHud. Savad Decl. Ex. 4 (B. Yagel Tr.) 23:3-15; Savad Decl. **Ex. 12** (Defendants' 30(b)(6) Day 1 Tr.) 67:13-68:19; Savad Decl. Ex. 3 (Marshall Tr.) 26:14-18; 27:16-19; Savad Decl. Ex. 11 (Leslie Sanderson Tr.) 58:16-24; 76:9-12; Savad Decl. **Ex. 23** (Ulman Tr.) 25:22-24; Savad Decl. Ex. 5 (Lamer Tr.) 58:6-8; Savad Decl. Ex. 7 (Roman Tr.) 34:12-24; Savad Decl. Ex. 9 Louie Tr. 37:21-38:6; Savad Decl. Ex. 6 (Banks Tr.) 25:24-26:13; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 20:2-21:13.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 261 over the objection, <u>admitted in part; disputed in part.</u> Disputed to the extent that Savad Decl. Ex. 5 (Lamer Tr.) 58:6-8 does not support the purported statement of fact. Notwithstanding, admitted that Alan Lamer testified that he reads the Rockland Journal News occasionally. Otherwise, admitted. Savad Decl. Ex. 5 (Lamer Tr.) 58:6-8, 59:6-17.


262.  Village Trustees and employees heard "rumors" regarding Tartikov. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 78:18-79:14; 131:9-132:6; Savad Decl. **Ex. 12** (Defendants' 30(b)(6) Day 1 Tr.) 67:13-68:19; Savad Decl. Ex. 7 (Roman Tr.) 38:5-39:3; Savad Decl. **Ex. 23** (Ulman Tr.) 49:12-51:22; Savad Decl. Ex. 3 (Marshall Tr. 28:19-29:9); Savad Decl. Ex. 9 (Louie Tr.) 101:10-16.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 262 over the objection, <u>admitted in part; disputed in part.</u> Disputed to the extent that Savad

**Decl. Ex. 7 (Roman Tr.) 38:5-39:3; Savad Decl. Ex. 23 (Ulman Tr.) 49:12-51:22; and Savad Decl. Ex. 9 (Louie Tr.) 101:10-16 does not support the purported statement of fact. The aforementioned cited materials provided do not use the term "rumors."**

263.     Village Clerk Leslie Sanderson stated that everyone was talking about the "rumors" regarding Tartikov and she discussed those rumors with one or more officials. Savad Decl. Ex. 11 (L. Sanderson Tr.) 95:18-96:4; 99:4-23.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 263 over the objection, admitted in part; disputed in part. The cited testimony does not support the purported statement of fact. The cited materials provided do not use the term "rumors." Leslie Sanderson testified that "everyone was talking about" the "size" of the Tartikov project. Further, Ms. Sanderson agreed, at one point during her deposition, that it was fair to say she discussed the Tartikov project with one or more officials. Defendants note that Ms. Sanderson previously testified that she did not have a recollection of a conversation with any Village officials regarding the project. Savad Decl. Ex. 11 (L. Sanderson Tr.) 96:1-97:4, 98:13-99:23.**

Discrimination Against Dense Housing Is Discrimination Against Orthodox/ Hasidic Jews

264.     Village officials and employees knew that the Property was to be used by Orthodox/ Hasidic Jewish entities and individuals. See Paragraphs 149-150, above.

**RESPONSE:**

**Defendants incorporate herein by reference their responses to Paragraphs 149-150, above.**

265.     Village officials and employees are aware that Orthodox/Hasidic families have large families. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 151:20-25; Savad Decl. Ex. 4 (B. Yagel Tr.) 22:15-21; 201:11-21; Savad Decl. Ex. 7 (Roman Tr.) 24:18-21; Savad Decl. Ex. 9 (Louie Tr.) 183:23-184:2; Savad Decl. Ex. 1 (Cook Tr.) 160:8-14; Savad Decl. Ex. 2 (Prol Tr.) 72:6-15; 73:11-74:17; Savad Decl. Ex. 8 (L. Yagel Tr.) 38:21-39:5; Savad Decl. Ex. 11 L. Sanderson Tr.) 237:4-13.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object to the factual proposition contained in Paragraph 111 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 265 over the objection, <u>admitted in part; disputed in part.</u> Disputed that Lynn Yagel is either a Village official or employee. Otherwise, admitted.**

266.     Village officials and employees have knowledge that Rockland's Hasidic Jewish population has "exploded" or increased. Savad Decl. Ex. 11 (L. Sanderson Tr.) 57:57:17-20; 163:24-164:23; Savad Decl. **Ex. 165**; Savad Decl. Ex. 9 (Louie Tr.) 42:24-43:23; 50:3-7; Savad Decl. Ex. 7 (Roman Tr.) 33:12-16; Savad Decl. **Ex. 23** (Ulman Tr.) 23:13-24; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 16:9-17:3; Savad Decl. Ex. 5 (Lamer Tr.) 58:9-12; Savad Decl. Ex. 6 (Banks Tr.) 36:13-17; Savad Decl. Ex. 1 (Cook Tr.) 78:21-79:13.

**<u>RESPONSE:</u>**

**<u>Objection:</u> Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object to the factual proposition contained in Paragraph 111 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 266 over the objection, <u>admitted in part; disputed in part.</u> Admitted that Doris Ulman and Alan Lamer testifies that the Hasidic Jewish population in Rockland County has increased. The remainder of the depositions transcripts and exhibits cited do not support the purported statement of fact. *See* Savad Decl. Ex. 11 (L. Sanderson Tr.) 57:57:17-20,163:24-164:23; Savad Decl. Ex. 165; Savad Decl. Ex. 9 (Louie Tr.) 42:24-43:23, 50:3-7; Savad Decl. Ex. 7 (Roman Tr.) 33:12-16; Savad Decl. Ex. 23 (Ulman Tr.) 23:13-24; Savad Decl. Ex. 17 (N. Sanderson Tr.) 16:9-17:3; Savad Decl. Ex. 5 (Lamer Tr.) 58:9-12; Savad Decl. Ex. 6 (Banks Tr.) 36:13-17; Savad Decl. Ex. 1 (Cook Tr.) 78:21-79:13.**

267.     Leslie Sanderson was aware that the Orthodox/ Hasidic community expanding in area. Savad Decl. Ex. 11 (L. Sanderson Tr.) 164:13-23.

**<u>RESPONSE:</u>**

**<u>Objection:</u> Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 267 over the objection, <u>admitted in part; disputed in part.</u> Disputed that Leslie Sanderson was aware "that the Orthodox/Hasidic community expanding in area." Ms. Sanderson was aware that there was an increase in the Rockland Hasidic Jewish population. Savad Decl. Ex. 11 (L. Sanderson Tr.) 164:5-23.**

268.     The Village claims that Tartikov is primarily a housing development without any evidence to support this. Savad Decl. **Ex. 12** (Defendants' 30(b)(6) Day 1 Tr.) 236:24-237:20.

**RESPONSE:**

**<u>Objection:</u> Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 268 over the objections, <u>admitted in part; disputed in part</u>. Disputed that the Village is "without any evidence" to support its belief that the project is primarily a housing project. The Village bases its belief on the number of housing units that Plaintiffs state they intend to construct, the very small size of the educational facility that Plaintiffs state they intend to construct, and the fact that the two major players are land developers. In addition, certain newspapers articles that have not been denied by Plaintiffs has also led the Village to this belief. Savad Decl. Ex. 12 (Defendants' 30(b)(6) Day 1 Tr.) 237:8-20.**

<u>Tartikov Was "The Single Most Important Issue" in the March 2007 Village Election</u>

269.     The campaign for Village Board of Trustees ran from January, 2007 through March, 2007. Herbert Marshall ran for re-election as mayor on a slate with Alan Lamer who ran for re-election as a trustee. Nicholas Sanderson ran for election as mayor on a slate with Brett Yagel and Rita Louie.

**RESPONSE:**

**<u>Objection:</u> Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants further object and <u>dispute</u> this paragraph as there are no materials cited to support this statement.**

270.     During the time of the campaign, Herbert Marshall was serving as the Village mayor and Nicholas Sanderson and Alan Lamer were serving as Village trustees. Savad Decl. Ex. 5 (Lamer Tr.) 60:15-25; Savad Decl. Ex. 3 (Marshall Tr.) 35:11-37:1.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 270 over the objection, admitted in part; disputed in part. Admitted that Herbert Marshall was serving as the Village mayor in 2007 and Alan Lamer was serving as a Village trustee in 2007. Disputed that Nicholas Sanderson was serving as a Village trustee in 2007. Mr. Sanderson was serving as Village deputy mayor. The cited testimony does not support the purported statement of fact. Savad Decl. Ex. 17 (N. Sanderson Tr.) 6:23-7:4.**

271.      During the campaign Marshall, Sanderson and Lamer voted in favor of Local Law No. 1 of 2007 and in favor of the resolution to ask Congress to revisit RLUIPA. Savad Decl. Ex. 315; Savad Decl. Ex. 17 (N. Sanderson Tr.) 152:21-153:23; Savad Decl. Ex. 5 (Lamer Tr.) 83:23-87:20; Savad Decl. **Ex. 228**; Savad Decl. **Ex. 229**; Savad Decl. Ex. 3 (Marshall Tr.) 171:12-174:19; Savad Decl. Ex. 77; Savad Decl. Ex. 7 (Roman Tr.) 63:13-65:5; Savad Decl. Ex. 334; Savad Decl. Ex. 309 (Answer) ¶ 207; Savad Decl. Ex. 310 (Request for Admissions) Response ¶ 122.

**RESPONSE:**

**Admitted in part; Disputed in part. Disputed to the extent that Savad Decl. Ex. 334 is not a citation to the record as there is no Savad Decl. Ex. 334. Further disputed that Local Law No. 1 of 2007 was a part of the campaign. Nothing in the cited testimony supports this notion. *See* Savad Decl. Ex. 315; Savad Decl. Ex. 17 (N. Sanderson Tr.) 152:21-153:23; Savad Decl. Ex. 5 (Lamer Tr.) 83:23-87:20; Savad Decl. Ex. 228; Savad Decl. Ex. 229; Savad Decl. Ex. 3 (Marshall Tr.) 171:12-174:19; Savad Decl. Ex. 77; Savad Decl. Ex. 7 (Roman Tr.) 63:13-65:5; Savad Decl. Ex. 334; Savad Decl. Ex. 309 (Answer) ¶ 207; Savad Decl. Ex. 310 (Request for Admissions) Response ¶ 122. Otherwise, admitted.**

272.      During the campaign Marshall, Sanderson and Lamer held hearings regarding Local Law No. 5 of 2007 and in the month following the election, Sanderson, Yagel and Louie voted in favor of Local Law No. 5 of 2007. Savad Decl. **Ex. 155**.

**RESPONSE:**

**Admitted in part; Disputed in part. Disputed to the extent that Savad Decl. Ex. 155 does not support the purported statement of fact. Further disputed that Marshall, Nicholas Sanderson, and Alan Lamer held hearings individually, as the Village held hearings.**

273.    Tartikov was a significant issue for Village residents during the campaign time from January, 2007 through March, 2007. Savad Decl. Ex. 4 (B. Yagel Tr.) 34:3-11; 138:6-13; Savad Decl. Ex. 94; Savad Decl. Ex. 9 (Louie Tr.) 54:20-55:9; 76:19-22 ; 100:17-103:3.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 273 over the objection, <u>admitted</u> that Tartikov's stated intentions to develop the property was a significant issue during the campaign time from January 2007 to March 2007.**

274.    Sanderson, Yagel and Louie's campaign materials stated that "the single most important issue facing the Village is clearly the Tartikov development. We will vigorously defend our land use codes and regulations." Savad Decl. Ex. 4 (B. Yagel Tr.) 105:2-106:14; Savad Decl. Ex. 88; Savad Decl. Ex. 9 (Louie Tr.) 127:18-128:10; 235:16-21;  Savad Decl. Ex. 133.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 274 over the objection, <u>admitted.</u>**

275.    Sanderson, Yagel and Louie's campaign materials mention Tartikov by name and promise to "stand up to the threat." Savad Decl. **Ex. 17** (N. Sanderson Tr.) 125:12-19; 133:2-134:5; 138:23-139:15;  Savad Decl. **Ex. 215;** Savad Decl. **Ex. 218;** Savad Decl. **Ex. 220.**

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 275 over the objection, <u>admitted in part; disputed in part.</u> Admitted that the campaign materials mention Tartikov. Further admitted that the campaign materials contain the quoted language "stand up to the threat." Disputed that the two notations are related. Further disputed to the extent that Paragraph 275 is an incomplete statement taken out of context. The campaign materials state: "You need to vote for a team that is prepared to stand up to this threat of using the fundamentally unfair RLUIPA statute as a hammer against our village." The materials qualify this statement by noting that their**

understanding of Tartikov's stated plan to develop the property is limited to what has been leaked to the public. Savad Decl. **Ex. 215.**

276.     Sanderson, Yagel and Louie's campaign message to constituents was that they would fight the rabbinical college. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 133:7-15.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 276 over the objection, **admitted.**

277.     While running for office, Trustee Sanderson met with hundreds of Village residents who stated their concerns and opposition to Tartikov. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 124:11-20; Savad Decl. Ex. 4 (B. Yagel Tr.) 144:13-21.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 277 over the objection, **admitted in part; disputed in part.** Admitted that Nicholas Sanderson testified that he met with hundreds of village residents. Disputed that the residents stated their concern and opposition to Tartikov. The cited testimony does not support the purported statement of fact. Village residents stated their concern *about what they perceived to be a huge multi-family building development in the Village.* Savad Decl. Ex. 17 (N. Sanderson Tr.) 124:14-18.

278.     Nicholas Sanderson believes that he, Yagel and Louie won the election because they seemed to satisfy the village residents regarding Tartikov. Savad Decl. **Ex. 221.**

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 278 over the objection, **disputed.** The cited testimony does not support the purported statement of fact. Savad Decl. Ex. 221.

279.        Trustee Sanderson submitted a campaign video to the Journal News which stated "[g]ood morning. My name is Nick Sanderson. I'm currently deputy mayor of the village and I'm running for election as mayor. I've been trustee for nine years and before that I spent two years on the village planning board. This election is critical for the village. We are facing a huge proposed, or as yet unproposed, development that has been leaked, but could completely change the village and the make-up of the village. We need a strong leader as mayor and chief executive officer of the village. I believe that my passion for the village, my experience in village government, my experience in running my own company for the last 30 years will help this village and allow this village to fight this proposed development. Thank you." Savad Decl. **Ex. 17** (N. Sanderson Tr.) 125:24-128:25; Savad Decl. **Ex. 216**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 279 over the objection, <u>admitted.</u>**


280.        Brett Yagel submitted an election video submitted to the Journal News which stated "[m]ost importantly I want to unite the Village residents so that we can stand  together and legally fight the development that is being planned." Savad Decl. Ex. 4 (B. Yagel Tr.) 111:19-113:5; 134:22-135:15; Savad Decl. Ex. 89; Savad Decl. Ex. 93.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 280 over the objection, <u>admitted in part; disputed in part.</u>  Disputed to the extent that the quoted language in Paragraph 280 is an incomplete statement taken out of context.  Brett Yagel stated: "Most importantly, I want to unite the village residents so that we can stand together and legally fight the development that is being planned *and to ensure that our zoning is enforced.*" (emphasis added) Savad Decl. Ex. 89.**


281.        Candidate Louie sent an e-mail to Sanderson and Yagel on March 17, 2007 proposing language for an e-mail blast stating that they will be able to "defeat any developers who plan to take over our village and our area" and they "have the plan, the experience, the knowledge, the legal counsel and the guts." Savad Decl. Ex. 9 (Louie Tr.) 114:15-115:17; Savad Decl. Ex. 132.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 281 over the objection, admitted in part; disputed in part. Disputed to the extent this statement implies that Rita Louie, Nicholas Sanderson, and Brett Yagel had a plan. Ms. Louie stated that even though the email she wrote stated the above quote, they did not have a plan, and that this was "campaign speak." Savad Decl. Ex. 9 (Louie Tr.) 115:19-116:12.**

282.    Sanderson, Yagel and Louie publicized to the community that they had hired Marci Hamilton to help them to fight RLUIPA. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 96:22-97:13; Savad Decl. **Ex. 207.**

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 282 over the objection, disputed. The cited testimony does not support the purported statement of fact. The campaign endorsement cited does not support the assertion that Nicholas Sanderson, Brett Yagel, and Rita Louie hired a constitutional attorney to "fight RLUIPA." Defendants note that "Marci Hamilton" is not referenced in the cited testimony. *See* Savad Decl. Ex. 17 (N. Sanderson Tr.) 96:22-97:13; Savad Decl. Ex. 207.**

283.    Sanderson, Yagel and Louie believed that it was important to tell the public that they hired counsel to educate them on RLUIPA so the public would know that they shared their concerns. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 175:19-177:16; Savad Decl. Ex. 4 (B. Yagel Tr.) 78:12-79:5; 79:24-80:3.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 283 over the objection, admitted.**

284.    Trustee Sanderson publicly stated that the Village should "maintain[] its cultural and religious diversity" Savad Decl. Ex. 310 (Request for Admission) Response No. 106.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 284 over the objection, <u>admitted.</u>

285.     Sanderson, Yagel and Louie's campaign Placards promised to "fight" for Pomona. Savad Decl. Ex. 4 (B. Yagel Tr.) 141:18-142:11; Savad Decl. Ex. 95.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 285 over the objection, <u>admitted in part; disputed in part.</u> Disputed to the extent that the quoted language in Paragraph 285 is an incomplete statement taken out of context. The campaign placard states: "Fighting for the Future of Pomona." Savad Decl. Ex. 95.

286.     Nicholas Sanderson has no disagreement with Preserve Ramapo's election endorsement that he, Yagel and Louie will "fight" Tartikov. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 96:11-21.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 286 over the objection, <u>admitted in part; disputed in part</u>. Disputed to the extent that the quoted language in Paragraph 286 is an incomplete statement taken out of context. Preserve Ramapo's election endorsement did not state that Nicholas Sanderson, Brett Yagel, and Rita Louie would "fight" *Tartikov.* The referenced paragraph states in relevant part: "[T]hey will continue the fight to protect our entire community," and "I know they will FIGHT. They have not waited for the election season to arrive before declaring their support for a struggle that involves all of Ramapo." Mr. Sanderson stated that he believes this endorsement was rather vague, but he does not disagree with it. Savad Decl. Ex. 17 (N. Sanderson Tr.) 96:11-21; Savad Decl. Ex. 207.

287.     Sanderson, Yagel and Louie promised to create a legal defense fund that would grow over time in order to fight Tartikov ("this development"). Savad Decl. Ex. 4 (B. Yagel Tr.) 130:7-12; Savad Decl. Ex. 91.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statements contained in Paragraph 287 over the objection, admitted in part; disputed in part. Disputed that they promised to create a legal defense fund that would grow over time in order to *fight Tartikov*. They stated: "Here are some goals that we intend to accomplish ... We will ... Be proactive in creating a Legal Defense Fund that will grow in the year prior to major expenses being incurred fighting development that is not in accordance with our zoning." Savad Decl. Ex. 91.**

288.     Sanderson, Louie and Yagel ran on platform opposed to the development of Tartikov; but they admit they had no knowledge regarding its plans and their opposition was just conjecture that Tartikov would be bad for the environment; Louie admitted that she made judgments against the rabbinical college even though she did not know any specifics of its proposal other than what she heard from the rumor mill which formed the basis of her belief that they should campaign in opposition to the project. Savad Decl. Ex. 9 (Louie Tr.) 119:24-121:9; 121:17-25; 123:18-124:25; Savad Decl. Ex.133. B. Yagel admits that he did not know that there were real environmental problems with Tartikov's proposed use as stated in Sanderson, Yagel and Louie's campaign literature. Savad Decl. Ex. 4 (B Yagel Tr.) 121:20-22; Savad Decl. Ex. 90. Sanderson admits that the campaign statement that Tartikov would have "real environmental and safety concerns" was based on rumors, the sketches disseminated in January, 2007 by Preserve Ramapo and talking to hundreds of Village residents. Savad Decl. **Ex. 17** (N Sanderson Tr.) 129:15-130:3; 132:7-21; Savad Decl. **Ex. 217.**

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).

**To the extent the Court chooses to consider the statements contained in Paragraph 288 over the objection:**

**As to sentence one, admitted in part; disputed in part. Rita Louie stated they had knowledge of leaked plans and rumors of what Tartikov stated it intended to develop on the property. Further disputed that Ms. Louie made judgments against the rabbinical**

college. She believed that based on rumors of the plan for the rabbinical college leaked to the public, there was the potential for environmental and safety problems. The cited testimony does not support the purported statement of fact. Savad Decl. Ex. 9 (Louie Tr.) 119:24-121:25, 121:17-25, 123:18-124:25.

As to sentence two, admitted.

As to sentence three, admitted in part; disputed in part. Disputed to the extent that the quoted language in sentence three of Paragraph 288 is an incomplete statement taken out of context. Nicholas Sanderson did not say *Tartikov* would have real environmental and safety concerns. He stated: "what we know of the *plan* as it has been leaked to the public, it will have real environmental and safety problems." Savad Decl. Ex. 217.


More Comments Against Tartikov or Hasidic/ Orthodox Jews by Village Trustees and Employees


289.     Brett Yagel and Rita Louie spoke about "homogenous individuals." They were referring to Hasidic/ Orthodox Jews and that it would not be a natural progression for such "homogenous individuals" to move to Pomona. Savad Decl. Ex. 9 (Louie Tr.) 258:22-259:13; Savad Decl. **Ex. 14**9 Savad Decl. **Ex. 15**0; Savad Decl. Ex. 8 (L. Yagel Tr.) 146:24-147:12; 147:19-148:4; Savad Decl. **Ex. 174**.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 289 over the objection, admitted in part; disputed in part. Admitted that Brett Yagel and Rita Louie participated in writing a letter that refers to "homogenous individuals." Defendants dispute the mischaracterization that the term "homogenous individuals" refers exclusively to Orthodox/Hasidic Jews. The letter states: "To say that a virtual mini-city within the village – that will house thousands of homogenous individuals who can control village elections – is 'natural' in any way is simply not true." Savad Decl. Ex. 150. Further disputed to the extent that Savad Decl. Ex. 174 does not support the purported statement of fact.


290.     Trustee Nicholas Sanderson said that it sounded "ominous" to him that Yeshiva Spring Valley withdrew its application when the Patrick Farm property changed hands. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 62:11-63:7; Savad Decl. Ex.198.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 290 over the objection, **admitted.** Defendants note that Nicholas Sanderson stated that he does not know what he meant by use of the term "ominous." Savad Decl. Ex. 17 (N. Sanderson Tr.) 63:3-7.

291.      Trustee Nicholas Sanderson referred to triangle of 306/ 202 (the Tartikov Property) as being used for something useful when signs were posted on the property opposing down zoning. Savad Decl. Ex. 17 (N. Sanderson Tr.) 97:18-98:17; Savad Decl. Ex. 208.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 291 over the objection, **admitted.**

292.      Village Clerk Leslie Sanderson "prefer[s] Pomona to stay the way it is." Savad Decl. Ex. 11 (L. Sanderson Tr.) 159:11-15.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 292 over the objection, **admitted in part; disputed in part.** Disputed to the extent that Paragraph 292 is an incomplete statement taken out of context. Defendants note that Leslie Sanderson's statement is in reference to her passion of preserving some few spaces left that are open and treed. Savad Decl. Ex. 11 (L. Sanderson Tr.) 159:11-22.

293.      Village Clerk Leslie Sanderson believes that there are "so many threats around us." Savad Decl. Ex. 11 (L. Sanderson Tr.) 238:19-239:19.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 293 over the objection, **admitted in part; disputed in part.** Disputed to the extent that Paragraph 293 is an incomplete statement taken out of context. Defendants note that Leslie Sanderson stated that the "threats around us" were the Burgess Meredith property, the children's disabled school, and Patrick Farm. Savad Decl. Ex. 11 (L. Sanderson Tr.) 238:25-239:6.

294.     Sanderson, Yagel and Louie campaigned to "keep Pomona Pomona"meaning "keep Pomona the village that it is and not change it." Savad Decl. Ex. 9 (Louie Tr.) 156:2-18; Savad Decl. Ex. 136.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 294 over the objection, **admitted in part; disputed in part.** Admitted that Rita Louie stated that the campaign slogan "fighting for the future of Pomona," meant to her to "keep Pomona Pomona," which meant to her to "keep Pomona the village that it is and not change it." Otherwise, disputed. Savad Decl. Ex. 9 (Louie Tr.) 156:2-18.

295.     Village Clerk Leslie Sanderson is opposed to the Orthodox/ Hasidic "bloc vote." Savad Decl. Ex. 11 (L. Sanderson Tr.) 124:13-125:3; 155:22-156:22; Savad Decl. **Ex. 15**8.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 295 over the objection, **disputed.** Leslie Sanderson did not say she is *opposed* to the Orthodox/Hasidic bloc vote. She said she agreed with the sentiment that a bloc vote *has enormous political clout.* Further disputed to the extent that Savad Decl. Ex. 158 does not support the purported statement of fact. Savad Decl. Ex. 11 (L. Sanderson Tr.) 124:13-125:3, 155:22-156:22; Savad Decl. Ex. 158.

296.     Planning Board Chair Melvin Cook has stated that the increased number of Orthodox/ Hasidic Jews has hurt the community. Savad Decl. Ex. 1 (Cook Tr.) 79:14-80:6.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the factual proposition contained in Paragraph 296 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 296 over the objection, <u>admitted in part; disputed in part.</u>  Disputed to the extent that Paragraph 296 is an incomplete statement taken out of context.  Mr. Cook stated that the increased number of Orthodox/Hasidic Jews has hurt the community by adversely affecting the school systems in Ramapo and by causing Ramapo to become less diverse. Savad Decl. Ex. 1 (Cook Tr.) 79:14-81:4.**

<u>Village Officials and Employees Voiced Their Desire for Pomona to Maintain its Diversity</u>

297.      Sanderson, Yagel and Louie campaigned on a platform of maintaining Pomona's diversity.  Savad Decl. Ex. 4 (B. Yagel Tr.) 132:8-133:21; Savad Decl. Ex. 92.

**RESPONSE:**

**<u>Objection:</u>  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 297 over the objection, <u>admitted.</u>**

298.      Regarding Tartikov, R. Louie stated that "[i]t's a little unsettling what's going on, but we are sure we can maintain our zoning laws in Pomona and keep our neighborhood rural and diverse." Savad Decl. Ex. 9 (Louie Tr.) 221:4-226:12; Savad Decl. **Ex. 145.**

**RESPONSE:**

**<u>Objection:</u>  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 298 over the objection, <u>disputed.</u>  Disputed to the extent that Paragraph 298 is an incomplete statement taken out of context.  Rita Louie did not make this statement in reference to *Tartikov,* but rather the onslaught of development that was going on in other areas. Further, this statement was made to reassure a resident of the Village that Pomona was going to maintain zoning laws and keep the neighborhoods rural and diverse.  Savad Decl. Ex. 9 (Louie Tr.) 223:20-225:7; Savad Decl. Ex. 145.**

299.     N. Sanderson publicly stated that the Village should "maintain[] its cultural and religious diversity."  Savad Decl. Ex. 310 Response No. 106.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 299 over the objection, admitted.**

300.     In her campaign material, Rita Louie claimed that "the Village of Pomona is a cultural, ethnic and religious model of diversity."  Savad Decl. Ex. 9 (Louie Tr.) 136:17-137:19; Savad Decl. Ex.134.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 300 over the objection, admitted.**

301.     However, Rita Louie has admitted that there are no Hasidic Jews in the Village of Pomona, that she knows of.  Savad Decl. Ex. 9 (Louie Tr.) 137:20-25; 228:17-21.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 301 over the objection, admitted in part; disputed in part.  Rita Louie stated there *possibly* are Hasidic Jews in the Village, but she does not know of any.  She did, however, state that there are Orthodox and Reform Jews living in the Village.  Savad Decl. Ex. 9 (Louie Tr.) 137:20-138:8; (Plaintiff's Rule 56.1 Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment, ¶ 49, fn 1)**

302.     There are some Orthodox Jews in the Village, but Village officials and employees are not aware of any Hasidic Jews who live in the Village.  Savad Decl. Ex. 11 (L. Sanderson

Tr.) 201:5-202:17; 227:3-5; Savad Decl. **Ex. 23** (Ulman Tr.) 25:9-21; Savad Decl. **Ex. 12**
(Defendants' 30(b)(6) Day 1 Tr.) 111:5-115:17.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 302
over the objection, <u>admitted in part; disputed in part.</u> Ms. Ulman stated that there *may be*
Hasidic Jews in Pomona. Otherwise, admitted. Savad Decl. Ex. 23 (Ulman Tr.) 25:9-21;
(Plaintiff's Rule 56.1 Statement of Material Facts in Support of Plaintiffs' Motion for
Summary Judgment, ¶ 49, fn 1)**

303.      Leslie Sanderson says that the Village is diverse, but admits that there are no
Hasidic Jews who live in the Village.  Savad Decl. Ex. 11 (L. Sanderson Tr.) 226:16-227:5.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 303
over the objection, <u>admitted in part; disputed in part.</u>  Admitted that Leslie Sanderson
stated that there are no Hasidic Jews who live in the Village because "they hadn't moved
there." Defendants note, however, that Ms. Sanderson testified that Orthodox Jews live in
the Village.  Savad Decl. Ex. 11 (L. Sanderson Tr.) 226:16-227:5; (Plaintiff's Rule 56.1
Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment, ¶ 49,
fn 1)**

304.      Village resident Lynn Yagel believes that the Village is diverse, but does not
believe that there are any Hasidic residents of the Village.  Savad Decl. Ex. 8 (L. Yagel Tr.)
69:21-70:15; 122:17-123:17; 124:4-125:7; 153:15-154:7.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 304
over the objection, <u>admitted in part; disputed in part.</u> Disputed that Lynn Yagel believes
there are no Hasidic residents in Pomona. Ms. Yagel testified that she does not know the
distinction between Orthodox and Hasidic Jews, and that she does not know whether there
are Hasidic Jews in the Village. Defendants note, however, that Ms. Yagel testified that she**

**thinks Orthodox Jews live in the Village.  Savad Decl. Ex. 8 (L. Yagel Tr.) 123:15-124:3;
(Plaintiff's Rule 56.1 Statement of Material Facts in Support of Plaintiffs' Motion for
Summary Judgment, ¶ 49, fn 1)**

305.     Village Clerk Leslie Sanderson believes that the Village would not be diverse if
the ratio of people coming in is much greater than the people already living in the village.  Savad
Decl. Ex. 11 (L. Sanderson Tr.) 200:9-25.

**<u>RESPONSE:</u>**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 305
over the objection, <u>admitted in part; disputed in part</u>.  Admitted that Leslie Sanderson
stated: "[i]f people coming in – if the ratio is *so much greater* than the people already living
there it wouldn't be diverse anymore. (emphasis added)"  Defendants note that Ms.
Sanderson also stated that she is "all for diversity," and that she only knew *rumors* about
how many people would plan to live at the Property.  Defendants also note that Ms.
Sanderson did not know how many Orthodox Jews or Hasidic Jews lived in Pomona.
Savad Decl. Ex. 11 (L. Sanderson Tr.) 200:13-24, 201:5 –202:14.**

306.     Village Clerk Leslie Sanderson believes that Tartikov would "usurp the Village,
perhaps the Village Board."  Savad Decl. Ex. 11 (L Sanderson Tr.) 200:15-16.

**<u>RESPONSE:</u>**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 306
over the objection, <u>admitted in part; disputed in part</u>.  Admitted that Leslie Sanderson
made the statement quoted in Paragraph 306.  Disputed to the extent that the quoted
language is an incomplete statement taken out of context.  Defendants note that  "the
rumors were rampant as to how many people it would be.  I felt that if that were true it
would usurp the Village, perhaps the Village Board and the amount of people that live
there.  And I'm all for diversity as well."  Savad Decl. Ex. 11 (L. Sanderson Tr.) 200:13-18.**

307.     Rita Louie sent an e-mail to a Village resident stating that she wanted to keep the
Village diverse because she wanted to "maintain[] the demographic makeup of the village the
way it is."  Savad Decl. Ex. 9 (Louie Tr.) 226:13-227:4; Savad Decl. **Ex. 145**.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 307 over the objection, <u>admitted in part; disputed in part.</u> Disputed to the extent that the quoted language is an incomplete statement taken out of context. Rita Louie testified that her email stating "But we are sure we can maintain our zoning in Pomona and keep our neighborhood rural and diverse" meant to her "Maintaining the demographic makeup of the village the way it is.  Accepting all people in all areas of the village." Savad Decl. Ex. 9 (Louie Tr.) 226:13-20.**

308.    There are no Jewish culture events at the Village Cultural Center, but there are other cultures that sponsor events there. Savad Decl. Ex. 9 (Louie Tr.) 139:12-140:4.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 308 over the objection, <u>admitted in part; disputed in part</u>. No Jewish events have been held at the Village Cultural Center because *no religious events of any religion* have been held at the cultural center.  No other cultures sponsor events there because all events are sponsored by the Village. Savad Decl. Ex. 9 (Louie Tr.) 139:21-25, 140:2-4.**

The Village "Good Neighbor" Policies Favored Village Residents

309.    The Village published its "Good Neighbor" policy in the Village Green in March 2004, stating that it was aimed at things that are "oppositional to the character and nature of the Village." Savad Decl. **Ex. 297**.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 309 over the objection, <u>admitted in part; disputed in part.</u> Disputed to the extent that the quoted language is an incomplete statement taken out of context. The "Good Neighbor" policy is not limited to the above statement.  It further states in relevant part: "As a general**

rule, if the effect of any action or project has potentially adverse implications for any member of the community, or is oppositional to the character and nature of the village, it will be severely restricted or fully prohibited." Further, this policy states that it is meant to "help protect the quality of life that we have come to expect in our village." Savad Decl. Ex. 297.

310.     Local Law No. 1 of 2001 was designed to protect the surrounding neighborhoods from non-residential use. Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 375:18-376:3; 377:23-25; 440:2-14.

**RESPONSE:**

**Admitted in part; Disputed in part. Disputed that Local Law No. 1 of 2001 was designed to protect the surrounding neighborhoods from *non-residential use*. It was designed to protect the surrounding residential neighborhoods from the non-residential *school* use. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 374:12-17, 375:18-376:3, 377:23-25, 440:2-14.**

311.     The Village exempted those homes already built at the time Local Law No.5 of 2007 was passed from portions of the Wetlands Law. Transcript of the 30(b)(6) Deposition of the Village and Board ("Defendants' 30(b)(6) Day 3 Tr.") attached as Exhibit 14 to the Savad Declaration pages 564:21-565:4.

**RESPONSE:**

**Admitted in part; Disputed in part. Disputed that the cited material supports the statement that the Village exempted those homes already built at the time Local Law No. 5 of 2007 was passed from *portions* of the Wetlands Law. Admitted that lots with single-family homes were exempted from the 100-foot buffer requirement under this law. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 563:21-564:4.**

312.     In 2004, the Village adopted a resolution chiding public officials who place politics of special interest groups above others; Village Attorney Doris Ulman stated that the special interest group could refer to the Orthodox/ Hasidic Jewish bloc vote. Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4 Tr.) 976:13-979:20; Savad Decl. **Ex. 179**.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

To the extent the Court chooses to consider the statements contained in Paragraph 312 over the objection, <u>admitted in part; disputed in part.</u> Defendants dispute Plaintiffs' argumentative characterization that the Village adopted a resolution *chiding* public officials. The resolution states in relevant part: "Further, the Board of Trustees opposes in the strongest possible terms any public officials who abdicate their responsibility of office by placing the politics of special interest groups and individual developers ahead of the best interest of the people they are committed to serve." Further disputed to the extent it is taken out of context. Defendants note that the resolution relates to the development and construction of the sand and gravel pit on a property on Route 202, a portion of which is in the Town of Haverstraw. Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 977:25-978:13; Savad Decl. Ex. 179.

General Anti- Orthodox/Hasidic Sentiment in the Surrounding Community

313.    A community activist who was trying to form a new village ("called Ladentown") in order to prevent Patrick Farm from becoming adult student family housing for Hasidic/ Orthodox Jews, described the area near Patrick Farm as "like a snake pit";   Village resident Lynn Yagel has heard similar sentiments from others. Savad Decl. Ex. 8 (L Yagel Tr.) 72:23-73:21; Savad Decl. **Ex. 125**.

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 313 over the objection, <u>admitted in part; disputed in part</u>. The cited testimony does not support the purported statement of fact. The cited material supports the statement that this community activist was trying to form a new village *in order to prevent Patrick Farms from becoming adult student family housing for Hasidic/Orthodox Jews.* This activist wanted for form a new village to better control growth in Ramapo. Savad Decl. **Ex. 125**.

314.    There is distrust between the Orthodox/ Hasidic community and non-Orthodox/ Hasidic community.   Savad Decl. **Ex. 21** (Castelluccio Tr.)  64:10-67:22.

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

**To the extent the Court chooses to consider the statements contained in Paragraph 314 over the objection, <u>disputed</u>. Disputed as to the context of the statements. The cited testimony is taken out of context as it relates to tax exemptions. Savad Decl. Ex. 21 (Castelluccio Tr.) 64:10-67:22.**

<u>Village Officials and Employees Publicly Declared Their Intention to Thwart Tartikov's Attempt to Have Its Plan Approved</u>

315.     Trustee Sanderson told the Rockland County Journal News just before the March, 2007 election: "I have a vision for the Village of Pomona. The year is 2011, during the last village board meeting before the village election. Mayor Sanderson addresses the 50 or 60 attendees. During the open period, a resident thanks the board for opening Village Hall for the drivers education course. He not only saved 10 percent on his insurance, but did not have to go to Nyack to take it. Next is a report on Tartikov development. The State Environmental Quality Review Act process is almost finished. The village board will soon receive the application to make a decision on granting a special permit for the huge development, or deny it. The board knows that if it is denied, a Religious Land Use and Institutional Persons Act lawsuit will follow. Fortunately, the board has had a strong legal team in place for the last four years and is well prepared to fight for the village. Then comes the village treasurer's reports that is expenditures and receipts are in line with the village plan, with no items over budget. A resident asks if taxes will be going up this year. She replies that the legal defense fund created four years ago is almost $1 million, ahead of target, so no tax increase is foreseen. There is a murmur (sic) from the appreciative audience. My vision does not include a gavel. Please vote for me on Tuesday so that my vision, and much more that I have planned for the village, can come true." Savad Decl. **Ex. 17** (N. Sanderson Tr.) 198:4-200:03; Savad Decl. **Ex. 247**.

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 315 over the objection, <u>admitted.</u>**

316.     Mayor Sanderson stated at an April 4, 2007 Pomona Civic Association Meeting which was also attended by Trustees Louie and Yagel that with respect to Tartikov, the Village has the "gift of time" and he will recommend that the Village start putting away money for future legal fees. Savad Decl. **Ex. 239** ¶6; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 174:17-175:4.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 316 over the objection, **admitted in part; disputed in part.** Disputed to the extent Nicholas Sanderson does not recall whether he made this statement, but notes he could have, and does not disagree with what Ms. Kraemer states in paragraph 6 of her affidavit. **Savad Decl. Ex. 17 (N. Sanderson Tr.) 174:17-175:4; Savad Decl. Ex. 239**

317.     Yeshiva Spring Valley experienced a delay from the Village during its presentations regarding its intention to build a yeshiva within the Village.  Savad Decl. Ex. 33 (Fromowitz Tr.) 112:2-23.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statements contained in Paragraph 317 over the objection, **disputed.** The cited testimony does not support the purported statement of fact. Defendants note that there is no reference to presentations by Yeshiva Spring Valley. Savad Decl. Ex. 33 (Fromowitz Tr.) 112:2-23.

<u>The Village Acted in Opposition to Yeshiva Spring Valley.</u>

318.     Yeshiva Spring Valley wanted to build a yeshiva on the Property.  However, the Village caused delay while it amended its laws regarding schools.     Savad Decl. Ex. 33 (Fromowitz Tr.) 62:9-15.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statements contained in Paragraph 318 over the objection, **admitted in part; disputed in part.** The cited testimony does not support the purported statement of fact. The cited material does not support the statement that the Village caused delay while it amended its zoning laws regarding schools. Admitted that Rabbi Fromowitz stated his belief and opinion regarding such. Savad Decl. Ex. 33 (Fromowitz Tr.) 62:9-15.

319.     Village residents opposed the Yeshiva Spring Valley project.   Savad Decl. Ex. 33 (Fromowitz Tr.) 84:15-85:5; 86:3-87:2; Savad Decl. Ex. 69.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants further object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 319 over the objection, <u>disputed.</u>  The cited testimony does not support the purported statement of fact.  Rabbi Fromowitz believed that there was opposition, but he also states that during the public hearing on Yeshiva Spring Valley's application for subdivision, he does not recall any negative comments from the public or Village officials.  Further disputed to the extent that Savad Decl. Ex. 69 does not support the purported statement of fact.  Savad Decl. Ex. 33 (Fromowitz Tr.) 83:16-85:8.**


320.     Rabbi Fromowitz, Yeshiva Spring Valley's executive director, had the feeling that the Village was challenging the project. Savad Decl. Ex. 33 (Fromowitz Tr.) 87:3-89:7.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants further object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 320 over the objection, <u>admitted.</u>**


321.     It was evident to Rabbi Fromowitz that Yeshiva Spring Valley would have to wait until Local Law No. 1 of 2007 was passed before his project could go forward in the Village. Savad Decl. Ex. 33 (Fromowitz Tr.) 43:11-44:3.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants further object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 321 over the objection, <u>admitted.</u>**


<u>Upon Discovery of Tartikov's Plans, the Village Acted in Opposition to Its Request for Tax Exemptions</u>

322. The Village approved Tartikov's tax exemption applications in 2005 and 2006. Savad Decl. Ex. 310 (Request to Admit) Response No. 92.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 322 over the objection, admitted.**

323. Then in 2007, the Village denied Tartikov's tax exemption after Paul Savad spoke about Tartikov's plans at the Village Board meeting in January, 2007. Nothing changed on the property in between these times. Savad Decl. Ex. 310 (Request to Admit) Response No. 91.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 322 over the objection, admitted in part; disputed in part. The cited testimony does not support the purported statement of fact. Admitted that the Village denied Plaintiffs' application for tax exemption for the Subject Property in 2007. Otherwise, disputed. *See* Savad Decl. Ex. 310 (Request to Admit) Response No. 91.**

324. The Village employed the same pattern with Yeshiva Spring Valley. The Village approved Yeshiva Spring Valley's applications for exemption from 1999 through 2003. However, in 2004, when Yeshiva Spring Valley was complaining that it was unable to get approval on its application to build the yeshiva, the Village denied Yeshiva Spring Valley's tax exempt application. Savad Decl. Ex. 310 (Request to Admit) Response Nos. 81-82.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants further object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a). Defendants further object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 324 over the objection:**

**As to sentence one, <u>disputed</u>. Defendants dispute Plaintiffs' argumentative characterization that the Village employed any "pattern." *See* Savad Decl. Ex. 310 (Request to Admit) Response Nos. 81-82.**

**As to sentence two, <u>admitted</u> that the Village granted Yeshiva Spring Valley's application for tax exemption for the Subject Property from 1999 through 2003.**

**As to sentence three, <u>admitted in part; disputed in part</u>. Admitted that the Village denied Yeshiva Spring Valley's application for tax exemption for the Subject Property in 2004. Otherwise, disputed. The cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 310 (Request to Admit) Response Nos. 81-82.**

325.     In July 2007, Robert Prol conducted an investigation and posted on-line that there are too many tax exempt properties, and most are of the Jewish faith.   Savad Decl. Ex. 2 (Prol Tr.) 145:3-147:7; Savad Decl. Ex. 60.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 325 over the objection, <u>admitted in part; disputed in part</u>. Defendants dispute Plaintiffs' argumentative characterization that Robert Prol conducted an "investigation." Mr. Prol testified that he conducted research. Further disputed to the extent that Savad Decl. Ex. 60 does not support the purported statement of fact. Savad Decl. Ex. 2 (Prol Tr.) 145:3-147:7.**

326.     Melvin Cook met with the Village assessor in order to oppose Tartikov's tax exemption application. Savad Decl. Ex. 1 (Cook Tr.) 72:6-73:20; 128:20-129:4; 154:4-22; Savad Decl. Ex. 49; Savad Decl. Ex. 50. This was the only time he went to the assessor regarding a property. Savad Decl. Ex. 1 (Cook Tr.) 74:11-21.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the factual proposition contained in Paragraph 326 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

To the extent the Court chooses to consider the statements contained in Paragraph 326 over the objection, <u>admitted in part; disputed in part</u>. Admitted that Mr. Cook met with the Village assessor and that this was the only time he went to the assessor regarding a property. Defendants dispute Plaintiffs' argumentative characterization that Mr. Cook met the Village assessor in order to "oppose" Tartikov's tax exemption application. Mr. Cook testified that he met with the tax assessor to inform him of his research, which indicated that Tartikov was not a 501(c)(3) organization and should not be getting a tax exemption. Savad Decl. Ex. 1 (Cook Tr.) 73:2-15.

327.     Melvin Cook also wrote to the Department of Treasury about Tartikov's tax exemption request. Savad Decl. Ex. 1 (Cook Tr.) 126:21-127:13.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object to the factual proposition contained in Paragraph 327 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.

To the extent the Court chooses to consider the statements contained in Paragraph 327 over the objection, <u>admitted</u>. Defendants note that Mr. Cook also testified that he wrote to the Department of Treasury to confirm that Tartikov was not tax exempt. Savad Decl. Ex. 1 (Cook Tr.) 127:5-13.

328.     Melvin Cook also wrote to the Rockland County Journal News opposing the tax exemption. Savad Decl. Ex. 1 (Cook Tr.) 93:3-94:10; Savad Decl. Ex. 41; Savad Decl. Ex. 44.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object to the factual proposition contained in Paragraph 328 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.

To the extent the Court chooses to consider the statements contained in Paragraph 328 over the objection, <u>admitted in part; disputed in part</u>. Admitted that Mr. Cook wrote to

the Journal regarding questions about Tartikov's tax-exempt status and the number of tax-exempt organizations in Ramapo.  Defendants dispute Plaintiffs' argumentative characterization that Mr. Cook wrote to the Journal "opposing" Tartikov's tax exemption. *See* Savad Decl. Ex. 1 (Cook Tr.) 93:3-94:10; Savad Decl. Ex. 41; Savad Decl. Ex. 44.

329.    Melvin Cook reported about his investigation, opposition, and assessor meetings regarding Tartikov to Mayor Sanderson.  Savad Decl. Ex. 1 (Cook Tr.) 85:20; 87:21-88:16; 116:21-119:15; 127:14-128:2; Savad Decl. Ex. 40; Savad Decl. Ex. 45; Savad Decl. Ex. 48

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the factual proposition contained in Paragraph 329 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 329 over the objection, <u>admitted in part; disputed in part</u>.  Defendants dispute Plaintiffs' argumentative characterization that Robert Prol "reported" to Nicholas Sanderson.  Mr. Cook testified that he carbon copied Mr. Sanderson on an email because "I just thought he should know what I was doing."  Savad Decl. Ex. 1 (Cook Tr.) 88:4-10**

330.    Mayor Sanderson "applauded" Cook's investigation and stated that it was "good news" that Ramapo denied the tax exemption for Tartikov. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 81:18-82:11; 104:10-105:14; Savad Decl. **Ex. 202;** Savad Decl. **Ex. 21**0.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the factual proposition contained in Paragraph 330 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 330 over the objection, <u>admitted</u>.  Defendants note that Nicholas Sanderson's email also states: "You are right - we need to be much more pro-active in fighting this urbanization of our village and the surrounding areas."  Savad Decl. Ex. 210**

<u>Village Officials and Employees Worked with Preserve Ramapo to Oppose Tartikov and Other<br>Orthodox/ Hasidic Projects</u>

331.       Preserve Ramapo was opposed to Tartikov as it understood its mission and plan in January, 2007. Savad Decl. **Ex. 20** (Rhodes Tr.) 207:14-208:9 213:10-18.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 331 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  Robert Rhodes testified that Preserve Ramapo did not support the Tartikov project "as originally proposed but withdrawn."  Savad Decl. Ex. 20 (Rhodes Tr.) 207:16-17.**

332.       Preserve Ramapo leader Bob Rhodes spoke out against Tartikov at the Comfort Inn meeting in May, 2007 where Tartikov invited the community to hear its plans for the project. Savad Decl. **Ex. 20** (Rhodes Tr.)  273:19-274:9; Savad Decl. **Ex. 254**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 332 over the objections, <u>disputed</u> to the extent that Robert Rhodes "spoke out against Tartikov." The cited evidence shows that Mr. Rhodes addressed the issue of the proposed school. Savad Decl. Ex. 20 (Rhodes Tr.) 207:16-17.**

333.       Preserve Ramapo widely disseminated Michael Tauber's purported political contributions because it believed that Tartikov was a controversial issue.  Savad Decl. **Ex. 20** (Rhodes Tr.) 223:15-224:21; Savad Decl. **Ex. 250**; Savad Decl. **Ex. 17** (N Sanderson Tr.) 86:18-87:21; Savad Decl. **Ex. 204**.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 333 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. Defendants further dispute Plaintiffs' argumentative characterization of the testimony at Savad Decl. Ex. 20 (Rhodes Tr.) 223:15-224:21. Robert Rhodes also testified that sharing information regarding political contributions is in the public interest. *See* Savad Decl. Ex. 17 (N. Sanderson Tr.) 86:18-87:21; Savad Decl. Ex. 204 and Savad Decl. Ex. 250.

334.    Preserve Ramapo published a hypothetical concept plan on its website showing Tartikov and Patrick Farm.  Savad Decl. **Ex. 20** (Rhodes Tr.) 258:3-259:4; Savad Decl. **Ex. 252**.

<u>RESPONSE:</u>

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 334 over the objections <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  Robert Rhodes did not testify that Preserve Ramapo published a "hypothetical concept plan showing Tartikov and Patrick Farm."  Nor is Savad Decl. Ex. 252 a "hypothetical concept plan." *See* Savad Decl. Ex. 20 (Rhodes Tr.) 258:3-259:4; Savad Decl. Ex. 252.

335.    Village officials supported Preserve Ramapo.   Savad Decl. Ex. 4 (B. Yagel Tr.) 84:25-85:16; 140:8-23; 197:11-198:7.

<u>RESPONSE:</u>

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 335 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  Brett Yagel stated that he is involved with Preserve Ramapo.  Savad Decl. Ex. 4 (B. Yagel Tr.) 84:25-85:16; 140:8-23; 197:11-198:7.

336.     The Sandersons and Yagels hosted Preserve Ramapo fundraisers.  Savad Decl. Ex. 4 (B. Yagel Tr.) 86:3-5; Savad Decl. Ex. 8 (L. Yagel Tr.) 103:8-104:11; Savad Decl. Ex.127; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 89:22-91:2; Savad Decl. **Ex. 206**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 336 over the objections, <u>admitted</u>.**

337.     Brett Yagel disseminated accusations made by Preserve Ramapo against Tartikov officer Michael Tauber.  Savad Decl. Ex. 4 (B. Yagel Tr.) 42:14-46:5; Savad Decl. Ex. 86.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 337 over the objections, <u>disputed</u>.  Brett Yagel testified that he sent certain information to others. He did not describe the information as "accusations."  Further disputed to the extent that Savad Decl. Ex. 86 does not support the purported statement of fact.  Savad Decl. Ex. 4 (B. Yagel Tr.) 42:14-46:5.**

338.     Just after Preserve Ramapo published the hypothetical concept plan, Trustees Sanderson and Brett Yagel along with Preserve Ramapo leader Robert Rhodes discussed hiring a demographer to conduct a population study of Ramapo and Rockland, broken down by each Village. Savad Decl. Ex. 4 (B Yagel Tr.) 240:12-242:23; Savad Decl. Ex.111; Savad Decl. **Ex. 20** (Rhodes Tr.) 252:21-255:16; Savad Decl. **Ex. 251**; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 196:15-197:7; Savad Decl. **Ex. 246**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 337 over the objections, <u>disputed</u>. Savad Decl. Ex. 111, Savad Decl. Ex. 251, and Savad Decl. Ex. 246 (all the same document) are an email dated February 15, 2007.  The purported "hypothetical concept plan," referred to previously by Plaintiffs is dated: "Original Publication: May 11, 2007," predating the email by at least 3 months.  Also disputed that Nicholas Sanderson, Brett Yagel and Robert Rhodes "discussed hiring a demographer." Mr. Yagel testified that he forwarded the February 15, 2007 email to Mr. Sanderson, but not that they "discussed hiring a demographer.  In fact, Mr. Rhodes testified that Mr. Sanderson and Mr. Yagel were uninterested in his suggestion. Savad Decl. Ex. 20 (Rhodes Tr.) 255:12-19) ("none of them seemed to have any interest in population projections, so that was the end of  it.").  Mr. Sanderson testified that he does not recall any discussion regarding hiring a demographer.  Savad Decl. Ex. 17 (N. Sanderson Tr.) 197:18-22.**

339.       Preserve Ramapo leader, Robert Rhodes stated that the data would be useful in Court when Pomona argues "that there is a compelling government interest in restricting large scale 'religious' housing." Savad Decl. **Ex. 246.**

## RESPONSE:

<u>Objection</u>:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 339 over the objections, <u>admitted</u> that Robert Rhodes stated such in and email.**

340.       Brett Yagel admitted that the timing of the suggestion by Preserve Ramapo to hire a demographer was related to Tartikov and the perceived plan to have large scale Jewish housing on its property.  Savad Decl. Ex. 4 (B Yagel Tr.) 242:15-244:20.

## RESPONSE:

<u>Objection</u>:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 340 over the objection, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  Brett Yagel testified that he knew that the owner of the subject property was**

**Jewish and that it would be some use for a religious purpose. Savad Decl. Ex. 4 (B Yagel Tr.) 242:15-244:20.**


341.     Mayor Nicholas Sanderson, Trustees Rita Louie and Brett Yagel and Village resident Robert Prol corresponded with Preserve Ramapo leader Robert Rhodes regarding Tartikov in July of 2007.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants further object and <u>dispute</u> this paragraph as there are no cited materials to support this statement.**


342.     Rita Louie, Nick Sanderson, Savad Decl. Ex. 59; Savad Decl. **Ex. 17** (N Sanderson Tr.) 99:13-100:24; Savad Decl. **Ex. 20**9; Savad Decl. **Ex. 20** (Rhodes Tr.) 216:14-217:18; Savad Decl. **Ex. 24**9.

**RESPONSE:**

**<u>Disputed.</u>  Disputed to the extent this purported statement of fact is incomprehensible and therefore, Defendants are unable to respond.**


343.     Brett Yagel and Robert Prol corresponded regarding Preserve Ramapo; Rita Louie asked Bob Prol to send information onto Preserve Ramapo,  because she was unable to do so because of her position.  Savad Decl. Ex. 9 (Louie Tr.) 250:2-253:19; Savad Decl. **Ex. 14**8.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 343 over the objections, <u>disputed</u>.  The cited testimony and document does not support the purported statement of fact.  Further disputed that Rita Louie asked Robert Prol to send information onto Preserve Ramapo or that she was unable or unwilling to transmit such information ("I'm assuming you've forwarded these comments to Preserve Ramapo et. al.").  Savad Decl. Ex. 9 (Louie Tr.) 250:2-253:19; Savad Decl. Ex. 14**8

344.     Mayor Sanderson, and Trustees Louie and Yagel corresponded with Preserve Ramapo leader Robert Rhodes and Robert Prol regarding an inquiry that Prol made on Tartikov's website. Savad Decl. Ex. 4 (B Yagel Tr.) 62:10-65:13; Savad Decl. Ex. 87.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 344 over the objections, admitted in part; disputed in part. Admitted that Brett Yagel corresponded with Robert Rhodes. Otherwise, disputed. The cited document does not support the purported statement of fact. *See* Savad Decl. Ex. 4 (B Yagel Tr.) 62:10-65:13; Savad Decl. Ex. 87.**

345.     Brett Yagel corresponded with Trustees Sanderson and Louie about working with Preserve Ramapo to draft a letter for Pomona residents to send to their elected officials in opposition to RLUIPA.   Savad Decl. Ex. 9 (Louie Tr.) 210:13-211:14; Savad Decl. **Ex. 143**; Savad Decl. Ex. 4 (B Yagel Tr.) 211:9-212:25; 213:14-216:6;  Savad Decl. Ex.106; Savad Decl. Ex. 325; Savad Decl. **Ex. 21** (Castelluccio Tr.) 72:17-73:16; 87:3-22; Savad Decl. **Ex. 256**; Savad Decl. **Ex. 261**.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 345 over the objections, disputed. The cited testimony and documents do not support the purported statement of fact that Brett Yagel sent an email to Nicholas Sanderson and Rita Louie about "working with Preserve Ramapo to draft a letter." Savad Decl. Ex. 9 (Louie Tr.) 210:13-211:14; Savad Decl. Ex. 143; Savad Decl. Ex. 4 (B Yagel Tr.) 211:9-212:25, 213:14-216:6;  Savad Decl. Ex. 106; Savad Decl. Ex. 325; Savad Decl. Ex. 21 (Castelluccio Tr.) 72:17-73:16, 87:3-22; Savad Decl. Ex. 256; Savad Decl. Ex. 261.**

346.     When Melvin Cook told Trustee Sanderson that he had concerns regarding Tartikov, Sanderson responded that "we must be much more proactive in fighting this urbanization of our Village" and assured him that his "slate has very close ties with Preserve Ramapo." Savad Decl. **Ex. 17** (N Sanderson Tr.) 105:15-108:14; Savad Decl. **Ex. 210**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the factual proposition contained in Paragraph 346 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 346 over the objections, <u>admitted in part; disputed in part</u>.  Admitted that in a March 26, 2007 email to Melvin Cook, Nicholas Sanderson wrote: "You are right - we need to be much more pro-active in fighting this urbanization of our village and the surrounding areas. Our slate has very close ties with Preserve Ramapo...."  Otherwise disputed that the cited testimony supports the purported statement of fact.** *See* **Savad Decl. Ex. 17 (N Sanderson Tr.) 105:15-108:14; Savad Decl. Ex. 210.**

347.     Just after he was elected, Mayor-Elect Sanderson reported that Brett Yagel would obtain information from Preserve Ramapo "all the time" and that information was given to Preserve Ramapo from Yagel.  Savad Decl. **Ex. 17** (N Sanderson Tr.) 106:19-108:14.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 347 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 17 (N Sanderson Tr.) 106:19-108:14.**

348.     Melvin Cook corresponded with Preserve Ramapo regarding Tartikov.  Savad Decl. **Ex. 20** (Rhodes Tr.) 268:23-269:19; Savad Decl. **Ex. 253**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the factual proposition contained in Paragraph 348 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Melvin Cook was not a Village official at the time of the passage of the laws at issue in this action, rendering this statement irrelevant.**

**To the extent the Court chooses to consider the statements contained in Paragraph 348 over the objections, <u>disputed</u>.  Savad Decl. Ex. 253 is one email from "Melvin Cook" to preserveramapo@optiline.net.  This exhibit provides no history of "correspondence" between Mr. Cook and Preserve Ramapo.  The cited testimony also does not support the purported statement of fact.  Further, Mr. Cook's own testimony contradicts the assertion in Paragraph 348.  When ask, whether he "in 2007 respond[ed] to Preserve Ramapo in email form," Mr. Cook replied "No...."  Mr. Cook also testified that he "never" spoke with anybody at Preserve Ramapo about the Tartikov project.  Savad Decl. Ex. 1 (Cook Tr.) 77:6-9, 124:11-13; *see* Ex. 20 (Rhodes Tr.) 268:23-269:19; Savad Decl. Ex. 253.**

349.     Preserve Ramapo endorsed Sanderson, Yagel and Louie's candidacy for Village trustee.  Savad Decl. **Ex. 17** (N Sanderson Tr.) 42:8-22; Savad Decl. Ex. 9 (Louie Tr.) 86:17-20; Savad Decl. Ex. 131.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 349 over the objections, <u>admitted</u>.**

350.     Brett Yagel wrote an article with Preserve Ramapo leader Michael Castelluccio opposing Patrick Farm.  The article was posted on Preserve Ramapo's website.  Savad Decl. Ex. 4 (B Yagel Tr.) 16:13-219:22; Savad Decl. Ex. 107.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 350 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. Brett Yagel did not write the letter referenced in Paragraph 350. *See* Savad Decl. Ex. 4 (B Yagel Tr.) 216:18-21, 217:12-15 ("I had provided some information to Michael.· I did not sign my name to it.")**

351.      Preserve Ramapo leader Robert Rhodes regularly speaks to Brett Yagel for updates on Tartikov.  Savad Decl. **Ex. 19** (Rhodes Tr.) 50:2-9.

<u>RESPONSE:</u>

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 351 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 19 (Rhodes Tr.) 50:2-9.**

352.      The March, 2003 Village Green Newsletter states that Leslie Sanderson is the Liaison with Preserve Ramapo and lists the Village phone number to reach her for any inquires. Savad Decl. Ex. 11 (L Sanderson Tr.) 102:9-104:8; Savad Decl. Ex. 324; Savad Decl. Ex. 3 (Marshall Tr.) 116:9-118:25; Savad Decl. Ex. 68.

<u>RESPONSE:</u>

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 352 over the objections, <u>disputed</u>. Savad Decl. Ex. 68 references a Preserve Ramapo "Committee."  Also, Leslie Sanderson testified that she did not remember ever acting as a liaison to the Preserve Ramapo Committee.  Savad Decl. Ex. 11 (L Sanderson Tr.) 102:22-103:2.**

353.      The October, 2005 Village Green newsletter had a favorable article about Preserve Ramapo. Savad Decl. Ex. 11 (L Sanderson Tr.) 106:8-109:14; Savad Decl. **Ex. 155**.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statements contained in Paragraph 352 over the objections, <u>disputed</u>. The cited testimony and document does not support the purported statement of fact that the referenced article was "favorable." Further disputed to the extent that Savad Decl. Ex. 155 does not support the purported statement of fact. *See* Savad Decl. Ex. 11 (L Sanderson Tr.) 106:8-109:14; Savad Decl. Ex. 155.


354.      Preserve Ramapo leader Michael Castelluccio believes that Ramapo's Adult Student Housing law is a bypass to avoid RLUIPA conflicts. Savad Decl. **Ex. 21** (Castelluccio Tr.) 45:13-46:2; 46:25-48:15.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 354 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact of what Michael Castelluccio "believes" regarding Ramapo's Adult Student Housing and RLUIPA. *See* Savad Decl. Ex. 21 (Castelluccio Tr.) 45:13-46:2, 46:25-48:15.


355.      Preserve Ramapo leader Michael Castelluccio believes that RLUIPA is an aberration of the law and that it is unfair because it increases the number of tax exempt properties; but he does not know if FHA or ADA has the same effect. Savad Decl. **Ex. 21** (Castelluccio Tr.) 59:6-62:25. He made an anti-RLUIPA call to action. *Id.* 73:23-75:6; Savad Decl. **Ex. 25**7.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants further object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).

To the extent the Court chooses to consider the statements contained in Paragraph 355 over the objections, <u>disputed.</u> The cited testimony and document does not support the purported statement of fact. Although Michael Castelluccio testified that RLUIPA is an "aberration," his did not reason that RLUIPA is an aberration because it "increases the number of tax exempt properties." The second sentence is also unsupported by the cited testimony and document. *See* Savad Decl. Ex. 21 (Castelluccio Tr.) 59:6-62:25, 73:23-75:6; Savad Decl. Ex. 257.

356.      Preserve Ramapo leader Robert Rhodes believes that RLUIPA is a terrible, terrible law.  Savad Decl. **Ex. 19** (Rhodes Tr.) 56:16-57:12.

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 356 over the objections, <u>disputed</u>.  Defendants dispute Plaintiffs' argumentative characterization of Robert Rhode's testimony.  Robert Rhodes testified, "I do believe in protection for worship, I do believe in protection for education."  Savad Decl. Ex. 19 (Rhodes Tr.) 57:10-12.

357.      Preserve Ramapo leader Michael Castelluccio opposes the Orthodox/ Hasidic bloc vote.  Savad Decl. **Ex. 21** (Castelluccio Tr.) 26:2-27:14.

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 357 over the objections, <u>disputed</u>.  Michael Castelluccio does not testify that he "opposes the Orthodox/ Hasidic bloc vote."  Mr. Castelluccio  testified that "A bloc vote is perfectly fine if you are dealing with individuals who have joined in, who have bought in, who are voting because these are the people they want and think are right...."  Savad Decl. Ex. 21 (Castelluccio Tr.) 26:24-27:4.

358.        Preserve Ramapo supported efforts to incorporate Ladentown to stop Patrick
Farm from becoming religious, adult student family housing.  Savad Decl. **Ex. 20** (Rhodes Tr.)
283:16-284:9; Savad Decl. **Ex. 255**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 358 over
the objections, <u>disputed</u>.  The cited testimony and document do not support the purported
statement of fact and is unrelated to the assertion made.  *See* Savad Decl. Ex. 20 (Rhodes
Tr.) 283:16-284:9; Savad Decl. Ex. 255.**

359.        Preserve Ramapo leader Robert Rhodes has spoken out about the Orthodox/
Hasidic Jewish community, stating that an "examination of the population growth in Ramapo's
Hasidic communities should be the central focus of any land use plan in Ramapo;" and that
survival of the community depends on maintaining single family residences who pay the bulk of
the taxes. Savad Decl. **Ex. 20** (Rhodes Tr.) 205:7-19; Savad Decl. Ex. 4 (B Yagel Tr.) 202:19-
203:8.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 359 over
the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of
fact and is unrelated to the assertion made. *See* Savad Decl. Ex. 20 (Rhodes Tr.) 205:7-19;
Savad Decl. Ex. 4 (B Yagel Tr.) 202:19-203:8.**

<u>The Village has Only Opposed Orthodox/ Hasidic Land Uses Beyond its Jurisdiction</u>

360.        The Village challenged Ramapo's law authorizing Adult Student Housing in June,
2004, just 3 months before passing Local Law No. 5 of 2004 (dormitory law).  Savad Decl. Ex.
310 (Request to Admit) Response No. 86; Savad Decl. Ex. 11 (L. Sanderson Tr.) 173:4-11;
Savad Decl. **Ex. 17** (N. Sanderson Tr.) 66:9-68:12; Savad Decl. **Ex. 199**; Savad Decl. Ex. 102**;**

Savad Decl. **Ex. 122;** Savad Decl. Ex.124**;** Savad Decl. **Ex. 227;** Savad Decl. Ex. 309 (Answer) ¶145-147.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 360 over the objections, <u>admitted</u>.**

361.    The Village opposed the development of Patrick Farm as adult student housing for Orthodox/Hasidic Jewish students and their families as authorized by Ramapo's Adult Student Housing laws.  Savad Decl. **Ex. 15** (Village 30(b)(6) Day 4 Tr.)  953:16- 987:15; Savad Decl. **Ex. 182;** Savad Decl. **Ex. 23** (Ulman Tr.) 20:2-18; Savad Decl. **Ex. 280;** Savad Decl. Ex. 6 (Banks Tr.) 42:3-45:7.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 361 over the objections, <u>admitted in part; disputed in part</u>.  Admitted that the Village was opposed to the downzoning of Patrick Farms.  Otherwise, disputed.  The cited testimony and documents do not support the purported statement of fact that the Village opposed student housing for Orthodox/Hasidic Jewish students and their families.  Savad Decl. Ex. 15 (Village 30(b)(6) Day 4 Tr.)  953:16- 987:15; Savad Decl. Ex. 182; Savad Decl. Ex. 23 (Ulman Tr.) 20:2-18; Savad Decl. Ex. 280; Savad Decl. Ex. 6 (Banks Tr.) 42:3-45:7.**

362.    Village officials, employees and residents knew that Patrick Farm was meant to be for Orthodox/ Hasidic Jewish (religious) students. Savad Decl. Ex. 11 (L. Sanderson Tr.) 79:25-80:7; 95:8-13; 192:11-195:9; Savad Decl. **Ex. 154;** Savad Decl. **Ex. 167;** Savad Decl. Ex. 9 (Louie Tr.) 43:25-44:6; 92:7-15; 188:3-10; 243:16-245:4; 245::11-246:23; Savad Decl. Ex.147; Savad Decl. Ex. 8 (L. Yagel Tr.) 52:5-8; 84:14-20; Savad Decl. Ex. 9 (Louie Tr.) 92:7-15; Savad Decl. Ex. 4 (B. Yagel Tr.) 58:21-24.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 362 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 11 (L. Sanderson Tr.) 79:25-80:7, 95:8-13, 192:11-195:9; Savad Decl. Ex. 154; Savad Decl. Ex. 167; Savad Decl. Ex. 9 (Louie Tr.) 43:25-44:6, 92:7-15, 188:3-10, 243:16-245:4, 245:11-246:23; Savad Decl. Ex. 147; Savad Decl. Ex. 8 (L. Yagel Tr.) 52:5-8, 84:14-20; Savad Decl. Ex. 9 (Louie Tr.) 92:7-15; Savad Decl. Ex. 4 (B. Yagel Tr.) 58:21-24.

363.  The Village initiated lawsuits against Ramapo regarding the Adult Student Housing laws and the developers of Patrick Farm.  Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4 Tr.) 981:8-983:8; Savad Decl. **Ex. 18**1; Savad Decl. Ex. 9 (Louie Tr.) 95:19-98:11-20; Savad Decl. Ex. 7 (Roman Tr.) 42:3-44:25.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 363 over the objections, <u>admitted in part; disputed in part</u>. Admitted that the Village was involved in a lawsuit against Ramapo regarding its downzoning of certain property. Disputed that the Village "initiated" the referenced lawsuit and that that lawsuit regarded only the Adult Student Housing laws and the developers of Patrick Farm. *See* Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 981:22-982:8.

364.  People were concerned that Patrick Farm would become like New Square. Savad Decl. Ex. 11 (L. Sanderson Tr.) 154:21-25.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 364 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. In response to the question of whether any of Leslie Sanderson's friends and neighbors were concerned that Patrick Farms would turn into New Square, Ms. Sanderson

speculated: "I would imagine there were people that might have thought that way." **Savad
Decl. Ex. 11 (L. Sanderson Tr.) 154:21-25.**

365.       Trustee Louie was opposed to a zone change for Patrick Farm to "accommodate
the development of a segregated community." Savad Decl. Ex. 9 (Louie Tr.) 245:5-246:23;
Savad Decl. **Ex. 147**; Savad Decl. Ex. 9 (Louie Tr.) 247:17-249:20.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 365 over
the objections, admitted.**

366.       Trustee Louie agrees with Preserve Ramapo's endorsement of her, that the
floodgates were opened when Ramapo passed the Adult Student Housing laws.  Savad Decl. Ex.
9 (Louie Tr.)  88:16-89:3; Savad Decl. Ex. 131.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 366 over
the objections, admitted in part; disputed in part.  Rita Louie admitted that "the floodgates
were opened," but in later testimony, Ms. Louie stated that with respect to the term
"floodgates" she said "it's rhetoric and, you know, I really can't agree with it or disagree
with it.  It's just campaign rhetoric."  Savad Decl. Ex. 9 (Louie Tr.) 89:10-21).**

367.       Brett Yagel worked to prevent Patrick Farm from being developed.  Savad Decl.
Ex. 4 (B. Yagel Tr.) 225:6-227:9; Savad Decl. Ex. 109.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 367 over the objections, disputed. The cited testimony and document do not support the purported statement of fact. Savad Decl. Ex. 4 (B. Yagel Tr.) 225:6-227:9; Savad Decl. Ex. 109.**

368.      The Village and its Trustees and employees supported efforts to form the village of Ladentown, which would encompass Patrick Farm and prevent it from being developed as adult student housing for Orthodox and Hasidic students and their families.  Savad Decl. Ex. 11 (L. Sanderson Tr.) 125:17-126:20; Savad Decl. **Ex. 158**; Savad Decl. Ex. 3 (Marshall Tr.) 154:4-11; 155:21-156:16; Savad Decl. Ex. 11 (L. Sanderson Tr.) 131:21-132:2; 132:3-6; Savad Decl. Ex. 4 (B. Yagel Tr.) 163:22-166:17; Savad Decl. Ex. 101; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 95:22-96:10.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 368 over the objections, disputed that support for Ladentown was related to preventing Patrick Farm from being developed for as adult student housing for Orthodox and Hasidic students and their families.  The cited testimony does not support the purported statement of fact.**

*See* **Savad Decl. Ex. 11 (L. Sanderson Tr.) 125:17-126:20 (no relation to Patrick Farms development); Savad Decl. Ex. 158 (unrelated to Ladentown); Savad Decl. Ex. 3 (Marshall Tr.) 154:4-157 (Herbert Marshall doesn't believe the Village "took an official position."); Savad Decl. Ex. 11 (L. Sanderson Tr.) 131:21-132:2; 132:3-6 (does not support); Savad Decl. Ex. 4 (B. Yagel Tr.) 163:22-166:17 (never heard that Ladentown was formed to prevent Hasidic Jews from moving to the neighborhood); Savad Decl. Ex. 101 (does not reflect views of the Village); Savad Decl. Ex. 17 (N. Sanderson Tr.) 95:22-96:10 (does not support).**

369.      In December, 2002, the Village sent a postcard to all Village residents inviting them to a community rally in support of the proposed village of Ladentown; Mayor Marshall spoke at that rally.  Savad Decl. Ex. 3 (Marshall Tr.) 130:3-131:2; Savad Decl. Ex. 70; Savad Decl. Ex. 11 (L. Sanderson Tr. )114:20-116:3;  Savad Decl. **Ex. 156**; Savad Decl. **Ex. 157**.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 369 over the objections, disputed in part; admitted in part. Admitted that the Village authorized the preparation of a postcard notifying resident of a meeting regarding the formation of Ladentown. The cited testimony does not support the purported statement of fact that the referenced meeting was a "rally" or that Mayor Marshall spoke at such event. Further disputed to the extent that Savad Decl. Ex. 156 and Savad Decl. Ex. 157 do not support the purported statement of fact. Savad Decl. Ex. 3 (Marshall Tr.) 130:3-131:2; Savad Decl. Ex. 70; Savad Decl. Ex. 11 (L. Sanderson Tr. )114:20-116:3; Savad Decl. Ex. 156; Savad Decl. Ex. 157.

370.    Mayor Marshall regularly updated Village residents about Ladentown and Patrick Farms. Savad Decl. Ex. 3 (Marshall Tr.) 131:13-135:17.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 370 over the objections, disputed. The cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 3 (Marshall Tr.) 131:13-135:17.

371.    Brett Yagel and Nicholas Sanderson held a fundraiser for the Ladentown efforts. Savad Decl. Ex. 8 (L. Yagel Tr.) 58:3-11; 90:25-92:11; Savad Decl. Ex. 126.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 371 over the objections, disputed. The cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 8 (L. Yagel Tr.) 58:3-11; 90:25-92:11; Savad Decl. Ex. 126.

372.    Mayor Marshall, Trustees Sanderson and Yagel personally endorsed or supported Ladentown. Savad Decl. Ex. 3 (Marshall Tr.) 140:21-142:12; Savad Decl. Ex. 8 (L. Yagel Tr.) 54:13-57:11; Savad Decl. Ex. 4 (B. Yagel Tr.); 170:17-171:20; Savad Decl. **Ex. 17** (N. Sanderson Tr.) 95:22-96:10; Savad Decl. **Ex. 207.**

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 372 over the objections, admitted in part; disputed in part. The cited testimony does not support the purported statement of fact that Nicholas Sanderson personally endorsed or supported Ladentown.** *See* **Savad Decl. Ex. 3 (Marshall Tr.) 140:21-142:12; Savad Decl. Ex. 8 (L. Yagel Tr.) 54:13-57:11; Savad Decl. Ex. 4 (B. Yagel Tr.); 170:17-171:20; Savad Decl. Ex. 17 (N. Sanderson Tr.) 95:22-96:10; Savad Decl. Ex. 207.**

373.    Village attorney and Village resident Doris Ulman performed free legal work for the appeal regarding the efforts to incorporate Ladentown. Savad Decl. **Ex. 23** (Ulman Tr.) 18:3-19:11.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 373 over the objections, admitted.**

374.    The Village did not oppose the neighboring Anna Mann Property proposal to become an assisted living facility in 1999. The Village did not pass laws regarding assisted living. This was the same time-frame as Village began drafting Local Law No. 1 of 2001 in response to Yeshiva Spring Valley's 1999 informal meeting. Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4 Tr.) 1022:9-1023:23; Savad Decl. **Ex. 189.**

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 374 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. The Village representative testified that she did not have any information what action, if any, the Village took in regard to the Anna Mann Property proposal. Defendants note that the Anna Mann Property is not located in the Village of Pomona. *See* Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 1022:9-1023:23; Savad Decl. Ex. 189.**

375.    However, when it was later proposed that the Anna Mann property become a Yeshiva, Leslie Sanderson opposed the sale of the property to the Orthodox for a middle school (Yeshiva); She said "that does not sound good" and "we must all go to the public hearings when they announce them." Savad Decl. Ex. 11 (L. Sanderson Tr.) 224:20-226:3; Savad Decl. Ex.170.

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 375 over the objections, <u>admitted</u> that Leslie Sanderson was opposed to the sale.**

376.    In 1996, Bais Yaakov, a Yeshiva, was applying for expansion in Ramapo. The Village wrote to Ramapo opposing it, went to a Ramapo meeting to read statement from Mayor Klingher in opposition, challenged the plans in Court, and The Village Attorney advised residents to contact Ramapo to object to the planned expansion. Savad Decl. **Ex. 187.**

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 376 over the objections, <u>disputed</u>. The cited document does not support the purported statement of fact. Defendants further dispute that the cited document is admissible evidence. Savad Decl. Ex. 187.**

<u>The Village Failed to Oppose Non- Orthodox/ Hasidic Development</u>

377.    The Village did not oppose legalizing an agricultural operation in Wesley Hills, despite many environmental concerns because the Village did not want to "get involved" in other Village's issues.  Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4 Tr.) 1015:4-1017:13; 1017:20-1019:8; Savad Decl. **Ex. 185**; Savad Decl. **Ex. 186**.

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 377 over the objections, <u>disputed</u>.  The cited testimony and documents do not support the purported statement of fact.  *See* Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 1015:4-1017:13; 1017:20-1019:8; Savad Decl. Ex. 185; Savad Decl. Ex. 186.**

378.    The Village did not take a position in 2003 on an open space item in New Hempstead because the Village did not want to get involved in other Village's issues.  Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4 Tr.) 1021:4-25; Savad Decl. **Ex. 188**.

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 378 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 1021:4-25 (provides no support); Savad Decl. Ex. 188. ("the Board agreed that it supported the concept of open space through responsible planning.")**

<u>The Village has Only Opposed Orthodox/ Hasidic Land Uses Inside of the Village,</u>

379.    In addition to the actions described above with regard to Tartikov and Yeshiva Spring Valley, the Village sought to enforce day care law in 2005 against a Rabbi. Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4 Tr.) 1034:8-1036:4; Savad Decl. **Ex. 191**.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statements contained in Paragraph 379 over the objection, <u>admitted</u>. Defendants note that the cited testimony shows that the Rabbi did not have the necessary documentation to run his business and that the subsequent lawsuit the Rabbi filed against the Village was dismissed. Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 1034:8-1036:4; Savad Decl. Ex. 191.**

380.     The Village also denied Yeshiva Spring Valley's tax exemption in 2004, but voted in favor of the Humane Society's tax exemption on the same day, even though the Humane Society had not timely filed its application for exemption. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 54:12-58:22; Savad Decl. **Ex. 197.**

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statements contained in Paragraph 380 over the objection, <u>admitted</u>, with the qualification that only a 65% exemption was granted for the Hudson Valley Humane Society property.**

381.     Every Village Trustee but one was in favor of the concept of Barr Laboratories purchasing property in 2002 to build an office building with parking, which was not a permitted use. Defendants' 30(b)(6) Tr. 940:24-944:5. The Board informed the Haverstraw supervisor of this position. Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4 Tr.) 940:24-944:5; Savad Decl. **Ex. 176**; Savad Decl. **Ex. 278.**

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 381 over the objections:**

As to sentence one, <u>disputed</u>.  The cited testimony does not support the purported statement of fact, as it only supports the statement that one Board member was concerned about this use.  Defendants' 30(b)(6) Tr. 940:24-944:5.

As to sentence two, <u>disputed</u>.  The cited document and testimony only support that "Mayor Marshall will convey the Board's feelings to the Supervisor of the Town of Haverstraw." Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 940:24-944:5.

382.     The Village applied for funds for a senior citizen center in the Village.  Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4 Tr.) 1024:7-10255:25; Savad Decl. Ex.190.

<u>RESPONSE:</u>

<u>Objection:</u>  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements contained in Paragraph 382 over the objections, <u>admitted</u>.

383.     The Village treated the animal hospital/ humane society favorably.  The Village did not pursue violations by the Humane Society despite receiving a letter from an attorney for the mortgagee of the Property demanding that the Village issue violations. Savad Decl. **Ex. 27**8 pages 24-27.

<u>RESPONSE:</u>

<u>Objection:</u>  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statements contained in Paragraph 383 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact in that it does not indicate what, if any, steps the Village took to communicate the attorney's concerns to the Humane Society.  In fact, Savad Decl. Ex. 278 page 28 indicates that the Village building inspector wrote a letter to the Humane Society requesting that it address any building or zoning violations and arrange for a site inspection.  Savad Decl. Ex. 278 pages 24-28.

<u>The Village, Its Officials, Employees and Residents  Believe that They Should
Not Have to Comply with RLUIPA.</u>

384.    The Village passed a resolution in February, 2007 regarding RLUIPA, seeking
"amendments to the act and to obtain testimony from towns and villages that are burdened with
the improper use of the act." This was done despite the Village's knowledge of RLUIPA, since at
least 2004 and was proposed by the Village Board one month after Tartikov was first mentioned
RLUIPA at January, 2007 meeting.  Savad Decl. Ex.  17 (N. Sanderson Tr.) 152:21-153:23;
Savad Decl. Ex. 5 (Lamer Tr.) 83:23-87:20; Savad Decl. **Ex. 228**; Savad Decl. **Ex. 229**; Savad
Decl. Ex. 3 (Marshall Tr.) 171:12-174:19; Savad Decl. Ex. 77; Savad Decl. Ex. 7 (Roman Tr.)
63:13-65:5; Savad Decl. Ex. 334; Savad Decl. Ex. 309 (Answer) ¶ 207; Savad Decl. Ex. 310
(Request for Admissions) Response ¶ 122.

**RESPONSE:**

**Objection:**   **Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants also object to the extent this paragraph contains multiple factual
contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 384
over the objections:**

**As to sentence one, <u>admitted</u>.**

**As to sentence two, <u>disputed</u> to the extent this purported statement of fact is
incomprehensible and therefore, Defendants are unable to respond.**

**Further disputed to the extent Paragraph 384 characterizes that the Village passed a
resolution regarding RLUIPA in response to Tartikov.  None of the cited documents or
testimony support any link between the resolution and Tartikov.  Savad Decl. Ex.  17 (N.
Sanderson Tr.) 152:21-153:23; Savad Decl. Ex. 5 (Lamer Tr.) 83:23-87:20; Savad Decl. Ex.
228; Savad Decl. Ex. 229; Savad Decl. Ex. 3 (Marshall Tr.) 171:12-174:19; Savad Decl. Ex.
77; Savad Decl. Ex. 7 (Roman Tr.) 63:13-65:5; Savad Decl. Ex. 334; Savad Decl. Ex. 309
(Answer) ¶ 207; Savad Decl. Ex. 310 (Request for Admissions) Response ¶ 122.**


385.    Mayor Marshall wants RLUIPA to be amended because he believes it is misused.
Savad Decl. Ex. 3 (Marshall Tr.) 165:6-11; 167:17-168:8; Savad Decl. Ex. 76.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 385 over the objections, <u>admitted</u> subject to the qualification that Herbert Marshall also testified that he thinks RLUIPA is an important law that "should remain on the books." Savad Decl. Ex. 3 (Marshall Tr.) 165:13-15.**

386.     Village resident Lynn Yagel does not believe that religious organizations have the right to build something that has a negative impact on their neighbors. She defines negative as anything that affects neighbor's quality of life. Savad Decl. Ex. 8 (L. Yagel Tr.) 155:11-157:4.

**<u>RESPONSE:</u>**

**<u>Objection:</u> Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 386 over the objections, <u>disputed</u>. Lynn Yagel testified that *no one* should have the right to build something that will have a negative impact on the neighbors. Savad Decl. Ex. 8 (L. Yagel Tr.) 155:22-25, 156:1-3.**

387.     Village resident Robert Prol created a Defeat RLUIPA group. He felt that the Village was under attack because Tartikov wanted to seek protection based upon RLUIPA and build a rabbinical college. Savad Decl. Ex. 2 (Prol Tr.) 35:25-36:8; 37:18-38:18; 42:21-43:15; 61:12-62:3. Trustee Sanderson joined the group. Savad Decl. Ex. 17 (N. Sanderson Tr.) 141:17-142:19; 161:12-162:20; Savad Decl. **Ex. 222**; Savad Decl. Ex. 2 (Prol Tr.) 38:19-20.

**<u>RESPONSE:</u>**

**<u>Objection:</u> Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 387 over the objections:**

**As to sentence one, <u>admitted</u>.**

As to sentence two, <u>disputed</u>. **Defendants dispute Plaintiffs' argumentative characterization of Tartikov's use of RLUIPA as "protection."** *See* **Savad Decl. Ex. 2 (Prol Tr.) 61:12-62:3.**

As to sentence three, <u>admitted</u>.

388.      Robert Prol went to a Village Board meeting as part of his Defeat RLUIPA initiative to thank them for passing the resolution seeking review and amendments to RLUIPA and to get as many people as possible to contact their representatives to revisit RLUIPA. Savad Decl. Ex. 2 (Prol Tr.) 65:17-22. He was seeking to minimize religious use in Pomona. *Id.* 66:14-23. Shortly thereafter, Mayor Sanderson appointed Prol to the Planning Board. *Id.* 13:2-18;27:15-22.

<u>RESPONSE:</u>

<u>Objection:</u> **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 388 over the objections:**

As to sentence one, <u>admitted</u>.

As to sentence two, <u>admitted</u>.

As to sentence three, <u>disputed</u> **to the extent Paragraph 388 characterizes Robert Prol's appointment to the Planning Board as connected to his RLUIPA initiatives. Nothing in the cited testimony supports such a notion. Savad Decl. Ex. 2 (Prol Tr.) 13:2-18; 27:15-22; 65:17-22; 66:14-23.**

389.      Trustee Sanderson, Brett Yagel and Rita Louie wanted the public to know that as candidates they hired counsel knowledgeable about RLUIPA to demonstrate that they were "concerned about the things they [the citizens] were concerned about." Savad Decl. **Ex. 17** (N. Sanderson Tr.) 177:10-16; Savad Decl. Ex. 9 (Louie Tr.) 133:11-134:6; 141:13-142:22; 146:22-147:20; 157:11-159:4; Savad Decl. Ex. 4 (B Yagel Tr.) 145:8:146:2; Savad Decl. Ex. 96; Savad Decl. Ex. 4 (B Yagel Tr.) 146:15-147:5; Savad Decl. Ex. 97; Savad Decl. Ex. 4 (B Yagel Tr.) 147:11-148:8; Savad Decl. Ex. 98.

**RESPONSE:**

**Objection**: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 389 over the objections, <u>admitted</u>.**

390.      Rita Louie campaigned on a promise that "no developer was going to come under a fundamentally flawed statute to try and build some mega development in the middle of our little simple village" Savad Decl. Ex. 9 (Louie Tr.) 126:18-127:7 ; 148:9-13

**RESPONSE:**

**Objection**: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 390 over the objections, <u>disputed</u>. Rita Louie did not testify that she campaigned on the above-quoted "promise." Savad Decl. Ex. 9 (Louie Tr.) 126:18-127:7, 148:9-13.**

391.      Trustee Louie thinks that RLUIPA is flawed, but cannot identify the flaw.  She does not like the end result-- that the federal law impacts local zoning. Savad Decl. Ex. 9 (Louie Tr.) 127:8-17; 148:14-21; 149:15-23; 165:5-23.

**RESPONSE:**

**Objection**: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 391 over the objections, <u>admitted</u> that Rita Louie testified as such.  Defendants note that Ms. Louie also testified that she could not identify the flaw because she is not an attorney. Savad Decl. Ex. 9 (Louie Tr.) 127:8-17, 148:14-21, 149:15-23, 165:5-23.**

392.      Trustee Yagel believes that RLUIPA is "flawed" because it relegates everyone but religious regarding land use.  Savad Decl. Ex. 4 (B. Yagel Tr.) 65:14-67:35.

**RESPONSE:**

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 392 over the objections, <u>admitted</u> that Brett Yagel testified as such.**

393.     In April, 2007, at Trustee Yagel's urging, Mayor Sanderson sought to meet with Congressman John Hall to review RLUIPA. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 157:18-158:20; 158:25-160:16; Savad Decl. **Ex. 23**1, 232; Savad Decl. Ex. 4 (B. Yagel Tr.) 153:14-25; 154:19-155:4; Savad Decl. Ex. 100.

**RESPONSE:**

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 393 over the objections, <u>disputed</u>. Nicholas Sanderson testified that he sought to meet with Congressman John Hall to discuss a number of issues that might impact the Village. Savad Decl. Ex. 17 (N. Sanderson Tr.) 157:18-158:20, 158:25-160:16**

394.     Trustee Yagel had informal conversations with federal representatives to try to cure RLUIPA. Savad Decl. Ex. 4 (B. Yagel Tr.) 69:7-70:19

**RESPONSE:**

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 394 over the objections, <u>admitted</u> that Brett Yagel testified as such.**

395.     L. Sanderson thinks RLUIPA is an unfair law; that the people who are already there [on the land] have rights; and RLUIPA helps religious institutions build what they want to build. Savad Decl. Ex. 11 (L. Sanderson Tr.) 132:10-133:23

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 395 over the objections, admitted that Leslie Sanderson testified as such.**

396.       Doris Ulman delivered a speech regarding RLUIPA on  May 1, 2007.   D Ulman Tr 60:20-63:25; Savad Decl. Ex. 86; Answer ¶ 192.  Ulman admits that she told the audience not to "cave in" to people asking people to sell their houses. Savad Decl. **Ex. 23** (Ulman Tr.) 62:21-63:25.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 396 over the objections:**

**As to sentence one, admitted.**

**As to sentence two, disputed.  Ms. Ulman testified that she did not remember whether she used the words "cave in."   Savad Decl. Ex. 23 (Ulman Tr.) 62:21-63:25.**

397.       Mayor Sanderson encouraged trustees to attend Doris Ulman's  speech on RLUIPA.  Savad Decl. **Ex. 17** (N. Sanderson Tr.) 166:24-167:15;  Savad Decl. **Ex. 23**5.  However, when the Village officials were invited to a public informational presentation by Tartikov, they did not attend because it was not a Village meeting.  Savad Decl. Ex. 11 (L. Sanderson Tr.) 145:14-150:2; Savad Decl. **Ex. 16**3, 164.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 397 over the objections:**

**As to sentence one, <u>disputed</u>. The cited document and testimony does not support the purported statement of fact that "Mayor Sanderson encouraged trustees to attend Doris Ulman's speech on RLUIPA." Savad Decl. Ex. 17 (N. Sanderson Tr.) 166:24-167:15; Savad Decl. Ex. 235.**

**As to sentence two, <u>disputed</u>. The purported statement of fact is not supported by the cited documents and testimony. *See* Savad Decl. Ex. 11 (L. Sanderson Tr.) 145:14-150:2; Savad Decl. Ex. 163; Savad Decl. Ex. 164.**

<u>The Village Only Sought to Change Laws Related to Issues that Impacted Orthodox/ Hasidic Development</u>

398.     As set forth above, Paragraphs 118-191, the Village passed laws in response to Orthodox/Hasidic Jewish schools, adult student housing for Hasidic/ Orthodox students in neighboring areas and in opposition to Tartikov and Yeshiva Spring Valley.

**RESPONSE:**

**Defendants incorporate herein by reference their responses to Paragraphs 118-191, above.**

399.     However, the Village did not act to pass laws in response to issues that were not related to Orthodox/ Hasidic development. Mayor Marshall encouraged residents in 2001, just after passing Local Law No. 1 of 2001, to accept group homes because the federal Fair Housing Act permits them. The Village did not seek to have the Fair Housing Act reviewed, amended or repealed. Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4 Tr.) 1003:5-1005:5; Savad Decl. **Ex. 184**; Savad Decl. Ex. 3 (Marshall Tr.) 203:5-205:4; Savad Decl. **Ex. 180**; Savad Decl. **Ex. 189**.

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement. Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

161

**To the extent the Court chooses to consider the factual propositions contained in Paragraph 399 over the objection:**

**As to sentence one, <u>disputed</u>. The cited testimony and documents do not support the purported statement of fact. *See* Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 1003:5-1005:5; Savad Decl. Ex. 184; Savad Decl. Ex. 3 (Marshall Tr.) 203:5-205:4; Savad Decl. Ex. 180; Savad Decl. Ex. 189.**

**As to sentence two, <u>admitted</u>.**

**As to sentence three, <u>admitted</u>.**


400.     Village Residents believe there are too many tax exempt properties in Rockland, but Pomona did not seek to review, amend or repeal tax exemption laws.  Savad Decl. Ex. 11 (L. Sanderson Tr.). 55:3-8; Prol Tr. 34:14-35:5; 66:14-68:3  L. Yagel Tr. 30:17-34:6; 35:13-37:25.

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 400 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. Savad Decl. Ex. 11 (L. Sanderson Tr.). 55:3-8; Savad Decl. Ex. 2 (Prol Tr.) 34:14-35:5, 66:14-68:3; Savad Decl. Ex. 8 (L. Yagel Tr.) 30:17-34:6, 35:13-37:25.**


401.     When the Mann  property just outside Village was considered to become an assisted living facility in 1999, the Village did not  pass laws regarding assisted living.  (This was the same time-frame as Village began drafting Local Law No. 1 of 2001 in response to Yeshiva Spring Valley's 1999 informal meeting.)  Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4  Tr.) 1022:9-1023:23; Savad Decl. **Ex. 189**.

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 401 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. The deposition testimony cited by Plaintiffs indicates that Ms. Ulman did not have**

**knowledge of what, if any, action the Village took in regard to the Mann property.  Savad Decl. Ex. 189; Savad Decl. Ex. 15  (Village 30(b)(6) Day 4 Tr.) 1023:12:-23**

402.    The Village did not pass laws tightening zoning laws regarding office building parking when Barr Laboratories was interested in purchasing property in the Village in 2002, despite the fact that this office building use was not a permitted use. Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Tr. 940:24-944:5); Savad Decl. Ex 176.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 402 over the objections, admitted.**

403.    In fact, every trustee but one was in favor of the concept of Barr purchasing the property for commercial use; and the Village Board informed the Haverstraw supervisor of this position. Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Tr. 940:24-944:5); Savad Decl. **Ex. 176;** Savad Decl. **Ex. 278.**

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 403 over the objections, disputed.  The cited documents and deposition testimony do not support the purported statement of fact that every trustee but one was in "favor" of the concept of Barr purchasing the property for commercial use.  According to Savad Decl. Ex. 176, "Other than Trustee Sanders, no other Board Members were opposed to the proposed project in concept."  Also, Savad Decl. Ex. 176 states that "Mayor Marshall will convey the Board's feelings to the Supervisor of the Town of Haverstraw."  This statement does not confirm that the supervisor of Haverstraw was actually informed.  Further disputed to the extent that Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 940:24-944:5 and Savad Decl. Ex. 278 do not support the purported statement of fact.**

404.     The Village is preempted by state law regarding laws that regulate daycare; the Village never passed a resolution seeking to repeal or amend these New York state laws. Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Tr. 1007:15-1009:10).

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 404 over the objections, <u>admitted</u> that the Village never passed a resolution seeking to repeal or modify New York law regulating daycare facilities.**

405.     The Village did not change its laws regarding post partum facilities when a post partum facility was proposed to open in the Village. Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Tr. 1002:4-23;) Savad Decl. Ex. 131.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 405 over the objections, <u>admitted in part; disputed in part.</u> Admitted that the Village did not change its laws regarding post partum facilities. Disputed to the extent that this statement implies that post partum facilities are or were a permitted uses within the Village. Savad Decl. Ex. 15 (Defendants' 30(b)(6)Day 4 Tr.) 1002:4-23.**

<u>The Village treated Tartikov's Request for an Informal Meeting Differently than Other Developers</u>

406.     At the same time the Village refused to meet with Tartikov, on May 7, 2007, Mayor Sanderson e-mailed with developer Joyce telling him that the Village meets with developers who are or who wish to be involved with the Village "as a courtesy." But this courtesy was not provided to Tartikov, despite its repeated requests to meet with the Village. Sanderson Tr 112:6-113:26; 115:4-20;Savad Decl. **Ex. 214**.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

To the extent the Court chooses to consider the statement contained in Paragraph 406 over the objections, <u>disputed</u> to the extent that Paragraph 406 represents that Tartikov properly requested and was denied a meeting with the Village.  Savad Decl. Ex. 17 (N. Sanderson Tr.) 115:21-23.  Further disputed because Nicholas Sanderson's May 7, 2007 email (Savad Decl. Ex. 214) is taken out of the context.  In a May 10, 2007 email (Savad Decl. Ex. 214), Mr. Sanderson clarifies that he has "never heard of a pre-submission meeting with a developer in our village – except for TAC meetings at which actual plans are discussed...."

407.    Mayor Sanderson stated that he corresponded with developer Joyce because he wanted to make sure that he was satisfied that his issues were being addressed by the Village. Sanderson Tr 123:5-10; Savad Decl. **Ex. 214**.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 407 over the objections, <u>disputed.</u>  Disputed to the extent that Paragraph 407 implies Joyce was granted treatment that was more favorable than other developers in the Village. Savad Decl. Ex. 214 (N. Sanderson Tr.) 123:5-10.

408.    A "developer that wishes to develop property in the Village can write to the Planning Board and ask to be-- ask to make an informal presentation to the board during a planning meeting or he can request to have a Technical Advisory Committee (TAC)  meeting. There are procedures for both." Sanderson Tr 114:2-16.  "An applicant can ask to meet with TAC and not submit an application to the Planning Board, just submit a letter with a proposal and a plan." Savad Decl. **Ex. 23** (Ulman Tr 31:12-24).  A TAC meeting is an aid to the developer.  Savad Decl. **Ex. 23** (Ulman Tr 29:13-31:11).

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 408 over the objections, <u>admitted</u> with the qualification that the quotation in the second sentence should be corrected to replace the word "submit" with "send."  Savad Decl. Ex. 23 (Ulman Tr) 31:12-24.

409.    Tartikov wrote to the Village, spoke at Village meetings and called the Village Attorney requesting an informal meeting to discuss its plans on multiple occasions: on March 28, 2007, April 12, 2007, April 25, 2007, and June 22, 2007. Savad Decl. **Ex. 287**; Savad Decl. **Ex. 23** (Ulman Tr. 69:3-7); Savad Decl. **Ex. 17** (N. Sanderson Tr. 146:14-24); Savad Decl. **Ex. 225**; Savad Decl. **Ex. 211**; Savad Decl. **Ex. 17** (N. Sanderson Tr. 108:19-109:2; 117:21-120:2;) Savad Decl. Ex. 309 (Answer ¶ 210);  Savad Decl. **Ex. 212**; Savad Decl. **Ex. 17** (N. Sanderson Tr.). 109:7-14; Savad Decl. Ex 309 (Answer ¶¶ 212-215).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 409 over the objections, admitted in part; disputed in part.  Admitted that Paul Savad sent a letter the Ms. Ulman on March 28, 2007, but disputed that the letter contains a request for a meeting.  *See* Savad Decl., Ex. 287; Savad Decl. Ex. 15 (Village 30(b)(6) day 4 Tr.) 1041:20-25.  Admitted that Susan Cooper spoke at a Board of Trustees meeting on April 12, 2007.  *See* Savad Decl. Ex. 17 (N. Sanderson Tr. 146:14-24).  Disputed that Ms. Cooper requested that the Board of Trustees meet with Tartikov to discuss "plans."  *See* Savad Decl. Ex 225 ("Ms. Ulman inquired of Ms. Cooper if they were proposing an application or a concept?  Ms. Cooper replied, a concept.").  Further admitted that Paul Savad sent a letter to various Village representatives on April 25, 2007.  *See* Savad Decl., Ex. 211 & Savad Decl. Ex. 17 (N. Sanderson Tr. 108:19-109:2).  Disputed that Savad Decl., Ex. 211 otherwise supports Paragraph 409.  Further admitted that Paul Savad sent a letter to Nicholas Sanderson on June 22, 2007, but disputed that Savad Decl. Ex. 212 otherwise supports Paragraph 409.  Otherwise, disputed.**

**Further disputed to the extent that Savad Decl. Ex. 23 (Ulman Tr. 69:3-7); Savad Decl. Ex. 17 (N. Sanderson Tr., 109:7-14, 117:21-120:2); Savad Decl. Ex 309 (Answer ¶¶ 212-215); Savad Decl. Ex. 309 (Answer ¶ 210) do not support the purported statement of fact.**

410.    The letters from Tartikov did not ask for an exemption from the Village of its zoning laws, but asked the Village for consideration under RLUIPA.  Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Tr. 1038:12-1039:12).

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 410 over the objections, disputed. The cited testimony does not support the purported statement of fact.** *See* **Savad Decl. Ex. 212 ("I am writing to request that the Village of Pomona Board of Trustees exercise its authority under federal law to grant an exemption to a religious institution to allow for the construction of the Rabbinical College of Tartikov.")**

411.   Tartikov was not offered a TAC meeting or any type of informal meeting with the Planning Board in response to any of its requests; nor was it told that it could simply submit a letter with a proposal and a plan (as available to others, see 406-408 above). Savad Decl. **Ex. 27** (M. Tauber 30(b)(6) Tr. 116:6-118:10; 120:3-16; 127:24-130:21; 131:22-132:6); Savad Decl. **Ex. 27** (Defendants' 30(b)(6) Tr. 178:7-18); Savad Decl. Ex. 309 (Answer ¶¶ 208, 209); Savad Decl. **Ex. 17** (N. Sanderson Tr. 117:7-20); Savad Decl. **Ex. 213**.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 411 over the objections, admitted in part; disputed in part. Admitted that Tartikov was not "offered" a TAC meeting but disputed to the extent that Paragraph 411 implies that the Village had an obligation to do so. Disputed that the Village did not inform Tartikov of application or informal meeting procedures.** *See* **Savad Decl. Ex. 213 ("[The Village Attorney] has discussed Village procedures with you on more than one occasion.").**

412.   Mayor Sanderson claims that Tartikov should have known how to apply for the TAC meeting, even though he, as mayor and trustee for 15 years, had no idea how to apply for the TAC meeting Savad Decl. **Ex. 17** (Sanderson Tr. 115:21-117:6).

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 412 over the objections, disputed. The cited testimony does not support the purported statement of fact. The cited testimony does not assert that Nicholas Sanderson claimed that Tartikov**

"should have known" how to apply for the TAC meeting.  Savad Decl. Ex. 17 (Sanderson Tr. 115:21-117:6).

413.    When Barr Laboratories was interested in purchasing property in 2002 in the Village to build an office building with parking, (a non-permitted use), the Board discussed whether they would approve of this potential use at a Village Board meeting.  This discussion occurred before the property was even purchased by the potential purchaser.  All but one trustee was in favor of the concept and the Village informed the Haverstraw supervisor of this position.  Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Tr. 940:24-944:5); Savad Decl. **Ex. 176**; Savad Decl. **Ex. 278**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 413 over the objections, admitted in part; disputed in part.  The cited documents and deposition testimony do not support the purported statement of fact that "the Board discussed whether they would approve of this potential use at a Village Board meeting." The cited documents and deposition testimony do not support the purported statement of fact that every trustee but one was in "favor" of the concept of Barr purchasing the property for commercial use.  According to Savad Decl. Ex. 176, "Other than Trustee Sanders, no other Board Members were opposed to the proposed project in concept." Also, Savad Decl. Ex. 176 states that "Mayor Marshall will convey the Board's feelings to the Supervisor of the Town of Haverstraw." This statement does not confirm that the supervisor of Haverstraw was actually informed.  Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 940:24-944:5; Savad Decl. Ex. 176; Savad Decl. Ex. 278.**

### The Village Has a History of Reacting to Issues with Jewish religious Practices by Passing Laws.

414.    Former Mayor Marshall admitted that the Village passed a law prohibiting overnight parking because residents complained that Orthodox Jews, who are prohibited from using their cars on the Sabbath, from sundown Friday to sundown Saturday, were parking their cars on the street overnight.  Savad Decl. Ex. 3 (Marshall Dep Tr. 160:3-162:4);  Savad Decl. Ex. 73; Savad Decl. Ex. 74.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 414 over the objections, <u>admitted in part; disputed in part.</u> Admitted only that the Village passed a law prohibiting overnight parking without a permit. Otherwise, disputed. The cited documents and deposition testimony do not support the purported statement of fact that the law was passed "because of" complaints about Orthodox Jews. Herbert Marshall explained that complaints were motivated by the congestion caused by parked cars on small, interior roads. Savad Decl. Ex. 3 (Marshall Dep Tr.) 160:33-25 ("[Cars] were all over the place. And it was causing congestion for people to get through the streets").

Defendants note that although plaintiffs cited Savad Decl. Ex. 3 (Marshall Dep Tr.) 160:3-162:4, page 162 of the Marshall transcript is omitted from Savad Decl. Ex. 3. It appears that every-other page was omitted from Savad Decl. 3.

<u>Village Officials and Employees Tried to Mask Their Real Intentions on Tartikov</u>

<u>The January 22, 2007 Village Board Meeting</u>

415.    As set forth above, Paragraphs 159-168, the January 22, 2007 meeting was a "hostile" one in which many Village residents came out to oppose Tartikov and to demand the Village Board to pass laws to thwart Tartikov's attempts to build a rabbinical college with family housing in the Village.

**RESPONSE:**

Defendants incorporate herein by reference their responses to Paragraphs 159-168, above.

416.    During the meeting, Mayor Marshall was accused of not listening to residents' opposition to Tartikov. He responded by stating "[l]adies and gentlemen, let me say something. We sitting at this table have limitations that are placed on us as to what we can say and what we can't say, because our attorney tells us what we can say and what we can't say. I can't say what I feel, I can't. If I agree with you, I don't agree with you, I don't have that luxury of being able to say that here. All that I can say is that every member of this board works very, very hard to do what is best for this community. You have your issues. Don't assume because no one has gotten up and said, wow, I agree with you, oh boy; don't assume that because we didn't do that that we don't agree. We may or may not, but please give us the benefit of the doubt. We have all been doing this. We work very hard at what we do. We try and do what is best for the community but

it's our home. There are limitations under the law that restrict what we can say and when we can say it." Savad Decl. Ex. 3 (Marshall Tr. 182:7-183:16); Savad Decl. Ex. 78 at RC 1122.

**RESPONSE:**

**Admitted in part; Disputed in part.** **Admitted that Paragraph 416 accurately reflects the transcript of the January 22, 2007 public hearing.  Defendants dispute Plaintiffs' argumentative characterization that residents opposed Tartikov.**

417.    Mayor Marshall also stated "[l]adies and gentlemen, there isn't anyone sitting up here who doesn't know how you feel."  Savad Decl. Ex. 3 (Marshall Tr. 180:6-13); Savad Decl. Ex. 78 at RC 1120.

**RESPONSE:**

**Admitted that Paragraph 417 accurately reflects the transcript of the January 22, 2007 public hearing.**

418.    After the meeting, contrary to regular Village procedure of summarizing all public comments in the Meeting Minutes, Mayor Marshall directed the secretary who transcribed the minutes to remove all of the comments made by the public from the minutes, instead only leaving their names and addresses; this reduced the 29 page draft of the minutes to 13 pages. Savad Decl. Ex. 3 (Marshall Tr. 216:2-15); Savad Decl. **Ex. 23** (D Ulman Tr 42:12-44:16; 604:17-24); Savad Decl. **Ex. 283**; Savad Decl. Ex. 3 (Marshall Tr. 217:4-218:6); Savad Decl. Ex. 3 ( Marshall Tr. 219:4-220:12; 223:20-224:7);Savad Decl. Ex. 84; Savad Decl. Ex.23 (D Ulman Tr 46:11-47:2; 54:22-55:5); Savad Decl. **Ex. 283** ; Savad Decl. **Ex. 284**).

**RESPONSE:**

**Admitted in part; Disputed in part.** **Disputed to the extent that Paragraph 418 asserts that Mayor Marshall acted "contrary to regular Village procedure."  The January 22, 2007 meeting minutes were reviewed through the "normal village process."  Savad Decl. Ex. 23 (D Ulman Tr.) 43:12-22.  Defendants also dispute Paragraph 418 to the extent that is implies the "reduced" minutes were final and accepted by the Board of Trustees.  Savad Decl. Ex. 23 (D Ulman Tr.) 437:17-22.**

<u>The February, 2007 Village Board Meeting</u>

419.    Prior to the February, 2007 Village Board meeting, Mayor Marshall sent an e-mail to the trustees warning them that Tartikov's attorney might be at the meeting. Savad Decl. Ex. 3 (Marshall Tr. 191:5-193:6); Savad Decl. Ex.79.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 419 over the objections, <u>disputed.</u>  Disputed that Herbert Marshall was "warning [the trustees] that that Tartikov's attorney might be at the meeting."  The referenced email states: "Also, for your information the meeting will probably be videotaped and privately transcribed by Savad and company." Savad Decl. Ex. 79.  The purpose of the email was described in Mr. Marshall's deposition testimony: The email "was particularly for Malverne so she would know to set up a space for the videotaping and recording, because she's the one who sets up the meeting room."  Savad Decl. Ex. 3 (Marshall Tr.) 192:10-21.**

<u>Village Trustee Candidates Rita Louie and Brett Yagel Authored a Letter to the Editor of the Rockland County Journal News Which Expressed their Opposition to Tartikov, but it was Signed and Submitted by Lynn Yagel</u>

420.    In February, 2007, Village Board candidates Rita Louie and Brett Yagel drafted a letter to the Rockland County Journal News editor entitled "Pomona Rabbinical College Not a 'Natural Progression.'  The letter referred to the proposed Orthodox/ Hasidic residents of Tartikov as "homogenous individuals" and disputed Tartikov Lawyer's suggestion that the moving of Orthodox/Hasidic Jews into Pomona was a natural progression.  Savad Decl. Ex. 114.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 420 over the objections, <u>admitted in part; disputed in part.</u>  Disputed to the extent that Savad Decl. Ex 114 is inaccurately characterized and taken out of context.  Specifically, the draft letter states: "We have to take great exception to Mr. Savad's statement in the Journal News that the Rabbinical College plans for the Village of Pomona was a 'natural progression' and**

that the character of the village is evolving country to more diverse development...."
Savad Decl. Ex. 114.


421.     Rather than submit the letter to the Rockland County Journal News in their own
names, Village Trustee candidates, Rita Louie and Brett Yagel asked his wife, Lynn Yagel, to
submit the letter to the editor in her name; and she did.  Savad Decl. Ex. 113 (letter as it
appeared in the Journal News); Savad Decl. Ex. 114 (draft authored by Rita Louie and Brett
Yagel); Savad Decl. Ex. 8 (L. Yagel Tr. 144:8-145:4);Savad Decl. Ex. 130.

**RESPONSE:**

**Objection**: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 421 over
the objections, <u>admitted in part; disputed in part.</u>  Disputed that "Brett Yagel asked his
wife, Lynn Yagel, to submit the letter to the editor in her name...."  Ms. Yagel explained
why the article was submitted in her name in her deposition: "I seem to recall maybe Rita
had submitted a lot of articles and maybe they were sick of getting them from her, so she
asked if maybe I would submit it, take a look at it and if I liked it would I submit it.· And I
looked at it.  I go, yeah, you should put this in the paper and I submitted it."  Savad Decl.
Ex. 8 (L. Yagel Tr.) 160:14-20.**


### Mayor Sanderson and Trustees Yagel and Louie Warned People to Watch What They Say about Tartikov in Public

422.     Mayor Sanderson, Brett Yagel and Rita Louie decided to attend a meeting of the
Pomona Civic Association in April 2007.  In advance of the meeting, Trustee Yagel warned
Mayor Sanderson and Trustee Louie that they "Must be very careful about what we say.  Don't
know who's in the audience.  Savad might show up again."  Savad Decl. Ex. 4 (B. Yagel Tr.
192:4-192:22); Savad Decl. Ex. 105; Savad Decl. Ex. 9 (Louie Tr. 173:18-175:4);Savad Decl.
Ex. 139.

**RESPONSE:**

**Objection**: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 422 over
the objections, <u>admitted in part; disputed in part.</u>  Admitted that Paragraph 422 correctly
quotes Savad Decl. Exs. 105 and 139 (duplicate exhibits).  Defendants dispute Plaintiffs'**

argumentative characterization of the email as a warning.  See Savad Decl. Ex. 4 (B. Yagel Tr.) 192:4-192:22; Savad Decl. Ex. 105; Savad Decl. Ex. 9 (Louie Tr.) 173:18-175:4; Savad Decl. Ex. 139.

423.    When discussing Tartikov at the meeting, Trustee Louie warned people that there is a person with a video camera at the Village meetings who will use everything they say against them, so everyone should be careful about what they say.  Savad Decl. Ex. 9 (Louie Tr. 204:12-18);  Savad Decl. **Ex. 142** ¶ 12.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 423 over the objections, <u>admitted in part; disputed in part.</u>  Defendants dispute Plaintiffs' argumentative characterization of the comment as a warning.  *See* Savad Decl. Ex. 9 (Louie Tr.) 204:12-18;  Savad Decl. Ex. 142 ¶ 12.**

424.    When discussing Tartikov at the meeting, Mayor Sanderson stated that he did not want to make the mistakes that the developers want him to make.  Savad Decl. **Ex. 17** (N. Sanderson Tr. 175:5-18); Savad Decl. **Ex. 239** ¶8.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 424 over the objections, <u>admitted.</u>**

425.    When discussing Tartikov at the meeting, Trustee Yagel stated that the residents should make sure that when they speak in public they do not speak in a discriminatory manner because that could be construed as being discriminatory.  Savad Decl. Ex. 4 (B. Yagel Tr.). 189:15-190:24; Savad Decl. **Ex. 173** ¶ 10.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 425 over the objections, <u>admitted in part; disputed in part.</u> Brett Yagel testified that "it is possible" that he made the statement in Savad Decl. Ex. 239 ¶10, however, he "recalled saying something along the lines of everybody is allowed to develop their property and they should be careful not to state discriminatory phrases." When asked, "In public?," he responded, "At all." Savad Decl. Ex. 4 (B. Yagel Tr.) 190:8-24. Additionally, Savad Decl. Ex. 239 ¶10 states, "Trustee Yagel stated that the residents should make sure that when they speak publically that they don't speak in a discriminatory manner because that can be construed as '*the village is* discriminating.'" Further disputed to the extent that Savad Decl. Ex. 173 ¶ 10 does not support the purported statement of fact.

<u>Other Actions Where Village Trustees and Employees Watched What they Said</u>

426.    Trustee Louie reported to Mayor Sanderson that a person from Tartikov's law firm had been at the Planning Meeting. Louie asked Sanderson to have Village Attorney Doris Ulman give the village planning board the "ground rules" for such situations. Savad Decl. Ex. 9 (Louie Tr.). 178:12-179:24; Savad Decl. Ex. 140.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 426 over the objections, <u>admitted in part; disputed in part.</u> Disputed to the extent that Paragraph 426 implies that the purpose of Trustee Louie's email was to "report" the presence of a person from Tartikov at the planning board meeting. The final three lines of the email reads: "BTW, the assistant from Savad's office was at the planning board meeting last night taking notes .... as usual. The planning board members didn't know who she was. Maybe the Planning Board needs a little advice on the ground rules from Doris regarding this." Savad Decl. Ex. 140. Trustee Louie also testified that she was not referring to any particular ground rules. She testified that "I was new to the board and I obviously was a little ignorant of what the policies were." Savad Decl. Ex. 9 (Louie Tr.) 178:19-25.

427.    When corresponding with Village resident Robert Prol regarding organizing a spin-off of Preserve Ramapo to oppose Tartikov, Trustee Louie asked Prol to send the

information to Preserve Ramapo because she could not do it because of her position with the Village.  Savad Decl. Ex. 9 (Louie Tr.). 250:2-253:19; Savad Decl. **Ex. 149**; Savad Decl. Ex. 2 (Prol Tr.) 121:2-122:7; Savad Decl. Ex. 58.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 347 over the objections, <u>disputed.</u>  Disputed that "Trustee Louie asked Prol to send the information to Preserve Ramapo…"  Ms. Louie stated in an email, "Thanks Bob, I'm assuming you've forwarded these comments to Preserve Ramapo, et. al."  Defendants also dispute that the purpose of the correspondence was "organizing a spin-off of Preserve Ramapo."  Savad Decl. Ex 58.  Further disputed to the extent that Savad Decl. Ex. 149 does not support the purported statement of fact.**

428.    Village Clerk Leslie Sanderson spoke "in code" when corresponding about Tartikov.  She said "it may sound as if I am talking in code, but I hope you understand what I am talking about "and she admitted that she was referring to Tartikov.  Savad Decl. **Ex. 26** (L. Sanderson Tr.) 220:5-221:7

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 428 over the objections, <u>disputed</u>.  Leslie Sanderson testified that she was not "speaking in code."  Savad Decl. Ex. 11 (L. Sanderson Tr.)  220:11-17 ("There's nothing here that's in code, it's all out….").  Savad Decl. Ex. 26 (L. Sanderson Tr.) 220:5-221:7 is not a citation to the record as there is no Savad Decl. Ex. 26 (L. Sanderson Tr.) 220:5-221:7.  Leslie Sanderson's transcript is found at Ex. 11.**

<u>Village Officials and Employees Refused to Attend a Public Meeting Held by Tartikov and Tried to Encourage Others Not to Go.</u>

429.    Tartikov held a meeting in May, 2007 to present information to the public about the proposed rabbinical college.  Savad Decl. Ex. 15 (Defendants' 30 (b)(6) Day 4 Tr.) 1036:5-24; Savad Decl. Ex. 17 (Sanderson Tr.) 82:12-17; Tr. 82:82:22-83:4; 83:8-23; Savad Decl. Ex. 4

(B. Yagel Tr.) 32:17-33:8 ; Savad Decl. **Ex. 23** (Ulman Tr.) 57:6-58:25; 59:2-7; Savad Decl. **Ex. 28**6.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 429 over the objections, <u>admitted</u>.**

430.    While corresponding with a Village resident suggesting that the resident not go to the meeting held by Tartikov, Leslie Sanderson said: "consider this next piece of information from me NOT advice from the Village of Pomona". Savad Decl. **Ex. 170**; Savad Decl. Ex. 11 (L. Sanderson Tr.). 223:6-232:22.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 430 over the objections, <u>admitted</u>.**

431.    Mayor Sanderson told people that he was not going to the Tartikov meeting. Savad Decl. **Ex. 17** (N. Sanderson Tr.) 85:8-23.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 431 over the objections, <u>disputed.</u>  The testimony referenced by Plaintiffs is an incomplete statement taken out of context.  Nicholas Sanderson's complete testimony referenced in Paragraph 431, Savad Decl. Ex. 17 (N. Sanderson Tr.) 85:8-19 reads:**

> **Q. Did you talk to anybody around this time, May of 2007, about this meeting at the Comfort Inn sponsored by Tartikov?**

> **A. People mentioned it, people asked me -- residents. I can't remember which ones, but I'm sure I received many calls, should we go, what's it about, etcetera.**

**Q. What did you tell these people when they asked?**

**A. I probably told them I don't know what it is and I'm not going because I had decided already not to go.**

432.   A Village resident called the Village and was encouraged not to attend Tartikov's meeting and was told that if they did attend, they might incriminate the village.  Savad Decl. **Ex. 17** (N. Sanderson Tr.). 168:7-169:17; Savad Decl. **Ex. 236**.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  This statement also contains inadmissible hearsay pursuant to Fed. R. Evid. 802.**

**To the extent the Court chooses to consider the statements contained in Paragraph 432 over the objections, <u>admitted to in part; disputed in part</u>. Admitted that Savad Decl. Ex. 236 states: "I called the village and was told that this was not a village run meeting and that we are encouraged not to attend. In fact, it was shared that if we do attend, that we are positioning ourselves for a lawsuit for discrimination. Although we appreciated the information, we were deeply troubled by this statement." Defendants dispute Plaintiffs' argumentative characterization of the "incrimination" of the Village.  The documents and testimony cited do not support this notion. Savad Decl. Ex. 17 (N. Sanderson Tr.). 168:7-169:17; Savad Decl. Ex. 236.**

433.   A Village employee was admonished for telling the Village resident not to attend the meeting in order to avoid incriminating the Village. She was told instead by Leslie Sanderson to repeat the words that Mayor Sanderson told them to say, which was "personally, I don't think it's a good idea to go to the meeting."   Savad Decl. **Ex. 17** (N. Sanderson Tr.). 169:22-172:5; Savad Decl. **Ex. 237**.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 433 over the objections, <u>admitted in part; disputed in part</u>.  The testimony cited does not support the purported statement of fact that "A Village employee was admonished for telling the Village resident not to attend the meeting in order to avoid incriminating the Village." Savad Decl. Ex. 17 (N. Sanderson Tr.) 169:22-172:5; Savad Decl. Ex. 237.**

434.    Mayor Sanderson replied to an e-mail from another Village resident regarding the Tartikov meeting by asking the resident to call Sanderson before he considers going to the meeting.  Savad Decl. **Ex. 238**; Savad Decl. **Ex. 17** (N. Sanderson Tr.). 172:19-173:3

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 434 over the objections, <u>admitted</u>.**

435.    Leslie Sanderson decided not to go the meeting, even though she knew that the purpose of the Tartikov meeting was to disclose information to the public about Tartikov's plans. Savad Decl. Ex. 11 (L. Sanderson Tr.) 233:8-19.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 435 over the objections, <u>admitted</u>.**

### Village Residents, Officials and Employees Made it Clear that they Would Rather Pay to Oppose Tartikov than Allow it to be Built in the Village

436.    Many Village residents would attend a "coffee" with Mayor Sanderson to tell him that whatever the cost, they would like the Village to protect its zoning laws.  Savad Decl. Ex. 11 (L. Sanderson Tr.). 218:16-219:2; Savad Decl. **Ex. 169**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 436 over the objections, <u>admitted</u>.**

437.     Mayor Sanderson wanted to create a legal fund for an anticipated lawsuit with Tartikov. Savad Decl. **Ex. 17** (N. Sanderson Tr.). 184:2-185:20.  In fact, during their election campaign, Mayor Sanderson and Trustees Yagel and Louie promised  to create a legal defense fund in order to "fight" RLUIPA challenges.  Savad Decl. **Ex. 17** (N. Sanderson Tr.) 135:24-136:20; Savad Decl. **Ex. 219**.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statement contained in Paragraph 437 over the objections, <u>admitted in part; disputed in part</u>.**

**As to sentence one, <u>admitted in part; disputed in part</u>.  Admitted that Nicholas Sanderson was in favor of raising money to help pay for litigation if the need arose.  Disputed to the extent that Paragraph 437 takes the cited deposition testimony out of context.  The cited testimony indicates that Mr. Sanderson was approach by a resident of another village who offered to donate money to a "legal support program."  Savad Decl. Ex. 17 (N. Sanderson Tr.). 184:2-185:20.**

**As to sentence two, <u>disputed.</u>  Disputed because the draft document cited by plaintiffs (Savad Decl. Ex. 219) is not admissible evidence supporting the assertion that Mr. Sanderson, Brett Yagel and Rita Louie promised anything.  Defendants also dispute the use of Savad Decl. 219 as support because Mr. Sanderson testified regarding Savad Decl. 219 as: "I don't remember doing this or sending it but it certainly looks like it's ours. It looks like it's a draft as well so I'm not sure." Savad Decl. Ex. 17 (N. Sanderson Tr.) 136:26-137:10.**

438.     During the time-frame when Tartikov was attempting to meet with the Village to discuss its proposed rabbinical college, the Village was making arrangements to set up a fund for litigation against Tartikov.  This occurred months before this lawsuit was filed, and even before the last of the challenged laws was passed.  Savad Decl. **Ex. 17** (N. Sanderson Tr.) 174:4-16; 174:17-175:4; Savad Decl. **Ex. 239** ¶¶5-6, 13-14.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 438 over the objections, <u>admitted in part; disputed in part</u>.  The testimony and documents cited do**

not support the purported statement of fact that "Tartikov was attempting to meet with the Village to discuss its proposed rabbinical college." No college was proposed to the Village. Further, the testimony and documents cited do not support the purported statement of fact that money was being raised to support a litigation against Tartikov, which implies that the Village sought to initiate litigation against Tartikov. Savad Decl. Ex. 17 (N. Sanderson Tr.) 174:4-16, 174:17-175:4; Savad Decl. Ex. 239 ¶¶5-6, 13-14.

439.    Lynn Yagel attempted to organize fundraisers to support the Village's lawsuit with Tartikov. Savad Decl. Ex. 8 (L. Yagel Tr.) 117:2-120:13; Savad Decl. **Ex. 12**8.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Pursuant to FRCP 56(c)(2), Defendants object to the factual propositions contained in Paragraph 439 on the basis that it is inadmissible under Federal Rule of Evidence 402 and 403 as Lynn Yagel was not and has never been a Village official, rendering this statement irrelevant and likely to confuse or mislead the jury.**

**To the extent the Court chooses to consider the statement contained in Paragraph 439 over the objections, admitted in part; disputed in part. Disputed because the testimony and documents cited do not support the purported statement of fact that money was being raised to support "the Village's lawsuit," which implies that the Village sought to initiate litigation against Tartikov. Savad Decl. Ex. 8 (L. Yagel Tr.) 117:2-120:13; Savad Decl. Ex. 128.**

440.    Village residents showed great support for an almost 70% tax hike to cover a "tax stabilization fund" to pay for the Tartikov litigation. Savad Decl. **Ex. 17** (N. Sanderson Tr.). 135:24-137:10; 139:20-141:12; 145:5-146:13; Savad Decl. **Ex. 221**; Savad Decl. **Ex. 225**; Savad Decl. **Ex. 240**; Savad Decl. Ex. 4 (B. Yagel Tr.). 36:16-40:10; Savad Decl. Ex. 85 Savad Decl. Ex. 2 (Cook Tr.) 100:18-101:13; Savad Decl. Ex. 44.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 440 over the objections, admitted in part; disputed in part. The documents and testimony cited do not support the purported statement of fact that the "tax hike" referenced in Paragraph 440 was related only to the litigation. The tax increase was related to the litigation as well as renegotiation of a garbage contact for the Village. See Savad Decl. Ex. 85. Further**

disputed to the extent that Savad Decl. Ex. 44 and 225 do not support the purported statement of fact.

441. N. Sanderson writes in an email to Rita Louie just after the tax hike was approved that if the reporter writing about the tax hike could figure out that the tax hike had to do with "the Tartikov thing", then other people could figure it out as well. Savad Decl. **Ex. 17** (N. Sanderson Tr.). 193:23-194:12; Savad Decl. **Ex. 244**

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 441 over the objections, <u>admitted in part; disputed in part.</u> Admitted that Nicholas Sanderson wrote an e-mail to Rita Louie that stated "if she could figure it out, I guess all the concerned residents can also" in reference to the "Tartikov thing." Defendants object because it is unclear what is meant by the "tax hike" or "the reporter writing about the tax hike." The email cited as Savad Decl. Ex. 244 is dated April 11, 2007 and does not reference a reporter or newspaper article. Mr. Sanderson testified that he did not recall what he was referring to in the email (Savad Decl. Ex. 244).** *See* **Savad Decl. Ex. 17 (N. Sanderson Tr.) 194:10-12. The "tax hike" referenced in Paragraph 441 was approved in 2008 as part of the 2008-2009 budget. Defendants dispute any implication that a 70% tax hike occurred before the litigation with Tartikov began.**

442. Leslie Sanderson said that it would be impossible for the Village to purchase available open land that was offered to it because, based on statements by Village residents, money needed to be used to fight Tartikov. Savad Decl. **Ex. 17** (L. Sanderson Tr.) 216:15-222:4 Savad Decl. **Ex. 169**.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 442 over the objections, <u>admitted in part; disputed in part.</u> Savad Decl. Ex. 17 (L. Sanderson Tr.) 216:15-222:4 is not a citation to the record as there is no Savad Decl. Ex. 17 (L. Sanderson Tr.) 216:15-222:4. Leslie Sanderson's transcript is found at Ex. 11. Defendants note that Leslie Sanderson also states in Exhibit 169 that her views were not those of the Village. See Savad Decl. Ex. 169 ("I will give you my opinion").**

443.  Mayor Marshall made comments on January 9, 2007 about being Trustee Sanderson "slick" about putting proposed local dormitory and wetlands laws on website "in case availability is challenged by others."  Savad Decl. Ex. 3 (Marshall Tr.) 212:23-215:20; Savad Decl. Ex. 82, Savad Decl. Ex. 83.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 443 over the objections, disputed.  The cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 82 includes a message from Mayor Marshall to Nicholas Sanderson which reads:**

> **Very slick. Looks good.**
>
> **Have you gotten anyone from the outside to look at it in case the availability is challenged by the others?**
>
> **Herb**

**Mr. Marshall testified that he had "absolutely no idea" what he was referencing in the email.  Mr. Sanderson also testified that he did not recall what Mr. Marshall meant by the email and that it didn't seem to have anything to do with the wetlands law.  Savad Decl. Ex. 17 (N. Sanderson) 183:3-16.  Mr. Marshall also testified that it was *standard practice* for links of the proposed laws to be put on the website. Savad Decl. Ex. 3 (Marshall Tr.) 212:23-215:20; Savad Decl. Ex. 82.**

**Defendants note that every-other page of Savad Decl. Ex. 3 is not included in the cited exhibit. It appears that every-other page was omitted from Savad Decl. 3.**

### TOTAL EXCLUSION

444.  Tartikov is a religious assembly.  Tauber Decl. ¶22.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 444 over the objections, <u>disputed</u>.  Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs.  *See* (<u>Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc.</u>, August 1, 2004), Gordon Aff. ¶ 23, Ex. 18.**

445.    Tartikov is a religious institution.  Tauber Decl. ¶ 2.

**RESPONSE:**

**<u>Objection</u>:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 445 over the objections, <u>disputed</u>.  Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs.  *See* (<u>Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc.</u>, August 1, 2004), Gordon Aff. ¶ 23, Ex. 18.**

446.    Tartikov's planned facility is a religious structure.  Tauber Decl. ¶ 23-27.

**RESPONSE:**

**<u>Objection</u>:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 446 over the objections, <u>disputed</u>.  Tartikov has never submitted plans to the Village for its planned facilities.  *See* (<u>Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc.</u>, August 1, 2004), Gordon Aff. ¶ 23, Ex. 18.**

447.    Tartikov's educational institution will be purely religious in nature.  Tauber Decl. ¶ 15-21

**RESPONSE:**

**<u>Objection</u>:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 447 over the objections, <u>disputed</u>. Disputed that "Tartikov's educational institution will be purely religious in nature." Tartikov has never submitted plans to the Village for its "educational facility." *See* (Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc., August 1, 2004), Gordon Aff. ¶ 23, Ex. 18.**

<u>Housing is Religious Use</u>

448.    The Plaintiffs sincerely believe as a religious matter that one must exile (with a sense of urgency) himself to a Torah Community in order to live and study there.  Savad Decl. **Ex. 26** (Menczer Tr.) 35:21-36:18; 40:3-41:11; Savad Decl. **Ex. 27** Tauber 30(b)(6) Tr. 27:2-28:22;  Savad Decl. **Ex. 29**, M. Babad 96:16-25; Savad Decl. Ex. 36 (Neuberger Tr.) 85:16-86:22; Neuberger Rep. page 3; Resnicoff Rep. page 27-29; M Menczer MTD Aff ¶ 14, 16; Menczer Decl.¶24,57; Hershkowitz Decl. ¶59,64; Rosenberg Decl.¶61, 66; Resnicoff Decl. ¶116,117.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 448 over the objections, <u>disputed</u>.  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

449.    Without on-campus housing, the plaintiffs cannot accomplish their religious goal. Hershkowitz MTD Aff dated January 10, 2008 ¶ 7; M. Menczer MTD Aff ¶ 6; Resnicoff Decl. ¶107-109, 110-112, 113-117117.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.**

To the extent the Court chooses to consider the statement contained in Paragraph 449 over the objections, <u>disputed</u>. Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

450.    On-campus housing allows students to study at various times of day and night and interact with other rabbinical students and teachers on a continuing basis.  Margulis MTD Aff dated January 10, 2008 ¶ 8; M. Menczer MTD Aff ¶ 6; Menczer Decl.¶55; Hershkowitz Decl. ¶62; Rosenberg Decl.¶63; Resnicoff Decl. ¶112, 116,122; Tauber Decl.¶29.

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 450 over the objections, <u>disputed</u>.  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

451.    A Torah community is one where all of the people's minds are on the Torah. Savad Decl. Ex. 30 (Hershkowitz Tr.) 24:25-25:5; M. Menczer MTD Aff ¶ 6; Resnicoff Decl. ¶107, 110,111.

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 451 over the objections, <u>disputed</u>.  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

452.    To achieve their goals as a Torah scholar as defined by the religious books, the Plaintiffs have to dedicate themselves to a certain kind of study program, studying day and night while being surrounded by other Torah students to the exclusion of all worldly pleasures and distractions.  Savad Decl. **Ex. 26** (Menczer Tr.) 88:18-89:13.Menczer Decl.¶55; Hershkowitz Decl. ¶62; Rosenberg Decl.¶64; Resnicoff Decl. ¶107-122.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 452 over the objections, <u>disputed</u>.  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or that pursuing a study program as described in the cited documents and testimony is the only way to pursue such beliefs.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

453.    Orthodox/ Hasidic Jews believe that a Torah community is a completely religious atmosphere where people live according to Halachic standards. Savad Decl. Ex. 36 (Neuberger Tr.) 45:2-46:12; Tauber Decl.¶21; Resnicoff Decl. ¶110,111.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 453 over the objections, <u>disputed</u>.  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

454.    In a Torah Community, the whole mind of the rabbinical student is in the Torah. To be a rabbinical judge, a student's whole mind has to be in the Torah.   Everyone is living together, of the same mind, with no outside influences to distract them.  Savad Decl. Ex. 30

(Hershkowitz. Tr.)  26:16-24; 27:13-28:3;Resnicoff Decl. ¶116,117; Tauber Decl. ¶16-29;Tauber Decl.¶16-33.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 454 over the objections, disputed.  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

455.    To study the Torah according to religious beliefs, one is required to exile himself into a Torah Community. Savad Decl. **Ex. 27** (Tauber 30(b)(6) Tr. 27:2-20); Savad Decl. **Ex. 25** (Rosenberg Tr.)  36:19-36:17; 37:9-38:2;  Def. Ex. 3; Savad Decl. **Ex. 27** (Tauber 30(b)(6) Tr. 42:2-24); Savad Decl. **Ex. 28**8; Savad Decl. **Ex. 29** (Mordechai Babad Tr.) 96:19-25; Savad Decl. Ex. 30 (Hershkowitz Tr.) 33:11-34:12; Resnicoff Decl. ¶116,117.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 455 over the objections, disputed.  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

456.    It is a religious requirement to live in a Torah community in order to become a Torah scholar; and one must become a Torah scholar before he can become a rabbinical judge. Savad Decl. **Ex. 26** (Menczer Tr.) 86:16-87:12; Savad Decl. Ex. 30 (Hershkowitz Tr.)  79:21-

80:13; 92:25-93:20; Savad Decl. Ex. 36 (Neuberger Tr.) 85:16-86:21;Resnicoff Decl. ¶110,111; Tauber Decl.¶19, 22

**RESPONSE:**

**Objection**:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 456 over the objections, <u>disputed</u>.  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

457.    There is a need for all of the rabbinical scholars to live together in a Torah community in order for program to succeed.  M. Menczer MTD Aff ¶ 12.  Without living in Torah community, one cannot accomplish his religious goal.  Hershkowitz MTD Aff ¶ 7; M. Menczer MTD Aff ¶ 18; Resnicoff Decl. ¶107,108.

**RESPONSE:**

**Objection**:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 457 over the objections, <u>disputed</u>.  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

458.    The Rabbinical College of Tartikov, Inc. was formed for the purpose of developing and operating a rabbinical college as a Torah community, as described by Orthodox/Hasidic religious sages.  Tauber 30(b)(6) 11:20-12:8; Tauber Decl ¶3,6,7.

**RESPONSE:**

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 458 over the objections, <u>disputed.</u>  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants  dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

459.    The Rabbinical College of Tartikov, Inc. cannot offer its religious program to train rabbis to become full-time rabbinical judges (*dayanim*) if it cannot build a Torah Community with on-campus housing. Savad Decl. **Ex. 26** (Meleich Menczer Tr.) 43:13-43:9; 66:23-67:21; Savad Decl. **Ex. 27** (64:19-65:3); Savad Decl. **Ex. 25** (Rosenberg Tr.)  39:2-15.

**RESPONSE:**

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 459 over the objections, <u>disputed.</u>  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants  dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

460.    The Plaintiff students believe as a religious matter that they need to live together and study together in a community committed to Torah.  Savad Decl. **Ex. 26** (Melech Menczer Tr.) 35:21-36:18; 36:19-37:5; 39:14-41:11; Savad Decl. Ex. 30 (Hershkowitz Tr.) 24:13-24; 27:5-16; 28:9-29:10; 30:14-31:14; 81:13-85:17; Savad Decl. **Ex. 29** (Mordechai Babad Tr.) 97:2-5 ; M. Menczer MTD Aff ¶ 6; Tauber Decl.¶19-29

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 460 over the objections, disputed. Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community.** *See e.g.* **Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Further disputed to the extent that Tauber Decl. ¶ 19-2; Savad Decl. Ex. 29 (Mordechai Babad Tr.) 97:2-5 do not support the purported statement of fact.**

461. Plaintiffs believe that living in a Torah Community is essential to the success of the rabbinic program of the Congregation Rabbinical College of Tartikov, Inc. Resnicoff Decl.¶107; Tauber Decl. ¶ 31-37. Tauber Decl.¶16-39.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 461 over the objections, disputed. Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community.** *See e.g.* **Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

462. Tartikov's officers believe, based on their religious background and what is required in their religious books, that students will only be able to complete the rabbinical judge program in all four books of the Shulchan Aruch if they live in the Torah community. Savad Decl. **Ex. 27** (42:11-24).

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 462 over the objections, <u>disputed</u>. Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

463.    A Torah community is necessary because rabbinical students can devote themselves completely to their studies; it creates a situation where they can devote themselves fully to their task at hand without having to deal with other difficulties; it is a rarified atmosphere and is especially important in response to contemporary society because we are trying to live according to Jewish law and the world outside of the Torah community is not in tune with that. Savad Decl. Ex. 36 (Neuberger Tr.) 43:23-44:24; Resnicoff Decl.¶108, 110;S avad Decl. **Ex. 26** Savad Decl. Ex. 34 (Resnicoff Tr.) 9:10-10:13; 16:11-18:19.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 463 over the objections, <u>disputed</u>. Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing, or that the development of a "Torah Community" as defined by the plaintiffs, is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

464.    The Torah community has to encompass the entire community within the campus so no that there are no non-Torah influences or distractions. Savad Decl. **Ex. 26** Savad Decl. Ex. 34 (Resnicoff Tr.) 9:10-10:13; 16:11-18:19; Savad Decl. Ex. 30 (Hershkowitz Tr.) 27:17-28:4; Savad Decl. **Ex. 26** (Menczer Tr.) 36:19-37:5.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 464 over the objections, <u>disputed</u>. Defendants do not dispute Plaintiffs' beliefs as stated therein.

Defendants dispute that the development of multi family housing, is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

465. Rabbinical students must live on campus to learn all 4 volumes of the Shulchan Aruch. Savad Decl. **Ex. 25** (Rosenberg Tr.) 33:19-34:15; 37:2-8; Resnicoff Decl.¶107.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 465 over the objections, underlined disputed. Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

466. Rabbinical students will not be able to achieve the maximum depth of learning the Torah if they do not live on the campus of the Torah Community. They will have to downgrade their level of learning Torah. Savad Decl. **Ex. 26** (Meilech Menczer Tr.) 68:15-69:3; Savad Decl. **Ex. 25** (Rosenberg Tr.) 39:16-41:15.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 466 over the objections, underlined disputed. Defendants do not dispute Plaintiffs' beliefs as stated therein but challenge the statement that students "must" live on campus to achieve their religious goals. Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

467.   Rabbinical students will be immersed in their studies and study more if they live on campus. Savad Decl. Ex. 36 (Neuberger Tr.) 59:16-61:5; Resnicoff Decl.¶112,113,115,116.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 467 over the objections, <u>admitted in part; disputed in part</u>.  Admitted that "living together on campus, of course, makes things a lot easier." Savad Decl. Ex. 36 (Neuberger Tr.) 60:3-8. Disputed to the extent that Paragraph 467 implies that living on campus is required by plaintiffs' religion. Specifically, Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

468.   In a Torah Community, rabbinical students can study at various times of the day or night with other rabbinical students on a continuous basis.  Hershkowitz MTD Aff ¶ 6;Resnicoff Decl.¶112,122; Tauber Decl.28, Rosenberg Decl ¶64; Menczer Decl¶55

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 468 over the objections, <u>admitted in part; disputed in part</u>.  Admitted that "students can study at various times of the day or night with other rabbinical students on a continuous basis." Disputed to the extent that Paragraph 468 implies that living on campus is required by plaintiffs' religion. Specifically, Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

469.   There is currently no Torah community in which the students can live. Menczer Decl.¶60; Hershkowitz Decl. ¶67; Rosenberg Decl.¶69; Savad Decl. Ex. 30 (Hershkowitz Tr.) 94:2-7;

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 469 over the objections, <u>disputed</u>.  Menczer Decl. ¶60; Hershkowitz Decl. ¶67; and Rosenberg Decl. ¶ 69 all state that they "know of no other Torah Community…" Menczer, Hershkowitz, and Rosenberg do not have sufficient personal knowledge to support the definitive statement made in Paragraph 469.  Also, Savad Decl. Ex. 30 (Hershkowitz Tr.) 94:2-7 does not support the purported statement of fact.  Rabbi Hershkowitz states, that he does not currently have the ability to live in a Torah community, not that there is no Torah community in which he can live.

470.     There is no opportunity to study the complete Shulchan Aruch in America and in specifically around the Town of Ramapo, N.Y. in the manner that the Plaintiffs believe is necessary because of the need for a Torah community to accommodate such religious study.  M Menczer MTD Aff ¶ 5;Menczer Decl.¶60; Hershkowitz Decl. ¶67; Rosenberg Decl.¶69;

<u>RESPONSE:</u>

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 470 over the objections, <u>disputed</u>.  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

471.     The  Rabbinical College cannot adequately function without housing its students. Savad Decl. **Ex. 26** (Meleich Menczer Tr.) 35:6-11; Resnicoff Decl.¶107;  Savad Decl. **Ex. 25** (Rosenberg Tr.) 55:9-56:16 .  A student could not study all 4 books of the Shulchan Aruch at a school such as Kollel Belz because it is a much shorter studying day. Savad Decl. **Ex. 27** (27:21-28:22);Hershkowitz Decl. ¶41-47; Rosenberg Decl.¶43-49;

<u>RESPONSE:</u>

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.  Defendants also

object to the extent this paragraph contains multiple factual contentions in violation of
Local Rule 56(1)(a).

To the extent the Court chooses to consider the statement contained in Paragraph 471 over
the objections:

As to sentence one, <u>disputed</u>. Defendants do not dispute Plaintiffs' beliefs as stated therein
but challenge the statement that a "Rabbinical College cannot adequately function without
housing…." Specifically, Defendants dispute that the development of multi family housing
is exclusively in furtherance of their religious beliefs or the only way of achieving their
religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a
synagogue to become a rabbinical judge).

As to sentence two, <u>disputed</u>. None of the cited documents or testimony support the
assertion that a student "could not" study all four books in a different environment. *See*
Savad Decl. Ex. 27 (30(b)(6) deposition of Defendant, May 5, 2014)27:21-28:22 ("those who
are not living in Torah communities are not able *in most of the cases* to pull through with
such a strong commitment of a 15 year program…") (emphasis added); Hershkowitz Decl.
¶41-47 (testimony specific to his experience only); Rosenberg Decl. ¶ 43-49 (same).

472.    There is a high dropout rate at other programs which do not provide the rabbinical
students with housing in a Torah Community. Savad Decl. **Ex. 27** (27:21-28:19).

<u>RESPONSE:</u>

<u>Objection:</u>  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 472 over
the objections, <u>admitted in part; disputed in part</u>. Admitted that Tauber testified that
some students drop out of full time study programs without on-campus housing. Disputed
that Tauber has adequate personal knowledge to and is therefore not competent to qualify
the rate of drop-out students at other programs teaching the Shulchan Aruch or to make a
correlation between on-campus housing and program success. *See* FRCP 602.

473.    Other programs that do not provide housing as part of the Torah Community are
unable to complete all four books of the Shulchan Aruch. Savad Decl. **Ex. 27** ( 63:18-
64:9).Menczer Decl.¶60; Hershkowitz Decl. ¶67; Rosenberg Decl.¶69;

<u>RESPONSE:</u>

**Objection**: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 473 over the objections, <u>disputed</u>. The cited documents and testimony do not support the purported statement of fact. Tauber, Menczer, Hershkowitz, and Rosenberg do not have personal knowledge of all "[o]ther programs" teaching the four books of the Shulchan Aruch. *See* FRCP 602.

474.    Kollel Belz is not a Torah community.  It is a general *kollel* where all different types of students come to learn; they get married and then they leave to go to work.  Even though they learn, learning is not their goal in life.  Savad Decl. Ex. 30 (Hershkowitz. Tr.)  25:6-20; 26:7-27:10.

**RESPONSE:**

**Objection**: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 474 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. Further, although Hershkowitz testified that Kollel Belz is not a Torah community, his statement is inadmissible opinion testimony not based on his personal knowledge. *See* FRCP 56(c)(1)(B)(4).

475.    Kollel Beth Yechiel Mechil of Tartikov of Brooklyn is not a Torah community. Savad Decl. Ex. 30 (Hershkowitz Tr.)  59:15-61:17.

**RESPONSE:**

**Objection**: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 475 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 30 (Hershkowitz Tr.)  59:15-61:17.

476.    Congregation Rabbinical College of Tartikov, Inc. intends to provide housing, synagogue, shul, library, and courtrooms as part if [*sic*] its use of the subject property as a Rabbinical College.  Tauber Decl. ¶23-27.

**RESPONSE:**

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 476 over the objections, <u>disputed</u>. Defendants dispute that the cited testimony and documents support the assertion of what plaintiffs "will" do. No sketches, plans or other like materials as to what Tartikov intends to build have been produced in this case, other than self-serving testimony. Tauber Decl.¶ 23. Defendants do not dispute that the testimony cited is consistent with the above paragraph, but Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

477.   The rabbinical college will provide a large study hall capable of holding all of the full-time rabbinical students together in one room so they can learn in the proper way according to our religion in this Torah Community.  Tauber Decl.¶ 23.

**RESPONSE:**

<u>Objection</u>: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 477 over the objections, <u>disputed</u>. Defendants dispute that the cited testimony and documents support the assertion of what plaintiffs "will" do. No sketches, plans or other like materials as to what Tartikov intends to build have been produced in this case, other than self-serving testimony. Tauber Decl.¶ 23. Defendants do not dispute that the testimony cited is consistent with the above paragraph, but Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

478.   The rabbinical college will provide facilities where the students can take their lunches together during the day, which will allow them to stay at the school and continue religious learning without interruption.  Tauber Decl. ¶ 25.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 478 over the objections, <u>disputed</u>. Defendants dispute that the cited testimony and documents support what plaintiffs "will" do.

479.    The Village believes that Tartikov wants to build a rabbinical college. Defendants' 30(b)(6) Tr 240:24-25.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 479 over the objections, <u>admitted in part; disputed in part</u>. Admitted that the Village believes "Tartikov wants to build a rabbinical college." Disputed because the cited testimony is incomplete and taken out of context. Ms. Ulman testified that "We don't know what the Rabbinical College is because no one has told us." Savad Decl. Ex. 12 (Village 30(b)(6) Day 1 Tr.) 240:24-241:3.

480.    The Village has no facts to indicate that Plaintiffs' intended use of the subject property is not motivated by their religious beliefs. Savad Decl. **Ex. 12** 279:15-18;280:12-16.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 480 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact (there is no page 279 or 280 in Savad Decl. Ex. 12).

481.    The Village has no facts to indicate that Plaintiffs' religious beliefs are not sincere. Savad Decl. **Ex. 12** 279:19-25; 280:17-20.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 481 over the objections, <u>admitted</u> as to Plaintiffs' specifically stated religious beliefs.**

482.    The Village admits that housing could be a religious use. Defendants' 30(b)(6) 16:21-17:19; 24:6-25:7; 30:4-21; 50:10-53:8.

**<u>RESPONSE</u>:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 470 over the objections, <u>disputed</u>.  The testimony referenced by Plaintiffs is taken out of context. Ms. Ulman testified that "housing is a residential use and not a religious use." Savad Ex. 12 (Village 30(b)(6) Day 1 Tr.) 16:7-9. Ms. Ulman testified that religious use could be *accessory* to residential use. *Id.* at 17:5-19.**

483.    The Village is a "jurisdiction," and both the Village and the Board of Trustees are "governments" under RLUIPA.  Request for Admission Response Nos. 16, 38, 39.

**<u>RESPONSE</u>:**

**<u>Objection</u>:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 483 over the objections, <u>admitted</u>.**

484.    The Village has admitted that both the Zoning and Wetlands Protection chapters of its Code are "land use regulations."  Request for Admission Response Nos. 17, 18.

**<u>RESPONSE</u>:**

**<u>Admitted</u>.**

485.    The challenged zoning provisions and the WPL has been imposed upon the Plaintiff Congregation Rabbinical College of Tartikov, Inc.  Request for Admission Response No. 29.

**RESPONSE:**

**Objection:** Defendants object as this statement is a conclusion of law, not a factual statement.

**To the extent the Court chooses to consider the statement contained in Paragraph 485 over the objections, <u>disputed</u>. The cited document does not support the purported statement of fact. (Request for Admission #29 states, "Admit that the use of the Subject Property is subject to the Village's land use regulations."). The challenged zoning provisions and the WPL have never been "imposed" on plaintiffs—plaintiffs have not submitted an application to the Village. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep. May 5, 2014) 19:1-20:5**

486.     The housing component of the rabbinical college is only for students (and teachers) who are committed to the full-time religious training program along with their families, as well as one or two caretakers of the subject property.  Savad Decl. **Ex. 27** (12:9-13:3; 156:6-15); Savad Decl. Ex. 36 (Neuberger Tr.) 52:8-53:2; Savad Decl. Ex. 30 (Hershkowitz Tr.) 83:16-85:17; Savad Decl. **Ex. 18** (Voorhis Tr.) 175:19-22 (above).

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 486 over the objections, <u>disputed</u>.  Defendants dispute that the cited testimony and documents support what plaintiffs "will" build or what activities will be carried out.  Defendants do not dispute that some of the testimony cited is consistent with the above paragraph, but Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Further disputed to the extent that Savad Decl. Ex. 36 (Neuberger Tr.) 52:8-53:2 and Savad Decl. Ex. 18 (Voorhis Tr.) 175:19-22 do not support the purported statement of fact.**

487.     Students who drop out of the full-time religious training program will have to move out of the housing at the rabbinical college.  Savad Decl. **Ex. 26** Savad Decl. Ex. 31 (Chaim Babad Tr.) 183:13-25

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 487 over the objections, <u>disputed</u>. The cited testimony in Savad Decl. Ex. 31 does not support the purported statement of fact because it is ambiguous and inconclusive. *See* Savad Decl. Ex. 31 (Chaim Babad Tr.) 183:13-25 ("No, they'll probably have to move. I mean, there's no need."). Further, Savad Decl. Ex. 26 is not accurately cited and defendants cannot identify what plaintiffs intend to rely on.

488.    The Congregation Rabbinical College of Tartikov, Inc. will require students to live on the campus of the rabbinical college and the housing will be provided by the Congregation Rabbinical College of Tartikov, Inc. at no cost to them. Savad Decl. **Ex. 27** (28:20-22); Savad Decl. Ex.30 (Hershkowitz Tr.) 72:12-21.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 488 over the objections, <u>admitted in part; disputed in part</u>. Defendants dispute that the cited testimony and documents support what plaintiffs "will" do. Defendants do not dispute that the testimony cited is consistent with the above paragraph, but Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

489.    Housing is required for the rabbinical college use. Savad Decl. **Ex. 26** Savad Decl. Ex. 35 (Weinstein Tr.) 22:18-23:8; 23:12-24:15; Weinstein Decl.¶¶ 11-47; Resnicoff Decl. ¶107.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 489 over the objections, <u>disputed</u>. Defendants dispute that the development of multi family housing

is exclusively in furtherance of their religious beliefs or the only way of achieving / is required by their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

490.    There is more need for more housing at theological schools and schools of religious studies than for secular schools. Savad Decl. Ex. 35 (Weinstein Tr.) 28:14-29:5; Weinstein Decl. ¶¶ 135-142.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the factual propositions contained in Paragraph 490 over the objections, admitted in part; disputed in part. The deposition testimony cited by the Plaintiffs does not support the purported statement of fact that there is a greater need for housing at theological schools. In Savad Decl. Ex. 35 Weinstein's testimony is related only to the "needs" of the hypothetical rabbinical college. (Weinstein Tr., 28:14-29:5). Admitted that Weinstein Decl. ¶¶ 135-142 does state, "Religious educational institutions overwhelmingly have greater need for more on-campus housing."

491.    The on-campus residential experience can be essential to the educational experience. Savad Decl. Ex. 35 (Weinstein Tr.) 62:10-63:6; 63:13-64:5; Weinstein Decl. ¶ 51; Resnicoff Decl. ¶107-122.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 491 over the objections, Defendants do not dispute that the improper expert testimony cited is consistent with the above paragraph.

492.    Providing housing on campus is critical to the success of the proposed rabbinical college program. Resnicoff Decl. ¶107-122.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 492 over the objections, Defendants <u>admitted</u> that the cited declaration states as such.

The Students are Required to Live with Their Families With Cooking, Dining and<br>Housekeeping Facilities

493.    It is the students' religious belief that they must live with their families in order to raise their family in a religious environment. Savad Decl. **Ex. 27** 26: 7-26; 84:4-24; 106:24-107:9; Savad Decl. **Ex. 30** (Hershkowitz Tr.) 92:25-93:20; Savad Decl. **Ex. 26** (Menczer Tr.) 45:16-46:8; Savad Decl. **Ex. 25** (Rosenberg Tr.) 34:16-24; Resnicoff Decl. ¶112.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 493 over the objections, Defendants <u>do not dispute</u> Plaintiffs' beliefs as stated therein. Disputed to the extent that Resnicoff Decl. ¶112 does not support the purported statement of fact.

494.    The rabbinical students need a separate area where they can study and live with their families. Savad Decl. Ex. 31 (Chaim Babad Tr.) 98:19-25; M. Menczer MTD Aff ¶ 15; Tauber Decl. ¶ 30,32.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 494 over the objections, <u>disputed</u>. The documents and testimony cited do not support the purported statement of fact. *See* Savad Decl. Ex. 31 (Chaim Babad Tr.) 98:19-25; M. Menczer MTD Aff ¶ 15; Tauber Decl. ¶ 30, 32.

495.     The Torah Community is like a monastery, but unlike Catholic seminarians or Buddhist monks, Plaintiffs' religious beliefs require them to be married and have children. M. Menczer MTD Aff ¶ 15.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 495 over the objections, disputed.  Although Menczer's declaration is consistent with the asserted fact, his statement is inadmissible opinion testimony, which is not based on his personal knowledge. *See* FRCP 56(c)(1)(B)(4).**

496.     When The Congregational Rabbinical College of Tartikov, Inc. was formed, the understanding was that the planned rabbinical college would be only for students (and teachers) committed to the full-time program, along with their families. Savad Decl. **Ex. 27** (12:12-13:3); Savad Decl. Ex. 38 (Jackson Tr.) 34:6-17

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 496 over the objections, disputed.  Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving/is required by their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).  Paragraph 496 is also vague and does not explain between whom the "understanding" existed.**

497.     Every day that the project remains unbuilt, the Village is "intruding" on the Plaintiff students' rights to study and live with their family in Torah Community.  Savad Decl. **Ex. 27** 126:16-127:17.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 497 over the objections, disputed.  Defendants do not dispute Plaintiffs' beliefs as stated therein.**

Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Defendants further dispute Plaintiff's argumentative characterization of "intrusion" on the Plaintiff students' rights.

498.    Most colleges have family housing for students. Weinstein Decl. ¶¶ 15, 19-20; Savad Decl. Ex. 37 (Fitzpatrick Tr.) 59:14-60:10; Savad Decl. Ex. 32 (Drake Tr.) 87:14-88:5; Drake Decl. ¶8.

**RESPONSE:**

**Objection:** Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 498 over the objections, <u>disputed</u>. Weinstein Decl. ¶¶ 15, 19-20 does not support the purported statement of fact. Weinstein's declaration states that "[i]t is extremely *common* for educational institutions *offering post-baccalaureate degree programs* to provide housing options...." Weinstein Decl. ¶ 15 (emphasis added). Fitzpatrick is not qualified to provide an opinion regarding the availability of family housing for students. *See* Fitzpatrick Decl. ¶ 8 (retained only to assess existing road network). Drake Decl. ¶8 is unrelated to the assertion made in paragraph 498. Also, Drake is not qualified to provide an opinion regarding the availability of family housing for students. *See* Drake Decl. ¶¶ 2-5 (experience only as an architect and landscape architect).

499.    Because Plaintiffs' religious belief is that the students at the rabbinical college must live with their families, the rabbinical college students required their own housing unit with separate cooking facilities. Savad Decl. **Ex. 27** 84:4-24; Tauber Decl.¶ 32.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 499 over the objections, <u>disputed</u>. Specifically, Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of

**achieving / is required by their religious beliefs.** *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

500.     The Village has no facts to indicate that Plaintiffs' need to live with their family, and therefore to have housekeeping facilities, is not motivated by their religious beliefs.   Savad Decl. **Ex. 12** ( 279:15-18); 280:12-16.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 500 over the objections, disputed.  Savad Decl. Ex. 12 ( 279:15-18); 280:12-16 is not a citation to the record.  There are only 247 pages of testimony in Savad Decl. Ex. 12.**

501.     The Village has no facts to indicate that Plaintiffs' religious beliefs concerning the need to live with their families are not sincere.  Savad Decl. **Ex. 12** (279:19-25; 280:17-20).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 501 over the objections, disputed.  Savad Decl. Ex. 12 ( 279:15-18); 280:12-16 is not a citation to the record.  There are only 247 pages of testimony in Savad Decl. Ex. 12.**

<u>Courtroom on campus</u>

502.     Plaintiffs intend for the rabbinical college to provide the opportunity for the rabbinical students to observe how rabbinical judges fulfill their duties.  This experience is necessary for everyone who wants to become a judge, and is called Shimush (rabbinic apprenticeship).  Savad Decl. **Ex. 25** (Rosenberg Tr.) 26:21-27:14; Savad Decl. **Ex. 26** (Menczer Tr.) 96:19-97:2; Tauber Decl.¶27; Resnicoff Decl ¶121.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert**

opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 502 over the objections, <u>admitted in part; disputed in part.</u> Defendants challenge plaintiffs' assertion that providing courtrooms *on campus* is required by their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Defendants do not dispute that Plaintiffs have made statements in support of this assertion.

503.    *Shimush Talmidei Chachamim* describes the rabbinical students' observation of judges hearing cases. Savad Decl. **Ex. 26** (Menczer Tr.) 96:9-97:17;Resnicoff Decl ¶121.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 503 over the objections, <u>admitted</u> that the cited reference supports the statement.

504.    The Congregation Rabbinical College of Tartikov, Inc. intends to provide at least four courtrooms on the campus as part of the educational institution. Savad Decl. **Ex. 28** (Tauber Tr.) 160:7-161:2; Tauber Decl.¶27.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 504 over the objections, <u>admitted in part; disputed in part.</u> Plaintiffs have not submitted an application to the Village so there is no evidence on the record of how many courtrooms that will provide. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep. May 5, 2014) 19:1-20:5 Defendants do not dispute that Plaintiffs have made statements in support of the purported "fact" at issue. Savad Decl. Ex. 28 (Tauber Tr.) 160:7-161:2; Tauber Decl.¶27.

505.    The religious basis for courtrooms being on the campus is rooted in the same religious sources which requires the training of rabbinical judges, because Plaintiffs need

courtrooms to do the training.  Savad Decl. **Ex. 27** ( 38:19-40:11); Savad Decl. **Ex. 25**
(Rosenberg Tr.) 34:25-35:18; Resnicoff Decl ¶121.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants object because this statement improperly contains purported expert
opinion, subject to striking on several grounds, as discussed in detail in Defendants'
Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 505 over
the objections, admitted in part; disputed in part.  Defendants challenge the statement that
providing courtrooms _on campus_ is required by their religious beliefs.  _See e.g._ Savad Decl.
Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).
Defendants do not dispute that Plaintiffs have made statements in support of the purported
"fact" at issue.**

 

506.    Courtrooms are needed on the rabbinical college's campus in order for its students
to be able to observe senior rabbinical judges hearing actual disputes.  The students will be
learning in the upstairs of the building while real cases are being heard downstairs. Savad Decl.
**Ex. 27** (34:17-36:24);Resnicoff Decl ¶121;Tauber ¶30.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants object because this statement improperly contains purported expert
opinion, subject to striking on several grounds, as discussed in detail in Defendants'
Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 506 over
the objections, admitted in part; disputed in part.  Defendants challenge the statement that
providing courtrooms _on campus_ is required by their religious beliefs.  _See e.g._ Savad Decl.
Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).
Defendants do not dispute that Plaintiffs have made statements in support of the purported
"fact" at issue.**

 

507.    Having courtrooms on the campus is essential to the religious learning, so the
students and the judges can be together.  Savad Decl. **Ex. 27** (37:23-38:17); Savad Decl. **Ex. 26**
(Menczer Tr.) 96:9-18;Resnicoff Decl ¶121.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 507 over the objections, <u>admitted in part; disputed in part.</u> Defendants challenge the statement that providing courtrooms *on campus* is required by their religious beliefs. *See e.g.* Savad Decl. **Ex. 26** (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Defendants do not dispute that Plaintiffs have made statements in support of the "fact" at issue.

508.    It is a religious requirement for the rabbinical students to observe court proceedings. Savad Decl. **Ex. 26** (Menczer Tr.) 97:12-17. The authority comes from the Torah in general. Savad Decl. **Ex. 27** (38:18-39:22; 39:23-40:11; 40:12-41:25);Resnicoff Decl. ¶121.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 508 over the objections, Defendants <u>do not dispute</u> Plaintiffs' beliefs as stated therein.

509.    The rabbinical students need to be in close proximity to senior judges while studying for as well as providing research assistance to the judges for use in their cases.   Savad Decl. **Ex. 27** (36:25-37:21);Resnicoff Decl ¶121.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 509 over the objections, Defendants <u>do not dispute</u> Plaintiffs' beliefs as stated therein.

510.    The Village has no facts to indicate that Plaintiffs' need to include courtroom facilities is not motivated by their religious beliefs.   Savad Decl. **Ex. 12** (279:15-18; 280:12-16).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 510 over the objections, <u>disputed</u>.  There is no evidence to support this statement.  Savad Decl. Ex. 12 (279:15-18; 280:12-16) is not a citation to the record.  There are only 247 pages of testimony in Savad Decl. Ex. 12.**

511.    The Village has no facts to indicate that Plaintiffs' religious beliefs concerning the need to include courtroom facilities are not sincere. Savad Decl. **Ex. 12** (279:19-25; 280:17-20).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 511 over the objections, <u>disputed</u>.  There is no evidence to support this statement.  Savad Decl. Ex. 12 (279:19-25; 280:17-20) is not a citation to the record.  There are only 247 pages of testimony in Savad Decl. Ex. 12.**

<u>Library on Campus</u>

512.    The religious basis for a library on campus is rooted in the same religious sources which requires them to train rabbinical judges because students need to have access to religious books for their studies.  Savad Decl. **Ex. 27** (42:25-43:9); Savad Decl. **Ex. 26** (Menczer Tr.) 98:4-18; M. Babad 97:15-98:6.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 512 over the objections, <u>admitted in part; disputed in part</u>.  Defendants challenge the statement that providing a library *on campus* is required by their religious beliefs.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

**Defendants do not dispute that Plaintiffs have made statements in support of the "fact" at issue.**

513.    The rabbinical college will provide libraries that will contain all of the books necessary for the students to learn according to our religion and to become proficient in the Code of Jewish Law in this Torah Community.  Tauber Decl. ¶24.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 513 over the objections, admitted in part; disputed in part.  Defendants challenge the statement that providing a library *on campus* is required by their religious beliefs.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Defendants do not dispute that Plaintiffs have made statements in support of the "fact" at issue.**

514.    Going off campus to a library is a disruption of studies. Savad Decl. **Ex. 26** (Menczer Tr.) 98:19-99:9.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts**

**To the extent the Court chooses to consider the statement contained in Paragraph 514 over the objections, Defendants do not dispute that Plaintiffs have made statements in support of this purported statement of fact.**

515.    A college campus typically includes libraries.  Savad Decl. Ex. 32 (Drake Tr.) 61:9-62:5.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 515 over the objections, <u>admitted</u>.**

516.    The Village has no facts to indicate that Plaintiffs' need to include libraries is not motivated by religious beliefs. Savad Decl. **Ex. 12** (279:15-18; 280:12-16).

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 516 over the objections, <u>disputed</u>. Defendants challenge the statement that providing libraries *on campus* is required by their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Further, Savad Decl. Ex. 12 (279:15-18; 280:12-16) is not a citation to the record. There are only 247 pages of testimony in Savad Decl. Ex. 12.**

517.    The Village has no facts to indicate that Plaintiffs' religious beliefs concerning the need to include libraries are not sincere.   Savad Decl. **Ex. 12** (279:19-25; 280:17-20).

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 517 over the objections, <u>disputed</u>. Defendants challenge the statement that providing libraries *on campus* is required by their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Further, Savad Decl. Ex. 12 (279:19-25; 280:17-20) is not a citation to the record. There are only 247 pages of testimony in Savad Decl. Ex. 12.**

<u>Mikvah on campus</u>

518.    Tartikov intends to provide *mikvahs* (ritual baths) on its rabbinical college campus. Savad Decl. Ex. 34 (Resnicoff Tr.) 5:23-6:14; Savad Decl. **Ex. 25** (Rosenberg Tr.) 33:7-18; Savad Decl. Ex. 36 (Neuberger Tr.) 24:2-23; Tauber Decl. ¶26.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 518 over the objections, <u>admitted in part; disputed in part</u>. Defendants challenge the statement that providing a *mikvahs* (ritual baths) *on campus* is required by their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Defendants do not dispute that Plaintiffs have made statements in support of the purported statement of fact.

519.    The religious need for *mikvah* is based in the Talmud and many other places. Tauber 30(b)(6) Tr. 43:10-14; Resnicoff Decl. ¶¶ 100-106.

<u>RESPONSE</u>:

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 519 over the objections, <u>admitted in part; disputed in part</u>. Defendants challenge the statement that providing *mikvahs* (ritual baths) *on campus* is required by their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Defendants do not dispute that Plaintiffs have made statements in support of the purported "fact" at issue.

520.    The rabbinical college has to have a ritual bath (*mikvah*).  Savad Decl. Ex. 34 (Resnicoff Tr.) 7:16-8:16.

<u>RESPONSE</u>:

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 520 over the objections, <u>admitted in part; disputed in part</u>. Defendants challenge the statement that providing *mikvahs* (ritual baths) *on campus* is required by their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a

rabbinical judge).  Defendants <u>do not dispute</u> that Plaintiffs have made statements in support of the "fact" at issue, but dispute the sincerity of those beliefs/statements.

521.    The Village has no facts to indicate that Plaintiffs' need to include *mikvahs* is not motivated by religious beliefs.  Savad Decl. **Ex. 12** (279:15-18; 280:12-16).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 521 over the objections, <u>disputed</u>. Defendants challenge the statement providing *mikvahs* (ritual baths) *on campus* is required by their religious beliefs.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Further, Savad Decl. Ex. 12 (279:15-18; 280:12-16) is not a citation to the record.  There are only 247 pages of testimony in Savad Decl. Ex. 12.**

522.    The Village has no facts to indicate that Plaintiffs' religious beliefs concerning its need to include *mikvahs* are not sincere. Savad Decl. **Ex. 12** (279:19-25; 280:17-20).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 522 over the objections, <u>disputed</u>.  Defendants challenge the statement that providing *mikvahs* (ritual baths) *on campus* is required by their religious beliefs.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge). Further, Savad Decl. Ex. 12 (279:19-25; 280:17-20) is not a citation to the record.  There are only 247 pages of testimony in Savad Decl. Ex. 12.**

Shul on campus

523.    Tartikov has to have *shuls* (synagogues) on campus so that everyone at the campus prays together. Savad Decl. **Ex. 26** (Menczer Tr.) 34:5-35:11; Savad Decl. Ex. 30 (Hershkowitz Tr.) 72:2-7; Savad Decl. **Ex. 25** (Rosenberg Tr.) 33:7-16; Savad Decl. Ex. 35 (Weinstein Tr.) 20:20-22:17 (not offering expert opinion on this); Savad Decl. Ex. 36 (Neuberger Tr.) 24:2-23;Tauber Decl. ¶22.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 523 over the objections, <u>disputed</u>. Defendants challenge the statement that providing *shuls* (synagogues) *on campus* is required by their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

Further, the cited testimony does not support the purported statement of fact. All but one of the citations provided by plaintiffs support this purported "fact" that plaintiffs *must* have a *shul on campus*. *See* Savad Decl. Ex. 30 (Hershkowitz Tr.) 72:2-7 (what they were told/believe will be at the hypothetical college); Savad Decl. Ex. 25 (Rosenberg Tr.) 33:7-16 (same); Savad Decl. Ex. 36 (Neuberger Tr.) 24:2-23 (same); Savad Decl. Ex. 35 (Weinstein Tr.) 20:20-22:17 ("I am relying on the representations that were made to me by Michael Tauber or by John [Tartikov counsel] or Roman [Tartikov counsel] as to what's required, and as to the factual truth of those representations, I don't feel that I'm qualified."); Tauber Decl. ¶22 ("The Torah Community will also be a place of religious assembly.")

524. A *shul* is a physical indicator of a Torah Community. Savad Decl. Ex. 30 (Hershkowitz Tr.) 31:15-32:2.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 524 over the objections, <u>admitted</u> that Hershkowitz testified as such.

525. Tartikov may need different shuls for Ashkenazi and Sephardic sects. Savad Decl. **Ex. 29** (M. Babad Tr.) 99:19-10.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 525 over the objections, <u>admitted</u> that Babad testified as such.

526. *Shuls*, libraries, courtrooms, and classrooms constitute religious exercise and religious land use. Request for Admission Response Nos. 20, 21, 22, 23, 24.

**RESPONSE:**

**Objection:** Defendants object as this statement is a conclusion of law, not a factual statement.

**To the extent the Court chooses to consider the statements contained in Paragraph 526 over the objections, admitted in part; disputed in part. Disputed to the extent that Paragraph 526 refers broadly to all libraries, courtrooms, and classrooms. Admitted that *shuls*, libraries used solely for non-secular purposes, courtrooms used solely for *bais din*, and classrooms used solely to train rabbinical judges constitute religious exercise and religious land use.**

527. The Village has no evidence that the housing component of the rabbinical college is not religious exercise and religious land use. Interrogatory Response No. 37.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement.

**To the extent the Court chooses to consider the statement contained in Paragraph 527 over the objections, disputed. See Defendants' Amended Responses, Interrogatory No. 37 (citing *Westchester Day School v. Village of Mamaroneck*).**

Curriculum/ Program

528. Rabbinical students will study the Four Books of the Shulchan Aruch. Savad Decl. **Ex. 25** (Rosenberg Tr.) 14:6-20; 32:8-33:6; Savad Decl. **Ex. 26** (M. Menczer Tr.) 17:11-21; 21:13-23:24; 23:21-24:11; Savad Decl. Ex. 30 (Hershkowitz Tr.) 55:4-11; 65:4-11; Savad Decl. Ex. 36 (Neuberger Tr.) 23:14-25;Resnicoff Decl. Ex. 34; Tauber 30(b)(6) 21:15-22:11; Savad Decl. **Ex. 29** (M. Babad Tr.) 71:23-73:25; 74:12-76:4; Savad Decl. **Ex. 25** (Rosenberg Tr.) 30:18-31:8; 32:8-33:6; Savad Decl. Ex. 34 (Resnicoff Tr.)  47:13-48:21;Menczer Decl.¶46; Hershkowitz Decl. ¶53; Rosenberg Decl.¶55;

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 528 over the objections, <u>admitted in part; disputed in part</u>.  Admitted that Rosenberg, Menczer, Hershkowitz, and Neuberger testified as to what they were told would be taught at the hypothetical college.  Disputed as to what Plaintiffs actually intend to occur on the hypothetical campus—plaintiffs have not submitted an application to the Village.  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep. May 5, 2014) 19:1-20:5.


529.    Every Orthodox Jew learns some part of four books of the Shulchan Aruch; but the students at Tartikov will learn all of the volumes of the Shulchan Aruch.  Savad Decl. **Ex. 29** (M. Babad Tr.) 22:3-24:23.

<u>RESPONSE</u>:

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 529 over the objections, <u>admitted</u> that Babad testified as such.


530.    Living in a Torah Community supports this intensive study.  Savad Decl. **Ex. 27** (42:2-21).Resnicoff Decl.¶107-122.

<u>RESPONSE</u>:

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts

To the extent the Court chooses to consider the statement contained in Paragraph 530 over the objections, <u>admitted</u> that Tauber and Resnicoff (an expert witness for Plaintiffs) testified as such.


531.    The students require approximately thirteen to fifteen years of study for completion of all four books of the Shulchan Aruch.  Savad Decl. **Ex. 26** (M. Menczer Tr.) 80:19-23; Savad Decl. **Ex. 25** (Rosenberg Tr.) 14:6-20; Savad Decl. **Ex. 29** (M. Babad Tr.) 66:17-69:9; 69:10-71:3; Savad Decl. **Ex. 26** (M. Menczer Tr.) 78:25-79:11; M. Menczer MTD Aff ¶ 6; Savad Decl. Ex. 30 (Hershkowitz Tr.) 44:3-18; Hershkowitz 44:19-47:9 ; Savad Decl.

**Ex. 29** (M. Babad Tr.) 65:8-66:16; Savad Decl. Ex. 34 (Resnicoff Tr.) 51:2-52:15; 53:11-54:14; Tauber Decl. ¶18.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts

To the extent the Court chooses to consider the statement contained in Paragraph 531 over the objections, <u>admitted</u> that Menczer, Rosenberg, Babad, Hershkowitz, Tauber and Resnicoff testified as such.

532.    This lengthy period of study is necessary because of the complexity of the third and fourth volume of the Shulchan Aruch. M. Menczer MTD Aff ¶ 4; Resnicoff Decl.¶71-73.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 532 over the objections, <u>admitted</u> that Menczer and Resnicoff testified as such.

533.    The proposed course of study is longer than other rabbinic programs because it is designed for full-time religious law judges. Most rabbinic programs are to train pulpit rabbis, not Jewish law scholars. Resnicoff Decl.¶73

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statement contained in Paragraph 533 over the objections, <u>admitted</u> that Plaintiffs' expert Resnicoff testified as such.

534.    Tartikov has an excellent curriculum because it covers all four topics of Shulchan Aruch. Savad Decl. Ex. 34 (Resnicoff Tr.) 42:6-43:16; Menczer Decl.¶46,47; Hershkowitz Decl. ¶53,54; Rosenberg Decl.¶55,56;

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 534 over the objections, <u>admitted in part; disputed in part</u>. Defendants dispute that Plaintiffs have developed a curriculum that will be used at the hypothetical college. Gordon Aff. Ex. 10, 21. Admitted that the individuals cited above testified as such.**

535.    Tartikov's program is comprehensive and well structured.  Savad Decl. Ex. 36 (Neuberger Tr.) 74:12-75:7; Resnicoff Decl.¶71-85.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 535 over the objections, <u>admitted in part; disputed in part</u>. Defendants dispute that Plaintiffs have developed a curriculum that will be used at the hypothetical college. Gordon Aff. Ex. 10, 21. Admitted that Neuberger and Resnicoff (Plaintiffs' purported expert) testified as such.**

536.    After studying portions-of the curriculum, students will be given oral and/or written tests. Savad Decl. **Ex. 29** (M. Babad Tr.) 76:5-79:16; Savad Decl. **Ex. 27** (156:16-158:7); Savad Decl. Ex. 30 (Hershkowitz Tr.) 21:13-16; Tauber Decl. ¶9-10.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 536 over the objections, <u>admitted</u> that Neuberger, Tauber, and Resnicoff testified as such.**

Full-time study

537.    The students at the rabbinical college will study from 6:00am-10:30pm Sunday through Thursday, with relatively short intervals for meals, prayers, time with family and perhaps a little rest.  Menczer Decl.¶50; Hershkowitz Decl. ¶57; Rosenberg Decl.¶59;

219

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 537 over the objections, **admitted** that Menczer, Hershkowitz, and Rosenberg testified as such.

538.    The students will also have study sessions on Friday morning and on the Sabbath. Resnicoff Decl. ¶85.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 538 over the objections, **admitted** that Resnicoff (Plaintiffs' expert witness) testified as such.

539.    It is Tartikov's religious belief that students at its rabbinical college should study full-time. Savad Decl. **Ex. 28 (Tauber Tr.) 7:5-12**

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 539 over the objections, **admitted in part; disputed in part.** Defendants challenge the proposed rabbinical college and what it "intends" to provide on its hypothetical campus—plaintiffs have not submitted an application to the Village. Savad Decl. **Ex. 27 (Tartikov 30(b)(6) Dep. May 5, 2014) 19:1-20:5** Defendants do not dispute that Tauber testified that "our religious belief, that we need to study full time." Savad Decl. **Ex. 28 (Tauber Tr.) 7:5-12.**

540.    Without housing and the stipend provided to them by Congregation Rabbinical College of Tartikov, Inc., the rabbinical college students would have to be employed to support their families and would be unable to study full-time. Savad Decl. **Ex. 26 (Menczer Tr.) 11:2-7.**

**RESPONSE:**

**Objection**: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 540 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 26 (Menczer Tr.) 11:2-7.**

Receive smicha

541.     Students at the rabbinical college will obtain a *smicha* at the end of their studies if successful in their studies.  Tauber Decl. ¶10.

**RESPONSE:**

**<u>Objection</u>**: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 541 over the objections, <u>admitted</u> that Tauber testified as such.**

542.     A *smicha* is a certification that a student has studied and been tested to be proficient in an area of Jewish law.  Tauber Decl. ¶10; Savad Decl. **Ex. 29** (M. Babad Tr.) 18:16-23.

**RESPONSE:**

**<u>Objection</u>**: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 542 over the objections, <u>admitted in part; disputed in part</u>. Disputed to the extent that Savad Decl. Ex. 29 (M. Babad Tr.) 18:16-23 does not support the purported statement of fact. *Id.* at 21:22-23:2 ("every senior rabbi has his own when to give, how he feels when to give the semichah."). Admitted that Tauber testified as such.**

543.     A *smicha* is not a degree or certification recognized by the New York State Board of Regents.  Kinser Decl. ¶ 16; Savad Decl. **Ex. 16** (Green Tr.) 43:14-44:13; 81:16-82:21; 83:17-84:3; Savad Decl. **Ex. 193**; Savad Decl. **Ex. 194**.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 543 over the objections, <u>admitted</u>.

544. A *smicha* is not a test; and one who gives *smicha* can give it orally. The student goes to a senior rabbi who tests the student's knowledge. M. Babad 18:16-22:2; 24:22-25:25; Savad Decl. **Ex. 26** (Menczer Tr.) 17:22-18:21.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 544 over the objections, <u>admitted</u> that Rabbi Mordechai Babad and Menczer testified as such.

545. It is not necessary to have a *smicha* or degree to be a rabbinical judge. One must have the necessary knowledge. Savad Decl. **Ex. 29** (M. Babad Tr.) 57:6-17; Savad Decl. Ex. 34 (Resnicoff Tr.) 56:21-58:8.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 545 over the objections, <u>admitted</u> that Resnicoff (Plaintiffs' expert) and Rabbi Mordechai Babad testified as such.

546. A *smicha* is given by rabbi, not a school. M. Babad 23:8-24:7.

**RESPONSE:**

**Objection:** Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 546 over the objections, <u>admitted</u> that Rabbi Mordechai Babad testified as such.

547.    The Congregation Rabbinical College of Tartikov, Inc. will not award *smicha* to students.  Tauber Decl. ¶10; Kinser Dec. ¶ 17.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 547 over the objections, <u>admitted</u> that Tauber and Kinser (Plaintiffs' expert) testified as such.**

### Admission requirements

548.    Tartikov will admit qualified students.  Savad Decl. **Ex. 29** (M. Babad Tr.) 79:15-81:25.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 548 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact. *See* Savad Decl. Ex. 29 (M. Babad Tr.) 79:15-81:25.**

549.    Requirements to be admitted into Tartikov are a determination that the students are capable of learning all four books of the Shulchan Aruch.  Savad Decl. **Ex. 29** (M. Babad Tr.) 94:23-95:4.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 549 over the objections, <u>admitted</u> that Rabbi Mordechai Babad testified as such.**

550.     Prospective students will need to complete a high school level program in the Talmud and meet with M. Babad in order to be considered for Tartikov.  Savad Decl. **Ex. 26** (M. Menczer Tr.) 90:21-92:6.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 550 over the objections, admitted that Rabbi Meilech Menczer testified as such.**


551.     Tartikov will have no written tests or application for admission.  Savad Decl. Ex. 30 (Hershkowitz Tr.) 68:20-25.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 551 over the objections, admitted that Rabbi Hershkowitz testified as such.**


552.     Anyone interested in Tartikov's program must set up meeting with M. Babad.  He will verbally test the prospective student, and determine he is qualified.  There is no written document that serves as an admission application.  Savad Decl. **Ex. 27** (30:19-32:9).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 552 over the objections, admitted that Tauber testified as such.**


Students already admitted

553.     In 2007, Chaim Babad offered to support the studies of ten students under Mordechai Babad (one of the few judges fully trained in all four books of the Shulchan Aruch). Those ten students were therefore able to commit to full-time studies in the Talmud to prepare to enter Tartikov .M. Menczer MTD Aff ¶ 10.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 553 over the objections, <u>admitted</u> that Rabbi Meilech Menczer's affidavit states as such.**

554.    All of the student Plaintiffs are qualified to be admitted into Tartikov. Savad Decl. **Ex. 29** (M. Babad Tr.) 134:4-135:9.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 554 over the objections, <u>admitted</u> that Rabbi Mordechai Babad testified as such.**

555.    Jacob Hershkowitz, Meilech Menczer, Chaim Rosenberg, Meir Margulis and David Menczer have been admitted to Tartikov. Savad Decl. Ex. 306 ("Hershkowitz MTD") Aff ¶ 4; Savad Decl. Ex. 30 (Hershkowitz Tr.) 67:24-68:19; Savad Decl. Ex. 307 ("M. Menczer MTD") Aff ¶ 11; Savad Decl. Ex. 308 ("Margulis MTD Aff") ¶ 6; Menczer Decl.¶41; Hershkowitz Decl. ¶48; Rosenberg Decl.¶50;

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 555 over the objections, <u>disputed</u> that Jacob Hershkowitz, Meilech Menczer, Chaim Rosenberg, Meir Margulis, and David Menczer have been admitted to the proposed rabbinical college. Mordechai Babad, putative dean, testified that no one has yet been admitted. *See* Savad Decl. Ex. 29 (M. Babad Tr.) 133:8-11.**

556.    The accepted students are qualified to be in Tartikov's program, but cannot begin studies because the school is not allowed. Savad Decl. **Ex. 29** (M. Babad Tr.) 93:10-19.

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 556 over the objections, <u>disputed</u> that Jacob Hershkowitz, Meilech Menczer, Chaim Rosenberg, Meir Margulis, and David Menczer have been admitted to the proposed rabbinical college. Mordechai Babad, putative dean, testified that no one has yet been admitted.  *See* Savad Decl. Ex. 29 (M. Babad Tr.) 133:88-11.  The cited testimony does not support the purported statement of fact.  Defendants also dispute the characterization that the school is "not allowed." Savad Decl. Ex. 29 (M. Babad Tr.) 93:10-19.

557.    All of the Plaintiff Students will begin studies at Tartikov when the college is built.  Savad Decl. **Ex. 29** (M. Babad Tr.) 131:8-25.6; Menczer Decl.¶42; Hershkowitz Decl. ¶449; Rosenberg Decl.¶51;

## RESPONSE:

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 557 over the objections, <u>admitted</u> that the cited deposition testimony and declarations state such.

<u>Free tuition, Stipends and Housing</u>

558.    The rabbinical students' tuition and housing will be paid by the Congregation Rabbinical College of Tartikov, Inc.  Savad Decl. **Ex. 27** (65:24-66:4) Savad Decl. **Ex. 26** (Menczer Tr.) 46:9-22; Savad Decl. **Ex. 28** (M. Tauber Tr.) 102:20-15; Tauber Decl.¶ 31.

## RESPONSE:

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 558 over the objections, <u>disputed.</u>  The cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep. ,May 5, 2014) 65:24-66:4; Savad Decl. Ex. 26 (Menczer Tr.) 46:9-22; Savad Decl. Ex. 28 (M. Tauber Tr.) 102:20-15; Tauber Decl.¶ 31.

559.   The rabbinical students would be unable to commit to the program for fifteen years without financial assistance in the form of a stipend.   Savad Decl. Ex. 31 (C. Babad Tr.) 168:7-170:17; Savad Decl. Ex. 34 (Resnicoff Tr.) 54:15-56:18.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 559 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 31 (C. Babad Tr.) 168:7-170:17; Savad Decl. Ex. 34 (Resnicoff Tr.) 54:15-56:18.**

560.   Without a stipend or free housing, the students of Tartikov would have be employed and would be unable to engage in such intensive study. Savad Decl. **Ex. 26** (Menczer Tr.) 9:12-10:25; Savad Decl. Ex. 30 (Hershkowitz Tr.) 63:8-12; Savad Decl. Ex. 31 (C. Babad Tr.) 164:17-164:17; Savad Decl. **Ex. 27** (19:22-10:5); Savad Decl. **Ex. 25** (Rosenberg Tr.) 9:3-22.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 560 over the objections, <u>disputed.</u>  The cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 26 (Menczer Tr.) 9:12-10:25; Savad Decl. Ex. 30 (Hershkowitz Tr.) 63:8-12; Savad Decl. Ex. 31 (C. Babad Tr.) 164:17-164:17; Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 19:22-10:5; Savad Decl. Ex. 25 (Rosenberg Tr.) 9:3-22.**

561.   The stipend and free housing allow students to study at various times of day and night and interact with other rabbinical students on a continuing basis.  Margulis MTD Aff ¶ 8.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.**

562.   Without the stipend, students cannot engage in their religious exercise of studying to become a rabbinical judge. Hershkowitz MTD Aff ¶ 7.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 562 over the objections, admitted that the cited declaration states such.**

### Plaintiffs Cannot Currently Practice Their Religious Beliefs

563. There is no institution that offers the type of religious education that the Plaintiffs seek to offer and engage in. Savad Decl. Ex. 34 (Resnicoff Tr.) 18:20-19:17;Menczer Decl.¶60; Hershkowitz Decl. ¶67; Rosenberg Decl.¶69;

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 563 over the objections, admitted that the cited deposition transcript (including Plaintiffs' expert Resnicoff) and declarations states such.**

564. Tartikov's proposed curriculum is going to be unique and different from what any other school offers. Savad Decl. **Ex. 26** (Menczer Tr.) 26:4-9 ; 61:2-8; Savad Decl. **Ex. 27** (44:15-21); Savad Decl. **Ex. 34** (Resnicoff Tr.) 34:20-35:8.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 564 over the objections, admitted that the cited deposition transcripts (including Plaintiffs' expert Resnicoff) state such.**

565.    Other kollels exist where students study Jewish law, but do not have as their mission or ambition the goal to train them to become full-time rabbinical judges.  Savad Decl. Ex. 34 (Resnicoff Tr.) 19:21-22:7.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 565 over the objections, disputed.  The cited deposition testimony states that both Tartikov in Brooklyn and Mechon L'Hoyroa in Monsey train students to become rabbinical judges. Savad Decl. Ex. 34 (Resnicoff Tr.) 19:21-22:7**

566.    Tartikov can be described as a specialized kollel because it is a guided curriculum towards a specific goal, becoming a rabbinical judge, and not just studying a more general curriculum. Savad Decl. **Ex. 25** (C. Babad Tr.) 96:16-21.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 566 over the objections, disputed.  The cited testimony does not support the purported statement of fact.  Defendants also note that Savad Decl. Ex. 25 is the deposition transcript of Rabbi Chaim Rosenberg. *See* Savad Decl. Ex. 25 (C. Babad Tr.) 96:16-21.**

567.    In the way that Tartikov proposes to train its students, there are no other schools that can train its students to become rabbinical judges. Hershkowitz MTD Aff ¶ 8;Menczer Decl.¶60; Hershkowitz Decl. ¶67; Rosenberg Decl.¶69;

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 567 over the objections, disputed.  The cited testimony does not support the purported statement of**

**fact.** *See* **Hershkowitz MTD Aff ¶ 8; Menczer Decl. ¶ 60; Hershkowitz Decl. ¶ 67; Rosenberg Decl.¶ 69.**

568.    Kollels in the Monsey area include Kollel Belz and Mechon L'Horoya.  They only teach certain sections of the Shulchan Aruch, as opposed to Tartikov which will teach all four books.  Savad Decl. **Ex. 25** (Rosenberg Tr.) 14:6-20; Savad Decl. Ex. 30 (Rosenberg Tr.) 16:5-8; 28:14-24; Savad Decl. **Ex. 26** (M. Menczer Tr.)  51:20-23; Savad Decl. **Ex. 26** (M. Menczer Tr.) 82:18-83:13.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 568 over the objections, <u>admitted</u> that the cited deposition testimony states as such.**

569.    Kollel Belz is not a specialized kollel; it is a general kollel.  Savad Decl. **Ex. 25** (Rosenberg Tr.) 48:20-49:24.  Kollel Belz does not provide a Torah Community because students must live off campus and they must work part-time to support their families.  Because of this, the students are deprived of a round-the-clock Torah study environment.  M. Menczer MTD Aff. ¶ 8;  Savad Decl. Ex. 30 (Hershkowitz Tr.) 25:6-13; 26:7-27:10. The students do not live on campus.  Savad Decl. **Ex. 26** (Menczer Tr.) 42:8-12.  There is no campus at Kollel Belz. Savad Decl. **Ex. 26** (Menczer Tr.) 54:16-19; Savad Decl. **Ex. 26** (Menczer Tr.)  55:20-56:102260:22-61:9; Savad Decl. Ex. 30 (Hershkowitz Tr.) 20:18-21:12; Savad Decl. **Ex. 26** (Menczer Tr.) 57:2-5; 82:10-17; Savad Decl. **Ex. 25** (Rosenberg Tr.) 18:22-24;  Savad Decl. **Ex. 25** (Rosenberg Tr.) 55:9-56:16.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 569 over the objections:**

**As to sentence one, <u>admitted</u> that the cited deposition testimony states as such.**

**As to sentence two and three, <u>admitted</u> that the cited declaration states as such. The cited deposition testimony Savad Decl. Ex. 30 (Hershkowitz Tr.) 25:6-13; 26:7-27:10 does not support the purported statement of fact.**

**As to sentence four, <u>admitted</u>.**

**As to sentence five, <u>admitted</u>.**


570.    Mechon L'Hoyroa does not teach the same program as Tartikov.  Savad Decl. **Ex. 26** (Menczer Tr.)  60:22-61:9;Savad Decl. **Ex. 27** (44:22-45:14).  It teaches only monetary issues, not family disputes or other legal issues.  Savad Decl. **Ex. 26** (Menczer Tr.) 81:18-82:9. There is no campus at Mechon L'Hoyroa and no on campus housing.  Savad Decl. **Ex. 27** (62:23-25; 63:10-11); Savad Decl. **Ex. 27** (63:2-3; 63:12-13; 84:25-85:6); Savad Decl. **Ex. 26** (Menczer Tr.) 41:24-42:7.

<u>**RESPONSE:**</u>

<u>**Objection:**</u>  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statement contained in Paragraph 570 over the objections:**

**As to sentence one, <u>disputed</u>. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 43:15 -22 ("Q: Do you know of any rabbinical college in existence presently that provides the same course of study as this proposed Tartikov?  A: Presently the only one, to my knowledge, the only two to my knowledge are two very small programs.  One of them is located in Monsey, New York, an organization called [Mechon L'Hoyroa].")**

**As to sentence two, <u>admitted</u> that the cited deposition testimony states as such.**

**As to sentence three, <u>admitted</u>.**


571.    Kollel Beth Yechiel Mechil of Tartikov of Brooklyn does not have the same program as Tartikov. Savad Decl. **Ex. 25** (Menczer Tr.)  60:22-61:9; Savad Decl. **Ex. 27** (45:16-46:9). It is not a Torah community. Savad Decl. Ex. 30 (Hershkowitz Tr.) 59:24-60:15.  Students do not live on campus. Savad Decl. **Ex. 27** (46:16-17); 84:25-85:6; Savad Decl. **Ex. 26** (Menczer Tr.) 41:12-23.  Kollel Beth Yechiel Mechil of Tartikov of Brooklyn has no on-campus housing for the students. Savad Decl. **Ex. 27** (46:9-15).

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statement contained in Paragraph 571 over the objections:**

**As to sentence one, <u>disputed</u>. A student in Brooklyn can "get the same studies done" as a student at Tartikov's proposed rabbinical college in Pomona. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 45:24-46:9.**

**As to sentence two, <u>admitted</u>.**

**As to sentence three, <u>admitted</u>.**

**As to sentence four, <u>admitted</u>.**

<u>There is a High Drop out Rate at the other kollels which do not provide a Torah Community or Free Housing and Tuition.</u>

572.    The dropout rate at other kollels is higher because the students are not part of an insular Torah Community.  Savad Decl. Ex. 31 (C. Babad Tr.) 125:7-126:8 ; Savad Decl. **Ex. 26** (Menczer Tr.) 43:24-45:15; M. Menczer MTD Aff ¶ 13.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 572 over the objections, <u>admitted</u> that the cited deposition testimony and declarations state as such.**

573.    The pressure for students at kollels to be employed gets stronger as their families grow larger, unless they have free housing and tuition.  Savad Decl. Ex. 31 (C. Babad Tr.) 92:20-93:8.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 573 over the objections, <u>admitted</u> that the cited deposition testimony states as such.**

574.    70% of students who formed a study group in 2001 to study the Shulchan Aruch dropped out by 2008 because it is very difficult to study 15 hours per day outside of a dedicated Torah community. M. Menczer MTD Aff ¶ 7.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 574 over the objections, <u>admitted</u> that the cited deposition testimony states as such.**

575.    Intended Tartikov students and former Plaintiffs Gergley Neuman and Aryeh Royde have already dropped out because could not wait for Tartikov's program. Savad Decl. **Ex. 27** (59:7-60:5); Savad Decl. **Ex. 26** (Menczer Tr.) 52:16-53:25; Tauber Decl.¶48.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 575 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  Specifically, the cited deposition testimony of Michael Tauber states that Neuman dropped out because "he is no longer interested in these things" and Royde "went into teaching so he is no longer studying."  Rabbi Meilech Menczer says "I don't know exactly" as to why Royde dropped out.  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 59:7-60:5; Savad Decl. Ex. 26 (Menczer Tr.) 52:16-53:25; Tauber Decl.¶48.**

<u>The Challenged Code Provisions Prohibit the Use Outright</u>

576.    The Village Code does not permit Educational Institutions within its jurisdiction anywhere by right.  CODE § 130-9 (Permitted Uses).

**RESPONSE:**

**Objection:** Defendants object as this statement is a conclusion of law, not a factual statement.

**To the extent the Court chooses to consider the statement contained in Paragraph 576 over the objection, disputed. Educational Institutions are permitted by right in the Village, subject to special permit. Code §§ 130- (Permitted Uses), 130-10(F) (Special Use Permits, Educational Institutions).**

577.    Educational Institutions may be permitted with a Special Permit, however only those Educational Institutions that meet the Code's definitions of such use and its "accessory" use (housing) are permitted.  Code §§ 130-4 (Definitions), 130-10(F) (Special Use Permits, Educational Institutions).

**RESPONSE:**

**Objection:** Defendants object as this statement is a conclusion of law, not a factual statement.

**To the extent the Court chooses to consider the statement contained in Paragraph 577 over the objection, admitted in part; disputed in part. Admitted that "Educational Institutions" as defined by the Village Code, are permitted subject to special permit. Admitted that a dormitory building is permitted as an accessory use, among others, to an educational use if it complies with Village Code §§ 130-4 and 130-10. Otherwise, disputed. Defendants note that the second half of Paragraph 577 is vague and unclear.**

578.    Any use not listed under section 130-9 of the Village Code is prohibited, unless it is permitted by special use permit.  Code § 130-9 (Permitted Uses).

**RESPONSE:**

**Objection:** Defendants object as this statement is a conclusion of law, not a factual statement.

**To the extent the Court chooses to consider the statement contained in Paragraph 578 over the objection, admitted that Village Code § 130-9 states "All uses listed hereunder are permitted in the R-40 District; all others not listed are prohibited, except as provided in §§ 130-10 and 130-11."**

579.    Educational Institutions are only permitted under the Village Code as a special use. Code sec. 130-10(F).

**RESPONSE:**

**Objection: Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 579 over the objection, admitted in part; disputed in part. Admitted that educational institutions are permitted under the Village Code subject to a special permit. Defendants dispute the mischaracterization that educational institutions are a "special use." Code sec. 130-10(F).**

Accreditation

580.    The Village prohibits Plaintiffs' religious land use, and any unaccredited Rabbinical College, by right or by special permit within its jurisdiction. Code sec. 130-4; Request for Admission Response Nos. 1, 2, 3, 4; Weinstein Decl. ¶¶ 9-10.

**RESPONSE:**

**Objection: Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 580 over the objections, admitted in part; disputed in part. Admitted that the Village does not allow by right or special permit, an unaccredited Educational Institution. Disputed that "The Village prohibits Plaintiffs' religious land use...." Religious uses are allowed as of right. *See, e.g.,* Village Code §130-9(A)(2). Also, Plaintiffs have not filed an application with the Village and "Plaintiffs' religious land use" is not adequately defined.**

581.    The Village's definition of an "Educational Institution" prohibits an unaccredited entity, as any Educational Institution must be "accredited by the New York State Education Department or similar recognized accrediting agency." Code sec. 130-4.

**RESPONSE:**

**Objection: Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 581 over the objections, <u>admitted</u> that an Educational Institution, as defined by the Village Code, must be "accredited by the New York State Education Department or similar recognized accrediting agency."**

582.    The Village's Code is unlike other jurisdictions in prohibiting outright all unaccredited educational institutions.  Weinstein Dec. ¶¶ 66-76.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 582 over the objections, <u>admitted in part; disputed in part</u>.  Admitted that Weinstein testified as such based on his "experience."  Otherwise, disputed.  The cited testimony otherwise does not support the purported statement of fact.  *See* Weinstein Dec. ¶¶ 66-76.**

583.    Plaintiff cannot be accredited by any New York State body.  Kinser Dec. ¶¶ 6-37;Tauber Decl. ¶ 13.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 583 over the objections, <u>admitted</u> that Kinser and Tauber testified as such.**

584.    The Village has no knowledge of whether or not Tartikov can be accredited.  Savad Decl. **Ex. 13** (at 293:12-294:12); Savad Decl. Ex. 311 (Interrogatory) Response No. 25.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 584 over the objections, <u>admitted</u>.**

585.    Defendants' purported expert admits that Tartikov is not eligible for accreditation by NYS. Savad Decl. **Ex. 16** (Green Tr.) 123:22-124:7.

<u>RESPONSE:</u>

<u>Objection</u>:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 585 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 16 (Green Tr.) 123:22-124:7.**

586.    The Village Code requires accreditation by New York State or a similar accrediting agency.  Code sec. 130-4; Savad Decl. **Ex. 16** (Green Tr.) 56:7-12; Savad Decl. **Ex. 16** (Green Tr.) 37:18-21; 38:5-15; 65:4-7 ; Savad Decl. **Ex. 16** (Green Tr.) 67:5-69:5; 70:2-8; 71:22-73:14; 76:21-77:17; Green Rep. page 18.

<u>RESPONSE:</u>

<u>Objection</u>:  **Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 586 over the objection, <u>admitted</u>.**

587.    Tartikov cannot be accredited because it does not grant degrees.  Kinser Decl. ¶ 15-19; Savad Decl. **Ex. 16** (Green Tr.) 79:20-80:15.

<u>RESPONSE:</u>

<u>Objection</u>:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 587 over the objections, <u>admitted</u> that Kinser and Green testified as such.**

588. Such "degrees" are listed in the Rules of the Board of Regents, and Tartikov will not grant any of these. A *smichah* is not a degree recognized by the Board of Regents. Kinser Dec. ¶ 14-16.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 588 over the objections, <u>admitted</u> that Kinser testified as such.**

589. An educational institution would have to offer degrees or a certificate in which credits count toward a degree in order to be accredited; all religious institutions which are accredited in New York are degree granting institutions. Savad Decl. **Ex. 16** (Green Tr.) 67:5-69:5; 70:2-8; 71:22-73:14; 76:21-77:17; 80:23-81:11; Green Rep. page 18.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 589 over the objections, <u>admitted</u>.**

590. To be accredited, an educational institution would have to be in existence and fully operational. It must submit a self-study reviewing its facilities, curriculum and faculty, including a site visit. Savad Decl. **Ex. 16** (Green Tr.) 58:6-59:17; 65:8-66:22; Kinser Dec. ¶ 23-34.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 590 over the objections, <u>admitted</u>.**

591.    Tartikov is not operational yet and therefore cannot be accredited or submit a self-study.  Savad Decl. **Ex. 27** (50:7-11); Kinser Dec. ¶ 23-34.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 591 over the objections, <u>admitted</u> that Kinser and Tauber testified as such.**


592.    An institution would have to have entrance exams in order to be accredited. Savad Decl. **Ex. 16** (Green Tr.) 91:7-14.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 592 over the objections, <u>admitted</u> that an institution would have to have entrance exams in order to be accredited by AARTS.**


593.    Tartikov does not give entrance exams.  Savad Decl. **Ex. 27**, Tauber 30(b)(6) Tr. 50:4-5.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 593 over the objections, <u>admitted</u> that Tartikov testified as such.**


594.    The Association of Advanced Rabbinical and Talmudic Schools ("AARTS") would be the appropriate private accrediting body to accredit Tartikov.  Savad Decl. **Ex. 16** (Green Tr.) 55:24-56:6; 56:14-21; 60:14-61:7; 61:10-64:17; 66:23-67:4; 73:15-22; Green Rep. page 10; Tauber Decl. ¶11, 12.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as fact.**

**To the extent the Court chooses to consider the statements contained in Paragraph 594 over the objections, disputed. AARTS is one of several accrediting bodies that could accredit Tartikov. See Gordon Aff. Ex. 15. Further disputed to the extent that Green Rep. page 10 does not support the purported statement of fact.**

595.    Tartikov cannot be accredited by AARTS. Savad Decl. **Ex. 27** , Tauber 30(b)(6) Tr. 50:18-51:4; 52:12-55:2; D. Ex. 4; Savad Decl. Ex. 36 (Neuberger Tr.) 79:20-81:20; Savad Decl. **Ex. 16** (Green Tr.) 89:18-21; Tauber Decl ¶ 11.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as fact.**

**To the extent the Court chooses to consider the statements contained in Paragraph 595 over the objections, disputed. It is Preston Green's expert opinion that Tartikov could be accredited by AARTS. *See* Savad Decl. Ex. 16 (Green Tr., 89:22-89:2) (Q: Your opinion is that Tartikov could be accredited by AARTS. . . . A: That's right."); Green Expert Report, page 20 ("Tartikov can obtain accreditation from AARTS in Pomona.") Gordon Aff. Ex. 15.**

596.    Tartikov was informed that it cannot be accredited by AARTS. Tauber Decl. ¶11.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object because this Paragraph contains inadmissible hearsay.**

**To the extent the Court chooses to consider the statements contained in Paragraph 596 over the objections, admitted.**

597.    Bernard Fryshman, executive vice president of AARTS, informed Tartikov that AARTS could not accredit Tartikov's program. Tauber Decl. ¶11.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object because this Paragraph contains inadmissible hearsay.**

**To the extent the Court chooses to consider the statements contained in Paragraph 597 over the objections, admitted.**

598.   An institution would have to have entrance exams in order to be accredited by AARTS. Savad Decl. **Ex. 16** (Green Tr.) 91:7-18.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 598 over the objections, admitted.**

599.   Tartikov does not give entrance exams. Savad Decl. **Ex. 27** (Tauber 30(b)(6),50:4-5); Savad Decl. **Ex. 16** (GREEN Tr.) 91:15-18.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 599 over the objections, admitted that Tartikov testified as such. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 32:6-7. Defendants note that none of the cited testimony supports the purported statement of fact.**

600.   In order to be accredited by AARTS, an institution would have to be operational. Savad Decl. **Ex. 16** (Green Tr.) 86:9-89:12; 89:22-90:18; Savad Decl. **Ex. 27** (50:7-11).

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 600 over the objections, admitted.**

601.    An institution would have to have broader curriculum than Tartikov to be accredited by AARTS; their planned curriculum which focuses on the four books of Halacha would not be approved by AARTS. Savad Decl. **Ex. 16** (Green Tr.) 89:18-21; 90:19-22; 91:7-14; 91:19-2 Savad Decl. **Ex. 27** (158:8-25); Savad Decl. **Ex. 19**3, Savad Decl. **Ex. 19**4, Savad Decl. **Ex. 195**.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as fact.**

**To the extent the Court chooses to consider the statements contained in Paragraph 601 over the objections, <u>admitted</u> that an institution would have to have a broader curriculum than Tartikov to be accredited by AARTS, subject to other requirements contained in the cited deposition testimony of Green, but not cited in paragraph 601. Savad Decl. Ex. 16 (Green Tr.) 89:18-21; 90:19-22; 91:7-14; 91:19-2 Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014)158:8-25; Savad Decl. Ex. 193; Savad Decl. Ex. 194; Savad Decl. Ex. 195.**

602.    Tartikov only studies the 4 books of the Shulchan Aruch. Savad Decl. **Ex. 27** (50:3-5).  Meilech Menczer does not know of any Shulchan Aruch program that is accredited. Savad Decl. **Ex. 26** (Menczer Tr.) 58:11-59:9.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 602 over the objections, <u>admitted in part; disputed in part</u>.  Disputed that *Tartikov* only studies the 4 books of the Shulchan Aruch.  Plaintiff mischaracterizes the program offered at the rabbinical college or the students attending the rabbinical college as Tartikov generally. Savad Decl. Ex. 27 (50:3-5).**

Family Housing Prohibition

603.    The Village Code states in part: "Single-family, two-family and/or multifamily dwelling units . . . shall not be considered to be dormitories or part of dormitories."  Savad Decl. Ex. 314,  Code Sec. 130-4.

**RESPONSE:**

<u>Admitted</u> **that Village Code § 130-4 identifies single-family, two-family and/or multifamily dwelling units as buildings not to be considered as dormitories or part of dormitories subject to the qualifications contained in § 130-4 but not stated in Paragraph 603.** *See* **Savad Decl. Ex. 314 Code Sec. 130-4.**

604.    The Village Code defines Dormitories in part as: "A building that is operated by an educational institution . . . and which contains private or semiprivate rooms which open to a common hallway, which rooms are sleeping quarters for administrative staff, faculty or students." Savad Decl. Ex. 314, Code Sec. 130-4.

**RESPONSE:**

<u>Admitted</u> **that Village Code § 130-4 defines dormitories in part as a building that is operated by an educational institution and which contains private or semiprivate rooms which open to a common hallway, which rooms are sleeping quarters for administrative staff, faculty or students subject to the qualifications contained in § 130-4 but not stated in Paragraph 604.** *See* **Savad Decl. Ex. 314 Code Sec. 130-4.**

605.    The Village Code's definition of Dormitories does not permit their use as sleeping quarters for family members of students. Savad Decl. Ex. 314, Code Sec. 130-4.

**RESPONSE:**

<u>Objection:</u> **Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 605 over the objections, <u>disputed</u>. Savad Decl. Ex. 314, Code Sec. 130-4.**

606.    Wives and children of students cannot live in Dormitories as they are defined in the Village Code. Savad Decl. Ex. 314, Code Sec. 130-4.

**RESPONSE:**

<u>Objection:</u> **Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 606 over the objections, <u>disputed</u>.  Savad Decl. Ex. 314, Code Sec. 130-4.**

607.    No Educational Institution with family housing, other than one unit for a superintendent for every 50 dormitory rooms, is permitted either by right or by special permit within the Village.  Savad Decl. Ex. 310 , Request for Admission Response No. 49.

**RESPONSE:**

**<u>Admitted in part; Disputed in part</u>.  Admitted that the Village Code does not permit either as a matter of right or by special permit, any educational institution land use with a residential component, dormitory or otherwise, that would be considered single-family, two-family and/or multifamily dwelling units, other than one dwelling unit with housekeeping facilities that may be provided for use of a superintendent or supervisory staff for every 50 dormitory rooms.  Disputed to the extent that Plaintiff mischaracterizes multi family housing as family housing.**

608.    Multi-family dwellings are prohibited anywhere within the Village either by right or by special permit.  Savad Decl. Ex. 310, Request for Admission Responses Nos. 131, 132. This prohibition is highly unusual.  Weinstein Decl. ¶ 15.

**RESPONSE:**

**<u>Objection</u>:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 608 over the objections:**

**As to sentence one, <u>admitted</u>.**

**As to sentence two, <u>disputed</u>.  The cited declaration does not support the purported statement of fact that "this prohibition is highly unusual."**

609.    This prohibition on family housing prohibits Tartikov's intended Educational Institution use, or any similar religious institutional use, as it eliminates any housing for its

students, who have families and a religious obligation to live with their families.  Tauber Decl.¶ 33;  Savad Decl. **Ex. 27** (126:3-127:7); Weinstein Decl. ¶¶ 11-14.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 609 over the objections, disputed.  The cited testimony does not support the purported statement of fact.  Further disputed to the extent that Plaintiff mischaracterizes multi family housing as family housing.Tauber Decl.¶ 33;  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 126:3-127:7.**

<u>Housekeeping Prohibition</u>

610.    The Village Code states in part: "Dormitory rooms shall not contain separate cooking, dining or housekeeping facilities . . . ."   Savad Decl. Ex. 314, Code Sec. 130-4.

**RESPONSE:**

**Admitted that Village Code § 130-4 identifies that dormitory rooms shall not contain separate cooking, dining or housekeeping facilities subject to the qualifications contained in § 130-4 but not stated in Paragraph 610.  *See* Savad Decl. Ex. 314 Code Sec. 130-4.**

611.    This prohibition effectively eliminates any housing for its students.   Savad Decl. Ex. 314, Code sec. 130-4; Tauber Decl.¶ 33; Weinstein Dec. ¶¶ 16-18; Savad Decl. **Ex. 27** (126:3-127:7).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 611 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact that Village Code § 130-4 stating that "[d]ormitory rooms shall not contain separate cooking, dining or housekeeping facilities" eliminates any housing for Tartikov's students. Savad Decl. Ex. 314, Code sec. 130-4; Tauber Decl.¶ 33; Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014)126:3-127:7.**

612.   The Village has admitted that no Educational Institution with "separate cooking, dining or housekeeping facilities," other than one unit for a superintendent for every 50 dormitory rooms, is permitted either by right or by special permit within the Village. Savad Decl. Ex. 310, Request for Admission Response No. 48.

**RESPONSE:**

**<u>Admitted</u> subject to the qualification that the statements in Paragraph 612 are only in reference to an Educational Institution land use with a residential component. *See* Savad Decl. Ex. 310,  Request for Admission Response No. 48.**

613.   The Village's prohibition of separate cooking, dining and housekeeping facilities at part of student housing is highly unusual. Weinstein Dec. ¶ 20;  Voorhees Tr. 121:25-122:10.

**RESPONSE:**

**<u>Objection:</u> Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 613 over the objections, <u>disputed</u>. The cited testimony and declaration do not support the purported statement of fact.. Weinstein Dec. ¶ 20;  Savad Decl. Ex. 18 (Voorhees Tr.) 121:25-122:10.**

614.   This prohibition on housekeeping facilities prohibits Tartikov's intended Educational Institution use, or any similar religious institutional use, as it eliminates any housing for its students, who have families and a religious obligation to live with their families. Tauber Decl. ¶33; Savad Decl. **Ex. 27** (126:3-127:7); Weinstein Dec. ¶¶ 16-18.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement is a conclusion of law, not a factual statement.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 614 over the objections, <u>disputed</u>.  The cited testimony and declarations do not support the purported statement of fact.  Tauber Decl. ¶33;  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 126:3-127:7.**

<u>Wetlands Protection Law</u>

615.    An Educational Institution is required to be located on a parcel with a net lot area of greater than ten acres within the  Savad Decl. Ex. 314, Village. Code Sec. 130-10(f)(1)(a). [sic]

**RESPONSE:**

**<u>Disputed.</u>  Village Code § 130-10(F)(1)(a) does not require an educational institution to be located on a parcel with a net lot area of greater than ten acres.  Rather, Village Code § 130-10(f)(1)(a) states that "[t]he minimum lot area for an educational institution shall be a net lot area of 10 acres."  See Savad Decl. Ex. 314, Code Sec. 130-10(f)(1)(a).**

616.    The subject Property is the only non-government owned property within the Village that meets the Village's requirement of ten acres of net lot area for an Educational Institution. Beall Dec. ¶¶ 15-19.

**RESPONSE:**

**<u>Objection:</u>  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 616 over the objections, <u>disputed</u>.  Savad Decl. Ex. 12 (Defendants' 30(b)(6) Day 1 Tr.) 117:22-25; Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 287:12-25.**

617.    The WPL applies to the subject Property.   Savad Decl. Ex. 310, Request for
Admission Response No. 14.

**RESPONSE:**

**Objection**:  **Defendants object as this statement is a conclusion of law, not a factual
statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 617 over
the objections, <u>disputed</u>.  The cited document does not support the purported statement of
fact.  Savad Decl. Ex. 310, Request for Admission Response No. 14.  While the subject
property is subject to Village Code Chapter 126 as any land in the Village would be,
Defendants have no knowledge if the WPL applies to the subject property because
Plaintiffs have failed to file an application, let alone produce a survey or site plan of the
property.  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 120:3-5.**

618.    Because of the existence of wetlands on the west side of the property adjacent to
Route 306, access to the property would be limited to an area between such wetlands.  Beall
Decl. ¶ 280 & Exh. T; Tauber Decl. ¶ 28.

**RESPONSE:**

**Objection**:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants object because this statement improperly contains purported expert
opinion, subject to striking on several grounds, as discussed in detail in Defendants'
Opposition filed herewith. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 618 over
the objections, <u>disputed</u>.  The cited declarations do not support the purported statement of
fact.  Defendants have no knowledge because Plaintiffs have failed to file an application, let
alone produce a survey or site plan of the property.  Savad Decl. Ex. 27 (Tartikov 30(b)(6)
Dep., May 5, 2014) 120:3-5.**

619.    The Wetlands Protection Law states: "it shall be unlawful to conduct, directly or
indirectly, any of the following activities . . . within 100 feet of the boundary of any wetland . . .
Erecting any . . . roads, driveways, . . . ."  Savad Decl. Ex. 314, Code Sec. 126-3(A).

**RESPONSE:**

**Admitted** that Village Code § 126-3 identifies unlawful activities conducted within 100 feet of the boundary of any wetland, subject to the qualifications contained in § 126-3 but not stated in Paragraph 619, including that such unlawful activities may not be conducted "unless a permit is issued therefor by the Board of Trustees or the Planning Board, as the case may be." See Savad Decl. Ex. 314, Code Sec. 126-3(A).

620.    This area where driveway access could be located falls within the 100 foot "buffer" created by the Wetlands Protection Law, where no development is permitted for lots that are not improved with single family residences.  Savad Decl. Ex. 314, Code Sec. 126-3(a); Tauber Decl. ¶28 ; Beall Decl. ¶ 280 & Exh. T.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statement contained in Paragraph 620 over the objections, **disputed.**  The cited testimony and affidavit do not support the purported statement of fact.  Savad Decl. Ex. 314, Code Sec. 126-3(a); Tauber Decl. ¶28 ; Beall Decl. ¶ 280 & Exh. T.  Defendants have no knowledge because Plaintiffs have failed to file an application, let alone produce a survey or site plan of the property.  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 120:3-5.

621.    Access from the Property to Route 202 is impracticable because of the existence of steep slopes, wetlands and wetland buffers.  Tauber Decl. ¶ 28.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 621 over the objections, **disputed.**  The cited affidavit does not support the purported statement of

fact.  **Tauber Decl. ¶ 28.  Defendants have no knowledge because Plaintiffs have failed to file an application, let alone produce a survey or site plan of the property.  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 120:3-5.**

622.    A permit procedure is available for permits to "conduct or cause to be conducted a regulated activity specific in sec. 126-3 of this chapter"; however, such permits are only available if "regulation of wetlands pursuant to this chapter results in a deprivation of the reasonable use of a property so as to constitute a de facto taking of such property . . . ."  Savad Decl. Ex. 314, Code Sec. 126-5.

**RESPONSE:**

<u>Admitted</u> **subject to the qualification that the amendment referenced by Plaintiffs is an incomplete statement taken out of context.**  *See* **Savad Decl. Ex. 314, Code Sec. 126-5.**

623.    The WPL's permit scheme is highly flawed, unusual and unprecedented.  Beall Dec. ¶¶ 21-33; Savad Decl. **Ex. 18** (Voorhis Dep. at 157:11-159:5).

**RESPONSE:**

<u>Objection</u>:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 623 over the objections, <u>disputed</u>.  Report of Charles J. Voorhis at pgs. 22-24, dated March 13, 2014 Gordon Aff. 2 ¶ 6, Ex. A.  The cited testimony does not support the purported statement of fact.  See Savad Decl. Ex. 18 (Voorhis Tr.) 157:11-159:5.**

624.    The WPL's permit scheme does not take into account the purposes of wetlands protection by creating any standards regarding impacts, mitigation, or the public interest.  Beall Dec. ¶¶ 71-73.

**RESPONSE:**

<u>Objection</u>:  **Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 624 over the objections, <u>disputed</u>. Savad Decl. Ex. 154, Code Sec. 126-6.**

625. The Property could be used for single family residential purposes. Savad Decl. Ex. 314, Code 130-9(A)(1).

**RESPONSE:**

**Admitted.**

### Tartikov Cannot Obtain a Variance or Text Amendment

626. The Congregation Rabbinical College of Tartikov, Inc. cannot obtain a variance from the accreditation provision, the family housing prohibition, and the housekeeping facilities prohibition. When Tartikov was seeking to meet with the Village to discuss the rabbinical college, Village Attorney Ulman told Tartikov's attorney that Tartikov could not obtain a variance. Ms. Ulman repeated that representation to this Court in May, 2009. Savad Decl. Ex. 313, pages 18:20-19:8.

**RESPONSE:**

**<u>Objection</u>: Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a). Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 626 over the objections:**

**As to sentence one, <u>disputed</u>. The cited testimony does not support the purported statement of fact. Savad Decl. Ex. 313 (Hearing Tr., May 20, 2009) 18:20-19:8.**

**As to sentence two, <u>disputed</u>. The cited testimony does not support the purported statement of fact. Rather, the cited transcript states that Ulman and the attorney for Tartikov "discussed" the fact that a use variance "requires a specific standard that [Tartikov] cannot meet" as "set forth by the New York State Court of Appeals." Ulman and the attorney from Tartikov did not discuss the multi family housing prohibition or the housekeeping facilities prohibition. Savad Decl. Ex. 313 (Hearing Tr., May 20, 2009) 18:20-19:8. Further disputed to the extent the sentence characterizes Ulman telling Tartikov's attorney that Tartikov could not obtain a use variance as a denial of such a request in any**

251

way.  **Further disputed to the extent Plaintiffs mischaracterize multi family housing as family housing.**

As to sentence three, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  Rather, the cited transcript states that Ulman and the attorney for Tartikov "discussed" the fact that a use variance "requires a specific standard that [Tartikov] cannot meet" as "set forth by the New York State Court of Appeals."  Ulman and the attorney from Tartikov did not discuss the family housing prohibition or the housekeeping facilities prohibition.  Savad Decl. Ex. 313 (Hearing Tr., May 20, 2009) 18:20-19:8.  Further disputed to the extent the sentence characterizes Ulman telling Tartikov's attorney that Tartikov could not obtain a use variance as a denial of such a request in any way.

627.    A "text amendment," "zone change" or "rezoning" would constitute legislative action by the Village.   Savad Decl. Ex. 314, Code Sec. 16-5(A).

**RESPONSE:**

**Admitted.**

<u>SUBSTANTIAL BURDEN ON PLAINTIFFS' RELIGIOUS EXERCISE</u>

628.    Elimination of the burden created by the Village's zoning and wetlands protection laws on Plaintiffs' religious exercise will affect interstate commerce.  Tauber Decl. ¶40.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement is a conclusion of law, not a factual statement.**

<u>Burden on Tartikov</u>

629.    The Congregation Rabbinical College of Tartikov, Inc.'s religious exercise of developing and using its Property as a rabbinical college, which is motivated by its religious beliefs because of the need for more rabbinical judges, is burdened by the Village's prohibition and regulation of Educational Institutions.  Savad Decl. Ex. 30 (Hershkowitz Tr.) 86:4-21; Savad Decl. **Ex. 27** ( 81:6-14) ; Savad Decl. **Ex. 16** (Green Tr.) 40:25-41:17; Savad Decl. Ex. 305  Brief MTD Aff dated January 10, 2008 ¶ 3-5.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statement contained in Paragraph 629 over the objection, <u>disputed</u>.  Gordon Aff. ¶ 23, Ex. 18 (<u>Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc.</u>, August 1, 2004). Defendants do not dispute Plaintiffs' beliefs as stated therein.  Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs.

630.    The Torah Community's living, learning and worshipping as proposed by the Congregation Rabbinical College of Tartikov is necessary for the exercise of its religious beliefs. Tauber Decl.¶ 37.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 630 over the objection, Defendants <u>do not dispute</u> Plaintiffs' beliefs as stated therein.  Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community.  *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

631.    The backlog in religious courts forces Orthodox and Hasidic Jews to go to secular courts. C. Babad 96:22-97:8; Savad Decl. **Ex. 26** (Menczer Tr.) 83:19-85:19.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statement contained in Paragraph 631 over the objection, <u>disputed</u>.  The cited testimony does not support the purported statement of

**fact. Savad Decl. Ex. 31 (C. Babad Tr.) 96:22-97:8; Savad Decl. Ex. 26 (Menczer Tr.) 83:19-85:19.**

632.    There are not enough sufficiently trained rabbinic judges, so rabbis that are not sufficiently capable are currently handling cases.  Savad Decl. **Ex. 26** (Menczer Tr.) 83:9-13.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 632 over the objection, <u>admitted</u> that the cited deposition testimony states as such.**

633.    Currently, most rabbinical judges are trained in only the first two books of the Shulchan Aruch, which govern the relationships between man and God; rabbinical judges are needed to decide controversies between people (the third and fourth volumes of the Shulchan Aruch) and to rule on issues of Jewish law on which people seek advice in advance to ensure that they don't break Jewish law.  Savad Decl. Ex. 34 (Resnicoff Tr.) 66:25-68:17; M. Menczer MTD Aff ¶ 3-4.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 632 material, <u>admitted</u> that the cited deposition testimony and affidavit states as such.**

634.    Most rabbinical judges were killed in the Holocaust.  Savad Decl. Ex. 31 (C. Babad Tr.) 97:9-17.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 634 over the objection, <u>admitted</u> that the cited deposition testimony states as such but noted that it is unsupported by any facts.  Savad Decl. Ex. 31 (C. Babad Tr.) 97:9-17.**

635.     There are very few rabbis sufficiently trained as rabbinical judges now.  Most of those who are live in Israel. M. Menczer MTD Aff ¶ 5.

**<u>RESPONSE</u>:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements in Paragraph 635, disputed. The cited testimony does not support the purported statement of fact. M. Menczer MTD Aff ¶ 5.**

636.     Most rabbinic courts in existence will only agree to hear a case if the parties explicitly relieve the judges of the responsibility for rendering a decision that it in strict accord with Jewish law.  Resnicoff Decl. ¶ 74.

**<u>RESPONSE</u>:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 636 over the objections, <u>admitted</u> that the cited declaration states as such.**

637.     Tartikov will prepare its students to make a decision in strict accordance with Jewish law.  Resnicoff Decl. ¶ 74;Tauber Decl. ¶ 6.

**<u>RESPONSE</u>:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 637 over the objections, <u>disputed</u>.  *See* Proposed Rabbinical College of Tartikov Program Schedule; Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 22:12-23:2. Gordon Aff. ¶¶ 15, 26, Ex. 10, 21.**

638.    It is Tartikov's religious belief to build and operate the rabbinical college's Torah Community for the purpose of training rabbis to become full-time rabbinical judges who are fully qualified in the Code of Jewish Law, or *Shulchan Aruch*; and to create the religious experience of having the students live in the Torah Community with their families allowing them to interact with fellow rabbinical students and learn from trained rabbis.  Tauber Decl.¶ 6.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 638 over the objections, disputed.  Savad Decl. Ex. 31 (C. Babad Tr.) 99:2-99:25, 125:22-126:8; *see also* Savad Decl. Ex. 36 (N. Sheftel) 79:1-79:19 (comparing the benefit of students living together at Princeton to the benefits of rabbinical college students living together on campus).**

639.    Tartikov is burdened because cannot teach the rabbinical students.  Savad Decl. Ex. 27 (Tauber 30(b)(6) Tr. 127:8-24)

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements in Paragraph 639 over the objection, disputed.  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep. May 5, 2014), 62:16-62:22.**

<u>Burden on Individual Plaintiffs</u>

640.    Every student who will attend the Rabbinical College is compelled by his religious beliefs to pursue this study.  Tauber Decl.¶ 7.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.**

To the extent the Court chooses to consider the statements in Paragraph 640 over the objection, <u>disputed</u>. The statements of Tauber as contained in Tauber Decl.¶ 7, do not contain any supporting documentation evidencing any assertion of "[e]very student" who will attend the Rabbinical College, let alone the Individual Plaintiffs. Savad Decl. Ex. 29 (M. Babad Tr.), 93:24-94:11.

641. The individual student plaintiffs currently are prevented from pursuing their studies because they are deprived of the course of study that their religious beliefs motivate them to engage in. Savad Decl. **Ex. 25** (Rosenberg Tr.) 39:16-40:5; 54:11-55:8 ) good quotes re: serving God); 55:15-56:16 (would take 50 years currently); 61:5-14 (don't live forever).

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements in Paragraph 641 over the objection, <u>disputed</u>. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 43:15-44:14. Savad Decl. Ex. 30 (Hershkowitz Tr.) 20:22-25.

642. The individual student plaintiffs cannot live or study in a Torah community. Savad Decl. Ex. 30 (Hershkowitz Tr.) 24:13-24; 94:2-7; Savad Decl. **Ex. 26** (Menczer Tr.) 66:23-67:21.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

To the extent the Court chooses to consider the statements in Paragraph 642 over the objection, <u>admitted</u> that Rabbi Hershkowitz and Rabbi Menczer testified as such. Savad Decl. Ex. 30 (Hershkowitz Tr.) 24:13-24, 94:2-7; Savad Decl. Ex. 26 (Menczer Tr.) 66:23-67:21.

643. Meilech Menczer has had to downgrade studies by learning less in the Torah. Savad Decl. Ex. 26 (Menczer Tr.) 68:15-69:3.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 643 over the objection, <u>admitted</u> that Rabbi Menczer testified as such.**

644.    The individual student plaintiffs cannot practice their religion in the manner they believe they should, according to their beliefs  Savad Decl. **Ex. 25** (Rosenberg Tr.) 57:7-19; Savad Decl. **Ex. 25** (Rosenberg Tr.) 39:16-40:5;  Savad Decl. **Ex. 26** (Menczer Tr.) 64:10-18

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 644 over the objection, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 25 (Rosenberg Tr.) 57:7-19,  39:16-40:5;  Savad Decl. Ex. 26 (Menczer Tr.) 64:10-18.**

645.    The individual student plaintiffs cannot have the quality of study they believe that they should have. Savad Decl. **Ex. 25** (Rosenberg Tr.) 61:15-62:3

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 645 over the objection, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 25 (Rosenberg Tr.) 61:15-62:3.**

646.    The individual plaintiffs are not able to study to become a rabbinical judge. Savad Decl. **Ex. 26** (Menczer Tr.) 32:10-22.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 646 over the objection, <u>disputed</u>.** *See* **Savad Decl. Ex. 25 (Rosenberg Tr.) 11:15-14; Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014)  43:15-46:9, 63:15-63:17.**

647.    The individual plaintiffs cannot achieve greatness in the Torah without learning all four books of The Shulchan Aruch and currently they cannot learn these four books.   Savad Decl. **Ex. 26** (Menczer Tr.) 66:8-22.

**RESPONSE:**

<u>Objection</u>:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 647 over the objection, <u>disputed</u>. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014)  43:15-46:9, 63:15-63:17.**

648.    The individual student plaintiffs cannot live on campus with their families.  Savad Decl. **Ex. 27**, Tauber 30(b)(6) Tr. 126:3-127:7.

**RESPONSE:**

<u>Objection</u>:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 648 over the objection, <u>disputed</u>.  No campus exists or has been proposed.** *See* **(SAC ¶ 1); Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) , 120:3-120:5.**

649.    If Tartikov does not open, there is no place for Margulis and M. Menczer to receive the training to become a rabbinical judge.  Margulis MTD Aff ¶ 6, 8.

**RESPONSE:**

<u>Objection</u>:  **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 649 over the objection, <u>disputed</u>. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014)  43:15-46:9, 63:15-63:17.**

650.    The individual plaintiffs are prevented from lecturing and passing on knowledge Brief MTD Aff ¶ 6.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 649 over the objection, <u>disputed</u>.  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) , 43:15-46:9, 63:15-63:17.**

651.    The Village has no knowledge that the individual plaintiffs do not intend to study to become rabbinical judges Defendants' 30(b)(6) Tr 280:2-8.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 651 over the objection, <u>admitted</u>.**

20% Dormitories

652.    The specific needs of a Rabbinical College are minimal in terms of classroom space, as the actual space needed for education programs, which involve a study method called *chavrusa* (pairs of students analyzing, discussing and debating shared texts)  are minimal and do not include athletic facilities, laboratories, theaters, etc.  Tauber Decl. ¶ 34; Weinstein Dec. ¶¶ 27-32.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements in Paragraph 652 over the objection, <u>admitted</u> that the cited declarations state as such.**

260

653.    A Rabbinical College, where students will be married with children, also requires greater living space. Tauber Decl. ¶ 8, 35.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements in Paragraph 653 over the objection, <u>disputed.</u>  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014), 46:10-46:17, 62:23-63:3.**

654.    The number of students that could be housed are estimated at six to eight. Weinstein Decl. ¶¶ 37-44.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements in Paragraph 654 over the objection, <u>disputed.</u> VILLAGE CODE § 130-4. Ulman Aff. ¶¶ 8, 13, Ex. 2, 7.**

655.    The 20% dormitory limitation effectively means that no Rabbinical College can be developed, as housing no more than a nominal number of student rabbis does not permit Tartikov to operate its Torah Community that is so essential to its religious exercise.  Tauber Decl. ¶33; Drake Dec. ¶¶ 63-67;  Savad Decl. **Ex. 18** (Voorhis Dep.) 168:3-11.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements in Paragraph 655 over the objection, <u>disputed.</u> VILLAGE CODE § 130-4. Ulman Aff. ¶¶ 8, 13, Ex. 2, 7.**

656.    If not permitted to have housing on campus, students will learn much less and will downgrade their level of learning the Torah. Savad Decl. **Ex. 26** (Menczer Tr.) 68:15-69:3

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements in Paragraph 656 over the objection, disputed. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 43:15-46:9, 63:15-63:17.**

### Significant Delay, Expense and Uncertainty

657.    The decision whether or not to consider a requested zoning amendment is an entirely discretionary decision by a municipal legislative body, such as a board of trustees. Unlike other land use applications, a board of trustees may simply decide not to entertain a request to amend a zoning law. Tauber Decl. ¶ 41.

**RESPONSE:**

**Objection: Defendants object as this statement offers opinion as fact. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements in Paragraph 657 over the objection, admitted in part; disputed in part. Although most actions of a legislative body are discretionary, case law requires the Board of Trustees to give special consideration to land use requests made by educational institutions and houses of worship so that they are not entirely discretionary. Savad Decl. Ex. 13 (Tartikov 30(b)(6) Dep., July 16, 2014) 319:22-321:9.**

658.    Zoning Law requires that any such requested amendment shall be referred to various agencies, individuals and boards for their review. Tauber Decl. ¶ 41.

**RESPONSE:**

**Objection: Defendants object as this statement offers opinion as fact. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements in Paragraph 658 over the objection, <u>admitted</u> with the qualification that the requirement is for review by the same agencies that review Planning Board and Zoning Board applications.  Savad Decl. Ex. 314, Code § 130-39.**

659.     Any proposed zoning amendment would be subject to the full SEQRA review process. Tauber Decl. ¶ 41.

**RESPONSE:**

**<u>Objection</u>:  Defendants object as this statement offers opinion as fact.  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements in Paragraph 659 over the objection, <u>disputed</u>.  Defendants note that a "full SEQRA review process" has not been defined.  To the extent Paragraph 659 is alleging that an environmental impact study would have to be prepared, that would be dependent upon the potential adverse environmental impacts that may result from the zoning amendment. Savad Decl. Ex. 314, Code § 130-39.**

660.     Given the fact that any amendment to eliminate the accreditation requirement would affect all land in the Village, the impact on all potentially impacted parcels would be required to be considered.    Tauber Decl. ¶ 41

**RESPONSE:**

**<u>Objection</u>:  Defendants object as this statement offers opinion as facts.  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements in Paragraph 660 over the objection, <u>admitted</u> that the cited declaration states as such.**

661.     The process for a zone/text amendment or variance (which the Village has informed Plaintiffs is unavailable for Plaintiffs' use) is a long and discretionary process that is highly uncertain as it is subject to approval of various boards and agencies in the Village, such as the Planning Board, Village Attorney, Village Engineer, Code Enforcement Officer, and other boards and bodies of the Village.  Tauber Decl. ¶41.

**RESPONSE:**

**Objection:** Defendants object as this statement offers opinion as fact. Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements in Paragraph 661 over the objection, <u>disputed</u>. A zone/text amendment or variance is not a longer process than any other land use application procedure in the Village. In addition, there are time limits for steps in the process. Village Code § 130-39; 6 NYCRR 617 attached to the Affidavit of Doris Ulman submitted in support of Defendants' Motion in Opposition to Plaintiffs' Partial Motion for Summary Judgment ("Ulman Aff. 2") as Exhibit ("Ex.") Ulman Aff. 2 ¶ 8, Ex. B. The only Board that has authority to consider approvals for zone/text amendments is the Board of Trustees. The only Board that has authority to consider approvals for variances is the Zoning Board of Appeals. Code § 130-28(D); 130-35.

662.     Any proposed zoning amendment does not even have to be considered by the Board of Trustees and if it does consider the amendment, it is subject to the SEQRA process, and any proposal to change the current code would affect all of the land in the Village and therefore the impact of this upon all potential parcels would have to be considered. Tauber Decl. ¶41.

**RESPONSE:**

**Objection:** Defendants object as this statement offers opinion as fact. Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements in Paragraph 662 over the objection, <u>admitted in part; disputed in part.</u> Admtited that the Board of Trustees generally has the authority not to consider an amendment to the Zoning Law, however, an educational institution or house of worship requires special consideration because of their special status, as required by the New York State Court of Appeals. Otherwise, disputed. 6 NYCRR 617.7 Ulman Aff. 2 ¶ 8, Ex. B.

663.     The SEQRA process would require a detailed environmental impacts statement that would be time-consuming and expensive, if the amendment is considered by the Board of Trustees. Tauber Decl. ¶ 41.

**RESPONSE:**

**Objection:** Defendants object as this statement offers opinion as fact. Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements in Paragraph 663 over the objection, <u>disputed</u>. If an environmental impact statement was required it could be

**deemed a coordinated review so that one SEQRA review would be used by the Board of Trustees for the zone change, by the Planning Board for the site plan review, and by the Zoning Board of Appeals if any variances are needed, thereby reducing cost and review time. 6 NYCRR 617.6(b)(2); 6 NYCRR 617.6(b)(3) Ulman Aff. 2 ¶ 8, Ex. B.**

664.    This entire process is very extensive, expensive and time-consuming. It would also be uncertain in the best of circumstances and even more so given the hostility of Village residents to Tartikov and its use. Tauber Decl. ¶ 41. Tartikov will pursue any fair and impartial regulatory process which is not discriminatory or unduly burdensome under applicable law and ensure that any legitimate land use impacts are mitigated, and will abide by fair and reasonable conditions imposed on the property. Tauber Decl. ¶ 47.

**RESPONSE:**

**Objection: Defendants object as this statement offers opinion as fact. Defendants object as this statement is a conclusion of law, not a factual statement. Defendants further object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements in Paragraph 664 over the objection, <u>admitted</u> that the declaration cited states as such.**

<u>Reasonable Expectation to Build</u>

665.    Tartikov did not expect that its educational institution would be subject to an "accreditation" requirement; that its Rabbinical College would not be allowed to have family housing (with housekeeping facilities), or that it would be limited to only 20% of the total square footage limitation for its housing, as these laws were not enacted until 2004 and 2007, after it purchased the property. Tauber Decl. ¶3, 4; Savad Decl. Ex. 310 (Request for Admissions) Response No. 10.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements in Paragraph 665 over the objection, <u>disputed.</u> Tartikov should have known that its project was not in compliance**

with the Village zoning laws.  Prior to 2004, the definition of "school" did not permit institutions of higher education; the definition of "educational institution" required that the institution be operating under the Education Law of New York State and licensed by the State of New York; any type of housing was prohibited in conjunction with a school of educational institution because dormitories were prohibited in conjunction with a school or educational institution; and Tartikov was limited to zero percent of the total square footage for housing because housing and dormitories were prohibited in conjunction with a school or educational institution. Savad Decl. Ex. 310 (Request for Admissions) Response No. 10. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 404:15-404:18; Local Law 1 of 2001, *codified as* VILLAGE CODE § 130-4. Ulman Aff. ¶¶ 7, 13, Ex. 1, 7; Local Law 5 of 2004, *codified as* VILLAGE CODE § 130-4. Ulman Aff. ¶¶ 8, 13, Ex. 2, 7.

666.    Tartikov did not expect that it would lose access to its Property, as established by the Wetlands Protection Law, enacted in 2007. Tauber Decl. ¶5.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements in Paragraph 666 over the objection, disputed.  Defendants have no knowledge because Plaintiffs have failed to file an application, let alone produce a survey or site plan of the property. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep. May 5, 2014) 19:1-20:5**

667.    Tartikov believed that it would be permitted to build the rabbinical college with student housing when it purchased the subject property in 2004. Tauber Decl. ¶ 4.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements in Paragraph 667 over the objection, disputed.  Tartikov should have known that its project was not in compliance with the Village zoning laws.  Prior to 2004, the definition of "school" did not permit institutions of higher education; the definition of "educational institution" required that the institution be operating under the Education Law of New York State and licensed by the State of New York; any type of housing was prohibited in conjunction with a school of educational institution because dormitories were prohibited in conjunction with a school or**

educational institution; and Tartikov was limited to zero percent of the total square footage for housing because housing and dormitories were prohibited in conjunction with a school or educational institution. Savad Decl. Ex. 310 (Request for Admissions) Response No. 10. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr. 404:15-404:18; Local Law 1 of 2001, *codified as* VILLAGE CODE § 130-4. Ulman Aff. ¶¶ 7, 13, Ex. 1, 7; Local Law 5 of 2004, *codified as* VILLAGE CODE § 130-4. Ulman Aff. ¶¶ 8, 13, Ex. 2, 7.


668.    Zoning ordinances that prohibited institutions of higher learning and student housing for such institutions were unconstitutional under New York law.  Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 432:10-23.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements in Paragraph 668 over the objection, <u>disputed.</u>  The cited testimony does not support the purported statement of fact. Rather, New York case law held that municipalities did not have authority to totally exclude institutions of higher education from their boundaries.  Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 431:12-432:8.**


669.    The zoning code in place prior to the passage of Local Law No. 5 of 2004 "did not specifically address dormitories." Savad Decl. Ex. 310 (Request for Admission) Response No. 9.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements in Paragraph 669 over the objection, <u>admitted</u> subject to the qualification that although zoning code in place prior to the passage of Local Law No. 5 of 2004 did not specifically address dormitories, it did not permit them either. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr. 404:15-404:18.**


670.    The Village's Code prior to the passage of Local Law 5 of 2004 was unconstitutional.  Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Day 2 Tr.) 432:10-23.

**RESPONSE:**

<u>Objection</u>:  Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements in Paragraph 670 over the objection, <u>disputed</u>.  The cited testimony does not support the purported statement of fact. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 432:10-23 ("it prevents our entire educational institution requirement from being declared unconstitutional . . . . Because if the dormitories are not permitted and *someone challenges it*, your entire law can be thrown out . . . .) (emphasis added).

## FREE SPEECH / EXPRESSIVE CONDUCT / ASSOCIATION

671.    The Court has correctly noted that the stated purpose of the Rabbinical College is "to foster the expression of certain ideas among and between faculty members and students." 915 F. Supp. 2d at 625.

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statements in Paragraph 671 over the objection, <u>disputed</u>.  The Court stated: "In the end, the Court finds that Plaintiffs have plausibly (if barely) pled enough facts to establish that the rabbinical college would engage in and foster expressive conduct.  In particular, Plaintiffs have alleged that they wish to construct and operate a rabbinical college to foster the expression of certain ideas among and between faculty members and students." 915 F. Supp. 2d at 625.  *See also* <u>(Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc.</u>, August 1, 2004), Gordon Aff. ¶ 23, Ex. 18.

672.    Daily life at the Rabbinical College's Torah Community will include prayer, multiple *shuls*, and "*shimush*" (internships) in *bais din* courtrooms throughout the campus, which will be used to resolve disputes, where they will learn from experienced rabbinical judges. M. Tauber Decl ¶19-29. Resnicoff ¶121.

**RESPONSE:**

<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.

**To the extent the Court chooses to consider the statement contained in Paragraph 672 over the objections, <u>admitted</u> that the cited declarations state as such.**

673.    The Torah Community (which includes all aspects of the proposed use, including housing) involves intensive religious learning interaction, day and night, among the students, teachers and lecturers. Menczer Decl.¶50-60; Hershkowitz Decl. ¶57-67; Rosenberg Decl.¶59-69; Tauber Decl. ¶ 42-46; Resnicoff ¶ 110-122.

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 673 over the objections, <u>disputed</u>. Defendants do not dispute that the testimony cited is consistent with the above paragraph, but defendants challenge the sincerity of plaintiffs' beliefs in relation to the proposed rabbinical college. Specifically, Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. Menczer Decl.¶50-60; Hershkowitz Decl. ¶57-67; Rosenberg Decl.¶59-69; Tauber Decl. ¶ 42-46; Resnicoff ¶ 110-122.**

674.    Religious learning in this way as an integral part of the Torah Community will allow the students to communicate and associate with their teachers and fellow students, and interact with them as part of the religious learning process to gain knowledge. Tauber Decl. ¶ 42-46; M. Menczer Dec ¶53-60; Hershkowitz Decl.¶ 60-67; Rosenberg Decl.¶62-69; Tauber Decl. ¶28,29.

**RESPONSE:**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 674 over the objections, <u>disputed</u>. Defendants do not dispute that the testimony cited is consistent with the above paragraph, but defendants challenge the sincerity of plaintiffs' beliefs in relation to the proposed rabbinical college. Specifically, Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

675.    Because the students will live within the Torah Community, they will communicate with their teachers and fellow students day and night, in the study halls, courtrooms, *shuls,* or in the living quarters, and this will allow for constant communication, expression and religious learning opportunities.  M. Menczer Dec ¶51-60; Hershkowitz Decl.¶ 60-67; Rosenberg Decl.¶61-69; Tauber Decl. ¶28,29.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants also object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 675 over the objections, <u>disputed</u>.  Defendants do not dispute that the testimony cited is consistent with the above paragraph, but defendants challenge the sincerity of plaintiffs' beliefs in relation to the proposed rabbinical college.  Specifically, Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

676.    This communication between the students, teachers and judges involves Orthodox teachings and principles as the material is all based on the Shulchan Aruch,or Code of Jewish Law. Michael Tauber Decl ¶16,17,20-29; M.Menczer Decl ¶52;Hershkowitz Decl.¶ 59; Rosenberg Decl.¶61.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 676 over the objections, <u>disputed</u>.  Defendants do not dispute that the testimony cited is consistent with the above paragraph, but defendants challenge the sincerity of plaintiffs' beliefs in relation to the proposed rabbinical college.  Specifically, Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).**

677.    The Torah Community aspect of Plaintiff's expressive conduct that constitutes the Rabbinical College is inseparable from and necessary for the other aspects of that expression and expressive conduct.  M. Tauber Decl ¶19-29;

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.  Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements in Paragraph 677 over the objection, underlined(disputed).  Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

678.  The Torah Community provided by Tartikov will allow the students to meet their religious obligations to their families by having the opportunity to teach their family the Torah. Rosenberg Decl. ¶35,61,66;Hershkowitz Decl.¶59,64; Menczer Decl.¶52,57.

**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statement contained in Paragraph 678 over the objections, **disputed.**  Defendants do not dispute that the testimony cited is consistent with the above paragraph, but defendants challenge the sincerity of plaintiffs' beliefs in relation to the proposed rabbinical college.  Specifically, Defendants dispute that the development of multi family housing is exclusively in furtherance of their religious beliefs or the only way of achieving their religious beliefs. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

679.  The challenged ordinances restrict the communication and expression among and between Tartikov, the rabbinical students, teachers and judges by preventing or greatly restricting the Torah Community from existing. Tauber Decl. ¶¶ 42-46.
**RESPONSE:**

**Objection:**  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement is a conclusion of law, not a factual statement.  Defendants object as this statement offers opinion as facts.

271

To the extent the Court chooses to consider the statements in Paragraph 679 over the objection, <u>disputed</u>. Defendants do not dispute Plaintiffs' beliefs as stated therein. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs, which include the establishment of a "Torah Community." Plaintiffs have not, and cannot, provide admissible evidence consistently defining or otherwise explaining the elements of a Torah Community. *See e.g.* Savad Decl. Ex. 26 (Menczer Tr.) 90:12-20 (one can study in a synagogue to become a rabbinical judge).

680.    The accreditation requirement specifically restricts Tartikov and the plaintiff student and teacher's expression on the basis of its program content. Savad Decl. Ex. 314 Code Sec. 130-4.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement. Defendants object as this statement offers opinion as facts.

To the extent the Court chooses to consider the statements contained in Paragraph 680 over the objection, <u>disputed</u>. *See* Savad Decl. Ex. 16 (Green Tr.) 91:3-12 (stating that Tartikov would also have to have entrance exams to be accredited by AARTS). The cited testimony does not support the purported statement of fact. Savad Decl. Ex. 314 Code Sec. 130-4.

681.    The accreditation process for an "Educational Institution" requires evaluation of and distinctions based on the content of Tartikov's speech. Savad Decl. Ex. 314 Code Sec. 130-4.

**RESPONSE:**

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements contained in Paragraph 681 over the objection, <u>disputed</u>. The accreditation requirement is applicable to all educational institutions. Savad Decl. Ex. 314 Code Sec. 130-4.

**[Defendants note that Plaintiff's Rule 56.1 Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment does not contain a Paragraph 682.]**

GOVERNMENTAL INTERESTS

683.    Plaintiffs' proposed land use is a religious assembly and institution.  Tauber Decl.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 683 over the objection, disputed. Defendants dispute that the development of multi family housing is exclusively in furtherance of Plaintiffs' religious beliefs or the only way of achieving their religious beliefs.  See (Certificate of Incorporation of Congregation Rabbinical College of Tartikov, Inc., August 1, 2004), Gordon Aff. ¶ 23, Ex. 18.**

684.    Accredited educational institutions, which are a permitted special use in the Village, include nonreligious "institutions."  Weinstein Dec. ¶ 135.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 684 over the objection, admitted that all educational institutions are "special permit use" in the Village.  Defendants note that there are no Educational Institutions in the Village.**

685.    Libraries , which are a permitted use in the Village, include nonreligious "institutions."  Weinstein Dec. ¶ 126.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants'**

Opposition filed herewith. Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements contained in Paragraph 685 over the objection, <u>admitted</u> that libraries are a permitted use in the Village. Otherwise, disputed. As to the remainder of Paragraph 685, Defendants cannot respond because they do not know what is meant by nonreligious "institutions."

686.    Museums , which are a permitted special use in the Village, include nonreligious "institutions." Weinstein Dec. ¶ 126.

**RESPONSE:**

<u>Objection:</u>  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements contained in Paragraph 686 over the objection, <u>disputed</u> that museums are a "permitted special use" in the Village. As to the remainder of Paragraph 686, Defendants cannot respond because they do not know what is meant by nonreligious "institutions."

687.    The Village's accreditation requirement treats the proposed Rabbinical College on less than equal terms as accredited nonreligious educational institutions. Weinstein Dec. ¶¶ 121-124.

**RESPONSE:**

<u>Objection:</u>  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements contained in Paragraph 687 over the objection, <u>denied</u>. The accreditation requirement is applicable to all educational institutions. Savad Decl. Ex. 314 Code Sec. 130-4.

688.    The Village has described non-accredited Educational Institutions as not "legitimate." Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Tr. 418:8-24).

**RESPONSE:**

**Disputed.  The deposition testimony referenced by Plaintiffs is an incomplete statement taken out of context.  Ulman defines a legitimate educational institution as having the special status required by the New York State Court of Appeals. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Tr. 418:8-24).**

689.    The Village states that the reason for the differential treatment between accredited and non-accredited Educational Institutions is that "if a school is unaccredited, there is no way of knowing what impacts on the wetlands or anything else it is going to have because the you know the number of different schools that can apply for approval are different types of schools is limitless and so it's impossible to determine what impact and unaccredited school is going to have on a on a piece of land until you know what the unaccredited school is proposing and what type of work it does.  Using my example before the automotive school is going to have a tremendous impact on wetlands." Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 761:9-22.

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted that in the cited deposition testimony is accurate.  Disputed to the extent the deposition testimony referenced by Plaintiffs is an incomplete statement taken out of context.  The cited deposition testimony goes only to how the accreditation requirement addresses the issue of protecting wetlands, and is not the complete "reason" for the differential treatment between accredited and non-accredited educational institutions. Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 761:9-22. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 418:8-421:25.**

690.    The Village's expert witness is unaware of any land use basis for excluding non-accredited educational institutions from a jurisdiction. Savad Decl. **Ex. 18** (Voorhis Dep. at 107-08). He has never worked on any zoning code revisions dealing with educational institutions. Savad Decl. **Ex. 18** (Voorhis Dep. at 127:10-13).

**RESPONSE:**

**Objection:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statements contained in Paragraph 690 over the objection:**

**As to sentence one, <u>disputed</u>. The cited testimony does not support the purported statement of fact. Charles J. Voorhis, the Village's expert, testified that it was not within the scope of his expertise to opine on such matters. Savad Decl. Ex. 18 (Voorhis Dep. at 107-08).**

**As to sentence two, <u>admitted</u>. Defendants note that Voorhis testified that he has worked on zoning code revisions that amended substantial portions of zoning codes, but not specifically dealing with educational institutions. Savad Decl. Ex. 18 (Voorhis Dep. at 127:10-13).**

691.    The Village's distinction between accredited and non-accredited Educational Institutions was intended to distinguish between commercial and non-commercial Educational Institutions. Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Tr. 419:4-11).

**<u>RESPONSE:</u>**

**<u>Disputed</u>. The cited testimony does not support the purported statement of fact. The accreditation portion of Local Law 5 of 2004 was added to create a distinction between an educational institution bearing the special status, required by the New York State Court of Appeals, and a commercial-type educational use. Ulman defines a legitimate educational institution as having the special status required by the New York State Court of Appeals. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Tr. 418:8-421:25).**

692.    Automotive schools, driving schools and carpentry schools can be accredited. Weinstein Dec. ¶ 123; Fitzpatrick Dec. ¶ 63; Beall Dec. ¶ 231.

**<u>RESPONSE:</u>**

**<u>Objection</u>: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the factual propositions contained in Paragraph 692 over the objection, <u>admitted</u> that the cited declarations state as such.**

693.    There is no difference in impacts generally on the stated governmental interests between accredited and non-accredited educational institutions.  Beall Dec. ¶ 229-232, 246-247, 250-252, 260-261, 269-271, 276, 305; Fitzpatrick Dec. ¶ 61-70; Weinstein Dec. ¶ 121-124.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the factual propositions contained in Paragraph 693 over the objection, disputed.  The accreditation portion of Local Law 5 of 2004 was added to create a distinction between an educational institution bearing the special status, required by the New York State Court of Appeals, and a commercial-type educational use, such as an automotive school which is not protected by the special status standard.  Due to its residential character, the Village preferred to avoid commercial-type educational land use in Pomona.  Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 418:8-421:25; Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 761:9-22.**

694.    The maximum building coverage for Educational Institutions, which would include the proposed Rabbinical College if it met the requirements for an Educational Institution, is 10% of the net lot area.  Savad Decl. Ex. 314, Code § 130-10(F)(2)(a).

**RESPONSE:**

**Admitted.**

695.    The maximum total floor area for Educational Institutions, which would include the proposed Rabbinical College if it met the requirements for an Educational Institution, is 20% of the net lot area.  Savad Decl. Ex. 314, Code § 130-10(F)(2)(b).

**RESPONSE:**

**Admitted.**

696.    The total coverage of impervious surfaces for Educational Institutions (which includes all buildings and structures, parking areas, driveways, sidewalks and other areas covered in concrete, asphalt or packed stone) cannot exceed 25% of the net lot area.  Savad Decl. Ex. 314, Code § 130-10(F)(2)(c).

**RESPONSE:**

**Admitted.**

697.    The maximum height for a dormitory building is two stories or 25 feet, whichever is less, under the Village Code.  Code § 130-10(F)(12)(c).

**RESPONSE:**

**Admitted.**

698.    The maximum impervious surface coverage requirement for libraries and museums is 15%. Savad Decl. Ex. 314, Code § 130-12(I).

**RESPONSE:**

**Admitted.**

699.    There is no maximum building coverage for libraries and museums under the Village Code's bulk regulations.  Savad Decl. Ex. 314, Code § 130-12; RFA Resp. No. 93.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  The maximum building coverage is included in the definition of impervious building coverage under Village Code § 130-12(I) and is 15% lot coverage.  Village Code  § 130-12(I) states in part:  "In calculating maximum lot coverage, there shall be included, *in addition to the proposed building*, the lot coverage of impervious surfaces and accessory structures such as swimming pools." (emphasis added).**

700.    There is no maximum floor area for libraries and museums under the Village Code's bulk regulations.  Savad Decl. Ex. 314, Code § 130-12; RFA Resp. No. 93.

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted that there is no specific maximum floor area provision for libraries and museums under the Village Code's *bulk regulations*, Village Code § 130-12.  Disputed to the extent this statement asserts that there is no maximum floor area requirement for libraries and museums under the Village's Code.  There is, in**

fact a maximum floor area requirement for libraries and museums under Village Code §
130-16(o)(2).  Village Code § 130-16(o)(2) states: "The gross floor area of all principal and
accessory buildings, regardless of size, located on a lot shall comply with the maximum lot
coverage requirements of this chapter."  Thus, the maximum floor area for libraries and
museums is 15%.

701.    The maximum height for a Library or Museum within the Village is 35 feet.
Savad Decl. Ex. 314, Code § 130-12(H).

**RESPONSE:**

**Admitted.**

702.    There is no maximum number of stories for a Library or Museum within the
Village under the Village Code's bulk regulations.  Savad Decl. Ex. 314, Code § 130-12.

**RESPONSE:**

**Disputed.  The maximum number of stories for a library or museum within the Village is
included in the Village Code's bulk regulations as a maximum height restriction and, thus,
is as many stories as fit within that restriction.  Village Code § 130-12(H) states:
"Maximum height of buildings and structures shall be 35 feet measured from ground level
in front of the building or structure."**

703.    A Library or Museum would effectively be permitted a three-story building in the
Village. Weinstein Dec. ¶ 132.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported
expert opinion, subject to striking on several grounds, as discussed in detail in Defendants'
Opposition filed herewith.**

**To the extent the Court chooses to consider the factual propositions contained in
Paragraph 703 over the objection, admitted that the cited declaration states as such.**

704.    The square footage of a Library or Museums could be approximately twice as
large as the proposed Rabbinical College. Beall Dec. ¶¶ 306-315.

**RESPONSE:**

**Objection:**  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

**To the extent the Court chooses to consider the factual propositions contained in Paragraph 704 over the objection, <u>disputed</u>.  The maximum floor area for libraries and museums is 15% under Village Code § 130-16(o)(2).  Village Code § 130-16(o)(2) states: "The gross floor area of all principal and accessory buildings, regardless of size, located on a lot shall comply with the maximum lot coverage requirements of this chapter."  The maximum total floor area for Educational Institutions, which would include the proposed Rabbinical College if it met the requirements for an Educational Institution, is 20% of the net lot area.  Savad Decl. Ex. 314, Code § 130-10(F)(2)(b); Code § 130-16(o)(2).**

705.    The Village treats Libraries and Museums on more favorable terms than the proposed Rabbinical College.  Weinstein Dec. ¶¶ 125-134.

**RESPONSE:**

**Objection:**  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

**To the extent the Court chooses to consider the factual propositions contained in Paragraph 705 over the objection, <u>disputed</u>.  *See generally* Savad Decl. Ex. 314, Village Code.**

706.    Libraries are permitted uses within the Village of Pomona, and are not required to obtain a special permit.  Savad Decl. Ex. 314, Code § 130-9(5).

**RESPONSE:**

**Admitted.**

707.    Museums are permitted uses within the Village of Pomona, and are not required to obtain a special permit.  Savad Decl. Ex. 314, Code § 130-9(5).

**RESPONSE:**

**Admitted.**

708.    The purpose of building coverage and floor area limitations is to limit the "size" of development.  Savad Decl. **Ex. 18** (Voorhis Dep. at 56-58).

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted that one purpose of building coverage and floor area limitations is to limit the size of development.  Disputed to the extent Paragraph 708 characterizes this purpose as the only reason for such limitations. Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 590:6-16; 678:16-21; 698:2-8; 724:5-10.**

709.    The Village's concern with impacts to environmental resources, including wetlands, is the size and intensity of development.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 749:24-750:12.  The Village testified as follows: "Q  Is it the case that any zoning law that would reduce building development would advance all of the governmental interests that we've discussed? . . . .  A  Yes."  Defendants' 30(b)(6) Tr. 1044:15-24.

**RESPONSE:**

**Objection:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**As to sentence one, admitted in part; disputed in part.  Admitted that the Village testified that restriction on the size and intensity of development would address the protection of wetlands.  Disputed to the extent Paragraph 709 characterizes that the Village's concern with impact to environmental resouces is limited to just the size and intensity of development.  Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 544:8-19; 572:22-573:3; 571:8-13; 701:11-14; 749:24-750:12.**

**As to sentence two, admitted.**

710.    The Village's concern with impacts to floodplains is the size of impervious surface created by development.  Savad Decl. **Ex. 15**, Defendants' 30(b)(6) Tr. 7/18 at 825:22-826:7, 836:4-11, 838:4-11.

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted that the Village testified that restriction on the size of imperious surface created by development would address impacts to floodplains.**

**Disputed to the extent Paragraph 710 characterizes that the Village's concern with impacts to floodplain is limited to just the size of impervious surface created by development. Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 751:13-23; Savad Decl. Ex. 15, Defendants' 30(b)(6) Tr. 7/18 at 825:22-826:7; 832:6-9; 834:15-23; 835:13-24.**

711. The Village's concern with impacts to plant life and wildlife is the size of development. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 553 at 550:18-553:9.

**RESPONSE:**

**Admitted in part; Disputed in part. Admitted that the Village generally testified that restriction on the size of development would address impacts to plant life and wildlife. Disputed to the extent Paragraph 711 characterizes that the Village's concern with impacts to plant life and wildlife is limited to just the size of development. Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 550:18-553:9; Savad Ex. 13, Defendants' 30(b)(6) Tr. 392:12-23.**

712. The Village's concern with impacts to air quality is the size of development. Ulman Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 391:18-392:6, 396:2-11, 439:13-25.

**RESPONSE:**

**Admitted in part; Disputed in part. Admitted that the Village generally testified that restriction on the size of development would address impacts to air quality. Disputed to the extent Paragraph 712 characterizes the Village's concern with impacts to air quality is limited to just the size of development. Ex. 13, Defendants' 30(b)(6) Tr. 391:18-392:6, 396:2-11, 439:13-25. Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 698:2-14; 701:11-14.**

713. The Village's concern with impacts to its water supply and sanitary sewer system is the size of development. Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 389:24-390:20, 572:22-575:23.

**RESPONSE:**

**Admitted in part; Disputed in part. Admitted that the Village generally testified that restriction on the size of development would address impacts to water supply and sanitary sewer system. Disputed to the extent Paragraph 713 characterizes that the Village's concern with impacts to its water supply and sanitary sewer system is limited to just the size of development. Savad Decl. Ex. 13, Defendants' 30(b)(6) Tr. 389:24-390:20, 572:22-575:23; Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 544:8-19; 571:8-13; 572:22-573:3.**

714.    The Village's concern with impacts to its stormwater systems is the size of development. Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr., 389:24-390:12.

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted that the Village generally testified that restriction on the size of development would address impacts to its stormwater systems. Disputed to the extent Paragraph 714 characterizes that the Village's concern with impacts to its stormwater systems is limited to just the size of development. Savad Decl. Ex. 13, Defendants' 30(b)(6) Tr., 389:24-390:12; Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 751:13-23; Savad Decl. Ex. 15, Defendants' 30(b)(6) Tr. 7/18 at; 832:6-9; 834:15-23; 835:13-24.**

715.    Libraries, museums and an accredited educational institution would in general have just as much of an effect on community character as a comparable unaccredited educational institution.  Weinstein Dec. ¶¶ 97-100.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the factual propositions contained in Paragraph 715 over the objection, disputed. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 418:8-421:25.**

716.    The Village's stated purpose for the building coverage and floor area limitations is to limit development generally, which would (according to the Village) reduce impacts to floodplains, reduce air, water and noise pollution, prevent impacts to wetlands, water, sanitary and stormwater sewer systems and traffic, and maintain community character.  Defendants' 30(b)(6) Tr. 570:13-571:13, 590:6-591, 678:3-21, 698:2-14, 723:21-724:10, 749:10-750:12, 827:13-828:9, 853:25-854:11.

**RESPONSE:**

**Admitted.**

717.    The Village's stated interests justifying the building coverage, floor area and height limitations are equally affected by library or museum uses. Beall Dec. ¶¶ 306-315; Weinstein Dec. ¶ 125-134; Drake Dec. ¶¶ 91-94; Fitzpatrick Dec. ¶¶ 174-179.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants object and <u>dispute</u> as this statement is a conclusion of law, not a factual statement.**

718.    The Village of Poquott, New York, is the "most similar" in terms of community character to Pomona in Defendants' expert witness' experience. Voorhis Dep. at 19-20.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statement contained in Paragraph 718 over the objections, <u>disputed</u>.  The deposition testimony referenced by Plaintiffs is an incomplete statement taken out of context.  Charles J. Voorhis, the Village's expert, testified that while all villages are different, the Village of Poquott, New York is similar in the sense that it is exclusively residential in terms of zoning. Voorhis Dep. at 19-20.**

719.    The Village of Poquott's maximum lot coverage, which is defined as "[t]hat percentage of the lot area covered by the building area," ranges from 20% to 25%.  Savad Decl. Ex. 314; Village of Poquott Zoning Code sec. 183-6{8}, 183-13(D) (available at http://ecode360.com/10907031).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 719 over the objections, <u>admitted</u>.**

720.    Colleges and universities with enrollments under 2,500 students that are religiously affiliated overwhelmingly provide housing for a very high percentage of their students. Weinstein Dec. ¶¶ 136-138.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 720 over the objections, admitted that the cited declaration states as such. Weinstein Dec. ¶¶ 136-138.**

721.    Many theological schools offer 100% housing for their students. Weinstein Decl. ¶ 136.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 721 over the objections, admitted in part; disputed in part. Admitted that the cited declaration references theological schools that offer 100% housing for their students. Disputed to the extent Paragraph 721 characterizes this reference as "many." Weinstein Dec. ¶ 136.**

722.    Smaller (less than 2,500 students) theological schools in New York State and in the Northeast region generally provide housing for most or all of their students, and at all geographical levels, theological colleges with enrollments under 2,500 overwhelmingly provide housing for a very significant percentage of their students. Weinstein Decl. ¶¶ 137-142.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 722 over the objections, <u>admitted</u> that the declaration cited states as such. Weinstein Dec. ¶¶ 137-142.**

723.    No educational institutions existed within the Village in 2001, in 2004, in 2007, or presently.  Interrogatory Resp. No. 35; Savad Decl. **Ex. 15**, Defendants' 30(b)(6) Tr. 1043:8-1044:14.

**RESPONSE:**

**<u>Admitted.</u>**

724.    Educational Institutions are subject to the "special permit" review process in the Village of Pomona, described in section Village Site Plan review process. Savad Decl. Ex. 314 Code Sec. 130-10(F).

**RESPONSE:**

**<u>Disputed.</u>  The Code cited by the Plaintiffs does not support the purported statement of fact.  The Village's special permit review process is described in the Zoning law, Chapter 130 of the Village Code.  The Village's site plan review is set forth in Village Code § 118-32. Ulman Aff. 2 ¶ 7, Ex. A.**

725.    Educational Institutions are "subject to special permit approval by the Village Board of Trustees and site plan approval by the Planning Board." Savad Decl. Ex. 314, Code § 130-10(F).

**RESPONSE:**

**<u>Admitted.</u>**

726.    Educational Institutions are subject to the general "requirements of this Code for special permit and site plan approval," and are also subject to the specific "standards and requirements" described in Village Code § 130-10(F).  Savad Decl. Ex. 314, Code § 130-10(F).

**RESPONSE:**

**<u>Admitted.</u>**

727.    The size of Educational Institutions are limited by the following code provisions: 10% maximum building coverage; 20% maximum floor area; 25% maximum impervious surface; 25 foot maximum height for dormitories; 35 foot maximum height for other buildings. Savad Decl. Ex. 314, Code §§ 130-10(F), 130-12(H); Weinstein Dec. ¶¶ 132-133.

**RESPONSE:**

**Admitted.**


728.    All buildings, recreation areas, parking areas and other property uses and structures for an Educational Institution must be set back a minimum of 125 feet from each property line. Such setback must include a buffer area of a minimum of 35 feet in width consisting of trees, shrubs, plants, fencing and/or other materials as determined by the Planning Board to be sufficient to screen the educational use from adjoining uses and streets.  Savad Decl. Ex. 314, Code § 130-10(F)(4).

**RESPONSE:**

**Admitted subject to the qualification that Paragraph 728 substitutes the word "must" for "shall" within the Village Code.  Village Code § 130-10(F)(4) states: "All buildings, recreation areas, parking areas and other property uses and structures for an Educational Institution *shall* be set back a minimum of 125 feet from each property line. Such setback *shall* include a buffer area of a minimum of 35 feet in width consisting of trees, shrubs, plants, fencing and/or other materials as determined by the Planning Board to be sufficient to screen the educational use from adjoining uses and streets." (emphasis added). Savad Decl. Ex. 314, Code § 130-10(F)(4).**


729.    With respect to Educational Institutions, "[t]he Board of Trustees may impose such restrictions and regulations which would avoid or minimize traffic hazards, impairment of the use, enjoyment or value of property in the surrounding area, or generally protect the health, safety and welfare of the neighborhood and to otherwise implement the purpose and intent of this chapter." Savad Decl. Ex. 314, Code § 130-10(F)(9).  This authority is "in additional to all other requirements of this Code for special permit and site plan approval."  Code § 130-10(F).

**RESPONSE:**

**Disputed.  The Code referenced in Paragraph 729 is an incomplete statement taken out of context.  Savad Decl. Ex. 314 Code § 130-10(F), Code § 130-10(F)(9).**

730.    Educational Institutions are subject to a minimum net lot area of 10 acres. No portion of any land under water shall be counted toward the net lot area. In calculating net lot area, "[n]ot more than 1/4 of any land which is defined as wetland by the U.S. Army Corps of Engineers, the New York State Department of Environmental Conservation and/or Chapter 126 of this Code or which is within a one-hundred-year-frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted toward the net lot area. No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward the net lot area." Savad Decl. Ex. 314, Code § 130-10(F)(1)(a).

**RESPONSE:**

**Admitted.**

731.    The Board of Trustees may impose such reasonable conditions and restrictions as are directly related to and incidental to a special use permit. Savad Decl. Ex. 314, Code § 130-28(E)(4)(c)(2); Voorhis Dep. at 93. "[E]ach specific permit shall be considered as an individual case, . . . ." Code § 130-28(E)(1).

**RESPONSE:**

**Admitted.**

732.    All special permit uses must meet the following standards: "All special permit uses shall comply with the following standards, in addition to the site plan standards of this chapter. The permitting Board shall attach such additional conditions and safeguards to any special permit as are, in its opinion, necessary to ensure initial and continual conformance to all applicable standards and requirements. The location and size of the special permit use, nature and intensity of the operations involved in it or conducted in connection with it, the size of the site in relation to it and the location of the site with respect to streets giving access to it are such that it will be in harmony with the appropriate and orderly development of the area in which it is located. The location, nature and height of buildings, walls and fences and the nature and extent of existing or proposed plantings on the site are such that the special permit use will not hinder or discourage the appropriate development and use of adjacent land and buildings. Operations in connection with any special permit use will not be more objectionable to nearby properties by reason of noise, traffic, fumes, vibration or other characteristics than would be the operations of permitted uses not requiring a special permit. Parking and loading areas will be of adequate size

for the particular special permit use, properly located and suitably screened from adjoining residential uses, and the entrance and exit drives shall be laid out so as to achieve maximum convenience and safety.  The special permit use will not result in diminution of the value of property in the neighborhood or a change in the character of the neighborhood in which the use would be situated." Savad Decl. Ex. 314, Code § 130-28(E)(6).

**RESPONSE:**

**Admitted subject to the qualification that Paragraph 732 does not include notation of the subsections of Village Code § 130-28(E)(6).  Village Code § 130-28(E)(6) states: General standards. All special permit uses shall comply with the following standards, in addition to the site plan standards of this chapter. The permitting Board shall attach such additional conditions and safeguards to any special permit as are, in its opinion, necessary to ensure initial and continual conformance to all applicable standards and requirements.**

**(a) The location and size of the special permit use, nature and intensity of the operations involved in it or conducted in connection with it, the size of the site in relation to it and the location of the site with respect to streets giving access to it are such that it will be in harmony with the appropriate and orderly development of the area in which it is located.**

**(b) The location, nature and height of buildings, walls and fences and the nature and extent of existing or proposed plantings on the site are such that the special permit use will not hinder or discourage the appropriate development and use of adjacent land and buildings.**

**(c) Operations in connection with any special permit use will not be more objectionable to nearby properties by reason of noise, traffic, fumes, vibration or other characteristics than would be the operations of permitted uses not requiring a special permit.**

**(d) Parking and loading areas will be of adequate size for the particular special permit use, properly located and suitably screened from adjoining residential uses, and the entrance and exit drives shall be laid out so as to achieve maximum convenience and safety.**

**(e) The special permit use will not result in diminution of the value of property in the neighborhood or a change in the character of the neighborhood in which the use would be situated.**

733.    The Board of Trustees may attach such additional conditions and safeguards to any Educational Institution special permit as are, in its opinion, necessary to ensure initial and continual conformance to all applicable standards and requirements. Savad Decl. Ex. 314, Code § 130-28(E)(6).

**RESPONSE:**

**Admitted** subject to the qualification that Paragraph 733 substitutes the word "must" for "shall" within the Village Code.  Village Code § 130-28(E)(6) states, in part: "General standards. All special permit uses shall comply with the following standards, in addition to the site plan standards of this chapter. The permitting Board *shall* attach such additional conditions and safeguards to any special permit as are, in its opinion, necessary to ensure initial and continual conformance to all applicable standards and requirements." (emphasis added). Savad Decl. Ex. 314, Code § 130-28(E)(6).

734.   The special permit process allows the Village to mitigate impacts created by the special permit use.  Savad Decl. **Ex. 18**, Voorhis Dep. at 96.

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted that the special permit process allows the Village to mitigate impacts created by the special permit use.  Disputed to the extent Paragraph 734 characterizes that the special permit process allows the Village to mitigate *all* impacts created by the special permit use. Savad Decl. Ex. 314, Code § 130-4, 130-10.**

735.   Site plan approval under § 118-32 of the Village Code is required for all special permit uses.  Savad Decl. Ex. 314, Code § 130-28(E)(5).

**RESPONSE:**

**Admitted.**

736.   In order to receive site plan approval, an Educational Institution must demonstrate: "That the proposed activity and the manner in which it is to be accomplished are in accordance with the purpose and findings set forth in this chapter.  That the proposed activity and the manner in which it is to be accomplished can be completed without increasing the possibility of creep or sudden slope failure and will minimize additional erosion to the maximum extent practicable.  That the proposed activity and the manner in which it is to be accomplished will not adversely affect the preservation and protection of existing wetlands, water bodies, watercourses and floodplains.  That the proposed activity and the manner in which it is to be accomplished can be completed in such a way so as not to adversely affect existing, proposed or potential future wells or sewage disposal systems or any endangered species of flora or fauna. That the proposed activity and the manner in which it is to be accomplished are consistent with

the principles and recommendation of the adopted Village Master Plan." Savad Decl. Ex. 314, Code § 119-3(A).

**RESPONSE:**

**Disputed as to the applicability to an Educational Institution.** *See* **Savad Decl. Ex. 314, Code § 119-3(A).**

737.    In granting site plan approval, the Village's Planning Board has the authority to impose such reasonable conditions and restrictions as are directly related to and incidental to a proposed site plan.  Savad Decl. Ex. 314, Code § 119-3(B).

**RESPONSE:**

**Disputed as to the applicability to an Educational Institution.** *See* **Savad Decl. Ex. 314, Code § 119-3(B).**

738.    The Village's Planning Board cannot approve a site plan unless it takes into consideration the "public health, safety and general welfare and sets appropriate conditions and safeguards which are in harmony with the general purpose and intent of this chapter," including with respect to traffic, parking, landscaping and buffering, lighting, drainage, water and sewage, and building design, among other criteria.  Savad Decl. Ex. 314, Code § 119-5(D).

**RESPONSE:**

**Disputed as to the applicability to an Educational Institution.** *See* **Savad Decl. Ex. 314, Code § 119-5(D).**

739.    Educational Institutions are subject to review under New York's SEQRA.  Savad Decl. **Ex. 14,**  Defendants' 30(b)(6) Tr. 784:18-787:19; Code § 119-7(G).

**RESPONSE:**

**Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 739 over the objections, admitted.**

740.    The Village believes that it cannot control the size of Educational Institution development other than through the adoption of the challenged zoning code provisions.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 711:20-713:20.

**RESPONSE:**

**Admitted.**


741.    The governmental interests that were asserted by the Village in support of the challenged zoning provisions apply equally to any land development within the Village.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 570:16-18, 749:24-750:2, 1044:15-24.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 741 over the objections, disputed.  The cited testimony does not support the purported statement of fact.  _See_ Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 570:16-18, 749:24-750:2, 1044:15-24.**


742.    The Village sought the advice of no experts or consultants regarding the challenged zoning provisions, other than its own planning firm.  Savad Decl. Ex. 311, Interrogatory Resp. No. 30.

**RESPONSE:**

**Disputed.  The cited interrogatory response does not support the purported statement of fact.  The Village sought the advice of Frederick P. Clark Associates, Inc. and the Rockland County Planning Department, the Village Attorney, and potentially affected agencies such as the New York State Department of Transportation, the Town Clerk of the Town of Haverstraw, the Town Clerk of the Town of Ramapo, the Village Clerk of Wesley Hills and the Village Clerk of New Hempstead.  Savad Decl. Ex. 311, Interrogatory Resp. No. 30. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 401:12-401:20, 399:23-400:7, 470:16-472:13.  Further disputed to the extent Paragraph 742 characterizes Frederick P. Clark Associates, Inc. an independent planning firm hired by the Village, as "its own planning firm."  Savad Decl. Ex. 311, Interrogatory Resp. No. 30.**

743.    The only reports, studies, memoranda or other documents identified by the Village that supported the passage of the challenged zoning code provisions were: "(1) two memoranda written by their own planning firm, Frederick P. Clarke, commissioned in response to the predecessor Orthodox owner of the Property, Yeshiva Spring Valley. Neither of these were supported by any evidence demonstrating a need for the challenged provisions; (2) the New York Court of Appeals' decision in *Cornell University v. Bagnardi*, 68 N.Y.2d 583, 510 N.Y.S.2d 861 (1986), and related cases; (3) the County of Westchester Model Ordinance, a Survey of Municipal Ordinances in Westchester County, and the Village's draft 1998 local law addressing wetlands; and (4) sec. 401 of the federal Clean Water Act, Article 24 of the NYS Environmental Conservation Law, and MS4 Permitting requirements and manuals. *Id.* The Village has failed to explain how any of these demonstrate a need for the challenged ordinances." Savad Decl. Ex. 311, Interrogatory Resp. Nos. 3, 13, 15.

## RESPONSE:

**Objection:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).  Defendants object as this statement offers opinion as facts.  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 743 over the objection:**

**As to sentence one, <u>disputed</u>.  The Village testified to other documents and reasons supporting the passage of the challenged zoning code provisions and explained the need for the challenged ordinances.  *See, e.g.,* <u>Memorandum</u>, Frederick P. Clark Associates, Inc. (January 14, 2000); <u>Memorandum</u>, Frederick P. Clark Associates, Inc. (January 24, 2000). Ulman Aff. ¶¶ 33-34, Ex. 27-28; <u>Memorandum Proposed Amendment to Zoning Law in Relation to Schools</u> (September 7, 2004). Ulman Aff. ¶ 35, Ex. 29; Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 301:13-301:17, 301:19-301:20, 303:5-303:8, 430:14-435:18, 470:16-472:13;(Revised Code of the Town of Ramapo, Ch. 376). Ulman Aff. ¶ 38, Ex. 32;  (Chestnut Ridge Definition of Dormitory, pg. XVIII-10). Ulman Aff. ¶ 37, Ex. 31; *Congregation Mischknois Lavier Yakov Inc. v. Board of Trustees of Village of Airmont,* 7:02-cv-05642-SCR (S.D.N.Y. filed July 19, 2002); *Cornell University v. Bagnardi,* 510 N.Y.S 2d 861 (N.Y. 1986); *Diocese of Rochester v. Planning Board of the Village of Brighton,* 154 N.Y.S 2d 849 (N.Y. 1956); (New York State Environmental Conservation Law §§ 24-0103, 24-0105, 24-0107, 24-0701). Ulman Aff. ¶ 22, Ex. 16.**

**Further disputed to the extent Paragraph 743 characterizes Frederick P. Clark Associates, Inc. an independent planning firm hired by the Village, as "its own planning firm." Further disputed to the extent Paragraph 743 characterizes two memoranda written by**

**Frederick P. Clark Associates, Inc. as commissioned "in response to the predecessor Orthodox owner of the Property."**

**As to sentence two, <u>disputed</u>.  The Village testified to both documents and reasons supporting the passage of the challenged zoning code provisions and explained the need for the challenged ordinances.  *See e.g., See e.g.,* Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 350:14-351:2, 358:15-358:17; 374:12-374:17, 375:20-382:21, 389:16-397:19, 418:8-421:25, 416:25-418:24, 442:23-443:6, 444:8-445:4, 448:5-449:25, 459:5-459:24, ., 464:5-464:24, 461:2-461:17; Defendants' Amended Responses to Certain of Plaintiffs' Second Set of Interrogatories at ¶¶4, 16 December 11, 2013), Gordon Aff. ¶21, Ex. 16; (<u>Transcript on Public Hearings on Local Law Amendment: Dormitories (Continued), Local Law Amendment: Wetlands</u>) 4:11-4:25, 13:25-14:2, 24:20-25:3, 27:23-28:11, 31:21-32:1, 53:8-53:9 (January 22, 2007). <u>Gordon Aff.</u> ¶ 22, <u>Ex. 17.</u>; (New York State Environmental Conservation Law §§ 24-0103, 24-0105, 24-0107, 24-0701). <u>Ulman Aff.</u> ¶¶ 22, Ex. 16; Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 565:9-565:18, 579:7-579:18, 581:5-582:7.**

Community Character

744.    The Village states that all of the challenged zoning code provisions are necessary to protect the "community character" of the Village.  Savad Decl. Ex. 311, Interrogatory Resp. Nos. 4, 6.

**RESPONSE:**

**<u>Admitted</u> subject to the qualification that the cited document does not support the purported statement of fact, in that "all of the challenged zoning code provisions" are not contained in the cited interrogatory responses.**

745.    The Village Code requires that, with respect to Educational Institutions, the location and height of its buildings, the location, nature and height of walls and fences and the nature and extent of landscaping on the site shall be such that the use will not hinder or discourage the development and use of adjacent land and buildings.  Savad Decl. Ex. 314, Code § 130-10(F)(11).

**RESPONSE:**

**<u>Admitted.</u>**

746.    The Village defines "community character" as follows: "Q So when you talk about character of the community, are you talking about the visual character of the community? A Partially but mostly I'm talking about the zoning character, the usage within the community. Q So the interests listed here maintaining community character is protecting the uses within the community? A It's protecting the type of community character that has been determined by the Board of Trustees to be the policy of the community." Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 394:7-18.

**RESPONSE:**

**Admitted** subject to the qualification that the testimony referenced in Paragraph 746 is an incomplete statement taken out of context. The Village defines community character beyond the scope of the cited deposition testimony. *See e.g.*, Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 612:9-12, 635:8-23; Savad Decl. Ex. 12 (Defendants' 30(b)(6) Day 1 Tr.) 99:16-100:14

747.    The Village states that the elements of "community character" are "No streetlights," "no sidewalks," "maintaining as much of the land original landscaping as possible," "no commercial activity," "larger lot sizes," "trees," "landscaping between properties," "Protection of the water supply, protection of air pollution against air pollution, noise, protection of your wetlands," and maintaining "[s]emi-rural single family neighborhoods." Savad Decl. **Ex. 12**, Defendants' 30(b)(6) Tr. 99:18-100:14, 393:20-395:10, 634:8-635:14.

**RESPONSE:**

**Admitted** subject to the qualification that the testimony referenced in Paragraph 747 is an incomplete statement taken out of context. The Village defines community character beyond the scope of the cited deposition testimony. *See e.g.*, Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 612:9-12; Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 394:7-18; Savad Decl. Ex. 12 (Defendants' 30(b)(6) Day 1 Tr.) 99:16-100:14

748.    The Village's expert witness defines "community character" as "[D]emography, economic trends, land use, zoning are, in my mind and in my field, parts of what we typically call human resources of a community and that's part of that baseline." Voorhis Dep. at 40-41.

**RESPONSE:**

**Disputed.** The cited deposition testimony is an incomplete statement taken out of context. **Voorhis testified as follows:**

"Q: What do you mean by the phrase character of a community?

A: In my field, we often establish a baseline, and it involves characterization. We do that from the perspective of water quality, many environmental parameters, many land use and zoning parameters. And that may include economic and demographic data. So I do use the term for the purposes of establishing a baseline that is useful in understanding what makes up a community.

. . . .

I don't know if I can add more to what I stated before, that demography, economic trends, land use, zoning are, in my mind and in my field, parts of what we typically call human resources of a community, and that's part of the baseline." Voorhis Dep. at 40-41.


749.    The Village has no evidence that community character was threatened by educational institutions. RFA Resp. Nos. 11, 12; Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 586:7-15.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 749 over the objections, <u>disputed</u>.  The cited request for admission and deposition testimony does not support the purported statement of fact. RFA Resp. Nos. 11, 12; Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 586:7-15.**


750.    The Village had no studies, reports or documentation regarding community character prior to the passage of Local Law Numbers 1 of 2001, 5 of 2004, and 1 of 2007.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 583:2-586:2.

**RESPONSE:**

**<u>Admitted in part; Disputed in part.</u>  Admitted that Paragraph 750 reflects what the Village representative testified. Disputed to the extent that the Village did have the memorandum of Frederick P. Clark Associates, Inc. and the Village's Master Plan. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 583:2-586:2; <u>Memorandum</u>, Frederick P. Clark Associates, Inc. (January 14, 2000); <u>Memorandum</u>, Frederick P. Clark Associates, Inc. (January 24, 2000) Ulman Aff. ¶¶ 33-34, Ex. 27-28; <u>The Village of Pomona Master Plan Update</u> (1997) Gordon Aff. ¶ 30, Ex. 25.**

751.   The Village only relied on their own knowledge of the community character conditions within the Village prior to the passage of the challenged code provisions.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 586:2, 593:23-594:2.

**RESPONSE:**

**Disputed.  Disputed to the extent that the Village had the memorandum of Frederick P. Clark Associates, Inc. and the Village's Master Plan, referencing community character conditions, prior to passage of the challenged code provisions. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 583:2-586:2; Memorandum, Frederick P. Clark Associates, Inc. (January 14, 2000); Memorandum, Frederick P. Clark Associates, Inc. (January 24, 2000); Ulman Aff. ¶¶ 33-34, Ex. 27-28; The Village of Pomona Master Plan Update (1997) Gordon Aff. ¶ 30, Ex. 25.**

752.   Community character is not mentioned in the text of Local Laws No. 1 of 2001, Local Law No. 5 of 2004, Local Law No. 1 of 2007, and Local Law No. 5 of 2007.  Local Law No. 1 of 2001, Local Law No. 5 of 2004, Local Law No. 1 of 2007; Local Law No. 5 of 2007.

**RESPONSE:**

**Admitted that the specific term "community character" is not mentioned.  Defendants note that all local laws are inherently concerned with maintaining community character.  Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 tr.) 389:10-15.**

753.   The Village did not consider any alternatives to achieve its goals of protecting community character when it passed Local Law No. 1 of 2001.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 594:6-600:4.

**RESPONSE:**

**Disputed.  The cited testimony does not support this purported statement of fact.  The Village representative testified that the Village "looked at alternatives" and, in this regard, cited the memoranda of Mark Healey of Frederick P. Clark Associates, Inc. the Village's planner.  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 595:6-18.**

754.   The Village Board of Trustees did not consider community character when enacting Local Law No. 1 of 2007.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 625:2-13.

**RESPONSE:**

**Disputed.** **The cited testimony does not support the purported statement of fact. Just because the Village representative testified that maintaining community character was not discussed by the Board, that does not mean it was not considered by the Board. More importantly, Local Law 1 of 2007 was an administrative correction of Local Law 5 of 2004, so there was no need for such consideration. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 625:2-11.**

755.    Local Law No. 1 of 2007 was not meant to address the issue of community character, as the Village testified that it "was primarily a correction of Local Law 5 of 2004." Savad Decl. **Ex. 14**, Ulman  30(b)(6) Tr. 625:7-8.

**RESPONSE:**

**Admitted subject to the qualification that all local laws are inherently concerned with maintaining community character.  Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 tr.) 389:10-15.**

756.    The only "community character" interests alleged by the Village to be advanced by Local Law No. 5 of 2007 are the protection of environmental resources. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 641:20-24.

**RESPONSE:**

**Disputed.** **The cited testimony does not support the purported statement of fact. The Village representative cited as community character interests wetlands, air, and water quality. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 641:20-25, 642:1-16.**

757.    The Village testified that the accreditation requirement "was imposed as a restriction on the use of organizations that might call themselves schools but are not subject to the special status of the state case law. That was all it was intended to do." Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 610:6-10.

**RESPONSE:**

**Admitted.**

758.    The Village's justification for the accreditation requirement as necessary to protect community character was that schools such as "driving education school," "automotive school" and "carpenter's union" might locate in Pomona.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 622:3-12.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 622:3-12.**

759.    Driving education schools, automotive schools and carpenter's schools are educational institutions that can be accredited.  Weinstein Dec. ¶ 132; Fitzpatrick Dec. ¶ 63.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 759 over the objections, <u>admitted</u> that the declarations state as such.**

760.    Non-accredited educational institutions do not, as a class, impact community character more than accredited educational institutions.  Weinstein Dec. ¶¶ 64-82, 97-100.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 760 over the objections, <u>admitted</u> that the declaration states as such.**

761.    Libraries, museums and camps do not need to be accredited in the Village of Pomona.  Savad Decl. Ex. 314, Code §§ 130-9(A)(5), 130-10(D); 30(b)(6) at 610:11-16.

**RESPONSE:**

**Admitted.** Defendants note that while educational institutions can be accredited, there is traditionally no requirement that libraries, museums and camps be accredited.

762.    Accreditation is irrelevant in terms of architecture.  Drake Dec. ¶¶ 40-46, 88.

**RESPONSE:**

**Objection:** Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statements contained in Paragraph 762 over the objections, **admitted** that the declaration states as such.

763.    The no "separate cooking, dining or housekeeping facilities" rule does not directly relate to the issue of community character, as such rule relates solely to the interior of buildings. Weinstein Dec. ¶¶ 83-86; Drake Dec. ¶¶ 55-59.

**RESPONSE:**

**Objection:** Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statements contained in Paragraph 763 over the objections, **admitted** that the declarations state as such.

764.    There is no risk associated with small kitchen appliances in dormitory rooms where students would be housed in student family housing with normal residential kitchens. Weinstein Dec. ¶ 86;  Savad Decl. **Ex. 18**, Voorhis Dep. at 120.

**RESPONSE:**

**Objection:** Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statements contained in Paragraph 764 over the objections, **disputed.**  The cited testimony does not support the purported statement of fact.  *See* Weinstein Dec. ¶ 86; Savad Decl. Ex. 18, Voorhis Dep. at 120.

765. The safety concerns of the Village concerning the use of hot plates and other small cooking appliances primarily relate to traditional dormitory room, not family housing unit living. Savad Decl. **Ex. 18** (Voorhis Tr.) 119:10-120:14.

**RESPONSE:**

**Disputed. The cited testimony does not support the purported statement of fact. The testimony cited is of the Village planning expert retained for this litigation, not the Village. Further, the testimony is opinion testimony of an expert, not fact testimony of the Village.**

**Savad Decl. Ex. 18 (Voorhis Tr.) 119:10-120:14.**

766. Defendants' expert has never seen a prohibition that restricts separate cooking, dining or housekeeping facilities. Savad Decl. **Ex. 18** (Voorhis Tr.) 121:25-122:10.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 766 over the objections, admitted. Defendants note that Plaintiffs fail to point out that Charles Voorhis, the Village planning expert, testified that he did not investigate whether the other municipalities that he works with have codes containing similar provisions. Savad Decl. Ex. (Voorhis Tr.) 121:17-24.**

767. Defendants' expert testified that an educational institution with housekeeping facilities would not necessarily impact community character more than an educational institution without such facilities. Savad Decl. **Ex. 18** (Voorhis Tr.) 176:21-177:9.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 767 over the objections, admitted.**

768.    Defendants' expert did not investigate any other jurisdictions to find a similar provision that restricts separate cooking, dining or housekeeping facilities.  Savad Decl. **Ex. 26** (Voorhis Tr.) 120:25-121:4.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 768 over the objections, admitted that Savad Decl. Ex. 18 (Voorhis Tr.) 120:25-121:4 states as such.**

**Defendants note that Savad Decl. Ex. 26 is not the deposition testimony of Charles Voorhis. The correct citation for Mr. Voorhis deposition testimony is Ex. 18.**

769.    Defendants' expert does not do work for jurisdictions that have this provision that restricts separate cooking, dining or housekeeping facilities. Savad Decl. **Ex. 26** (Voorhis Tr.) 125:5-13.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 769 over the objections, disputed.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 26 (Voorhis Tr.) 125:5-13.**

770.    The majority of dorms at Cleveland State University have housekeeping facilities. Savad Decl. Ex. 35 (Weinstein Tr.) 57:11-20.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 770 over the objections, disputed.  The cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 35 (Weinstein Tr.) 57:11-20.**

771.   Prohibiting non-accredited educational institutions is not a practice generally accepted in the planning field, nor do other jurisdictions completely prohibit non-accredited educational institutions.  Weinstein Dec. ¶¶ 64-82.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 771 over the objections, admitted that the cited declaration states as such.**


772.   The permitted dormitories described in the Village Code would create greater negative impacts on community character than student family housing, which is prohibited in the Village Code.  Weinstein Dec. ¶¶ 88-93; Drake Dec. ¶¶ 60-61, 87.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 772 over the objections, admitted that the cited declarations state as such.**


773.   Student family housing would be more similar to the character of the surrounding community than permitted dormitories.  Weinstein Dec. ¶ 90; Drake Dec. ¶ 61.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 773 over the objections, admitted that the cited declarations state as such.**

774.    The prohibition on non-traditional student housing runs counter to the trend of establishing family housing options for post-secondary students.  Weinstein Dec. ¶ 89.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 774 over the objections, admitted that the cited declaration states as such.**


775.    The dormitory restrictions are justified by the Village on the basis of limiting size and intensity of use.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 610:17-611:4, 612:4-12, 623:12-23, 636:22-637:20, 708:15-709:7.

**RESPONSE:**

**Admitted.  Defendants note that the term "dormitory restrictions" is not defined. Admitted to the extent that "dormitory restrictions" mean the 20% square footage restrictions, as well as the provisions that do not permit separate cooking, dining and housekeeping facilities.**


776.    None of the challenged zoning code provisions regarding dormitories limit the size of an Educational Institution, as such use is limited by the 10% maximum building coverage, 20% maximum floor area, 25% maximum impervious surface, and 25'/35' building height limitations.  Beall Dec. ¶¶ 241, 254-255, 263-264, 300-301, 304; Weinstein Dec. ¶ 94.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 776 over the objections, admitted that the cited declarations state as such.**

777.    The Village claims that the "one dormitory building" limitation advances its interest in maintaining community character by limiting the "intensity" of the use.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 637:14-640:25.  However, "smaller buildings are often easier to place on a site while avoiding wetlands."  Beall Dec. ¶ 297.  The one dormitory rule is antithetical to the goal of maintaining residential character.  Drake Dec. ¶ 52-53.  The one dormitory building rule prevents any flexibility in design and ensures that sure building would have the greatest possible bulk, thus in conflict with surrounding homes.  Weinstein Dec. ¶¶ 115-120.

**RESPONSE:**

**Objection:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 777 over the objections**:

**As to sentence one, <u>admitted</u>.**

**As to sentence two, <u>admitted</u> that the declaration cited states as such.**

**As to sentence three, <u>admitted</u> that the declaration cited states as such.**

**As to sentence four, <u>admitted</u> that the declaration cited states as such.**


778.    The Village claims that the "20% limitation" for dormitories advances its interest in maintaining community character by limiting the "intensity" of the use.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 623:12-24.

**RESPONSE:**

**Admitted.**


779.    Libraries and museums could threaten the asserted interest in maintaining community character as much as the prohibited educational institution uses, and the proposed Rabbinical College could be designed in a manner that would not have a greater impact than other institutional and residential uses such as museums, libraries, dormitory buildings for

accredited schools, or single family housing based on existing average density requirements. Drake Dec. ¶ 96; Weinstein ¶¶ 97-100.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 779 over the objections, <u>disputed</u>.  The interest in maintaining community character is not limited to visual interests.  *See e.g.*, Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 394:7-18; Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 612:9-12, 635:8-23; Savad Decl. Ex. 12 (Defendants' 30(b)(6) Day 1 Tr.) 99:16-100:14.**

780.    A Rabbinical College could be developed in Pomona in a manner consistent with the Village's interest in preserving its community character.  Drake Dec. ¶¶ 15-17, 21-39; Weinstein Dec. ¶¶ 101-114; Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 616:19-617:11; Savad Decl. Ex. 18 (Voorhis Dep. at 174:2-9).  "[I]t is a fairly simple design issue to introduce new dormitory and campus buildings into a community and retain the current community character." Drake Dec. ¶ 36.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement offers opinion as fact.**

**To the extent the Court chooses to consider the statement contained in Paragraph 780 over the objections, <u>admitted in part; disputed in part</u>.  Admitted that the cited declarations state as such.  Disputed to the extent that the cited testimony is inaccurately characterized and taken out of context.  Ms. Ulman testified that non-residential or dormitory use having a design more in line with the surrounding neighborhood would be encouraged.  Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 616:19-617:11.  Further, the testimony cited is a response by a witness to a hypothetical question.  Charles Voorhis testified that he did not disagree that a rabbinical college can be developed that's virtually in harmony with the surrounding community, but that it was subject to analysis and architectural information. Savad Decl. Ex. 18 (Voorhis Dep. at 174:2-9).**

781.    Student housing can be built to resemble residential housing.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 616:19-21.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as fact.**

**To the extent the Court chooses to consider the statements contained in Paragraph 781 over the objections, admitted subject to the qualification that the testimony cited is a response by a witness to a general, hypothetical question.**

782.    The impacts on the Village's community character that could have potentially occurred with respect to a Hindu temple use in Pomona were all addressed in the application process.  Savad Decl. **Ex. 15**, Defendants' 30(b)(6) Tr. 939:24-940:23.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 782 over the objections, admitted.**

783.    The impacts on the Village's community character that could have potentially occurred with respect to an animal hospital use in Pomona were all addressed in the application process.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 586:16-588:8.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 783 over the objections, admitted.**

784.    The challenged zoning code provisions are not necessary to protect the Village's interest in maintaining its community character because there are other, less restrictive means of achieving that interest, including the special permit and site planning process, and submission

before the Village's Board of Architectural Review.  Weinstein Dec. 101-114; Drake Dec. 80-86;
Savad Decl. Ex. 314, Code §§ 3-1(A), 3-4(A), 119, 130-10(F), 130-28.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants object as this statement is a conclusion of law, not a factual
statement.  Defendants object because this statement improperly contains purported expert
opinion, subject to striking on several grounds, as discussed in detail in Defendants'
Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 784 over
the objections, <u>disputed</u>.  The cited Village Code sections do not support the purported
statement of fact.  Savad Decl. Ex. 314, Code §§ 3-1(A), 3-4(A), 119, 130-10(F), 130-28.**

     785.    The special permit process can address impacts on community character.  Savad
Decl. **Ex. 18**, Voorhis Dep. at 97.

**RESPONSE:**

**Admitted.**

     786.    Any site plan approved by the Village Planning Board must be consistent with the
principles and recommendation of the adopted Village Master Plan.  Savad Decl. Ex. 314, Code
§ 119-3(A)(5).  Because the Village Code requires a 10-acre minimum area and maximum 10%
lot coverage for an educational institution, there would be ample room for significant buffering
and screening of any educational institution from the surrounding single-family residential
district.  Weinstein Dec. ¶ 107.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported
expert opinion, subject to striking on several grounds, as discussed in detail in Defendants'
Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 786 over
the objections, <u>disputed</u>.  The cited Village Code sections cited do not support the
purported statement of fact.  Savad Decl. Ex. 314, Code § 119-3(A)(5).**

787.    Any site plan approved by the Village Planning Board must ensure that all buildings and other structures shall harmoniously relate to each other, the site and neighboring properties. Savad Decl. Ex. 314, Code § 119-5(D)(9). The Architectural Review Board will not approve any application for a use that would "be detrimental to the character of the neighborhood," among other standards. Code § 3-5(C).

**RESPONSE:**

**Disputed. The cited Village Code sections cited do not support the purported statement of fact. Defendants note that Chapter 119 only applies to single-family, steep slope lots. Savad Decl. Ex. 314, Code § 119-5(D)(9); Code § 3-5(C).**

788.    The WPL 100' buffer does not protect community character, and allows other significant impacts to community character, as it does not prevent any development outside of such buffer, and does not apply to properties improved with single family residences. Savad Decl. Ex. 314, Code § 126-3.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement is a conclusion of law, not a factual statement. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 788 over the objections, admitted in part; disputed in part. Admitted that the 100-foot buffer does not apply to the existing properties improved with single family residences. Otherwise disputed. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 641:17-642:16.**

789.    The WPL 100' buffer is not necessary to protect community character because there are other means of achieving that interest, including the special permit and site planning process, and submission before the Village's Board of Architectural Review. Weinstein Dec. 101-114; Savad Decl. Ex. 314, Code §§ 3-1(A), 3-4(A), 119, 130-10(F), 130-28.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 789 over the objections, <u>disputed</u>. The cited Village Code sections cited do not support the purported statement of fact. Savad Decl. Ex. 314, Code §§ 3-1(A), 3-4(A), 119, 130-10(F), 130-28.**

Traffic

790.    The Village has stated that all of the challenged code provisions, other than the "no housekeeping facilities" and "one dormitory building" provisions, are meant to advance its interests in traffic regulation.  Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Tr.) 389:24-390:20, 439:21-25, 678:3-686:17.

**RESPONSE:**

**<u>Disputed</u>.  The cited testimony does not support the purported statement of fact.  There is no support for the assertion that the Village excluded the "no housekeeping facilities" and "one dormitory building" provisions from the interests asserted for Local Law 5 of 2004. Savad Dec. Ex. 311 (Interrogatory) Resp. No. 26; Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.)389:9-397:19,  389:24-390:20, 438:10-439:25; Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 678:3-686:17  (Defendants' Amended Responses to Certain of Plaintiffs' Second Set of Interrogatories at ¶ 6, December 11, 2013). Gordon Aff. ¶ 21, Ex. 16.**

791.    The basis for the Village's contention that the challenged code provisions, other than the "no housekeeping facilities" and "one dormitory building" provisions, advance its interest in traffic regulation is that: "All dwelling units, by their nature, generate traffic."  Savad Decl. **Ex. 312** (Interrogatory) Resp. No. 26.

**RESPONSE:**

**<u>Disputed</u>.  The cited testimony does not support the purported statement of fact.  There is no support for the assertion that the Village excluded the "no housekeeping facilities" and "one dormitory building" provisions from the interests asserted for Local Law 5 of 2004. Savad Dec. Ex. 311 (Interrogatory) Resp. No. 26; Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 389:9-397:19, 389:24-390:20, 438:10-439:25; Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 678:3-686:17. (Village 30(b)(6) Dep.); (Defendants' Amended Responses to Certain of Plaintiffs' Second Set of Interrogatories at ¶ 6, December 11, 2013). Gordon Aff. ¶ 21, Ex. 16.**

792. The Village's traffic justification is wholly unreasonable and insufficient for the purpose of measuring potential infrastructure impact. Fitzpatrick Dec. ¶ 58.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 792 over the objections, <u>admitted</u> that the cited declaration states as such.**

793. The Village had no studies or reports demonstrating a need for laws regulating educational institutions in order to protect its traffic interests. Savad Decl. **Ex. 312** (RFA) Resp. Nos. 53, 54, 55, 56.

**RESPONSE:**

**<u>Admitted</u> that the Village possessed no format studies or reports establishing a need for controlling traffic when it adopted Local Law 1 of 2001, Local Law 5 of 2004, Local Law 1 of 2007, and Local Law 5 of 2007. Defendants not that they deny that such reports or studies were necessary. Savad Decl. Ex. 310 (RFA) Resp. Nos. 53, 54, 55, 56.**

**Defendants note that Savad Decl. Ex. 312 is not Defendants' Response to Plaintiff's Request for Admissions. The correct citation for Defendants' Response to Plaintiff's Request for Admissions is Savad Decl. 310.**

794. The Village had no knowledge of the traffic that would be generated by an Educational Institution when it adopted the challenged zoning code provisions. Savad Decl. **Ex. 14**, (Defendants' 30(b)(6) Tr.) 674:4-15, 675:8-17.

**RESPONSE:**

**<u>Admitted</u>. Defendants note that the reason the Village representative had no knowledge of traffic generated by an Educational Institution is because there are no Educational Institutions in the Village. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 674:4-9.**

795.    The two main thoroughfares in the Village are Routes 202 and 306.  Fitzpatrick Dec. ¶ 13.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 795 over the objections, <u>admitted</u> that the cited declaration states as such.  Defendants note that Routes 202 and 306 border the Village.**

796.    The Village has no evidence demonstrating problems with traffic capacity on Routes 202 and 306 in the Village.  Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 669:9-675:7.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 796 over the objections, <u>disputed</u>.  Village counsel testified that "I don't know where we're talking about on Route 202 when you say its light, but I know that these traffic studies showed that various intersections in and around Pomona were not As or Bs, some of them were Cs, some of them were Ds".  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 670:5-11.**

797.    Existing levels of service on Routes 202 and 306 are excellent and excess capacity is extraordinarily high.  Fitzpatrick Dec. ¶¶ 17-26.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 797 over the objections, <u>admitted</u> that the cited declaration states as such.**

798.   The Village has no evidence of any unusual safety issues on Routes 202 and 306 in the Village.  Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 675:18-676:3.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 798 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 675:18-676:3.  Further noted that  Village counsel testified that "I don't know where we're talking about on Route 202 when you say its light, but I know that these traffic studies showed that various intersections in and around Pomona were not As or Bs, some of them were Cs, some of them were Ds".  *Id.* at 670:5-11.**

799.   The Village had not taken any steps to address traffic safety on Routes 202 and 306.  Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 677:2-4.

**RESPONSE:**

**<u>Disputed</u>.  The cited testimony does not support the purported statement of fact.  The Village testified that it had not taken steps to address a particular issue on Route 306.  Defendants note that the Village testified that since Routes 202 and 306 are state roads the Village cannot do anything.  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 676:16-25, 677:1-4.**

800.   The Village "has no way of knowing" whether an Educational Institution with 250 students would create an unacceptable traffic safety risk.  Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 677:5-10.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 800 over the objections, <u>admitted</u>.  Defendants note that the Village has no way of knowing because Plaintiffs have not submitted an application to the Village for site plan approval.  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 677:5-19.**

801.     There is no traffic interest justifying the adoption of the challenged code provisions.  Fitzpatrick Dec. ¶¶ 47-53, 58-59, 66-68, 77-80, 86-92.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 801 over the objections, <u>admitted</u> that the cited declaration states as such.**

802.     The Village's only explanation for why non-accredited Educational Institutions will generate more traffic than accredited institutions is that an "automotive school is going to generate a tremendous amount of traffic because the cars are going to be coming in and out of there on a -- quite often to be tested and used for training purposes, and buses, not only passenger vehicles but all kinds of vehicles." Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 683:8-13.  The Village's statement that non-accredited Educational Institutions will generate more traffic than accredited institutions is unsupported and false.  Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 683:4-19; Fitzpatrick Dec. ¶¶ 63-65.

**RESPONSE:   Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 802 over the objections, <u>disputed.</u>  The cited testimony does not support the purported statement of fact.  The cited testimony shows that an automotive school was an example provided by the Village, not the "only explanation" for the cited premise. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Tr.) 683:8-13.**

803.    The Village's prohibition on student family housing as necessary to prevent traffic impacts is unsupported. Fitzpatrick Dec. ¶¶ 76-80. To the extent that the Rabbinical College may generate more traffic based on the fact that its students will generally be married and have children (for instance, if the Rabbinical College was double-counted as both a college and an apartment building), traffic analysis demonstrates that there will still be no more than a *de minimis* impact on traffic within the Village. Fitzpatrick Dec. ¶¶ 127-133.

**RESPONSE:   Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants also object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a). Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 803 over the objections, admitted that the cited declaration states as such.**


804.    The Village stated that the 20% dormitory limitation was justified with respect to traffic impacts because "[a] smaller living facility that houses fewer people is going to generate less traffic than one that is larger and houses a larger number of people." Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 686:22-25.

**RESPONSE:**

**Admitted.**


805.    The 20% dormitory limitation runs contrary to the Village's stated interest in regulating traffic, as a campus that students must drive to creates more traffic than a residential campus. Fitzpatrick Dec. ¶¶ 82-89.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 805 over the objections, admitted that the cited declaration states as such.**

806.    The Village has no evidence that permitting more housing on campus would increase traffic impacts. Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 689:9-20.

**RESPONSE:**

**Objection: Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 806 over the objections, <u>disputed.</u> The cited testimony does not support the purported statement of fact. To the contrary, the Village representative testified that having fewer people living in the "facility" will generate less traffic. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 689:2-8.**

807.    Traffic impact caused by any development "depends on use and on a specific project." Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 683:21-22; Savad Decl. **Ex. 18** (Voorhis Dep. at 172:20-173:13).

**RESPONSE:**

**Admitted.**

808.    The Village stated: "mitigation of traffic is considered during the review process and is dependent upon the traffic that is generated by the particular project that's being proposed and so I cannot answer whether or not it can be mitigated because I don't know what the project is." Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 685:19-24.

**RESPONSE:**

**Admitted.**

809.    The proposed Rabbinical College will not negatively impact the Village's traffic interests. Fitzpatrick Dec. ¶¶ 114-173.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 809 over the objections, <u>admitted</u> that the cited declaration states as such.**

810.    The effect of a Rabbinical College on the local traffic infrastructure, even accounting for the fact that most students will be married and have children, will be negligible. Fitzpatrick Dec. ¶¶ 158-63. "[T]the existing infrastructure has excess capacity and is devoid of any unusual safety issues that could be exacerbated by added traffic," and "the Rabbinical College use, even with the addition of more family trips, be they trips for school, work, entertainment, shopping, would not even begin to stress the excess traffic capacity of the adjacent infrastructure with 250 students or, for that matter, 2500 students. The infrastructure could handle the generation." Fitzpatrick Dec. ¶¶ 115, 133.

**<u>RESPONSE:</u>**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 810 over the objections, <u>admitted</u> that the cited declaration states as such.**

811.    There are no safety issues in the local traffic infrastructure that would justify exclusion of the Rabbinical College's proposed use.  Fitzpatrick Dec. ¶¶ 168-73.

**<u>RESPONSE:</u>**

**<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 811 over the objections, <u>admitted</u> that the cited declaration states as such.**

812.    The permitted uses within the Village, including accredited educational institutions (including community colleges), single family residential, libraries and museums, would have greater impacts on the local traffic infrastructure than the proposed Rabbinical College use. Fitzpatrick Dec. ¶¶ 174-79.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 812 over the objections, admitted that the cited declaration states as such.**


813.    The Village has means of achieving its traffic interests that are less restrictive than the challenged code provisions. Fitzpatrick Dec. ¶¶ 93-113.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 813 over the objections, admitted that the cited declaration states as such.**


814.    Traffic impacts may be considered under SEQRA evaluation, and the Village's site plan and special permit application processes.  Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 661:12-14, 691:12-19; Savad Decl. **Ex. 18** (Voorhis Dep.) at 97; Fitzpatrick Dec. ¶¶ 93-97.

**RESPONSE:**

**Admitted.**


815.    The special permit process can address impacts on traffic.  Savad Decl. **Ex. 14** (Voorhis Dep.) at 97.

**RESPONSE:**

**Admitted.**

816.    The Village Code requires that "[t]he location and size of the [Educational Institution] use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection therewith shall not be hazardous." Savad Decl. **Ex. 314** Code § 130-10(F)(19).

**RESPONSE:**

**Admitted. Defendants note that this provision applies to other uses within the Village in addition to Educational Uses.**

817.    With respect to any special permit use, including Educational Institutions, the Village may impose conditions to ensure that "[o]perations in connection with any special permit use will not be more objectionable to nearby properties by reason of . . . traffic, . . . than would be the operations of permitted uses not requiring a special permit." Savad Decl. **Ex. 314** Code § 130-28(6)(c).

**RESPONSE:**

**Admitted.**

818.    The Village also regulates traffic impacts through its site planning process, where the Planning Board must review and set appropriate conditions to ensure that "maximum safety will be achieved and function properly provided for." Savad Decl. **Ex. 314** Code § 119-5(D)(1).

**RESPONSE:**

**Admitted. Defendants note that Chapter 119 only applies to single-family, steep slope lots.**

Noise

819.    The Village has stated that all of the challenged code provisions, other than the "no housekeeping facilities" provision and the Wetlands Protection Law, are meant to advance its interests in regulating noise impacts.  Savad Decl. **Ex. 311** (Interrogatory) Resp. Nos. 4, 6; Savad Decl. **Ex. 13** (Defendants' 30(b)(6) Tr.) 395:5-10, 396:19-397:19, 439:21-25, 723:16-742:3.

**RESPONSE:**

**Admitted.**

820.    The Village possessed no reports, studies or other documents demonstrating that its noise interest was threatened by educational institutions. Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 726:6-7, 730:15-731:10, 737:17-25.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  The Village representative testified that there were no formal studies Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 726:6-7, but that the Village Board read environmental laws and regulations relating to noise impacts, including SEQRA requirements.  *Id* at 731:4-10.**

821.    The Village's sole basis for justifying the challenged code provisions based on noise impacts is that Board members "had knowledge that if the building is limited in size, it will accommodate fewer people and create less noise." Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 726:11-17, 732:14-16, 737:6-11.  However, the Village also stated that the noise referred to as justifying the educational institution restrictions was "[m]ostly from traffic."  Savad Decl. **Ex. 13** (Defendants' 30(b)(6)) Tr. 397:3-5.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  The Village representative testified that the Board members read environmental laws and regulations relating to noise impacts, including SEQRA requirements Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 731:4-10.**

822.    Noise was not mentioned in the text of Local Law No. 1 of 2001, nor was it discussed by the Board of Trustees as a basis for passing Local Law No. 1 of 2001.  Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 724:13-15, 725:6-13.

**RESPONSE:**

**Disputed.  The word "noise"** *is contained* **in the text of Local Law 1 of 2001.  Further, the cited testimony does not support the purported statement of fact.  The Village representative only testified that the issue of noise was not discussed by the members of the Board as a Board.  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 725:6-13.**

823.    Noise was not mentioned in the text of Local Law No. 5 of 2004, nor was it discussed by the Board of Trustees as a basis for passing Local Law No. 5 of 2004.  Savad Decl. **Ex. 14** (Defendants' 30(b)(6) Tr.) 730:7-14.

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted only to the extent that the word "noise" is not contained in the text of Local Law No. 5 of 2004.  Otherwise, disputed.  The Village representative only testified that noise impact was not discussed at Village board meetings Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 730:10-14.**

824.    Noise was not mentioned in the text of Local Law No. 1 of 2007, nor was it discussed by the Board of Trustees as a basis for passing Local Law No. 1 of 2007. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 736:16-25.

**RESPONSE:**

**Admitted in part; Disputed in part.  Admitted only to the extent that the word "noise" is not contained in the text of Local Law No. 1 of 2007.  Disputed in that, while the Village representative testified that noise was not discussed at the Village Board meeting, the representative did not state that noise was not discussed by members of the Board outside of official Board meetings.  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 736:20-25.**

825.    The Village's claim that family housing generates more noise than traditional dormitory housing is unsupported by any evidence. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 732:8-733:12.

**RESPONSE:**

**Objection:  Defendants object as this statement offers opinion as facts.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 825 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  To the contrary, the Village representative testified that dormitory housing creates less noise.  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 733:22-25, 734:1-11.**

826.    The Village's claim that student housing by its very nature generates more noise than non-housing Educational Institution facilities is unsupported by any evidence.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 738:2-739:17.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 826 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 14, Defendants' 30(b)(6) Day 3 Tr. 738:2-739:17.**

827.    The Village has stated that it cannot mitigate noise impacts caused by an Educational Institution.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 735:10-12.

**RESPONSE:**

**<u>Disputed.</u>  The cited testimony does not support the purported statement of fact.  The Village testified that it cannot mitigate the effect of unaccredited educational institutions versus accredited educational institutions in a manner that does not impact noise through existing processes.  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 735:2-9.**

828.    The Village can regulate noise impacts through the "Noise" chapter of its Code, which states that "[i]t shall be unlawful for any person to make, continue or cause to be made or continued any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others within the limits of the village." Savad Decl. **Ex. 314** Code § 96-2; Weinstein ¶ 78. Penalties can include fines, imprisonment and "other remedies . . . as are now or may hereafter be provided by law." Savad Decl. **Ex. 314** Code ¶¶ 1-12, 96-4.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 828 over the objections, admitted.**

829.    The special permit process can address noise impacts. Savad Decl. **Ex. 18,** Voorhis Dep. at 97.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statement contained in Paragraph 829 over the objections, admitted.**

830.    A 125 foot setback with landscaping can prevent neighbors from hearing noise generated by a school. Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 397:5-15.

**RESPONSE:**

**Objection:** **Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 830 over the objections, disputed. Defendants dispute Plaintiffs' characterization of the Village's testimony. The Village representative testified that setbacks can *help control* noise, not necessarily that it would *prevent* neighbors from hearing noise generated by a school. Savad Decl. Ex. 13, Defendants' 30(b)(6) Tr. 397:5-15.**

323

831.    The Village can impose conditions on any special permit to ensure that such use "will not be more objectionable to nearby properties by reason of noise, . . . than would be the operations of permitted uses not requiring a special permit." Savad Decl. **Ex. 314**, Code § 130-28(6)(c); Weinstein Dec. ¶ 78, 81, 95-96; Savad Decl. **Ex. 18**, Voorhis Dep. at 97.

**RESPONSE:**

**Admitted, although Defendants note the correct citation is Code Provision is 130-28 § (6)(c).**


Compliance with New York State Zoning Law Regarding Educational Institutions

832.    The Village has stated that the accreditation requirement, the "one dormitory" limitation, the "no housekeeping facilities" provision, and the "no family housing" rule were adopted in order for the Village to comply with the requirements of New York State law. Savad Decl. **311** (Interrogatory) Resp. Nos. 2, 6, 8; Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 429:24-437:25.

**RESPONSE:**

**Disputed. The cited references evidence that the Village stated that these requirements were permitted in conjunction with compliance with New York State Law. Savad Decl. 311 (Interrogatory) Resp. Nos. 2, 6, 8; Savad Decl. Ex. 13, Defendants' 30(b)(6) Tr. 429:24-437:25.**


833.    The Village has admitted that its zoning code related to Educational Institutions was unconstitutional prior to 2004. Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 432:10-23.

**RESPONSE:**

**Objection: Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 833 over the objections, _disputed_. The cited testimony cited does not support the purported statement of fact. _See_ Savad Decl. Ex. 13, Defendants' 30(b)(6) Tr. 432:10-23.**

834.    Student housing must be permitted with respect to Educational Institutions. Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 430:6-432:8.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 834 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  Rather, New York case law held that municipalities did not have authority to totally exclude institutions of higher education from their boundaries.  Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 431:12-432:8.**

835.    New York State law does not prohibit the Village from permitting non-accredited educational institutions to locate in its jurisdiction.  Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 416:9-14.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 835 over the objections, <u>admitted</u>.**

## Compliance with Federal and State Environmental Law

836.    The Village has stated that it was required to adopt the Wetlands Protection Law in order to comply with federal and state environmental protection law.  Savad Decl. **Ex. 311**, Interrogatory Resp. Nos. 15, 17; Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 329:9-337:2.

**RESPONSE:**

**<u>Admitted in part; Disputed in part.</u>  The Village representative testified that the State does not say you must pass a wetlands protection law, it says you must protect your storm water system. Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 333:9-18.**

837.    The Village could not state which provisions of federal or state environmental protection laws required the passage of the Wetlands Protection Law.  Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 330:2-9.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  The cited testimony shows that the witness, at deposition, without being able to consult the relevant state and federal laws, could not cite from memory the relevant environmental laws.  Savad Decl. Ex. 13, Defendants' 30(b)(6) Day 2 Tr. 330:2-9.**

838.    Neither state nor federal environmental protection law required the Village to adopt the Wetlands Protection Law. Savad Decl. **Ex. 13**,  Defendants' 30(b)(6) Tr. , 333:13-15, 334:9-10; Beall Dec. ¶¶ 113-122.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants object as this statement offers opinion as facts.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 838 over the objections, admitted.**

Achieving Clarity and Consistency of Laws

839.    The Village has stated the purpose of the accreditation requirement, the 20% dormitory limitation, and the one dormitory building rule was to "address vagueness and inconsistencies in the pre-existing definitions." Interrogatory Resp. Nos. 2, 7.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 311, Interrogatory Resp. Nos. 2, 7.**

840.    The Village has stated that the "one dormitory building" and "20% dormitory" limitations are necessary to "clarify that the dormitory use is an accessory to the principal

educational use and does not become a principal use." Savad Decl. **Ex. 311**, Interrogatory Resp. Nos. 11, 12; Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 459:19-24, 618:22-619:25.

**RESPONSE:**

**Admitted.**

841.    The provisions of the Educational Institution zoning laws that were described as vague and inconsistent were (1) the separate and potentially inconsistent definitions for "school" and "educational institution," (2) whether the prior definition applied to post-secondary institutions, (3) whether dormitories were included or excluded, and (4) whether the net lot areas included NY DEC wetlands.  Savad Decl. **Ex. 311**, Interrogatory Resp. Nos. 2, 7, 9.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  Savad Decl. Ex. 311, Interrogatory Resp. Nos. 2, 7, 9.**

842.    The "20% dormitory" limitation is highly unusual, and does not exist in any other municipal code. Weinstein Dec. ¶¶ 22, 57. Defendants' expert witness is unfamiliar with a requirement similar to the 20% dormitory restriction in any other jurisdiction. Savad Decl. **Ex. 18** (Voorhis Dep. at 130:6-8).

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 842 over the objections, admitted that Mr. Voorhis testified as such.**

843.    The zoning code defines "use, principal" as "The main use of a structure or lot." Savad Decl. **Ex. 314**, Code sec. 130-4.

**RESPONSE:**

**Admitted.**

844.   The Village's zoning code defines "use, accessory" as "A use which is customarily incidental and subordinate to the principal permitted use on the lot and located on the same lot therewith, except that where specifically provided, accessory off-street parking need not be located on the same lot." Savad Decl. **Ex. 314**, Code 130-4.

**RESPONSE:**

**Admitted.**

845.   Student housing is part of an Educational Institution's principal use. Weinstein Dec. ¶ 51-53.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 845 over the objections, admitted that the cited declaration states as such.**

846.   If viewed as an accessory use, student housing facilities at an Educational Institution are subordinate and incidental to the principal Educational Institution use. Savad Decl. **Ex. 314** Code 130-4; Weinstein Dec. ¶¶ 54-56.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 846 over the objections, admitted.**

847.   The "one dormitory building" and "20% dormitory" limitations are not necessary to ensure that the principal use of an Educational Institution does not become another use. Weinstein Dec. ¶¶ 48-60. An educational institution can retain its principal use with much more

than 20% of its building area devoted to housing space. Savad Decl. **Ex. 18** Voorhees Dep. at 132-135.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 847 over the objections, <u>disputed</u>. Defendants note that the testimony referenced by Plaintiffs is an incomplete statement taken out of context. Savad Decl. Ex. 18 Voorhees Dep. at 132-135.**

848.     The Village had no specific basis for using the 20% figure as a dormitory limitation, and such figure is wholly arbitrary. Weinstein Dec. ¶ 58; Savad Decl. **Ex. 18**, Voorhis Dep. at 132-35; Savad Decl. **Ex. 12**, Defendants' 30(b)(6) Tr. 27:21-28:19, 457:15-25.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement offers opinion as facts.**

**To the extent the Court chooses to consider the statements contained in Paragraph 848 over the objections, <u>disputed</u>. Defendants note that the testimony referenced by Plaintiffs is an incomplete statement taken out of context. Defendants' 30(b)(6) Tr. 27:21-28:19, 457:15-25. Further disputed to the extent that Savad Decl. Ex. 12, Defendants' 30(b)(6) Tr. 457:15-25 does not support the purported statement of fact. Savad Decl. Ex. 12, Defendants' 30(b)(6) Tr. 457:15-25 is not a citation to the record. There are only 246 pages of testimony in Savad Decl. Ex. 12.**

849.     The Village did not rely on any zoning handbooks or manuals in using the 20% figure for dormitories. Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 458:2-5. Defendants' witness was unaware of any studies examining the issue of space permitted for housing at educational institutions. Savad Decl. **Ex. 18** (Voorhis Dep. at 134:4-135:6).

**RESPONSE:**

**Admitted.**

850.    The Village did not rely on the advice of any planning professional in using the 20% figure for dormitories.  Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 458:6-12.

**RESPONSE:**

**Admitted.**

851.    The Village did not review other colleges in using the 20% figure for dormitories. Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 457:24-459:3.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  At deposition the Village's representative testified that the Board did not look at any of the colleges in Rockland County as a comparison for the 20% figure Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 458:24-25, 459:1-3.**

852.    The only written guideline for determining whether a use is a principal use is the zoning code definitions, which do not contain a 20% figure.  Savad Decl. **Ex. 12**, Defendants' 30(b)(6) Tr. 22:7-21; Code 130-4.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 852 over the objections, disputed.  The cited testimony does not support the purported statement of fact.  See Savad Decl. Ex. 12, Defendants' 30(b)(6) Tr. 22:7-21; Code 130-4.**

853.    Devoting more than 50% of the area of a lot used for a shopping center, mass-transit facility or stadium to parking does not convert the principal use of those facilities to a "parking lot."  Weinstein Dec. ¶ 59; Savad Decl. **Ex. 18** (Voorhis Dep. at 171:8-22).  When reviewing another educational institution with greater than 20% of building space devoted to housing, Defendants' expert stated that this did not convert the use to something other than an educational institution.  Savad Decl. **Ex. 18** (Voorhis Dep. at 133:12-134:4).

**RESPONSE:**

**Objection**: **Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 853 over the objections, <u>disputed</u>. Defendants note that the testimony referenced by Plaintiffs is an incomplete statement taken out of context. The testimony cited is a response by a witness to hypothetical questions. Savad Decl. Ex. 18 (Voorhis Dep. at 171:8-22); Savad Decl. Ex. 18 (Voorhis Dep. at 133:12-134:4).**

854.    The Village could ensure that the principal use of an Educational Institution does not change to a different principal use by placing conditions of approval requiring that anyone living on campus could be a student or family member of a student of the Educational Institution. Weinstein Dec. ¶¶ 56, 112.

**RESPONSE:**

**Objection**: **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 854 over the objections, <u>admitted</u> that the cited declaration states as such.**

<u>Environmental Generally</u>

855.    The Village has stated that the elements of the Educational Institution laws that are necessary to control environmental impacts are: "Setbacks, buffers, landscaping and height restrictions," Savad Decl. **Ex. 311**, Interrogatory Resp. No. 27, and that the Village infrastructure (sanitary sewer system, stormwater system and roads) cannot accommodate "high density housing." *Id*. Interrogatory Resp. No. 28.

**RESPONSE:**

**<u>Admitted.</u>**

856.    No reports, documents, experts or consultants provided any environmental justification for the challenged Code provisions in 2001, 2004 or 2007.  Savad Decl. **Ex. 310** RFA Resp. Nos. 57, 58, 59, 60.

**RESPONSE:**

**Objection:  Defendants object as this statement offers opinion as facts.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 856 over the objections, admitted in part; disputed in part.  Admitted that the Village possessed no specific formal studies or reports establishing a need for controlling environmental impacts.  Defendants dispute any suggestion that such studies were necessary.  Savad Decl. Ex. 310 RFA Resp. Nos. 57, 58, 59, 60.  Defendants note that the Village representative specifically referenced a study by Westchester County and indicated that there may have been others.  See Savad Decl. Ex. 14 ( Defendants' 30(b)(6) Day 3 Tr.) 562:19-563:20.**

857.    There is no direct relationship between the challenged zoning code provisions and the Village's interest in protecting environmental resources.  Beall Dec. ¶¶ 223.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 857 over the objections, admitted that the cited declaration states as such.**

858.    The Wetlands Protection Law excludes most of the Village from the application of its 100' buffer.  Savad Decl. **Ex. 314**, Code § 126-3(D).

**RESPONSE:**

**Objection:  Defendants object as this statement offers opinion as facts.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 858 over the objections, disputed.  The cited Village Code provision does not support the purported statement of fact.  See Savad Decl. Ex. 314, Code § 126-3(D).**

859.    Permitted uses, including accredited Educational Institutions, permitted dormitories, libraries and museums, could have equal or greater impacts on environmental resources. Beall Dec. ¶ 246.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 859 over the objections, <u>admitted</u> that the cited declaration states as such.**

860.    The Village has the authority to prevent environmental impacts from development in its jurisdiction through the application of the SEQRA requirements, its site plan and special permit processes, and its Flooding and Stormwater code provisions. Savad Decl. **Ex. 314** Code chs. 79, 114, 119 (especially 119-7(G)), 130 (especially 130-10(F), 130-28); Savad **Decl. Ex. 18**, Voorhis Dep. at 97.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object as this statement offers opinion as facts. Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 860 over the objections, <u>disputed</u>. The Village can only mitigate, not prevent environmental impacts. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 622:3-12.**

861.    The Village's Planning Board and the Zoning Board of Appeals are authorized to set more stringent requirements than are set forth in the Village's Code in those cases where such are deemed necessary for the preservation of natural features they consider desirable, the elimination or control of natural features considered undesirable or, in general, to meet the stated purposes of this chapter. Savad Decl. **Ex. 314**, Code § 130-7(A).

**RESPONSE:**

**Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 861 over the objections, <u>disputed.</u> This provision applies only to Chapter 130, dealing with zoning, not the entire Village Code. See Savad Decl. Ex. 314, Code § 130-7(A).**

862.    The Village was able to address all environmental impacts caused by the development of a Hindu Temple within its jurisdiction. Savad Decl. **Ex. 15,** Defendants' 30(b)(6) Tr. 940:5-23.

**RESPONSE:**

**<u>Disputed.</u>  Only those concerns identified in the application process were addressed.  Savad Decl. Ex. 15,  Defendants' 30(b)(6) Tr. 940:5-23.**

863.    The Rabbinical College's proposed use could be developed in some form, with student family housing (greater than 20% of the total square footage) in more than one building and with housekeeping facilities, and with access through the 100' wetland buffer, without harming the Village's interests in protecting environmental resources and infrastructure. Beall Dec. ¶¶ 278-296.

**RESPONSE:**

**<u>Objection:</u>  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 863 over the objections, <u>admitted</u> that the cited declaration states as such.**

864.    An Educational Institution can be appropriately integrated into an environmental sensitive area with a proper degree of analysis and site-specific assessment. Savad Decl. **Ex. 18,** Voorhis Dep. at 52-54.

**RESPONSE:**

**<u>Disputed.</u>  Charles Voohries testified that it may be "possible"  to  have a variety of uses, including institutional uses, the environmentally sensistive areas but that it would have to be studied. *See* Savad Decl. Ex. 18, Voorhis Dep. at 53:6-16.**

<u>Protecting wetlands and water pollution</u>

865.    The Village has stated that a purpose of the building, floor area and height restrictions, the accreditation requirement, the 20% dormitory limitation, the family housing prohibition, the one dormitory building limitation and the Wetlands Protection Law was to protect wetlands and water quality. Savad Decl. **Ex. 311**, Interrogatory 3, 4, 6, 15, 16, 27, 28; Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 389:24-390:20, 752:13-772:7. The Wetlands Protection Law's statement that the protection of all wetlands is vital to the health, safety and welfare of all persons is unreasonable, and unsupported by science. Savad Decl. **Ex. 314**, Code Sec. 126-1; Beall Dec. ¶¶ 37-46.

**RESPONSE:**

**Objection: Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a). Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 865 over the objections, <u>disputed</u>. (Report of Charles Voorhis at pgs. 22-24, dated March 13, 2014 Gordon Aff. 2 ¶ 6, Ex. A. Further disputed to the extent Paragraph 865 characterizes that the Village's purpose was limited to just wetlands and water quality. *See e.g.,* Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 389:9-397:19, 416:25-418:24, 418:8-421:25, 430:14-435:18, 461:2-461:17, 464:5-464:24; Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 565:9-565:18; 579:9-579:18; 581:5-582:8; (Defendants' Amended Responses to Certain of Plaintiffs' Second Set of Interrogatories at ¶ 6, 16, December 11, 2013). Gordon Aff. ¶ 21, Ex. 16.**

866.    The Village has no evidence that wetlands were threatened by educational institutions. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 744:8-15.

**RESPONSE:**

**Objection: Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 866 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. The Village representative testified that since there are no schools in the Village the Village could not answer the question whether there was any evidence of any adverse impacts from any schools on the Village's interest in protecting wetlands. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 744:8-15.**

867.    There are numerous flaws with the Wetlands Protection Law, including: (1) The Village is not aware of the locations, extent and types of aquatic resources in its jurisdiction and did not conduct an assessment or inventory of such resources, which is necessary to reasonably regulate wetlands and watercourses, Beall Dec. ¶¶ 24, 37, 40-41, 43-44, 83;  (2) it does not provide scientifically sound definitions of wetlands, but uses an unreasonable and outdated method of wetland delineation used in the 1970s, Beall Dec. ¶¶ 47-54; (3) it does not define boundaries of watercourses or waterbodies, Beall Dec. 55-60; and (4) it does not provide authority for the Village to review wetlands delineations but rather relies on professionals "authorized" by the NYSDEC--which does not authorize such professionals. Beall Dec. ¶¶ 61-68.

**RESPONSE:**

**Objection:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 867 over the objections, admitted that the cited declaration states as such.**

868.    The only basis for the Wetlands Protection Law is the Board of Trustees' general knowledge.  The WPL is ill-conceived, poorly written and illogical.  Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 7/16 at 486:9-15, 746:6-747:7; 758:2-7.

**RESPONSE:**

**Objection:  Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).  Defendants object as this statement offers opinion as facts.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 868 over the objections, disputed.  The cited testimony does not support the purported statement of fact.  The Village representative testified that when drafting the WPL she reviewed "other laws" Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 2 Tr.) 486:16-17.**

869.    There are no "impaired waters" in the Village. Beall Dec. ¶¶ 42; Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 745:3-7.

**RESPONSE:**

**Objection:** **Defendants object to the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a). Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 869 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. The Village testified that there were no impaired waters within the Village under the NYSDEC definition. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 745:3-7.**

870.    Within the Village, 99% of mapped aquatic resources are currently regulated by the Corps of Engineers, and 80% are regulated by the NYSDEC. Beall Dec. ¶¶ 100-101; Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 783:10-19.

**RESPONSE:**

**Objection:** **Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 870 over the objections, <u>admitted in part; disputed in part</u>. Admitted that the declaration cited states as such. Otherwise, disputed. The cited testimony does not support the purported statement of fact. The Village representative testified that she "assumed it was a large percentage between the state and federal governments" but did not know the percentage. Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 783:10-19.**

871.    The Wetlands Protection Law is a duplicate or triplicate layer of regulation of wetlands. Beall Dec. ¶¶ 29, 86-111.

**RESPONSE:**

**Objection**: **Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 871 over the objections, <u>admitted</u> that the cited declaration states as such.**

872.    The Village suggests that there are "isolated wetlands," although not "a tremendous amount," that need protection yet cannot identify any of them, and admits that it has no mapped wetlands.  Beall Dec. ¶ 82-85; Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 745:8-746:5.

**<u>RESPONSE</u>:**

**<u>Objection</u>:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 872 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  The Village testified that there are isolated wetlands in the Village that would not be regulated by the Corps of Engineers and that there are areas that are not attached to state or federal wetlands and exist in their own locations.  Savad Decl. Ex. 12 (Defendants' 30(b)(6) Day 1 Tr.) 245:8-16.**

873.    The Village's knowledge of its wetlands comes from "[m]embers of the board [who] drive around."  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 746:6-10.

**<u>RESPONSE</u>:**

**<u>Disputed.</u>  The cited testimony does not support the purported statement of fact.  The Village representative testified that in addition to knowledge of wetlands from members who drive around – "The Village engineer, who has been with the Village for about 30 years, has a very good historical knowledge of the waterways...."  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 746:10-14.**

874.    "Driving around" is an unreasonable and adequate methodology for making legislative determinations regarding wetlands.  Beall Dec. ¶ 84.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 874 over the objections, <u>admitted</u> that the cited declaration states as such.**

875.    There is no "regulatory void" with respect to the regulation of wetlands within the Village.  Beall Dec. ¶¶ 81-112.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 875 over the objections, <u>admitted</u> that the cited declaration states as such.**

876.    The texts of Local Law No. 1 of 2001, Local Law No. 5 of 2004 and Local Law No. 7 of 2007 do not refer to protection of wetlands.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 750:21-751:4, 757:11-14, 767:21-23.

**RESPONSE:**

**<u>Admitted</u> that the cited laws do not contain the words "protection of wetlands." Defendants note that Local Law 1 of 2001 refers to wetlands and also refers to special permit standards to minimize "drainage and other environmental matters."**

877.    Wetlands was not discussed by the Board of Trustees as a reason for enacting Local Law No. 1 of 2001, Local Law No. 5 of 2004 and Local Law No. 7 of 2007.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 751:5-8, 757:15-18, 767:24-768:9.

**RESPONSE:**

**Disputed.**  The cited testimony does not support the purported statement of fact.  With respect to Local Law No. 1 of 2001, the Village testified that during the drafting of the Law, the need to protect wetlands was discussed.  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 751:13-14.  With respect to Local Law No. 5 of 2004, the Village Board had knowledge and documents in their possession concerning the importance of protected wetlands.  *Id.* at 758:2-6.  With respect to Local Law No. 7 of 2007, the Village testified that the protection of wetlands was not discussed at the public hearing on the Law.  *Id.* at 768:3-4.

878.    The Village's justification for the accreditation provision with respect to its interest in wetlands is that "[w]ith an unaccredited school since you don't know what type of use is going to be proposed, there is no way of knowing if the wetlands will be affected or not," providing an example of an "automotive school." Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 756:5-10, 761:9-762:5.

**RESPONSE:**

**Admitted.**  Defendants note that the Village also provided other reasons for the accreditation law as it relates to wetlands.  For example, the Village testified that not having single family, two-family and multi-family units would have the effect of protecting wetlands, with respect to the size of the use.  These dwelling units, by their nature, take up more land space than a single dormitory building, thereby affecting the wetlands. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 756:15-24.

879.    There are no facts that support the contention that non-accredited Educational Institutions would have different impacts on wetlands than accredited Educational Institutions. Beall Dec. ¶¶ 229-232.

**RESPONSE:**

**Objection:** Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants also object as this statement is a conclusion of law, not a factual statement.

To the extent the Court chooses to consider the statements contained in Paragraph 879 over the objections, **admitted** that the cited declaration states as such.

880.    The Village's justification for the "family housing" prohibition with respect to its interest in wetlands is that family housing "take[s] up more land space" than traditional dormitories. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 762:6-14.

**RESPONSE:**

**Admitted in part; Disputed in part. Disputed to the extent that Plaintiffs mischaracterize multi family housing as family housing. Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 762:6-14.**

881.    The contention that "family housing" "take[s] up more land space" than traditional dormitories is unsupported and false. Beall Dec. ¶¶ 235-238.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 881 over the objections, admitted that the cited declaration states as such.**

882.    All housing, whether "family housing" or traditional dormitories, would be equally limited by the Village's building coverage, floor area, and impervious surface limitations. Beall Dec. ¶ 237.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 882 over the objections, admitted that the cited declaration states as such.**

883.    The prohibition on housekeeping facilities is unrelated to protection of wetlands. Beall Dec. ¶¶ 233-234.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 883 over the objections, <u>admitted</u> that the cited declaration states as such.**

884.     The Village's justification for the "20% dormitory" limitation with respect to its interest in wetlands is that "a limitation on the size of the building has a direct relationship to the protection of wetlands." Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 769:20-770:6.

**RESPONSE:**

**<u>Admitted</u>.  Defendants note that the Village provided additional reasons for the 20% limitation with respect to the protection of wetlands.  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 770:7-22.**

885.     All facilities in an Educational Institution, whether housing or non-housing facilities, would be equally limited by the Village's building coverage, floor area, and impervious surface limitations. Beall Dec. ¶¶ 240-242.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 885 over the objections, <u>admitted</u> that the cited declaration states as such.**

886.     Devoting more space to non-housing facilities in an Educational Institution, such as laboratories or gymnasia, cannot reduce the impact to wetlands. Savad Decl. . 14,Ex Defendants' 30(b)(6) Tr. 770:7-771:7.

**RESPONSE:**

**Objection:  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 886 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact with respect to laboratories and gymnasia. Savad Decl. 14, Ex Defendants' 30(b)(6) Tr. 770:7-771:7.**

887.    The Village's justification for the "one dormitory" limitation with respect to its interest in wetlands is that multiple buildings would necessarily have more of an impact than one building. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 763:2-17.

**RESPONSE:**

**<u>Disputed.</u> The cited testimony is not complete. The Village testified that "Because of the impact on the land area, multiple buildings have more of an impact than one, perhaps far enough away so we'll not have an impact." The Village also testified that this kind of mitigation would be addressed during the SEQRA process. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 763:2-17.**

888.    The contention that multiple dormitory buildings would necessarily have more of an impact on wetlands than one dormitory building is untrue. Beall Dec. ¶¶ 297.

**RESPONSE:**

**<u>Objection</u>:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 888 over the objections, <u>admitted</u> that the cited declaration states as such.**

889.    The Village states that every single wetland is vital to the health and safety of every single person. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 485:14-23; Savad Decl. Ex. 314, Code sec. 126-1.

**RESPONSE:**

**<u>Admitted.</u>**

890.    The 100' buffer provision of the Wetlands Protection law does not effectively protect wetlands within the Village, as it exempts the majority of the Village. Beall Dec. ¶¶ 146-158, 220; Drake Dec. ¶ 70.   The Wetlands Protection Law states in part: "The aforesaid one-hundred-foot buffer in which regulated activities are not permitted to take place shall not apply to lots that are improved with single-family residences."  Savad Decl. Ex. 314, Code sec. 126-3(D).  The Village has justified this exemption by claiming that it desired prior single family construction to be "grandfathered." Savad Decl. Ex. 311 (Interrogatory) Response No. 18. Concerns regarding the protection of wetlands would be the same for vacant lots that are developed with single family homes in the future.  Savad Decl. **Ex. 18** (Voorhis Dep. at 161:10-162:2).

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants object as this statement is a conclusion of law, not a factual statement. Defendants also object to the the extent this paragraph contains multiple factual contentions in violation of Local Rule 56(1)(a).**

**To the extent the Court chooses to consider the statement contained in Paragraph 890 over the objections admitted in part; disputed in part.  Admitted that the Wetlands Protection Law states as such.  Otherwise, disputed.  Further disputed that the Village has "justified" the exemption based on its "desire" to grandfather single family construction.  The Village did not want to put lots already improved with single family homes in violation. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 564:24-565:4.**

891.    285 of 1,156 parcels of land in the Village are located within 100' of a mapped or unmapped wetland or watercourse.  Beall Dec. ¶ 151.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 891 over the objections, admitted that the cited declaration states as such.**

892.    240 of the 285 parcels of land within 100' of a mapped or unmapped wetland or watercourse in the Village are improved with single family residences and are thus exempt from the Wetlands Protection Law's 100' buffer restrictions. Beall Dec. ¶ 151.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 892 over the objections, admitted that the cited declaration states as such.**

893.    Of the 45 parcels of land within 100' of a mapped or unmapped wetland or watercourse in the Village, twenty are vacant, and six are associated with local parks or open space. Beall Dec. ¶ 152.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 893 over the objections, admitted that the cited declaration states as such.**

894.    The 20 vacant lots within 100' of a mapped or unmapped wetland or watercourse in the Village will be exempt from the Wetlands Protection Law's 100' buffer restrictions if they become improved with a single family residence. Beall Dec. ¶ 153.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 894 over the objections, disputed.  Only those parcels that had been improved with single family residences prior to the date the local law took effect are exempt.  Local Law 5 of 2007, *codified as* VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10-11, Ex. 4-5.**

895.    Only 19 out of 1,156 parcels of land are effectively limited by the Wetlands
Protection Law's 100' buffer restrictions.  Beall Dec. ¶ 152.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported
expert opinion, subject to striking on several grounds, as discussed in detail in Defendants'
Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 895 over
the objections, <u>disputed</u>.  Only those parcels that had been improved with single family
residences prior to the date the local law took effect are exempt.  Local Law 5 of 2007,
*codified as* VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10-11, Ex. 4-5.**

896.    Single family residential uses have created recent impacts to wetlands in the
Village, including excavation and construction of structures and impervious surface within the
100' wetlands buffer.  Beall Dec. ¶¶ 148-150, 156-158.  Concerns regarding protection of
wetlands exist for wetlands that are located on single family residential lots.  Savad Decl. **Ex. 18**
(Voorhis Dep. at 159:21-160:5).

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported
expert opinion, subject to striking on several grounds, as discussed in detail in Defendants'
Opposition filed herewith.**

**<u>Admitted in part; Disputed in part</u>.  Disputed that single family residential uses have
created recent impacts to wetlands in the Village.  The Village is unaware of any recent
impacts or existing concerns.  Ulman Aff. 2 ¶ 9.**

897.    The Village claims that "it cannot mitigate the effect of unaccredited educational
institutions," multiple dormitory buildings, or "family housing" on wetlands without banning
such development.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 764:7-765:19.

**RESPONSE:**

**<u>Disputed.</u>  Defendants dispute Plaintiffs' characterization of the Village's testimony.  The
Village testified that it cannot mitigate the effect of unaccredited educational absent the
local laws at issue.  *See* Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 764:7-765:19.**

898.    The Village admits that "The entire site plan and special permit process require the Village to address the issue of wetlands on any property that comes into the Village for site plan or special permit approval and that is by State Law." Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 748:11-18.

**RESPONSE:**

**Admitted in part; Disputed in part. Admitted that the Village representative testified as such. Disputed that this is an "admission."** *See* **Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 748:11-18.**

899.    SEQRA requires a lead agency on a development project to take a "hard look" at potential environmental impacts, including impacts on wetlands. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 784:18-787:19.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 899 over the objections, admitted.**

900.    A municipality determines whether a development will have potential environmental impacts, and assess whether the mitigation for addressing such impacts are adequate. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 785:15-8-787:19.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statement contained in Paragraph 900 over the objections, admitted subject to the qualification that the lead agency makes the determination. Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 784:18-785:6.**

901.    Existing regulations protect wetlands within the Village more efficiently and effectively than the Wetlands Protection Law and the challenged zoning code provisions,

including NYSDEC Articles 15 & 24, SEQRA, the Village Code Chapters 114 (Stormwater) and 79 (Flooding), and the federal Clean Water Act.  Beall Dec. ¶¶ 159-196; Savad Decl. **Ex. 18** (Voorhis Dep. at 163:21-165:3).

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 901 over the objections, <u>disputed</u>.  The Wetlands Protection Law is designed to apply only to wetlands and buffers that are not protected by the state and federal laws.  Local Law 5 of 2007, *codified as* VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10-11, Ex. 4-5.**

902.    The Village's site plan and special permit approval processes require the Village to "address the issue of wetlands on any property" for such approvals, and such requirement is mandated by state law.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 748:8-15; Beall Dec. ¶¶ 142, 161, 191-192, 245-247**.**

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 902 over the objections, <u>admitted.</u>**

903.    The special permit process can address impacts on wetlands and water pollution. Savad Decl. **Ex. 18**, Voorhis Dep. at 97.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 903 over the objections, <u>admitted.</u>**

904. Under the Village Code, no site plan for a special permit use can be granted unless the Planning Board determines "[t]hat the proposed activity and the manner in which it is to be accomplished will not adversely affect the preservation and protection of existing wetlands, water bodies, watercourses . . . ." Savad Decl. Ex. 314, Code § 119-3(A)(3).

**RESPONSE:**

**Disputed.** **Defendants note that Chapter 119 only applies to single-family, steep slope lots.** *See* **Savad Decl. Ex. 314, Code § 119-3(A)(3).**

905. In order to approve a site plan for development, the Village Planning Board must establish "conditions of approval" to ensure the "[p]rotection of all wetlands in accordance with the requirements of Chapter 126 of this Code, the New York State DEC and the U.S. Army Corps of Engineers." Savad Decl. Ex. 314, Code § 119-7(C)(6)(w).

**RESPONSE:**

**Disputed.** **The Planning Board is not required to establish conditions of approval. Defendants note that Chapter 119 only applies to single-family, steep slope lots.** *See* **Savad Decl. Ex. 314, Code § 119-7(C)(6)(w).**

906. Finally, development near the wetlands on the subject Property would be regulated by the NYSDEC. Beall Dec. ¶¶ 282-285.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 906 over the objections, disputed. The DEC does not regulate developments.** *See* **Savad Decl. Ex. 13, Defendants' 30(b)(6) Tr. 338:24-339:16;** *see generally* **(Report of Charles J. Voorhis, dated March 13, 2014. Gordon Aff. 2 ¶ 6, Ex. A.**

907.    Given the existing regulatory means of controlling development to prevent environmental impacts, any development by Tartikov should improve the wetland environmental conditions.  Beall Dec. ¶¶ 293, 296.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 907 over the objections, admitted that the cited declaration states as such.**


908.    Wetlands are protected by properly locating and designing buildings relative to site constraints.  Beall Dec. ¶¶ 286-289.

**RESPONSE:**

**Objection:  This statement is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statement contained in Paragraph 908 over the objections, admitted that the cited declaration states as such.  Defendants note that "relative to site constraints" is vague.**


Preventing flooding

909.    The Village has stated that a purpose of the building, floor area and height restrictions, the accreditation requirement, the 20% dormitory limitation, the family housing prohibition, the one dormitory building limitation and the Wetlands Protection Law was to prevent flood damage and protect floodplains.  Savad Decl. Ex. 311, Interrogatory 3, 4, 6, 15, 16, 27, 28; FPC Memo POM 14125, 14128, 13137; Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 389:24-390:20, 439:21-25, 827:13-847:10; Code § 126-1.

**RESPONSE:**

**Admitted subject to the qualification that there is no family housing prohibition.**

910. The Village's sole justification for the challenged code provisions with respect to preventing floodplain impacts is that more development creates more impact. Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 389:24-390:12, 391:18-25, 825:10-826:11.

**RESPONSE:**

**Objection: Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 910 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. _See_ Savad Decl. Ex. 13, Defendants' 30(b)(6) Tr. 389:24-390:12, 391:18-25, 825:10-826:11. The Village also discussed the intensity of use as being a factor as to impact. _See_ Savad Decl. Ex. 13, Defendants' 30(b)(6) Tr. 391:18-25.**

911. The Village had no evidence of impacts from any nonresidential land uses on floodplains. Savad Decl. **Ex. 16**, Defendants' 30(b)(6) Tr. 1043:8-1044:14.

**RESPONSE:**

**Objection: Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 911 over the objections, <u>disputed</u>. The cited testimony does not support the purported statement of fact. The Village testified that it had no evidence of any impacts by schools in Pomona on any of the governmental interests discussed at the deposition of the Village representative. In this regard, Defendants note that there are no schools in the Village. _See_ Savad Decl. Ex. 15, Defendants' 30(b)(6) Tr. 1044:8-14; 1043:13-14.**

912. The Village had no studies or reports concerning floodplains in Pomona were conducted or reviewed supporting this reason. Savad Decl. **Ex. 18**, Defendants' 30(b)(6) Tr. 832:23-833:4, 845:13-18.

**RESPONSE:**

**<u>Disputed.</u> Disputed to the extent this purported statement of fact is incomprehensible and therefore, Defendants are unable to respond. Further, Savad Decl. Ex. 18 does not contain the referenced pages. If the statement is that the Village had no materials in its possession regarding floodplains, the Village testified that while it did not authorize any formal studies, it had in its possession floodplain maps, and notices and flyers and documents from**

the state and federal government to advise municipalities on how to address floodplain management. *See* Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 833: 3-11, 845:13-18.

913.    The texts of the Local Law No. 1 of 2001, Local Law No. 5 of 2004, and Local Law No. 1 of 2007 do not refer to flooding. Savad Decl. **Ex. 16**, Defendants' 30(b)(6) Tr. 828:10-13, 832:14-17, 844:23-845:2; Local Law No. 1 of 2001; Local Law No. 5 of 2005; Local Law No. 1 of 2007.

**RESPONSE:**

**Admitted.** Defendants note that Local Law 1 of 2001 refers to wetlands and also states that the Village Board of Trustees may impose permit standards to minimize "drainage and other environmental matters." Local Law 1 of 2001, *codified as* VILLAGE CODE § 130-4. Ulman Aff. ¶¶ 7, 13, Ex. 1, 7

914.    Flooding was not discussed by the Board of Trustees as a reason for enacting any of the challenged code provisions. Savad Decl. **Ex. 16**,Defendants' 30(b)(6) Tr. 828:15-20, 832:18-22, 845:3-5, 847:19-848:2.

**RESPONSE:**

**Disputed.** The cited testimony does not support the purported statement of fact. Except for Local Law No. 1 of 2007, the Village testified that flooding was not discussed *at Village Board meetings*. Savad Decl. **Ex. 15** (Defendants' 30(b)(6) Day 4 Tr.) 828:15-20, 832:18-22, 845:3-5, 847:19-848:2. Also, flooding is expressly addressed in Local Law 5 of 2007. Local Law 5 of 2007, *codified as* VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10-11, Ex. 4-5.

915.    The Village states that the justification for the accreditation requirement with respect to floodplain regulation is: "some types of schools that have much more of an impact on wetlands and floodplains than other uses which are more stationary, if you will do not have as much outdoor equipment that may be connected with it outdoor use and so on." Savad Decl. **Ex. 16**, Defendants' 30(b)(6) Tr. 834:15-23.

**RESPONSE:**

**Disputed.** The cited testimony *is not the only* explanation the Village provided for the accreditation requirement with respect to floodplain regulation. Among other reasons for the requirement, the Village stated "the more intense the use, the more ability to pollute

and to have runoff into the floodplain and the floodway." Savad Decl. Ex. 16, Defendants' 30(b)(6) Tr. 835:18-20.

916. The Village states that the justification for the student family housing prohibition, the one dormitory building and 20% dormitory limitations with respect to floodplain regulation is that such development constitutes more intensive use. Savad Decl. **Ex. 16**, Defendants' 30(b)(6) Tr. 835:21-846:11.

**RESPONSE:**

**Disputed. The cited testimony is an inaccurate reflection of the testimony of the Village. Defendants refer the Court to the testimony cited and note specifically that there is no "family housing prohibition." Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 835:21-846:11.**

917. The Village's floodplain justifications for the challenged zoning code provisions are irrational. The Village's use of educational institutions law to prevent flooding or protect floodplains when the Village has § 79 Flood Damage Prevention, § 114 Stormwater Management, and § 119 Site Development Review and SEQRA "is like using a hammer to drill a screw when it already has more than one screwdriver in its tool belt." Beall Dec. ¶¶ 248-257.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 917 over the objections, admitted that the cited declaration states as such.**

918. Buildings devoted to housing have no greater effect on floodplains than buildings devoted to classroom space. Savad Decl. **Ex. 16**, Defendants' 30(b)(6) Tr. 846:2-11; Beall Dec. ¶ 255.

**RESPONSE:**

**Objection: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

353

**To the extent the Court chooses to consider the statements contained in Paragraph 918 over the objections, <u>admitted in part; disputed in part</u> that the declaration cited states as such. Otherwise, disputed. Savad Decl. Ex. 16, Defendants' 30(b)(6) Tr. 846:2-11 is not a citation to the record. There are only 99 pages of testimony in Savad Decl. Ex. 16.**

919.    The Village states that the justification for the Wetlands Protection Law with respect to floodplain regulation is that "if you fill the wetlands or destroy them in some way, the water is going to flow over the land." Savad Decl. **Ex. 16**, Defendants' 30(b)(6) Tr. 848:3-15.

**<u>RESPONSE:</u>**

**<u>Disputed.</u> The cited testimony does not support the purported statement of fact. The cited testimony does not discuss the "justification" for the law but instead discusses the issues that the law addressed, which issues centered around the preservation of wetlands in order to control flooding and floodplains. _See_ Savad Decl. Ex. 16, Defendants' 30(b)(6) Tr. 848:3-15.**

920.    The Wetlands Protection Law's 100' buffer does not prevent the filling in or destroying of wetlands. Code § 126-3.

**<u>RESPONSE:</u>**

**<u>Objection:</u> Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 920 over the objections, <u>disputed</u>. The cited code provision provides, among other things that, absent a permit, it is unlawful to conduct, among other things: "(1) any form of draining, dredging, excavation or removal of material ... (2) any form of depositing of any material such as but not limited to soil, rock, debris, concrete, garbage, chemicals, etc." Local Law 5 of 2007, _codified as_ VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10-11, Ex. 4-5; _see also_ Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 461:1-462:13 (discussing that the 100' buffer was to protect the wetlands from construction that would pollute the wetlands).**

921.    The Wetlands Protection Law will not reduce existing flooding within the Village. Beall Dec. ¶¶ 123-127.

**<u>RESPONSE:</u>**

**Objection**: **Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 921 over the objections, <u>admitted</u> that the cited declaration states as such.**

922.    The Village states that it cannot mitigate flooding impacts from Educational Institutions without the challenged zoning provisions. Savad Decl. **Ex. 16,**  Savad Decl. **Ex. 15,** Defendants' 30(b)(6) Tr. 841:25-844:5.

**RESPONSE:**

**<u>Disputed.</u> The cited testimony is an inaccurate reflection of the testimony of the Village. The Village testified that it "cannot mitigate use through any process other than zoning law."** *See* **Savad Decl. Ex. 15, Defendants' 30(b)(6) Tr. 842:6-7.**

923.    The challenged zoning code provisions are unnecessary to prevent floodplain impacts. Beall Dec. ¶¶ 205-213, 248-257.

**RESPONSE:**

**Objection**: **Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 923 over the objections, <u>admitted</u> that the cited declaration states as such.**

924.    Existing regulations adequately protect the Village's interest in protecting floodplains, including the Village's Floodplain regulations (chapter 79), SEQRA, NYSDEC's Stormwater Regulations and Design Manual, reviewing and approving Stormwater Pollution Prevention Plans. Beall Dec. ¶¶ 126-127, 205-212, 248-257.

**RESPONSE:**

**Objection**: **Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 924 over the objections, <u>admitted</u> that the referenced laws, plus the Local Laws at issue, work together to protect floodplains and reduce flooding.  Local Law 1 of 2001, *codified as* VILLAGE CODE § 130-4. Ulman Aff. ¶¶ 7, 13, Ex. 1, 7; Local Law 5 of 2004, *codified as* VILLAGE CODE § 130-4(F). Ulman Aff. ¶¶ 8, 13, Ex. 2, 7; Local Law 1 of 2007, *codified as* VILLAGE CODE § 130-4. Ulman Aff. ¶¶ 9, 13, Ex. 3, 7; Local Law 5 of 2007, *codified as* VILLAGE CODE § 126-3. Ulman Aff. ¶¶ 10-11, Exhibit 4-5.**

925.    No site plan for a special permit use in the Village can be granted unless the Planning Board determines "[t]hat the proposed activity and the manner in which it is to be accomplished will not adversely affect the preservation and protection of existing . . . floodplains." Savad Decl. Ex. 314, Code § 119-3(A)(3).

**<u>RESPONSE:</u>**

**<u>Disputed.</u>  Village Code Section 119 applies to steep slopes only.  Also, nothing in the correct chapter, Chapter 130, states that the Planning Board can deny a site plan for affecting the preservation and protection of flood plains. Savad Decl. Ex. 314, Code § 130-10.**

926.    The special permit process can address impacts on floodplains.  Savad Decl. **Ex. 18** (Voorhis Dep. at 97).

**<u>RESPONSE:</u>**

**<u>Objection:</u>  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 926 over the objections, <u>admitted.</u>**

927.    The Village Code contains a "Flood Damage Prevention" chapter that regulates development in terms of preventing flood damage and protecting floodplains.  Savad Decl. Ex. 34,, Code ch. 79.

**<u>RESPONSE:</u>**

**<u>Admitted</u> that the Village Code contains a "Flood Damage Prevention."**

928.    The Village's interest in preventing flood damage and protecting floodplains is met through the application of the Flood Damage Prevention chapter of its Code. Savad Decl. Ex. 314, Code § 79-3; Beall Dec. ¶¶ 248-257.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 928 over the objections, admitted that the Village's interest in preventing flood damage and protecting floodplains is met, in part, through the application of the Flood Damage Prevention Chapter.  Flooding is also addressed through impervious surface restrictions. See Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.) 315:12-316:7.**

929.    Any application for a floodplain development permit must demonstrate that a nonresidential structure will be floodproofed, and that there will be no negative effect on any watercourse, among other technical requirements. Savad Decl. Ex. 314, Code §§ 79-13; 79-16.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 929 over the objections, disputed.  Paragraph 929 is an incomplete and inaccurate statement of the cited Code Provision. See Savad Decl. Ex. 314, Code §§ 79-13; 79-16.**

930.    No development in the Village is permitted within a flood hazard area without being in compliance with Chapter 79 of the Code. Savad Decl. Ex. 314 Code § 79-9.

**RESPONSE:**

**Admitted.**

931.    State law, including NYSDEC's Article 15 regulations, protects floodplains. Beall Dec. ¶ 126.

**RESPONSE:**

**<u>Objection</u>:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 931 over the objections, <u>admitted</u>  that certain state regulations protect certain floodplains.**

932.    The Wetland Protection Law is not an effective tool to accomplish the Village's goal of preventing flood damage and protecting floodplains.  Beall Dec. ¶¶ 123-127.

**RESPONSE:**

**<u>Objection</u>:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 932 over the objections, <u>admitted</u> that the cited declaration states as such.**

933.    Development of the proposed Rabbinical College would have to comply with Savad Decl. Ex. 314, Code sec. 79, and such development would create no direct impacts to any regulated floodplains.  Beall Dec. ¶¶ 292, 294.

**RESPONSE:**

**<u>Objection</u>:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 933 over the objections, <u>disputed</u>.  Plaintiffs have not filed an application that would allow anyone, including the Village, to make this determination. *See* Savad Decl. Ex. 27 (Tartikov 30(b)(6) May 5, 2014 Dep.) 120:3-5**

<u>Protecting plant life and wildlife</u>

934.    The Village has stated that a purpose of the building, floor area and height restrictions, the accreditation requirement, the family housing and housekeeping facilities prohibitions, the one dormitory building limitation and the Wetlands Protection Law was to protect plant life and wildlife. Interrogatory 3, 4, 6, 15, 16, 27, 28; FPC Memo POM14125, 14128, 13137; Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 392:2-25, 439:21-25, 544:21-562:18; Savad Decl. Ex. 314, Code § 126-1.

**RESPONSE:**

**<u>Admitted,</u> subject to the qualification that there is no prohibition on family housing in the Village Code.**

935.    The Village has no evidence that plant life and wildlife is threatened or impacted by educational institutions or by any non-residential land use. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 545:17-546:18.

**RESPONSE:**

**<u>Objection:</u>  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 935 over the objections, <u>disputed.</u>  Paragraph 935 is an inaccurate reflection of the cited testimony of the Village.  The Village answered "no" to the question:  "Did the Village have any evidence of any adverse impact from any non-residential land use in the protection of plant and wildlife at the time it passed its law?" *See* Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 4 Tr.) 546:13-18. There is no way of knowing whether plant life and wildlife would be impacted until an application or site plan has been submitted.  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep. May 5, 2014) 19:1-20:5.**

936.    The Village possesses no reports or studies demonstrating that plant and wildlife was threatened by educational institutions. Savad Decl. **Ex. 14**,  Defendants' 30(b)(6) Tr. 561:2-6, 562:19-563:20.

**RESPONSE:**

**<u>Disputed.</u>  The cited testimony does not support the purported statement of fact. Defendants refer the Court to the cited testimony.  The Village representative specifically**

referenced a study by Westchester County and indicated that there may have been others. *See* Savad Decl. Ex. 14 ( Defendants' 30(b)(6) Day 3 Tr.) 562:19-563:20.

937.    The Village's stated evidence justifying the challenged zoning code provisions with respect to protecting plant life and wildlife is a reference to the New York DEC and "general local concerns" and "general knowledge." Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 392:7-18, 552:6-7.

**RESPONSE:**

**Objection: Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 937 over the objections, <u>disputed.</u> Paragraph 937 is an incomplete and inaccurate reflection of the Village testimony. *See* Savad Decl. Ex. 13 ( Defendants' 30(b)(6) Day 2 Tr.) 392:7-397:19, 548:7-552:11.**

938.    The text of the challenged zoning code provisions do not refer to plant life and wildlife, and plant life and wildlife was not discussed by the Board as a reason for passing the challenged zoning laws. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 547:7-10, 547:22-548:3, 560:14-19.

**RESPONSE:**

**<u>Disputed</u> to the extent Local Law 5 of 2007 contains extensive provisions as to wetlands protection, including express references to various forms of plant life. Admitted that the Village representative testified that the protection of plant life and wildlife was, to the witness's knowledge, not discussed as a reason for passing Local Law 1 of 2001. *See* Local Law 1 of 2001 at § 4, *codified as* VILLAGE CODE § 130-10(F) Ulman Aff. ¶¶ 7, 16, Ex. 1, 10; Local Law 5 of 2007 Ulman Aff. ¶¶ 10-11, Ex. 4.**

939.    Protecting plant life and wildlife was not discussed by the Board of Trustees as a reason for enacting any of the challenged zoning code provisions. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 547:7-10, 547:22-548:3, 560:20-25.

**RESPONSE:**

**Disputed.** **The cited testimony does not support the purported statement of fact with respect to Local Law 5 of 2007. Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 547:7-10, 547:22-548:3, 560:20-25; Local Law 5 of 2007 Ulman Aff. ¶¶ 10-11, Ex. 4.**

940.    The Village states that the justification for the accreditation requirement with respect to plant life and wildlife is that "automotive schools" will harm plant life and wildlife. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 549:3-21, 554:25-555:6.

**RESPONSE:**

**Disputed.** **The cited testimony shows that *an example* of the accreditation requirement was to prevent schools that might have an adverse impact on plant and wildlife, such as automotive schools. *See* Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 549:3-21, 554:25-555:6.**

941.    The Village states that the justification for the challenged dormitory provisions with respect to plant life and wildlife is that the prohibited housing will "us[e] a greater amount of the land . . . . You're using more -- that would be the primary, the primary difference." Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 551:5-14, 552:16-19

**RESPONSE:**

**Disputed.** **The Village did not state this was the "justification" for the "dormitory provisions." The Village representative testified that "[a]ssuming the same number of students who would be studying at one institution as opposed to the other, when you have multifamily housing instead of one dormitory building, you're using a greater amount of land, which is destroying plant life." *See* Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 551:5-110.**

942.    The prohibited housing will not use a greater amount of land than permitted student housing, as maximum development for both is limited by building, floor area and impervious surface coverage regulations. Beall Dec. ¶¶ 241, 254-255, 263-264, 300-301, 304; Weinstein Dec. ¶ 94.

**RESPONSE:**

**Objection:** **Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert**

opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statements contained in Paragraph 942 over the objections, <u>admitted</u> that the cited declaration states as such.

943.    The permitted uses of accredited schools, non-housing elements of a college, permitted dormitories and museums and libraries would equally affect plant life and wildlife. Beall Dec. ¶¶ 276, 305.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statements contained in Paragraph 943 over the objections, <u>admitted</u> that the cited declaration states as such.

944.    The Village stated that impacts on plant life and wildlife caused by Educational Institutions can be mitigated through the land development process. Savad Decl. **Ex. 14,** Defendants' 30(b)(6) Tr. 555:19-557:5.

<u>RESPONSE:</u>

<u>Admitted</u> that this statement is true in some cases, as noted in the cited testimony. *See* **Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 555:19-557:5.**

945.    The Wetlands Protection Law is unnecessary to protect animal and plant life. Beall Dec. ¶¶ 137-145, 472.

<u>RESPONSE:</u>

<u>Objection</u>: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.

To the extent the Court chooses to consider the statements contained in Paragraph 945 over the objections, <u>admitted</u> that the cited declaration states as such.

946.    Existing Village, state and federal regulations sufficiently protect animal and plant life.  Beall Dec. ¶¶ 222, 245-267.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 946 over the objections, <u>admitted</u> that the cited declaration states as such.**

947.    The Village Code states that no site plan may be granted unless there is a determination that "the proposed activity and the manner in which it is to be accomplished can be completed in such a way so as not to adversely affect . . . any endangered species of flora or fauna."  Savad Decl. Ex. 314, Code § 119-3(A)(4).

**RESPONSE:**

**<u>Disputed.</u>  The cited testimony does not support the purported statement of fact.  The referenced citation applies only to steep slopes.  _See_ Savad Decl. Ex. 314, Code § 119-3(A)(4).**

948.    The special permit process can address impacts on plant life and wildlife.  Savad Decl. **Ex. 18**, Voorhis Dep. at 97.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 948 over the objections, <u>admitted.</u>**

949.    The Village Planning Board must establish conditions of site plan approval for "[t]he protection of existing trees and other vegetation where feasible." Savad Decl. Ex. 314, Code § 119-7(C)(6)(t).

**RESPONSE:**

**Disputed.  The Planning Board is not required to impose conditions on approval. *See* Savad Decl. Ex. 314, Code § 119-7(C)(6)(t).**

950.    The Village must address plant life and wildlife when it conducts the SEQRA review.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 554:6-17; Beall Dec. ¶ 222, 277.

**RESPONSE:**

**Objection:  Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 950 over the objections, admitted.**

951.    Any development on the subject Property can be clustered to avoid environmental impacts.  Beall Dec. ¶¶ 285-289.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 951 over the objections, admitted that the cited declaration states as such.**

952.    Existing regulations and the site planning process would protect habitat if the subject Property were developed as a Rabbinical College.  Beall Dec. ¶ 296.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert**

opinion, subject to striking on several grounds, as discussed in detail in Defendants' **Opposition filed herewith.**

To the extent the Court chooses to consider the statements contained in Paragraph 952 over the objections, <u>disputed</u>.  There is no way of knowing whether the habitat would be protected until an application or site plan has been submitted. Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep. May 5, 2014) 19:1-20:5; NYCRR 617.7(c)(10(ii) Ulman Aff. 2 ¶ 8, Ex. B.

Protecting air quality

953.    The Village has stated that a purpose of the building, floor area and height restrictions, the accreditation requirement, the family housing prohibition, the one dormitory building and  20% dormitory limitations, and the Wetlands Protection Law was to protect air quality.  Savad Decl. Ex. 311, Interrogatory 3, 4, 6, 15, 16, 27, 28; FPC Memo POM14125, 14128, 13137; Savad Decl. **Ex. 13**,  Defendants' 30(b)(6) Tr. 391:18-392:6, 395:17-396:18, 697:11-723:15; Savad Decl. Ex. 314, Code § 126-1.

**RESPONSE:**

<u>Admitted,</u> **subject to the qualification that there is no "family housing prohibition" in the Village Code.**

954.    The Village states that the justification for the challenged code provisions with respect to air quality is that there would be "fumes" from traffic and that such development would involve "cutting too many trees."  Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 395:21-396:18, 700:15-701:6.

**RESPONSE:**

<u>Disputed.</u>  **The statement mischaracterizes the testimony cited.  The Village representative testified that an overabundance of traffic would create fumes The cited testimony does not support the purported statement of fact that "such development" would involve "cutting too many trees".** *See* **Savad Decl. Ex. 13, Defendants' 30(b)(6) Tr. 396, 2-6.**

955.    The Village possesses no specific reports or studies demonstrating that air quality was threatened by educational institutions. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 699:2-6, 703:3-20, 715:7-12, 723:5-15.

**RESPONSE:**

**Admitted.**


956.    The text of the challenged zoning code provisions do not refer to air quality. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 700:7-9, 702:9-11, 714:20-22.

**RESPONSE:**

**Admitted.  Defendants note that Plaintiffs do not define which provisions are the "challenged zoning code provisions."**


957.    Air quality was not stated by the Board of Trustees as a basis for passage of the Educational Institution laws. Savad Decl. **Ex. 14**,  Defendants' 30(b)(6) Tr. 702:12-18, 715:3-6.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.  The Village representative testified that the Board members were concerned with the environmental effects of a non-residential use in a residential zone.  *See* Savad Decl. Ex. 14(, Defendants' 30(b)(6) Day 3 Tr.) 702:17-25; 715:12-17.**


958.    The Village has the authority to impose conditions on any special permit use to ensure that such use "will not be more objectionable to nearby properties by reason of . . . fumes, . . . than would be the operations of permitted uses not requiring a special permit."  Savad Decl. Ex. 314, Code § 130-28(6)(c).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 958 over the objections, _disputed._  The cited testimony does not support the purported statement of fact.  The correct citation is § 130-28E(6)(c) and it is not the Village but the**

"**permitting Board" which has said authority.  Village Code § 130-28E(6)(c), Ulman Aff ¶ 18, Ex. 12.**

959.    The special permit process can address impacts on air quality.  Savad Decl. **Ex. 18**, Voorhis Dep. at 97.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 959 over the objections, <u>admitted.</u>**

960.    Trees are also protected under the Code in the site plan application process. Savad Decl. Ex. 314, Code § 119-7(C)(6)(t)-(u).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 960 over the objections, <u>admitted</u> that trees are generally protected in various parts of the Village Code.  Defendants note that Chapter 119 only applies to single-family, steep slope lots.**

<u>Water Supply & Sanitary Sewers</u>

961.    The Village has stated that a purpose of the building, floor area and height restrictions, the accreditation requirement, the family housing and housekeeping prohibitions, the one dormitory building and 20% dormitory limitations, and the Wetlands Protection Law was to protect the local water supply and sanitary sewer system. Savad Decl. Ex. 311,  Interrogatory 3, 4, 6, 15, 16, 27, 28; FPC Memo POM14125, 14128, 13137; Savad Decl. **Ex. 13**, Defendants' 30(b)(6) Tr. 389:24-390:20, 439:21-25, 566:12-580:11, 858:17-870:20; Code § 126-1.

**RESPONSE:**

**<u>Admitted,</u> subject to the qualification that there is no "family housing prohibition" in the Village Code.**

962.     The only basis for the Village's position that the challenged code provisions are intended to protect the Village's water supply and sanitary sewer system is a "general awareness" of water use issues from newspaper reports and discussions, and "general knowledge" of the water usage of Educational Institutions. Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 567:23-25, 574:20-23.

**RESPONSE:**

**Disputed.  The cited testimony does not support the purported statement of fact.** *See* **Savad Decl. Ex. 14,  Defendants' 30(b)(6) Tr. 567:23-25, 574:20-23.**

963.     The Village does not regulate its water supply.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 567:5-9.

**RESPONSE:**

**Disputed**.  **The testimony cited does not support the purported statement of fact.** *See* **Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 567:5-9.**

964.     The Village had no studies or reports establishing any lack of sufficient infrastructure, which includes water supply and sanitary sewers when it adopted the challenged code provisions in 2001, 2004 and 2007.  RFA Resp. 61, 62, 63, 64; Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 567:10-569:7, 574:20-23, 858:25-859:11.

**RESPONSE:**

**Disputed.  The Village representative testified that the Village was aware of studies by the New York State Public Service Commission and United Water New York, Inc. indicating that there is an insufficient water supply for the future, but stated that the Village did not have copies in its possession.** *See* **Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 568:1-569:17.**

965.     Protecting its water supply and sanitary sewers was not stated as a basis for passage of the Educational Institution laws. Savad Decl. **Ex. 14**,  Defendants' 30(b)(6) Tr. 572:11-13, 855:21-25.

**RESPONSE:**

**Disputed**. **The cited testimony does not support the purported statement of fact.** *See* **Savad Decl. Ex. 14,  Defendants' 30(b)(6) Tr. 572:11-13, 855:21-25.**

966.    The Village has no evidence of negative impacts on the water supply and sanitary sewer systems caused by Educational Institutions, or by any nonresidential land use.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 569:23-570:11.

**RESPONSE:**

**Objection:** **Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 966 over the objections, <u>disputed</u>.  The Village representative testified that there were no Educational Institutions in the Village at the time Local Law 5 of 2007 was passed.  She did not testify that there was no evidence of negative impacts on the water supply and sanitary sewer systems caused by Educational Institutions.** *See* **Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 570:3-4.**

967.    The Village states that the justification for the accreditation requirement with respect to sanitary sewers is that "automotive schools" would damage sanitary sewers if motor oils were poured into the sewer system. Savad Decl. **Ex. 14**,  Defendants' 30(b)(6) Tr. 861:15-862:14.

**RESPONSE:**

**<u>Disputed</u>. The cited testimony does not support the purported statement of fact.  An automotive school was *just one example* discussed by the Village of a development that would adversely impact the Village's sanitary sewer system.   Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 861:15-862:14.**

968.    The Village has provided no evidence supporting its statement that non-accredited Educational Institutions "use[] more water" than accredited Educational Institutions.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 577:13-578:7.

**RESPONSE:**

**Objection:** **Defendants object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 968 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 577:13-578:7.**

969.    The Village states that the justification for the challenged dormitory provisions with respect to water usage and sanitary sewers is only related to the size of such housing.  Savad Decl. **Ex. 14**, Defendants' 30(b)(6) Tr. 574:11-575:23, 854:6-11, 858:17-24, 862:23-864:4, 866:21-867:7.

**RESPONSE:**

**<u>Disputed</u>.  The Village stated that dormitories not having separate cooking, dining or housekeeping facilities have a direct effect on water usage.  *See* Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 574:8-13.**

970.    The Village's statement that individuals residing in family housing would "encourage[] the use of additional water," as compared to individuals residing in a communal facility is unsupported by any evidence.  Defendants' 30(b)(6) Tr. 575:14-17.

**RESPONSE:**

**<u>Objection</u>:  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 970 over the objections, <u>disputed</u>.  The cited testimony does not support the purported statement of fact.  The Village representative gave the opinion that multifamily housing would use more water than dormitory housing.  *See* Savad Decl. Ex. 14, Defendants' 30(b)(6) Tr. 575:10-14.**

971.    The Village stated that the Wetlands Protection Law is "not going to [a]ffect the sanitary system as much . . . ."  Savad Decl. **Ex. 14**,  Defendants' 30(b)(6) Tr. 870:16-20.

**RESPONSE:**

**<u>Disputed.</u>  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 14,  Defendants' 30(b)(6) Tr. 870:16-20.**

972.    Existing Village regulations sufficiently protect the Village's interest in the water supply.  Savad Decl. Ex. 314, Code §§ 119-5, 110-5, 110-22 – 110-29.

**RESPONSE:**

**Objection:  Defendants object as this statement offers opinion as facts.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 972 over the objections, <u>disputed</u>. The cited Code does not support the purported statement of fact.  *See, e.g,* Savad Decl. Ex. 13 (Defendants' 30(b)(6) Day 2 Tr.)  334:22-335:4:.**

973.    In granting site plan approval, the Village Planning Board must determine that "[t]he proposed systems for water supply . . . on the site shall be adequate, and facilities shall be sufficient to handle the increase in service."  Savad Decl. Ex. 314, Code § 119-5(D)(7).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 973 over the objections, <u>admitted.</u>  Defendants note that Chapter 119 only applies to single-family, steep slope lots.**

974.    In granting site plan approval, the Village Planning Board must determine that "[t]he proposed systems for sewage collection and disposal on the site shall be adequate, and facilities shall be sufficient to handle the increase in service."  Savad Decl. Ex. 314, Code § 119-5(D)(7).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 974, over the objections, <u>admitted.</u> Defendants note that Chapter 119 only applies to single-family, steep slope lots.**

975.    The special permit process can address impacts on water supply and sanitary sewers.  Savad Decl. **Ex. 18**, Voorhis Dep. at 98.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 975 over the objections, <u>admitted.</u>**

976.    The Village Code contains a chapter devoted to regulating its sanitary sewer systems.  Savad Decl. Ex. 314, Code ch. 110.

**RESPONSE:**

**<u>Disputed.</u>  The cited testimony does not support the purported statement of fact.  This section applies to sanitary sewer systems outside the Village.  *See* Savad Decl. Ex. 314, Code ch. 110.**

977.    The Village's "Board of Sewer Commissioners shall also have authority to determine the manner and conditions under which said building sewers shall be installed and maintained . . . ."  Savad Decl. Ex. 314,  Code § 110-5(D).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 977 over the objections, <u>admitted</u> that this is what the Code provides.  Defendants note that although this provision has not been enforced since 1988 because the Village has no jurisdiction over the Joint Regional Sewage System and that there is no Board of commissioners.**

978.    Standards for the Village's sewer systems are set forth in the Code.  Savad Decl. Ex. 314, Code §§ 110-22 -- 110-29.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 978 over the objections, admitted.**

979.    The Village Code also regulates "prohibited discharges" in the sanitary sewer system.  Savad Decl. Ex. 314, Code § 110-32 -- 110-41.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 979 over the objections, admitted.**

<u>Stormwater System</u>

980.    The Village has stated that a purpose of the building, floor area and height restrictions, the accreditation requirement, the family housing prohibition, the one dormitory building and 20% dormitory limitations, and the Wetlands Protection Law was to prevent impacts to its stormwater sewer system. Savad Decl. **Ex. 15** , Defendants' 30(b)(6) Tr. 856:18-870:20.

**RESPONSE:**

**Admitted, subject to the qualification that there is no "family housing prohibition" in the Village Code.**

981.    The Village states that the justification for the accreditation requirement with respect to water usage and stormwater sewers is that "automotive schools" would generate pollutants.  Savad Decl. **Ex. 15**, Defendants' 30(b)(6) Tr. 862:5-14.

**RESPONSE:**

**Disputed.  The Village representative specifically testified that this was *an example* of why the accreditation requirement was enacted. *See* Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 862:5-14.**

982.    There is no basis to support the Village's contention that non-accredited Educational Institutions would general pollutants that would contaminate the Village's stormwater system.  Beall Dec. ¶¶ 260-261.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 982 over the objections, <u>admitted</u> that the cited declaration states as such.**.

983.    Family housing would not have greater impacts on the Village's stormwater system than traditional dormitory housing.  Beall Dec. ¶¶ 262-263.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 983 over the objections, <u>admitted</u> that the cited declaration states as such.**

984.    The Village states that the justification for the challenged dormitory provisions with respect to the stormwater system is only related to the size of such housing.  Savad Decl. **Ex. 15,**Defendants' 30(b)(6) Tr. 862:23-864:4, 864:21-867:7.

**RESPONSE:**

**<u>Disputed.</u>  The cited testimony does not support the purported statement of fact.  Among other things, the Village stated that, in contrast to a dormitory, a single, two family or multi-family house is going to have more bathrooms, kitchens, washing machines an dishwashers.  Savad Decl. Ex. 15 Defendants' 30(b)(6) Day 4 Tr. 863: 12-16.**

985.    The challenged dormitory provisions do not affect the total size of an Educational Institution, but only affect the layout of such institution.  Beall Dec. ¶¶ 263-264.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 985 over the objections, <u>disputed</u>.  The dormitory provisions affect the use, the intensity of use and the layout of the institution.  *See* Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 550-3-10.**

986.    The Village's statement that the Wetlands Protection Law protects the stormwater system is not based on any facts or evidence. Savad Decl. **Ex. 14**,  Defendants' 869 30(b)(6) Tr. 869:17-870:16.

**RESPONSE:**

**Objection:  Defendants object as this statement offers opinion as facts.  Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 986 over the objections, <u>disputed.</u>  The cited testimony does not support the purported statement of fact.  *See* Savad Decl. Ex. 15 (Defendants' 30(b)(6) Day 4 Tr.) 869:17-870:16. *See also* Village Code § 126-1.**

987.    The Wetlands Protection Law does not protect stormwater systems.  Beall Dec. ¶¶ 128-132.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 987 over the objections, <u>disputed</u>.  *See* Village Code § 126-1.**

988.    The Village's stormwater system is adequately protected by other existing regulations. Beall Dec. ¶¶ 132, 258-266.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge. Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 988 over the objections, <u>admitted</u> that the cited declaration states as such.**

989.    Stormwater management is regulated through the Village's "stormwater management" chapter. Code ch. 114; Beall Dec. ¶¶ 214-221.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 989 over the objections, <u>admitted</u>.**

990.    The Village Code's stormwater management chapter "provide[s] for the health, safety, and general welfare of the citizens of the Village of Pomona through the regulation of nonstormwater discharges to the municipal separate storm sewer system . . . ." Savad Decl. Ex. 314, Code § 114-1.

**RESPONSE:**

**Objection: Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 990 over the objections, <u>admitted.</u>**

991.    No application for approval of a land development activity shall be reviewed by the Village until the Pomona Planning Board or the Building Inspector, as the case may be, has

received a stormwater pollution prevention plan prepared in accordance with the requirements of chapter 114.  Savad Decl. Ex. 314, Code § 114-25.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 991 over the objections, <u>admitted.</u>**

991.    All land development activities must meet the standards of the New York State Stormwater Design Manual, the New York Standards and Specifications for Erosion and Sediment Control, or the technical equivalent.  Savad Decl. Ex. 314, Code § 114-27(A),(B).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 992 over the objections, <u>admitted</u>.  Defendants note that compliance with these manuals raises only a presumption of compliance, not a determination. Savad Decl. Ex. 314, Code § 114-27(A),(B).**

993.    Within the Village, any approved site plan for a special permit use must include a stormwater pollution prevention plan in accordance with Chapter 114 of the Village Code. Savad Decl. Ex. 314, Code § 119-5(B)(2)(j); Beall Dec. ¶¶ 202, 266.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 993 over the objections, <u>admitted.</u>**

994.    The special permit process can address impacts on stormwater systems.  Savad
Decl. **Ex. 18**, Voorhis Dep. at 97.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 994
over the objections, <u>admitted.</u>**

995.    No site plan can be approved by the Planning Board unless "[t]he proposed
stormwater drainage system [is] adequate to prevent any increase in the rate of surface runoff or
otherwise contribute to downstream flooding during a storm of any magnitude up to and
including a one-hundred-year-frequency storm."  Savad Decl. Ex. 314, Code § 119-5(D)(6).

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.**

**To the extent the Court chooses to consider the statements contained in Paragraph 995
over the objections, <u>disputed</u>.  Code § 119-5 does not apply to non-residential, non steep
slope developments.  *See* Savad Decl. Ex. 314, Code § 119-5(D)(6).**

996.    A stormwater plan generally must mimic or improve the pre-existing site
stormwater runoff conditions.  Beall Dec. ¶ 203.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial
challenge.  Defendants object because this statement improperly contains purported expert
opinion, subject to striking on several grounds, as discussed in detail in Defendants'
Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 996
over the objections, <u>admitted</u> that the cited declaration states as such.**

997.    As the Rabbinical College would be required to comply with Code sec. 114 and 119 and SEQRA, the development "would likely be an improvement over existing site conditions." Beall Dec. ¶ 295.

**RESPONSE:**

**Objection:  Defendants assert that this Paragraph is immaterial/irrelevant in this facial challenge.  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith. Defendants also object as this statement is a conclusion of law, not a factual statement.**

**To the extent the Court chooses to consider the statements contained in Paragraph 997 over the objections, <u>disputed</u>.  The Village cannot opine on whether the developments would be an improvement because Plaintiffs have not filed an application or provided a detailed site plan.  Savad Decl. Ex. 27 (Tartikov 30(b)(6) Dep., May 5, 2014) 120:3-120:5.**

998.    The Village is not "rural," but rather suburban in nature.  Beall Dec. ¶¶ 316-323, Drake Dec. ¶¶ 25-26.

**RESPONSE:**

**Objection:  Defendants object because this statement improperly contains purported expert opinion, subject to striking on several grounds, as discussed in detail in Defendants' Opposition filed herewith.**

**To the extent the Court chooses to consider the statements contained in Paragraph 998 over the objections, <u>disputed</u>.  Disputed to the extent that the Village's corporate representative has characterized the Village as "semi-rural/semi-suburban."  Savad Decl. Ex. 14 (Defendants' 30(b)(6) Day 3 Tr.) 634:12-21.**

Respectfully submitted by,

DEFENDANTS

VILLAGE OF POMONA, NY; BOARD OF
TRUSTEES OF THE VILLAGE OF
POMONA, NY; NICHOLAS
SANDERSON AS MAYOR; IAN BANKS
AS TRUSTEE AND IN HIS OFFICIAL
CAPACITY; ALMA SANDERS ROMAN
AS TRUSTEE AND IN HER OFFICIAL
CAPACITY, RITA LOUIE AS TRUSTEE
AND IN HER OFFICIAL CAPACITY;
AND BRETT YAGEL AS TRUSTEE IN
HIS OFFICIAL CAPACITY

By_____ */s/ Marci A. Hamilton*
    Marci A. Hamilton (*pro hac vice*)
    36 Timber Knoll Drive
    Washington Crossing, PA 18977
    Tel. No.: (215) 353-8984
    Fax No.: (215) 493-1094
    hamilton.marci@gmail.com

    John F. X. Peloso, Jr. (JP6110)
    Andrea Donovan Napp (AN1978)
    Amanda E. Gordon (*pro hac vice*)
    Robinson & Cole LLP
    1055 Washington Blvd.
    Stamford, CT 06901
    Tel. No. (203) 462-7503
    Fax. No. (203 462-7599
    jpeloso@rc.com
    anapp@rc.com
    agordon@rc.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing though the Court's CM/ECF System.

*/s/ Andrea Donovan Napp*
Andrea Donovan Napp