UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CONGREGATION RABBINICAL COLLEGE OF           Case No. 07-CV6304(KMK)
TARTIKOV, INC., RABBI MORDECHAI BABAD,
RABBI WOLF BRIEF, RABBI HERMEN KAHANA,
RABBI MEIR MARGULIS, RABBI GERGELY
NEUMAN, RABBI MEILECH MENCZER,
RABBI JACOB HERSHKOWITZ, RABBI               **DECLARATION OF**
CHAIM ROSENBERG, RABBI DAVID A.              **PAUL SAVAD**
MENCZER, and RABBI ARYEH ROYDE,

Plaintiffs,

-against-

VILLAGE OF POMONA, NY; BOARD OF TRUSTEES OF
THE VILLAGE OF POMONA, NY; NICHOLAS SANDERSON,
AS MAYOR; IAN BANKS as Trustee and in his official capacity,
ALMA SANDERS ROMAN as Trustee and in her official capacity,
RITA LOUIE as Trustee and in her official capacity,
and BRETT YAGEL, as Trustee and in his official capacity,
Defendants.
------------------------------------------------------------------------X

PAUL SAVAD declares as follows, pursuant to 28 U.S.C. §1746:

1.    I am a member of Savad Churgin, Attorneys, and am duly admitted to practice law in the courts of the State of New York and United States District Courts for the Southern and Eastern Districts of New York. Savad Churgin is the successor in interest to Paul Savad & Associates.

2.    I make this Declaration in support of the application of Plaintiffs Congregation Rabbinical College of Tartikov, Inc. ("Tartikov" or the "Rabbinical College"), Rabbi Mordechai Babad, Rabbi Wolf Brief, Rabbi Hermen Kahana, Rabbi Meir Margulis, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz, Rabbi Chaim Rosenberg, and Rabbi David A. Menczer

1

(collectively, the "Plaintiffs"), to recover legal fees and costs due and payable to Savad Churgin, Stepanovich Law PLC and Storzer & Greene, P.L.L.C. against Defendants Village of Pomona, N.Y., the Board of Trustees of the Village of Pomona, N.Y., Nicholas Sanderson, Ian Banks, Alma Sanders Roman, Rita Louie and Brett Yagel (collectively "Defendants") in conjunction with Plaintiffs' motion for sanctions. This Declaration is based on my own personal knowledge.

3. Tartikov is a New York religious corporation formed in 2004 to establish a rabbinical college, in the Village of Pomona (the "Village" or "Pomona"), Rockland County, New York. This religious school will include (among other religious uses) a housing component, for students and their families on Tartikov's approximate 100-acre parcel in the Village (the "Property"). This case challenges the Village's passage of certain zoning and wetlands laws that Plaintiffs contend, *inter alia*, were enacted with discriminatory animus by targeting Hasidic Jews generally, and the Plaintiffs specifically, because of their religion, and which substantially burden Plaintiffs' religious exercise and association. The case was filed in July, 2007. Docket No. 1.

4. The parties conducted discovery between the Court's discovery conference on April 17, 2013 and the close of discovery in August, 2014. Docket Nos. 53 and 121. Following the close of discovery, Plaintiffs discovered that Defendants had destroyed a Facebook Post made by Defendant Rita Louie regarding Hasidic Jews and had withheld production of texts between Trustee Louie and Mayor Yagel regarding that Facebook post.

5. Based upon Defendants' spoliation of evidence, the Court ordered adverse inference sanctions against Defendants and ordered them to pay the Plaintiffs' attorneys' fees and costs related to their motion for sanctions for destroying the evidence. *Congregation*

*Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 07-CV-6304 KMK, 2015 WL 5729783 at *21 (S.D.N.Y. Sept. 29, 2015).

6. I am a member in good standing of the New York State Bar Association, having practiced law since my admission to the New York State Bar in 1967.

7. I received my LLB from St. John's University School of Law in 1966 after earning a BS in Accounting from Long Island University in 1963.

8. As an active member of the Rockland County Bar Association, I am the Chairperson of the Commercial and Corporate Law Committee, give CLE lectures in litigation, and also author an article published monthly concerning commercial litigation and other corporate issues of interest.

9. I have been a member of the New York State Bar Association since 1967, and a member of the New York State Trial Lawyers Association since 1977.

10. Over the past 49 years, I have focused on complex federal and state litigation, involving federal and state claims, including cases for religious freedoms, civil rights, and New York Zoning and Land Use.

11. I was contacted in 2004 by Michael Tauber, an officer of Tartikov, to represent Tartikov in its purchase of the Property in Pomona. I continued to represent Pomona in its attempts to meet with Pomona. When it became obvious that there was a possibility of litigation, Tartikov hired me to serve as lead counsel. I selected Roman Storzer, Esq., and his law firm and John Stepanovich, Esq. and his law firm to join with me in this lawsuit. I selected Roman Storzer because I consider him to be the most knowledgeable attorney in the United States on RLUIPA and religious land use and I selected John Stepanovich because he is a vastly knowledgeable and successful trial lawyer with considerable RLUIPA and FHA experience.

12.     This is a complex case with voluminous discovery. Defendants produced more than 38,000 pages of documents[1]. The parties took a total of 27 fact depositions, including a total of five days of 30(b)(6) depositions, and took 8 expert depositions.

13.     It was necessary to expend a significant amount of time on the spoliation motion, partially due to the spirited nature of Defendants' vigorous opposition, as they set forth in their pre-motion letter to the Court, attached hereto as Exhibit E, and during the pre-motion conference, the transcript of which is attached hereto as Ex. F.

14.     For example, despite the fact that Mayor Yagel specifically did not want Plaintiffs' counsel to see the Facebook post, Defendants claimed that the deleted Facebook post was not relevant to this lawsuit. This forced Plaintiffs' counsel to cull through the voluminous discovery in order to prove that Defendants' arguments were contrary to the fact that they <u>had produced</u> documents similar to the destroyed document.

15.     Defendants also claimed that the destruction of the Facebook post was an isolated incident. This made it necessary for Plaintiffs' counsel to also cull through the discovery in order to present the Court with evidence of Defendants' other failures to properly preserve evidence.

16.     It was also necessary to go through discovery requests, multiple versions of discovery responses, correspondence regarding discovery responses and transcripts of hearings regarding discovery disputes in order to present this Court with evidence to support the fact that the destroyed discovery had actually been requested by Plaintiffs.

17.     As a result, it was necessary to file moving papers consisting of a 24 page memorandum of law and my declaration with **44 exhibits**. Docket Nos. 196 and 197, 197-1-

---

[1] Approximately 22,000 of those were electronically produced multi-page documents, resulting in a review of well more than 38,000 pages of documents.

197-44. On reply, we submitted a ten page memorandum of law and my declaration with an **additional 10 exhibits**. Docket Nos. 205, 206 and 206-1-206-10.

18. Paul Savad & Associates and Tartikov signed a retainer agreement November 30, 2006, attached hereto as **Exhibit "G"**. I agreed to accept the hourly rate of $375 for my work on behalf of Tartikov, which was below my then prevailing hourly rate of $400. *See* my firm's Law Firm Fee Policy Memorandum for 2005, attached as **"Exhibit "H"**, which was in effect in 2006.

19. I also agreed to charge Tartikov an hourly rate of $350 for senior associates and $300 for junior associates. Ex. G. This was also below my then prevailing hourly rate of up to $375 for attorneys. Ex. H, page 1. I charged the lower rate for myself and the attorneys in my firm because Tartikov is a religious organization.

20. My firm's Law Firm Fee Policy Memorandum provided that the hourly fees may increase up to 10% per year. Ex. H at page 5. In October, 2007, rather than raising rates for myself, or raising the rates of Mr. Storzer and Mr. Stepanovich, we instead moved to a blended rate, where all attorneys, regardless of seniority, billed at an hourly rate of $375. This enabled Tartikov to receive a discounted rate on the work performed myself, Mr. Storzer and Mr. Stepanovich. We have not raised our rates in this case since 2007, despite the fact that the fee policy permitted us to raise the rates up to 10% per year.

21. The blended hourly rate of $375 is the same rate that <u>Defendants'</u> litigation counsel, Robinson & Cole, charged Defendants in 2007 and 2008. *See* **Exhibit "I"**, Robinson & Cole retainer with Defendants, attached hereto. Presumably Robinson & Cole currently charges more per hour because the retainer provided that after the end of 2008 "the blended rate will be adjusted consistent with rate changes." Ex. I at page 2.

5

22. The blended hourly rate of $375 is well below the **$700** hour that Defendants' RLUIPA counsel, Marci Hamilton charges Defendants. *See* **Exhibit "J"**, Marci Hamilton retainer with Defendants, attached hereto.

23. It is a practice of my law firm to maintain contemporaneous time and service records for services rendered, and to enter billing information at the end of each business week. I personally supervised and reviewed the billing time records of Donna C. Sobel, Esq., who organized and conducted the discovery review, synthesized the information therein and performed most of the work on the sanctions motion. Ms. Sobel's records have been submitted as **Exhibit "B-2"**, which time records were made contemporaneously with rendering of legal services and incurring disbursements.[2] Services rendered are recorded daily on handwritten sheets, and entries in the computer time slips program are made weekly. The computer time slips serve as our original business record.

24. I do hereby certify and represent to the Court that all of the time records submitted by Ms. Sobel (Ex. B-2), as well as my time records set forth in **Exhibit "B-1"** and the disbursements set forth in **Exhibit "B-3"** are true and accurate, and were incurred in respect to providing legal services only for this case for the period of time of the spoliation dispute from March 18, 2015 through July 15, 2015. A summary of the hours billed and disbursements by Savad Churgin for the spoliation motion and conflict are attached hereto as **Exhibit "B"**.

25. Through the use of quarter-hour billing for this case, Tartikov received the benefit of reduced billings. It was our practice during the case that if less than .25 hours was spent on any task, then such task was not recorded and no bill rendered for such services. Many phone

---

[2] For all of the time entries which have been submitted for all three law firms, we have whited out or blacked out all Tartikov time entries which do not relate to the spoliation conflict and motion.

6

calls and quick reviews of documents were not recorded or invoiced. Phone calls (not conferences) with clients and other attorneys were often not recorded or invoiced.

26. Additionally, I did not bill for much of my time in conjunction with the spoliation motion. Although I participated in conferences regarding the motion, and provided the final review of the memo of law and declarations being submitted, I did not bill for any of that time. The only time that I billed for in connection with the spoliation motion was a total of 3.5 hours for preparation for and attendance at the pre-motion hearing. Ex. B-1. We vigilantly avoided duplicative work and did not use multiple attorneys unless the variety and complexity of particular aspects of the proceedings made it necessary or they were strategizing or conferring regarding issues. We are not submitting the bills for fees associated with making this motion.

27. All fees invoiced in this case have been paid in full by the client. This supports the fact that the hourly rate of $375 is a reasonable rate for federal court cases pending in the United States District Court for the Southern District for RLUIPA cases.

28. Submitted as **Exhibit "A"** is a summary exhibit of all the fees, costs, and disbursements incurred by the law firms of Savad Churgin, Stepanovich PLC and Storzer & Greene, P.L.L.C. in connection with the spoliation motion, in the total sum of $65,246.71:

- Savad Churgin invoiced fees of $43,875.00 and disbursements of $99.90 for a total of $43,974.90 with fees invoiced at $375 per hour for total of 117 hours. Exs. A, B, B-1 and B-2;

- Stepanovich PLC invoiced fees of $14,181.25 and disbursements of $1199.11, for a total of $15,380.36, with fees invoiced at $375 per hour for total of 42 hours. Exs. A, D and D-1; Stepanovich Dec. ¶ 16;

- Storzer & Greene, P.L.L.C. invoiced fees of $5349.90 and disbursements of $541.55, for a total of $5891.45, with fees invoiced at $375 per hour for total of 14.2664 hours.  Exs. A, C and C-1; Storzer Dec. ¶ 10.

29. The total legal fees of $63,406.15 for all law firms were incurred for 173.2664 total hours of legal services invoiced at the agreed contractual rate of $375 per hour for all three firms, which hourly rate is fair, reasonable, and less than prevailing hourly rates of lawyers in similar cases with similar experience over the time-period of the case generally, and the time-period of the spoliation motion specifically.  Ex. A.

30. The total costs billed in connection with the spoliation motion were $1840.56 and are of the type usually billed in addition to an attorney's hourly rates.  Ex. A.

31. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:    Nanuet, New York
          October 28, 2015

_____
PAUL SAVAD