# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CONGREGATION RABBINICAL COLLEGE
OF TARTIKOV, INC.,

                Plaintiff,

        v.              07 CV. 6304 (KMK)

VILLAGE OF POMONA,

              Defendant.
------------------------------------x
                U.S. Courthouse
                White Plains, N.Y.
                April 27, 2015
                10:50 a.m.

Before:    HON. KENNETH M. KARAS,
               United States District Judge


APPEARANCES

JOHN G. STEPANOVICH, Esq.
516 Baylor Court
Chesapeake, VA  23320
        and
SAVAD CHURGIN
BY:  PAUL SAVAD, Esq.
55 Old Turnpike Road, Suite 209
Nanuet, N.Y.  10954
Attorneys for Plaintiff

ROMAN P. STORZER, Esq.
       and
ROBINSON & COLE, LLP
BY:  JOHN F.X. PELOSO, JR., Esq.
    ANDREA NAPP, Esq.
1055 Washington Boulevard
Stamford, CT  06901
Attorneys for Defendant

Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter

```
 1              THE CLERK:  Congregation Rabbinical College of
 2   Tartikov v. Village of Pomona, et al., 07 CV. 6304.  Counsel,
 3   please state your appearances.
 4              MR. STEPANOVICH:  John Stepanovich on behalf of the
 5   Plaintiffs.
 6              MR. SAVAD:  Paul Savad on behalf of the Plaintiff.
 7              THE COURT:  Good morning to you both.
 8              MS. NAPP:  Andrea Donovan Napp, Robinson & Cole, on
 9   behalf of the Defendants.
10              MR. PELOSO:  John Peloso, Robinson & Cole, on behalf
11   of the Defendants.
12              THE COURT:  Good morning.  Please be seated.
13              So, we are here because Plaintiffs want to file a
14   Rule 37 motion for sanctions because of some newly discovered
15   communications.
16              What Defendants say -- Miss Napp, you say that
17   Defendants dispute the allegations and characterizations
18   contained in Plaintiff's letters -- letter.  Specifically,
19   Defendants deny any discovery misconduct and disagree that
20   they have engaged in blatant bad faith destruction of evidence
21   or a deliberate pattern of deliberate deceit and spoliation or
22   that the City Mayor and Trustee actively conspired to conceal
23   the post by taking it down.  Can you elaborate on that?
24              What exactly are you disputing that's in Plaintiff's
25   letter of March 26th?
```

1          MS. NAPP:  Well, Your Honor, Defendants are not
2  disputing the facts that Plaintiffs have set forth in their
3  letter.  It does appear that there was a text exchange between
4  the sitting Mayor and a member of the Board of Trustees in
5  which the Mayor told the Trustee to remove the Facebook post
6  and that post was deleted.
7          THE COURT:  So, there's a Facebook posting that's
8  deleted --
9          MS. NAPP:  Yes.
10         THE COURT:  -- and there is texts between the Mayor
11 and the Trustee.
12         MS. NAPP:  Yes, Your Honor.
13         THE COURT:  Okay.  So, that's not in dispute?
14         MS. NAPP:  No.
15         THE COURT:  Okay.
16         MS. NAPP:  What is in dispute, Your Honor, is that
17 this is a situation that rises to the level that is
18 appropriate for sanctions.  This is an isolated -- to my
19 knowledge, based on my investigation -- our investigation,
20 this is an isolated incident involving this singular
21 communication in this singular Facebook post.
22         Defendants dispute that there has been a pattern of
23 bad faith conduct, deception, or any of the other
24 characterizations contained in Plaintiff's letter.
25         Moreover, Defendants dispute that this particular

1  communication or Facebook post are at all relevant to this
2  matter, which is limited -- the discovery of which is limited
3  by Judge Yanthis's discovery order from October 2013, I
4  believe, in which he cut off discovery post-2007 for anything
5  that did not relate to the impact of the local laws, the
6  effect of the local laws, or the governmental interest of the
7  local laws at issue.
8          This particular Facebook post, based on the
9  information that is available to us, appears to have nothing
10 to do with either of those factors and therefore isn't
11 relevant and doesn't even come into play in this matter.
12         THE COURT:  So, it postdates the deadline that Judge
13 Yanthis had imposed, because it didn't relate to the subject
14 matter or that deadline didn't apply?
15         MS. NAPP:  Yes, Your Honor.
16         THE COURT:  Okay.  All right.  Anything else you
17 want to say?
18         MS. NAPP:  If you will give me a minute, Your Honor.
19         THE COURT:  Sure, take your time.  Since you all
20 were early, you get to take as much time as you want.
21         MS. NAPP:  Your Honor, I would just reiterate that I
22 don't -- that this is not the type of conduct that the case
23 law supporting sanctions goes to.  This is a singular isolated
24 incident, and there's been no other facts to indicate that
25 Defendants have engaged in a pattern, as Plaintiffs have

1   alleged.

2        THE COURT: Okay. I don't know who wants to speak
3  on behalf of the Plaintiff.

4        MR. STEPANOVICH: Your Honor, John Stepanovich.

5        THE COURT: Yes, Mr. Stepanovich.

6        MR. STEPANOVICH: Well, we disagree, obviously, and
7  that's not the law.

8        Your Honor, we have a sitting Mayor, Brett Yagel, a
9  sitting Mayor of the Village of Pomona, who tells at the time
10  a sitting Trustee, basically, "What are you, crazy? You're
11  trying to blow this case? Their lawyers are going to look for
12  everything and use everything against us, and, oh, by the way,
13  Judge Karas is watching this case." So they -- they thought
14  it was relevant and we believe it's relevant, Your Honor, for
15  three different reasons:

16        One, it's relevant because it goes to
17  discrimination. It's relevant because under Westchester Day
18  School, establishing the substantial burden, in order to do
19  that, whether or not there is a significant uncertainty in
20  getting a zone text amendment.

21        Defendants have said all along that there is no
22  substantial burden, because you can just apply for a zone text
23  amendment, but Westchester Day School addresses that issue.
24  Because if in fact -- and it is a factual question as to
25  whether or not we could ever get that zone text changed,

1    that's a factual question, and their evidence, this evidence
2    of discrimination is relevant.
3            THE COURT:  Right.  So, your argument is, is that,
4    even statements by relevant parties that postdate the events
5    that are at the heart of the case are relevant to that, that
6    factor.  But, then, what do we do with Judge Yanthis's
7    discovery ruling?
8            MR. STEPANOVICH:  We disagree with that, Your Honor.
9            THE COURT:  Okay.
10           MR. STEPANOVICH:  We don't think that's what Judge
11   Yanthis -- we know that's not what Judge Yanthis said.
12           Judge Yanthis, like most -- all magistrates, said,
13   "go back and work it out, and if you have a problem, come and
14   see us."  They produced post-2007 documents.  They produced
15   post-2007 e-mail posts by Rita Louie, by this woman, by this
16   Trustee.  So, of course, we believe that they lived up to
17   their obligation to preserve electronically-stored information
18   and produce it.  So, they've produced it.
19           So, Judge Yanthis, in our opinion, and we think it's
20   clear from his order, didn't impose some clear bright line
21   cutoff.  That's not what he did.
22           So, in fact, what, what happened, they produced it,
23   we -- post-2007, we relied on that production, that, in fact,
24   the Defendants had turned over this information to their
25   counsel and the counsel produced it to us.  So --

1          THE COURT:  And I think to be clear, and I think --
2   I don't think you suggest otherwise, this is an issue where
3   your concern is about the conduct of the Mayor and the
4   Trustee, not counsel, obviously.
5          MR. STEPANOVICH:  Oh.  Let me be absolutely clear --
6          THE COURT:  Okay.
7          MR. STEPANOVICH:  -- no question.  Not for a second
8   do we believe --
9          THE COURT:  Okay.
10         MR. STEPANOVICH:  -- that counsel had anything at
11  all to do.  In fact, counsel wrote a letter to their clients
12  in August of 2007 saying preserve everything, and we were
13  under the impression, and I'm sure counsel was too, that their
14  clients did preserve this information.
15         THE COURT:  Okay.
16         MR. STEPANOVICH:  So, yes, absolutely clear on that,
17  Your Honor.  The -- and, so, what do we have?
18         I mean, we've got -- our Complaint sets this out.
19  We have Brett Yagel and Rita Louie, two officials who we have
20  alleged, Your Honor, and I think the evidence would bear this
21  out, have told the public, "be careful what you say out there.
22  Be careful, watch these discriminatory statements.  Be careful
23  what you say."  These two individuals, these two Trustees have
24  said that in the past.  And, so, what do we have?
25         There's no doubt, Your Honor, that the destruction

Sue Ghorayeb, Official Court Reporter

```
 1    of this evidence was intentional.  They destroyed this
 2    evidence so that they wouldn't blow this case.  As Mayor Yagel
 3    said, "What are you trying to do, jeopardize this case."
 4              So, there's no question that there was a culpability
 5    here, there's no question that the evidence was relevant, and,
 6    Your Honor, what they are trying to do is keep us and keep you
 7    from seeing the evidence that proves our case.
 8              THE COURT:  Okay.
 9              MS. NAPP:  Well, obviously, we disagree, and there
10    is no intention to keep this Court or to keep Plaintiffs from
11    seeing the evidence relating to this case, and that's just the
12    point, Your Honor.  This particular piece of material doesn't
13    go to discrimination, it doesn't go to substantial burden, it
14    goes to Mayor Yagel being upset about this litigation and
15    reacting in the moment.  It doesn't go to discrimination.  It
16    doesn't go to substantial burden.  It's an understandable, if
17    perhaps ill-advised, reaction to the circumstances.
18              To the extent that counsel has argued that this does
19    relate to discrimination, that discrimination relates to the
20    four local laws at issue here, which were enacted between 2001
21    and 2007, that's the time frame that's involved here.  This
22    incident happened in 2013, after the parties had been
23    entrenched in litigation for several years.  Any sort of
24    discriminatory animus that may or may not have been manifested
25    at the time, and Defendants do not concede that this post had
```

1   anything to do with discrimination, doesn't relate to the four
2   local laws at issue here.
3          As to the fact that Defendants did produce certain
4   materials postdating 2007, yes, we did.  In accordance with
5   Judge Yanthis's order, we produced documents that related to
6   the impact, implementation, or compelling governmental
7   interests of the four local laws at issue.
8          THE COURT:  But doesn't implementation include
9   potentially any requests for variances?
10         MS. NAPP:  Your Honor, first of all, I don't think
11  that's what that issue -- I mean, the particular post at
12  issue, the Facebook post that was deleted --
13         THE COURT:  Put aside --
14         MS. NAPP:  Sure.
15         THE COURT:  Let's just talk about -- put aside the
16  post for a second.
17         MS. NAPP:  Yes.
18         THE COURT:  If you are obligated -- you have an
19  ongoing discovery obligation to share information that relates
20  to implementation --
21         MS. NAPP:  Yes.
22         THE COURT:  -- then why doesn't that relate to any
23  potential requests for any variances or changes, zone changes?
24         I don't understand.  You know, if that's going to be
25  part of your defense, as counsel says, then, then that would

1   include anything that would relate to that aspect of
2   implementation.
3           MS. NAPP: Your Honor, I don't want -- I don't -- I
4   want to answer the question you asked me, so forgive me if
5   I'm --
6           THE COURT: Let's say, let's say instead Louie
7   posted something saying, "you know, you know, we've argued
8   that, you know, they could always just come back and ask for,
9   you know, either a variance or some kind of a zoning change.
10  There's no way in hell we're going to give them that." That
11  would be relevant to implementation, would it not?
12          MS. NAPP: Your Honor, likely. You know, I can't
13  concede that fully without thinking through what that post
14  actually says. But I don't --
15          THE COURT: I just said what it says. I just said
16  what it says. It's a hypothetical post.
17          MS. NAPP: Yes, Your Honor, but the post at issue
18  here had nothing to do with text amendments.
19          THE COURT: That's not my question. That would be
20  related to implementation, right?
21          MS. NAPP: I can't answer that, Your Honor.
22          THE COURT: Okay. All right. Anything else you
23  want to say on this point?
24          MS. NAPP: Nothing else, Your Honor.
25          THE COURT: Okay. Did you want to say anything

Sue Ghorayeb, Official Court Reporter

11

1  else, counsel?
2           I mean, I take it, you think the answer to my
3  question is, of course, that would be relevant to
4  implementation?
5           MR. STEPANOVICH: Oh, absolutely, and also, beyond
6  that, Your Honor, it goes to whether or not the asserted
7  interest that the Village puts forth was a pretext. So --
8           THE COURT: Right. It goes to motive --
9           MR. STEPANOVICH: It goes to motive.
10          THE COURT: -- as to how the law would be
11 implemented.
12          MR. STEPANOVICH: Exactly, and how the law would be
13 implemented. And as counsel indicates, she's not disputing
14 the facts. There is nothing to characterize. Mayor Yagel was
15 furious, and it's clear the reason why he was furious, because
16 he thought this text, this Facebook post would blow this case.
17          And, oh, by the way, this is just one thing, one
18 post, one piece of evidence that has been discovered. Who
19 knows what slipped through the cracks, what other evidence is
20 out there. We are entitled to the evidence, Your Honor. We
21 are asking this Court to allow us to brief and file our motion
22 for sanctions.
23          THE COURT: All right. I'm going to let you do
24 that. You know, it's -- I can't say that it is so obviously
25 outside the boundaries of Judge Yanthis's order, nor can I say

```
 1   that it's irrelevant, and I certainly -- on the other hand, I
 2   don't know what, if any, sanctions should be imposed, but it's
 3   troubling enough to merit further briefing by both sides.
 4            So, I guess the question to counsel is:  When would
 5   you like to get your papers in by?
 6            MR. STEPANOVICH:  Your Honor, I have -- we would
 7   propose the motion will be made by May 27th.
 8            THE COURT:  Okay.
 9            MR. STEPANOVICH:  Because our current deadline for
10   briefing --
11            THE COURT:  I know.  You're very busy otherwise.
12            MR. STEPANOVICH:  May 27th.  Opposition date June
13   10th.  Reply date June 17th.
14            MS. NAPP:  Your Honor, we would request some
15   additional time for the opposition brief.
16            THE COURT:  All right.  So, May 27.  How much time
17   would you like?
18            So, June 10 is two weeks.  You want three weeks?
19            MS. NAPP:  I would like four, if Your Honor would --
20            THE COURT:  All right.  I'll give you four.
21            So, May 27, June 24.  And, then, how much time for
22   the reply?  You want two weeks instead of a week?
23            MR. STEPANOVICH:  That will be fine, Your Honor.
24            THE COURT:  July 8th.  And if that's going to ruin
25   your 4th of July weekend, you let me know and I'll give you
```

Sue Ghorayeb, Official Court Reporter

```
 1   more time.
 2              MR. STEPANOVICH:  Thank you, Your Honor.
 3              THE COURT:  And, you know, look, there is any number
 4   of ways this can go in terms of sanctions.  I mean, you know,
 5   whether it's, you know, the home run or if it's a stand-up
 6   double, I mean, including whether or not you get another shot
 7   at deposing these folks to see if there is anything else.
 8   I'll leave it up to you.
 9              MR. STEPANOVICH:  Thank you, Your Honor.
10              THE COURT:  Okay.  All right.  Anything else?
11              MR. STEPANOVICH:  Nothing on behalf of Plaintiffs.
12              MS. NAPP:  Nothing from Defendants, Your Honor.
13              THE COURT:  All right.  Have a good day.
14              MS. NAPP:  Thank you.
15              (Case adjourned)
16
17
18
19
20
21
22
23
24
25
```

Sue Ghorayeb,   Official Court Reporter