UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CONGREGATION RABBINICAL COLLEGE
OF TARTIKOV, INC., et al.,

                   Plaintiffs,

    -v-

VILLAGE OF POMONA, et al.,

                   Defendants.

Case No. 07-CV-6304 (KMK)

OPINION & ORDER

---

Appearances:

Paul Savad, Esq.
Donna C. Sobel, Esq.
Savad │ Churgin
Nanuet, NY
*Counsel for Plaintiffs*

Roman P. Storzer, Esq.
Storzer & Greene, P.L.L.C.
Washington, D.C.
*Counsel for Plaintiffs*

John G. Stepanovich, Esq.
Stepanovich Law, PLC
Chesapeake, VA
*Counsel for Plaintiffs*

Andrea Donovan Napp, Esq.
Robinson & Cole LLP
Hartford, CT
*Counsel for Defendants*

Marci A. Hamilton, Esq.
The Law Office of Marci Hamilton
Washington Crossing, PA
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

In an Opinion & Order dated September 29, 2015 (the "Opinion"), the Court granted Plaintiffs' Motion for Sanctions due to the spoliation of evidence by Defendants. (Dkt. No. 207.) Presently before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs Due to Spoliation of Evidence ("Motion"), pursuant to Federal Rule of Civil Procedure 37. (Dkt. No. 213.) For the reasons explained herein, the Motion is granted in part and denied in part.

## I.  Background

Assuming the Parties' familiarity with the background of this case, as discussed in the Opinion, the Court will briefly summarize only those facts most relevant to resolving the instant Motion.

In this Action, Plaintiffs challenge as unlawful certain zoning and environmental ordinances enacted by Defendant Village of Pomona. (*See* Dkt. No. 27.) Following discovery, on April 27, 2015, the Court held a pre-motion conference on Plaintiffs' putative motion for sanctions for spoliation of evidence. (*See* Dkt. (minute entry for April, 27, 2015).) Pursuant to a Scheduling Order of the same date, (Dkt. No. 185), Plaintiffs filed their Motion for Sanctions and associated documents on June 3, 2015, (Dkt. Nos. 195–97). Plaintiffs requested that the Court sanction Defendants for destroying a Facebook post (the "Facebook Post") written by Defendant Rita Louie ("Louie") and related text messages between Defendant Brett Yagel and Louie, and for failing to produce "the non-destroyed portion of those texts," which Plaintiffs alleged contained relevant evidence. (*See* Pls.' Mem. of Law in Supp. of Pls.' Mot. for Sanctions 2 (Dkt. No. 196).) Defendants filed their opposition papers on July 1, 2015, (Dkt. Nos. 200–04), and Plaintiffs filed their reply on July 15, 2015, (Dkt. No. 205).

2

In the Opinion, the Court found that "this [was] the rare case where bad faith, and a clear intent to deprive Plaintiffs of the evidence at issue, is sufficiently clear from the face of the record." (Opinion & Order ("Opinion") 38 (Dkt. No. 207).) Accordingly, the Court imposed an adverse inference sanction and ordered that Defendants pay the attorneys' fees and costs incurred by Plaintiffs in connection with their Motion for Sanctions. (*See id.* at 44–45.)

On October 29, 2015, Plaintiffs filed the instant Motion and supporting papers, seeking an order for attorneys' fees and costs due and payable to Savad Churgin, Stepanovich Law, PLC, and Storzer & Greene, P.L.L.C. (Dkt. Nos. 213–19.) Defendants filed their opposition on November 16, 2015. (Dkt. No. 227.)

## II.  Discussion

### A.  Applicable Law

A district court has "considerable discretion" in determining what constitutes a reasonable fee award. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The "presumptively reasonable fee" is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks omitted); *see also Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (same). Ultimately, "[t]he presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Beastie Boys*, 112 F. Supp. 3d at 48 (some internal quotation marks omitted) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). In resolving what a reasonable client would pay, the Court must consider the "*Johnson* factors," namely:

3

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

The party seeking attorney's fees "bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *Beastie Boys*, 112 F. Supp. 3d at 48 (internal quotation marks omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (explaining that the fee applicant must submit "evidence supporting the hours worked and rates claimed"). Courts are to exclude requested hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Palmer v. Cty. of Nassau*, 977 F. Supp. 2d 161, 170 (E.D.N.Y. 2013) (same). Additionally, "[a]ttorney's fees must be reasonable in terms of the circumstances of the particular case." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999). "There is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." *Beastie Boys*, 112 F. Supp. 3d at 48 (alteration and internal quotation marks omitted).

### B.  Attorneys' Fees

Plaintiffs seek $63,406.15 in attorneys' fees incurred in connection with Defendants' spoliation of evidence. (*See* Pls.' Mem. of Law in Supp. of Pls.' Mot. for Attorneys' Fees and Costs ("Pls.' Mem.") 1 (Dkt. No. 214).)

4

### 1. Reasonableness of Hourly Rate

A reasonable hourly rate is based on "the [current] prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012); *see also McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (explaining that a reasonable hourly rate is one in line with rates "prevailing . . . in the community for similar services by lawyers of reasonably comparable skill, expertise[,] and reputation" (internal quotation marks omitted)). The "court may determine the reasonable hourly rate by relying both on its own knowledge of comparable rates charged by lawyers in the district" and "on evidence proffered by the parties." *Adorno v. Port Auth.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (internal quotation marks omitted), *reconsideration granted in part*, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010). Ideally, included in the fee applicant's submissions should be affidavits providing information as to the credentials of each attorney seeking reimbursement and an affidavit by a disinterested local practitioner attesting to the relevant prevailing market rates. *See McDonald*, 450 F.3d at 97 n.5.

As co-counsel, all attorneys from the firms of Savad Churgin, Stepanovich Law, and Storzer & Greene have billed Plaintiffs at a blended rate of $375 per hour, regardless of seniority. (*See* Decl. of Paul Savad ("Savad Decl.") ¶ 20 (Dkt. No. 215); Decl. of Roman Storzer ("Storzer Decl.") ¶ 6 (Dkt. No. 217); Decl. of John G. Stepanovich ("Stepanovich Decl.") ¶ 12 (Dkt. No. 218); *cf.* Savad Decl. Ex. A.)[1] With regard to this requested hourly rate, Plaintiffs have made a number of submissions, including affidavits from the four attorneys seeking

---

[1] For Savad Churgin, that rate has been in place since October 2007 and has not been raised over the past nine years. (*See* Savad Decl. ¶ 20.)

5

reimbursement, Defendants' retainer agreements with their own counsel, and an affidavit by a disinterested local practitioner.

As for credentials, Paul Savad ("Savad") is a member of Savad Churgin and has been practicing law for 49 years in the areas of complex federal and state litigation, including matters of religious freedom, civil rights, and New York zoning and land use. (Savad Decl. ¶¶ 1, 6, 10.) A New-York based lawyer, (*see id.* ¶¶ 1, 6), he has represented Plaintiffs since 2004 when Plaintiff Congregation Rabbinical College of Tartikov purchased the property underlying the dispute in this case, (*id.* ¶ 11). Donna C. Sobel ("Sobel") also is an attorney with Savad Churgin. (Decl. of Donna C. Sobel ("Sobel Decl.") ¶ 1 (Dkt. No. 216).) She has been practicing complex federal litigation for 14 years. (*Id.* ¶¶ 5–7.)

Roman P. Storzer ("Storzer"), an out-of-district attorney with Storzer & Greene, has significant experience with respect to religious rights litigation and specifically RLUIPA cases. (Storzer Decl. ¶¶ 1, 3–4.) After serving as Director of Litigation for the nonprofit organization The Becket Fund for Religious Liberty, he subsequently has represented many religious organizations in such matters in private practice since 2004. (*Id.* ¶ 4.)

John G. Stepanovich ("Stepanovich") is an out-of-district attorney with Stepanovich Law who has been practicing complex federal religious freedom and civil rights litigation for 20 years. (Stepanovich Decl. ¶¶ 1, 3.) He previously served as Deputy Chief Counsel, Senior Counsel, and Director of Operations of The American Center for Law and Justice, an international public interest civil rights legal organization specializing in religious liberties litigation. (*Id.* ¶ 4.)

By way of comparison, the $375 hourly rate charged by Savad, Stepanovich, and Storzer falls below that found to be reasonable for attorneys of comparable experience in complex

6

litigation in the Southern District of New York. *See, e.g.*, *Coakley v. Webb*, No. 14-CV-8438, 2016 WL 1047079, at *6 (S.D.N.Y. Mar. 10, 2016) (concluding "that a $575 hourly rate credits the extensive experience and qualifications of [the attorneys seeking reimbursement]"); *Munoz v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11-CV-7037, 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014) (finding $400 per hour to be a reasonable rate for an experienced litigator with nearly 20 years of experience), *aff'd*, 607 F. App'x 85 (2d Cir. 2015); *LV v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) (finding "$600 [to be] a reasonable rate" for two senior lawyers) *Adorno*, 685 F. Supp. 2d at 513 ("A rate of $550 is . . . consistent with rates awarded in this district for experienced civil rights lawyers."). The same is true for Sobel. *See, e.g.*, *LV*, 700 F. Supp. 2d at 519 (reviewing rate for an attorney with 10 years of experience and finding $375 per hour "consistent with rates recently awarded to comparably experienced lawyers in this district"); *Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08-CV-5458, 2009 WL 2482134, at *4 (S.D.N.Y. Aug. 13, 2009) (finding "a rate of $400 per hour . . . reasonable" for a litigator with 13 years of experience).[2]

    Moreover, as set forth in the declaration of Russell M. Yankwitt, a local practitioner without interest in the present case, (*see* Decl. of Russell M. Yankwitt ("Yankwitt Decl.") ¶¶ 4, 6–7), the requested rate is actually lower than the prevailing hourly rates charged for legal services rendered in comparable cases by experienced federal court litigators, (*id.* ¶ 10). In fact, the blended hourly rate of $375 is the same rate billed to Defendants by their litigation counsel, Robinson & Cole, in 2007 and 2008, (Savad Decl. ¶ 21; *see also id.* Ex. I), and well below the $700 per hour that Defendants' RLUIPA counsel, Marci Hamilton, charges Defendants, (Savad

---

[2] Notably, Defendants do not object to the blended rate as a concept, and nor do they object to the particular rate charged by Plaintiffs' counsel. (*See generally* Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Attorneys' Fees and Costs ("Defs.' Opp'n") (Dkt. No. 227).)

Decl. ¶ 22; *see also id.* Ex. J).[3] The requested rate is also lower than that billed by Plaintiffs' counsel to some other clients in similar matters. (*See* Savad ¶ 18; Sobel ¶ 8; Storzer ¶ 6.)

Finding no reason to question the reasonableness of the requested rate in light of counsels' extensive experience and the prevailing rates in the Southern District of New York, the Court will calculate the presumptively reasonable fee based off the hourly rate of $375. *See Makinen v. City of N.Y.*, No. 11-CV-7535, 2016 WL 1451543, at *3 (S.D.N.Y. Apr. 12, 2016) (calculating "the presumptively reasonable fee based off the rates requested" in the absence of any challenge to the general reasonableness of the billing rates); *Balu v. City of N.Y.*, No. 12-CV-1071, 2016 WL 884666, at *5 (S.D.N.Y. Mar. 8, 2016) (explaining that "the [c]ourt will not adjust the rate sought" because the defendants "do not challenge the reasonableness of the hourly rate [the plaintiff's attorney] seeks").

### 2. Reasonableness of Hours Requested

The fee applicant also bears the burden of demonstrating the number of hours expended and the type of work performed through contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "A court evaluating the reasonableness of the number of hours claimed must examine the attorney's records that detail the time expended," *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830, 2012 WL 5177491, at *4 (S.D.N.Y. Oct. 19, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013), but must also check those

---

[3] Though Plaintiffs presume that "Robinson & Cole currently charges more because the retainer provided that after the end of 2008 'the blended rate will be adjusted consistent with rate changes,'" (Pls.' Mem. 6–7 (quoting Savad Decl. Ex. I)), the Court does not consider such speculation in resolving the instant Motion, *see Farbotko v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005) ("[T]he fee applicant has the burden of showing by *satisfactory evidence*—in addition to the attorney's own affidavits—that the requested hourly rates are the prevailing market rates." (emphasis added) (internal quotation marks omitted)).

8

records against "its own familiarity with the case and its experience generally," *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985). In determining whether hours should be excluded, the inquiry is not based on what effort appears necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Coakley*, 2016 WL 1047079, at *6 (same). A court may apply an across-the-board reduction to effectuate the reasonable imposition of fees. *See, e.g.*, *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 389 (S.D.N.Y. 2000) ("[R]ather than reducing a certain number of unreasonably billed hours, the [c]ourt will make an across-the-board percentage cut in [the] plaintiffs' fee award as is necessary and appropriate."). For example, "[c]ourts look unfavorably on block billing and vagueness in billing because imprecise entries limit [their] ability to decipher whether the time expended has been reasonable." *Matteo*, 2012 WL 5177491, at *4.

In support of the instant Motion, Plaintiffs have submitted records indicating that counsel expended approximately 173 hours in connection with their Motion for Sanctions. (*See* Savad Decl. Ex. A.) Defendants, in response, set forth a number of grounds on which they contend the requested fees should be reduced. (*See* Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Attorneys' Fees and Costs ("Defs.' Opp'n") 3–11 (Dkt. No. 227).)

### a. Excessive Hours

First, Defendants argue that the "hours expended by Plaintiffs in connection with this narrow discovery issue are excessive." (*Id.* at 4.) Although Plaintiffs contend that "[t]his is a complex case," and "[t]he spoliation motion itself was a complex motion," (Pls.' Mem. 10), deletion of a Facebook post and a handful of related text messages was the sole factual issue relevant to the Motion for Sanctions, (*see* Dkt. No. 195). Nonetheless, the submitted time

9

records indicate that Plaintiffs' counsel spent over 80 hours drafting the motion and reply brief, over 20 hours on research and fact review relating to the spoliation issue, another 36 hours preparing for and attending a pre-motion conference, and approximately 16 hours conferring with one another. (*See* Savad Decl. Exs. B, C, D.)[4] The limited nature of the issue leads the Court to find the number of claimed hours excessive. *See Matteo*, 2012 WL 5177491, at *4–5 (reducing claimed hours for spoliation motion and related discovery where counsel "expended an unreasonable amount of time" on the "limited issue" of the destruction of one video); *Whitney v. Jetblue Airways Corp.*, No. 07-CV-1397, 2009 WL 4929274, at *4, *9 (E.D.N.Y. Dec. 21, 2009) (reducing fees for litigation surrounding a spoliation issue because, in part, the claimed hours were "excessive in light of the nature of the issue" involving the disposal of a single document); *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-CV-6198, 2008 WL 1899938, at *4 (S.D.N.Y. Apr. 29, 2008) (reducing claimed hours by 33% because "counsel devoted far more hours to the sanctions issue than was justified by the work product").

Defendants further contend that the claimed hours include "considerable time spent reviewing irrelevant discovery." (Defs.' Opp'n 6.) According to Plaintiffs, it was "necessary for Plaintiffs' counsel to cull through the discovery in order to present the Court with evidence of Defendants' other failures to properly preserve evidence." (Pls.' Mem. 12.) However, in the Opinion, this Court deemed "consideration of the alleged 'pattern' of misconduct unnecessary in determining the appropriate sanction for the primary misconduct alleged in Plaintiffs' Motion

---

[4] These figures represent a rough approximate based on the Court's review of the time records submitted by Plaintiffs. More exact calculations were impossible in light of certain instances of vague descriptions and block billing.

[for Sanctions].ced" (Opinion 42 n.28.)[5]  In other words, notwithstanding Defendants' representation that the destruction of the Facebook Post was an "isolated incident," (*see* Savad Decl. Ex. F, at 3–5), Plaintiffs' efforts to prove other failures to preserve evidence had no bearing on the relevant determination by the Court.

While the costs of fruitless efforts should not be borne by Defendants, *see Ruggiero v. Krzeminski*, 928 F.2d 558, 564 (2d Cir. 1991) (affirming reduction in claimed hours based on "irrelevant research"); *Penta v. Costco Wholesale Corp.*, No. 14-CV-3587, 2016 WL 1171612, at *8 (E.D.N.Y. Mar. 25, 2016) (deeming claimed hours to be excessive where "much of the time was spent" on research "not relevant to the discovery disputes that were at the center of th[e] [sanctions] motion"), Plaintiffs also assert that review of "the voluminous discovery" was necessary "to prove that Defendants' arguments were contrary to the fact that they *had produced* documents similar to the destroyed document," (Pls.' Mem. 11).  In finding "that sanctions of some type [were] warranted for Defendants['] destruction of—and failure to produce—this evidence," the Court noted, inter alia, that "Defendants previously produced a Facebook post from the day after the offending post," citing to an exhibit submitted by Plaintiffs.  (Opinion 40.)  Thus, the Court cannot say that the "time culling through produced documents and discovery responses" was unnecessary for Plaintiffs' Motion for Sanctions.  (*See* Pls.' Mem. 13.)

### b.  Duplicative Entries

Further challenging Plaintiffs' fee request, Defendants allege "a large amount of duplicative time and effort."  (Defs.' Opp'n 8.)  Although Plaintiffs' counsel made efforts to avoid duplicative work, (*see, e.g.*, Savad Decl. ¶ 26 (averring that Savad did not bill for his

---

[5] Moreover, Plaintiffs have given no reason to believe that there were other instances of suppressed or destroyed evidence.

11

participation in conferences regarding the Motion for Sanctions or for his final review of the submissions in support of that motion); Stepanovich Decl. ¶ 14 (averring that Stepanovich did not bill for services "if less than .25 hours was spent on any task")), "duplication of effort" and "inefficiencies" arising from the co-counsel relationship were likely "inevitable, if unintentional," *LV*, 700 F. Supp. 2d at 525.

For example, the submitted records reveal that Savad, Sobel, Storzer, and Stepanovich spent approximately 16 hours conferring with one another, (*see* Savad Decl. Exs. B, C, D), yet it is not clear that such staffing was objectively necessary, *see Hop Hing Produces Inc. v. X & L Supermarket, Inc.*, No. 12-CV-1401, 2013 WL 1232919, at *7 (E.D.N.Y. Mar. 4, 2013) (reducing requested fees by 15% for, inter alia, "excessive time spent on conferences between attorneys"), *adopted by* 2013 WL 1232483 (E.D.N.Y. Mar. 27, 2013); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 515 (S.D.N.Y. 2011) (reducing fee award by 7% to account for, inter alia, "some duplicative billing for conferences" among attorneys); *Retained Realty, Inc. v. Spitzer*, 643 F. Supp. 2d 228, 241 (D. Conn. 2009) (reducing claimed hours "[w]here multiple attorneys . . . billed time for the same conference beyond what the court considers to be reasonable"). In addition, *three* attorneys, totaling over 20 hours of billed time, were all present at the pre-motion conference on April 27, 2015, (*see* Savad Decl. Exs. B, C, D), despite the fact that only Stepanovich addressed the Court, (*see* Savad Decl. F).[6] Notwithstanding the value of

---

[6] Of these hours, 11 cover Storzer's and Stepanovich's travel time to and from the pre-motion conference. (*See* Savad Decl. Exs. C, D.) As discussed in detail below, these travel expenses are not to be borne by Defendants. *See Dzugas-Smith v. Southold Union Free Sch. Dist.*, No. 07-CV-3760, 2010 WL 3852003, at *3 (E.D.N.Y. Sept. 27, 2010) (reducing fee award on the basis that "[t]here is no reason why [the] [d]efendants should incur greater liability simply because [the] [p]laintiffs inexplicably retained a[n] [out-of-district] attorney, when legions of competent . . . [d]istrict lawyers could have represented them"). The billing records indicate that Storzer and Stepanovich each charged one half of the hourly rate for the hours of travel. (*See*

collaboration, this, too, appears unnecessarily duplicative. *See Valley Hous. Ltd. P'ship v. City of Derby*, No. 06-CV-1319, 2012 WL 1077848, at *10 (D. Conn. Mar. 30, 2012) ("Notwithstanding the value of having the 'team' present for depositions and other major activities, such as oral argument, a minor deduction is warranted to account for the duplication."); *Sabatini v. Corning-Painted Post Area Sch. Dist.*, 190 F. Supp. 2d 509, 521 (W.D.N.Y. 2001) (finding the attendance of two attorneys at oral argument to constitute "duplication of effort warrant[ing] a modest reduction in the hours claimed"); *Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510, 521 (S.D.N.Y. 1994) (deeming the attendance of three attorneys at oral argument to constitute "duplicative efforts").[7] In recognition of these inefficiencies relating to a mere pre-motion conference, the Court finds that a reduction of hours is warranted.[8]

c.  Block Billing and Vague Entries

Lastly, Defendants contend that Plaintiffs' requested fees should be reduced due to "block billing" and overly vague billing descriptions. (*See* Defs.' Opp'n 9–11.) While it is "unnecessary for [fee applicants] to identify with precision the amount of hours allocated to each individual task," *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-CV-6198, 2009 WL

---

Savad Decl. Ex. C-1, at 6; Savad Decl. Ex. D.)  Accordingly, this Court will subtract $2,062.50, the product of 11 hours and $187.50, from the fee award.

[7] This is particularly true given Storzer's self-proclaimed role as co-counsel "focus[ed] on the federal and state constitutional and civil rights issues presented," (Storzer Decl. ¶ 5), and the pre-motion conference's limited purpose of addressing Plaintiffs' putative motion for sanctions for spoliation of evidence, (*see* Letter from Plaintiffs to Court (Mar. 26, 2015) (Dkt. No. 165)).

[8] The cited cases found a "modest" or "minor reduction" warranted as a result of duplicative efforts relating to oral argument. *See Valley Hous. Ltd. P'ship v*, 2012 WL 1077848, at *10; *Sabatini*, 190 F. Supp. 2d at 521. Here, Plaintiffs' counsel duplicated their efforts at a *pre-motion conference*. A more significant discount is thus in order.

72441, at *7 (S.D.N.Y. Jan. 7, 2009), attorneys seeking reimbursement "must provide enough information for the [c]ourt, and the adversary, to assess the reasonableness of the hours worked on each discrete project," *Themis Capital v. Dem. Rep. of Congo*, No. 09-CV-1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014), *reconsideration denied*, 2014 WL 4693680 (S.D.N.Y. Sept. 22, 2014). Though courts disfavor block billing in general, it "is most problematic where large amounts of time (e.g., five hours or more) are block billed," thereby "meaningfully cloud[ing] a reviewer's ability to determine the projects on which significant legal hours were spent." *Beastie Boys*, 112 F. Supp. 3d at 53 (italics omitted); *see also Abdell v. City of N.Y.*, No. 05-CV-8453, 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (finding block billing acceptable "for temporally short entries combining related tasks"); *Adorno*, 685 F. Supp. 2d at 515 ("While block-billing is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited as long as the [c]ourt can determine the reasonableness of the work performed." (internal quotation marks omitted)).

Here, the majority of the block-billed entries were for fewer than five hours. (*See* Savad Decl. Ex. B.)[9] Additionally, for the most part, the block-billed entries, particularly the longer ones, contain sufficient detail and specificity so as to afford reasonable confidence that the time billed was productively spent, even if it is impossible to reconstruct the precise amounts of time allocable to each specific task listed in the block entry. For example, on June 3, 2015, Sobel billed 6.75 hours for: "Revise and finalize spoliation memo of law, Savad Dec., exhibits for same and notice of motion; file and arrange for service of same." (*See* Savad Decl. Ex. B-2, at 17.) Such an entry, though block-billed, sufficiently enumerates the work completed in the

---

[9] Among Plaintiffs' three law firms, only the billing records for Savad Churgin include block billing. (*Compare* Savad Decl. Ex. B, *with* Savad Decl. Ex. C, *and* Savad Decl. Ex. D.)

designated amount of time and encompasses a series of related tasks.  *See U.S., ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12-CV-275, 2015 WL 1726474, at *3 (S.D.N.Y. Apr. 15, 2015) (finding "[t]he use of 'block billing' . . . perfectly reasonable" where "the specific tasks in each 'block' are described with sufficient detail and clarity to confirm the reasonableness of the work performed" (some internal quotation marks omitted)); *Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 3866090, at *6 (S.D.N.Y. Aug. 6, 2014) (declining to reduce fees based on block billing where the "entries [were] sufficiently detailed to convey to the reader the tasks for which [the attorneys] billed").  Thus, because the "commingling of activities within one time entry" does not "impede[] the [C]ourt's efforts to evaluate the reasonableness of any of the listed activities," *Berry v. Deutsche Bank Tr. Co. Am.*, 632 F. Supp. 2d 300, 306 (S.D.N.Y. 2009) (internal quotation marks omitted), the use of block billing by some of Plaintiffs' attorneys does not provide a basis for reducing the fee award here.

On the other hand, the vague nature of many of the entries throughout the records effectively prevents the Court, and Defendants, from independently assessing whether the time spent on each task was reasonable and necessary.  The billing records submitted by Plaintiffs are replete with examples of work identified in mere generalities, such as "Team Meeting, etc.," (Savad Decl. Ex. B-1, at 1), "Review spoliation facts," (Savad Decl. Ex. B-2, at 8), and "Work on Spoliation Issue," (Savad Decl. Ex. D).  Such vague descriptions are precisely the sort that courts have deemed impermissible in the context of fee awards.  *See, e.g.*, *Abeyta v. City of N.Y.*, No. 12-CV-5623, 2014 WL 929838, at *5 (S.D.N.Y. Mar. 7, 2014) (finding entries entitled "Trial Preparation" and "Supervision/Management" to be impermissibly vague), *aff'd*, 588 F. App'x 24 (2d Cir. 2014); *Barney v. Edison*, No. 99-CV-823, 2010 WL 8497627, at *3 (E.D.N.Y. Jan. 29, 2010) (concluding that "a reduction in the time expended [was] warranted" based on

vague billing like "Attorney Communication," "Communication," and "Research"), *adopted sub nom. Barney v. Consol. Edison Co.*, 2012 WL 911821 (E.D.N.Y. Mar. 16, 2012); *Rosso v. Pi Mgmt. Assocs., L.L.C.*, No. 02-CV-1702, 2006 WL 1227671, at *4 (S.D.N.Y. May 3, 2006) (reducing fee award for vague entries, such as "Review of documents," that prevented the court from determining "whether the attorney who performed the work spent his or her time effectively"); *Amato v. City of Saratoga Springs*, 991 F. Supp. 62, 65–66 (N.D.N.Y. 1998) (reducing fee award for vague entries, which included "review research," "review deposition transcripts," and "prepare deposition questions"). Therefore, in light of the vague nature of certain billing entries, the Court finds an across-the-board reduction to be warranted. *See Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592, 2013 WL 3965247, at *3 (S.D.N.Y. July 31, 2013) ("[A] court has discretion to impose an across-the-board reduction for vague billing entries that prevent the court from determining if the hours billed were excessive."); *cf. Abeyta*, 2014 WL 929838, at *5 ("[G]iven the vague nature of certain entries in the spreadsheet documenting the hours worked by [the] defendants' counsel, the [c]ourt hereby decreases the total number of hours for which compensation is sought by 10%."); *Wise v. Kelly*, 620 F. Supp. 2d 435, 452 (S.D.N.Y. 2008) (reducing fee award by 25% because certain entries were too vague to enable the court to assess their reasonableness).

### d. Aggregate Fee Reduction

Considering all of the above factors, the Court will impose a 30% reduction of the total number of hours for which compensation is sought. As noted, the Court is not to compensate counsel for "excessive, redundant, or otherwise unnecessary" hours, *Hensley*, 461 U.S. at 434, and "in sizing the appropriate reduction, the [C]ourt has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from [Plaintiffs']

fee application," *Beastie Boys*, 112 F. Supp. 3d at 57 (internal quotation marks omitted).  "It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04-CV-3600, 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005), *reconsideration denied*, 2009 WL 3816976 (S.D.N.Y. Nov. 10, 2009); *see also Beastie Boys*, 112 F. Supp. 3d at 57 ("Fee reductions around 30% are . . . common in this District to reflect considerations of whether work performed was necessary, leanly staffed, or properly billed.").

Such is the case here, where the factors most influential to the Court's determination were the excessive hours and vague entries.  After subtracting $2,062.50 from the requested $63,406.15 to eliminate unwarranted travel time by Stepanovich and Storzer, (*see supra* n.6), the 30% reduction leaves fees of $42,940.56 to be paid by Defendants.

C.  Costs

Plaintiffs also request $1,840.56 in costs, (*see* Pls.' Mem. 1), which consist of travel-related expenses and a transcript of the pre-motion conference, (*see id.* at 15 (citing Savad Decl. ¶ 30; *id.* Exs. A, B, C, D)).  Fee awards include "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks omitted).  While "[e]xpenditures for photocopies, postage, binding, filing, and travel are routinely recoverable," *Libaire v. Kaplan*, No. 06-CV-1500, 2011 WL 7114006, at *9 (E.D.N.Y. June 17, 2011), *adopted in part and modified in part by* 2012 WL 273080 (E.D.N.Y. Jan. 30, 2012); *see also Westport Ins. Corp. v. Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 605 (2d Cir. 2012) (describing "in-house duplication costs, telephone charges, meals, overtime, local transportation, postage, electronic legal research,

and messenger service" as "the sort of expenses that may ordinarily be recovered as part of a fee award" (internal quotation marks omitted)), "[t]ravel costs may be denied where a party chooses out-of-district attorneys," *Pall Corp. v. 3M Purification Inc.*, No. 03-CV-92, 2012 WL 1979297, at *8 (E.D.N.Y. June 1, 2012). Defendants underscore this latter point, challenging the costs requested by Plaintiffs on the basis that they should not be required to pay for the staffing decision necessitating Storzer's and Stepanovich's out-of-state travel to and from court. (*See* Defs.' Opp'n 9.)

The vast majority of Plaintiffs' attorneys' costs were incurred in relation to travel for the pre-motion conference before this Court on April 27, 2015; indeed, of the $1,840.56 requested, $1,740.66 covered Storzer's and Stepanovich's trips to White Plains. (*See* Savad Decl. Ex. C (listing $541.55 as Storzer's travel-related expenses for the pre-motion conference); Savad Decl. Ex. D (listing $1,199.11 as Stepanovich's travel-related expenses for the pre-motion conference); *cf.* Savad Decl. B-3 (listing $99.90 as the cost of the hearing transcript).) However, "the Second Circuit has instructed that defendants should not be penalized for a plaintiff's choice of out-of-district counsel, unless 'the case required special expertise beyond the competence of forum district law firms.'" *Dzugas-Smith v. Southold Union Free Sch. Dist.*, No. 07-CV-3760, 2010 WL 3852003, at *3 (E.D.N.Y. Sept. 27, 2010) (alteration omitted) (quoting *Simmons*, 575 F.3d at 175); *see also Makinen*, 2016 WL 1451543, at *8 ("Courts in this Circuit have routinely denied travel expenses for counsel where [a party] retained out-of-district counsel, particularly where out-of-district counsel charged rates similar to those charged in-district."). There is no reason why Defendants should incur greater liability simply because Plaintiffs retained out-of-district attorneys (notably, at the same rate as New York-based Savad Churgin) and insisted that *both* attend the pre-motion conference, despite the fact that Plaintiffs had retained competent

18

local counsel, (*see* Pls.' Mem. 4 ("Savad Churgin has extensive experience in complex federal and state litigation as well as in zoning and land use law. Savad Churgin . . . is the primary firm responsible for case strategy and for reviewing discovery in this [A]ction and synthesizing that information.")), who also appeared before the Court on April 27, 2015, (*see* Savad Decl. ¶ 26; *id.* Ex. B-1, at 1 (billing for Savad's "Federal Court Appearance re Spoliation" on April 27, 2015).)[10] Moreover, it bears mentioning once again that Storzer did not even speak at the pre-motion conference, (*see* Savad Decl. Ex. F), despite having made the trip from Washington, D.C. and incurring $541.55 in travel-related expenses, (*see* Savad Decl. Ex. C). While it was Stepanovich who did address the Court at that conference, (*see* Savad Decl. Ex. F), Plaintiffs have not demonstrated the necessity of his attendance, especially given the availability of Savad Churgin and the fact that the outcome of this case would not turn on a single pre-motion conference.[11]

Accordingly, the Court denies reimbursement for these travel-related expenses. *See Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 638 (S.D.N.Y. 2012) (awarding transcript costs but denying travel-related expenses that were "a result of [the] plaintiffs' choice to litigate the[ir] cases in the Southern District of New York while being represented by a firm based [in another state]"); *Concrete Flotation Sys., Inc. v. Tadco Constr. Corp.*, No. 07-CV-319, 2010 WL

---

[10] As discussed above, it was unnecessary and excessive for three attorneys, one from each of Plaintiffs' law firms, to attend the pre-motion conference regarding a discovery issue. This, alone, would merit a reduction in the compensable costs. *See Clarke v. Hudson Valley Fed. Credit Union*, No. 14-CV-5291, 2016 WL 884667, at *8 (S.D.N.Y. Mar. 8, 2016) (reducing "fees charged in relation to counsels' travel time" by 60% because "it was excessive and unnecessary for an attorney from each of [the plaintiff's] two law firms to travel [out-of-state] for the deposition").

[11] Indeed, it was Sobel, an attorney with Savad Churgin, who was "the person most familiar with the facts" and "performed a majority of the work on the spoliation motion." (Sobel Decl. ¶ 7.)

2539771, at *7 (E.D.N.Y. Mar. 15, 2010) (denying costs for airfare, meals, and lodging where there was "no reason these expenses needed [to] be incurred instead of using counsel in New York"), *adopted by* 2010 WL 2539661 (E.D.N.Y. June 17, 2010); *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963, 2009 WL 2568529, at *7 (E.D.N.Y. Aug. 5, 2009) (denying reimbursement of "travel expenses because it is not clear that out-of-state counsel's attendance was necessary at the proceedings, especially in light of the fact that [the] plaintiff had local counsel"), *adopted in part and modified in part by* 2009 WL 2568526 (E.D.N.Y. Aug. 19, 2009). The compensable costs thus amount to $99.90, the expense associated with obtaining the hearing transcript. *See Apolinario v. Luis Angie Deli Grocery Inc.*, No. 14-CV-2328, 2015 WL 4522984, at *4 (S.D.N.Y. July 27, 2015) (awarding transcript expenses); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 211–12 (E.D.N.Y. 2007) (reimbursing costs related to "deposition/hearing transcripts").

### III. Conclusion

For the reasons set forth above, Plaintiffs' Motion is granted in part and denied in part. Plaintiffs' counsel is hereby awarded attorneys' fees of $42,940.56 and costs of $99.90, for a total of $43,040.45. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 213.)

SO ORDERED.

Dated: May 25, 2016
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE