UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONGREGATION RABBINICAL COLLEGE
OF TARTIKOV, INC., RABBI MORDECHAI
BABAD, RABBI WOLF BRIEF, RABBI HERMEN
KAHANA, RABBI MEIR MARGULIS, RABBI
MEILECH MENCZER, RABBI JACOB
HERSHKOWITZ, RABBI CHAIM ROSENBERG,
and RABBI DAVID A. MENCZER,

                       Plaintiffs,

      -v-

VILLAGE OF POMONA, NY, BOARD OF
TRUSTEES OF THE VILLAGE OF POMONA, NY,
NICHOLAS SANDERSON, as Mayor, IAN BANKS,
ALMA SANDERS-ROMAN, RITA LOUIE, and
BRETT YAGEL, as Trustees and in their official
capacities,

                       Defendants.

No. 07-CV-6304 (KMK)

ORDER

KENNETH M. KARAS, District Judge:

       After having reviewed the Parties' submissions, the Court has accepted certain modifications to Plaintiffs' proposed judgment. These modifications are reflected in the attached copy of the letter from Plaintiffs' counsel discussing the Parties' disagreements. (*See* Letter from Paul Savad, Esq. to Court (Jan. 31, 2018) (Dkt. No. 339).) For each dispute listed, the Court has placed a check mark next to the version or argument it approves. To the extent there is confusion regarding the Court's markings, the Parties should file letters to that effect by February 12, 2018.

Plaintiffs are hereby directed to submit a revised proposed judgment incorporating these modifications by February 15, 2018.

SO ORDERED.

DATED:   February 7, 2018
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

# SAVAD CHURGIN, LLP
## ATTORNEYS AT LAW

Paul Savad
Joseph A. Churgin

Susan Cooper
Donna Sobel

Of Counsel:
Mark F. Goodfriend
Andrew Cohen
James McEnroe

55 OLD TURNPIKE ROAD – SUITE 209
(Rt. 59 & THRUWAY EXIT 14)
NANUET, NEW YORK 10954

(845) 624-3820

mail@savadchurgin.com
Fax: (845) 624-3821
website: SavadChugin.com

798 ROUTE 9, SUITE D1
FISHKILL, NY 12524

*All markings by KMK.*

*So Ordered.*
*[signature]*
*2/7/18*

January 31, 2018

*Via ECF*

Hon. Kenneth M. Karas, USDJ
United States District Court, Southern District of New York
300 Quarropas Street, Room 533
White Plains, New York 10601

Re.   *Congregation Rabbinical College of Tartikov et al. v. Village of Pomona, et al.*
      Case No. 07 CV 6304 (KMK)

Your Honor:

Plaintiffs submit this letter in response to Defendants' January 23, 2017 letter, as requested by the Court.

General Analysis

The fundamental difference between Plaintiffs' version of the proposed judgment and Defendants' version is the level of specificity. Plaintiffs believe that the more specific the provisions of the judgment are, the less likely it will be that the parties will end up in further court challenges. If the language is vague, there is more likelihood that the parties will end up in a dispute.

At this point, given the Court's findings of discriminatory motivation based on their past actions, Defendants are not entitled to a presumption of good faith in dealing with Plaintiffs' applications. Moreover, the proposed provisions are hardly onerous, but rather track existing state and local law or, in a few cases, are additional reasonable requirements intended to ensure an efficient application process. They are well within the Court's equitable power to prevent future discriminatory or burdensome actions.

"[T]he court possesses the equitable power, upon finding any unlawful discrimination, to 'eliminate the discriminatory effects of the past as well as bar like discrimination in the future,'"

1

*Rios v. Enter. Ass'n Steamfitters Local 638 of U. A.*, 501 F.2d 622, 629 (2d Cir. 1974) (quoting *Louisiana v. United States*, 380 U.S 145, 154, 85 S. Ct. 817, 822, 13 L. Ed. 2d 709 (1965)). "Though by no means unlimited, the power of the federal courts to remedy constitutional violations is broad and flexible." *LeBlanc-Sternberg v. Fletcher*, 104 F.3d 355 (2d Cir. 1996). Plaintiffs believe that it is appropriate for the Court to exercise those powers in this case of intentional discrimination.

Placing specific conditions under these circumstances is warranted. *See, e.g.,* Final Judgment, *Church of Our Savior v. City of Jacksonville Beach*, Civ. No. 13-1346 (M.D. Fla. May 19, 2015) (Dkt. #189) (attached as Exhibit A) (requiring City to take certain actions including preparing an access easement agreement, and that City will not charge fees for permits and inspections).

Such conditions should include reasonable time-frames so that Defendants cannot improperly delay or obstruct Tartikov's application, as they indicated they were inclined to do. (Trial Tr. 482:8-484:14, Trial Ex. 60, Trial Ex. 174). There are several points in the application processes where Defendants can delay or obstruct them. Such conditions imposing tome-frames are appropriate. *See, e.g.,* Judgment, *Chabad Lubavitch of Litchfield County Inc. v. Borough of Litchfield*, Civ. No. 09-1419 (D. Conn. Nov. 2, 2017) (Dkt. #326) (attached as Exhibit B) (requiring Historic District Commission to take action "within thirty days" and such mandatory injunction "is subject to the continued jurisdiction of this court").

It appears as if Defendants have taken the position that the Court's determination that there be no monitor equates to a Judgment that does not contain any terms or conditions other than the bare statement that the Challenged Laws are not enforceable. But again, Plaintiffs believe that such terms and conditions are necessary in order to have a path to compliance free of improper delay and obstruction. Just as a monetary judgment might reasonably contain payment terms, it is appropriate for this Judgment to contain terms outlining the terms and effect of the Court's Decision.

Defendants' Specific Objections and Plaintiffs' Reply

For ease of reference, below are the Defendants' specific responses and Plaintiffs' replies to the same. Plaintiffs have also attached a Revised Proposed Judgment and Mandatory Injunction which reflects Defendants' proposed changes to which Plaintiffs have agreed and proposed changes based on Defendants' statements.

**Case Caption:**

Defendants' Proposal:

Rabbis Royde and Neuman should be deleted from the caption as they are not parties to the case.

Plaintiffs' Response:

Plaintiffs do not object.

**Paragraph 2:**

Plaintiffs' Original Proposal:

That judgment is entered in favor of Plaintiffs Congregation Rabbinical College of Tartikov, Inc., Rabbi Mordechai Babad, Rabbi Wolf Brief, Rabbi Hermen Kahana, Rabbi Meir Margulis, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz, Rabbi Chaim Rosenberg, and Rabbi David A. Menczer (collectively "Plaintiffs") against the Defendants Village of Pomona, N.Y., the Board of Trustees of the Village of Pomona (collectively "Pomona"), Brett Yagel, Nicholas Sanderson, Ian Banks, Alma Sanders Roman, and Rita Louie (collectively "Defendants") on Counts I, III, IV, V, VI, X (Art. I §§ 3, 9, 11 of the New York State Constitution), XII and XIII of the Second Amended Complaint (Dkt. Nos. 28 and 28-2); and it is further:

Defendants' Response:

Plaintiffs define the Village and the Board as "Pomona" and the individual defendants as "Defendants." All parties should be defined as "Defendants." Further, the individual defendants were sued in their official capacities only. That should be stated in the Judgment.

Plaintiffs' Reply

Plaintiffs do not object. However, for accuracy, the change should be consistent throughout the Judgment, as set forth in Plaintiffs' Revised Proposed Judgment and Mandatory Injunction.

**Paragraphs 3-6:**

Plaintiffs' Original Proposal:

ORDERED that the Court finds and declares that Local Law No. 1 of 2001 is facially unconstitutional under the Free Exercise Clause and freedom of association doctrine of the First Amendment of the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, sections 3, 9, and 11 of the New York State Constitution, and violates the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc(a) and (b)(2), and the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617; and it is further:

ORDERED that the Court finds and declares that Local Law No. 5 of 2004 is facially unconstitutional under the Free Exercise Clause and freedom of association doctrine of the First Amendment of the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, sections 3, 9, and 11 of the New York State Constitution, and violates the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§

3

2000cc(a) and (b)(2), and the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617; and it is further:

ORDERED that the Court finds and declares that Local Law No. 1 of 2007 is facially unconstitutional under the Free Exercise Clause and freedom of association doctrine of the First Amendment of the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, sections 3, 9, and 11 of the New York State Constitution, and violates the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc(a) and (b)(2), and the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617; and it is further:

ORDERED that the Court finds and declares that Local Law No. 5 of 2007 is facially unconstitutional under the Free Exercise Clause and freedom of association doctrine of the First Amendment of the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, sections 3, 9, and 11 of the New York State Constitution, and violates the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc(a) and (b)(2), and the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617; and it is further:

Defendants' Response:

These four paragraphs each contain the same content. For efficiency, they should be reduced to a single paragraph. Further, said paragraph should indicate that each of the four laws was found to be facially neutral. (Decision at 91)

Plaintiffs' Reply:

Plaintiffs do not agree that this is necessary, however, they do not object.

**Paragraph 7:**

Plaintiffs' Original Proposal:

ORDERED that Pomona, its boards, agencies, officials, agents, employees and other bodies (collectively "the Village") are directed to process any and all applications for special permit, site plan approval, variances, architectural review, or other land use applications hereinafter filed by the Plaintiff Congregation Rabbinical College of Tartikov, Inc., without reference to the provisions of Local Law No. 1 of 2001, Local Law No. 5 of 2004, Local Law No. 1 of 2007 and/or Local Law No. 5 of 2007 without undue delay or religious discrimination; and it is further:

Defendants' Response

This paragraph should indicate that the "appropriate body" ("The onus is now on Plaintiffs to submit an application to the *appropriate body*") (Decision at 111) (emphasis added) be directed to process "any land use application." It is unnecessary to list the different types of applications that can be submitted. Further, the phrase "without undue delay or religious discrimination" should be deleted because, among other things, it is not supported by the Court's decision as to the appropriate remedy.

4

Plaintiffs' Reply:

Defendants' assertion that the phrase "without undue delay or religious discrimination" is not supported by the Court's decision ignores the fact the Court has specifically found that "Defendants passed the Challenged Laws with a discriminatory purpose" and that "Defendants passed the Challenged Laws to thwart the spread of the Orthodox/Hasidic Jewish community into the Village." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, No. 07-CV-6304 (KMK), 2017 WL 6206193 at *13, 16, __ F. Supp. 3d __ (S.D.N.Y. Dec. 7, 2017). As the Defendants have been found to have engaged in discriminatory conduct, it is appropriate to prohibit Defendants from acting with a discriminatory purpose and Plaintiffs request that the Court include this language in the Judgment. Furthermore, nothing in the Court's decision limited its ability to issue such remedy.

Plaintiffs do not object to the addition of the phrase "appropriate body", however based upon their introductory explanations, Plaintiffs believe that the non-exhaustive list of application examples should be included in the judgment.

**Paragraph 8:**

Plaintiffs' Original Proposal:

ORDERED that the Village will concurrently process any applications for special permit, site plan approval, and/or variances hereinafter filed by the Plaintiff Congregation Rabbinical College of Tartikov, Inc.; and it is further:

Defendants' Response:

This paragraph should be deleted. This paragraph appears, in part, to be duplicative of Paragraph 7. Also, as the Court indicated in denying Plaintiffs' request to appoint a special master, Plaintiffs must follow the normal application process. Said process does not provide for the "concurrent" filings envisioned by Plaintiffs.

Plaintiffs' Reply:

As set forth in Plaintiffs' January 24, 2018 letter to the Court, it is "normal procedure" for Pomona to review special permits and site plans separately. Pomona's Zoning Code ¶ 130-28(E)(5) specifically states: "[i]nsofar as practicable, special use permit and site plan approval procedures shall run concurrently."

In response to Plaintiffs' letter, Defendants stated in their January 24, 2018 letter to the Court that the "special permit process has been eliminated" due to the finding that Local Law No. 1 of 2001 is unconstitutional. Plaintiffs concur. Prior to Local Law No. 1 of 2001, Plaintiffs' use would be permitted as of right.

Plaintiffs drafted a judgment which required them to apply for a special permit because the Court's decision directed that they prepare a proposed judgment which would permit them to

5

apply for a special permit and site plan not subject to the challenged provisions. *Tartikov v. Pomona*, 2017 WL 6206193, at *46.

Plaintiffs do not object to the judgment stating that a special permit is not required because Tartikov's use is permitted as of right.

Plaintiffs propose the following revised language for Paragraph 8 and propose that all references to special permits or special permit applications be deleted from the remaining portions of the Judgment, as set forth in the Revised Proposed Judgment and Mandatory Injunction:

ORDERED that Plaintiff's proposed non-accredited rabbinical college with student family housing is a permitted use ~~as of right~~  and therefore Tartikov shall not be not required to apply for a special permit. Where feasible, Defendants will concurrently process any applications filed by the Plaintiff Congregation Rabbinical College of Tartikov, Inc.; and it is further:

**Paragraph 9:**

Plaintiffs' Original Proposal:

ORDERED that Plaintiff Congregation Rabbinical College of Tartikov, Inc.'s proposed non-accredited rabbinical college with student family housing on the Subject Property that it owns in the Village of Pomona, New York is deemed to be permitted as a special permit use in the R-40 zoning district and shall not require a use variance or a text or map amendment; and it is further:

Defendants' Response:

This paragraph should be deleted. The relief requested is not supported by the Court's decision as to the appropriate remedy. Further, in its decision, the Court stated: "Little else is known about the structures, curriculum, or features of Tartikov's rabbinical college .... The Court takes no position on what Plaintiffs may build upon the Subject Property". Decision at 8, 23. Since no one knows what is planned, it is impossible and illogical that an order be issued permitting a hypothetical, unknown use. As the Court stated, "[t]he onus is now on Plaintiffs to submit an application to the appropriate body". Decision at 111. A decision can only be made after Tartikov presents, via an application, exactly what it wants to build.

Plaintiffs' Reply:

Defendants are confusing a fundamental land use concept. There is a difference between a "use" being permitted and whether a specific application (for such use) will be approved. Just because a particular land use is permitted within a zoning district does not automatically mean that a specific application for such use is approved as of right. The onus is always on the applicant to submit the application and go through the process.

Regardless of whether Tartikov's proposed non-accredited rabbinical college with student

family housing is a permitted use, the "onus" is still on Plaintiffs "to submit an application." Plaintiffs' proposed language merely places Tartikov is the same position as any potential applicant who is applying for a permitted use.

For example, pursuant to Pomona Code §130-9(A)(5), an application for a library or museum will be an application for a permitted use. No one will "know what is planned" for the library or museum until the application is made. Similarly, an application for a non-accredited rabbinical college with student family housing will be an application for a permitted use. No one will "know what is planned" for the non-accredited rabbinical college with student family housing until the application is made.

If Defendants' interpretation of the Code regarding permitted uses is adopted, then as a consequence, no use would be permitted because no one would "know what is planned" for the property prior to an application being submitted.

Plaintiffs therefore urge the Court to use Plaintiffs' proposed language.

**Paragraph 10:**

Plaintiffs' Original Proposal:

ORDERED that the student family housing component of Plaintiff Congregation Rabbinical College of Tartikov, Inc.'s proposed non-accredited rabbinical college on the Subject Property that it owns in the Village of Pomona, New York is deemed to be protected religious exercise because of the Court's finding that such is motivated by the Plaintiffs' sincerely held religious beliefs and therefore shall be permitted as part of the Plaintiff's proposed principal use of a religious educational institution, and shall not be considered as an "accessory" use to the same; and it is further:

Defendants' Response:

This paragraph should be deleted. The relief requested is not supported by the Court's decision. Nowhere in its decision does the Court discuss principal versus accessory uses. Further, these are matters that are determined during the application process. No application has been made.

Plaintiffs' Reply:

Paragraph 10 is supported by the Court's decision. The Court concluded that "Plaintiffs' religious beliefs regarding the Torah community are sincere." *Congregation Rabbinical Coll. of Tartikov v. Pomona*, 2017 WL 6206193, at *31.

**Paragraph 11:**

Plaintiffs' Original Proposal:

ORDERED that any application for special permit, site plan approval, variances, architectural review, or other land use application shall be subject to the following provisions of the Village Code:

- A. The bulk regulations for the R-40 zoning district, as described in the section 130-12 of the Village Code;
- B. The requirements of chapter 119 of the Village Code ("Site Development Plan Review"); and
- C. The requirements of section 130-28(E) of the Village Code ("Special use permits");

and it is further:

Defendants' Response:

This paragraph is unnecessary and therefore should be deleted. There are many Village code provisions that may or may not apply to Plaintiffs' application. However, since no application has been filed, it is impossible to know which provisions will or will not apply.

Plaintiffs' Reply:

Defendants do not deny that the application would be subject to these provisions, they merely state that they do not know which provisions will be applied. Therefore, there is no harm in listing applicable provisions even if it turns out that some or all of those provisions are not relevant to the application.

**Paragraph 12:**

Plaintiffs' Original Proposal:

ORDERED that the Defendants are enjoined from applying the provisions of Local Law No. of 2001, Local Law No. 5 of 2004, Local Law No. 1 of 2007, and Local Law No. 5 of 2007 to the Subject Property owned by Plaintiff Congregation Rabbinical College of Tartikov, Inc. in the Village of Pomona, New York. Such provisions include, but are not limited to the following:

- A. The 10% maximum building coverage requirement, adopted in Local Law No. 1 of 2001 and codified at section 130-10(F)(2)(a) of the Village Code;
- B. The 20% floor area ratio limitation, adopted in Local Law No. 1 of 2001 and codified at section 130-10(F)(2)(b) of the Village Code;

8

C. The application of a "net lot" calculation for purposes of calculating the building coverage and floor area restrictions, adopted in Local Law No. 1 of 2001 and codified at section 130-10(F)(1) of the Village Code;

D. The 25% maximum impervious surface limitation, adopted in Local Law No. 1 of 2001 and codified at section 130-10(F)(2)(c) of the Village Code;

E. The requirement that the applicant must be accredited by the New York Education Department or similar other recognized accrediting agency, adopted in Local Law No. 5 of 2004 and codified at section 130-4 of the Village Code;

F. The designation of "dormitories" as an "accessory use" to an educational use, adopted in Local Law No. 5 of 2004 and codified at sections 130-4 and 130-10(F)(12) of the Village Code;

G. The Village's regulation of "dormitories," including the definition that requires that (1) dormitory rooms shall not contain separate cooking, dining or housekeeping facilities, (2) single family, two-family and/or multi-family dwelling units shall not be considered to be dormitories or part of dormitories, (3) dormitories are limited to administrative staff, faculty and students, (4) a dormitory building be on the same lot as the school, and (5) not more than one communal dining room shall be provided in any building used for dormitory purposes, adopted in Local Law No. 5 of 2004 and codified at sections 130-4 and 130-10(F)(12) of the Village Code;

H. The limitation of "dormitories" to only one building on a lot, adopted in Local Law No. 5 of 2004 and codified at section 130-10(F)(12) of the Village Code;

I. The limitation of maximum height of "dormitories" to two stories or 25 feet, whichever is less, adopted in Local Law No. 5 of 2004 and codified at section 130-10(F)(12)(c) of the Village Code;

J. The application of a net lot calculation for Educational Institutions, adopted in Local Law No. 1 of 2007 and codified at section 130-10(F)(1) of the Village Code;

K. The limitation of dormitory building to occupy not more than twenty percent of the total square footage of all buildings on the lot, adopted in Local Law No. 1 of 2007 and codified at section 130-10(F)(12) of the Village Code; and

L. The "Wetlands Protection Law," adopted in Local Law No. 5 of 2007 and codified at chapter 126 of the Village Code;

and it is further:

Defendants' Response:

This paragraph is unnecessary because paragraphs 2 through 6 state that the four laws are

9

unconstitutional. Therefore, by operation of law, they cannot be applied by the Village. Therefore, this paragraph should be deleted.

Plaintiffs' Reply:

These specific portions of the Challenged Laws worked particular hardship upon the Plaintiffs, and there is no reason for the Judgment not to be explicit with respect to their inapplicability. It will provide specificity in the context of Plaintiffs' applications and prevent Defendants from applying such restrictions, formally or informally.

Further, as pointed out by the Court, although "discriminatory purpose was a significant reason for Defendants' actions," there are some provisions of the Challenged Laws which were legitimate (such as removing duplicative and inconsistent language and deleting language which was not consistent with caselaw). *Tartikov v. Pomona*, 2017 WL 6206193, at *19-21. Plaintiffs' proposed language prevents Defendants from applying the discriminatory and burdensome restrictions, while ensuring that Tartikov's application is not subject to the prior inconsistencies. Plaintiffs therefore urge the Court to use Plaintiffs' proposed language.

**Paragraph 13:**

Plaintiffs' Original Proposal:

ORDERED that Plaintiff Congregation Rabbinical College of Tartikov, Inc. shall be permitted to apply for area variances pursuant to New York State Village Law § 7-712-b(3) and subject to the applicable case law, and it is further:

Defendants' Response:

This paragraph is unnecessary and therefore should be deleted. Plaintiffs (or any other Village resident) are permitted to apply for a variance. We also note that New York State Village Law § 7-712-b(3) is not contained anywhere in the Court's Decision. Any owner of property in the Village has the right to apply for variances if it complies with the statutory procedures. No judicial relief is required.

Plaintiffs' Reply:

Defendants have not denied that the application would be subject to these provisions, they merely state that these provisions would apply to any applicant. Therefore, there is no harm in retaining this provision in the Judgment.

**Paragraph 14:**

Plaintiffs' Original Proposal:

ORDERED that any applications by Plaintiff Congregation Rabbinical College of

10

Tartikov, Inc. for special permit, site plan approval, variances, architectural review, or other land use application of its proposed rabbinical college with student family housing, shall be entitled to the special status afforded religious and educational institutions, requiring greater flexibility in evaluating such applications than for other uses, and that every effort be made to accommodate the religious and educational use, *see Cornell Univ. v. Bagnardi,* 68 N.Y.2d 583, 595–596, 510 N.Y.S.2d 861, 503 N.E.2d 509 (1986); *Matter of Westchester Reform Temple v. Brown,* 22 N.Y.2d 488, 496-497, 293 N.Y.S.2d 297, 239 N.E.2d 891 (1968); *Matter of Harrison Orthodox Minyan v. Town Bd. of Harrison,* 159 A.D.2d 572, 573, 552 N.Y.S.2d 434 (1990); *Genesis Assembly of God v. Davies,* 208 A.D.2d 627, 617 N.Y.S.2d 202 (1994); and it is further:

Defendants' Response:

This paragraph should be deleted for several reasons. The Court did not make any determination with respect to special status, *Bagnardi,* or any general New York State land use requirement. The onus is on Plaintiffs to file an application. Finally, by denying Plaintiffs' request for a special master, the Court noted that it is "inappropriate to insert a federal monitor into the permit application process. '[F]ederal courts should not become zoning boards of appeal' ". Decision at 111. (citation omitted).

Plaintiffs' Reply:

No provision for a federal monitor is being made in this paragraph. For the same reasons as set forth in Plaintiffs' reply to Paragraph 9, Plaintiffs' special status as a religious and educational institution has no relation to the "onus" on Plaintiffs to file an application. Defendants have long suggested that Plaintiffs' proposed use does not fall within the "preferred" status under New York law. The Court has found that Plaintiffs' proposed use both constitutes sincere religious exercise and an educational use. *Tartikov v. Pomona,* 2017 WL 6206193, at *28-31. Plaintiffs therefore urge the Court to use Plaintiffs' proposed language.

**Paragraph 15:**

Plaintiffs' Original Proposal:

ORDERED that the Village shall expeditiously process any and all applications for special permit, site plan approval, variances, architectural review, or other land use applications submitted by the Plaintiff Congregation Rabbinical College of Tartikov, Inc. pursuant to the applicable provisions of the Village Code as modified by the terms of this Judgment and Mandatory Injunction; and it is further:

Defendants' Response:

This paragraph is unwarranted for the reasons stated in response to Paragraphs 7 and 14, i.e., the Court has determined that it is inappropriate to insert itself into the application process. Therefore, this paragraph should be deleted.

11

Plaintiffs' Reply:

The Court has determined that it is not necessary to appoint a federal monitor, however ordering Defendants to expeditiously review all applications is reasonable under the circumstances and clearly is not the same thing as appointing a federal monitor.

**Paragraph 16:**

Plaintiffs' Original Proposal:

ORDERED that the Village shall comply with the deadlines set forth in the New York State Village Law and herein in processing Plaintiffs' site plan and special permit applications, including but not limited to:

- A. The Village shall conduct a public hearing on Plaintiffs' site plan application within sixty-two (62) days from the day an application is received (N.Y. Village Law § 7-725-a(8));

- B. The Village shall close such public hearing within sixty (60) days after it has been opened;

- C. The Village shall make a decision on the site plan application within sixty-two (62) days after such hearing (N.Y. Village Law § 7-725-a(8));

- D. The Village shall conduct a public hearing on Plaintiffs' special permit application within sixty-two (62) days from the day an application is received (N.Y. Village Law § 7-725-b(6));

- E. The Village shall close such public hearing within (sixty) 60 days after it has been opened; and

- F. The Village shall make a decision on the special use permit application within sixty-two (62) days after such hearing. (N.Y. Village Law § 7-725-b(6)); and it is further:

Defendants' Response:

This paragraph should be deleted because, as with other paragraphs, the contents of this paragraph involves the application process. The Court has rejected Plaintiffs' request that the Court monitor the application process. Further, this paragraph is legally incorrect, as it does not make provision for SEQRA review. In this regard, most of the time periods in the SEQRA process are within the *applicant's* control because the applicant conducts the required studies and prepares the Environmental Impact Statement. ("EIS").

Plaintiffs' Reply:

This paragraph does not request the appointment of a federal monitor. Rather, it establishes timelines by which Defendants must review and take action with respect to Tartikov's

application.

Again, this is no different than enforcing terms for the payment of a money judgment.

The SEQRA provisions are addressed in paragraph 19.

The dates only apply to dates that are in Defendants' control.

Plaintiffs reasonably believe that these timelines are necessary where Defendants indicated an intent to delay Tartikov's application process and where there were on-line postings encouraging Pomona residents to delay Tartikov's application process by speaking at every meeting so that it would "go on for years". (Trial Tr. 482:8-484:14, Trial Ex. 60, Trial Ex. 174).

Plaintiffs therefore urge the Court to use Plaintiffs' proposed language.

**Paragraph 17:**

Plaintiffs' Original Proposal:

ORDERED that no more than one board, agency or other body of the Defendant Village is permitted to request to be the Lead Agency under the New York State Environmental Quality Review Act ("SEQRA"); and it is further:

Defendants' Response:

This Paragraph should be deleted for reasons already stated: The Court decided that it is inappropriate to insert itself into the application process. Decision at 111.

Plaintiffs' Reply:

This proposed paragraph does not insert the Court into the application process. It merely sets terms for the judgment process.

Such a provision is necessary in this case because if multiple municipal agencies or bodies within Pomona were permitted to apply to become the Lead Agency, this would delay the application process by adding the extra step of determining which agency would be Lead Agency. Defendants have sole control regarding whether to seek to be the Lead Agency. As the party against whom there is a judgment, Defendants should not be permitted to create a situation which would improperly delay Tartikov's application.

**Paragraph 18:**

Plaintiffs' Original Proposal:

ORDERED that the Lead Agency shall perform a segmented review for the first phase of

13

the rabbinical college application (6 NYCCR § 617.3(g)) because such a review will be more protective of the environment; and it is further:

Defendants' Response:

This Paragraph should be deleted for reasons stated in response to Paragraph 17.

Plaintiffs' Reply:

Plaintiffs' proposed language should be used for the reasons stated in response to Paragraph 17.

**Paragraph 19:**

Plaintiffs' Original Proposal:

ORDERED that the Village shall comply with the deadlines set forth in SEQRA, related regulations and herein, including but not limited to:

- A. The Village shall establish the Lead Agency within thirty (30) days of the filing of the application for special permit and/or site plan (6 NYCRR 617.6(b)(3)(i));

- B. After Plaintiffs provide a draft scoping document pursuant to 6 NYCRR 617.8, the Village shall provide a final written scoping document within sixty (60) days (6 NYCRR 617.8(f));

- C. The Village will determine whether to accept the Draft Environmental Impact Statement ("DEIS") as adequate with respect to its scope and content for the purpose of commencing public review within forty-five (45 days) of the filing of the same (6 NYCRR 617.9(a)(2));

- D. The Village will determine the adequacy of a re-submitted DEIS within thirty (30) days of the filing of the same (6 NYCRR 617.9(a)(2)(ii));

- E. The public comment period shall be limited to no more than forty-five (45) days;

- F. If the Village decides to hold a public hearing pursuant to 6 NYCRR 617.9(a)(4), they shall hold such public hearing concurrently with the first public hearing conducted by the Board of Trustees or Planning Board on the special permit or site plan application herein, and such hearing shall commence no more than sixty (60) days after the filing of the notice of completion of the DEIS (6 NYCRR 617.9(a)(4)(ii)) and conclude no more than seventy-five (75) days after the filing of the notice of completion of the DEIS;

      G. The Village shall prepare or cause to be prepared the Final Environmental Impact Statement ("FEIS") within forty-five (45) calendar days after the close of any hearing or within sixty (60) calendar days after the filing of the DEIS, whichever occurs later (6 NYCRR 617.9(a)(5)), which shall not be extended; and

      H. The Village shall file their written findings statement and decision on whether or not to approve within thirty (30) days after the filing of the FEIS (6 NYCRR 617.11(b));

and it is further:

Defendants' Response:

This Paragraph should be deleted for reasons stated in response to Paragraphs 16 and 17.

Plaintiffs' Reply:

Plaintiffs' proposed language should be used for the reasons stated in response to Paragraphs 16 and 17.

**Paragraph 20:**

Plaintiffs' Original Proposal:

ORDERED that if the Village determines that the draft EIS is inadequate, they shall issue a complete list all deficiencies within forty-five (45) days of receipt of the draft EIS (6 NYCRR 617.9(a)(2)(i)), and shall not issue successive lists of deficiencies not previously addressed; additionally, such deficiencies shall not expand upon the scoping document; and it is further:

Defendants' Response:

This Paragraph should be deleted for reasons stated in response to Paragraphs 16 and 17.

Plaintiffs' Reply:

Plaintiffs' proposed language should be used for the reasons stated in response to Paragraphs 16 and 17.

**Paragraph 21:**

Plaintiffs' Original Proposal:

ORDERED that if the Village determines that a supplemental EIS is required (6 NYCRR 617.9(a)(2)(i)), all such specific significant adverse environmental impacts that the Village

determines were not addressed or inadequately addressed in the draft EIS shall be completely listed in such supplemental EIS and the Village shall not require any successive supplemental environmental impact statements beyond the draft and supplemental EIS not previously addressed; additionally, such supplemental EIS shall not expand upon the scoping document; and it is further:

<u>Defendants' Response:</u>

This Paragraph should be deleted for reasons stated in response to Paragraphs 16 and 17.

<u>Plaintiffs' Reply:</u>

Plaintiffs' proposed language should be used for the reasons stated in response to Paragraphs 16 and 17.

**Paragraph 22:**

<u>Plaintiffs' Original Proposal:</u>

ORDERED that Defendants are enjoined from enacting provisions similar to Local Law No. 1 of 2001, Local Law No. 5 of 2004, Local Law No. 1 of 2007 and Local Law No. 5 of 2007; and it is further:

<u>Defendants' Response:</u>

This Paragraph should be deleted because, aside from being vague, there is nothing in the remedy provided by the Court barring the Village from enacting new laws.

<u>Plaintiffs' Reply:</u>

If this paragraph was deleted the Court's decision could be rendered moot, and the parties could have to litigate this all over again. If Defendants' assertion is that the Village can enact provisions similar to Local Law No. 1 of 2001, Local Law No. 5 of 2004, Local Law No. 1 of 2007 and Local Law No. 5 of 2007 then this position indicates continued bad faith on their part and illustrates why it is necessary to have an Order which sets out in detailed terms of compliance.

**Paragraphs 23 and 24:**

<u>Plaintiffs' Original Proposal:</u>

ORDERED that Plaintiffs are entitled to an award of attorney's fees and taxable costs to be determined by the Court (as set forth below) and shall have 30 days from the date this Judgment is entered to submit such application; Defendants shall have 15 days from the date of Plaintiffs' application to respond; and Plaintiffs shall have 7 days from the date of Defendants' response to

16

reply; and it is further:

ORDERED that the Court reserves jurisdiction over the amount of any award for Plaintiffs' attorney's fees and taxable costs but orders herein that any such award shall accrue post-judgment interest at the legal rate established by 28 U.S.C. § 1961; and it is further:

Defendants' Response:

These Paragraphs should be deleted because they are premature. The Court's decision makes no mention of any award of attorneys' fees. As the Court is aware, per FPCP 54(d)(2)(B)(i), Plaintiffs have 14 days after the entry of judgment to file a motion for an award of attorneys' fees.

Plaintiffs' Reply:

This request is not premature. Both RLUIPA and the FHA provide for an award of attorneys' fees. Plaintiffs have requested that award as part of their proposed judgment.

The Court has the power to extend the 14-day time for making a motion for attorneys' fees under Fed. R. Civ. P. 54. Plaintiffs are requesting that the Court's Order provide for such an extension. The Court permitted 30 days for Plaintiffs to submit the prior attorneys' fees application related to Defendants' spoliation of evidence. That motion related to work performed during a time-period that only spanned a few months. That same 30 days seems more than reasonable for a motion related to more than ten years of attorneys' fees and costs.

**Paragraph 25:**

Plaintiffs' Original Proposal:

ORDERED that the Court reserves jurisdiction over any and all additional remedies sought by Plaintiffs consistent with this Judgment and Mandatory Injunction; and

Defendants' Response:

This Paragraph should be deleted for reasons previously discussed: The Court has denied Plaintiffs' request for a Federal monitor.

17

Plaintiffs' Reply:

    The Court has determined that it is not necessary to appoint a federal monitor. However, retaining jurisdiction over the Judgment and Mandatory Injunction is not the same as appointing a federal monitor. Based upon the explanations set forth herein and considering the evidence adduced at trial along with the findings made by the Court it is entirely reasonable and appropriate for this Court to maintain jurisdiction over enforcement of its judgment.

Respectfully submitted,

*[signature]*

PAUL SAVAD

PS/mc
enc.
cc:    All Counsel via ECF
       White Plains Clerk (Revised Proposed Judgment and Mandatory Injunction via e-mail)