UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

CONGREGATION RABBINICAL COLLEGE OF        Case No. 07-CV6304 (KMK)
TARTIKOV, INC., RABBI MORDECHAI BABAD,
RABBI WOLF BRIEF**,** RABBI HERMEN KAHANA**,**
RABBI MEIR MARGULIS**,** RABBI GERGELY
NEUMAN, RABBI MEILECH MENCZER,
RABBI JACOB HERSHKOWITZ, RABBI
CHAIM ROSENBERG, RABBI DAVID A.
MENCZER, and RABBI ARYEH ROYDE,

Plaintiffs,

-against-

VILLAGE OF POMONA, NY; BOARD OF TRUSTEES OF
THE VILLAGE OF POMONA, NY; NICHOLAS SANDERSON,
AS MAYOR; IAN BANKS as Trustee and in his official capacity,
ALMA SANDERS ROMAN as Trustee and in her official capacity,
RITA LOUIE as Trustee and in her official capacity,
and BRETT YAGEL, as Trustee and in his official capacity,

Defendants.

-------------------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR ATTORNEYS' FEES

Joseph Churgin (JC 6854)              Storzer & Associates, P.C.
Donna Sobel (DS 3267)                Roman Storzer, admitted *pro hac vice*
Savad Churgin                             1025 Connecticut Avenue, NW – Suite 1000
55 Old Turnpike Road, Suite 209     Washington, D.C. 20036
Nanuet, New York 10954            (202) 857-9766
                                         storzer@storzerlaw.com

Stepanovich Law, P.L.C.
John G. Stepanovich
618 Village Drive, Suite K
Virginia Beach, Virginia 23454
(757)-410-9696
john@stepanovichlaw.com           Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND…………………………………………1

ARGUMENT ................................................................................................................... 2

I.      PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY FEES AND
        COSTS ................................................................................................................. 2

II.     THE AMOUNT OF THE FEE REQUEST IS REASONABLE AND APPROPRIATE....4

        A.      The Hourly Rates Charged Are Documented and Reasonable ............................ 4

                1.      Plaintiffs' Counsels' Experience Warrants the Requested Rates…………… .5

                2.      Plaintiffs' Counsel Has Been Paid the Requested Rates……………………. 9

                3.      The Requested Rates are Lower than the Hourly Rates Charged by
                        Defendants' Counsel…………………………………………………………….9

                4.      The Requested Rates are Consistent with Rates Charged in the
                        District…...................................................................................................11

                5.      This is a Complex Case…………………………………………………………13

        B.      The Hours Expended Were Necessary and Appropriate For This Complex
                Litigation……...............................................................................................15

                1.   Plaintiffs' Counsel's Hours are Reasonable Because This is a Complex
                     Litigation……………………………………………………………………………15

                2.. Plaintiffs' Counsel's Hours are Reasonable Because They Avoided Duplicative
                     Work……………………………………………………………………………15

                3.      Plaintiffs' Counsel's Hours are Reasonable in Light of Positions Taken by
                        Defendants…………………………………………………………………..16

                4.      Plaintiffs' Counsel's Hours are Reasonable Because of the Fact-Intensive
                        and Complex Discovery ……………………………………………………16

                5.      Plaintiffs' Counsel's Hours are Reasonable Based on Defendants' Expenditures
                        in this Litigation ……………………………………………………………17

  C.  The Plaintiffs Are Entitled to Costs and Legal Assistant Fees…………………..18


III. PLAINTIFFS ARE ENTITLED TO ALL OF THEIR FEES WITHOUT REDUCTION
  BECAUSE  PLAINTIFFS ACHIEVED SUBSTANTIAL RESULTS AND ALL OF
  PLAINTIFFS' CLAIMS DERIVE FROM A COMMON CORE OF FACTS………….19

CONCLUSION..........................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Abdell v. City of New York*, No. 05-CV-8453 RJS, 2015 WL 898974 (S.D.N.Y. Mar. 2, 2015) ............... 12

*Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507 (S.D.N.Y. 2010), *on reconsideration in part*, No. 06 CIV. 593 (DC), 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010) ............... 12

*Alicea v. City of New York,* 272 F. Supp. 3d 603\ (S.D.N.Y. 2017) ........................................................... 12

*Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504 (S.D.N.Y. 2012) ................................................. 4

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008)..... 4

*Barbour v. City of White Plains*, 788 F. Supp. 2d 216 (S.D.N.Y. 2011), *aff'd*, 700 F.3d 631 (2d Cir. 2012) .............................................................................................................................................................. 12

*Broome v. Biondi*, 17 F. Supp. 2d 230 (S.D.N.Y. 1997)............................................................................. 24

*Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183 (2d Cir. 2014) .............................................................................................................................................................. 28

*Coakley v. Webb*, No. 14 CIV. 8438 (ER), 2016 WL 1047079 (S.D.N.Y. Mar. 10, 2016) ....................... 12

*Coe v. Town of Blooming Grove*, 714 F. Supp. 2d 439 (S.D.N.Y. 2010), *vacated,* 429 Fed. Appx. 55, 2011 WL 2881329, *on remand* 880 F. Supp. 2d 411 ..................................................................................... 18

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574 (S.D.N.Y. 2013) ................................................................................................................................................................ 1

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352 (S.D.N.Y. 2015) ........................................................................................................................................................ *passim*

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, No. 07-CV-6304 (KMK), 2017 WL 6206193, 280 F. Supp. 3d 426 (S.D.N.Y. 2017)……………………………….…….……….. *passim*

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019) ……………………............................................................................................................................*passim*

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203 (C.D. Cal. 2002)....7

*Cush-Crawford v. Adchem Corp.*, 234 F. Supp. 2d 207 (E.D.N.Y. 2002)................................................... 3

*DeCorte v. Jordan*, 497 F.3d 433 (5th Cir. 2007)........................................................................................ 3

*DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666 (6th Cir. 2006) ................................................. 29, 30

*Dominic v. Consolidated Edison Co. of New York*, 822 F.2d 1249 (2d Cir.1987) ..................................... 19

*Environmental Defense Fund v. EPA*, 672 F.2d 42 (D.C. Cir. 1982) ........................................................ 3

*Farrar v. Hobby*, 506 U.S. 103 (1992) ......................................................................................... 20

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415 (S.D.N.Y. 2012) ...................... 23

*Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992) ............................................................................. 18

*Green v. Torres*, 361 F.3d 96 (2d Cir. 2004) ............................................................................... 23

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...........................................................................*passim*

*Hines v. City of Albany*, 613 F. App'x 52 (2d Cir. 2015) .............................................................. 23

*Hines v. City of Albany*, 862 F.3d 215, 218 (2nd Cir. 2017) ............................................................ 3

*Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp. 3d 554 (S.D.N.Y. 2018) ....... 12

*Imbeault v. Rick's Cabaret Int'l Inc.*, RCI, No. 08-5458, 2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009) .... 4

*JCW Investments, Inc. v. Novelty, Inc.*, 509 F.3d 339 (7th Cir. 2007) .................................................. 3

*LCS Grp. LLC v. Shire LLC*, 383 F. Supp. 3d 274 (S.D.N.Y. 2019) ..................................................... 12

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) .........................................................*passim*

*Long Island Head Start Child Development Services, Inc., v. Economic Opportunity Commission,* 00 CV 7394 (E.D.N.Y. Dec. 5, 2013) .................................................................................................. 3

*Long v. City of New York*, 09-CV-6099, Doc. 39 (S.D.N.Y. 2010) ...................................................... 12

*Lunday v. City of Albany*, 42 F.3d 131 (2d Cir. 1994) .............................................................. 20, 22

*LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510 (S.D.N.Y. 2010) ........................................ 12

*Metavante Corporation v. Emigrant Savings Bank,* No. 05-CV-1221 (E.D. Wis. June 29, 2011)............. 3

*Millea v. Metro–N. R.R. Co.*, 658 F.3d 154 (2d Cir.2011) .................................................................. 4

*Pyke v. Cuomo*, 567 F.3d 74, 77 (2d Cir. 2009) ............................................................................ 27

*Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999) ................................................................. 19

*Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170 (2d Cir.1996) ..................................................... 19

*Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 644 (2018) ........................ 15

*Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571 (2008) ........................................................ 18

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) .......................................... *passim*

*Tex. State Teachers Ass'n v. Garland Indep. School Distr.*, 489 U.S. 782 (1989) .................................... 20

*Turic v. Holland Hospitality*, No. 94-1424/94-1467, 1996 U.S. App. LEXIS 25291 (6th Cir. Sept. 17, 1996) (unpubl.) ................................................................................................ 3

*U.S. Football League v. Nat'l Football League*, 887 F.2d 408 (2d Cir. 1989) ................................... 18

*Valmonte v. Bane*, 895 F. Supp. 593 (S.D.N.Y. 1995) .................................................. 20, 23, 29

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ........................................ 28

*Wise v. Kelly*, 620 F. Supp. 2d 435, 453 (S.D.N.Y. 2008) ........................................................ 16

*Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash. v. Rustam Guiv Found.*, 245 F. Supp. 3d 742 (E.D. Va. 2017) ...................................................................................................... 3

## Statutes

Federal Rule of Appellate Procedure 39 .......................................................................... 3

Federal Rule of Civil Procedure 54 .............................................................................. 3

Fair Housing Act, 42 U.S.C. § 3613(c)(2) ..................................................................... 1, 2

Religious Land Use and Institutionalized Persons Act of 2000 ...................................................... 2

42 U.S.C. § 1983 .............................................................................................. 2

42 U.S.C. § 1988 ......................................................................................... *passim*

42 U.S.C. § 2000cc(b)(2) ...................................................................................... 26

# INTRODUCTION

As provided for in in the Final Judgment in this case, entered on March 20, 2018 (Docket No. 356), as affirmed by the decision and mandate of the United States Court of Appeals for the Second Circuit (Docket Nos. 386 and 387), and pursuant to this Court's Order of March 30, 2020 (Docket No. 393), Plaintiffs seek attorney's fees incurred in this litigation pursuant to 42 U.S.C. § 1988(b); 42 U.S.C. § 3613(c)(2), Federal Rule of Civil Procedure 54 and Southern District of New York Local Rule 54.1. Plaintiffs seek $5,625,711.06 in attorney's fees and $145,207.15 in costs, as supported by the attached declarations and exhibits.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this action is thoroughly described in this Court's opinions of January 4, 2013 (*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574 (S.D.N.Y. 2013) ("*Tartikov I*")), September 29, 2015 (*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352 (S.D.N.Y. 2015) ("*Tartikov II*")), and December 7, 2017 (*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, No. 07-CV-6304 (KMK), 2017 WL 6206193, 280 F. Supp. 3d 426, (S.D.N.Y. 2017) ("*Tartikov III*")), as affirmed in part and reversed in part by *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019) ("*Tartikov IV*").

In summary, Tartikov is a New York religious corporation formed in 2004 to establish a rabbinical college in the Village of Pomona (the "Village" or "Pomona"), Rockland County, New York. This religious school will include (among other religious uses) a housing component for students and their families on Tartikov's approximately 100-acre parcel in the Village (the "Property"). In this litigation, Plaintiffs proved that the Village enacted specific zoning and environmental laws with discriminatory animus by targeting Hasidic Jews generally, and the

Plaintiffs specifically and violated the Fair Housing Act and the New York and United States Constitutions. *Tartikov III* and *Tartikov IV*.

This case was filed in July of 2007. Following amendments to the Complaint, a motion to dismiss, discovery, cross-motions for summary judgment and cross-motions for reconsideration, a bench trial was held from May 15, 2017 through June 1, 2017 and judgment was granted in favor of Plaintiffs on Counts I, III, IV, V, VI, X, XII and XIII of the Second Amended Complaint. As part of the judgment, the Court ordered that Plaintiffs are entitled to an award of attorney fees and taxable costs. *Tartikov III*; Docket No. 356.

Defendants appealed the Judgment. Plaintiffs opposed the appeal and filed a cross-appeal. Oral argument before the Second Circuit was heard on the appeal on April 18, 2019. The Second Circuit issued a decision on December 20, 2019, upholding the District Court's injunction with respect to two of the Challenged Laws and the award of attorneys' fees and remanding the case to the District Court with instructions to reverse its decision with respect to the other two of the Challenged Laws. *Tartikov IV*. The Court issued an Order on March 30, 2020 terminating Plaintiffs' prior Motion for Attorney Fees and directing them to resubmit a comprehensive application for attorneys' fees for both the trial and appeal. Docket No. 391.

## ARGUMENT

## I.    PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY FEES AND COSTS.

Pursuant to 42 U.S.C. § 1988, Plaintiffs, as the prevailing party, are entitled to recover reasonable attorney's fees incurred in this action to enforce United States constitutional claims under 42 U.S.C. § 1983. An award of attorney fees to the prevailing party is also provided under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 1988, and the Fair Housing Act, 42 U.S.C. § 3613(c)(2). The Court has already determined that Plaintiffs are entitled

to attorney's fees and costs.  Docket No. 356.  That determination was untouched by the Second

Circuit's ruling.  *Tartikov IV* at 125, n.288.

Plaintiffs are also entitled to attorney's fees incurred in the appeal.[1]  *Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017) (plaintiffs who are entitled to attorney's fees as the prevailing party on the merits under 42 U.S.C. § 1988 are also entitled to attorney's fees expended on appeal for successfully defending against the defendants' appeal).  *See also DeCorte v. Jordan*, 497 F.3d 433, 445 (5th Cir. 2007) (plaintiffs in civil rights cases are entitled to an award of attorneys' fees for their successful defense of an appeal).

---

[1] Regarding the timeliness of Plaintiffs' fee application for successful appellate work, there is neither a relevant Federal Rule of Appellate Procedure nor a Local Rule of the Second Circuit that provide for the timing or content of an application for attorney's fees related to appellate representation.  Existing case law confirms that Federal Rule of Appellate Procedure 39, governing appellate <u>costs</u>, does not govern the question of appellate attorney fees awards. *See, e.g., Hines v. City of Albany*, 862 F.3d 215, 218 (2nd Cir. 2017).  Additionally, Federal Rule of Civil Procedure 54, which governs the award of costs, including attorneys' fees, for trial court work, does not govern applications for appellate attorney fee awards.  Rather, such fee applications are subject to a rule of reasonable diligence. *See Long Island Head Start Child Development Services, Inc., v. Economic Opportunity Commission,* 00 CV 7394 (E.D.N.Y. Dec. 5, 2013) ("the Court finds that the word 'judgment' as used in Rule 54(d)(2)(B) refers to district court judgments only. . . . Plaintiffs moved for appellate attorneys' fees within a reasonable period of time after the entry of the Second Circuit's final judgment. . . .  From that date, the Defendants had [90 days] to seek review in the Supreme Court. Only two days after the Defendants' right to seek review in the Supreme Court had elapsed, the Plaintiff moved for appellate attorneys' fees. This period of time is not unreasonable"); *Cush-Crawford v. Adchem Corp.*, 234 F. Supp. 2d 207, 208, 211 (E.D.N.Y. 2002) (motion for appellate attorneys' fees filed two months after the defendants' right to seek review in the Supreme Court had elapsed to be filed within a reasonable time). *See also Environmental Defense Fund v. EPA*, 672 F.2d 42, 61 (D.C. Cir. 1982); *JCW Investments, Inc. v. Novelty, Inc.*, 509 F.3d 339, 342 (7th Cir. 2007); *Turic v. Holland Hospitality*, No. 94-1424/94-1467, 1996 U.S. App. LEXIS 25291, *3 (6th Cir. Sept. 17, 1996) (unpubl.); *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash. v. Rustam Guiv Found.*, 245 F. Supp. 3d 742, 754 (E.D. Va. 2017). *Cf. Metavante Corporation v. Emigrant Savings Bank,* No. 05-CV-1221, at *4 n. 1 (E.D. Wis. June 29, 2011) (discussing cases).  Tartikov calculates that any petition for a writ of certiorari would be due on or before July 6, 2020. *See:* https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf.

## II.    THE AMOUNT OF THE FEE REQUEST IS REASONABLE AND APPROPRIATE.

In the Second Circuit, the "starting point" for calculating an attorneys' fee award is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Imbeault v. Rick's Cabaret Int'l Inc.*, RCI, No. 08-5458, 2009 WL 2482134, at *1 (S.D.N.Y. Aug. 13, 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The resulting figure is the "presumptively reasonable fee," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).  The "presumptively reasonable fee," in effect, becomes "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir.2011) (internal quotations omitted).

### A.    The Hourly Rates Charged Are Documented and Reasonable.

In setting a reasonable hourly rate, a district court should determine "what rate a paying client would be willing to pay . . . bear[ing] in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees." *Arbor Hill,* 522 F.3d at 190.  The Court assesses the reasonableness of the submitted hourly rate by "considering the prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).  The relevant community is presumed to be the district in which the case is litigated, absent unusual circumstances.  *See Arbor Hill*, 522 F.3d at 191.

In determining a reasonable rate, courts look at (1) the experience of counsel, *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 545 (S.D.N.Y. 2008); (2) the range of rates that a party's counsel actually charge their clients, *id.* at 544; (3) evidence of rates charged in this district, *id.* at 545-46; and (4) complexity of the case.  *Id*. at 546.

The hourly rates charged by Plaintiffs' counsel from 2005 through October 2007 was $375 for partners, $350 for senior associates and $300 for junior associates. Beginning in October 2007, Plaintiffs' attorneys charged a blended rate, where all attorneys, regardless of seniority, billed at the same hourly rate.[2] From October 2007 through January 2016 the blended hourly rate was $375. In 2016 Plaintiffs' counsel raised the blended hourly rate for the first time in nine years to $400; and from 2017 through the present the blended hourly rate was raised to $420. *See* Declaration of Paul Savad[3] ¶¶ 17-22, submitted herewith ("Savad Dec."); Declaration of Joseph Churgin, submitted herewith ("Churgin Dec.") ¶ 12, Exs. A and C.

As set forth more fully below, these hourly rates are entirely reasonable in this District based on (1) the vast expertise and experience of Plaintiffs' counsel; (2) Plaintiffs' counsel charged and Plaintiffs paid the requested rate; (3) <u>Defendants'</u> counsel generally charged the same rate (requested here by Plaintiffs) and in some instances charged almost twice the requested rate here; (4) the requested rate is below the customary rate for similar work by counsel with similar qualifications; and (5) the complexity of presenting the case as well as the substantial work necessary to counter Defendants' opposition at trial and on appeal.

1.  <u>Plaintiffs' Counsels' Experience Warrants the Requested Rates.</u>

The notable experience and expertise of Plaintiffs' counsel is more fully set forth in their Declarations submitted herewith. This Court has already held that the blended rate for Plaintiffs'

---

[2] There are a small number of hours billed by junior associates or contract attorneys at rates lower than the blended rate. Plaintiffs are not presenting specific arguments about these lower entries, but are subsuming arguments regarding these lower rates into the discussions regarding the reasonable blended rates.

[3] Mr. Savad passed away on April 23, 2020. The citations herein are to the declaration that he submitted in support of Plaintiffs' previously submitted motion for attorneys' fees. Doc. No. 362.

counsel of $375 in 2015 in this case is "presumptively reasonable" based on "counsels' extensive experience and the prevailing rates in the Southern District of New York." *Tartikov II* at 339.

The law firm of Savad Churgin has extensive experience in complex federal and state litigation as well as zoning and land use law. Savad Churgin is Tartikov's local land use law firm and was the primary firm responsible for case strategy, reviewing discovery, synthesizing that information and proving the factual points at trial. Churgin Dec. ¶ 7; Savad Dec. ¶¶ 10-16.

Paul Savad served as lead counsel from the outset of the litigation through judgment. In the early stages of this litigation, Susan Cooper, Laura Kraemer and Beth Pacun assisted Mr. Savad on this case. Susan Cooper was primarily responsible for New York state legal issues, both in drafting the complaint and in opposing the motion to dismiss. Laura Kraemer was primarily responsible for collecting the facts. Beth Pacun assisted in securing experts and assisted with issues on Jewish law. Savad Dec. ¶¶ 13, 23; Declaration of Susan Cooper ("Cooper Dec.") ¶ 6; Declaration of Laura Catina[4] ("Catina Dec.") ¶ 7; Declaration of Beth Pacun Guterman ("Pacun Dec") ¶ 6.

Paul Savad practiced in his area of expertise for 50 years. Mr. Savad was also a frequent lecturer and writer on litigation and other subjects. Savad Dec. ¶¶ 6-10. He was Tartikov's primary counsel from the time that it purchased the Property. Savad Dec. ¶ 11. Susan Cooper has been practicing law for 39 years, since 1981, handling various types of litigation, including personal injury, medical malpractice, civil rights, and election law. Since 1997, Ms. Cooper's focus has been on general commercial litigation, zoning and other municipal law. Cooper Dec. ¶ 5. Laura

---

[4] Plaintiffs are submitting the declarations that were submitted in support of Plaintiffs' previously submitted motion for attorneys' fees for all declarants who did not bill additional hours on appeal (Docket Nos. 362, 366, 367, 368, 371 and 373) because there is no new information to be added to those declarations.

(Kramer) Catina was admitted to practice law in New York State in 2003 and has practiced as a litigator since that time. Catina Dec. ¶¶ 3-6. Beth Pacun was admitted to practice law in 1987 and was with the New York Attorney General's Office for seven years. Pacun Dec. ¶¶ 3-5.

Once the motion to dismiss was decided, Donna Sobel (in addition to Paul Savad as lead counsel) was Savad Churgin's primary attorney responsible for this litigation. Savad Dec. ¶ 14. Donna Sobel has been practicing complex federal litigation since 1997. Ms. Sobel worked at multinational firms in New York City from 1997 through 2004 and now practices in Rockland County. Declaration of Donna Sobel ("Sobel Dec.") ¶¶ 5-6. Ms. Sobel was the attorney primarily responsible for discovery and analysis, along with synthesis of the facts of the case. Sobel Dec. ¶ 7.

Joseph Churgin supervised work during the post motion to dismiss stage and also performed discrete legal tasks as needed. Mr. Churgin has been practicing law since 1993. He worked at the predecessor to this Savad Churgin from 1993 to 1995, at New York City-based Herzfeld and Rubin from 1995 through 2008, and rejoined Paul Savad at Savad Churgin, LLP in 2008. Mr. Churgin often did not bill the client for his supervisory work. Churgin Dec. ¶¶ 3-4, 6. Terry Rice provided guidance regarding specific municipal law issues in the case. Declaration of Terry Rice ("Rice Dec.") ¶¶ 7. Mr. Rice has been practicing since 1976 and has served as the town and village attorney for multiple municipalities. Mr. Rice is the author of McKinney's Practice Commentaries for the Town Law and Village Law. Rice Dec. ¶¶ 3-6.

The law firm of Storzer & Associates, P.C. (formerly Storzer & Greene, P.L.L.C.) has extensive experience in religious liberty civil rights litigation and has a significant focus on such matters. Roman Storzer has been engaged in RLUIPA litigation since the law's passage in 2000. Declaration of Roman P. Storzer ("Storzer Dec.") ¶¶ 5-6. *E.g., Cottonwood Christian Ctr. v.*

*Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1209 (C.D. Cal. 2002). Mr. Storzer's primary responsibility in this litigation has been the religious and constitutional claims, as well dealing with the asserted governmental interests and land use experts. *Id.* ¶¶ 7-8. Prior to entering private practice, he was Director of Litigation for the nonprofit organization The Becket Fund for Religious Liberty, and supervised several attorneys in religious rights litigation. *Id.* ¶ 5. In 2004, Mr. Storzer entered private practice and since then has represented many religious organizations in RLUIPA and constitutional litigation. *Id.* Robin Pick is an associate at Storzer & Associates, a graduate of the University of Pennsylvania law school, and has practiced law at various law firms, including Venable LLP. Declaration of Robin N. Pick, submitted herewith ¶¶ 1, 4-5. In this litigation, she engaged in legal research and writing, preparation of trial exhibits, and preparation of affidavits for expert witnesses. *Id.* ¶ 6. Sarah Child is a recent graduate of Regent University School of Law, where she was the Managing Editor of its Law Review and is now employed with the U.S. Department of Education. Declaration of Sarah E. Child ¶¶ 1, 4. She participated in legal research and writing with respect to the appeal in this matter. *Id.* ¶ 6.

The law firm of Stepanovich Law PLC has broad experience in complex federal religious freedom and civil rights litigation, both in the Federal and State Courts throughout the United States. John Stepanovich is an experienced litigator who has been specializing in these areas for close to 30 years. Mr. Stepanovich was the lead trial attorney in this action. *See* Declaration of John Stepanovich ("Stepanovich Dec.") ¶¶ 1, 3. He began his practice of law as a prosecuting attorney where he tried serious felonies including death penalty cases. He served as Deputy Chief Counsel, Senior Counsel and Director of Operations of the American Center for Law and Justice, an international public interest law firm specializing in religious liberties litigation. Stepanovich Dec. ¶ 3. In that capacity he has appeared as co-counsel of record in the United States Supreme

Court on three occasions as well as counsel for *amici curiae* on numerous other occasions. Stepanovich Dec. ¶ 3. Mr. Stepanovich has published legal articles and lectures on RLUIPA and is a Life Member of the Multi-Million Dollar Advocates Forum, as well as a lifetime achievement membership in America's Top 100 Attorneys. Stepanovich Dec. ¶ 4. Jonathan Young has been with Stepanovich Law since April 2013. While in law school at Regent University, Mr. Young was Senior Editor of the Regent Journal of Law & Public Policy and captain of the Moot Court Team. Declaration of Jonathan Young ¶¶ 4-6.

Roman Storzer and John Stepanovich both litigate RLUIPA and other complex cases across the country. Storzer Dec. ¶ 5; Stepanovich Dec. ¶ 4.

### 2. Plaintiffs' Counsel Has Been Paid the Requested Rates.

All of Plaintiffs' counsels' bills at the blended rate of $375-$420 (as well as the earlier lower rates) have been paid. Savad Dec. ¶ 28; Churgin Dec. ¶ 11; Stepanovich Dec. ¶ 4; Storzer Dec. ¶ 9. This blended rate is less than Plaintiffs' counsel charges some clients in similar matters. Savad Dec. ¶¶ 17, 21-22; Storzer Dec. ¶ 9. The fact that Plaintiffs' counsel charged, and was paid, the requested rates is evidence that the rate is more than reasonable. *Rozell*, 576 F. Supp. 2d at 544 (S.D.N.Y. 2008) (the evidence of fees actually charged supports the rates requested by a party's counsel).

### 3. The Requested Rates are Lower than the Hourly Rates Charged by Defendants' Counsel.

Perhaps the best indication of the reasonable rate for similar litigation is to compare the rates <u>actually</u> billed by Defendants' counsel (and paid by Defendants) in <u>this</u> litigation. Defendants' counsel has generally billed at a higher rate than Plaintiffs' counsel, despite the fact that many of Defendants' attorneys have practiced for less time than many of Plaintiffs' attorneys:

| Time Period | Plaintiffs' Counsel's Billable Hourly Rate | Defendants' Counsel's Billable Hourly Rate |
| --- | --- | --- |
| 2005 through October 2007 | $375 for partners<br><br>$350 for senior associates<br><br>$300 for junior associates | $700 for Marci Hamilton<br><br>$375 blended rate for all Robinson & Cole attorneys |
| October 2007 through 2008 | $375 blended rate for all attorneys | $700 for Marci Hamilton<br><br>$375 blended rate for all Robinson & Cole attorneys |
| 2009 through 2015 | $375 blended rate for all attorneys | $700 for Marci Hamilton<br><br>$388 blended rate for all Robinson & Cole attorneys |
| January 2016 through May 2016 | $400 blended rate for all attorneys | $700 for Marci Hamilton<br><br>$388 blended rate for all Robinson & Cole attorneys |
| June 2016 through December 2016 | $400 blended rate for all attorneys:<br><br>(Paul Savad admitted 1967<br><br>John Stepanovich admitted 1984<br><br>Roman Storzer admitted 1996<br><br>Donna Sobel admitted 1998) | $700 for Marci Hamilton (admitted 1989)<br><br>$490 for John Peloso (admitted 1989)<br><br>$440 for Andrea Napp (admitted 2004)<br><br>$330 for Karla Chaffee (admitted 2009)<br><br>$290 for Amanda Gordon (admitted 2011) |
| 2017 through March 2018[5] | $420 blended rate for all attorneys<br><br>(Paul Savad admitted 1967<br><br>John Stepanovich admitted 1984<br><br>Roman Storzer admitted 1996 | $700 for Marci Hamilton (admitted 1989)<br><br>$505 for John Peloso (admitted 1989)<br><br>$465 for Thomas Donlon (admitted 1978) |

---

[5] Plaintiffs submitted a FOIL request to Pomona in order to obtain the rates post-March, 2018, but have not received a response to that request. Churgin Dec. ¶ 42, fn 4.

| | Donna Sobel admitted 1998) | $455 for Andrea Napp (admitted 2004)

$355 for Karla Chaffee (admitted 2009) |
| --- | --- | --- |

Churgin Dec. Exs. A, E-M; Stepanovich Ex. A; Storzer Ex. A.

From the inception of this case through May of 2016, Plaintiffs' counsel and Defendants' litigation counsel, Robinson & Cole, billed at similar blended hourly rates, while Defendants' RLUIPA counsel, Marci Hamilton, billed $300-$325 more per hour than Plaintiffs' attorneys. Beginning in June, 2016 Defendants' counsel billed at significantly higher rates than Plaintiffs' counsel. In the final analysis, there is no better evidence of the reasonableness of Plaintiffs' counsel's rates than the fact that Defendants paid their counsel significantly higher rates in this very case.

    4.  <u>The Requested Rates are Consistent with Rates Charged in the District.</u>

To determine a reasonable rate, courts look at evidence of rates charged in this District. This includes (1) affidavits of attorneys with similar experience who are not affiliated with a party's counsel who attest that the rates sought are similar to their own rates and are within the range typically charged by attorneys in this field with comparable experience and (2) evidence that courts in this district have awarded rates similar to those sought. *Rozell*, 576 F. Supp. 2d at 545-46.

Russell M. Yankwitt, the chairperson of the Westchester Committee of the Federal Bar practices in the Westchester Courthouse of the Southern District of New York, believes that the rates sought in this application are lower than the prevailing hourly rates charged in New York State and Federal Courts for experienced federal court litigators in these type of cases. Declaration of Russell Yankwitt, submitted herewith ("Yankwitt Dec.") ¶¶ 13-14. In fact, Mr. Yankwitt charges $575 per hour, $450-500 per hour for his other partners and of counsel attorneys, and $350

per hour for associates. Yankwitt Dec. ¶ 11. Thus, Tartikov's blended hourly rate of $375 to $420 is well below the prevailing rate for similar work in the Southern District of New York. Yankwitt Dec. ¶ 14.

Mr. Savad's, Mr. Stepanovich's, Mr. Storzer's and Mr. Rice's rate of $375 to $420 is significantly lower than that which has been found to be reasonable for attorneys with their level of experience in complex litigation in the Southern District of New York. *See LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) ($600 hourly rate); *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225-26 (S.D.N.Y. 2011), *aff'd*, 700 F.3d 631 (2d Cir. 2012) ($425-$625 hourly rate); *Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507, 514 (S.D.N.Y. 2010), *on reconsideration in part*, No. 06 CIV. 593 (DC), 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010) ($500-$550 hourly rate); *Rozell*, 576 F. Supp. 2d at 546 ($600 hourly rate); *Coakley v. Webb*, No. 14 CIV. 8438 (ER), 2016 WL 1047079, at *4–5 (S.D.N.Y. Mar. 10, 2016) ($550 to $650 hourly rate); *Abdell v. City of New York*, No. 05-CV-8453 RJS, 2015 WL 898974, at *5 (S.D.N.Y. Mar. 2, 2015) ($650 hourly rate); *Long v. City of New York*, 09-CV-6099, Doc. 39 (S.D.N.Y. 2010) ($650 hourly rate).

Ms. Cooper's, Ms. Kraemer's, Ms. Pacun's, Ms. Sobel's and Mr. Churgin's rate of $375 to $420 is also lower than that which has been found to be reasonable for attorneys with their level of experience. *See Alicea v. City of New York,* 272 F. Supp. 3d 603, 611 (S.D.N.Y. 2017) ($500 hourly rate); *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp. 3d 554, 561 (S.D.N.Y. 2018) ($500 hourly rate); *LCS Grp. LLC v. Shire LLC,* 383 F. Supp. 3d 274, 279 (S.D.N.Y. 2019) (subsequent history omitted) ($449.50 hourly rate); *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) ($375 hourly rate).

Finally, even if the $375-$420 rate was not a reasonable individual rate for some of the attorneys, it would still be reasonable in light of the fact that it is a blended rate, which in effect, results in more experienced attorneys charging so much less than is customary for attorneys with their experience and credentials.

## 5. This is a Complex Case.

This is a complex case, which spanned more than a decade, including a ten-day bench trial and appeals to the Second Circuit. *See* Sobel Dec. ¶ 9. Following the extensive motion to dismiss, discovery included drafting Plaintiffs' initial disclosures and reviewing Defendants' initial disclosures, drafting a Joint ESI Plan, drafting and reviewing Defendants' responses to Plaintiffs' document requests, ESI interrogatories, general interrogatories and requests to admit, responding to Defendants' document requests, ESI interrogatories and general interrogatories, reviewing client documents for responsiveness and privilege and producing more than 5000 pages of documents, reviewing 38,000 Bates-numbered documents produced by Defendants and synthesizing the information contained in those documents, reviewing more than 2000 pages of documents produced by non-parties in response to subpoenas, preparing Plaintiffs' privilege log and reviewing Defendants' privilege log and preparing for, taking and defending a total of more than 30 depositions. There were multiple conferences and correspondence with opposing counsel to resolve discovery disputes, including letter briefs and two in-person hearings regarding discovery disputes.  Cooper Dec. ¶ 7; Sobel Dec. ¶ 9.

Counsel worked on motions by both parties for summary judgment, which included a pre-motion conference and correspondence, moving papers (including a 60-page memorandum of law).  In addition to the Rule 56.1 Statement of Material Facts, there were four fact declarations, six expert declarations and an attorney declaration with exhibits and deposition transcripts.  In

opposition to Defendants' motion, Plaintiffs' counsel prepared a 60-page memorandum of law that addressed more than 20 distinct legal arguments, as well as a Counter Statement of Material Facts and an attorney declaration.  Plaintiff's counsel's reply papers included a 30-page memorandum of law; an attorney declaration and an expert declaration.  Plaintiffs' counsel also prepared for oral argument on the gamut of issues raised in the parties' respective papers.  Plaintiffs also moved for reconsideration of portions of the summary judgment decision and opposed Defendants' motion for reconsideration of portions of the summary judgment decision.  Sobel Dec. ¶ 9.

Plaintiffs' counsel's trial preparation included creating an extensive trial outline of proof of topics to prove all legal assertions, identifying exhibits, deposition testimony, witnesses and drafting questions to prove points from the trial outline of proof, preparing a Joint Pre-Trial Order, drafting and opposing motions in limine, drafting a pre-trial memorandum of law; preparing deposition designations of four witnesses and objections to Defendants' Deposition Designations of five witnesses; preparing Proposed Findings of Fact and Conclusions of Law; preparing declarations in lieu of direct testimony for six fact witnesses and six expert witnesses; preparing objections to declarations in lieu of direct testimony for Defendants' witnesses; preparing questions for the examination of nine hostile witnesses and two expert witnesses, including identification of exhibits and deposition testimony for impeachment and refreshing recollection. Sobel Dec. ¶ 9.

Following trial, Plaintiffs' counsel prepared a post-trial memorandum of law, proposed Findings of Fact, including supporting trial testimony and exhibits, proposed Conclusions of Law, and exhibit lists.  Plaintiffs' counsel prepared for post-trial oral argument and closing arguments. Following the Court's decision, Plaintiffs' counsel prepared multiple versions of the proposed

Judgment and Mandatory Injunction in response to Defendants' counsel's correspondence to the Court regarding the same.  Sobel Dec. ¶ 9.

In response to Defendants' appeal of the Decision and Judgment, Plaintiffs' counsel prepared appeal documents, including conducting research on all issues raised on appeal, reviewing and selecting documents and testimony for joint appendix, preparing factual summaries, drafting appeal briefs, preparing and defending against motions; and preparing for oral argument. Sobel Dec. ¶ 9.

## B.    The Hours Expended Were Necessary and Appropriate For This Complex Litigation.

### 1.    Plaintiffs' Counsel's Hours are Reasonable Because This is Complex Litigation.

As recognized by this Court, there was "a lot of material to marshal," Docket No. 355 at 94:9-10, and this was a "very challenging case."  Churgin Dec. Ex. R at 84:14.  The time expended on this matter was necessary to deal with the complexities of the issues.  This case involved interrelated facts from more than a decade and involved federal and state constitutional claims. The time expended was reasonable and necessary to achieve the results.  *See Restivo v. Hessemann*, 846 F.3d 547, 591-92 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 644 (2018) (11,222.6 hours of attorney time (other than hours of travel time billed as attorney work time) was reasonable over the eight years that the case was litigated in the district court).

### 2.    Plaintiffs' Counsel's Hours are Reasonable Because They Avoided Duplicative Work.

Plaintiffs' counsel vigilantly avoided duplicative work and did not use multiple attorneys unless the variety and complexity of particular aspects of the proceedings made it necessary or they were strategizing or conferring regarding issues.  Savad Dec. ¶¶ 12-16.  Each attorney took the lead on specific issues and focused on different aspects of the case in order to establish an

efficient and effective work flow and much of the supervisory work was not billed. Savad Dec. ¶¶ 12-16, 26; Stepanovich Dec. ¶¶ 1, 6-7; Storzer Dec. ¶¶ 7-8; Cooper Dec. ¶ 6; Catina Dec. ¶ 7; Pacun Dec. ¶ 6; Sobel Dec. ¶¶ 7-8; Churgin Dec. ¶ 6. It is reasonable to have multiple attorneys work on the same portion of a case, where the tasks are divided among them. *Wise v. Kelly*, 620 F. Supp. 2d 435, 453, 455 (S.D.N.Y. 2008).

        3.     <u>Plaintiffs' Counsel's Hours are Reasonable in Light of Positions Taken by Defendants.</u>

The hours expended by Plaintiffs' counsel are reasonable in light of the fact that much of the work was due to the unsuccessful positions and defenses taken by Defendants. For example, Defendants asserted up to eleven governmental interests for each of the four Challenged Laws. However, at trial, Defendants appeared to have abandoned most of those interests. Plaintiffs had to engage in discovery on all of those purported interests and Plaintiffs had to engage four land use expert witnesses on those interests. Sobel Dec. ¶ 10; *see infra* § III.

Defendants also asserted 27 affirmative defenses, <u>all</u> of which were dismissed at the summary judgment stage of the litigation. Plaintiffs were required to address and argue these issues on summary judgment and the scope of discovery was broader based on some of those defenses, including correspondence with the Court, a hearing regarding the discovery scope and additional third-party depositions. Sobel Dec. ¶ 10.

        4.     <u>Plaintiffs' Counsel's Hours are Reasonable Because of the Fact-Intensive and Complex Discovery.</u>

This was fact-intensive complex litigation which necessitated fact-intensive and complex discovery. The case involved the consideration and passage of four different laws over nearly a decade, from 1999 through 2007. Defendants produced more than 38,000 Bates-numbered documents. Approximately 22,000 of these documents were produced as electronic documents

that contained one Bates number for the entire document, regardless of how many pages were contained in the document. The number of pages of documents that had to be reviewed was therefore significantly higher than 38,000. Plaintiffs had an attorney review each document and identify which legal theories and factual bases for those theories applied to each document, or to specific portions of the document. Sobel Dec. ¶¶ 11-13.

The tasks required significant time because many of the documents were produced multiple times- sometimes in identical form, sometimes with variations. Thus, it was necessary to review each document in detail, even if it appeared to be the same as another produced document. Had Plaintiffs' counsel not reviewed every document in detail, including documents that initially appeared to be duplicative, they would not have become aware of the fact that Defendants were scheduled to meet to discuss Tartikov in ten unauthorized executive sessions during the time-period that two of the Challenged Laws were considered and introduced. Sobel Dec. ¶¶ 15-24, Exs. A-J. This critical fact was relied upon by the Court in finding that Defendants acted with discriminatory animus and that Local Law No. 1 of 2007 served no compelling interests. *Tartikov III* at 462 (S.D.N.Y. 2017). If Plaintiffs' counsel had not engaged in such a detailed review of the voluminous documents produced by Defendants, these relevant facts could have been missed.

     5.    <u>Plaintiffs' Counsel's Hours are Reasonable Based on Defendants'<br>Expenditures in this Litigation.</u>

Defendants actually paid their attorneys nearly the same amount that Plaintiffs are seeking, paying $5,110,134.29 for litigation expenses through October, 2017[6] while Plaintiffs are seeking $5,130.528.48 in attorneys' fees for a similar time-period in the same litigation. Churgin Dec. ¶¶

---

[6] On April 1, 2020 Plaintiffs served a FOIL request for fees paid by the Village since December 7, 2018. Plaintiffs have not yet received a response to that FOIL request. Churgin Dec. n.4.

13 and 43; Exs. N and Q. This fact alone is perhaps the single most important piece of evidence that "a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (the relevant issue is "not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.").

With this payment arrangement, Defendants have implicitly agreed that $375-$420 is a reasonable amount to spend on fees and costs in this litigation. Allowing Defendants to pay the prevailing Plaintiffs less than they paid their own attorneys would thwart Congress' intent that municipalities that target and discriminate against minority religions should pay for the vindication of these rights.

### C. The Plaintiffs Are Entitled to Costs and Legal Assistant Fees.

The Court found that Plaintiffs are also entitled to costs in connection with the litigation. Docket No. 356. Attorneys' fees awards include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989). Plaintiffs' costs are included in itemized statements and are of the type usually billed in addition to an attorney's hourly rates. Churgin Dec. ¶¶ 17, 48; Exs. B and C; Stepanovich Ex. A; Storzer Ex. A.

Tartikov is also seeking reimbursement for fees for work performed by legal assistants. The work was billed out at a rate of $50-$300, depending on the level of expertise and the task required. Fees of paralegals are included in attorneys' fees awards. *Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571 (2008); *Coe v. Town of Blooming Grove*, 714 F. Supp. 2d 439 (S.D.N.Y. 2010), *vacated,* 429 Fed. Appx. 55, 2011 WL 2881329, *on remand* 880 F. Supp. 2d 411. Plaintiffs'

fees for work performed by legal assistants are included in Plaintiffs' bills. Churgin Dec. ¶ 13; Exs. A and C.

## III. PLAINTIFFS ARE ENTITLED TO ALL OF THEIR FEES WITHOUT REDUCTION BECAUSE THEY ACHIEVED SUBSTANTIAL RESULTS AND ALL OF THEIR CLAIMS DERIVE FROM A COMMON CORE OF FACTS.

It is undisputed that Plaintiffs were prevailing parties in this litigation and are entitled to fees. 42 U.S.C. § 1988(b); *Tartikov IV*, at 125, n.288. Because Plaintiffs achieved substantial results in this litigation, and because all of their claims involved a common core of facts and are inextricably intertwined, as set forth below, they are entitled to all of their fees. The Second Circuit has made it clear that

> Attorney's fees <u>may be awarded for unsuccessful claims</u> as well as successful ones, however, where they are "'inextricably intertwined' and 'involve a common core of facts or are based on related legal theories.'" *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir. 1996) (quoting *Dominic v. Consolidated Edison Co. of New York,* 822 F.2d 1249, 1259 (2d Cir. 1987)) (alteration omitted).

*Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (emphasis added).

> [I]f the plaintiff won substantial relief, and all of his claims for relief "involve[d] a common core of facts" or were "based on related legal theories," so that "[m]uch of counsel's time w[as] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," there should be a fee award for all time reasonably expended. *Id.* at 435, 103 S.Ct. at 1940.

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998). Local Laws 1 of 2001, 5 of 2004, and 1 of 2007 all involve various permutations of the special use standards and definitions for schools and educational institutions.[7] These laws all involve the same two zoning provisions,

---

[7] Plaintiffs were completely successful with respect to the one law that was at least somewhat distinct from the others, the Village's "Wetlands" Law. However, even that law was intertwined with the educational institutions provision. *See Tartikov IV* at 123 ("With regard to the 2007 Wetlands Law, the district court found that <u>two provisions working in tandem</u> prevented construction of a TRC-like project anywhere in Pomona. The 10 net acre minimum lot size for educational institutions ensured that TRC's lot was the only site in Pomona large enough for the proposed college. And the required 100-foot buffer between constructed features and wetlands

Sections 130-4 and 130-10(F) of the Village's zoning ordinance.  As discussed below, nearly all of counsel's efforts applied to "the litigation as a whole," and likewise here cannot be divided on a claim-by-claim basis.  143 F.3d at 762.

The first step in the analysis of determining the reasonableness of a fee award is to review the degree of success obtained, and here, this success was substantial.  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotations omitted).  Plaintiffs succeeded in obtaining an injunction striking down two laws.  The fact that the two other challenged laws so far have survived does not change this.  The Supreme Court and Second Circuit have made clear that a decrease of a fee award is not appropriate when a plaintiffs achieve "substantial" or "significant" results, and when their claims arose from the same common core of facts.  *See Valmonte v. Bane*, 895 F. Supp. 593, 600-01 (S.D.N.Y. 1995) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 135 (2d Cir. 1994) ("In light of the substantial results that plaintiff has achieved, . . . and <u>absent any evidence that plaintiff's unsuccessful claims were brought frivolously</u>, this Court is not 'required' to reduce the fee award 'to reflect [plaintiff's] failure to succeed across the board.'" (emphasis added))).  There is no argument from the Village that any of Plaintiffs' claims were brought frivolously.  The fact that Plaintiffs prevailed on many claims at the District Court level is evidence that these claims, while ultimately unsuccessful, were certainly not frivolous.

Under such circumstances, the Supreme Court has "explicitly rejected both rote counting of prevailing and unsuccessful claims, and the so-called 'central issue' test for establishing the relative importance of claims."  *Valmonte*, 895 F. Supp. at 600 (citing *Hensley*, 461 U.S. at 435, n.11, and *Tex. State Teachers Ass'n v. Garland Indep. School Distr.*, 489 U.S. 782, 790 (1989)).

---

guaranteed TRC could not build on the property, because the only suitable location for a driveway fell within 100 feet of wetlands." (emphasis added)).

Here, Plaintiffs brought their lawsuit against Defendants for purposely enacting laws that completely prohibited Plaintiffs' ability to construct their rabbinical college. Plaintiffs sought "an order enjoining the enforcement of the Challenged Laws . . . ." *Tartikov III* at 494. After a bench trial, the Court held that Plaintiffs "established violations of the First and Fourteenth Amendments of the United States Constitution, certain provisions of RLUIPA, the FHA, and §§ 3, 9, and 11 of the New York State Constitution," explained that Plaintiffs' requested relief was "an appropriate and adequate remedy," and "held that Defendants cannot enforce the Challenged Laws against Tartikov." *Id.* at 494-95.

The Second Circuit held that Plaintiffs prevailed on their RLUIPA Nondiscrimination and equal protection claims with respect to the 2007 educational institution and 2007 wetlands laws, and the Court enjoined their enforcement by the Village. *Tartikov IV at* 126. These are "significant" or "substantial" results, regardless of whether the Second Circuit found that Plaintiffs lacked "standing" to raise facial challenges under some legal theories but not others, or decided that the 2001 and 2004 Laws were not motivated by discriminatory intent. Local Law No. 1 of 2007 related to the central issue in this matter: the provision for student family housing for educational institutions. Most importantly, in addition to the other limitations imposed by that Law, the restriction to 20% total square footage for housing was one of the greatest impediments- -an effective prohibition--to Plaintiffs being able to develop and operate their Rabbinical College.[8]

---

[8] While the complete prohibition on student family housing imposed by Local Law No. 5 of 2004 certainly also prevents the development of the Rabbinical College; however, it is at least very likely that this provision will be struck down in a later challenge to the law when Plaintiffs are deemed to have "standing," as the Second Circuit agreed with many of Plaintiffs' substantive arguments regarding the same:

> [The Village] argues that the burdens identified by the district court are insubstantial because students could live off campus, TRC could buy more land, and living on campus was not essential to TRC's proposed Torah community.

Instead, the Supreme Court has adopted the "common core of facts" approach:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  As the Second Circuit has held:

> So long as the plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount.

*Lunday*, 42 F.3d at 134.  *See also LeBlanc-Sternberg*, 143 F.3d at 762 (quoting *Hensley*, 461 U.S.

at 434-35 ("No fees should be awarded for time spent pursuing a failed claim if it was 'unrelated'

to the plaintiff's successful claims in the sense that it was 'based on different facts and legal

---

> . . . . There is sufficient basis in the record to conclude, as the district court did, that on campus housing of the nature Tartikov sought was important to the exercise of Tartikov's faith because it would allow students to be near their families while maintaining a diligent study schedule. Further, Pomona has presented no evidence suggesting that the Village and surrounding community had sufficient housing for 1,000 students and 3,500 additional family members to live within walking or even driving distance of the TRC site without additional construction.

*Tartikov IV* at 123.  Additionally, the Court of Appeals' affirmance of this Court's holding regarding the unavailability of a variance will be equally applicable to a future challenge to the 2004 law:

> While the 2007 Wetlands Law allowed landowners who were deprived of all reasonable use of their property to apply for a permit, the parties' stipulated to the district court that TRC did not qualify for a permit because its property could be put to reasonable use – though not the use it desired.

*Id.* at 123.  Thus, the Second Circuit affirmed the 2007 dormitory and 2007 wetlands laws, which effectively prohibited the planned Rabbinical College, and affirmed findings that will likewise support a future challenge to the student family housing prohibition in the 2004 law.  Again, it cannot be disputed that Plaintiffs' success is at least "substantial."

theories.'")); *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) ("where . . . the plaintiff's claims involve a common core of facts or are based on related legal theories, and are therefore not severable, <u>attorney's fees may be awarded for unsuccessful claims as well as successful ones</u>" (emphasis added, internal quotation marks, citations, and alterations omitted)); *Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. 2015) ("District court's decision not to reduce fees on the basis of partial success" was not an abuse of discretion when "all of Plaintiffs' claims [arose] out of a common core of facts"); *LeBlanc-Sternberg*, 143 F.3d at 762 ("[w]hen a plaintiff has achieved <u>substantial</u> success in the litigation but has prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded" (emphasis added)); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 424-25 (S.D.N.Y. 2012) (internal quotation marks removed) ("where a plaintiff's claims for relief are inextricably intertwined and involve a common core of facts or are based upon related legal theories, the claims are considered related and the fee award need not be reduced, even if the plaintiff was unsuccessful on some of the claims"); *Valmonte*, 895 F. Supp. at 600-01 (court was not required to reduce fees when "plaintiff failed on all but one of the claims in her complaint and . . . the claim on which plaintiff succeeded was not the most important of her claims" when "plaintiff's claims derive[d] from a common core of facts"); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 425 (S.D.N.Y. 2012) (finding that there should be no reduction unless the "party lost on claims <u>unrelated to the ones on which he prevailed</u> <u>and</u> where <u>the overall level of success is low</u>." (internal quotation marks omitted, emphases added)). It can neither be said that Plaintiffs' unsuccessful claims were "unrelated" to their successful claims, nor that Plaintiffs' overall level of success was "low." Additionally, there

should be no reduction where Plaintiffs were not successful with respect to alternative legal theories on each of their individual claims challenging the local laws:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . [and] [i]n these circumstances <u>the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit</u>.

> Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 436 (citation and footnote omitted, emphasis added).

Applying these principles, there is no question that nearly all of counsel's time was devoted generally to the "litigation as a whole," *id.*, and it would be impossible to divide the time on a claim-by-claim basis. *See Broome v. Biondi*, 17 F. Supp. 2d 230, 233-34 (S.D.N.Y. 1997) (declining to reduce attorneys' fees for unsuccessful intentional infliction of emotional distress claim when it "rests squarely on the same facts that supported [plaintiffs'] discrimination suit" and "[t]he factual commonalities underlying these suits render time spent on both claims virtually indivisible"). The Plaintiffs' unsuccessful claims were related to their successful claims, and the overall level of success was substantial, having two Local Laws out of four (and two of the three most significant laws passed after Tartikov acquired the Property[9]) successfully struck down.

The Village of Pomona and its Board of Trustees engaged in an eight-year continuing scheme to regulate educational institutions. Regardless of the Second Circuit's decisions that (a) the two earlier challenged laws were somehow "innocent" land use regulations while only the two later laws--imposed by the same body and responsive to the same local residents' hostility toward Orthodox Jews--were targeted at this population; and (b) that, contrary to well-settled law, a facial

---

[9] While Plaintiffs also challenged Local Law No. 1 of 2001, that law did not prohibit outright the rabbinical college use, as the later challenged laws did.

challenge is not immediately ripe with respect to challenges brought under certain constitutional and civil rights provisions but not others, it cannot be disputed--and the Second Circuit's recent decision is not contrary to a holding--that all of Plaintiffs' claims derived from a common core of facts.

Significantly, Plaintiffs' unsuccessful claims, both at trial and in the Second Circuit, were based on the same core of facts as Plaintiffs' successful claims: Defendants' adoption of a specific zoning scheme to regulate educational institutions and Tartikov's Property. Defendants continued to tweak their ordinance in a manner that limits and excludes Plaintiffs' religious exercise. For the most part, the work performed on behalf of the Plaintiffs cannot be separated on the basis of the specific claim or local law at issue. As described below, Plaintiffs' counsel's time was spent on the litigation as a whole--as all of the claims arose from the same course of action of the Defendants to "address permissible development for educational purposes," 945 F.3d at 119, and therefore Plaintiffs' award should not be reduced based on their unsuccessful claims.

**Work related to Defendants' standing/ripeness arguments.** The Village's main defense throughout this litigation was that because Tartikov did not make an "application" for a use that they could not apply for, the Court lacked jurisdiction[10] to hear Plaintiffs' claims. A great amount of effort was spent in motions practice and during discovery to address this issue. The time spent regarding these challenged laws is indistinguishable between these laws; the time spent addressing Defendants' arguments would have been the same. As this Court held, the 2007 Laws prevent the rabbinical college from being built as much as the 2004 Law does (Plaintiffs did not challenge the 2001 Law as prohibiting outright the use). While the Court of Appeals decided that Plaintiffs did

---

[10] Whether correctly addressed as a "ripeness" issue (as this Court treated it), or as a "standing" issue as the Court of Appeals decided the matter, the result is the same. The law and the facts addressed by the parties applied equally to all claims and all of the challenged laws.

not have standing to facially challenge the Village's laws under some claims but somehow could facially challenge them under other theories, it did decide in favor of the Plaintiffs on certain theories and therefore the "common core of facts" related to these arguments were the same.

**Work related to demonstrating the religious nature of Plaintiffs' proposed use, and the challenged laws' burden on the same.** Defendants' next major line of defense was to claim that the proposed rabbinical college was not religious in nature at all, but merely a housing project. Of course, RLUIPA's Nondiscrimination provision only applies to discrimination against any "assembly or institution" on the basis of <u>religion</u> or <u>religious denomination</u>. 42 U.S.C. § 2000cc(b)(2). Further, this was a significant factor in the Second Circuit's holding regarding discriminatory effect. 945 F.3d at 123 ("There is sufficient basis in the record to conclude, as the district court did, that on campus housing of the nature Tartikov sought was important to the exercise of Tartikov's faith because it would allow students to be near their families while maintaining a diligent study schedule."). Challenged by the Defendants' resistance to the religious convictions of the Plaintiffs, great effort was undertaken throughout this litigation to demonstrate the sincerity of the individual students' religious beliefs to become rabbinical judges and the validity of the rabbinical college's Orthodox Hasidic Jewish purpose in establishing the school. Similarly, the evidence regarding burden on religious exercise was the same as demonstrating discriminatory effect. While also related to the claims on which Plaintiffs were unsuccessful, such effort was necessary and part of the "common core of facts" for purposes of Plaintiffs' successful claims.

**Work related to the Village's justification for the laws.** Similarly, a great amount of time in the litigation--including document production and review, depositions of Village officials, and expert witness discovery and testimony--was spent on the justifications of the Village for the

passage of the challenged laws such as claims that the laws were necessary to protect their environmental, traffic and infrastructure concerns. These purported concerns applied equally to the claims that succeeded as those that did not. As the Court noted,

> "Plaintiffs challenging . . . facially neutral laws on equal protection grounds bear the burden of making out a prima facie case of discriminatory purpose." *Pyke v. Cuomo*, 567 F.3d 74, 78 (2d Cir. 2009) . . . . If Plaintiffs make such a showing, the government action at issue is "subject to strict judicial scrutiny," such that the law may be upheld only if it "further[s] a compelling state interest and [is] narrowly tailored to accomplish [that] purpose." *Pyke II*, 567 F.3d at 77.

*Tartikov III*, 280 F. Supp. 3d at 448 (emphasis added).

These purported interests applied to the 2001/2004 Laws as they did to the 2007 Laws. The same work was required to address the justifications for the Village's law limiting housing to 20% of building area and the Wetlands Protection Law as for the original 2001 and 2004 Laws. Most witnesses at trial addressing these issues addressed justifications for all four laws. It would be impossible to distinguish between efforts related to the first two Laws and the next two.

**Work related to the Village's discriminatory motivation.** Similarly, the common core of facts for the Plaintiffs' discrimination claims are the same. There is no question that Plaintiffs would have investigated the differential and targeted treatment of the Orthodox Hasidic Jewish community since 2001 with respect to the 2007 Laws as well as the earlier challenged laws. Regardless of the Court of Appeals' replacement of the trier of fact's judgment for its own to determine that no reasonable factfinder could dispute that the Board of Trustees' motivations were innocent as the driven snow (and then became hostile discriminators two years later), the ongoing treatment of the Orthodox community and educational institutions are all part of one common core of facts. No reasonable attorney would have ignored the facts surrounding the 2004 Law (or earlier) even if only the 2007 Laws were at issue.

"Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."[215] This evidence may include "the series of events leading up to a land use decision, the context in which the decision was made, whether the decision or decisionmaking process departed from established norms, statements made by the decisionmaking body and community members, reports issued by the decisionmaking body, whether a discriminatory impact was foreseeable, and whether less discriminatory avenues were available."[216]

> [215] *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

> [216] *Chabad Lubavitch*, 768 F.3d at 199.

945 F.3d at 111 (emphases added).

The events and context leading up to the 2007 Laws include the environment in which the earlier challenged laws were contemplated and adopted. The Village's actions with respect to student housing--the same subject matter of the 2007 Educational Institution Law--in 2004 with respect to the Town of Ramapo[11] and its own jurisdiction are clearly within the same common core of facts, and also demonstrate the foreseeability of the effect of the later laws. Many of the key individuals, including Sanderson, Banks, Roman and Village Attorney Ulman (who wrote the 2004 and 2007 laws), were the same for both the laws on which Plaintiffs prevailed and those on which they did not. The specific targeting of student housing was the same with both laws.[12] It is unreasonable to believe that the intentions of many of the Village's residents were innocent in 2004 but somehow turned nefarious three years later. It would have been unreasonable for

---

[11] The Village's actions with respect to the 'threat' of Orthodox Hasidic schools with student family housing in Ramapo in 2004 are certainly related to the same threat of an Orthodox Hasidic school in Pomona in 2007.

[12] The Court of Appeals erroneously held that the 2007 Law created a 25-foot limit for dormitory buildings--which was one of the bases for its holding that the 2007 Educational Institution Law was discriminatory--when in fact it was the 2004 Law that did so. 945 F.3d at 120 (stating, with respect to the 2007 Law, that "it set a maximum height of 25 feet for any dormitory building.").

Plaintiffs to ignore these facts in discovery, motions and at trial, even if only the 2007 Laws were at issue.

Plaintiffs also spent considerable time defending against Defendants' unsubstantiated "severe distrust of Plaintiffs' motives." Despite the fact that there was no evidence, Defendants were "adamant that Plaintiffs' primary wish is not to build a rabbinical college, but rather a housing complex for Orthodox/Hasidic Jews and their families dressed as a college." *Tartikov III* at 446. As a result, Defendants fought for a broader scope of discovery. Through multiple meet and confer conferences, correspondence with the Court and court conferences, Defendants succeeding in obtaining the broader scope of discovery. Docket. Nos. 92, 93, 114, 115, 125, 126 Minute Entry of June 9, 2014. This necessitated more discovery, including a privilege review of documents of a non-party public relations firm and a deposition of the same. This work, which resulted in no evidence that was relevant to this case, would have occurred regardless of whether Plaintiffs prevailed on two or four of the Challenged Laws.

Especially given Defendants' litigation strategies--which were as applicable to Plaintiffs' successful claims as their unsuccessful claims--at least the vast majority of the attorneys' work would have been expended as to the 2007 Laws because it all derived from a common core of facts. Further, Plaintiffs achieved "substantial results," ultimately having two of four local laws struck down. *Valmonte v. Bane*, 895 F. Supp. at 600-01. Their attorney's fee award should not be reduced.

In RLUIPA cases in particular, courts have consistently found that plaintiffs' multiple claims related to the same allegedly discriminatory events involved common facts and legal theories. In *DiLaura v. Twp. of Ann Arbor*, the Sixth Circuit found that the district court abused its discretion by reducing plaintiffs' fee award in an RLUIPA case by 60 percent when plaintiffs

did not prevail on most of their claims. *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 673, 673 n.3 (6th Cir. 2006), *as amended on denial of reh'g and reh'g en banc* (June 12, 2007). That court explained that the district court improperly treated the plaintiff's various claims as distinct, when "all of the claims were based on the defendants' refusal to grant the plaintiffs permission to operate a religious retreat, and all of the claims were designed to enable use of the property at issue as proposed." *Id.* at 673, 673 n.3. Instead, the court should have focused on Plaintiff's overall success on the RLUIPA claim. *Id.* at 73. *See also LeBlanc-Sternberg*, 143 F.3d at 762 (awarding full attorneys' fees to Plaintiffs who obtained injunctive relief against Village in civil rights action, despite failed damage claims, because "plaintiffs' legal and equitable claims against the Village were clearly based on the same conduct and the same FHA and First Amendment principles").

## CONCLUSION

Municipalities that discriminate do not deserve to profit from their conduct. Both this Court and the Second Circuit determined that the Defendants' purposely passed laws designed to keep Plaintiffs' religious school out of the Village of Pomona. After trial and appeal there can be no doubt that Plaintiffs prevailed against this intentional discrimination. It is now time for the Defendants to pay. Allowing Defendants a discount for anything less than payment for the significant results Plaintiffs achieved in this case cheapens their victory and rewards Defendants for being "partial" discriminators. The law does not bestow any benefit for such behavior.

Wherefore, Plaintiffs respectfully request an award of $5,625,711.06 in attorneys' fees and $145,207.15 in costs, for a total of $5,770,918.21.


Dated:      Nanuet, New York
             May 13, 2020

                           __/s/ Donna C. Sobel_____
                              Donna Sobel (DS 3267)

Joseph A. Churgin (JC 6854)
Savad Churgin LLP
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954

Roman P. Storzer (admitted *pro hac vice*)
Storzer & Greene, P.L.L.C.
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20036

John G. Stepanovich (JS 8876)
Stepanovich Law, PLC
618 Village Drive, Suite K
Virginia Beach, Virginia 23454

*Attorneys for Plaintiffs*