UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., *et al.*,

                                        Plaintiffs,

          -v-

VILLAGE OF POMONA, *et al*.,

                                        Defendants.

No. 07-CV-6304 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Joseph Allan Churgin, Esq.
Paul Savad, Esq.
Susan E. Cooper, Esq.
Donna Corby Sobel, Esq.
Savad Churgin, Attorneys at Law
Nanuet, NY
*Counsel for Plaintiffs*

Roman P. Storzer, Esq.
Storzer & Greene, P.L.L.C.
Washington, DC
*Counsel for Plaintiffs*

John George Stepanovich, Esq.
Stepanovich Law P.L.C.
Virginia Beach, VA
*Counsel for Plaintiffs*

Robert Leo Greene, Esq.
Law Office of Robert K. Greene
New York, NY
*Counsel for Plaintiffs*

Terry August Rice, Esq.
Law Office of Terry Rice
Suffern, NY
*Counsel for Plaintiffs*

Andrea Donovan Napp, Esq.
John Francis Xavier Peloso, Jr., Esq.
Joseph L. Clasen, Esq.
Karla Chaffee, Esq.
Amanda E. Schreiber, Esq.
James A. Wade, Esq.
Thomas J. Donlon, Esq.
Robinson & Cole LLP
Hartford, CT
Stamford, CT
New York, NY
Boston, MA
*Counsel for Defendants*

Marci A. Hamilton, Esq.
The Law Office of Marci Hamilton
Washington Crossing, PA
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiffs, including Rabbinical College of Tartikov ("Tartikov"), brought this Action to challenge certain zoning and environmental ordinances enacted by Defendants, including the Village of Pomona (the "Village"), which prevented Tartikov from building a rabbinical college in the Village. (*See* Second Am. Compl. ("SAC") (Dkt. Nos. 28, 28-2).) Before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs (the "Motion"). (Not. of Mot. for Att'ys' Fees and Costs ("Not. of Mot.") (Dkt. No. 396).) For the reasons that follow, Plaintiffs' Motion is granted in part, and Defendants are directed to pay Plaintiffs $2,481,661.62, consisting of $2,390,927.20 in attorneys' fees and $90,734.42 in costs.

## I.  Background

This case has been ongoing for more than a decade. The operative Second Amended Complaint ("SAC") was filed in November 2007. (SAC.) Plaintiffs challenged Village laws preventing construction of a rabbinical college and accompanying family dormitories. (*Id.*) In

January 2013, the Court granted in part and denied in part Defendants' Motion To Dismiss.  (Op. & Order ("MTD Op.") (Dkt. No. 53).)  The Court dismissed claims by Plaintiff Kolel Belz for lack of standing, dismissed Plaintiffs' as-applied challenges as unripe, and otherwise denied Defendants' motion.  (*Id*.)  In 2015, after discovery, the Court granted in part and denied in part the Parties' Motions For Summary Judgment.  (Op. & Order ("MSJ Op.") (Dkt. No. 207).)  The Court granted summary judgment to Defendants as to Plaintiffs' Free Speech and Article I, § 8 New York Constitution claims, granted summary judgment to Plaintiffs as to Defendants' affirmative defenses, and otherwise denied the Motions.  (*Id*.)  After a two-week bench trial in May and June 2017, the Court in December 2017 found that Plaintiffs established violations of the First and Fourteenth Amendments of the United States Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Fair Housing Act ("FHA"), and §§ 3, 9, and 11 of the New York State Constitution.  (Op. & Order ("Trial Op.") (Dkt. No. 333).)  The Court held that discriminatory purpose tainted each of four challenged Village ordinances (the "Challenged Laws").  (*Id*. at 28–39.)  On March 20, 2018, the Court entered judgment enjoining the Challenged Laws and providing additional injunctive relief.  (J. & Mandatory Inj. ("2018 J.") (Dkt. No. 356).)

Plaintiffs first moved for attorneys' fees at this juncture.  (Not. of Mot. for Att'ys' Fees & Costs Pursuant to 2018 J. ("2018 Fees Mot.") (Dkt. No. 360).)  Meanwhile, Defendants appealed the 2018 Judgment, (Not. of Appeal (Dkt. No. 358)), and Plaintiffs cross-appealed the Court's prior orders dismissing some of their claims, (Not. of Cross-Appeal (Dkt. No. 359)).  The Second Circuit in December 2019 affirmed the Court's judgment with respect to Local Law No. 1 of 2007 (the "2007 Dormitory Law") and Local Law No. 5 of 2007 (the "2007 Wetlands Law"; collectively, the "2007 Laws"), but reversed it with respect to Local Law No. 1 of 2001 (the

"2001 Law") and Local Law No. 5 of 2004 (the "2004 Law"), and vacated all additional injunctive relief. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 945 F.3d 83, 126 (2d Cir. 2019). The Second Circuit affirmed the portions of the Court's judgment challenged on cross-appeal. *Id*. On February 6, 2020, the Second Circuit denied Plaintiffs' petition for rehearing. (Dkt. No. 224, 18-1062 Dkt. (2d Cir.).) A week later, on February 13, 2020, the Second Circuit issued its mandate. (Dkt. No. 387.) On March 19, 2020, the Court entered judgment consistent with the Second Circuit's mandate. (J. ("2020 J.") (Dkt. No. 390).) On March 24, 2020, Plaintiffs requested that the Court set a briefing schedule for a supplemental attorneys' fees application related to their work on appeal. (Dkt. No. 391.) On March 30, 2020, the Court terminated Plaintiffs' 2018 Fees Motion, and ordered Plaintiffs to submit a revised motion for fees, consolidating their requests for fees stemming from trial court and appeals court work. (Dkt. No. 393.)

Plaintiffs filed the instant Motion on May 13, 2020. (*See* Not. of Mot.; Pls.' Mem. of Law in Supp. of Mot. ("Pls.' Mem.") (Dkt. No. 397); Decl. of Joseph A. Churgin ("Churgin Decl.") (Dkt. No. 398); Decl. of Paul Savad ("Savad Decl.") (Dkt. No. 399); Decl. of Donna C. Sobel ("Sobel Decl.") (Dkt. No. 400); Decl. of Susan Cooper ("Cooper Decl.") (Dkt. No. 401); Decl. of Laura M. Catina ("Catina Decl.") (Dkt. No. 402); Decl. of Beth Pacun ("Pacun Decl.") (Dkt. No. 403); Decl. of Roman P. Storzer ("Storzer Decl.") (Dkt. No. 404); Decl. of Sarah E. Child ("Child Decl.") (Dkt. No. 406); Decl. of John G. Stepanovich ("Stepanovich Decl.") (Dkt. No. 407); Decl. of Jonathan M. Young ("Young Decl.") (Dkt. No. 408); Decl. of Russell M Yankwitt ("Yankwitt Decl.") (Dkt. No. 409); Decl. of Terry Rice ("Rice Decl.") (Dkt. No. 410);

Decl. of Robin Pick ("Pick Decl.") (Dkt. No. 411).)[1]  The Motion seeks $5,625,711.06 in fees and $145,207.15 in costs, pursuant to 42 U.S.C. § 1988(b), 42 U.S.C. § 3613(c)(2), Federal Rule of Civil Procedure 54, and Southern District of New York Local Rule 54.1.  (Pls.' Mem. 1.)

Plaintiffs seek fees for three law firms that it retained for the litigation.  First is Savad Churgin, Attorneys at Law ("Savad Churgin"), which was responsible for case strategy, discovery, and factual proof at trial.  (Churgin Decl. ¶ 7.)  Paul Savad ("Savad") served as lead counsel.  (Savad Decl. ¶ 12.)  Joseph Churgin ("Churgin") supervised and worked on discrete tasks after the motion to dismiss stage.  (Churgin Decl. ¶ 6.)  Donna Sobel ("Sobel") coordinated discovery review and Plaintiffs' discrimination claims.  (Sobel Decl. ¶¶ 7–8.)  Susan Cooper ("Cooper") researched state law issues related to the complaint and the motion to dismiss. (Cooper Decl. ¶ 6.)  Laura Catina ("Catina") identified and collected relevant municipal and other records.  (Catina Decl. ¶ 7.)  Beth Pacun ("Pacun") found experts and assisted with Jewish law issues.  (Pacun Decl. ¶ 6.)  Second is Storzer & Associates, P.C. (the "Storzer Firm"). Roman Storzer ("Storzer") researched federal and state constitutional and civil rights issues, particularly RLUIPA, and argued in the Second Circuit.  (Storzer Decl. ¶¶ 7–8.)  Robin Pick ("Pick") and Sarah Child ("Child") researched and wrote, Pick post-summary judgment, and Child post-trial.  (Pick Decl. ¶ 6; Child Decl. ¶ 6.)  Third is Stepanovich Law, PLC (the "Stepanovich Firm").  John Stepanovich ("Stepanovich") was lead trial counsel.  (Stepanovich Decl. ¶ 10.)  Jonathan Young ("Young") researched and prepared trial affidavits and cross-examination.  (Young Decl. ¶ 6.)  Plaintiffs also retained Terry Rice ("Rice") regarding municipal law issues.  (Rice Decl. ¶ 7.)

---

[1] Plaintiffs submitted a second declaration by Robin Pick.  (*See* Dkt. No. 405.)  The Court does not consider this submission because it is identical to the Pick Declaration except for omitting a referenced exhibit.

Defendants opposed the Motion on June 29, 2020.  (Defs.' Mem. of Law in Opp. to Mot. ("Defs.' Mem.") (Dkt. No. 414); Decl. of John F.X. Peloso, Jr. ("Peloso Decl.") (Dkt. No. 415).) Defendants' "most important" argument is that Plaintiffs' "[n]egligible" success "does not justify an award of attorney's fees in any amount."  (Defs.' Mem. 11; *see also id*. at 11–22.) Defendants also argued that Plaintiffs' request for fees from its appeals court work was untimely. (*Id*. at 22–25.)  Finally, Defendants argued that Plaintiffs' fees and costs are unreasonable, (*id*. at 2–11), and submitted a series of tables purporting to identify vague, duplicative, or otherwise deficient time entries, both from trial court work, (Peloso Decl. Ex. A ("Trial Reductions") (Dkt. No. 415-1)), and appellate work, (*id*. at Ex. B ("App. Reductions") (Dkt. No. 415-2)), as well as excessive costs, (*id*. at Ex. C ("Churgin Cost Reductions") (Dkt. No. 415-3)).

Plaintiffs submitted their Reply on August 6, 2020.  (Pls.' Reply Mem. of Law in Further Supp. of Mot. ("Pls.' Reply") (Dkt. No. 422); Reply Decl. of Joseph A. Churgin ("Churgin Reply Decl.") (Dkt. No. 423).)  Because Plaintiffs made a new argument that Defendants were judicially estopped from arguing that Plaintiffs' success was negligible, Defendants were granted leave and submitted a Sur-Reply on August 18, 2020.  (Dkt. No. 425; Defs.' Sur-Reply in Opp'n to Mot. ("Defs.' Sur-Reply") (Dkt. No. 426).)

## II.  Discussion

### A.  Timeliness of Appeals Court Fee Application

Defendants argue that Plaintiffs did not timely request attorneys' fees from the appeal. (Defs.' Mem. 22–25.)[2]  The Court finds that Plaintiffs' request was timely.  The Parties dispute

---

[2] Defendants also argue that Plaintiffs are not entitled to attorneys' fees due to their lack of success on appeal.  (Defs.' Mem. 25–26.)  The Court will address this argument in the next section.

both the applicable law and the application of that law.  The Court discusses each dispute in turn.

It concludes that Plaintiffs were required to—and did—apply for fees within a reasonable time.

### 1.  Applicable Law

Defendants argue that the timing requirements of Federal Rule of Civil Procedure 54(d)

control.  (*See id.*)  The Court disagrees.  This Rule provides that, unless a court order indicates

otherwise, a motion for attorneys' fees must "be filed no later than 14 days after the entry of

judgment."  Fed. R. Civ. P. 54(d)(2)(B)(i).  Several courts have held that "the word 'judgment'

as used in Rule 54(d)(2)(B) refers to district court judgments only."  *L.I. Head Start Child Dev.*

*Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc*., No. 00-CV-7394, 2013 WL

6388633, at *3 (E.D.N.Y. Dec. 5, 2013); *see also Dippin' Dots, Inc. v. Mosey*, 602 F. Supp. 2d

777, 781–83 (N.D. Tex. 2009) ("[L]ooking at the Federal Rules as a whole demonstrates that

Rule 54 should not apply to a judgment from the Court of Appeals."); *Cush-Crawford v. Adchem*

*Corp*., 234 F. Supp. 2d 207, 211 (E.D.N.Y. 2002) ("[T]here is no authority for the defendant's

contention that Rule 54 applies to applications for appellate attorneys' fees. That rule applies to

applications for attorneys' fees incurred at the trial level.").  The rationale of these courts is that

Rule 54 and Rule 59 both appear in a chapter titled "Judgment," and Rule 59 "makes clear that

the district court possesses the power to alter or amend a judgment after its entry."  *L.I. Head*

*Start*, 2013 WL 6388633, at *3 (ellipses omitted); *see also* Fed. R. Civ. P. 59(e) ("A motion to

alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

Since the district court lacks power to amend a judgment of the Court of Appeals, the timing

provision of Rule 54 refers only to district court judgments. *L.I. Head Start*, 2013 WL 6388633,

at *3; *see also Dippin' Dots*, 602 F. Supp. 2d at 782 (same).  Further, Rule 1 "creates a

presumption that the Federal Rules only deal with and refer to district court proceedings."

*Dippin' Dots*, 602 F. Supp. 2d at 782; *see also* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . ."). The 14-day period "ensures that the fee opponent has notice of the fee motion prior to the expiration of the time to appeal," which is 30 days. *Dippin' Dots*, 602 F. Supp. 2d at 782 (citation omitted); *see also* Fed. R. App. P. 4 ("In a civil case, . . . the notice of appeal . . . must be filed with the district clerk within 30 days after entry of the judgment or order appealed from."). That purpose is inapplicable here, because parties have 90 days to appeal a Court of Appeals decision by petitioning for certiorari. *See* Sup. Ct. R. 13(1). Also inapplicable is the rationale that "[p]rompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind." Fed. R. Civ. P. 54, Advisory Committee Notes, 1993 Amendments. "There are no trials in the Court of Appeals, and a district court judge will not have the services performed on appeal freshly in mind." *Dippin' Dots*, 602 F. Supp. 2d at 782 (alteration and quotation marks omitted).

Far from being "outlier cases," (*see* Defs.' Mem. 24), the Court is unaware of any courts that have reached the opposite conclusion, including the cases cited by Defendants on this issue, (*see id*. at 23). *Luedeke v. Village of New Paltz* concerned an untimely fee award after the district court entered an order of dismissal. 194 F.R.D. 64, 65 (N.D.N.Y. 2000). And while *In re Texaco Inc. Shareholder Derivative Litigation* involved an application for attorney fees after an appeal, it measured the time to apply for fees from the date that the district court "complied with the mandate of the Court of Appeals, and filed an [a]mended [j]udgment." 123 F. Supp. 2d 169, 171 (S.D.N.Y. 2000). Here, Defendants explicitly disavow calculating the time to move for fees from the date of the Court's March 19, 2020 Judgment. (*See* Defs.' Mem. 25.) Further, the court in *Texaco* did not explicitly consider the arguments in *L.I. Head Start*, *Cush-Crawford*, and

*Dippin' Dots*, and it ruled on the alternative ground that fees were improper because the petitioner was a pro se party who happened to be an attorney.  123 F. Supp. 2d at 172–73.

The timing requirements of Federal Rule of Appellate Procedure 39 likewise do not control.  This Rule is titled "Costs," and it provides that "[a] party who wants costs taxed must— within 14 days after entry of judgment—file with the circuit clerk and serve an itemized and verified bill of costs."  Fed. R. App. P. 39(d)(1).  The Second Circuit has suggested that this rule does not apply to applications for attorneys' fees.  *See Hines v. City of Albany*, 862 F.3d 215, 218 (2d Cir. 2017) (noting that the Second Circuit's "reference to 'costs' in the context of [Rule] 39 did not include attorneys' fees"); *see also Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 24 (2d Cir. 2018) (noting that "the term 'costs' in Rule 39 . . . [has] been determined not to incorporate attorneys' fees" (emphasis omitted)).  Other circuits have reached this conclusion more explicitly.  *JCW Invs., Inc. v. Novelty, Inc*., 509 F.3d 339, 341–42 (7th Cir. 2007) (holding that Rule 39 does not "speak[] directly" to "whether the request for . . . attorneys' fees" is untimely); *Envtl. Def. Fund, Inc. v. Envtl. Prot. Agency*, 672 F.2d 42, 61 (D.C. Cir. 1982) ("Rule 39([d]) covers only 'costs,' not attorneys' fees.  We are unwilling automatically to apply the 14- day limitations period from Rule 39 in connection with a statutory fee provision.").  Defendants do not suggest the contrary.  (*See* Defs.' Mem. 22–26.)

Instead, Plaintiffs were required to apply for fees "within a reasonable period of time after the circuit's entry of final judgment."  *L.I. Head Start*, 2013 WL 6388633, at *5; *see also JCW Invs.*, 509 F.3d at 342 ("In the absence of a statutory or rule-based deadline, we think that a general rule of diligence should govern."); *Cush-Crawford*., 234 F. Supp. 2d at 211 ("[A] court [has] discretion to consider . . . traditional equitable principles[] to reject claims as untimely filed." (quoting *Envtl. Def. Fund*, 672 F.2d at 61)).  While these cases were brought under

9

different statutes, 42 U.S.C. § 1988 "is similar" to these statutes because it "has no specific limitation period for seeking attorneys' fees." *Cush-Crawford*., 234 F. Supp. 2d at 211.

### 2. Application of Law

Defendants claim that "30 days is the maximum reasonable time."  (Defs.' Mem. 25.) The Court disagrees.  Some courts have stated that, as a general rule, applications within 30 days suggest reasonable diligence. *See Dippin' Dots*, 602 F. Supp. 2d at 783 ("In general, anything within 30 days shows reasonable diligence."); *cf. Howlink Glob. LLC v. Centris Info. Servs., LLC*, No. 11-CV-71, 2015 WL 216773, at *4 (E.D. Tex. Jan. 8, 2015) ("Many of the various district courts' local rules allow a time frame of fourteen (14) days to thirty (30) days after a judgment as a reasonable time frame for filing a bill of costs.").  But courts have found fee petitions to be timely even outside of this timeframe. *See Cush-Crawford*, 234 F. Supp. 2d at 211 (finding fee application was timely where the briefing schedule was set six months after the Second Circuit's judgment, and the petition was submitted two weeks later).  Even a case cited by Defendants suggests that two months is a reasonable timeframe. *See Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found.*, 245 F. Supp. 3d 742, 754 (E.D. Va. 2017) (holding that a filing within one month and six days was timely, and noting that this was "well within the two months to exchange billing records which was deemed reasonable in [*Smith v. Bd. of Trustees of Univ. of Florida*, No. 04-CV-106, 2008 WL 5381506 at *1 (N.D. Fla. Dec. 18, 2008)]").

The Court finds that Plaintiffs' March 24, 2020 request to supplement their attorneys' fees application to include appeal work, (*see* Dkt. No. 391), which was granted on March 30,

2020, (*see* Dkt. No. 393), was submitted within a reasonable period of time.[3]  This request was made one month and 11 days after the Second Circuit's mandate on February 13, 2020, and the Court ordered a briefing schedule one month and 17 days later.  (*See* Dkt. No. 387.)  This is hardly the "indefinite, virtually unlimited, period" claimed by Defendants.  (Defs.' Mem. 24.)  Instead, it is comparable to the one month and six days allowed for a supplemental application in *Zoroastrian Center*, and "well within the two months" that *Zoroastrian Center* suggests would be reasonable.  2008 WL 5381506 at *1.  As Plaintiffs note, it appears that petitions for a writ of certiorari were due on July 6, 2020.  *See* Sup. Ct. R. Filing Extensions (Mar. 19, 2020) ("[T]he deadline to file any petition for a writ of certiorari due on or after the date of this order is extended to 150 days from the date of the lower court . . . order denying a timely petition for rehearing." (citing Sup. Ct. R. 13(1) & (3)).  (*See* Dkt. No. 224, 18-1062 Dkt. (2d. Cir.) (petition for rehearing denied on Feb. 6, 2020); *see also* Pls.' Mem. 3.)  Thus, Defendants "ha[d] notice of the fee motion prior to the expiration of the time to appeal," *Dippin' Dots*, 602 F. Supp. 2d at 782 (citation omitted), and were not prejudiced by Plaintiffs' supplemental request.

  B.  Reasonable Fee Amount

   The Federal Rules of Civil Procedure typically allow costs other than attorney's fees to a prevailing party.  Fed. R. Civ. P. 54(d)(1).  In an action to enforce a provision of 42 U.S.C. § 1983 or RLUIPA, "the court, in its discretion, may allow the prevailing party . . . a reasonable

---

[3] While Plaintiffs' supplemental application was not submitted until May 13, 2020, (*see* Not. of Mot.), the operative date for considering Defendants' argument is either March 24, 2020, when Defendants had notice of Plaintiffs' intent to petition for fees, or March 30, 2020, when the court ordered a schedule superseding default time requirements, *cf.* Fed. R. Civ. P. 54(d)(2)(B) (establishing requirements, including timing requirements, for submitting fee applications, "[u]nless . . . a court order provides otherwise").

attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988.[4]  "Determining whether an award of attorney's fees is appropriate requires a two-step inquiry.  First, the party must be a 'prevailing party' in order to recover.  If [the party] is, then the requested fee must also be reasonable."  *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996).

"[T]o be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989).  Here, "Defendants do not contest that Tartikov technically was . . . a prevailing party . . . ." (Defs.' Mem. 12; *see also* Defs.' Sur-Reply 4 (same).)  The Court agrees.  Plaintiffs are prevailing parties under § 1988 because the Court, on the basis of 42 U.S.C. § 1983 and RLUIPA, enjoined the 2007 Laws, (2018 J.), and these injunctions were affirmed on appeal, *see Tartikov*, 945 F.3d at 126; *see also id.* at 110 n.211 (noting that "RLUIPA's nondiscrimination provision codifies the equal protection guarantees of the Fourteenth Amendment," and, thus, that the Second Circuit's "holdings with respect to [Plaintiffs'] equal protection claims apply also to [Plaintiffs' RLUIPA nondiscrimination] claims").

Thus, this inquiry hinges on whether Plaintiffs' fee request is reasonable.  The Court's determination is reviewed for abuse of discretion.  *Lunday v. City of Albany*, 42 F.3d 131, 133–34 (2d Cir. 1994).  "The starting point for the determination of a reasonable fee is the calculation of the lodestar amount."  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The lodestar amount "is arrived at by

---

[4] Plaintiffs also seek fees under a provision of the FHA, 42 U.S.C. § 3613(c)(2).  (Pls.' Mem. 1.)  However, Plaintiffs' FHA claims have been dismissed.  (*See* 2020 J.; *see also* SAC ¶¶ 279–89.)  Thus, the Court does not consider this provision as a potential basis for attorneys' fees.

multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763–64 (2d Cir. 1998) (citation, quotation marks , and ellipses omitted).  There is "a strong presumption that the lodestar figure represents a reasonable fee."  *Quaratino*, 166 F.3d at 425 (quotation marks omitted); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) (noting that the phrase "presumptively reasonable fee" is more apt than "lodestar").

Notwithstanding this presumption, the Court may adjust the presumptively reasonable fee.  Three potential adjustments are relevant here.  First, the Court should "should exclude excessive, redundant or otherwise unnecessary hours."  *Quaratino*, 166 F.3d at 425.  Second, "[n]o fees should be awarded for time spent pursuing a failed claim if it was unrelated to the plaintiff's successful claims in the sense that it was based on different facts and legal theories." *LeBlanc-Sternberg*, 143 F.3d at 762 (citation and quotation marks omitted).  And third, the presumptively reasonable fee may also be adjusted based on "the results obtained."  *Quaratino*, 166 F.3d at 425.  Indeed, "the degree of success obtained" is "[t]he most important factor in determining a reasonable fee for a prevailing plaintiff."  *LeBlanc-Sternberg*, 143 F.3d at 760 (citations and quotation marks omitted).  The Court considers these potential adjustments in turn.

### 1.  Reasonableness of Hours[5]

The fee applicant bears the burden of demonstrating the number of hours expended and the type of work performed through contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for*

---

[5] Defendants do not argue that Plaintiffs' hourly rate was unreasonable.  (*See* Pls.' Mem. 4–13; *see generally* Defs.' Mem.)  This restraint is appropriate, as Plaintiffs' counsel served as effective advocates, and the Court previously found that their rates were reasonable.  (*See* Op. & Order ("Fees Op.") 5–8 (Dkt. No. 237).)

*Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  "A court evaluating the reasonableness of the number of hours claimed must examine the attorney's records that detail the time expended," *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830, 2012 WL 5177491, at *4 (S.D.N.Y. Oct. 19, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013), but must also check those records against "its own familiarity with the case and its experience generally," *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985).  In determining whether hours should be excluded, the inquiry is not based on what effort appears necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Coakley v. Webb*, No. 14-CV-8438, 2016 WL 1047079, at *6 (S.D.N.Y. Mar. 10, 2016) (same).  A court may apply an across-the-board reduction to effectuate the reasonable imposition of fees.  *See Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 389 (S.D.N.Y. 2000) ("[R]ather than reducing a certain number of unreasonably billed hours, the [c]ourt will make an across-the-board percentage cut in [the] plaintiffs' fee award as is necessary and appropriate.").

Plaintiffs claim that they "vigilantly avoided duplicative work," (Pls.' Mem. 15), that they were paid, (*id*. at 9), and that Defendants paid a comparable amount, (*id*. at 17–18).  To accompany their petition, Plaintiffs have submitted invoices and other records indicating the work performed.  (*See* Churgin Decl. Ex. A ("Churgin Trial Invoices") (Dkt. Nos. 398-1 through 398-10); *id*. Ex D ("Churgin App. Invoices" (Dkt. Nos. 398-13 through 398-17); Storzer Decl. Ex. A ("Storzer Trial Invoices") (Dkt. No. 404-1); *id*. Ex B ("Storzer App. Invoices") (Dkt. No. 404-2); Stepanovich Decl. Ex. A ("Stepanovich Trial Invoices") (Dkt. Nos. 407-1 through 407-12); *id*. Ex. B ("Stepanovich App. Invoices") (Dkt. Nos. 407-14, 407-15); Rice Decl. Ex. A

("Rice Invoices") (Dkt. No. 410-1); Pick Decl. Ex. A ("Pick Invoices") (Dkt. No. 411-1).)[6]

Plaintiffs seek $5,625,711.06 in attorneys' fees, (Pls.' Mem. 1), including $5,130,528.48 for

work performed through judgment, and $495,182.58 for work on the appeal.  (Churgin Decl. Ex

C ("Fees Summary") (Dkt. No. 398-12).)[7,8]

Defendants argue that Plaintiffs' hours were needlessly duplicative, that their bills are

overly vague, and that they inappropriately block billed.  (Defs.' Mem. 4–10.)  Defendants

submitted a series of tables (the "Tables") analyzing Plaintiffs' fee submissions, which list fee

entries and purport to explain "the reason why the work (or a portion thereof) should be excluded

from any fee award."  (Peloso Decl. ¶ 3.)  The Tables include $1,021,945.57 in reductions for

work performed through judgment, ("Trial Reductions"), and $166,838.83 in reductions for work

on the appeal, ("App. Reductions").  Defendants separately argue that Plaintiffs' fees should be

reduced even more than is reflected in the tables, because of excessive time spent preparing the

initial and amended complaints, working on motions, "mock oral argument," poor division of

labor, and vague entries.  (Peloso Decl. ¶¶ 4–7.)

Plaintiffs have submitted roughly 800 pages of bills for work through judgment, and

approximately 65 pages of bills for work on appeal.  Because of this high volume, the Court uses

---

[6] In referring to invoices from the Stepanovich Firm and the Churgin Appeal Invoices, the Court notes both the docket number and the ECF-generated page number in the upper right-hand corner.  For the Churgin Trial Invoices, the Court notes the native page number.  For all other invoices, the Court notes only the ECF-generated page number in the upper right-hand corner.

[7] Plaintiffs also seek reimbursement for fees for work performed by legal assistants.  (*See* Pls.' Mem. 18–19.)  *Cf. Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571 (2008) (holding that a prevailing party under Equal Access to Justice Act may recover paralegal fees).  Defendants do not contest this position.  (*See generally* Defs.' Mem.)

[8] The Fee Summary contains an addition error, but the total figures provided at the bottom are accurate.  (*See* Fee Summary; Peloso Decl. ¶ 8.)

the Tables as a starting point.  Added up, the Tables propose that the Court reduces Plaintiffs' fee by 20% for work through judgment, and by 34% for work on the appeal.  (*Compare* Trial Reductions; App. Reductions, *with* Fees Summary.)  This works out to a proposed 21% decrease in Plaintiffs' presumptively reasonable fee award.  Having "examine[d] the attorney's records that detail the time expended," *Matteo*, 2012 WL 5177491, at *4, the Court considers Defendants' arguments for reducing Plaintiffs' presumably reasonable fee.

### a.  Duplication

Defendants argue that Plaintiffs paid for unneeded conferences with co-counsel.  (Defs.' Mem. 4–6.)  The Court agrees, but finds that the Tables overstate the amount that Plaintiffs' fees should be reduced on this basis.[9]

The Tables establish excessive conferences.  For example, Sobel, Stepanovich, and Storzer each billed for a series of conferences on January 14, 2014 and January 15, 2014.  (*See* Churgin Trial Invoices 259–60; Storzer Trial Invoices 28; Stepanovich Trial Invoices 3–4 (Dkt. No. 407-8).)  The Tables propose that Plaintiffs be awarded no fee for these conferences.  (*See* Trial Reductions 11, 25, 33.)[10]  With slight variation, other conferences involving three or more attorneys are handled similarly.  For example, for a five-attorney conference on February 15, 2017, (*see* Churgin Trial Invoices 484; Storzer Trial Invoices 50; Stepanovich Trial Invoices 4

---

[9] Defendants argue that Plaintiffs' counsel failed to avoid duplicative work, (Defs.' Mem. 4), not that it was unreasonable for Plaintiffs to have multiple attorneys, (*see generally* Defs.' Mem.), *cf. Dotson v. City of Syracuse*, No. 04-CV-1388, 2011 WL 817499, at *25 (N.D.N.Y. Mar. 2, 2011) (reducing fee awards by 20% and 40% in part because "[the p]laintiff has not established the need for an additional attorney"), *aff'd*, 549 F. App'x 6 (2d Cir. 2013).  Thus, the Court considers only the extent to which Plaintiffs' co-counsel arrangement produced duplicative work.

[10] In referring to the Trial Reductions, the Court refers to the ECF-generated page numbers in the upper right-hand corner.

(Dkt. No. 407-11)), the Tables propose that Plaintiffs be awarded no fee for three of the four attorneys who billed for the meeting, (Trial Reductions 18, 24; *see also id*. at 39 (claiming no reduced fee for Storzer meeting time)).  Meetings related to the appeal, such as a lengthy meeting on October 5, 2018, (Churgin App. Invoices 9 (Dkt. No. 398-15); Stepanovich App. Invoices 6 (Dkt. No. 407-14); Storzer App. Invoices 2), are handled similarly, (*see* App. Reductions 2, 4, 8).

Plaintiffs should not be reimbursed in full for the cost of these conferences.  They reflect "duplication of effort" that is likely "inevitable, if unintentional" due to Plaintiffs' co-counsel arrangement.  *LV v. N.Y.C. Dep't of Educ*., 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010); *see also Dotson*, 2011 WL 817499, at *25 ("[W]here the records reveal a number of conferences between trial counsel, there is an element of duplication of effort." (citation and quotation marks omitted)).  However, while Plaintiffs' fee for these conferences should be significantly reduced, it goes too far to reduce it to zero.  In a "complex and lengthy case" like this one, "dividing work among various attorneys . . . is a common [] practice."  *Meriwether v. Coughlin*, 727 F. Supp. 823, 827 (S.D.N.Y. 1989).  As a result, Plaintiffs should not be excessively "penalized . . . for frequent intra-office conferences," *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 426 (S.D.N.Y. 1999), which can facilitate such coordination.  Indeed, courts in this context have eliminated only a percentage of hours claimed due to excessive conferences.  *See, e.g., Hop Hing Produces Inc. v. X & L Supermarket, Inc*., No. 12-CV-1401, 2013 WL 1232919, at *7 (E.D.N.Y. Mar. 4, 2013) (reducing requested fees by 15% for, inter alia, "excessive time spent on conferences between attorneys"), *adopted by* 2013 WL 1232483 (E.D.N.Y. Mar. 27, 2013); *Allende v. Unitech Design, Inc*., 783 F. Supp. 2d 509, 515 (S.D.N.Y. 2011) (reducing fee award by 7% to account for, inter alia, "some duplicative billing for conferences" among attorneys); *Retained Realty, Inc. v. Spitzer*, 643 F. Supp. 2d 228, 241 (D. Conn. 2009) (reducing claimed

hours "[w]here multiple attorneys . . . billed time for the same conference beyond what the court considers to be reasonable").

Defendants also argue that Plaintiffs paid for unnecessary attendance of multiple attorneys at court conferences.  (Defs.' Mem. 6.)  The Court again agrees, and again finds that the Plaintiffs' fee for attending these conferences should not be reduced to zero.  In its Fees Opinion, the Court indicated that it was not reasonable to pay multiple attorneys to attend "a mere pre-motion conference."  (Fees Op. 13.)  Yet Plaintiffs request exactly that.  For example, Plaintiffs request reimbursement for five attorneys who attended an October 12, 2007 pre-motion conference on Defendants' Motion To Dismiss.  (*See* Churgin Trial Invoices 72; Stepanovich Trial Invoices 33 (Dkt. No. 407-1); Storzer Trial Invoices 3; *see also* Dkt. (minute entry for Oct. 12, 2007).)  Plaintiffs similarly request reimbursement for four attorneys who attended an October 27, 2014 pre-motion conference on Defendants' Motion For Summary Judgment.  (*See* Churgin Trial Invoices 358; Stepanovich Trial Invoices 33 (Dkt. No. 407-8); Storzer Trial Invoices 40; *see also* Dkt. (minute entry for Oct. 27, 2014).)  And Plaintiffs request reimbursement for four attorneys who attended an October 20, 2016 pre-trial scheduling conference.  (*See* Churgin Trial Invoices 463; Stepanovich Trial Invoices 8 (Dkt. No. 407-10); Storzer Trial Invoices 50; *see also* Dkt. (minute entry for Oct. 20, 2016).)  These requests are "duplicative and excessive" because "the presence of [multiple] attorneys was not necessary." *Mr. X v. N.Y. State Educ. Dep't*, 20 F. Supp. 2d 561, 564 (S.D.N.Y. 1998).  The Tables suggest that Plaintiffs should be paid nothing for these conferences, including the pre-motion conference on the Motion To Dismiss, (Trial Reductions 6, 24, 30), the pre-motion conference on the Motion For Summary Judgment, (*id*. at 15, 28, 35), and the pre-trial scheduling conference, (*id*.

at 18, 24, 39).[11]  This goes too far.  While it is unnecessary for more than one or at most two attorneys to attend a pre-motion or scheduling conference, Plaintiffs are entitled to a reduced reimbursement for participating.

While not discussed in Defendants' memorandum, (*see generally* Defs.' Mem.), the Tables suggest that Plaintiffs' fees award should be reduced due to multiple attorneys attending depositions.  For example, Plaintiffs seek reimbursement for both Sobel's and Stepanovich's attendance at depositions on April 8, 2014, (*see* Churgin Trial Invoices 295; Stepanovich Trial Invoices 16 (Dkt. No. 407-8)), April 9, 2014, (*see* Churgin Trial Invoices 296; Stepanovich Trial Invoices 16 (Dkt. No. 407-8)), and April 30, 2014, (*see* Churgin Trial Invoices 305; Stepanovich Trial Invoices 18 (Dkt. No. 407-8)).  Plaintiffs seek reimbursement for Sobel's, Stepanovich's, and Storzer's attendance at Tartikov's 30(b)(6) deposition in early May 2014, (*see* Churgin Trial Invoices 307–08; Stepanovich Trial Invoices 19 (Dkt. No. 407-8); Storzer Trial Invoices 35), and at the Village's 30(b)(6) deposition on July 15 through 18, 2014, (*see* Churgin Trial Invoices 332–34; Stepanovich Trial Invoices 26 (Dkt. No. 407-8); Storzer Trial Invoices 38.)[12]  The Second Circuit has noted that "[u]nder [§] 1988, prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions . . . to observe and assist."

---

[11] The Tables contain a typo in referring to the date of Stepanovich's attendance at the conference on the Motion To Dismiss (listing October 11 rather than October 12) and at the October 20, 2016 scheduling conference (listing 2017 rather than 2016), but the reduced amounts and descriptions align.  (*See* Stepanovich Trial Invoices 33 (Dkt. No. 407-11); *id.* at 8 (Dkt. No. 407-10); Trial Reductions 24.)

[12] The billing records suggest alternatively that Tartikov's 30(b)(6) deposition was on May 5, 2014, (*see* Churgin Trial Invoices 307), and on May 7, 2014, (*see* Stepanovich Trial Invoices 19 (Dkt. No. 407-8)).  It appears from the records that the same individual sat for a 30(b)(6) deposition on one of these dates, and for an individual deposition on the other.  Plaintiffs and Defendants treat the two depositions identically for fee purposes, as indicated by the in-text record citations.

*N.Y. State Ass'n for Retarded Children*, 711 F.2d at 1146; *see also Hnot v. Willis Grp. Holdings Ltd.*, No. 01-CV-6558, 2008 WL 1166309, at *7 (S.D.N.Y. Apr. 7, 2008) ("[I]t is often reasonable for a second attorney to assist in a deposition or a hearing.").  However, it is unclear why Plaintiffs were required to send three lawyers to the two 30(b)(6) depositions.  Indeed, billing records for Robinson & Cole suggest that Defendants sent only one attorney to most of these depositions.  (*See* Dkt. No. 398-26 at 53 (April 8, 2014 and April 9, 2014 depositions), 69 (Tartikov 30(b)(6)), 108 (Village 30(b)(6).)[13]  Again, the Tables suggest that Plaintiffs should be reimbursed nothing for the depositions on April 30, 2014, for Tartikov's 30(b)(6) deposition, and for the Village's four-day 30(b)(6) deposition.  (*See* Trial Reductions 12–14 (Sobel), 26–27 (Stepanovich), 24–35 (Storzer).)  The Tables suggest that Plaintiffs should be reimbursed only for Stepanovich's attendance at the April 8, 2014 and April 9, 2014 depositions.  (*See* Trial Reductions 12 (excluding Sobel); *see also id.* at 26 (not excluding Stepanovich).)  These suggestions go too far.  While Plaintiffs' request should be reduced modestly due to excessive deposition staffing, it should not be reduced so severely.

### b.  Vagueness and Block Billing

Defendants argue that many of Plaintiffs' time entries are overly vague.  In many but not all instances, the Court agrees.  For example, Defendants correctly note numerous vague entries by Savad.  (*See, e.g.*, Trial Reductions 2–5; *see also* Churgin Trial Invoices 21 ("Phone calls; E mails; Add facts; Phone calls."), 35 ("Multiple e mails – comments and requests."), 45 ("E-mails and phone calls; discussions with client, Terry Rice, etc.").)  "Courts look unfavorably on" such vague entries, because they "limit courts' ability to decipher whether the time expended has been

---

[13] The sole exception from among this group is the deposition on April 30, 2014, which two attorneys attended.  (*See* Dkt. No. 398-26 at 62.)  However, Robinson & Cole wrote off the time of one of the two attorneys.  (*See id.* at 49.)

reasonable." *Matteo*, 2012 WL 5177491, at *4.  It is appropriate that Plaintiffs are not

reimbursed for these vague entries, and others that are similarly vague.  (*See, e.g.*, Trial

Reductions 21, Stepanovich Trial Invoices 1 (Dkt. No. 407-3) ("Compare zoning amendments"

and "More review of zoning amendments"); Trial Reductions 29, Rice Invoices 1 ("Review

documents from J. Stepanovich").)  *See Dailey v. Societe Generale*, 915 F. Supp. 1315, 1328

(S.D.N.Y. 1996) (eliminating hours of attorney time for entries such as "telephone call" and

"review of documents"), *aff'd in part, vacated in part*, 108 F.3d 451 (2d Cir. 1997).

      For other entries, however, "it is clear from the context in which these entries occur what

work was involved."  For example, Defendants are correct that the Stepanovich entries "[m]ore

on variance; and futility" and "[r]eview Schoenberger, re: Myers" are vague on their face.  (*See*

Trial Reductions 21; Stepanovich Trial Invoices 1 (Dkt. No. 407-3).)  However, in context, these

entries describe Stepanovich's preparation for oral argument on the motion to dismiss, which

was scheduled for early the following month.  (*See* Dkt. Nos. 40, 41.)[14]  Thus, these and similar

entries do not merit any deduction.

      Finally, it is inappropriate to reduce to zero Plaintiffs' fee for some vague entries.  For

example, Plaintiffs seek reimbursement for several repetitive entries by Storzer, including:

"[d]raft master deposition outline," (Storzer Trial Invoices 28–30), "[d]raft motion for summary

judgment," (*id*. at 42), "[d]raft opposition to defendants' motion for summary judgment," (*id*. at

43–44), "[d]raft reply brief" (*id*. at 45–46), "[d]raft trial outline," (*id*. at 48–49), and, for the

appeal, "[d]raft appeal brief," (Storzer App. Invoices 1–2).  The Tables suggest that Plaintiffs

should not be reimbursed at all for this work.  (*See* Trial Reductions 33–34, 36–39; App.

---

[14] The docket does not indicate one way or the other whether oral argument took place.
Regardless, it was reasonable for Stepanovich to prepare for it.

Reductions 7–8.)  However, courts typically deduct a percentage of requested fees due to vague entries.  *See, e.g.*, *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (affirming 20% reduction in fees due to, inter alia, entries that were "too vague to sufficiently document the hours claimed"); *Mr. X*, 20 F. Supp. 2d at 564 (reducing a fee award by 20% due, inter alia, to vagueness, and noting that "[v]ague or incomplete time entries justify a reduction in the amount of attorney's fees awarded").  While Storzer should have documented his work in greater detail, the Court will not reduce to zero the large number of hours spent on these and similar matters.

Relatedly, Defendants argue that Plaintiffs excessively block billed.  (Defs.' Mem. 9–10.) While it is "unnecessary for [fee applicants] to identify with precision the amount of hours allocated to each individual task," *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-CV-6198, 2009 WL 72441, at *7 (S.D.N.Y. Jan. 7, 2009), attorneys seeking reimbursement "must provide enough information for the [c]ourt, and the adversary, to assess the reasonableness of the hours worked on each discrete project," *Themis Capital v. Dem. Rep. of Congo*, No. 09-CV-1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014), *reconsideration denied*, 2014 WL 4693680 (S.D.N.Y. Sept. 22, 2014).  Though courts disfavor block billing in general, it "is most problematic where large amounts of time (e.g., five hours or more) are block billed," thereby "meaningfully cloud[ing] a reviewer's ability to determine the projects on which significant legal hours were spent."  *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015) (italics omitted); *see also Abdell v. City of New York*, No. 05-CV-8453, 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (finding block billing acceptable "for temporally short entries combining related tasks"); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) ("While block-billing is disfavored and may lack the specificity required for an

award of attorneys' fees, it is not prohibited as long as the [c]ourt can determine the reasonableness of the work performed." (quotation marks omitted)).

Plaintiffs seek reimbursement for several entries that typify the dangers of block billing. In these entries, many of the tasks are described with enough detail, one or two are not, and it is unclear how to appropriately subdivide the entry.  For example, an entry by Storzer for 8.75 hours states as follows: "Travel to NY (1/2 time); mtg w/PS/SC; travel to Brooklyn; mtg w/clients; edit Complaint."  (Storzer Trial Invoices 1; *see also* Trial Reductions 30.)  As discussed in the Fees Opinion, "the Second Circuit has instructed that defendants should not be penalized for a plaintiff's choice of out-of-district counsel," and travel time is not recoverable. (Fees Op. 18 (citing *Dzugas-Smith v. Southold Union Free Sch. Dist.*, No. 07-CV-3760, 2010 WL 3852003, at *3 (E.D.N.Y. Sept. 27, 2010)).)[15]  As discussed here, Storzer's time spent meeting with co-counsel should at minimum be reduced.  But Storzer's time editing the complaint is recoverable.  Another example is an entry by Sobel for seven hours on May 30, 2017.  It states: "Trial prep, document prep, attend trial; confer with P. Savad, J. Stepanovich and R. Storzer regarding trial."  (Churgin Trial Invoices 519; *see also* Trial Reductions 19.)  Here, Sobel's trial work is recoverable, but her meeting with co-counsel should likely be reduced.  In both cases, block billing makes it difficult to disaggregate the valid and invalid fee amounts.

In other cases, Plaintiffs' block billing is appropriate, and does not merit a decreased award.  For example, an entry by Pacun for two hours on January 15, 2007 states: "Reviewed Village of Pomona Minutes for 2004-2006 in preparation of FOIL requests.  Conference with Susan regarding any additional items to include in FOIL requests.  Prepared condensed time time

---

[15] As Defendants properly note, entries indicating only travel time are fully unrecoverable.  (*See, e.g.*, Trial Reductions 31, 32, 34; Storzer Trial Invoices 11, 21, 23, 35–37.)

[sic] of Villages [sic] zone changes for the past 3 years and added information regarding ASH litigation and the Villages [sic] expenditures regarding the litigation.  Collected several years of old Village Codes from Jackson's office."  (Churgin Trial Invoices 22; *see also* Trial Reductions 2.)  This entry is detailed, only two hours, and describes relevant tasks.  A 1.75 entry regarding the appeal by Sobel on September 12, 2018 is similar.  It states: "Review appeal brief fact citations for accuracy; prepare contradicting citations; review Court order regarding stay and expedited appeal; conduct research regarding expedited appeal; confer with co-counsel regarding the same."  (Churgin App. Invoices 5 (Dkt. No. 398-15); *see also* App. Reductions 2.)  Overall, Plaintiffs' block billing merits some decrease in their recoverable fee, but not a decrease to zero as suggested by the Tables.

c.  Additional Issues

The Tables identify several other deficiencies in Plaintiffs' bills.  While these critiques are not addressed in Defendants' brief, (*see generally* Defs.' Mem.), the Court will discuss them.  First, the Tables suggest that Plaintiffs should not be reimbursed for substantively irrelevant tasks.  For example, Plaintiffs' counsel attended and summarized several Village meetings, particularly but not exclusively early in the litigation.  (*See* Churgin Trial Invoices 35, 107, 130, 138, 140, 379; *see also* Trial Reductions 3, 7, 8, 16.)  The Court agrees.  Attendance at a Village board meeting could not have served to further Plaintiffs' facial challenges of the Challenged Laws.

Second, the Tables suggest that Plaintiffs' counsel should not be reimbursed for their work on attorneys' fees motions.  (*See, e.g.*, Trial Reductions 17, 25; Churgin Trial Invoices 411; Stepanovich Trial Invoices 12–13 (Dkt. No. 407-9).)  Plaintiffs seek reimbursement for work on their fees motion filed in 2015.  (*See* Churgin Decl. 3.)  These requests relate to work in October

24

2015.  (*See, e.g.*, Churgin Trial Invoices 411; Stepanovich Trial Invoices 12–13 (Dkt. No. 407-9).)  Plaintiffs did not request reimbursement for these fees in their 2015 motion, as the relevant billing records submitted in 2015 continue only through June or July 2015.  (*See* Dkt. No. 215-4 (Sobel); Dkt. No. 215-9 (Stepanovich).)  The Second Circuit has held that "attorneys' fees for the preparation of the fee application are compensable because" it encourages attorneys "to act as private attorneys general in vindicating congressional policies."  *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183–84 (2d Cir. 1996).  *Reed* suggests no basis for distinguishing fees from prior fee applications from fees for a pending application.  The Court thus finds that Plaintiffs should be reimbursed for their time preparing fee applications.

Third, Defendants suggest that Plaintiffs should not be reimbursed for work on unsuccessful claims.  (*See* Trial Reductions 28; Stepanovich Trial Invoices 7, 10 (Dkt. No. 407-11) (concerning *Berenson* claims).)  As the Court discusses *infra*, Plaintiffs' claims are intertwined, and their overall fees should be adjusted downward due to their lack of success.  Thus, entries related to Plaintiffs' lack of success should not be considered in calculating their presumptively reasonable fee.

Based on the above, the Court will adjust downward Plaintiffs' presumptively reasonable fee by 15%.  This amount is a bit less than the 21% reduction suggested by the Tables, which are over-inclusive in the ways described.  This results in a presumptively reasonable fee of $4,781,854.40.

### d.  No Further Reduction

As mentioned, Defendants suggest that the presumptively reasonable fee should be adjusted downward even further than suggested by the Tables.  (Peloso Decl. ¶¶ 4–7.)  Defendants suggest the same in their memorandum.  (*See* Defs.' Mem. 9 ("Tartikov's numerous

vague entries merit a further reduction in hours across the board.").)  The Court declines to do this, for four reasons.

First, many of the claimed bases for reduction are already present in the Tables.  This includes "[e]xcessive time . . . opposing Defendants' motion to dismiss," (Peloso Decl. ¶ 5; *see* Trial Reductions 30–31), "preparing Plaintiffs' and opposing Defendants' respective motions for summary judgment," (Peloso Decl. ¶ 5; *see* Trial Reductions 36–38), "numerous conferences and multiple attorney 'mock oral argument' sessions," (Peloso Decl. ¶ 5; *see, e.g.*, Trial Reductions 16–17), and "excessive hours . . . spent by Mr. Stepanovich and Ms. Sobel on appeal argument preparation," (Peloso Decl. ¶ 5; *see* App. Reductions 2, 4–6).  The Tables also reflect numerous reductions for vague entries.  (Defs.' Mem. 9; *see, e.g.*, Trial Reductions 5, 22–23, 31.)  Additional across-the-board reductions would double-count these already-removed entries.

Second, this was a complex case.  (*See* Pls.' Mem. 13–15.)  This Action has been pending for more than a decade.  Discovery was intensive.  Defendants produced more than 38,000 documents, asserted 11 governmental interests for the Challenged Laws, and pled 27 affirmative defenses.  (Sobel Decl. ¶¶ 10, 12.)  Plaintiffs took or defended more than 30 depositions, prepared seven expert reports, and responded to two defense experts.  (*Id.* ¶ 9.)  The Parties were each granted a total of 50 extra pages to file their motion to dismiss and summary judgment papers.  (Dkt. Nos. 26, 135.)  The Court held a 10-day bench trial with 23 witnesses.  (Trial Op. 22.)  *See also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014) (noting that "trial is a time consuming process" (citation and quotation marks omitted)).  The Court twice held oral argument, (*see* Dkt. (minute entry for July 8, 2015); Dkt. (minute entry for Sept. 7, 2017)), and scheduled oral argument a third time, (*see* Dkt. Nos. 40, 41, 43).  And this Action went before the Second Circuit.  (*See* Dkt. No. 387.)  This complexity helps explain the

substantial size of Plaintiffs' fee request.  *See, e.g.*, *Restivo v. Hessemann*, 846 F.3d 547, 591–92 (2d Cir. 2017) (affirming award of nearly $5 million in fees based on "reimbursement for a total of 11,222.6 hours of attorney time over the eight years this case was litigated in the district court").  Cases litigated this intensely and for this long are expensive.  *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, No. 02-CV-40327, 2004 WL 5508706, at *2 (S.D. Iowa Apr. 23, 2004) ("This is complex litigation, and it is expensive.").

Third, efficiencies are built into the submitted bills.  For example, Savad Churgin used quarter-hour billing, and did not record or bill for time increments shorter than 15 minutes. (Savad Decl. ¶ 24.)  As a result, it did not record many phone calls and brief reviews of documents.  (*Id*.)  The Stepanovich Firm did the same.  (Stepanovich Decl. ¶ 9.)  Counsel charged a blended rate, which resulted in a discount compared to prevailing rates for work by Savad, Stepanovich, Storzer, and Rice.  (*See* Savad Decl. ¶¶ 19–22; *see also* Storzer Decl. ¶ 9.) Counsel raised this rate only twice.  (*See* Savad Decl. ¶¶ 21–22.)  Further, Savad did not bill for much of his time.  (Savad Decl. ¶ 26.)  And Plaintiffs do not seek fees for filing the instant Motion.  (*See* Churgin Decl. ¶ 10; Savad Decl. ¶ 27.)

Fourth, other factors support the Court's finding that this is a reasonable sum for such a complex case.  For example, Defendants paid their attorneys $5,110,134.29 for fees and costs through judgment.  (Churgin Decl. ¶ 42.)  While this figure includes costs, it excludes fees related to the appeal.  (*Id*. at 13.)  This "apples-to-oranges comparison" is not the basis of the Court's finding of a presumptively reasonable fee, as this approach "would require the trial court to first determine whether [Defendants'] counsel billed a reasonable amount."  *Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 884 (8th Cir. 2000).  Nonetheless, the court finds it "a useful cross-check indicating that [P]laintiffs' request is not out of proportion to the magnitude

of the litigation." *Hnot*, 2008 WL 1166309, at *3.  Further, Plaintiffs' uncontested declarations

state that "[a]ll fees invoiced in this case have been paid in full by the client."  (Savad Decl. ¶ 28;

Stepanovich Decl. ¶ 19; Storzer Decl. ¶ 25.)  Because "[t]he best evidence of the market value of

legal services is what people pay for it," that "the fees were actually paid in the ordinary course

of business, [is] strong evidence . . . that what the prevailing party is requesting is commercially

reasonable." *U.S. Bank Nat. Ass'n v. Long*, No. 13-CV-257, 2014 WL 3044617, at *2 (E.D. Wis.

July 3, 2014) (ellipses and quotation marks omitted) (citing *Medcom Holding Co. v. Baxter*

*Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999)); *see also In re Polo Builders, Inc.*, 397

B.R. 396, 411 (Bankr. N.D. Ill. 2008) ("The best guarantee of reasonableness is willingness of

the party incurring the attorneys' fees to pay them without any guarantee of reimbursement.").

Defendants claim that Plaintiffs were not reasonable because they were motivated and well-

funded.  (Defs.' Mem. 6–7; *see also* Peloso Decl. Ex. D (Dkt. No. 415-4).)  *See Kirchoff v.*

*Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) ("Except in grudge litigation, no client, however

wealthy, pays a lawyer more than a dollar to pursue a dollar's worth of recovery.").  It is logical

that Plaintiffs paid more to litigate this case than would unmotivated or poorly funded

substitutes.  However, in circumstances where the plaintiff has not paid at all, some critics say

"that the lodestar create[s] a temptation for lawyers to run up the number of hours for which they

could be paid." *In re AOL Time Warner, Inc. Sec.*, No. 02-CV-5575, 2006 WL 3057232, at *7

(S.D.N.Y. Oct. 25, 2006).  That Plaintiffs paid suggests the relative absence of such temptation,

and serves as a useful cross-check for the presumptively reasonable fee assessed by the Court.

### 2.  Intertwined Claims

Where, as here, a plaintiff prevails on fewer than all of its claims, "[a]ttorney's fees may

be awarded for unsuccessful claims as well as successful ones . . . where they are inextricably

intertwined and involve a common core of facts or are based on related legal theories."
*Quaratino*, 166 F.3d at 425 (citation and quotation marks omitted).  By contrast, "[n]o fees
should be awarded for time spent pursuing a failed claim if it was unrelated to the plaintiff's
successful claims in the sense that it was based on different facts and legal theories."  *LeBlanc-*
*Sternberg*, 143 F.3d at 762 (citation and quotation marks omitted).  "So long as the plaintiff's
unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims, hours spent on
the unsuccessful claims need not be excluded from the lodestar amount."  *Lunday*, 42 F.3d at
134.  Determining whether claims are unrelated "is not an exact science," *G.B. ex rel. N.B. v.*
*Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 425 (S.D.N.Y. 2012) (citation omitted), and
the Court's conclusions "are reviewable only for abuse of discretion," *Murphy v. Lynn*, 118 F.3d
938, 952 (2d Cir. 1997).

Plaintiffs successfully brought facial challenges to the 2007 Wetlands Law and 2007
Dormitory Law on Equal Protection and RLUIPA nondiscrimination grounds.  *See Tartikov*, 945
F.3d at 126.  Plaintiffs did not succeed in challenging the 2001 Law or the 2004 Law, *id.*, in
bringing claims based on free exercise, speech, and association, *id*. at 110, or in bringing as
applied challenges, (MTD Op.).  Plaintiffs argue that their successful and unsuccessful claims are
inextricably intertwined.  (*See* Pls.' Mem. 19–30.)  Defendants assert that they are not, because
"[m]any of the facts pertaining to the adoption of the 2007 laws had nothing to do with the
enactment of the 2001 and 2004 laws."  (Defs.' Mem. 20.)  Defendants also argue that, even if
Plaintiffs' claims are intertwined, the Court should still "focus on the significance of the overall
relief obtained."  (*Id*. at 18.)  The Court discusses Defendants' two arguments in turn, rejecting
the first and accepting the second.

The Court rejects Defendants' claim that Plaintiffs' successful and unsuccessful claims were wholly unrelated.  (Defs.' Mem. 20.)  Plaintiffs identify several areas of work demonstrating the tight relationship between their successful and unsuccessful claims.  (*See* Pls.' Mem. 25–29.)  The Court finds that three in particular support the view that Plaintiffs' claims are intertwined.  First, Plaintiffs had to counter standing or ripeness arguments, which Defendants made against all of Plaintiffs' claims based on their failure to apply to the Village to begin construction.  (*See* MTD Op. 21, 27–47; MSJ Op. 29–31; Trial Op. 84.)  Second, Plaintiffs had to establish the sincerity of their beliefs, both to counter Defendants' argument that the rabbinical college was a housing project in disguise, and to establish interference with free exercise and discriminatory effect.  (*See* Trial Op. 66–73.)  Third, Plaintiffs had to establish Defendants' discriminatory purpose.  (*See* Trial Op. 28–39.)  They had to do so not just for their Equal Protection and RLUIPA claims, but also for their free speech claims.  (*See* MTD Op. 60 ("Motive also can be relevant to Free Speech claims.").)  And pre-2007 behavior was relevant to identifying the discriminatory animus behind the 2007 Laws.  (*See* Trial Op. 33–34 (relying in part on the Board of Trustees' pre-2007 knowledge of the location of wetlands to find discriminatory purpose); *id*. at 38–39 (contrasting the Village's approach to land regulation for Hasidic uses compared to other uses back to 1996); *see also id*. at 5 (noting that at least two and perhaps three of the four members of the Village's Board of Trustees in 2007 served for on the Board for prior years, too).)[16]  Tellingly, Defendants in response neither identify specific time entries that were related to the 2001 Law or 2004 Law, nor do they propose a technique for reducing the claimed number of hours on this basis.

---

[16] Because investigation of earlier time periods is a reasonable way to establish the discriminatory purpose behind the 2007 Laws, the Court's conclusion here does not "directly conflict[] with the reasoning of the Second Circuit."  (*See* Defs.' Mem. 19.)

The Court accepts Defendants' argument that, where claims are intertwined, "the most critical factor is still the degree of success obtained."  (Defs.' Mem. 18 (quotation marks omitted).)  Where, as here, a plaintiff's claims are intertwined, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Hensley*, 461 U.S. at 435–36.  The Court next considers this degree of success.

### 3.  Degree of Success

As noted, a plaintiff's degree of success is "[t]he most important factor in determining a reasonable fee for a prevailing plaintiff."  *LeBlanc-Sternberg*, 143 F.3d at 760.  Where a plaintiff's success is merely nominal, a lack of success can reduce to zero the amount of a reasonable fee.  *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992) ("When a plaintiff recovers only nominal damages . . . the only reasonable fee is usually no fee at all." (citation omitted)); *Pino*, 101 F.3d at 239 ("[A]ttorney's fees and costs are usually not appropriate when a plaintiff recovers only nominal damages."); *see also Alvarez v. City of New York*, No. 11-CV-5464, 2017 WL 6033425, at *4 (S.D.N.Y. Dec. 5, 2017).  A plaintiff's success may be determined to be nominal even where the plaintiff secures slightly more than mere nominal relief.  *See, e.g.*, *Aponte v. City of Chicago*, 728 F.3d 724, 728 (7th Cir. 2013) (affirming denial of fees where the plaintiff received $100 in damages); *see also Glowacki v. Howell Pub. Sch. Dist.*, 566 F. App'x 451, 454 (6th Cir. 2014) (affirming denial of fees, and trial court's finding that $1 award and declaratory judgment for plaintiff "did nothing to achieve the primary goal of the underlying litigation" (quotation marks omitted)); *Brocuglio v. Proulx*, 324 F. App'x 32, 36 (2d Cir. 2009) (finding the court did not abuse its discretion in awarding no fee where the jury awarded $20 in damages).  Where a plaintiff secures limited but greater than nominal success, courts may reduce

the fee award.  *See Hensley*, 461 U.S. at 439–40 ("A reduced fee award is appropriate if the

relief, however significant, is limited in comparison to the scope of the litigation as a whole.").

"[T]he quantity and quality of relief obtained is a critical factor" "in determining the

reasonableness of a fee award in civil rights actions."  *Carroll v. Blinken*, 105 F.3d 79, 81–82 (2d

Cir. 1997) (affirming a fees award of $25,000 where the plaintiffs succeeded in imposing

conditions on the defendant's receipt of fees, but "failed on their far more significant claim of

preventing [the defendant's] receipt of such fees under any circumstances"); *see also Barfield v.*

*N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (affirming 50% reduction in

sought-after fees where the plaintiff succeeded in her individual FLSA claim, but failed to certify

a collective action, which was her "primary aim").

Here, Plaintiffs' results are mixed.  On the one hand, Plaintiffs have successfully enjoined

the 2007 Dormitory Law and the 2007 Wetlands Law.  *See Tartikov*, 945 F.3d at 126.  These

successes have removed significant impediments to constructing the rabbinical college.  The

Wetlands Law prohibited development within 100 feet of wetlands.  (Trial Op. 18.)  This

prevented Plaintiffs from building a driveway into the property, because all available routes were

either within 100 feet of wetlands or very steep, requiring significant regrading.  (*Id*. at 21.)  The

Dormitory Law prevented dormitories from occupying more than 20% of the total square footage

of an educational institution's buildings.  (*Id*. at 79.)  Because Plaintiffs sought to construct

100,000 square feet of dormitories and 30,000 to 45,000 square feet of academic buildings, the

law would have required development of academic buildings far in excess of the necessary

amount.  (*Id*. at 79–80.)  Plaintiffs have successfully eliminated these significant barriers to the

rabbinical college.

On the other hand, Plaintiffs failed to enjoin the 2001 Law and 2004 Law.  *See Tartikov*, 945 F.3d at 126.  The 2001 Law requires that educational institutions be licensed by the State of New York.  (Trial Op. 86.)  In its current form, the proposed college cannot be accredited by the Board of Regents because it does not offer a degree recognized by that body and is not operational.  (*Id*. at 8.)  It likewise cannot be accredited by the Association of Advanced Rabbinical and Talmudic Schools because it does not plan an admissions test or a broad curriculum, and has not existed for two years.  (*Id*.)[17]  In addition, while the 2004 Law permits dormitories, it allows cooking, dining, and housekeeping facilities in only one unit for every 50 dormitory rooms, and prohibits single family, two-family, and multi-family dwelling units.  (*Id*. at 13.)  These restrictions likewise prevent the rabbinical college from being constructed.  (*Id*. at 21.)  Thus, while Plaintiffs are free to seek an amendment to the zoning law, (*id*.), they still may not break ground and begin constructing a rabbinical college.  Further, even on the causes of action where they prevailed, Plaintiffs initially sought significantly broader injunctive relief than they attained.  (*See* SAC 64–66.)  In addition to requesting that the 2001 Law and 2004 Law be enjoined, for example, the SAC also sought a declaration that "the [r]abbinic [c]ollege is permitted" and "[a]ppointment of a federal monitor."  (*Id*. at 64–65, 66.)

Plaintiffs make two arguments to suggest their success was more than mixed.  Neither is persuasive.  First, they argue that "it is at least very likely that [the remaining restrictions] will be struck down in a later challenge to the law."  (Pls.' Mem. 21.)  The Court agrees with Defendants that "[t]his case is over," and that it is not reasonable to award fees based on "speculation about

---

[17] Plaintiffs claim that "[t]he accreditation requirement only came about in the 2004 Law, and the different requirements of the 2001 Law [are] no longer operative."  (Pls.' Reply 9.) Because the source of the accreditation requirement is not material to the instant Motion, the Court takes no position as to this factual matter.

what might happen in the future." (Defs.' Mem. 17.) Second, Plaintiffs argue that Defendants are judicially estopped from arguing that the 2001 Law and 2004 Law "bar construction" of the rabbinical college, based on Defendants' prior statements that the results of a request for a zone change or amendment were uncertain. (Pls.' Reply 5–7.) The Court agrees that "Tartikov has failed to demonstrate that the Village argued inconsistent positions." (Defs.' Sur-Reply 2.) As they clarify in their Sur-Reply, Defendants argue—as have "both sides" throughout this litigation—that the Village's current zoning laws prohibit the rabbinical college. (*Id.*) Defendants do not take a position on the likelihood that a zone change or other amendment will be granted. (*See* Defs.' Mem. 11–18.)

The Court finds that Plaintiffs secured greater than nominal success. The Second Circuit case *LeBlanc-Sternberg* is instructive. 143 F.3d 748. The trial court ordered the defendant village to amend its zoning code to permit residences to be used as places of worship. *Id.* at 754. The court awarded no fees, reasoning in part that "the injunction had no practical effect benefiting plaintiffs because they personally had not theretofore been stopped from conducting home worship services." *Id.* at 759. The Second Circuit reversed both the denial of fees and the finding that the "plaintiffs had achieved little or no success of any significance." *Id.* at 764–65. The Second Circuit explained that "the injunction removed a substantial threat of such interference." *Id.* at 759. Removing this threat was "plainly important" because "the [v]illage had violated plaintiffs' rights . . . and had conspired to violate their rights . . . ." *Id.* The Second Circuit found that, because the injunction "carrie[d] a 'systemic effect of importance' or serve[d] a 'substantial public interest,' a substantial fee award may be justified." *Id.* at 760 (quoting *Carroll*, 105 F.3d at 81); *see also id.* at 758 ("An award of fees is . . . appropriate if the plaintiff's suit resulted in the granting of significant injunctive relief . . . ."). In part because the plaintiffs'

trial presentation focused on injunctive relief and "disavow[ed] extravagant monetary claims," the Second Circuit reached this conclusion even though the plaintiffs were not awarded their requested monetary and punitive damages. *LeBlanc-Sternberg*, 143 F.3d at 761. Further, the Second Circuit awarded a fee even though the plaintiffs did not achieve some of their sought-after injunctive relief, *id*. at 760–61, and even though the plaintiffs prevailed against no plaintiff other than the village, *id*. at 762.

The instant Action resembles *LeBlanc-Sternberg* in important respects. First, as here, the court in *LeBlanc-Sternberg* ordered mandatory changes to the village's land use ordinances. *Id*. at 754. The Court agrees with Plaintiffs that "[i]nvalidation of two laws cannot be considered nominal relief." (Pls.' Reply 10 (quotation marks omitted).) Second, also as here, the court in *LeBlanc-Sternberg* enjoined a law based on a finding of "discriminatory animus toward Orthodox and Hasidic Jews." 143 F.3d at 759. The purpose of fee-shifting statutes such as 42 U.S.C. § 1988 is "to compensate private attorneys general and thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole." *Quaratino*, 166 F.3d at 426 (alteration and quotation marks omitted). Indeed, there is "social value inherent in correcting all forms of discrimination." *Grant*, 973 F.2d at 102 (citation omitted). Third, as here, the success of the plaintiffs in *LeBlanc-Sternberg* was only partial. The plaintiffs did not prevail on their claims for monetary or punitive damages, some of their claims for injunctive relief, and all of their claims against defendants other than the village. *LeBlanc-Sternberg*, 143 F.3d at 760–62. These similarities suggest that a fee award is appropriate here.

It is true that *LeBlanc-Sternberg* can be distinguished from the instant Action. There, the plaintiffs succeeded in changing the law to allow home worship services. *Id*. at 754. Here, as discussed, although Plaintiffs succeeded in changing law, they still are not at present permitted to

build the rabbinical college as contemplated.  However, Plaintiffs have eliminated several

impediments to their project, and may now request a narrower amendment to the zoning law

from the Village.  (Trial Op. 21.)  If their requests are unsuccessful, (*see* Pls.' Reply 8), Plaintiffs

may be able to further challenge the components of the 2001 Law and 2004 Law that are

inconsistent with the rabbinical college, *see Tartikov*, 945 F.3d at 110 (finding no standing for

free exercise, speech, and association claims because Plaintiffs "never submitted a formal

proposal for the building project, applied for a permit," or similar, and their injury is "merely

conjectural"), (*see* MTD Op. 35 (finding that Plaintiffs' as applied claims are not ripe because

"there has been no final decision, as [Tartikov] has yet to submit a single formal application to

the Village Board of Trustees for approval of the rabbinical college")).  Plaintiffs have

essentially achieved interim relief, which can support an award of attorneys' fees.  *See McClain*

*v. Barnhart*, 186 F. Supp. 2d 435, 438 (S.D.N.Y. 2002) (granting attorney fees award where the

plaintiff succeeded in securing a remand to the Administrative Law Judge for further

proceedings); *cf. Rivera v. Dyett*, No. 88-CV-4707, 1993 WL 36159, at *6 (S.D.N.Y. Feb. 10,

1993) (rejecting argument that relief was "de minimis" where a preliminary injunction ordered

wheelchair accommodations similar to those the plaintiff had rejected in the past).  Indeed, the

relief in *LeBlanc-Sternberg* was also qualified, though considerably less so than here.  The

ordered zoning code change stated that "[i]t is the intent of this [l]ocal [l]aw that the presence of

pedestrians walking to and from religious services . . . shall not in and of itself constitute a

change in the residential character of the neighborhood."  *LeBlanc-Sternberg*, 143 F.3d at 754.

Thus, the Court finds that Plaintiffs secured more than nominal relief, and are entitled to an award of attorneys' fees.[18]

Nonetheless, the Court reduces Plaintiffs' fee award by 50% due to their lack of success. In part because fees are left to each court's discretion, the case law concerning reduced fees is not easily summarized. With this caveat in mind, courts have tended to reduce fees by less than one third where the plaintiff's award differed quantitatively from its requested relief. *See, e.g.*, *Hardaway v. Ridgewood Corp.*, 706 F. Supp. 2d 436, 441 (S.D.N.Y. 2010) (reducing fee award by 25% where "[the p]laintiff achieved his primary goal by receiving monetary compensation, though [the p]laintiff did not achieve nearly as much as he initially requested"); *McDow v. Rosado*, 657 F. Supp. 2d 463, 470 –71 (S.D.N.Y. 2009) (reducing fee award by 12% where the plaintiff was awarded $10,000 in damages after "seeking between two and three million dollars"); *but see Valvo v. City of New York*, No. 13-CV-6562, 2018 WL 3999011, at *5 (E.D.N.Y. Jan. 23, 2018) (reducing fees by 55% where the plaintiff lost the claim that accounted for "the vast majority of the damages [the] plaintiff was seeking" and "was disappointed with the amount of the verdict" on the claim he won). By contrast, where the plaintiff's award differed qualitatively from its initial request, courts have tended to reduce fees by more than one third. *See, e.g.*, *Dotson*, 2011 WL 817499, at *30–32 (applying a 50% reduction where the plaintiff was awarded $450,000 in damages, "less than half of what [the] plaintiff requested on

---

[18] Defendants cite one out-of-circuit case that suggests the opposite. In *Urban by Urban v. Jefferson County School District*, a student petitioned for attorneys' fees based on success in administrative proceedings. 89 F.3d 720 (10th Cir. 1996). Although the student secured two out of his three forms of sought-after relief, the Tenth Circuit affirmed the trial court's denial of a fee award, stating that "we cannot say that he succeeded to the degree necessary to warrant an award of attorney's fees." *Id.* at 729. *Urban* is difficult to reconcile with *LeBlanc-Sternberg* because, in the latter, the Second Circuit found that a denial of fees was an abuse of discretion even where the plaintiffs did not achieve many of their litigation goals. *See LeBlanc-Sternberg*, 143 F.3d at 760–62. Because *LeBlanc-Sternberg* is controlling, the Court does not follow *Urban*.

summation," after "[t]he majority of [the] plaintiff's claims were dismissed on summary

judgment"), *aff'd*, 549 F. App'x 6 (2d Cir. 2013); *Adorno*, 685 F. Supp. 2d at 516, 518 (reducing

fees by 60% where only two out of seven plaintiffs prevailed, and "were awarded substantially

less than they sought"), *on reconsideration in part*, No. 06-CV-593, 2010 WL 727480 (S.D.N.Y.

Mar. 2, 2010); *see also Husain v. Springer*, 579 F. App'x 3, 5 (2d Cir. 2014) (finding, where a

plaintiff was awarded nominal damages and separately negotiated for a policy change, that it was

not an abuse of discretion to award "some fees," but that an award of more than $200,000—

roughly 25% of the requested amount—was impermissible given the plaintiffs overall lack of

success); *but see Humane Soc. v. HVFG, LLC*, No. 06-CV-682, 2010 WL 3322512, at *9

(S.D.N.Y. Aug. 19, 2010) (reducing fee award by 25% for lack of success where the plaintiff

prevailed on one of its two requests for injunctive relief and failed in its request for civil

penalties of at least $550,000).

     Here, Plaintiffs' relief differs qualitatively from their initial request.  Plaintiffs sought

through litigation to remove all impediments imposed by Village law to constructing their

rabbinical college.  (*See, e.g.*, SAC 64–65.)  While they succeeded in removing two such

impediments through a finding of discriminatory animus, which will "benefit . . . the public as a

whole" by removing discriminatory laws, *Quaratino*, 166 F.3d at 426, Plaintiffs still face a

number of Village law obstacles to constructing the rabbinical college, (*see* Trial Op. 8, 13, 21,

86).  Thus, the Court reduces Plaintiffs' fees award by 50% due to their lack of success.[19]

---

[19] Defendants argue separately that Plaintiffs' lack of success on appeal undermines their
request for attorneys' fees.  (*See* Defs.' Mem. 25–26.)  Plaintiffs' degree of success on appeal
resembles their mixed success in the case as a whole.  The Second Circuit affirmed the judgment
for Plaintiffs with respect to the 2007 Laws.  *Tartikov*, 945 F.3d at 126.  However, it reversed
with respect to the 2001 Law and the 2004 Law, vacated the additional injunctive relief, and
affirmed the portions of the judgment challenged on cross-appeal.  *Id.*  Thus, the Court applies
the same 50% reduction to Plaintiffs' fees for the appeal.

Thus, the court adjusts downward by 50% Plaintiffs' presumptively reasonable fee of $4,781,854.40, resulting in an award of $2,390,927.20 in fees.

### C.  Costs

Plaintiffs seek reimbursement for $145,207.15 in costs.  (*See* Pls.' Mem. 1.)  Plaintiffs have submitted itemized disbursements for Savad Churgin, (*see* Churgin Decl. Ex. B ("Churgin Costs") (Dkt. No. 398-11)), Storzer, (*see* Storzer Trial Invoices 56–57), and Stepanovich, (*see* Stepanovich Trial Invoices (Dkt. No. 407-13) ("Stepanovich Costs")).  Defendants argue that Savad Churgin's costs were excessive, (*see* Defs.' Mem. 10; *see also* Churgin Cost Reductions), and that Storzer's and Stepanovich's costs should be disallowed completely, because they are both out-of-district counsel, and because Stepanovich's disbursements include vague FedEx Office charges, (Defs.' Mem. 10–11).  The Court agrees with all of Defendants' proposed reductions.

Fee awards include "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg*, 143 F.3d at 763 (2d Cir. 1998) (quotation marks omitted).  While "[e]xpenditures for photocopies, postage, binding, filing, and travel are routinely recoverable," *Libaire v. Kaplan*, No. 06-CV-1500, 2011 WL 7114006, at *8 (E.D.N.Y. June 17, 2011), *adopted in part and modified in part by* 2012 WL 273080 (E.D.N.Y. Jan. 30, 2012); *see also Westport Ins. Corp. v. Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 605 (2d Cir. 2012) (describing "in-house duplication costs, telephone charges, meals, overtime, local transportation, postage, electronic legal research, and messenger service" as "the sort of expenses that may ordinarily be recovered as part of a fee award" (quotation marks omitted)), "[t]ravel costs may be denied where a party chooses out-of-district attorneys," *Pall Corp. v. 3M Purification Inc.*, No. 03-CV-92, 2012 WL 1979297, at *8 (E.D.N.Y. June 1, 2012).

As in the Fees Opinion, "the Court denies reimbursement for . . . travel-related expenses." (Fees Op. 19.)  "[T]he Second Circuit has instructed that defendants should not be penalized for a plaintiff's choice of out-of-district counsel, unless 'the case required special expertise beyond the competence of forum district law firms.'" *Dzugas-Smith*, 2010 WL 3852003, at *3 (alteration omitted) (quoting *Simmons*, 575 F.3d at 175); *see also Makinen v. City of New York*, No. 11-CV-7535, 2016 WL 1451543, at *8 (S.D.N.Y. Apr. 12, 2016) ("Courts in this Circuit have routinely denied travel expenses for counsel where [a party] retained out-of-district counsel, particularly where out-of-district counsel charged rates similar to those charged in-district."). As Plaintiffs were ably represented by local counsel, the Court will not force Defendants to bear the costs of Storzer and Stepanovich traveling to conferences, arguments, and trial. (*See* Storzer Trial Invoices 56–57; Stepanovich Costs.)

The Court also declines to reimburse Plaintiffs' hotel expenses. In the case of Storzer and Stepanovich, "it is not clear that out-of-state counsel's attendance was necessary at the proceedings, especially in light of the fact that plaintiff had local counsel." *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963, 2009 WL 2568529, at *7 (E.D.N.Y. Aug. 5, 2009). (*See* Storzer Trial Invoices 57; Stepanovich Costs.) Savad Churgin is located in Nanuet, NY, a 30-minute drive with traffic to White Plains. (*See* Dkt. No. 136.) Given the distance "between Plaintiffs' attorney's firm and the . . . Courthouse, this Court views [Savad Churgin's hotel] costs as unreasonable." *La Barbera v. Bulldog Const., Ltd*., No. CV-98-7286, 2005 WL 6782688, at *6 (E.D.N.Y. July 28, 2005) (denying reimbursement for trial hotel costs where firm was located in New York City and trial occurred in Central Islip, NY), *report and recommendation adopted*, 2005 WL 6309343 (E.D.N.Y. Aug. 12, 2005). (*See* Churgin Costs 38–39.)

Nor will the Court order that Defendants reimburse Plaintiffs' vague office supply

purchases.  To secure reimbursement, "plaintiffs must make clear what documents were copied,

how many copies were made, the cost per page charged for copying, and why the copies were

necessary."  *Robinson v. City of New York*, No. 05-CV-9545, 2009 WL 3109846, at *11

(S.D.N.Y. Sept. 29, 2009); *see also U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v.

Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) (affirming reduced recovery for

photocopying costs where the plaintiff "did not . . . itemize those costs or explain why all those

copies were necessary").  Plaintiffs seek reimbursement for a large number of Stepanovich

expenses described simply "FEDEX OFFICE – WHITE PLAINS, NY."  (*See* Stepanovich

Costs.)  These line entries are not "sufficiently clear to determine their connection to this matter

and their reasonableness."  *D'Amico Dry D.A.C. v. Primera Mar. (Hellas) Ltd.*, 433 F. Supp. 3d

576, 580 (S.D.N.Y. 2019), *aff'd sub nom. D'Amico Dry D.A.C. v. Sonic Fin. Inc.*, 794 F. App'x

127 (2d Cir. 2020).

On these bases, the Court declines to order reimbursement of any portion of Storzer's and

Stepanovich's costs.[20]

After eliminating $5,308.87 in hotel costs, (*see* Churgin Costs 38–39), Savad Churgin

seeks $98,739.77 in disbursements, (*see* Fees Summary).  Defendants identify an additional

$8,005.35 in vague or unnecessary costs.  (*See* Churgin Cost Reductions.)  The Court agrees that

these should not be reimbursed.  Some are too vague—such as transcripts for "minutes of

meeting" or "wetlands meeting transcript."  (Churgin Costs 2.)  Others appear excessive, such as

---

[20] Two Stepanovich costs apparently do not fall into the attorney travel or office supply
buckets: a $175.50 cost for "COURTS/USDC-NY-S" and a $1,390.40 cost for "UNITED
AIRLINES-FOR PROF RESNICOFF."  (*See* Stepanovich Costs.)  These entries are too vague to
merit reimbursement.

a "[l]imousine [s]ervice," (*id*. at 10), and a fee for a "consultant, Westchester Federal Practice," (*id*. at 35).  Thus, the Court will award Plaintiffs $90,734.42 in disbursements.

The Court declines to further reduce Plaintiffs' costs award based on their mixed success. Defendants have not requested that the Court reduce Plaintiffs' costs based on their degree of success.  *See Arce v. Louisiana State*, No. 16-CV-14003, 2019 WL 2359204, at *14 n.63 (E.D. La. June 4, 2019) (recognizing that "the [c]ourt has the authority to reduce requested costs and expenses based on a party's limited success," but declining to do so because "neither defendant has objected to [the plaintiff's] request for costs or moved the [c]ourt to reduce the requested amount"), *aff'd sub nom. Shelton v. Louisiana State*, 814 F. App'x 883 (5th Cir. 2020).  Further, in past proceedings, this Court has not reduced costs, even when it has reduced fees due to a lack of success.  *See Hardaway*, 706 F. Supp. 2d at 442 (reducing fees award by 25% due to a lack of success, but not reducing costs award).

### III.  Conclusion

For the foregoing reasons, Plaintiffs are awarded $2,390,927.20 in attorneys' fees and $90,734.42 in costs, for a total award of $2,481,661.62.

SO ORDERED.

DATED:      March 31, 2021
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE